**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon z. Weiss (State Bar No. 169446)
sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

*[Proposed] Attorneys for Debtor and Debtor-in -Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>Oceanwide Plaza LLC,<br><br>           Debtor. | Case No. 2:24-bk-11057-DS<br><br>Chapter 11<br><br>**DEBTOR'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING**<br><br><u>Interim Hearing:</u><br>Date:  April 12, 2024<br>Time:  1:00 p.m.<br>Place:  Via Zoom<br>         255 East Temple Street<br>         Los Angeles, CA 90012 |

Oceanwide Plaza LLC, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), by and through its proposed undersigned counsel, hereby files this *Reply* (this "Reply") in support of its *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay and (IV) Scheduling a Final Hearing* [ECF No. 40] (the "DIP Financing Motion") and in response to the sole remaining unresolved objection submitted by L.A. Downtown Investment LP's ("LADI"). *See* ECF No. 105 (the "LADI Supplemental Objection").[1]  In further support of the DIP Financing Motion, Debtor relies on the *Fourth Supplemental Declaration of Bradley Sharp* ("Fourth Sharp Decl.") filed concurrently herewith, as well as Debtor's prior submissions in support of the DIP Financing Motion.

**Introduction**

Debtor announced at the very first hearing in this case its goals with respect to the Property: (1) secure it, (2) insure it, (3) clean it up, (4) run a solid sale process, and (5) make information easily available to parties-in-interest along the way. To achieve these goals, Debtor requires post-petition financing sufficient to fund basic, necessary expenses including payroll, insurance, taxes, security and related costs, graffiti abatement, and professional fees. *See* ECF No. 84-1. Supported by its professionals, Debtor worked expeditiously to negotiate favorable financing terms from BH Capital, and sought authorization to borrow $10 million secured by super-priority "priming" DIP Liens on Debtor's Property.

In short order, Debtor engaged with the various interested parties to resolve initial objections and informal comments regarding the proposed financing. These efforts culminated in a more favorable term sheet from Lendlease, which has replaced BH Capital as the proposed DIP Lender. Notwithstanding that it secured more favorable terms, Debtor is still contending with one objection to the proposed Lendlease DIP Facility – the LADI Supplemental Objection.

It is perhaps unsurprising that LADI's objection remains. As is growing apparent from its filings and arguments in this case, LADI is attempting to control this case for its sole benefit. To

---

[1] Capitalized terms not defined herein shall have their meanings set forth in the DIP Financing Motion or Debtor's *Supplemental Memorandum* in support of the DIP Financing Motion [ECF No. #84] (the "Supplemental Memo").

BRYAN CAVE LEIGHTON PAISNER LLP
ATTORNEYS AT LAW

- 1 -
DEBTOR'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING

1   that end, LADI feigns grave concern over Debtor's proposed DIP Financing. In reality, LADI's

2   Supplemental Objection (and other pleadings) expose LADI's posturing for its own economic

3   benefit at the expense of other creditors. While LADI is entitled to its assert its position, it cannot

4   deny that the law places limits on a secured creditor's rights in favor of the estate. Accordingly,

5   LADI's objection should be denied.

6       The simple fact is that LADI does not oppose a priming DIP facility – as long as that

7   facility is provided by its favored lender, KPC Development Company, LLC ("KPC"). Again, this

8   position is perhaps unsurprising given that KPC has made a deal to buy out LADI's secured

9   claim. But even in that scenario – were Debtor to agree to borrow from KPC – LADI's "consent"

10  would provide no reasonable assurance that Debtor will have access to funds beyond a minimum

11  six-week period absent further litigation (and LADI's conduct to date indicates that litigation is

12  highly likely). Indeed, LADI has already propounded discovery and required Debtor to respond

13  on an expedited basis as to its request for valuation documents. And LADI has raised objections

14  to payment of insider compensation, even after Debtor's CRO explained to LADI's counsel that

15  the continued need for all four of Debtor's remaining employees (and notwithstanding LADI's

16  consent to the payroll funded under a proposed six-week budget). [ECF No. 84-2 at Exhibit 5].

17      The bottom line is that Debtor negotiated a modest and fair DIP Financing package with

18  Lendlease (the "Lendlease DIP Facility"). The Lendlease DIP Facility will fund the early, basic,

19  actual, and largely undisputed needs of this case and will enable Debtor to protect and preserve its

20  most valuable asset – the Property. There is no reasonable dispute that the Lendlease DIP Facility

21  represents an improvement of the DIP financing proposal received from BH Capital. There is

22  similarly no reasonable dispute that all of the budgeted items are directly related to preserving the

23  Property either through enhanced security, insurance, graffiti abatement or the start of the sales

24  process. The Court should thus grant the DIP Financing Motion and authorize Debtor to borrow

25  under the proposed Lendlease DIP Facility.

26      **Debtor's Ongoing Effort to Obtain Consensual Financing**

27      As evidenced by the various supplements filed in support of the DIP Financing Motion,

28  Debtor has continued to work with interested parties to obtain the best available DIP Financing

terms and to resolve as many objections as possible. Indeed, in the Third Supplemental Sharp. Decl., Debtor's CRO explained that Debtor remained in negotiations with two potential lenders. [ECF No. 84-2 at ¶ 6]. Debtor was in fact in negotiations with two potential lenders, including KPC, at the time it filed its Supplemental Memorandum.

LADI complains that Debtor did not give KPC an opportunity to match or better the terms offered by Lendlease. The Fourth Sharp Decl. corrects LADI's misstatement of the facts. In truth, Lendlease informed Debtor that it would object to the term sheet offered by KPC. Debtor was faced with the choice of objections from *both* LADI and Lendlease if KPC was the DIP lender or just an objection from LADI if Lendlease was the DIP lender. Debtor chose the best option available to it at the time a decision was required, and in the Debtor's business judgment, the DIP loan terms offered by Lendlease remain the most overall attractive set of DIP loan terms for the Debtor and its estate.

Separately, in an enhancement to the DIP loan terms described in the Third Supplemental Sharp Decl. – and to provide clarification in response to LADI's Supplemental Objection – Lendlease has explained that the relief from stay requested by LADI is not an event of default in the DIP agreement. Additionally, to avoid any misunderstanding concerning this provision and to address LADI's objection, Lendlease has agreed to remove the stay relief provision from the events of default under the DIP Loan Documents. LADI's Opposition on this ground, therefore, is moot.

Finally, in an effort to address LADI's ever-evolving concern over Debtor's valuation of the Property, Debtor retained Colliers International ("Colliers"), a reputable, knowledgeable appraisal firm, to provide an appraisal at a reasonable fee within a condensed, expedited timeframe. Colliers delivered its *Appraisal Report* to Debtor on April 8, 2024 (the "Colliers April 2024 Appraisal Report"), a copy of which is attached to the Fourth Supplemental Sharp Decl. at **Exhibit 7**.

The Colliers April 2024 Appraisal Report is based on Colliers' visit to the Property on March 29, 2024 and its evaluation of the Property and the national, regional, and downtown Los Angeles economic conditions, demographics, and condominium, apartment, hotel, and retail

1 markets. Colliers classified the Property's condition as "Good/Excellent" and estimated its economic and remaining life expectancy to be 55 years. Fourth Supplemental Sharp Decl. Exhibit 7 at p. 66. Colliers concluded that the "as-is market value" of the Property is $433.9 million; the "completion value/net sellout" value is $1.2994 billion; and the "stabilized value/gross sellout" value is $1,474,700 billion. Fourth Supplemental Sharp Decl. Exhibit 7 at p. 66 Fourth Supplemental Sharp Decl. Exhibit 7 at p. 132-261.

### Reply to LADI Supplemental Objection

LADI is the only remaining party objecting to DIP Financing. The LADI Supplemental Objection demonstrates that LADI has no fundamental objection to approval of DIP financing that primes its lien on the Property – indeed, LADI *openly supports an alternate DIP financing proposal that proposes to prime its liens on the Property*. The LADI Supplemental Objection therefore has nothing to do with adequate protection, and everything to do with its attempt to assert substantial and continuing control over the bankruptcy case. While there is certainly nothing wrong with LADI advocating for itself and advancing the cause of its affiliated lender as the potential DIP lender, what is best for LADI is not necessarily what is best for Debtor or its estate. To be sure, the fact that LADI has indicated a willingness to agree to certain line items in Debtor's proposed budget (such as limited professional fees) only so long as Debtor proceeded with LADI's chosen lender suggests that LADI's objection is a mere pretext to coerce Debtor to accept what would otherwise be less advantageous terms from LADI's chosen DIP lender.

Against this background, the evidence shows that LADI's secured claim against the Property is adequately protected because (1) there is sufficient equity in the Property; (2) the proposed Lendlease DIP Facility will either maintain or enhance the value of the Property; or (3) all of the budgeted expenses proposed to be paid with borrowings under the DIP Financing could otherwise be surcharged against the Property under section 506(c).

**I.    A Priming DIP Facility is Proper When a Secured Lender is Adequately Protected by Equity in the Property.**

An equity cushion provides adequate protection to a secured creditor against any diminution in value that may result from a priming lien. *See In re Olde Prairie Block Owner,*

*LLC*, 447 B.R. 578, 580 (Bankr. N.D. Ill. 2011); *see also In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984) (stating that "it has been held that the existence of an equity cushion, standing alone, can provide adequate protection" in the context of considering an annulment of the automatic stay). When determining whether a secured lienholder is adequately protected, junior liens should not be considered because they cannot affect the holder of a perfected senior interest. *In re Mellor*, 734 F.2d at 1400 at n.2 (discussing the concept of "equity," which determines whether there is any value above all secured claims on a property versus an "equity cushion," which only looks to interests senior to a secured claim.).

In this case, the value of the Property is at least $430 million. This value is supported by the Colliers April 2024 Appraisal Report which fixes the value of the Property at no less than $430 million dollars. A copy of the Colliers April 2024 Appraisal Report is attached as **Exhibit 7** to the Fourth Supplemental Sharp Decl.[2] Debtor estimates that approximately $21,176,843.82 in property taxes are due and owing on the Property. Debtor estimates that LADI's secured claim is approximately $180 million.[3] And the instant DIP Financing Motion is seeking authorization to borrow $10 million secured by DIP Liens that would prime LADI's asserted pre-petition lien. Based on these figures, LADI has an equity cushion in the property of approximately 51.33%:

| Property Taxes | $21,176,843.82 |
|---|---|
| DIP Liens | $10,000,000.00 |
| LADI's Alleged Secured Claim | $180,000,000.00 |
| | |
| Total Claims Equal or Senior to LADI | $211,176,843.82 |
| Appraised Value | $433,900,000 |
| LADI Equity Cushion | 51.33% |

---

[2] Debtor notes that this appraisal was obtained on an expedited basis. Debtor believes that this appraised value is at the low range of the Property's potential value. Debtor also believes that its appraiser will ultimately conclude that the Property is worth significantly more after the appraiser has additional time to assess the Property. Debtor reserves its right to supplement its asserted valuation of the Property beyond the current $430 million estimated value.

[3] Notably, LADI appears not to have adopted the Debtor's statements as to the approximate amounts of its claim and does not provide an increased amount. *See, e.g., Objection of L.A. Downtown Investment, LP to Motion for Entry of Interim and Final Orders Authorizing the Debtor to Obtain Postpetition Financing* [ECF 54], p. 3 ("These consist of the lien held by LADI which the Debtor says is $170 million"); *Memorandum of Points and Authorities in Support of L.A. Downtown Investment LP's Motion for Relief from Stay* [ECF 81], p. 9 ("Oceanwide acknowledged "LADI … asserts a current secured claim of approximately $180 million."), p. 17 ("Oceanwide acknowledged in the DIP Motion that the secured claims [*sic*] asserted by LADI is approximately $180 million …").

This equity cushion is beyond the 20% threshold consistently found by bankruptcy courts to provide a secured creditor with adequate protection against a priming DIP Lien. *See In re Capitol Station 65, LLC*, No. 17-23627-B-11, 2018 WL 333863, at *11 (Bankr. E.D. Cal. Jan. 8, 2018) (compiling cases);[4] *In re Lee*, No. 2:19-BK-10119-RK, 2020 WL 2787679 at * 9 (Bankr. C.D. Cal. May 28, 2020) (noting that an 18% equity cushion is not per se inadequate protection); *In re 1604 Sunset Plaza, LLC*, No. 2:21-BK-19157-ER, 2022 WL 1085557 at * 7 (Bankr. C.D. Cal. Apr. 8, 2022 (holding that a 20% equity cushion would be adequate protection); *In re DBI Hous., Inc.*, No. 2:12-BK-51335-RK, 2013 WL 2285120, at *3 (Bankr. C.D. Cal. May 22, 2013 (16% sufficient).

LADI may argue that it is not adequately protected because of the risk that it is ultimately found to have a second lien behind Lendlease. However, even in that event, LADI would still be protected by an approximately 11% equity cushion. Although lower than the amounts set forth in *In re Capitol Station 65,* an 11% equity cushion is still sufficient protection in this case because Debtor's proposed budget line items reflect expenses that can be surcharged against the Property and, in any event will preserve the value of the Property. *See* Section III *infra* (discussing surcharge). Thus, under the circumstances, even the smaller equity cushion that might result should LADI's lien be found junior to Lendlease's lien will provide LADI with sufficient and adequate protection of its interest under the circumstances of this case

Additionally, LADI is adequately protected because the Debtor has *net* equity in the Property (*i.e.*, equity above and beyond all secured claims, including secured claims junior to LADI's lien). In addition to LADI's secured claim, Debtor conservatively estimates that Lendlease will assert a secured claim of $175 million and that various other third parties may attempt to assert secured claims in the approximate amount of $9,787,383.65.[5] Debtor

---

[4] Debtor notes that the *In re Capitol Station 65* Court seemed to conflate the debtor's "equity" with the secured lender's "equity cushion" when determining whether a creditor was adequately protected. However, since the Debtor's equity alone was sufficient to provide such protection, the *In re Capitol Station 65* Court did not need to reach the question as to whether the creditor's "equity cushion," as defined by the *Mellor* court, was sufficient without considering junior interests.

[5] Debtor's estimation of these potential claims is not an admission of their validity and Debtor expressly reserves all rights to further investigate, and challenge, the validity or extent of any of these liens or any other liens that may be asserted with respect to the Property.

additionally estimates that it will cost $12,900,000 to sell the Property. Thus, even a conservative estimate of the potential secured claims on the Property, along with the cost of sale, leaves $21,135,772 in net equity in the Property. Even if LADI was forced to rely on the Debtor's net equity in the Property for adequate protection (which would never happen if LADI's allegations concerning its senior secured status are accurate), LADI would still have $21,135,772, or approximately 5%, of Debtor's net equity to look to for recovery. Because LADI is adequately protected under any scenario – whether by virtue of a significant equity cushion in the Property or by Debtor's material net equity in the Property – a priming lien for Debtor's requested DIP financing is appropriate pursuant to 11 U.S.C. § 364(d).

### II. The Lendlease DIP Financing Proposal Will Maintain or Enhance the Value of the Property

As discussed in the Supplemental Memorandum, payment of the budgeted expenses will maintain – if not enhance – the value of the Property. As such, LADI's secured claim against the Property will be adequately protected. LADI attempts to distinguish Debtor's citation to *In re Weinstein* for the issue of adequate protection on the grounds that it dealt with an allowed secured claim in a chapter 11 plan, and not a priming lien. *See* ECF No. 105 at 9. LADI, however, fails to recognize that regardless of the situation in which adequate protection is considered, its purpose is the same: adequate protection is intended to protect against depreciation in the value of collateral. *In re Weinstein*, 227 B.R. 284, 296 (B.A.P. 9th Cir. 1998). Where there is no demonstrated depreciation in the value of collateral, there is no entitlement to adequate protection. *Id.* Indeed, the Bankruptcy Code does not distinguish between adequate protection provided in the context of granting relief from the automatic stay, approving use of collateral, or obtaining credit. *See* 11 U.S.C. § 361 (When adequate protection is required under section 362, 363, or 364 . . . such adequate protection may be provided by . . ."). LADI fails to demonstrate any reason why the context in which the court in *Weinstein* considered the issue of adequate protection has any bearing on the court's conclusion that adequate protection is not necessary where there is no diminution of value. Indeed, LADI seems to acknowledge the applicability of *Weinstein* based upon its assertions that the value of the Property is "likely depreciating" and that the value of

1   LADI's lien will be diminished by the value of the DIP financing. *See* ECF No. 105 at 15.

2   LADI's depreciation argument, however, seems to implicitly rely on the assumption that the

3   value of the Property (and LADI's lien) would remain static in the event that DIP financing were

4   not approved. This argument is not supported by the facts of this case.

5       The LADI Supplemental Objection also ignores undisputed economic benefits that

6   creditors (particularly LADI) would realize through approval of the Lendlease DIP Facility. For

7   example, there is no dispute that Debtor will be obligated to pay for post-petition security for the

8   Property as an administrative expense – the only open issue is whether Debtor will incur this

9   administrative expense to a security services provider engaged by Debtor following approval of

10  the Lendlease DIP Facility (in which case Debtor would pay competitive market rates for these

11  security services) or whether Debtor will incur this administrative expense to LA County as

12  reimbursement for its "force-placed" security services (in which case Debtor would be obligated

13  to pay not only LA County's non-market cost to provide these security services *but also* an

14  additional 40% premium). Either way, the costs associated with post-petition security services at

15  the Property would prime LADI's existing liens – whether via the grant of a priming lien against

16  the Property (if the Court approves the Lendlease DIP Facility) or via the grant of a superpriority

17  lien against the Property (if the Court grants a surcharge claim against the Property for payment

18  of LA County's administrative claim).

19      Even more dramatic, failure to comply with the City's health and safety requirements,

20  may lead to the City's demolition of the Property. See LAMC 91.8905.1.[6] Since virtually all of

21  the budgeted items relate to remediating the City's health and safety requirements, LADI cannot

22  reasonably claim that any of the expenditures do not directly preserve the collateral and are not a

23  direct benefit to it.

---

[6] 91.8905.1. Notwithstanding anything to the contrary in this section, whenever the Department determines that any building, structure, premises or portion thereof falling within the scope of this division is a present, imminent, extreme and immediate hazard or danger to life or limb, health or safety, so as to necessitate the immediate elimination thereof without prior notice to the owner, the Department may, without an order or notice of any kind whatsoever and without a hearing, cause the building, structure or premises or any portion thereof to be immediately vacated, barricaded, removed or demolished by such means as the Department may deem advisable, including the use of the Department's annual awarded demolition contractor.

1  Instead, LADI devotes a substantial portion of its arguments to the budgeted professional

2  fees. *See* ECF No. 105 at 12-17. However, these arguments ignore two important facts. First,

3  unlike situations existing in cases cited by LADI, the services rendered by Debtor's professionals

4  will *all* be dedicated to protection and preservation of the sole asset of the Debtor's bankruptcy

5  estate (and LADI's collateral) – the Property. Second, LADI erroneously claims that Debtor is

6  seeking *prospective approval* of its professionals' fees. *See* ECF No. 105 at 15-17. Nothing in

7  the Supplemental Memorandum (or in any of the other papers filed by Debtor in connection with

8  the DIP Financing Motion) seeks prospective approval of any professional fees. To be sure,

9  Debtor (and its professionals) understands that all professional fees remain subject to further

10 approval by this Court (to which approval LADI retains all rights to object and be heard).

11 Therefore, LADI's collateral is not impacted in any way by merely including professional fees in

12 a proposed budget – it is only after professional fees are approved by this Court and paid by the

13 Debtor via a borrowing under the Lendlease DIP Facility that LADI's collateral would be

14 impacted in any way by budgeted professional fees.

### III.   Priming DIP Financing (Acknowledged by LADI to be Acceptable and Necessary) is Appropriate Because the Budgeted Expenses Could Otherwise Be Surcharged Against the Property

17  The DIP financing proposal that Debtor received from KPC contemplates the grant of a

18 priming lien on the Property. Therefore, by its advocacy for approval of the KPC proposal, LADI

19 acknowledges that the grant of a priming lien on the Property is acceptable to LADI and

20 constitutes a necessary component of any DIP financing in this bankruptcy case. LADI also

21 consents to payment of specific budgeted expenses consisting of "payroll and supplies; project

22 operations (which includes security); taxes; liability insurance; building insurance, although for a

23 lesser amount of coverage that was requested; and a portion of the professional fees requested."

24 *See* ECF No. 105 at 2.

25  These acknowledgments and consents by LADI comport with the arguments asserted by

26 Debtor in its Supplemental Memorandum, namely, that priming DIP financing is necessary and

27 appropriate in this case, particularly because the expenses proposed to be paid with the DIP

28 Financing could otherwise be surcharged against the Property. LADI's objection to priming DIP

1   Financing relies on the incorrect premise that a court cannot grant surcharge prospectively. [ECF

2   105 at p. 10]. This Court, however, has granted priming DIP Liens on a surcharge basis when the

3   debtor demonstrated that the subject property would be worth significantly less if the debtor did

4   not take the steps necessary to preserve the subject property pending sale, even when it was not

5   clear at the time of the DIP Lien surcharge whether there would be net equity in the surcharged

6   property. *Treetop Development, LLC*, Case No. 2:22-14165 at ECF No. 245 (Bankr. C.D. Cal.

7   2023).

8         The Supplemental Memorandum provides a category-by-category analysis of specific

9   cases in which courts granted surcharge for expenses similar to those budgeted to be paid with the

10  proposed DIP financing. Without need to restate each of those cases herein, Debtor responds to a

11  specific issue raised by LADI: while many cases authorizing surcharge involve the surcharge of

12  the cash proceeds from a sale of surcharged property, it is clear that courts will also grant

13  surcharge involving unsold property via the imposition of a superpriority lien against such

14  property.  *See, e.g., In re Skuna River Lumber, LLC,* 564 F.3d 353, 355 (5th Cir. 2009) (reviewing

15  a bankruptcy court order in which the court secured payment of a surcharge claim via the grant of

16  a judicial lien on the surcharged assets); *Southwest Secs., FSB v. Segner (In re Domistyle, Inc.),*

17  811 F.3d 691, 695 (5th Cir. 2015) (affirming bankruptcy court's grant of surcharge in the form of

18  a priming lien against the property).

19        As noted above, LADI consents to payment of specific budgeted expenses consisting of

20  "payroll and supplies; project operations (which includes security); taxes; liability insurance;

21  building insurance; … and a portion of the professional fees requested."  *See* ECF No. 105 at 2.

22  In fact, the only budgeted expenses that LADI objects to are "some professional fees and some of

23  the proposed charges for insurance" and a portion of a "Contingency" category.  *Id.* at 14.

24

25

26

27

28

**Conclusion**

For the foregoing reasons, the Debtor respectfully requests that the Court grant the DIP Financing Motion and authorize the Debtor to obtain the DIP Financing secured by a priming liens on the Debtor's property subordinate only to the existing pre-petition tax liens of LA County, and grant ancillary relief.

Dated:  April 9, 2024         Respectfully submitted,

                BRYAN CAVE LEIGHTON PAISNER LLP

                By: */s/ Sharon Z. Weiss*
                   Sharon Z. Weiss
                [Proposed] Attorneys for Debtor-in-Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Bryan Cave Leighton Paisner LLP, 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

A true and correct copy of the foregoing document(s) entitled: DEBTOR'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY AND (IV) SCHEDULING A FINAL HEARING will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 9, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **PLEASE SEE ATTACHED LIST**

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) April 9, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- **PLEASE SEE ATTACHED LIST**

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 9, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- **PLEASE SEE ATTACHED LIST**

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 9, 2024 | Raul Morales | /s/ Raul Morales |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
  oblumenfeld@lakklawyers.com, ncondren@lakklawyers.com;smcfadden@lakklawyers.com

- Paul Brent on behalf of Interested Party Courtesy NEF
  snb300@aol.com

- Sara Chenetz on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
  schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com; jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Jacquelyn H Choi on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
  jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com

- Leslie A Cohen on behalf of Interested Party Courtesy NEF
  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

- Gloria D Cordova on behalf of Interested Party Courtesy NEF
  gdc@gcordovalaw.com, NEF@gcordovalaw.com;ssg@gcordovalaw.com

- Matthew Dill on behalf of Interested Party Courtesy NEF
  mdill@counsel.lacounty.gov

- Sonia Plesset Edwards on behalf of Interested Party Chicago Title Insurance Company
  sedwards@garrett-tully.com

- Jon F Gauthier on behalf of Petitioning Creditor Standard Drywall, Inc.
  jgauthier@ftblaw.com, jrobinson@ftblaw.com;storres@ftblaw.com

- Richard Girgado on behalf of Interested Party Courtesy NEF
  rgirgado@counsel.lacounty.gov

- Richard H Golubow on behalf of Petitioning Creditor Woodbridge Glass Inc.
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

- Mark Isola on behalf of Creditor Fetzers' Inc.
  misola@brotherssmithlaw.com

- Gary E Klausner on behalf of Interested Party Courtesy NEF
  gek@lnbyg.com

- Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)
  Noreen.Madoyan@usdoj.gov

- Michael K Murray on behalf of Interested Party Courtesy NEF
  mkmurray@lanak-hanna.com, lrarriaga@lanak-hanna.com

- Douglas M Neistat on behalf of Interested Party Douglas Neistat
  dneistat@gblawllp.com, mramos@gblawllp.com

- Rosemary Nunn on behalf of Petitioning Creditor Mitsubishi Electric US, Inc.
  rosemary.nunn@procopio.com

- Misty A Perry Isaacson on behalf of Interested Party Courtesy NEF
  misty@ppilawyers.com, ecf@ppilawyers.com;pagterandperryisaacson@jubileebk.net

- Matthew D Pham on behalf of Attorney Matthew D. Pham
  mpham@allenmatkins.com, mdiaz@allenmatkins.com

- Robert L. Rosvall on behalf of Interested Party Courtesy NEF
  rrosvall@ccllp.law, kvargas@ccllp.law

- Howard Steinberg
  steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                F 9013-3.1.PROOF.SERVICE

- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov

- J Scott Williams on behalf of Interested Party Courtesy NEF
  jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

- Chelsea Zwart on behalf of Petitioning Creditor Star Hardware, Inc.
  czwart@cgdrlaw.com, service@cgdrlaw.com

2. **SERVED BY UNITED STATES MAIL:**

   **Nowell Lantz**
   Finch, Thornton & Baird, LLP
   4747 Executive Dr, Ste 700
   San Diego, CA 92121

   **Kathleen Allare**
   Perkins Coie LLP
   2525 E Camelback Rd Ste 500
   Phoenix, AZ 85016-42274

   **City of Los Angeles**
   200 North Spring Street
   Room 395, City Hall
   Los Angeles, CA 90012

3. **SERVED BY EMAIL:**

   - cdarway@accoes.com
   - mathieu.laflamme@beaubois.com
   - dnielsen@bigge.com
   - Gary.Fowler@braggcrane.com
   - nlee@grayduffylaw.com
   - jduffy@grayduffylaw.com
   - jduffy@grayduffylaw.com
   - cordova@carrara.com
   - GiovanniG@csiscaffold.com
   - bslater@eesnation.com
   - skenney@allenmatkins.com
   - troyg@kovach.net
   - lmethvin@larrymethvin.com
   - c.davies@morrow.com
   - jfoust@rallsgruber.com
   - irit@stoneetcinc.com
   - shula@shulaesq.com
   - srouse@rousecompany.com
   - kamay.matharu@tractel.com
   - denniscossolaw@gmail.com
   - dkessler@bkcglaw.com
   - jwaldman@bkcglaw.com
   - mdill@counsel.lacounty.gov
   - rgirgado@counsel.lacounty.gov
   - rosemary.nunn@procopio.com
   - nicholas.fortino@procopio.com
   - Noreen.Madoyan@usdoj.gov
   - niantz@ftblaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**

- jgauthier@ftblaw.com
- czwart@cgdrlaw.com
- jeff@woodbridgeglass.com
- rgolubow@wghlawyers.com
- ritkin@sklarkirsh.com
- dneistat@gblawllp.com
- jwilliams@williamsbkfirm.com
- jaime@lesliecohenlaw.com
- jhmillane@lanak-hanna.com
- leslie@lesliecohenlaw.com
- mpham@allenmatkins.com
- mkmurray@lanak-hanna.com
- oblumenfeld@lakklawyers.com
- splesset@garret-tully.com
- tcurrie@gattet-tully.com
- kallare@perkinscoie.com
- rrosvall@ccllp.law
- ortmann@huntortmann.com
- lozano@huntortmann.com
- lubka@huntortmann.com
- schnaitman@huntortmann.com
- sholbrook@builderslaw.com
- denniscossolaw@gmail.com
- ortmann@huntortmann.com
- lozano@huntortmann.com
- lubka@huntortmann.com
- schnaitman@huntortmann.com
- arrosin@alr-law.com
- tbilir@alr-law.com
- jduffy@grayduffylaw.com
- nlee@grayduffylaw.com
- corliss@ccllp.law
- mwroniak@ccllp.law
- pbreucop@ccllp.law
- agrigoryan@garrett-tully.com
- rsquire@garrett-tully.com
- cng@gglts.com
- mgriffin@gibbsgiden.com
- skornblatt@gibbsgiden.com
- dsanner@craigrealtygroup.com
- tim@tpclawyer.com
- dnaish@coxcastle.com
- jpadilla@coxcastle.com
- rcampbell@coxcastle.com
- dpearson@brotherssmithlaw.com
- matthew.adler@faegredrinker.com
- dkirkner@lienlawatty.com
- mplumtree@plumtreelaw.com
- jbates@jbateslaw.com
- rowene@gtlaw.com
- jonathan.goldstein@gtlaw.com
- simonju@gtlaw.com
- simonju@gtlaw.com
- kutznerm@gtlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                           F 9013-3.1.PROOF.SERVICE

- picklest@gtlaw.com
- ajain@mdjalaw.com
- glee@mdjalaw.com
- vdavitt@mdjalaw.com
- abloetscher@perkinscoie.com
- aavendano@perkinscoie.com
- gkuhlmann@perkinscoie.com
- hheindel@perkinscoie.com
- hlauderdale@perkinscoie.com
- ltrambley@perkinscoie.com
- mjonesmckeown@perkinscoie.com
- ogold@perkinscoie.com
- ortmann@huntortmann.com
- lozano@huntortmann.com
- lubka@huntortmann.com
- schnaitman@huntortmann.com
- bkuhn@nossaman.com
- phermoso@nossaman.com
- aamuchie@rutan.com
- hherd@rutan.com
- jleib@rutan.com
- pblanchard@rutan.com
- cng@gglts.com
- mgriffin@gibbsgiden.com
- skornblatt@gibbsgiden.com
- akizzie@swlaw.com
- mjbaker@swlaw.com
- jtung@pkec.law
- ksmith@pkec.law
- pfinch@ftblaw.com
- achapman@cgdrblaw.com
- bwilson@lynberg.com
- gsawyer@lynberg.com
- mwalsh@lynberg.com
- tresurreccion@lynberg.com
- denniscossolaw@gmail.com
- bwilson@lynberg.com
- gsawyer@lynberg.com
- mwalsh@lynberg.com
- tresurreccion@lynberg.com
- ghanson@grsm.com
- skaplan@grsm.com
- aamuchie@rutan.com
- hherd@rutan.com
- jleib@rutan.com
- pblanchard@rutan.com
- sbarbieri@rutan.com
- weliopoulos@rutan.com
- kbutler@bkcglaw.com
- ttate@builderslaw.com
- cng@gglts.com
- mgriffin@gibbsgiden.com
- skornblatt@gibbsgiden.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE