**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (*Admitted Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

[*Proposed*] *Attorneys for Debtor and Debtor-in-Possession*

FILED & ENTERED

MAY 16 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bakchell  DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:24-bk-11057-DS |
| OCEANWIDE PLAZA LLC, | Chapter 11 |
| Debtor. | **FINAL ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (III) MODIFYING THE AUTOMATIC STAY** |
| | <u>Hearing</u>:<br>Date:  May 15, 2024<br>Time:  3:30 p.m.<br>Place:  Courtroom 1634 / Via Zoom<br>255 East Temple Street<br>Los Angeles, CA 90012 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

On March 14, 2024, March 19, 2024, April 12, 2024, May 9, 2024, and May 15, 2024 (together, the "Final Hearing"), the court conducted hearings on the Debtor and Debtor-In-Possession's *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay and (IV) Scheduling Final Hearing* (the "Motion," Docket No. 40). Appearances were as noted on the record. The court having considered the Motion and the record in this case, and the oral arguments of counsel at the hearings held on the Motion, and for the reasons stated at the Final Hearing and as set forth in this order:

THE COURT HEREBY FINDS AS FOLLOWS:

A. This court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334, and this is a "core" proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409. This court retains jurisdiction to enforce the terms of this Order.

B. Notice of the Motion and the relief granted herein and the Final Hearing was given in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this court, including without limitation to all holders of recorded liens against the Property.[1]

C. The Debtor has a need to obtain the financing made available by DTLA Lending LLC (the "DIP Lender," defined in the DIP Credit Agreement as "Lender") on the terms set forth in the Secured Superpriority Debtor in Possession Financing Loan Agreement (attached hereto as **Exhibit 1** (the "DIP Credit Agreement") and the other Loan Documents (the financing thereunder, "DIP Financing") to pay for the expenses in the budget attached hereto as **Exhibit 2** (as such budget may be amended in accordance with the DIP Credit Agreement and this Order, the "Budget").

D. The Debtor sought postpetition funding from a number of sources and negotiated DIP Financing terms with at least three potential lenders, including the DIP Lender. After

---

[1] All defined terms not defined in this Order have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

reasonable and appropriate efforts, the Debtor was unable to obtain adequate credit or loans (1) solely as an administrative expense allowable under Bankruptcy Code § 503(b), (2) solely with priority over other administrative expenses as set forth in Bankruptcy Code §§ 503(b) and 507(b), (3) secured only by unencumbered property of the estate, (4) secured solely by junior liens to existing liens on estate property, or (5) on better terms than are contained in the DIP Credit Agreement.  The terms of the proposed DIP Credit Agreement with the DIP Lender represent the best DIP Financing terms currently available to the Debtor.

E.    The terms of the proposed DIP Financing are fair and reasonable, demonstrate the exercise of the Debtor's reasonable business judgment, and are consistent with the Debtor's fiduciary duties.

F.    The terms of the Loan Documents and this order have been the subject of negotiation between the Debtor and the DIP Lender in good faith and at arm's length, the DIP Lender is extending credit and making loans in good faith, as the phrase good faith is used in Bankruptcy Code § 364(e), the DIP Lender is willing to provide the DIP Financing and other accommodations to the Debtor set forth in the Loan Documents on express reliance on the protections contained in Bankruptcy Code § 364(e), and the DIP Lender is entitled to the full protections available to lenders pursuant to Bankruptcy Code § 364(e) in the event this Order or any part of it is vacated, reversed or modified on appeal or otherwise. This protection is effective immediately without any stay of the effect of this order, including any stay afforded by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("FRBP"), so as to permit immediate lending within the provisions and protections of Bankruptcy Code § 364(e).

G.    The following parties have expressly consented to the relief granted through this order: (i) the Debtor, (ii) the DIP Lender; (iii) L.A. Downtown Investment LP ("LADI"); (iv) Los Angeles County; and (v) the City of Los Angeles.  In addition, this court made specific findings related to approval of the DIP Financing as stated on the record at the Final Hearing.

H.    Debtor waives any right it may otherwise have to seek to surcharge the Property under Bankruptcy Code § 506(c) for the expenses the Debtor pays pursuant to the Budget under the Orders.

2

I.      The Debtor seeks immediate entry and effectiveness of this order pursuant to FRBP 4001(e)(2).

J.      Good cause has been shown for the entry of this order.

THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted as set forth herein on a final basis. Any objections to entry of this order that have not been withdrawn, waived, resolved, or settled are overruled in accordance with the relief granted through this order. This order is valid and binding on all parties, including without limitation any official committee of unsecured creditors subsequently appointed in this Case, and their successors and assigns and is effective immediately upon its entry.

2.      The Debtor is authorized to enter into the Loan Documents to effectuate the transactions contemplated by the Loan Documents and to perform all additional acts as may be required in connection with the execution, implementation and enforcement thereof. Upon execution and delivery of the Loan Documents, they will be immediately binding on and enforceable against the Debtor.

3.      Pursuant to the terms and conditions of the Loan Documents and this order, the Debtor is authorized to borrow all amounts contained in the Budget during the periods contained in the Budget, up to the aggregate amount not to exceed the total of $9,300,000, including all amounts previously borrowed pursuant to the Interim Order, provided that the Debtor must use all funds borrowed from the DIP Lender in accordance with the Budget, the Loan Documents and the Orders. The Debtor's Obligations under the Loan and Loan Documents include, among other things, all Interest due pursuant to the Note and all Loan Expenses.

4.      In order to secure the total amount of the Obligations, effective immediately upon entry of this order, pursuant to Bankruptcy Code §§ 105, 362, 363 and 364(c)(2), (3) and (d), the DIP Lender is granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority priming postpetition security interests in and liens in and upon the Property, without the necessity of the execution, recordation of or filing by the Debtor or the DIP Lender of any mortgages, deeds of trust, security agreements, agreements, pledge

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

3

agreements, financing statements or similar documents or instruments as follows: (a) pursuant to Bankruptcy Code §§ 105 and 364(c)(2), valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority liens on and security interests in all Property that is not otherwise subject to any liens or security interests, and (b) pursuant to Bankruptcy Code §§ 105 and 364(d)(1), valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority "priming" liens on and security interests in all Property, senior to all other prepetition and postpetition liens or interests, including without limitation judgment liens, mechanics' liens, liens imposed by covenant, restriction, deed of trust or mortgage, subject and subordinate only to (i) the liens securing the County Senior Claims (as defined in Paragraph 16 below) and (ii) the Carve Out; provided, further, the DIP Liens will not attach to claims and causes of action under Chapter 5 and Bankruptcy Code § 724(a) or the proceeds thereof. The DIP Liens may be subject to deed restrictions, equitable servitudes or other rights in the Property as may be acceptable to the DIP Lender in its sole and absolute discretion. Nothing in the Orders may be deemed to authorize the DIP Lender to consent to its DIP Liens being primed or be pari passu with any liens held by Lendlease (US) Construction Inc., or any of its affiliates, or to any mechanic lienors' claims on account of or relating to prepetition claims.

5.      The DIP Liens are and will remain valid, perfected, binding, enforceable, non-avoidable and effective priming liens by operation of law as of the entry of this order without any further action by the Debtor or the DIP Lender and without the necessity of executing, filing or recording any financing statements, security agreements, mortgages, deeds of trust, filings with a governmental unit or other documents, agreements, or instruments or the taking of any other actions (including taking possession of any Property) to validate, enforce or perfect the DIP Liens or to entitle the DIP Lender to the priorities granted herein, which may otherwise be required under state or federal law. If the DIP Lender requests that the Debtor execute and deliver any financing statements, security agreements, mortgages, deeds of trust, filings with a governmental unit, or other documents, agreements, or instruments considered by the DIP Lender to be necessary or desirable to further evidence the perfection of the DIP Liens, the Debtor is hereby authorized and directed to execute and deliver any such documents, agreements, and instruments

4

to the DIP Lender, and the DIP Lender is hereby authorized to file or record any such documents, agreements or instruments in its discretion without seeking modification of the automatic stay under Bankruptcy Code § 362, in which event all such documents will be deemed to have been filed or recorded at the time and on the Petition Date; provided, however, that no such filing or recordation will be necessary or required in order to create, enforce or perfect the DIP Liens. The DIP Lender, in its sole discretion, may file a copy of this order as a financing statement or for any other reason with any filing or recording office, any registry of deeds or similar office, in addition to or in lieu of other financing statements, mortgages, deeds of trust, notices of liens or similar documents, agreements, or instruments, and any such filing, recording, or similar office is directed to accept such filing as a financing statement. The automatic stay contained in Bankruptcy Code § 362 is hereby vacated and modified solely to the extent necessary for the DIP Lender to permit and facilitate the recording and perfection of the DIP Liens in and to the Property, as set forth in this paragraph and the implementation of the other terms of the Orders and the Loan Documents.

6. The DIP Lender's obligation to lend money to the Debtor pursuant to this order is expressly conditioned upon the satisfaction of and compliance with all conditions set forth in the Loan Documents.

7. If an order is later entered in this case authorizing the transfer of any or all of the Property pursuant to a credit bid under Bankruptcy Code § 363(k) or otherwise, such order will require that the Obligations and County Senior Claims be paid in full in cash to the DIP Lender and Los Angeles County, respectively, before or on the day of the closing of the transfer of such Property.

8. The terms of this order are binding upon and inure to the benefit of the DIP Lender, the Debtor, and their respective successors and assigns. All of the findings of fact, terms, conclusions of law and provisions of the Orders and any actions taken pursuant to them will survive the entry of any order: (i) confirming a chapter 11 plan in this case, (ii) appointing a chapter 11 trustee in this case, (iii) converting this case to a chapter 7 case, (iv) dismissing this case, (v) withdrawing the reference of this case from this court, and (vi) any order providing for

5

abstention from handling or exercising jurisdiction over all or any part of this case. All of the protections granted to the DIP Lender and the other terms and provisions of the Orders will continue in full force and effect notwithstanding the entry of any such order in (i) to (vi) of this paragraph, and the DIP Liens and Superpriority DIP Administrative Expenses created through the Orders and as set forth in the Loan Documents will maintain their priority as provided by the Orders until all of the Obligations are indefeasibly paid and satisfied in full in cash; *for the avoidance of doubt* in the event of a foreclosure on or other transfer of the Property, the DIP Liens and Superpriority DIP Administrative Expenses will have the priorities granted by the Orders without further action or entry of any additional orders by this court. The obligations of the Debtor created through the Orders and Loan Documents will not be discharged by the entry of any order confirming a chapter 11 plan in this case.

9.      The Debtor is authorized to perform all of its Obligations and other requirements of the Loan Documents and the Orders.

10.     Subject and subordinate to the Carve Out and the County Senior Claims, effective and perfected upon the date of entry of this order, and without the necessity of the execution, recordation or filing by the Debtor or the DIP Lender of any mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements or similar documents or instruments, the DIP Liens in favor of the DIP Lender are and will be senior to any and all other prepetition or postpetition liens or interests, including, without limitation, judgment liens, mechanics' liens, liens imposed by applicable covenants, declarations and restrictions, mortgages and security interests encumbering the Property pursuant to Bankruptcy Code §§ 364(c)(2) and 364(d), securing the total amount of the Obligations.

11.     Except as explicitly provided for herein, this order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

12.     In exercising any rights or remedies as and when permitted pursuant to this order, the DIP Lender will not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

6

the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor will it owe any fiduciary duty to the Debtor, its creditors or estate, or will constitute or be deemed to constitute a joint venture or partnership with the Debtor.

13. The Debtor must cause the DIP Lender to be named as a loss payee on all liability, casualty and property insurance policies covering any of the Property, the later of within three days of entry of this order or immediately upon issuance of all later obtained insurance binders and policies, if any.

14. Subject and subordinate only to the Carve Out, the County Senior Claims and the County Administrative Expense Claims (as defined in Paragraph 16 below), the DIP Lender has and will continue to have an allowed superpriority administrative expense claim equal to the amount of the Obligations pursuant to Bankruptcy Code §§ 503(b) and 507(b), which Superpriority DIP Administrative Expense has and will have priority over all other administrative expenses and unsecured claims against the Debtor or its estate, of any kind or nature whatsoever until such time as the Obligations are indefeasibly paid in full. No lien or interest avoided and preserved for the benefit of the estate pursuant to Bankruptcy Code § 551 will be *pari passu* with or senior to the Superpriority DIP Administrative Expenses.

15. The DIP Lender will not be required, without its consent and in its sole discretion, to accept any property other than United States currency in satisfaction of the Obligations or Superpriority DIP Administrative Expenses notwithstanding Bankruptcy Code §§ 1129 (a)(7) and (b)(2)(A).

16. Nothing contained in the DIP Credit Agreement, other Loan Documents or the Orders will (i) prime, alter, impair or otherwise modify Los Angeles County's past, present and future first priority tax liens (the "County Senior Claims") established in accordance with applicable state law; or (ii) grant the DIP Lender a superpriority claim with priority over Los Angeles County's administrative expense claims under Section 503(b)(1)(B) of the Bankruptcy Code (the "County Administrative Expense Claims"); *provided* that Los Angeles County may not

7

exercise or seek to exercise any right it may have to commence, proceed with or conclude a tax sale of the Property under applicable state law for at least one year from the entry of this order.

17.     The DIP Liens will not be primed, surcharged, altered or impaired, marshaled or otherwise adversely affected in any way, whether requested by a creditor of the Debtor or any other party without the DIP Lender's consent, while remaining subordinate to the County Senior Claims and the Carve Out.

18.     Based on the findings set forth in this order and the record in connection with the Motion, the DIP Lender is found to be an entity which has acted in "good faith" as that phrase is used in Bankruptcy Code § 364(e), in connection with the negotiation of the Loan Documents and the negotiation and entry of this order, entitling the DIP Lender to the protections afforded by Bankruptcy Code § 364. Accordingly, pursuant to Bankruptcy Code §§ 364 (c)-(e), any reversal or modification on appeal of this order, or of any provision thereof will not affect the validity, effectiveness or priority of the debt incurred by the Debtor including without limitation the priority of the DIP Liens and the Superpriority DIP Administrative Expenses and other protections granted to the DIP Lender through the Orders.

19.     **Carve Out**.

(a)     The definition of "Carve Out" in the DIP Credit Agreement is revised as follows: "Carve Out" means the sum of (i) all fees payable to the Clerk of Court and payable to the Office of the United States (collectively, "Clerk and UST Fees"), and (ii) all reasonable unpaid fees and expenses of the Borrower's retained professionals for services rendered and expenses incurred prior to the Lender's delivery of a Default Notice (for which the noticed Event of Default is not subsequently cured in accordance with Section 6.2 of the DIP Credit Agreement) and to the extent such amount is expressly set forth in the Budget as of the date of the delivery of a Default Notice ("Professional Fees"), and additionally subject to further order of the Bankruptcy Court allowing such Professional Fees and expenses under Bankruptcy Code § 330.  In addition, the Debtor will need to satisfy section 506(c) at the time of final fee allowance, or sooner, if requested by LADI. By way of example, in the event the Default Notice is noticed during the Budget Period (defined below) and is not subsequently cured accordance with Section 6.2 of the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DIP Credit Agreement, the Carve Out amount will equal the sum of all amounts expressly set forth in the Budget as of the date of the delivery of the Default Notice for Clerk and UST Fees and for Professional Fees that are ultimately allowed as set forth above, *less* amounts previously funded by the DIP Lender for such Clerk and UST Fees and for such Professional Fees (or that have otherwise been paid).

(b)    The DIP Lender must deliver the Default Notice to (i) the Debtor, (ii) Debtor's counsel, (iii) LADI's counsel, (iv) Lendlease's counsel, and (v) the UST.

(c)    Notwithstanding anything to the contrary in the Loan Documents, during the period covered by the Budget (the "Budget Period"), the funding of the Carve Out works as follows:

i.    Clerk and UST Fees:

1.    through the first Payment Request made after entry of this order, the Debtor may request that the DIP Lender lend all amounts allocated in the Budget for payment of Clerk and UST Fees included in the Budget through the date of entry of this order, which were not previously funded; and

2.    through subsequent Payment Requests, the Debtor may request that the DIP Lender lend the sum of all Clerk and UST Fees accrued through the immediately prior 4-week period which were not previously funded, and

3.    upon delivery of a Default Notice and following the request of the Debtor, the DIP Lender will lend the sum of all Clerk and UST Fees accrued through the date of such Default Notice which were not previously funded.

ii.    Professional Fees: with respect to Professional Fees included in the Carve Out, after allowance of such Professional Fees, whether on a monthly, interim or final basis, the Debtor may make a Payment Request for the DIP Lender to lend the sum of all such allowed Professional Fees; provided, that the sum of all such allowed Professional Fees will not exceed the amount of Professional Fees set forth in the Budget for such period; and provided, further, that nothing in the foregoing affects or limits the provision of the Carve Out set forth above in paragraph 19(a) above.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

(d)     Notwithstanding anything to the contrary in the Loan Documents, (1) there will be no positive variance or line-item reallocation permitted for Professional Fees set forth in the Budget; provided, however, the Professional Fees budgeted for any professional may be carried forward/carried back for such professional through the date of delivery of a Default Notice; (2) the amount set forth in the Budget for any professional will not be amended without the consent of LADI; (3) the amount set forth in the Budget for any professional will constitute a cap on such professional for its fees and expenses for the Budget Period; (4) at all times, the DIP Lender will reserve for (even though not under a present obligation to lend) all Professional Fees included in the Budget, such that there will be enough unfunded commitment available to fund the full amount of the Professional Fees included in the Budget upon allowance of such Professional Fees; and (5) after delivery of a Default Notice, the DIP Lender will lend all Professional Fees included in the Carve Out (and not previously paid), after allowance of such Professional Fees, in whole or part, and only in the amounts allowed.

20.     The terms and conditions of this order are effective and immediately enforceable upon its entry notwithstanding any potential application of FRBP 4001(a)(3) or 6004(h), or any other provisions of the FRBP or the Bankruptcy Code.

21.     Nothing contained herein allows the DIP Lender to recover attorneys' fees for opposing the LADI Stay Relief Motion (defined below) or related to the State Court Action (defined below) as a part of Loan Expenses.

22.     Notwithstanding anything to the contrary in the Loan Documents, no Event of Default will be deemed to have occurred if the Debtor supports or fails to oppose, or if this court grants, in full or in part, LADI's motion for relief from the automatic stay ("LADI Stay Relief Motion," Docket Nos. 80 and 81).

23.     Nothing in the Orders will affect the claims, rights, defenses and arguments in the pending state court action, Webcor Construction, LP v. Lendlease (US) Construction, Inc. et al., Los Angeles Superior Court Case No. 19STCV03357 ("State Court Action").

/ / /

10

24.     Notwithstanding anything to the contrary in the Orders or the Loan Documents, the Debtor may not surcharge the Property for the expenses the Debtor pays pursuant to the Budget pursuant to Bankruptcy Code § 506(c) or otherwise.

25.     The Interim Order remains in full force and effect for the Interim Period (as defined in the Interim Order).

26.     This order constitutes findings of fact and conclusions of law and will take effect and be fully enforceable immediately upon entry of this order. To the extent that any findings of fact are determined to be conclusions of law, such findings of fact are adopted as such, and to the extent that any conclusions of law are determined to be findings of fact, such conclusions of law are adopted as such.

27.     Counsel for the Debtor must serve a copy of this order on all creditors of the Debtor as set forth on the court's mailing matrix in this case, within three days of entry, and thereafter file a certificate of service.

###

Date: May 16, 2024

Deborah J. Saltzman
United States Bankruptcy Judge

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

11

# EXHIBIT 1

# TAB 1

May \_\_\_, 2024 $10,000,000.00

## PROMISSORY NOTE

### ARTICLE 1.
### Basic Loan Information

**1.1.    Terms.**  Each reference in this Promissory Note (this "***Note***") to any of the terms set forth below shall mean the respective information set forth next to such term.

| | |
|---|---|
| Lender | DTLA LENDING LLC, a California limited liability company |
| Borrower | OCEANWIDE PLAZA LLC, a Delaware limited liability company, Debtor and Debtor in Possession in the Bankruptcy Court |
| Loan Amount | Ten Million and No/100 Dollars ($10,000,000.00) |
| Maturity Date | The earliest of (a) the acceleration of the Loan following the occurrence of an Event of Default under the Loan Documents, as defined in the Loan Agreement, subject to Section 6.2 of the Loan Agreement; (b) the date of the closing of a sale or other transfer of the Property, as defined in the Loan Agreement; and (c) twelve (12) months from the Closing,, as defined in the Loan Agreement |
| Interest Rate: | Four and 90/100 Percent (4.90%) |
| Bankruptcy Case | Pending bankruptcy case, Case No. 2.24-bk-11057-DS under Chapter 11 of the Bankruptcy Code |
| Bankruptcy Court | United States Bankruptcy Court for the Central District of California, Los Angeles Division |

**1.2.    Conflicts.**  References in this Note to terms in the above Basic Loan Information shall incorporate the applicable Basic Loan Information.  In the event of any conflict between any Basic Loan Information and this Note, the latter shall control.

### ARTICLE 2.
### Promise to Pay

**2.1.    Promise.**  For value received, Borrower promises to pay to the order of Lender at 200 Park Avenue, 9th Floor, New York, New York 10166, or at such other place as the holder ("***Holder***") of this Note may from time to time designate in writing, in lawful money of the United

- 1 -

166361820.2

States, the Loan Amount, or so much thereof as may be advanced, with interest at the rate, and with principal and interest due and payable without claim, notice, presentment or demand, all as set forth below.

## ARTICLE 3.
## Interest and Payments

**3.1.    Rates of Interest.**  Subject to **Section 4.7** below, the principal balance outstanding and any unpaid interest from time to time shall bear interest from and after the date of the advance at the annual rate of the Interest Rate.

**3.2.    Method of Computation of Interest.**  Interest shall be calculated monthly on the basis of 1/360th of one year's interest on the outstanding principal and accrued interest at the applicable rate times the number of days during such month that principal and accrued interest are outstanding.  Borrower acknowledges that this computation results in a higher amount than if calculated on the basis of 1/365th of one year's interest.

**3.3.    Prepayment.**  Except as otherwise provided in the Loan Agreement (as defined herein), Borrower may prepay all or any part of the Loan Amount at any time without charge or premium.  Notwithstanding anything contained in this Note or in the Loan Documents (as defined in the Loan Agreement), Borrower shall have no right or be entitled to re-borrow any prepayment amounts paid after the prepayment is made, unless agreed to by Lender and Borrower and approved by the Bankruptcy Court.

**3.4.    Mandatory Prepayments**.  Payment of all amounts due to Lender is mandatory at closing of a sale or other transfer of the Property. If a sale of any Collateral, separate from the sale of the Property (pursuant to the Sale Procedures, as defined in the Loan Agreement) occurs, then all proceeds from such sale are immediately due and payable to (a) the County of Los Angeles to be applied to the County Senior Claims, to the extent such Collateral is subject to the liens securing the County Senior Claims, (b) after the County Senior Claims are paid in full to the Lender to be applied first to costs and interest and next to principal, and (c) after the Obligations are paid in full, to the estate to be held for further distribution, with all liens on such Collateral attaching to the proceeds of the sale of Collateral. Any sale of the Property shall occur through an escrow in which Lender shall reconvey or release its deed of trust, mortgage, liens, or security interests only upon Lender being paid in full.  Lender agrees to provide a payoff demand promptly upon written request from Borrower.  In addition, not later than five (5) business days after receipt thereof, Borrower shall pay to Lender to apply to the Loan balance, any cash proceeds from the sale or other disposition of any other property of the Debtor or its estate, including but not limited to any recovery by the Debtor or its estate (net of reasonable and customary fees and expenses relating thereto) in respect of any proceeding, case, matter, asset disposition, casualty event, condemnation, debt issuance recovery or equity issuance by Borrower or any direct or indirect subsidiary of Borrower, or its estate.

**3.5.    Payment In Full Upon Maturity Date.**  Payment of all accrued interest shall be deferred.  On the Maturity Date, the entire unpaid principal balance, all accrued interest, and any unpaid Loan Expenses (as defined in the Loan Documents) shall be due and payable.  Borrower shall pay Lender at Lender's address shown above or at such other place as Holder may designate

- 2 -

166361820.2

in writing.    BORROWER ACKNOWLEDGES AND UNDERSTANDS THAT THE OUTSTANDING PRINCIPAL AMOUNT OF THIS NOTE, PLUS ALL ACCRUED BUT UNPAID INTEREST THEREON, SHALL BE DUE AND PAYABLE TO HOLDER ON THE MATURITY DATE.  BORROWER FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT THIS NOTE DOES NOT PROVIDE FOR FULL AMORTIZATION OF THE PRINCIPAL BALANCE, AND THEREFORE UPON THE MATURITY DATE, A BALLOON PAYMENT OF PRINCIPAL WILL BE REQUIRED.

## ARTICLE 4.
### Additional Terms and Conditions

**4.1.    Loan Agreement; Security.**  This Note is made pursuant to a Secured Super-Priority, Debtor- in-Possession Loan Agreement by and between Lender and Borrower of even date herewith (as amended, restated, supplemented and/or otherwise modified from time to time, the "***Loan Agreement***").   Advances of the principal balance of this Note shall be made in accordance with the terms and conditions of the Loan Agreement.  This Note is secured by, among other things, a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith (as modified, amended and/or otherwise modified from time to time, the "***Deed of Trust***"), encumbering Borrower's interest in real property described in the Deed of Trust and improvements located or to be located thereon, and certain personal property.  (Such real property, improvements and personal property, and the rents, issues, profits and proceeds thereof, and any other real or personal property security given for this Note, are referred to collectively herein as the "***Property***.")

**4.2.    Application of Payments.**  All payments received, irrespective of how they may be designated by Borrower, shall be applied in this order: first, to amounts other than interest and principal, if any, owing under this Note, the Loan Agreement or the Deed of Trust; second, to accrued interest; third, to principal; except that, after the occurrence and during the continuation of any Event of Default (as defined herein), all amounts received shall be applied in such order as Holder, in its sole discretion, may elect.  Borrower waives the application of Sections 1479 and 2822(a) of the California Civil Code and any other statute or rule of law that would otherwise direct, or permit Borrower to direct, the order of application of payments made by Borrower or amounts otherwise received by Holder.

**4.3.    No Waiver By Acceptance of Overdue or Partial Payments.**  If Holder accepts payment of any overdue amount, or partial payment of an amount due and the remainder of such amount is unpaid, such acceptance shall in no event:  (a) constitute a cure or waiver of Borrower's default with respect to such overdue or unpaid amount; (b) prevent Holder from exercising any of its rights and remedies with respect to Borrower's default; or (c) constitute a waiver of Holder's right to require full and timely payment of amounts becoming due thereafter or to exercise any of Holder's rights and remedies for any failure to so pay.

**4.4.    Default.**  The occurrence of any "Event of Default" as defined in the Loan Agreement, shall constitute a default under this Note, subject to Section 6.2 of the Loan Agreement in all respects (each, an "***Event of Default***").

- 3 -

166361820.2

**4.5.     Acceleration Upon Default.**  Subject to Section 6.2 of the Loan Agreement in all respects, upon the occurrence of an Event of Default, Holder may, at its election, declare the entire balance of principal and accrued interest immediately due and payable.  A delay by Holder in exercising any right of acceleration after an Event of Default shall not constitute a waiver of the Event of Default or of the right of acceleration or any other right or remedy for such Event of Default.  The failure by Holder to exercise any right of acceleration as a result of an Event of Default shall not constitute a waiver of the right of acceleration or any other right or remedy with respect to any other Event of Default, whenever occurring.

**4.6.     Acceleration in Other Events.**  The entire balance of principal and interest is also subject to acceleration upon the occurrence of certain events, including certain transfers of the Property, as provided in the Loan Agreement and the Deed of Trust.

**4.7.     Interest Rate After Acceleration or Maturity.**  When this Note becomes due in full, whether by acceleration (upon an Event of Default or otherwise), by the occurrence of the Maturity Date, or in any other manner, if Borrower fails to pay all amounts due the unpaid Loan Amount and costs incurred (and any judgment or decree with respect thereto) shall, from and after the date due, bear interest until paid at an annual rate of nine hundred (900) basis points.  Borrower and Holder acknowledge and agree that, upon any late payment by Borrower, Holder will incur additional costs and expenses not contemplated hereunder, including processing and administration and servicing costs, lost opportunity costs, and an adverse impact on Holder to meet its obligations.  The exact amount of Holder's damages would be impracticable or extremely difficult to ascertain.  Borrower agrees that the default interest charged hereunder on such delinquent amounts represents a fair and reasonable estimate of the costs Holder will incur by reason of such late payment.

**4.8.     Enforcement Fees and Costs.**  Borrower shall reimburse Holder on the Maturity Date for all reasonable attorneys' fees and actual experts' fees and documented out-of-pocket costs, incurred by Holder for: (a) enforcement of this Note or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; or (b) representation of Holder in any action or proceeding relating to the Property, whether commenced by Holder or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings. All such fees and costs shall bear interest until paid at the rate applicable from time to time under this Note.

**4.9.     Increased Costs.**  Borrower shall reimburse Holder, within five (5) days of Holder's demand, for any increase in Holder's costs related directly or indirectly to the loan evidenced by this Note (the "***Loan***") that results from: (a) any existing or future law, rule, regulation, directive, treaty, or requirement or any interpretation thereof by any governmental, fiscal, monetary or other authority charged with the administration thereof or having jurisdiction over the Loan or Holder (collectively "***Authority***"), whether or not having the force of law, including (i) a change that causes Holder to maintain reserves or increased or additional reserves, special deposits or similar requirements with respect to assets of, deposits with, or for the account of, or credit extended by Holder, or imposes any capital adequacy requirement, or (ii) imposes any other condition the result of which is to increase the cost to Holder of making, funding or maintaining advances or to reduce any amount received by Holder in connection with such

- 4 -

166361820.2

advances, or require Holder to make any payment calculated by reference to the amount of such advances or interest received by it, or to reduce the rate of return on Holder's capital as a consequence of its obligations under this Note to a level below that which Holder could have achieved but for the imposition of such requirement (taking into account Holder's capital adequacy policies); (b) compliance by Holder with any request of any Authority; (c) violations by Borrower of the terms of this Note; or (d) the payment by Borrower of interest or principal payments following the due date.

**4.10.    Waivers By Borrower and Other Parties.**  The makers, endorsers, guarantors and sureties of this Note hereby waive diligence, demand, presentment, notice of non-payment, notice of dishonor, protest and notice of protest, agree that the time for performance of any obligation under this Note may be extended from time to time without notice, consent to the release without notice of any party liable hereon or herefor, consent to the addition without notice of parties liable hereon or herefor, and consent to the acceptance without notice of further security for this Note, including other types of security, all without in any way affecting their liability, and waive the right to plead any and all statutes of limitations as a defense to this Note, any guaranty hereof or any agreement to pay the obligations hereof, to the full extent permitted by law.

**4.11.    Full Payment.**  All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim.  All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any taxes, levies, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any federal, state, country or local government or any political subdivision or taxing authority thereof or therein.  Borrower shall indemnify Holder against any such taxes, levies, imposts, duties, charges and fees (other than taxes on the income of Holder imposed by any taxing authority) which may be assessed against Holder or claimed or demanded from Holder in respect of any amount payable by Borrower hereunder, and against any costs, charges, expenses or liability arising out of or in respect of such assessment, claim or demand, to the full extent permitted by law.

**4.12.    Time of the Essence.**  Time is of the essence with respect to the payment and performance of the obligations of this Note.

**4.13.    No Oral Waivers or Modifications.**  No provision of this Note may be waived or modified orally, but only in a writing signed by Holder.

**4.14.    Governing Law.**  This Note shall be governed by and construed under the internal laws of the State of California, without regard to conflict of law provisions.

**4.15.    Severability.**  Every provision of this Note is intended to be several.  If any provision of this Note is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect the other provisions hereof, which shall remain binding and enforceable.

**4.16.    Limitation Upon Interest.**  All agreements between the Borrower and Holder, now existing or hereafter arising, are hereby expressly limited so that in no event whatsoever shall the amount paid or agreed to be paid to Holder hereof for the use, forbearance or detention of money to be loaned hereunder or otherwise, or for the performance or payment of any covenant or

166361820.2

obligation contained herein, exceed the maximum amount permissible under applicable law.  If from any circumstance whatsoever fulfillment of any provision hereof exceeds the limit of validity prescribed by law, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstance Holder hereof shall ever receive as interest under this Note or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing hereunder (without charge for prepayment) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal, such excess shall be refunded to Borrower.

**4.17.    Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Note.

**4.18.    Successors and Assigns.**  This Note binds Borrower and its successors, assigns, heirs, administrators and executors, and inures to the benefit of Holder and its successors, assigns, participants, heirs, administrators and executors.

**4.19.    WAIVER OF RIGHT OF TRIAL BY JURY.**  To the greatest extent permitted by law, Borrower and Holder (by acceptance of this Note) hereby voluntarily, knowingly, intentionally, irrevocably and unconditionally waive any right to have a jury participate (including by way of jury trial) in resolving any dispute or litigation (whether based upon contract, tort or otherwise) between or among Borrower and any Holder arising out of or in any way related to this Note, the Loan, the Loan Documents (as defined in the Loan Agreement) or actions of Borrower or any Holder relating to the Loan and/or the lending relationship which is the subject of this Note.  This waiver is a material inducement to Lender to make the Loan.  At any time while the Bankruptcy Case remains pending, any such dispute or litigation, action or cause of action shall be submitted to and decided by the Bankruptcy Court to the extent of the Bankruptcy Court's jurisdiction.

[*Signature on Following Page*]

- 6 -

166361820.2

**IN WITNESS WHEREOF**, Borrower has executed this Promissory Note as of the date first written above.


**BORROWER:**

OCEANWIDE PLAZA LLC,
a Delaware limited liability company


By: _____

Bradley Sharp, Chief Restructuring
Officer

Signature Page
to
Promissory Note

# TAB 2

# SECURED SUPERPRIORITY DEBTOR IN POSSESSION FINANCING LOAN AGREEMENT

between

**DTLA LENDING LLC,**
a California limited liability company

AS LENDER

And

**OCEANWIDE PLAZA LLC,**
a Delaware limited liability company

AS BORROWER

DATED: May [____], 2024

166453742.14

**TABLE OF CONTENTS**

**Page**

ARTICLE 1 DEFINITIONS AND INTERPRETATION .......................................................... 5

    1.1.    **Definitions** ................................................................................................... 5

    1.2.    **Rules of Interpretation** ............................................................................ 11

ARTICLE 2 THE LOAN ........................................................................................................ 11

    2.1.    **Incorporation of Recitals** ........................................................................ 11

    2.2.    **Making of the Loan** ................................................................................. 11

    2.3.    **Repayment and Security; Interest** .......................................................... 11

    2.4.    **Loan Closing Deadline** ............................................................................ 11

    2.5.    **Superpriority** .......................................................................................... 11

    2.6.    **Voluntary Prepayments** .......................................................................... 12

    2.7.    **Mandatory Prepayments** ......................................................................... 12

ARTICLE 3 DISBURSEMENT .............................................................................................. 12

    3.1.    **Purpose and Use of Disbursement** .......................................................... 12

    3.2.    **Budget** ...................................................................................................... 12

    3.3.    **Conditions to First Disbursement** .......................................................... 13

    3.4.    **Conditions to Subsequent Disbursement** ............................................... 17

    3.5.    **Variances; Contingency** .......................................................................... 19

    3.6.    **Amounts Remaining After Final Disbursement** ..................................... 19

ARTICLE 4 BORROWER'S COVENANTS ........................................................................... 20

    4.1.    **Inspection** ................................................................................................. 20

    4.2.    **No Leases** ................................................................................................. 20

    4.3.    **Reserved** .................................................................................................. 20

    4.4.    **Alterations** .............................................................................................. 20

    4.5.    **Installation of Fixtures, Materials and Equipment** ................................. 21

    4.6.    **Insurance** ................................................................................................. 21

    4.7.    **Maintain Records** ................................................................................... 21

    4.8.    **Compliance with Applicable Law and Governmental Requirements** .......... 21

    4.9.    **No Land Use Changes** ............................................................................. 21

    4.10.    **Easements** .............................................................................................. 21

    4.11.    **Loan Fee; Loan Expenses** ...................................................................... 21

- i -

| 4.12. | Expenses and Disbursements Secured by Deed of Trust | 22 |
| 4.13. | Lender's Reliance | 22 |
| 4.14. | Hazardous Materials | 22 |
| 4.15. | Project Agreements | 23 |
| 4.16. | Continued Existence | 23 |
| 4.17. | Notices | 23 |
| 4.18. | Debt | 24 |
| 4.19. | Organizational Documents | 24 |
| 4.20. | Licenses | 24 |
| 4.21. | Maintenance | 24 |
| 4.22. | Project Agreements; Leases | 24 |
| 4.23. | No Purchase Options | 25 |
| 4.24. | Beneficial Ownership Regulation | 25 |
| 4.25. | Deferred Compensation and ERISA | 25 |
| 4.26. | Due on Sale and Encumbrance; Transfer of Interest | 25 |
| 4.27. | Additional Assurances | 26 |
| 4.28. | Case Covenants | 26 |
| ARTICLE 5 REPRESENTATIONS AND WARRANTIES OF BORROWER | | 26 |
| 5.1. | Organizational Matters | 26 |
| 5.2. | Authority of Individuals Executing Loan Documents | 27 |
| 5.3. | Power and Authority; Enforceability | 27 |
| 5.4. | Litigation | 27 |
| 5.5. | No Breach or Violation | 27 |
| 5.6. | Title | 27 |
| 5.7. | Assessment | 28 |
| 5.8. | Proper Subdivision | 28 |
| 5.9. | Permits | 28 |
| 5.10. | Flood Areas | 28 |
| 5.11. | Other Liens | 28 |
| 5.12. | Other Financing | 28 |
| 5.13. | Taxes | 28 |
| 5.14. | Hazardous Materials | 28 |
| 5.15. | No Default | 29 |

- ii -

166453742.14

**5.16.   Anti-Terrorism, Anti-Corruption, and Anti-Money Laundering Laws** ....... 29

**5.17.   Leases** ................................................................................................ 30

**5.18.   Intellectual Property** ...................................................................... 30

**5.19.   Beneficial Ownership Certification** ................................................ 30

**5.20.   Bankruptcy** ....................................................................................... 30

**5.21.   Nature of Representations and Warranties** .................................. 31

ARTICLE 6 DEFAULT AND REMEDIES ................................................................. 31

**6.1.   Events of Default** .............................................................................. 31

**6.2.   Default Notice and Remedies** ......................................................... 33

**6.3.   Remedies** ........................................................................................... 33

ARTICLE 7 INDEMNITIES; RELATIONSHIP OF LENDER AND BORROWER ............... 34

**7.1.   Indemnity and Liability of Borrower** ............................................ 34

**7.2.   Relationship Between Borrower and Lender** ................................. 35

ARTICLE 8 GENERAL PROVISIONS ...................................................................... 36

**8.1.   No Waiver** .......................................................................................... 36

**8.2.   Parties Bound and Benefited** .......................................................... 36

**8.3.   Notices** ............................................................................................... 36

**8.4.   Entire Agreement** ............................................................................. 37

**8.5.   Approvals, Consents, Waivers; Acceptability to Lender** ............. 37

**8.6.   Documentation** ................................................................................. 37

**8.7.   Assignment** ........................................................................................ 38

**8.8.   Time is of the Essence** ...................................................................... 38

**8.9.   Joint and Several Obligations** ........................................................ 38

**8.10.   Agency** .............................................................................................. 38

**8.11.   Governmental Regulations** ........................................................... 38

**8.12.   Enforcement Fees and Costs** ......................................................... 38

**8.13.   Litigation** ......................................................................................... 38

**8.14.   Survival** ............................................................................................ 39

**8.15.   Severability** ..................................................................................... 39

**8.16.   Disclosure** ........................................................................................ 39

**8.17.   Participations** ................................................................................. 39

**8.18.   Documents** ....................................................................................... 39

**8.19.   No Third Party Beneficiaries** ........................................................ 39

166453742.14

**8.20.**   **Assignment**.................................................................................... 39

**8.21.**   **Headings**........................................................................................ 39

**8.22.**   **Interpretation** ............................................................................... 39

**8.23.**   **Exhibits** ......................................................................................... 39

**8.24.**   **Controlling Law; Venue** ............................................................... 40

**8.25.**   **Relationship to Commitment Letter** ............................................ 40

**8.26.**   **Counterparts** ................................................................................. 40

**8.27.**   **WAIVER OF RIGHTS OF TRIAL BY JURY** ............................... 41

## EXHIBITS

Exhibit A      Description of Real Property

Exhibit B      Budget

Exhibit C      Payment Request

166453742.14

# SECURED SUPERPRIORITY DEBTOR IN POSSESSION FINANCING LOAN AGREEMENT

This DEBTOR IN POSSESSION FINANCING LOAN AGREEMENT (this "***Agreement***") is made as of May [___], 2024, by and between DTLA LENDING LLC, a California limited liability company ("***Lender***") and OCEANWIDE PLAZA LLC, a Delaware limited liability company ("***Borrower***" or "***Debtor***"). This Agreement provides for a loan to Borrower, the proceeds of which are to be used for the financing of that certain Real Property (as defined below).

## RECITALS

A.      Borrower is the fee simple owner of land generally located at 1101 S. Flower Street, City of Los Angeles, County of Los Angeles (the "***County***"), State of California (the "***State***"), and legally described on <u>Exhibit A</u> attached hereto and incorporated herein by reference (the "***Real Property***") and other assets. The Real Property consists of a mixed-use development and contains improvements generally consisting of partially constructed structures. While there was commencement of construction, Borrower has suspended construction activity and there exists unpaid creditors and mechanic lien holders.

B.      There is now pending a bankruptcy case, Case No. 2:24-bk-11057-DS ("***Case***") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division ("***Bankruptcy Court***") in which the Borrower is the Debtor and Debtor in Possession. Borrower retains possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its business as a debtor in possession.

C.      On April 26, 2024, the Bankruptcy Court entered its Interim Order (I) Authorizing The Debtor To Obtain Postpetition Financing, (II) Granting Liens And Superpriority Administrative Expense Claims, (III) Modifying The Automatic Stay And (IV) Scheduling A Final Hearing, [Case Docket No. 176 (the "***Interim Order***").

D.      Pursuant to the Interim Order, Lender has made an advance to Borrower in the cumulative amount of One Million Four Hundred Forty-Nine Thousand Two Hundred Twenty-Two Dollars ($1,449,222), subject to permitted variances and as otherwise set forth in the Interim Order (the "***Prior Advance***"). Borrower has now requested, and the Lender has agreed, to make additional loans, when added to the Prior Advances, shall not to exceed Ten Million Dollars ($10,000,000) (the "***Loan***"). The Loan shall be on the terms and conditions set forth in this Agreement, the Note and the Deed of Trust and the other Loan Documents.

## ARTICLE 1
## DEFINITIONS AND INTERPRETATION

**1.1.    Definitions.** The following terms, when used with initial capital letters in this Agreement, have the following meanings, whether used in the singular or plural:

"***Additional City Required Expenses***": As defined in **Section 3.5.1**.

"*Agreement*":  This Debtor In Possession Financing Loan Agreement.

"*Anti-Corruption Laws*": All laws, rules, and regulations of any jurisdiction applicable to Borrower or its members from time to time concerning or relating to bribery or corruption, including, without limitation, the United States Foreign Corrupt Practices Act of 1977 and the rules and regulations thereunder and the U.K. Bribery Act 2010 and the rules and regulations thereunder.

"*Anti-Money Laundering Laws*":   Those laws, regulations and sanctions, state and federal, criminal and civil, that (a) limit the use of and/or seek the forfeiture of proceeds from illegal transactions; (b) limit commercial transactions with designated countries or individuals believed to be terrorists, narcotics dealers or otherwise engaged in activities contrary to the interests of the United States; (c) require identification and documentation of the parties with whom a financial institution conducts business; or (d) are designed to disrupt the flow of funds to terrorist organizations. Such laws, regulations and sanctions shall be deemed to include the USA PATRIOT ACT of 2001, Publ. L. No. 107-56, the Bank Secrecy Act, 31 U.S.C. Section 5311, *et seq.*, the Trading with the Enemy Act, 50 U.S.C. App. Section 1, *et seq.*, the International Emergency Economic Powers Act, 50 U.S.C. Section 1701, *et seq.*, and the sanction regulations promulgated pursuant thereto by OFAC (as defined below), as well as laws relating to prevention and detection of money laundering in 18 U.S.C. Sections 1956 and 1957, and executive orders promulgated pursuant to any of the foregoing.

"*Applicable Law*":  All present and future federal, state and local laws, ordinances, rules, regulations, decisions, and other requirements of Governmental Authorities applicable to the Property or Borrower.

"*Beneficial Ownership Certification*": Means a certification regarding beneficial ownership required by the Beneficial Ownership Regulation, which certification shall be substantially in form and substance satisfactory to Lender.

"*Beneficial Ownership Regulation*":  means 31 C.F.R. § 1010.230.

"*Budget*":  Exhibit B, as may be modified by Borrower and approved by Lender.

"*Business Day*":   Any day other than a Saturday or a Sunday or any day on which commercial banks in Los Angeles, California, are authorized or required to close.

"*Carve Out*": Shall mean the sum of (a) all fees payable to the Clerk of Court and payable to the Office of the United States Trustee (collectively, "*Clerk and UST Fees*"), and (b) all reasonable unpaid fees and expenses of the Borrower's retained professionals for services rendered and expenses incurred prior to the Lender's delivery of a Default Notice (for which the noticed Event of Default is not subsequently cured in accordance with **Section 6.2**) and to the extent such amount is expressly set forth in the Budget as of the date of the delivery of a Default Notice ("*Professional Fees*"), and additionally subject to further order of the Bankruptcy Court allowing such Professional Fees and expenses under Bankruptcy Code § 330.

"*Closing*": Means the completion of the transactions contemplated under **Section 3.3**.

- 6 -

"***Collateral***":  The personal property of Borrower or which is to be acquired as part of or otherwise used in or for the Property, and all other personal property of every kind which is or is to become subject to a security interest in favor of Lender to secure Borrower's obligations under the Loan Documents.  Collateral shall include all tangible and intangible property, and any and all refunds, rents, issues, profits, proceeds, substitutions, or exchanges thereof, including, without limitation, any and all rights and claims arising under state law, or arising under, in or related to the Bankruptcy Code or rules or otherwise.  However, should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Collateral is limited to only those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended).  Notwithstanding the foregoing, Collateral shall not include claims and causes of action under Chapter 5 and Section 724(a) of the Bankruptcy Code or proceeds thereof.

"***Control***":  Means the possession, directly or indirectly, of the power to direct or cause the direction of the management, policies or activities of a person, whether through ownership of voting securities, by contract or otherwise.

"***Costs***": The total of all costs, expenses, and fees specified in the Budget.

"***County Senior Claims***": As defined in **Section 2.7**.

"***Cure Period***": As defined in **Section 6.1**.

"***Deed of Trust***": A Deed of Trust, Assignment of Rents and Leases, Security Agreement, and Fixture Filing" of even date herewith securing the Loan and all of the Borrower's Obligations under all of the Loan Documents.

"***Default Notice***": As defined in **Section 6.1**.

"***DIP Liens***":  All liens and security interests granted to Lender in connection with the Loan, including through this Agreement, the Term Sheet and Orders.

"***Disbursement***":  A disbursement of funds by Lender to or for the account of Borrower as provided herein.

"***Environmental Indemnity***":  An unsecured Environmental Indemnity executed by Borrower of even date herewith in favor of Lender.

"***Event of Default***":  As defined in **Section 6.1**.

"***Final Order***": the Final Order (I) Authorizing The Debtor To Obtain Postpetition Financing, (II) Granting Liens And Superpriority Administrative Expense Claims, and (III) Modifying The Automatic Stay, dated May __, 2024 [Bankruptcy Case Docket No. __), which order shall be acceptable to the Lender in its sole discretion.

- 7 -

166453742.14

"*Governmental Authority*":  Any governmental entity which has jurisdiction or control of the Real Property, development thereof, or construction thereon, including any state, political subdivision thereof, city, county, agency, department, commission, board, bureau or instrumentality of any of them.

"*Hazardous Materials*":  Any substance now or in the future defined or listed in, or otherwise classified pursuant to or regulated by, any Applicable Laws as a "pollutant," "contaminant," "hazardous substance," "hazardous material," "hazardous waste," "infectious waste," "solid waste," "toxic waste," "toxic substance," "toxic pollutant," "extremely hazardous waste," "restricted hazardous waste," "chemical substance," "special waste," "regulated material," "hazardous chemical," or any similar substance or material, including any natural, artificial or synthetic element, chemical, condition, compound, substance, material, product or waste, including crude oil, petroleum, petroleum fractions, wastes or byproducts, MTBE, BTEX, PCE, TCE, TCA or other chlorinated or non-chlorinated solvents, metal, sludge, solid waste, asbestos or asbestos-containing material, flammable, explosive, radioactive, freon, methane, radon, hazardous pH, pesticide, herbicide, fungicide, rodenticide, agricultural chemicals, economic poisons, or any substance whose presence in, on, under, or emanating from any portion of the Property could subject the owner or the occupant of the Property to civil or criminal penalties, damages, or responsibility for clean-up thereof.

"*Hazardous Materials Laws*":  All present and future federal, state and local laws, ordinances, rules, statutes, codes, orders, decrees, judgments, injunctions, judicial or administrative decisions or policy or guideline, regulations, decisions and other requirements of Governmental Authorities relating to Hazardous Materials, health, industrial hygiene, environmental conditions or the regulation or protection of the environment, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601, et seq.), the Superfund Amendment and Reauthorization Act of 1986, the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. § 1801 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Oil Pollution Act of 1990 (Pub. L. No. 101-380, 104 Stat. 484), the Clean Air Act (42 U.S.C. § 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Safe Drinking Water Act (42 U.S.C. § 201 et seq.), the Occupational Safety and Health Act (29 U.S.C. § 651), the Emergency Planning and Community Right-to-Know Act of 1986 (42 U.S.C. § 11001 et seq.), the Mine Safety and Health Act of 1977 (30 U.S.C. § 801 et seq.) the Safe Drinking Water Act (42 U.S.C. § 300f et seq.), as any thereof may be amended from time to time, and the rules and regulations relating thereto.

"*Improvements*":  The improvements now existing or to be constructed on and fixtures now installed or to be installed on the Real Property.

"*Insurance Agreement*": An Insurance Agreement executed by Borrower of even date herewith in favor of Lender.

"*Lease*": Any lease or other occupancy agreement, written or oral, granting any person a right to possession of any portion of the Property.

166453742.14

"***Lists***":   The Specially Designated National and Blocked Persons List maintained by OFAC pursuant to the Anti-Money Laundering Laws and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any of the Anti-Money Laundering Laws.

"***Loan***":   The loan which is the subject of this Agreement, the Orders of the Bankruptcy Court, the Note and the other Loan Documents.

"***Loan Closing Deadline***":  Means the date on which the Closing occurs, provided, however that in no event shall the Closing occur later than thirty (30) days after the entry of the Final Order.

"***Loan Documents***":   All documents and instruments to be executed by Borrower in favor of Lender in connection with the Loan, including the Term Sheet and all of the documents listed in **Section 3.3.1**, in each case as originally executed or as from time to time supplemented, modified or amended, but not including any Guaranty or any Environmental Indemnity.

"***Loan Expenses***":   All reasonable costs and expenses of Lender in documenting, closing and administering the Loan, monitoring the Property, and enforcing the provisions of the Loan Documents, including recording and filing charges, tax service fees, escrow charges, document preparation (including reasonable attorneys' and paralegals' fees incurred in connection with the preparation, review and/or negotiation of the Loan Documents), costs of certified copies of instruments, the cost of premiums on surety bonds or other escrow for administering Disbursements, and charges and costs of Lender's appraisers, both staff and non-staff, if any.

"***Material Adverse Change***":  shall mean a material and adverse effect relating to (a) the business, profits, management, operations or condition (financial or otherwise) of Borrower, or the Property or any portion thereof, (b) the enforceability, validity, perfection or priority of the lien of the DIP Liens, the Deed of Trust, or the other Loan Documents or (c) the ability of Borrower to perform its obligations under each of the Loan Documents to which Borrower is a party, (d) the existence of any event, condition or act which materially adversely affects (i) the Property, (ii) the performance by Borrower of any of their respective obligations under any of the Loan Documents, or (iii) the priority of the liens, charges, encumbrances or security interests created by any of the Loan Documents.

"***Maturity Date***":   shall mean the earliest of (a) the acceleration of the Loan following the occurrence of an Event of Default under the Loan Documents subject to **Section 6.2** hereof; (b) the date of the closing of a sale or other transfer of the Property; and (c) twelve (12) months from the Closing.

"***Note***":   A Promissory Note of even date herewith executed by Borrower evidencing Borrower's obligation to repay the Loan.

"***Obligations***": All obligations of Borrower under the Orders, and the Loan Documents.

"***Order(s)***":  The Interim Order together with the Final Order.

"***Payment Request***":  means request in the form of Exhibit C.

- 9 -

166453742.14

"***Permitted Encumbrances***":  shall mean, collectively, (a) the lien and security interests created by the Deed of Trust and the other Loan Documents, (b) all liens, encumbrances and other matters disclosed in a preliminary report dated prior to the date of this Agreement, provided that such liens shall be junior to the lien and security interests created by the Deed of Trust and the other Loan Documents, (c) liens, if any, for taxes, assessments or other charges imposed by any Governmental Authority not yet due or which are being contested in good faith by appropriate proceedings, (d) such other title and survey exceptions as Lender has approved or may approve in writing in Lender's sole and absolute discretion, (e) liens incurred or deposits made in connection with workers' compensation, unemployment insurance and other types of social security benefits or to secure the performance of tenders, bids, leases, contracts, statutory obligations and other similar obligations incurred in the ordinary course of business; (f) non-material liens of landlords and liens of statutory carriers, warehousemen, mechanics, materialmen and other liens in existence prior to issuance of the Orders or thereafter imposed by law, (g) easements, all applicable development, subdivision, use and site plan agreements, or similar agreements, rights-of-way, covenants, consents, reservations, encroachments, variations and zoning and other restrictions, charges or encumbrances and interest of ground lessors which do not materially interfere with the ordinary conduct of Borrower's business, (h) pre-petition liens granted pursuant to any pre-petition financing,  provided such liens are junior to the lien and security interests created by the Deed of Trust and the other Loan Documents, (j) liens junior to the senior liens contemplated hereby that are granted by the Bankruptcy Court as adequate protection, and (k) rights of collecting banks or other financial institutions having a right of setoff, revocation, refund or chargeback with respect to money or instruments on deposit with or in the possession of such financial institution.

"***Plan***": As defined in **Section 3.3.11**.

"***Potential Default***":  The existence of any act, event or condition which would, with or without notice, the passage of time or both, constitute an Event of Default.

"***Project***":  The project for development of the Real Property, construction of the Improvements, acquisition and installation of the Collateral, and all other work necessary to make the Project usable and complete for the intended purposes, all in accordance with the Plans and Specifications and this Agreement.

"***Project Agreements***":  All agreements entered into by Borrower in connection with the ownership, construction, operation or management of the Project or the Property, as the same may be supplemented, amended or modified from time to time.

"***Property***":  The Real Property, the Improvements and the Collateral, and each of them, and every and any part thereof and/or interest therein.

"***Real Property***":  The real property described in **Exhibit A** and at the street address 1101 S. Flower Street, Los Angeles, California, and all improvements and fixtures now or hereafter located thereon, and all easements and appurtenances thereof.

"***Recordation***": The recordation of the Deed of Trust and the assignment of lessor's interest in leases in the official records of the county in which the Real Property is located.

"***Remedies Hearing***": As defined in **Section 6.1**.

"*Sale Procedures*": As defined in **Section 3.3.11**.

"*Superpriority DIP Administrative Expenses*": As defined in **Section 2.5**.

"*Term Sheet*": That certain "Debtor In Possession Term Sheet," filed in the Case at Docket No. 93.

"*Third-Party Consent*":    In connection with Borrower's assignment to Lender of Borrower's rights under a contract, agreement, entitlement or other arrangement with a third party, a written consent by such third party to such assignment, in form and content acceptable to Lender, including such third party's agreements, waivers and estoppels as may be required by Lender to assure Lender's ability to enforce such contract, agreement, entitlement or other arrangement.

**1.2.    Rules of Interpretation.**  The words "herein," "hereof," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision hereof.   All references to "Articles," "Sections," "Exhibits" and other parts or subdivisions are to the corresponding Articles, Sections, Exhibits or parts or subdivisions of this Agreement, unless otherwise specified.  The terms "include," "including" and forms thereof mean inclusive without limitation.  The term "day" means calendar day, except when used in the defined term Business Day.  The term "person" means any individual, corporation, partnership, limited liability company, Governmental Authority, or other entity of any kind.

## ARTICLE 2
## THE LOAN

**2.1.    Incorporation of Recitals**.  The Recitals and exhibits to this Agreement attached hereto are incorporated into this Agreement and expressly made a part hereof by this reference.

**2.2.    Making of the Loan.**  Lender shall make and disburse, and Borrower shall accept and use the Loan in accordance with all of the provisions of this Agreement.  Lender shall make the Loan to Borrower by means of one or multiple Disbursements during the term of this Agreement and in accordance with this Agreement, the Budget or the Loan Documents, and there shall be no funding of the Loan other than to the extent of a Disbursement actually made.

**2.3.    Repayment and Security; Interest**.  Borrower's obligation to repay the Loan is evidenced by the Note and is secured by, among other things, the Deed of Trust.  Interest on the Loan shall accrue at the rate provided in the Note on each Loan advance from the time made.

**2.4.    Loan Closing Deadline.**  Lender's agreement to make the Loan is subject to Borrower's satisfaction of all of the conditions precedent to the Disbursement, set forth in **Section 3.3**, not later than the Loan Closing Deadline.

**2.5.    Superpriority**.  The Loan and all Obligations and all documents or instruments which evidence or secure the Loan and Obligations shall at all times be (a) an allowed super-priority administrative expense claim with priority over all other administrative expense claims and unsecured claims against the Borrower and the Estate pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code until such time as the Obligations are indefeasibly paid in full

- 11 -

("**Superpriority DIP Administrative Expenses**"), other than the secured claims of the County of Los Angeles for past, present and future first priority tax liens ("**County Senior Claims**") established in accordance with applicable state law, and (b) secured by a first priority senior lien against all unencumbered property of the Borrower and the Estate granted pursuant to sections 105, and 364(c)(2) of the Bankruptcy Code, and (c) secured by a first priority "priming lien" against all property of the Borrower and the Estate that may be subject to a lien or encumbrance under sections 105 and 364(d)(1) of the Bankruptcy Code, except County Senior Claims. Borrower shall take all such actions as Lender reasonably requests from time to time to perfect or continue the perfection of the DIP Liens. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be pari passu with or senior to the Superpriority DIP Administrative Expenses, except County Senior Claims.

**2.6.   Voluntary Prepayments**.  Voluntary prepayments of the Loan in part or full is permitted at any time without penalty.  Prepayments shall not be re-advanced, unless a re-advance is agreed by Lender and Borrower.

**2.7.   Mandatory Prepayments.**  Payment of all amounts due to Lender is mandatory at closing of a sale or other transfer of the Property. If a sale of any Collateral, separate from the sale of the Property (pursuant to the Sale Procedures) occurs, then all proceeds from such sale are immediately due and payable to (a) the County of Los Angeles to be applied to the County Senior Claims, to the extent such Collateral is subject to the liens securing the County Senior Claims, (b) after the County Senior Claims are paid in full to the Lender to be applied first to costs and interest and next to principal, and (c) after the Obligations are paid in full, to the estate to be held for further distribution, with all liens on such Collateral attaching to the proceeds of the sale of Collateral. Any sale of the Property shall occur through an escrow in which Lender shall reconvey or release its deed of trust, mortgage, liens, or security interests only upon Lender being paid in full.  Lender agrees to provide a payoff demand promptly upon written request from Borrower.  In addition, not later than five (5) Business Days after receipt thereof, Borrower shall pay to Lender to apply to the Loan balance, any cash proceeds from the sale or other disposition of any other property of the Debtor or its estate, including but not limited to any recovery by the Debtor or its estate (net of reasonable and customary fees and expenses relating thereto) in respect of any proceeding, case, matter, asset disposition, casualty event, condemnation, debt issuance recovery or equity issuance by Borrower or any direct or indirect subsidiary of Borrower, or its estate.

**ARTICLE 3
DISBURSEMENT**

**3.1.   Purpose and Use of Disbursement.**  The Disbursement shall be used by Borrower only for the maintenance and preservation of the Property and as set forth in the Budget and for such other purposes as may be permitted under the Final Order.  All Disbursements shall be only for the purpose, and shall be used by Borrower only for, the payment of Costs as specified on the corresponding Payment Request, and in accordance with the Budget.  Borrower shall not use any funds other than Disbursements hereunder to pay for the Costs without Lender's prior written consent.

**3.2.   Budget**.  The Budget in the form attached hereto as **Exhibit B** represents the final budget for Costs submitted by Borrower and approved by Lender.  Borrower acknowledges the

- 12 -

166453742.14

accuracy and sufficiency of such Budget, and Borrower shall make no revision thereof except as Lender may permit in its sole discretion subject to approval by the Bankruptcy Court. All Disbursements shall be charged against the appropriate cost line-item on the Budget, and, subject to reallocation of amounts pursuant to **Section 3.5**, the amounts shown in the Budget for each line-item represent the maximum amount which will be paid by Disbursement for that item.

**3.3.** **Conditions to First Disbursement.** Lender's obligation to make the first Disbursement is subject to Borrower's satisfaction of all of the following conditions precedent:

**3.3.1.** **Documents**. Lender shall have received all of the following instruments and documents, in form, content and execution acceptable to Lender:

(a) **Loan Documents.** The following Loan Documents:

(1) this Agreement;

(2) the Note;

(3) the Deed of Trust;

(4) such other security agreements as Lender may require;

(5) a filing authorization to file a UCC-1 financing statement suitable for filing in the State of California;

(6) an Assignment of Lease, creating a first priority assignment of Borrower's interest in all present and future leases of any portion of the Property;

(7) assignments of each of the following, creating first-priority security interests therein:

a) all Project Agreements; and

b) to the full extent to which they may by law be assigned, all rights, licenses, permits, franchises, authorizations and approvals relating to the Property or required for the use, occupancy or operation of the Property;

(8) the Insurance Agreement; and

(9) any other Loan Documents required by Lender to be executed in order to fund the Loan.

(b) **Environmental Indemnity Agreement**. The Environmental Indemnity.

- 13 -

(c) **Insurance Policies.** All insurance policies required by **Section 4.6** or by the Deed of Trust (or, as Lender may permit, binders, certificates or other evidence thereof), all of which shall be in full force and effect.

(d) **Other Documents.** Any subordination, assignments or other agreements required by Lender.

(e) **Miscellaneous.** Such other agreements, statements, papers and documents as may be required by this Agreement or as Lender may otherwise require.

3.3.2. **Final Order**. The Bankruptcy Court shall have entered the Final Order in form and substance acceptable to the Lender in its sole discretion, and no stay of the Final Order shall have been issued, which Final Order shall be acceptable to the Lender in its sole discretion and shall provide, among other terms, substantially the following:

(a) The Lender is granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority priming postpetition security interests in and liens in and upon the Property and Collateral, securing all obligations of Borrower to the Lender hereunder, in accordance with Sections 364(c)(2) and 364(d) of the Bankruptcy Code, securing the total amount of the Obligations. Without the necessity of the execution, recordation of filing by Borrower or the Lender of any mortgages, deeds of trust, security agreements, agreements, pledge agreements, financing statements or similar documents or instruments, or further action of Borrower or Lender as follows: (a) pursuant to Sections 105 and 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority liens on and security interests in all Collateral that is not otherwise subject to any liens or security interests, and (b) pursuant to Sections 105 and 364(d)(1) of the Bankruptcy Code, which DIP Liens are valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority "priming" liens on and security interests in all Collateral, senior to all other prepetition and postpetition liens or interests, including without limitation judgment liens, mechanics' liens, liens imposed by covenant, restriction, deed of trust or mortgage, subject and subordinate only to (i) the liens securing the County Senior Claims and (ii) the Carve Out.

(b) Lender is granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected first priority priming postpetition security interests in and liens in and upon the Collateral, without the necessity of the execution, recordation of filing by the Debtor or the Lender of any mortgages, deeds of trust, security agreements, agreements, pledge agreements, financing statements or similar documents or instruments (a) pursuant to Sections 105 and 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority liens on and security interests in all Collateral that is not otherwise subject to any liens or security interests, and (b) pursuant to Sections 105 and 364(d)(1) of the Bankruptcy Code, valid, binding, continuing, enforceable, non-avoidable, automatically and properly perfected first priority "priming" liens on and security interests in all Collateral, senior to all other prepetition and postpetition liens or interests, including without limitation judgment liens, mechanics' liens, liens imposed by covenant, restriction, deed of trust or mortgage, subject and subordinate only to (i) the liens securing the County Senior Claims and (ii) the Carve Out.

- 14 -

(c)      The DIP Liens are and shall remain valid, perfected, binding, enforceable, non-avoidable and effective liens by operation of law as of the entry of the Interim Order without any further action by the Debtor or the Lender and without the necessity of executing, filing or recording any financing statements, security agreements, mortgages, deeds of trust, filings with a governmental unit or other documents, agreements, or instruments or the taking of any other actions (including taking possession of any Collateral) to validate, enforce or perfect the DIP Liens or to entitle the Lender to the priorities granted herein, which may otherwise be required under state or federal law. If the Lender requests that the Debtor execute and deliver any financing statements, security agreements, mortgages, deeds of trust, filings with a governmental unit, or other documents, agreements, or instruments considered by the Lender to be necessary or desirable to further evidence the perfection of the DIP Liens, the Debtor is hereby authorized and directed to execute and deliver any such documents, agreements, and instruments to the Lender, and the Lender is hereby authorized to file or record any such documents, agreements or instruments in its discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, enforce or perfect the DIP Liens. The Lender, in its sole discretion, may file a copy of the Interim Order and/or the Final Order as a financing statement or for any other reason with any filing or recording office, any registry of deeds or similar office, in addition to or in lieu of other financing statements, mortgages, deeds of trust, notices of liens or similar documents, agreements, or instruments, and any such filing, recording, or similar office is directed to accept such filing as a financing statement. The automatic stay contained in Section 362 of the Bankruptcy Code is vacated and modified solely to the extent necessary for the Lender to permit and facilitate the recording and perfection of the DIP Liens in and to the Collateral, as set forth in the Final Order

(d)      If an order is later entered in the Case authorizing the transfer of the Property pursuant to a credit bid under Bankruptcy Code Section 363(k) or otherwise, such order shall require that the Obligations and County Senior Claims be paid in full in cash to the Lender and Los Angeles County, respectively, before or on the day of the closing of the transfer of the Property.

(e)      The terms of the Final Order will be binding upon and inure to the benefit of the Lender, the Debtor, and their respective successors and assigns. All of the findings of fact, terms, conclusions of law and provisions of the Final Order and any actions taken pursuant to the Final Order and Loan Documents will survive the entry of any order: (i) confirming a chapter 11 plan in the Case, (ii) appointed a chapter 11 trustee in the Case, (iii) converting the Case to a chapter 7 case, (iv) dismissing the Case, (v) withdrawing the reference of the Case from the Bankruptcy Court, and (vi) any order providing for abstention from handling or exercising jurisdiction over all or any part of this case. All of the protections granted to the Lender and the other terms and provisions of the Orders shall continue in full force and effect notwithstanding the entry of any such order(s), and the DIP Liens and Superpriority DIP Administrative Expenses created through the Orders shall maintain their priority as provided by their terms until all of the Obligations are indefeasibly paid and satisfied in full in cash; for the avoidance of doubt in the event of a foreclosure on or other transfer of the Property, the DIP Liens and Superpriority DIP Administrative Expenses shall have the priorities granted by the Orders without further action or entry of any additional orders by this Court. The obligations of the Debtor created through the

- 15 -

166453742.14

Orders and Term Sheet shall not be discharged by the entry of any order confirming a chapter 11 plan in this Case.

(f)     The DIP Liens may be subject to deed restrictions, equitable servitudes or other rights in the Collateral as may be acceptable to the Lender in its sole and absolute discretion.

(g)     The DIP Liens shall not be primed, surcharged, altered, marshalled or otherwise adversely affected in any way without the Lender's consent.

(h)     If the Lender requests that the Borrower execute and deliver any financing statements, security agreements, mortgages, deeds of trust, filings with a governmental unit, or other documents, agreements, or instruments considered by the Lender to be necessary or desirable to further evidence the perfection of the DIP Liens, the Borrower is authorized and directed to execute and deliver any such documents, agreements, and instruments, and the Lender is authorized to file or record any such documents, agreements or instruments in its discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code; provided, however, that no such filing or recordation shall be necessary or required in order to create, enforce or perfect the DIP Liens, which is modified solely to the extent necessary for the Lender to permit and facilitate the recording and perfection of the DIP Liens.

(i)     The Lender, in its sole discretion, may file a copy of the Final Order as a financing statement or for any other reason with any filing or recording office, any registry of deeds or similar office, in addition to or in lieu of other financing statements, mortgages, deeds of trust, notices of liens or similar documents, agreements, or instruments, and any such filing, recording, or similar office is directed to accept such filing as a financing statement, without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code which is modified solely to the extent necessary for the Lender to permit and facilitate the recording and perfection of the DIP Liens.

(j)     If an order is later entered in the Case authorizing the transfer of the Property pursuant to a credit bid under Bankruptcy Code Section 363(k) or otherwise, such order shall require that all obligations of the Borrower to the Lender and the County Senior Claims shall be paid in full before or on the day of the closing of the transfer of the Property.

(k)     The Borrower may not seek to surcharge any Property or Collateral under Bankruptcy Code Section 506(c) for the expenses the Borrower is authorized to pay with the proceeds of the Loan.

(l)     The Bankruptcy Court finds that the Lender has proceeded in good faith and is entitled to the protections available to a lender under Bankruptcy Code Section 364(e).

**3.3.3.     Vesting.**  Prior to Recordation, Borrower is vested with fee simple title in and to the Real Property.

**3.3.4.     Closing.**  Recordation shall have occurred.

- 16 -

166453742.14

**3.3.5.   UCC-1 Financing Statement.**  The UCC-1 financing statement required by **Section 3.3.1** shall have been duly filed as Lender may require.

**3.3.6.   No Default.**  No Event of Default or Potential Default shall have occurred and be continuing or would result from the making of such disbursement.

**3.3.7.   Representations and Warranties.**  Borrower's representations and warranties in **ARTICLE 5** shall be true and correct in all material respects on and as of the date of each Disbursement with the same effect as if made on such date.

**3.3.8.   Compliance with Law and Other Requirements.**  Borrower and the Property shall be in compliance with all Applicable Laws, all permits, consents, licenses or approvals of any Governmental Authority and all conditions of any thereof, all zoning, land use and planning requirements, all subdivision and parcel map requirements and conditions, all requirements and conditions imposed by any public utility in connection with the use of all or any part of the Real Property or the supply of utilities to all or any part of the Real Property.

**3.3.9.   Other Documents and Assurances.**  Lender shall have received such other documents, certificates, consents, approvals and assurances as it may believe reasonably necessary.  Borrower shall have executed and acknowledged (or caused to be executed and acknowledged) and delivered to Lender all documents, and taken all actions, required by Lender from time to time to confirm the rights created or now or hereafter intended to be created under the Loan Documents, or otherwise to carry out the purposes and the transactions contemplated thereunder.

**3.3.10.   Evidence of Satisfaction of Conditions.**  Borrower shall have furnished such evidence as Lender may reasonably require, in form and content acceptable to Lender and at such times as Lender may require, to establish the satisfaction of all conditions of the Disbursement, and Lender shall have had a reasonable time in which to review and approve such evidence.

**3.3.11.   Sale Procedures.**  The Borrower and Lender shall have conferred in good faith about detailed procedures for the sale of the Property and other Collateral pursuant to Bankruptcy Code Section 363 and/or through a Chapter 11 plan (the "***Plan***"), including among other procedures and terms what constitutes a qualified bid and a qualified bidder, possible stalking horse and overbid terms, the timing of an auction, sale and confirmation hearings (collectively, the "***Sale Procedures***").

**3.4.   Conditions to Subsequent Disbursement**.  Lender's obligation to make any Disbursement, including the first Disbursement, is subject to Borrower's satisfying all of the following conditions precedent:

**3.4.1.   Other Conditions**.  All conditions of **Section 3.3** shall have been and shall remain satisfied.

**3.4.2.   Payment Request**.  Borrower shall have submitted, not more frequently than one (1) time per month, unless otherwise agreed to by Lender and Borrower, and Lender shall have approved, a certified Payment Request for each such Disbursement.  The Payment Request

shall not be delivered later than 2:00 p.m. PDT and at least three (3) Business Days prior to the date the Disbursement is requested to be made. The Disbursement shall be made to an escrow account for release to Borrower, subject to receipt of:

(a)   the Payment Request;

(b)   receipt and approval by Lender of copies of invoices for payments made by the Disbursement immediately prior to the Payment Request; and

(c)   either (a) receipt of written consent from Lender, Los Angeles Downtown Investment LP, the United States Trustee, and Los Angeles County to amend the Budget to include additional payments in the Budget, or (b) order of the Bankruptcy Court authorizing the inclusion of such additional payments in the Budget.

**3.4.3.   Additional Required Documentation**.  If Lender so requests, Lender shall have received, in form and content acceptable to Lender original bills, invoices, documents of title, vouchers, statements, receipts and any other documents evidencing the total amount expended, incurred or due for any requested items.

**3.4.4.   Representations and Warranties**.  Borrower's representations and warranties in **ARTICLE 5** shall be true and correct in all material respects on and as of the date of each Disbursement with the same effect as if made on such date.

**3.4.5.   Compliance With Law and Other Requirements**.  Except for violations of Applicable Laws disclosed to Lender, Borrower , the Property, and the Project shall be in material compliance with all Applicable Laws, all permits, consents, licenses or approvals of any Governmental Authority and all conditions of any thereof, all zoning, land use and planning requirements, all subdivision and parcel map requirements and conditions, all requirements and conditions imposed by any public utility in connection with the use of all or any part of the Real Property or the supply of utilities to all or any part of the Real Property, including, without limitation, copies of any addenda to site permits for the work or materials for which a Payment Request is made.

**3.4.6.   No Default**.  No Event of Default or Potential Default shall have occurred and be continuing.

**3.4.7.   Other Documents and Assurances**.  Lender shall have received such other documents, certificates, consents, approvals and assurances as it may believe necessary to preserve to Lender the security and priority of the Deed of Trust and all other security until repayment of the Loan.  Borrower shall have executed and acknowledged (or caused to be executed and acknowledged) and delivered to Lender all documents, and taken all actions, required by Lender from time to time to confirm the rights created or now or hereafter intended to be created under the Loan Documents, or otherwise to carry out the purposes and the transactions contemplated thereunder.

166453742.14

**3.4.8.    Evidence of Satisfaction of Conditions**.  Borrower shall have furnished such evidence as Lender may require, in form and content acceptable to Lender and at such times as Lender may require, to establish the satisfaction of all conditions of the Disbursement, and Lender shall have had a reasonable time in which to review and approve such evidence.

**3.5.    Variances; Contingency**.

**3.5.1.    Budget Variances**.  Borrower shall by permitted to reallocate amounts between line items in an amount not to exceed an aggregate cap of ten percent (10%); provided however, if on or after the Bankruptcy Court approves the Interim Order, (i) the City of Los Angles requires Borrower to undertake actions to address a nuisance or preserve health and safety under any applicable regulation or ordinance, in addition to those actions the City required of Borrower prior to such date ("***Additional City Required Expenses***") Borrower may pay the Additional City Required Expenses, (ii) if the actual costs of insurance exceeds the amounts allocated for insurance in the Budget, and/or the approved fees and costs of the chief restructuring officer, Borrower may pay such additional insurance costs at actual cost, without regard to the foregoing reallocation cap(s), but both (i) and (ii) are subject to (a) Lender's consent, which consent may not be unreasonably withheld, and (b) the aggregate cost of (i) and (ii) and all amounts in the Budget, after variances are funded, do not exceed $10,000,000.

**3.5.2.    Reallocation and Disbursement of Amounts**.

(a)    Upon Borrower's written request and subject to Lender's approval, amounts set forth in the Budget may be reallocated as necessary to pay excess costs, not otherwise within the Budget, subject to the variance limits in the Budget, in accordance with this Agreement.

(b)    At the time of Borrower's written request for a reallocation, (i) except for the requested reallocation, the Budget shall otherwise be in balance and (ii) no Event of Default or Potential Default shall exist.

(c)    The reallocation or depletion or refusal of Lender to increase, reallocate or deplete contingency categories shall not release Borrower from any of Borrower's obligations under the Loan Documents.

**3.5.3.    Additions to Contingency**.  If the actual, final, paid cost or a revised guaranteed cost of an item in the Budget is less than the amount allocated thereto on the Budget, then such excess allocated amount may be reallocated to contingency as the case may be and from time to time upon Borrower's written request; *provided, however*, such realized costs savings must be document to the satisfaction of Lender and any such reallocation must be approved by Lender, in its sole discretion.

**3.6.    Amounts Remaining After Final Disbursement**.  Any undisbursed portion of the Loan remaining after the Final Disbursement and after payment in full of all items to be paid therefrom may, at the option of Lender in its sole discretion, be subtracted from the total Loan amount contemplated by this Agreement, thereby terminating any obligation of Lender to advance such amounts.

166453742.14

# ARTICLE 4
# BORROWER'S COVENANTS

Borrower covenants and agrees as follows:

**4.1.    Inspection.**  Lender and its agents, employees and representatives shall have the right to enter upon the Real Property and the Improvements, to inspect the Property.  Lender has no obligation to make inspections, or to provide Borrower with any information about the Property. Any inspections or appraisals by Lender are entirely for its own purposes and protection and not for the purpose of determining for or informing Borrower, or any other party of the quality or suitability or the value of the Property.  No such inspection is in any way to be construed as a representation by Lender that there is compliance with the Applicable Law or that the construction is free from faulty material or workmanship.  Borrower or any third parties shall not rely on nor are they entitled to rely on, Lender's inspections but will make their own inspections.

**4.2.    No Leases**.  Borrower shall not enter into any lease of any portion of the Property.

**4.3.    Reserved.**

**4.4.    Alterations**.

**4.4.1.**    Borrower shall not execute any contract or become party to any arrangement for the performance of work, except for security measures expressly set forth in the Budget (the "***Work***") on the Real Property without the Lender's prior approval.

**4.4.2.**    As a condition to Lender's consent, Borrower shall deliver to Lender all plans, drawings and specifications for the proposed Work, prepared by licensed architects and, where appropriate, mechanical, electrical and structural engineers, together with all permits from the Governmental Authorities having jurisdiction over the Work.  All such plans, drawings and specifications shall be prepared in accordance with Applicable Laws. Borrower shall also deliver to Lender a list of all contractors who will perform the Work.

**4.4.3.**    The Work, including for security measures, shall be completed in a workmanlike manner free of mechanic liens or liens for work performed, services rendered, or for supplies delivered in connection with the Work or security measures.

**4.4.4.**    Any changes in the Work from the final plans and specifications approved by Lender shall be subject to Lender's approval.

**4.4.5.**    Upon completion of the Work, Borrower shall furnish to Lender for its permanent files one reproducible set of "as built" drawings showing the Work as constructed or installed, together with full and final unconditional lien releases from each contractor performing the Work, rendering services, or supplying materials in connection with the Work.

**4.4.6.**    Notwithstanding anything to the contrary contained herein, Lender's approval of any contractors, subcontractors, engineers, architects, suppliers, plans or specifications submitted pursuant hereto shall not be deemed a warranty as to the adequacy of the design, workmanship, quality of materials or compliance with any Applicable Laws.

- 20 -

166453742.14

**4.5.    Installation of Fixtures, Materials and Equipment.**  Without Lender's prior written consent, Borrower shall not purchase or install materials, personal property, equipment or fixtures which are subject to any security agreement, lease or other agreement or contract wherein any person reserves or purports to reserve title, a reversionary or security interest, or a right to remove or repossess any such items or to consider them personal property after their incorporation into the Improvements, if they are to be so incorporated, or whereby title to any of such items is not completely vested in Borrower at the time of installation.

**4.6.    Insurance.**  Borrower shall procure or shall cause, prior to Recordation, to have procured, and shall thereafter maintain or cause to have maintained, policies of insurance, in form and content and from insurers acceptable to Lender, which policies shall include clauses requiring a minimum of thirty (30) days' written notice to Lender before such insurance may be cancelled or reduced, and which shall not include any co-insurance provision, and which shall provide coverage, in amounts and for the risks required under that certain Insurance Agreement of even date herewith.

**4.7.    Maintain Records.**  Borrower shall keep and maintain complete and accurate accounts and records of its operations according to generally accepted accounting principles and practices.  Borrower will allow Lender and its agents, employees and representatives unrestricted access at any times during normal business hours to Borrower's records and books of account in connection with the Property, will permit Lender to make copies thereof, and will provide requested assistance and cooperation as necessary to permit audits thereof.

**4.8.    Compliance with Applicable Law and Governmental Requirements.**  Except for violations of Applicable Law and Governmental Requirements disclosed to Lender, Borrower shall be and remain in compliance at all times with Applicable Law.  Borrower shall comply promptly with any requirement of any Governmental Authority; however, Borrower shall not be required to comply with any such requirement which Borrower is diligently contesting in good faith and by proper proceedings and for which a bond and/or other security to prevent impairment of Lender's security is posted as Lender may require.

**4.9.    No Land Use Changes.**  Borrower shall not, without Lender's prior written consent, apply for or otherwise seek any change in the land use limitations or entitlements for the Real Property including zoning, general or specific plan designation, subdivision or resubdivision, major or minor or conditional use permits, development agreements, density, traffic count or use designations, or zoning letters or letters of determination.

**4.10.    Easements.**  All proposed easements affecting the Real Property shall be submitted to Lender for its approval prior to the execution thereof by Borrower, accompanied by a drawing or survey showing the location thereof.  Borrower shall comply with all terms and conditions of all easements and shall promptly deliver copies of any notices of default with respect thereto to Lender.  Borrower shall not amend, terminate or modify any easement without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed and subject to the Bankruptcy Court.

**4.11.    Loan Fee; Loan Expenses.**  Borrower will pay any unpaid Loan Expenses on the Maturity Date.

- 21 -

166453742.14

**4.12.    Expenses and Disbursements Secured by Deed of Trust**.

**4.12.1.**    Except as provided in **Section 4.12.2**, all Loan advances and payments made by Lender under the Loan Documents, all amounts expended or incurred by Lender which are reimbursable by Borrower under the Loan Documents, and all Loan Expenses shall, as and when advanced, paid, expended or incurred, be and become secured by the Deed of Trust and all other agreements securing the Loan, whether or not the aggregate of such indebtedness exceeds the face amount of the Note.

**4.12.2.**    Notwithstanding any other provision of any Loan Document to the contrary, none of the obligations or liabilities of any person under any Environmental Indemnity shall be secured by the Deed of Trust or any of the other Loan Documents.

**4.13.    Lender's Reliance.**    Borrower agrees that Lender may assume that the statements, facts, information and representations contained in any affidavits, orders, receipts or other written instruments filed or exhibited to Lender are true and correct and may rely thereon without any investigation or inquiry, and any payment made by Lender in reliance thereon shall conclusively be deemed to be in the discharge of Lender's obligations hereunder to the extent of all sums so paid.

**4.14.    Hazardous Materials**.

**4.14.1.**    Borrower shall:  (a) keep and maintain the Property in compliance with, and shall not cause or permit the Property to be in violation of, any Hazardous Materials Laws; (b) not engage in or permit the use, generation, manufacture, production, storage, release, discharge, disposal or transportation on, under or about the Property of any Hazardous Materials; *provided, however*, that materials containing Hazardous Materials which are normally, prudently and properly used in connection with the development, construction or operation of a project of the same type as the Property may be stored and used on the Property, in reasonably necessary quantities, *provided* such use and storage is incident to and reasonably necessary for the normal, prudent and proper development, construction or operation of the Property, in all respects in strict compliance with all Hazardous Materials Laws, but in no event shall asbestos or asbestos-containing material be incorporated into or placed upon the Property, nor shall polychlorinated biphenyls be brought onto the Property; (c) in the event that any Hazardous Materials are found on, under or about the Property (except as provided in (b)), take all necessary and appropriate actions, at its own expense, to cause them to be cleaned up and immediately removed, all in compliance with all Hazardous Materials Laws and all other Applicable Laws, and provide to Lender certificates of compliance from the relevant Governmental Authority.

**4.14.2.**    Borrower shall immediately advise Lender in writing upon Borrower's receipt of all notices of (a) Hazardous Materials spills, releases, presence in contravention of **Section 4.14.1**, investigation enforcement, clean up, removal, mitigation or other governmental or regulatory acts instituted, contemplated or threatened pursuant to any Hazardous Materials Laws affecting the Property; (b) claims made or threatened by any third party against Borrower or the Property relating to damage, contribution, investigation, cleanup, response, remediation, monitoring, cost-recovery, compensation, loss or injury resulting from any Hazardous Materials or violation of any Hazardous Materials Laws; (c) acts, events or conditions on any real property

- 22 -

adjoining or in the vicinity of the Real Property that could cause the Real Property or any part thereof to be classified as "border-zone property" under the provisions of California Health & Safety Code Section 24220 *et seq.*, or any regulation thereunder, or which may support a similar claim or cause of action under any Hazardous Materials Laws; and (d) occurrences or conditions on the Property or any real property adjoining or in the vicinity of the Real Property which could subject Borrower or the Property to any restrictions on ownership, occupancy, transferability or use of the Property under any Hazardous Materials Laws.

**4.14.3.** Lender shall have the right but not the duty to join and participate in, as a party if it so elects, any settlements, legal proceedings or actions initiated in connection with any Hazardous Materials or Hazardous Materials Laws and to have its reasonable attorneys' fees and expenses in connection therewith paid by Borrower.

**4.15. Project Agreements.** Except to the extent any such action would be in violation of the Bankruptcy Code and subject to the approval of the Bankruptcy Court and availability of funds in the Budget, Borrower shall timely perform all of its covenants and obligations under all Project Agreements, timely satisfy all conditions to be satisfied by it under each thereof and do all things necessary to preserve all of its rights under each thereof. Borrower shall not amend, modify or terminate any Project Agreement without the prior written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed and the approval of the Bankruptcy Court. Borrower shall not enter into or execute any Project Agreements to which it is a party or to which Borrower or the Property is subject, outside of the ordinary course of business (consistent with the usage of that term under Bankruptcy Code section 363), without the prior written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed.

**4.16. Continued Existence.** Borrower shall each maintain its existence and continue to be in good standing under the laws of the State of Delaware (to the extent required by applicable law).

**4.17. Notices.** Within ten (10) days of Borrower's learning of any of the following acts, events or conditions (but without limiting any other provision of this Agreement), Borrower shall give notice in writing to Lender, of such act, event or condition, and the action that Borrower proposes to take with respect thereto:

(a) any material dispute, litigation or claim of any kind affecting or relating to the Property, Borrower, whether covered by insurance or not;

(b) any material dispute between Borrower and any Governmental Authority relating to the Property or Borrower;

(c) any Event of Default or Potential Default;

(d) after the Recordation, the existence of any lien or the assertion of any claim or threat of lien, against any part of the Property;

(e) any material violation of any Applicable Law;

(f)    any notice of default sent or received by Borrower under any Project Agreement; or

(g)    any other act, event or condition which could reasonably be expected to cause a Material Adverse Change in the financial condition of Borrower and/or have a Material Adverse Change upon the Property.

**4.18.    Debt.**  Except in favor of Lender or as expressly permitted elsewhere in this Agreement or as approved by the Bankruptcy Court, Borrower shall not create, incur, assume or suffer to exist any (a) indebtedness or liability for borrowed money or the deferred purchase price of property or services, except as provided in the Budget; (b) obligations as lessee under capital leases; (c) current liabilities in respect of unfunded vested benefits under any employee benefit plan; (d) obligations under letters of credit issued for the account of any person; (e) guaranties, endorsements (other than for collection or deposit in the ordinary course of business), and other contingent obligations to purchase, to provide funds for payment, to supply funds or loans to or invest in any person, or otherwise to assure a creditor against loss; (f) obligations secured by any lien on property owned by Borrower or on any interest in Borrower, whether or not the obligations have been assumed; or (g) conversion of any equity interest in Borrower to debt.

**4.19.    Organizational Documents.**  Borrower shall not, without thirty (30) days prior written notice to Lender and Lender's prior written consent and approval by the Bankruptcy Court: (a) modify any of its organizational documents; (b) change its fiscal year; (c) change its principal place of business, its name, organizational identity or organizational structure; or (d) conduct business under any other name or trade name.

**4.20.    Licenses**.  Borrower shall cause to keep in full force and effect all licenses, permits or other authorizations necessary to operate the Property.  Borrower shall not lease, rent, or otherwise cause to be allowed the Property to be used for any other purpose or to do anything that would cause Borrower's licenses, permits or other authorizations to be suspended or terminated.

**4.21.    Maintenance**.  Borrower shall maintain and preserve the Real Property and Improvements thereon in good condition and repair in at least as good a condition as the condition that exists on the date hereof (subject to ordinary wear and tear) subject to the availability of funds in the Budget.

**4.22.    Project Agreements; Leases**.

**4.22.1.**    Borrower shall, except to the extent any such action would be in violation of the Bankruptcy Code and subject to the approval of the Bankruptcy Court and availability of funds in the Budget:

(a)    promptly perform and observe all of the covenants and agreements required to be performed and observed by it under the Project Agreements and Leases and do all things necessary to preserve and to keep unimpaired its material rights thereunder;

(b)    promptly notify Lender, after the date hereof, of any default under the Project Agreements or Leases of which it is aware; and

- 24 -

(c)      promptly notify Lender, after the date hereof, of any default under the Project Agreements or Leases of which it is aware that have not been previously disclosed to Lender.

**4.22.2.**   Borrower shall not, without Lender's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed and subject to the Bankruptcy Court.

(a)      enter into any Lease, amend, modify, surrender, terminate or cancel any of the Leases, or enter into any lease of any portion of the Property that has not been approved in writing by Lender; or

(b)      otherwise modify, change, supplement, alter or amend, or waive or release any of its rights and remedies under the Project Agreements or Leases in any material respect.

**4.23.   No Purchase Options**.  No part of the Real Property is subject to any purchase options, rights of first refusal or similar rights in favor of any Person.

**4.24.   Beneficial Ownership Regulation.**   Promptly following any request therefor, Borrower shall provide information and documentation reasonably requested by Lender for purposes of compliance with applicable "know your customer" requirements under the PATRIOT Act, the Beneficial Ownership Regulation or other applicable anti-money laundering laws, including but not limited to a Beneficial Ownership Certification form acceptable to Lender.

**4.25.   Deferred Compensation and ERISA**.

**4.25.1.**   Borrower has not engaged in any transaction which would cause any obligation, or action taken or to be taken, hereunder (or the exercise by Lender of any of their rights under the Note, this Agreement and the other Loan Documents) to be a non-exempt (under a statutory or administrative class exemption) prohibited transaction under the Employee Retirement Income Security Act of 1974, as amended ("***ERISA***").

**4.25.2.**   (a) Borrower is not an "***employee benefit plan***" as defined in Section 3(3) of ERISA, which is subject to Title I of ERISA, or a "***governmental plan***" within the meaning of Section 3(32) of ERISA; (b) Borrower is not subject to state statutes regulating investments and fiduciary obligations with respect to governmental plans; and (c) (i) less than twenty-five percent (25%) of each outstanding class of equity interests in Borrower are held by "***benefit plan investors***" within the meaning of 29 C.F.R. § 2510.3-101(f)(2); and (ii) Borrower qualifies as an "***operating company***" or a "***real estate operating company***" within the meaning of 29 C.F.R. § 2510.3-101(c) or (e) or an investment company registered under The Investment Company Act of 1940.

**4.26.   Due on Sale and Encumbrance; Transfer of Interest.**  Without the prior written consent of Lender or order of the Bankruptcy Court (provided, such order of the Bankruptcy Court includes the repayment of the Loan and satisfaction of the Obligations), neither Borrower nor any other Person having a direct or indirect ownership or beneficial interest in Borrower shall sell, convey, mortgage, grant, bargain, encumber, pledge, lien, hypothecate, assign or transfer any

- 25 -

166453742.14

interest, direct or indirect, in Borrower (or any constituent owner or other holder of a direct or indirect equity interest in Borrower), the Property or any part thereof, whether voluntarily or involuntarily by operation of law or otherwise.

**4.27.   Additional Assurances.**   Borrower shall make, execute, and deliver such certificates, agreements, instruments, and other documents as Lender or its attorneys may reasonably require to evidence or secure the Loan or perfect the security interests of Lender.

**4.28.   Case Covenants.**   None of the Lender's rights as set forth herein or in any of the Loan Documents or Orders may be materially modified by any Plan or any order of the Bankruptcy Court, except with the express written consent of the Lender.  Without limitation of the foregoing, Borrower hereby covenants and agrees that:

(a)      Borrower shall not at any time propose, seek, consent to or suffer to exist any (i) modification, stay, vacation or amendment of the Final Order, except for modifications and amendments agreed to by Lender, or (ii) modification, subordination, reduction, impairment, surcharge, extinguishment or other change in, or, or to the Loan, the authorized use of the Loan proceeds, the DIP Liens, or the allowance of any secured or super-priority administrative expense claims of the Lender pursuant to any provisions of the Bankruptcy Code or other law, except as set forth herein; provided that Lender acknowledges and agrees that should a Plan be confirmed with Lender's consent and become effective, that Lender's claim will be paid pursuant to such Plan.

(b)      Lender shall not be required without its consent, in its sole discretion to accept any property other than immediately available cash in United States dollars in satisfaction of all obligations of the Borrower to the Lender.

(c)      The DIP Liens and Superpriority DIP Administrative Expenses, shall not be primed, other than by the County Senior Claims, surcharged, altered or impaired, marshaled or otherwise adversely affected in any way, whether requested by a creditor of Borrower or any other party, without Lender's consent, which may be withheld or conditioned in Lender's sole discretion. No claim or expense, excluding the County Senior Claims and the Carve Out, shall have priority over, or be treated *pari passu* with, Lender's rights in the Property or Collateral.

## ARTICLE 5
## REPRESENTATIONS AND WARRANTIES OF BORROWER

As a material inducement to Lender to enter into this Agreement and to make the Loan, Borrower hereby unconditionally represents and warrants to Lender as follows:

**5.1.   Organizational Matters**.

**5.1.1.   Organization; Standing.**   Borrower is a limited liability company duly organized and validly existing, in good standing, under the laws of the State of Delaware and is qualified to do business in the State of Delaware (and all other states if any in which Borrower is required to be qualified).

166453742.14

**5.1.2.    Organizational Documents.**    True and complete copies of each of Borrower's organizational documents and all amendments thereto have been furnished to Lender. Such organizational documents are Borrower's sole organizational documents and constitute the entire agreement among the Borrower and its respective members, shareholders or partners and are binding upon and enforceable against all such members, shareholders and partners in accordance with their terms. There are no other agreements, oral or written, among any of the Borrower's respective members, shareholders or parties relating to Borrower. No party is in default of its obligations under Borrower's organizational documents and no condition exists which, with the giving of notice and/or the passage of time, would constitute a default under Borrower's organizational documents.

**5.2.    Authority of Individuals Executing Loan Documents.** The individuals executing the Loan Documents on behalf of Borrower are authorized and empowered by their signatures alone to bind Borrower.

**5.3.    Power and Authority; Enforceability.**    Borrower has full right, power and authority to own the Property, execute and deliver the Loan Documents to be executed and delivered by it, consummate the transactions contemplated thereby, and perform its obligations thereunder, subject only to approval of the Bankruptcy Court in the Case. The Loan Documents to be executed and delivered by Borrower have been duly authorized, executed and delivered, do not and will not require any consent or approval of any person or entity other than that which has been heretofore obtained and other than the Bankruptcy Court in the Case, and constitute valid and legally binding obligations of Borrower, enforceable in accordance with their terms.

**5.4.    Litigation.**    Except as set forth in the Statement of Financial Affairs filed by the Borrower in the Case Docket No. 161 ("**SOFA**"), there are no known actions, suits or proceedings pending or, to the knowledge of Borrower, threatened against or affecting it, the Property, or involving the validity or enforceability of the Deed of Trust or the priority of the lien thereof, at law or in equity, or before or by any Governmental Authority which would reasonably be expected to result in a Material Adverse Change. Except for defaults disclosed to Lender, Borrower is not in default with respect to any order, writ, injunction, decree or demand of any court or any Governmental Authority.

**5.5.    No Breach or Violation.**    Except as required by the Bankruptcy Code, the execution and delivery of the Loan Documents, consummation of the transactions thereby contemplated, and performance of the obligations therein provided will not (a) result in any breach of, or constitute a default under, or result in the creation or imposition of any lien, claim, charge or encumbrance (other than as provided in the Loan Documents or disclosed to the Bankruptcy Court) under, any Project Agreement, mortgage, Deed of Trust, lease, loan or security agreement, corporate charter, bylaws, partnership agreement or other document, agreement or instrument to which Borrower is a party or by which it or its property may be bound or affected, or (b) violate any Applicable Law.

**5.6.    Title**.    Borrower has indefeasible, marketable and insurable fee simple title to the real property comprising part of the Property and good title to the balance of the Property owned by it. Except for Permitted Encumbrances and those liens, claims, interest and encumbrances primed by Lender's DIP Liens pursuant to the Orders, there are no mechanics', materialman's or

- 27 -

166453742.14

other similar liens or claims that have been, or may be, filed for work, labor or materials affecting the Property that are or may be liens prior to, or equal or coordinate with, the lien of the Deed of Trust.

**5.7.    Assessment**.  To the knowledge of the Borrower, there are no pending or proposed special or other assessments for public improvements or otherwise affecting the Property, nor are there any contemplated improvements to the Property that may result in such special or other assessments.

**5.8.    Proper Subdivision**.  The Real Property is taxed separately without regard to any other real property.

**5.9.    Permits**.  Except for orders or approvals as may be necessary by the Bankruptcy Court, no other permit, authorization, consent, approval, order, license, exemption from, or filing, registration or qualification with, any Governmental Authority is required in connection with the execution and delivery of the Loan Documents, consummation of the transactions thereby contemplated, and performance of the obligations therein provided, other than Bankruptcy Court approval.

**5.10.    Flood Areas.**  No portion of the Improvements is or will be located within any flood-prone area or any area designated by the United States Department of Housing and Urban Development as a special flood hazard area.

**5.11.    Other Liens**.  Except as disclosed to the Bankruptcy Court in connection with the Case, Borrower has made no contract or arrangement of any kind, the performance of which by the other party thereto would give rise to a lien (including any vendor's lien) on the Property, except as disclosed in the SOFA.

**5.12.    Other Financing**.  Except as disclosed to Lender or in the SOFA, Borrower has not received other financing for the Real Property, except as has been specifically disclosed to and approved by Lender prior to Recordation.

**5.13.    Taxes**.  Except as disclosed to the Bankruptcy Court in connection with the Case, Borrower has filed all required federal, state, county and city tax returns and has paid all taxes due and payable.  Borrower knows of no basis for additional assessments with respect to any taxes.

**5.14.    Hazardous Materials**.

**5.14.1.**    Borrower and the Property are in compliance with all applicable Hazardous Materials Laws, except as disclosed in the SOFA.

**5.14.2.**    Neither Borrower nor the Property are the subject of any pending or, to the knowledge of Borrower, threatened investigation by any Governmental Authority under or in connection with any Hazardous Materials Laws.  No notice of any order, directive, complaint or other communication, written or otherwise, has been made or issued by any Governmental Authority or any third party alleging the occurrence of any act, event or condition relating to the Property or adjacent properties violating any Hazardous Materials Laws or demanding payment or contribution for environmental damage or injury.

- 28 -

**5.14.3.**    Borrower has not engaged in or permitted any use, generation, manufacture, production, storage, release, discharge, disposal or transportation on, under or about the Property of any Hazardous Materials, nor, to the knowledge of Borrower, has any such activity otherwise occurred on, under or about the Property.  To the knowledge of Borrower, there are no Hazardous Materials on, under or about the Property, nor has any clean up, detoxification, abatement, or removal of Hazardous Materials occurred in connection with the Property.  To the knowledge of Borrower, no above- or under-ground storage tanks are or at any time were located on the Real Property.

**5.14.4.**    The intended use of the Property will not result in any act, event or condition which violates or will violate any Hazardous Materials Laws.

**5.14.5.**    There is no occurrence or condition on any other real property that could cause the Real Property or any part thereof to be classified as "border-zone property" under California Health and Safety Code Sections 25220 *et seq*., or any regulation relating thereto, or to be otherwise subject to any restrictions on ownership, occupancy, transferability or use.

**5.14.6.**    Borrower has conducted an appropriate inquiry into the present and prior condition, uses and ownership of the Property.

**5.15.**    **No Default.**  No Event of Default or Potential Default has occurred or is continuing.

**5.16.**    **Anti-Terrorism, Anti-Corruption, and Anti-Money Laundering Laws**.

**5.16.1.**    The information included in the Beneficial Ownership Certification is true and correct in all respects.

**5.16.2.**    Borrower and each partner, member or stockholder in Borrower, and all beneficial owners of Borrower and any such partner, member or stockholder, are in compliance with the requirements of the Anti-Money Laundering Laws and Anti-Corruption Laws in all material respects.  Borrower agrees to make its policies, procedures and practices regarding compliance with the Anti-Money Laundering Laws and Anti-Corruption Laws of any persons who, pursuant to transfers permitted by the Deed of Trust, become stockholders, members, partners or other investors of Borrower available to Lender for its review and inspection during normal business hours and upon reasonable prior notice.

**5.16.3.**    Neither Borrower, any partner, member or stockholder in Borrower nor the beneficial owner of Borrower or any such partner, member or stockholder:

(a)    is listed on the Lists;

(b)    is a person who has been determined by competent authority to be subject to the prohibitions contained in the Anti-Money Laundering Laws;

(c)    is owned or controlled by, nor acts for or on behalf of, any person on the Lists or any other person who has been determined by competent authority to be subject to the prohibitions contained in the Anti-Money Laundering Laws;

- 29 -

(d)      shall transfer or permit the transfer of any interest in Borrower to any person who is or whose beneficial owners are listed on the Lists; or

(e)      shall knowingly lease space in the Property to any person who is listed on the Lists or who is engaged in illegal activities.

**5.16.4.**   If Borrower obtains knowledge that Borrower or any of its partners, members or stockholders or their beneficial owners become listed on the Lists or are indicted, arraigned, or custodially detained on charges involving money laundering or predicate crimes to money laundering, Borrower shall immediately notify Lender.

**5.16.5.**   If Borrower obtains knowledge that any tenant in the Property has become listed on the Lists or is convicted, pleads nolo contendere, indicted, arraigned, or custodially detained on charges involving money laundering or predicate crimes to money laundering, Borrower shall immediately notify Lender.

**5.16.6.**   If a tenant at the Property is listed on the Lists or is convicted or pleads nolo contendere to charges related to activity prohibited in the Anti-Money Laundering Laws, then proceeds from the rents of such tenant shall not be used to pay debt service and Borrower shall provide Lender such representations and verifications as Lender shall reasonably request that such rents are not being so used.

**5.16.7.**   If a tenant at the Property is arrested on such charges, and such charge is not dismissed within thirty (30) days thereafter, Lender may at its option notify Borrower to exclude such rents from the debt service payments.

If Borrower is listed on the Lists, no earn out disbursements, escrow disbursements, or other Disbursements under the Loan Documents shall be made and all of such funds shall be paid in accordance with the direction of a court of competent jurisdiction.

**5.17.   Leases.**  There are no leases, subleases, or rental agreements for possession, use or occupancy pertaining to the Property.

**5.18.   Intellectual Property.**  Borrower owns or has the right to use all material patents, trademarks, service marks, trade names, domain names, copyrights, licenses and other rights which are necessary for the development, construction, ownership and operation of the Property, and no material product, process, method, substance, part or other material presently contemplated to be sold or employed by Borrower in connection with its business will infringe any patent, trademark, service mark, trade name, domain name, copyright, license or other right owned by any other person.

**5.19.   Beneficial Ownership Certification**.  The information included in the Beneficial Ownership Certification is true and correct in all respects.

**5.20.   Bankruptcy**.  Borrower is in full compliance with the Interim Order.  On the date of the making of any Disbursement, the Interim Order and Final Order shall have been entered and shall not have been amended, stayed, vacated, reversed, or rescinded except as approved in writing

166453742.14

by Lender.  Upon the Maturity Date, or upon acceleration of the Maturity Date as provided in this Agreement or upon an Event of Default as provided in this Agreement, Lender shall be entitled to immediate payment of all outstanding amounts due under the Loan Documents and to enforce all rights and remedies provided under this Agreement.

**5.21.    Nature of Representations and Warranties.**  Borrower certifies to Lender that to the best of its knowledge all representations and warranties made in all of the Loan Documents are true and correct in all material respects and do not contain any untrue statement of any material fact or omit any material fact necessary to make such representations and warranties not misleading.  All such representations and warranties shall remain true and correct in all material respects as of the date hereof and as of the date of the request for the Disbursement, as of the date of any renewal, extension or modification of the Loan, and at all times the Loan.  Each representation and warranty made in any Loan Document, or in any other document delivered to Lender by Borrower, shall be deemed to have been relied upon by Lender notwithstanding any investigation, inspection or inquiry theretofore or thereafter made by or on behalf of Lender, or the Disbursement made by Lender related thereto.  Any representations and warranties contained herein which are specified to be to the knowledge of Borrower have been made after diligent inquiry calculated to ascertain the truth and accuracy of the subject matter thereof.

**ARTICLE 6**
**DEFAULT AND REMEDIES**

**6.1.    Events of Default.**  Each of the following shall constitute an "***Event of Default***" hereunder and under the other Loan Documents:

**6.1.1.**    Failure to pay the principal and interest on the outstanding indebtedness of the Loan, or Loan Expenses, to the Lender (whether arising pursuant to the Loan Documents or the Orders) on the Maturity Date;

**6.1.2.**    Borrower fails to apply Loan proceeds in accordance with the Budget (or as otherwise approved in writing by Lender), subject to Borrower's rights of reallocation and permitted variances as expressly permitted by the Orders;

**6.1.3.**    The Case shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

**6.1.4.**    The Borrower shall file, support or fail to oppose: (i) a motion or other pleading seeking the dismissal of the Case under Section 1112 of the Bankruptcy Code or otherwise; (ii) a motion or other pleading seeking a change of venue with respect to the Case; (iii) a motion for approval of any superpriority claim in the Case which is *pari passu* with or senior to the claims of the Lender against the Borrower hereunder, (x) without first obtaining the consent of the Lender or (y) unless such motion contemplates that all of the Obligations shall be paid in full as a condition precedent to the effectiveness of such claims and liens; (iv) any challenge (whether by commencement of a contested matter, adversary proceeding, or otherwise) to (x) any of the admissions, acknowledgments, agreements, or stipulations related to the Lender made by the Borrower in the Orders or (y) any transaction, occurrence, omissions, action, or other matter related to the Loan; (v) any motion seeking entry of an order authorizing or approving the sale or

- 31 -

assignment of any of its assets or procedures in respect thereof (x) without first obtaining the consent of the Lender or (y) unless the Borrower pays or causes to be paid all of the Obligations in full as a condition precedent to the effectiveness of such sale or assignment; (vi) a motion seeking authority for the Borrower to obtain alternative financing secured by the Property (or any part thereof) or to use Property (x) without first obtaining the consent of Lender or (y) unless such motion contemplates that all of the Obligations shall be paid in full as a condition precedent to the effectiveness of such alternative financing, or (vii) a pleading seeking to vacate or modify the Orders; or (viii) the grant of any relief sought in (i) through (vii) by the Bankruptcy Court, unless Lender consents to such relief;

**6.1.5.** A trustee under Chapter 11 of the Bankruptcy Code, a responsible officer (other than the employment of Bradley Sharp of Development Specialists Inc. as Chief Restructuring Officer, the employment of which is pending) or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code shall be appointed in the Case, unless Lender consents to such relief;

**6.1.6.** Borrower shall (i) fail to comply with the terms of the Orders or any other order of the Bankruptcy Court (which failure continues for a period of thirty (30) days after written notice thereof from Lender), or (ii) file, support, or fail to oppose a motion for reconsideration or other motion with respect to any such orders which seeks to materially and adversely affect Lender's rights;

**6.1.7.** The Final Order shall not have been entered by the Bankruptcy Court on the date that is sixty (60) days after the date the Interim Order is issued, which sixty (60) day period shall be reasonably extended based on the Bankruptcy Court's calendar and scheduling and/or as mutually agreed to by the parties in their reasonable discretion;

**6.1.8.** The Court shall enter an order or orders granting relief from the automatic stay permitting foreclosure or enforcement of any kind (or the granting of a deed in lieu of foreclosure or the like) on the Collateral by any party other than Lender, except as set forth in the Orders;

**6.1.9.** The Borrower's exclusive right granted under the Bankruptcy Code to file a plan of reorganization for the Borrower shall have terminated and a plan of reorganization for the Borrower is filed by a non-Borrower party;

**6.1.10.** The sale of any Collateral or the Property without the approval of the Bankruptcy Court;

**6.1.11.** The Borrower's failure to meet a deadline or milestone in Bankruptcy Court-approved Sale Procedures, unless extended by the Bankruptcy Court;

**6.1.12.** Any breach by Borrower of the terms of any of the Loan Documents, subject to applicable cure rights;

**6.1.13.** The Borrower fails to file a Plan by any applicable deadline to do so, unless extended by the Bankruptcy Court; or

- 32 -

**6.1.14.**    The Borrower files a Plan which is inconsistent with the Orders or Loan Documents.

**6.1.15.    Other Default.**  Any breach or failure by Borrower to satisfy or perform any condition, covenant or other provision of this Agreement or any other Loan Document.

**6.1.16.    Breach Under Other Agreements.**  The occurrence of any breach or default by Borrower under: (a) any other Loan Document or Loan Document other than this Agreement, or (b) any other agreement, excluding any Project Agreements to which Lendlease (US) Construction Holdings Inc. is a party, by Borrower for any other indebtedness, debt, guaranty, or other obligation owed to or for the benefit of Lender.

**6.1.17.    Misrepresentation.**  Any representation by Borrower of any material fact herein or in any financial statement is or becomes false, incorrect or misleading in any material respect.

**6.1.18.    Criminal Activity.**  The occurrence of any criminal activity, regardless of whether Borrower or any person under Borrower's control is at fault, which is likely to result in the forfeiture of the Property to any Governmental Authority.

**6.2.    Default Notice and Remedies**.  Upon the occurrence of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further order of the Bankruptcy Court, and prior to exercising any remedies available to Lender under the Loan Documents, Lender shall provide Borrower and secured creditors of the Borrower and their respective counsel with written notice of such Event of Default (the "***Default Notice***"), and the Borrower shall have (a) ten (10) days following receipt of the Default Notice for monetary defaults, and (b) thirty (30) days following receipt of the Default Notice for non-monetary defaults in which to cure such Event of Default (as applicable, the "***Cure Period***"). During the Cure Period, Borrower and any party-in-interest may seek a hearing before the Bankruptcy Court (a "***Remedies Hearing***"), on an emergency basis or otherwise and in any event subject to the Bankruptcy Court's availability, to determine whether an Event of Default has occurred and not been waived or such other matters as the Bankruptcy Court determines to hear. If Borrower fails to cure the Event of Default within the Cure Period and the Bankruptcy Court has not entered an order finding that an Event of Default has not occurred, then the Lender shall be entitled to exercise any right or remedy as provided in the Interim Order, the Final Order, the Loan Documents or applicable law, without the necessity of seeking relief from the automatic stay or any further order of the Bankruptcy Court (but subject and subordinate in all respect to the Carve Out); provided, however, the Lender shall not commence foreclosure proceedings until the earliest of  (a) one (1) year from the Closing; (b) the date on which an Event of Default occurs if such Event of Default materially impairs either or both of (i) the Lender's lien and security interest in the Property, or (ii) the value of the Property; or (c) the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay permitting foreclosure or enforcement of any kind (or the granting of a deed in lieu of foreclosure or the like) on the Property by any party other than Lender.

**6.3.    Remedies**.

166453742.14

**6.3.1.    Upon Event of Default.**  Subject to **Section 6.2** in all respects, upon the occurrence of any Event of Default, Lender may at its option, without prior demand or notice, exercise any one or more of the following remedies, and any one or more of such other remedies as may be provided by any Loan Document or by law or equity, all of which remedies shall be cumulative:

(a)    **Accelerate.**  Declare the Loan and all obligations of Borrower under the Loan Documents immediately due and payable.

(b)    **Other Remedies.**  Exercise any and all other rights and remedies provided by any Loan Document, or by law or equity.

**6.3.2.    DISCLAIMER.**    WHETHER OR NOT LENDER ELECTS TO EMPLOY ANY OR ALL OF THE REMEDIES AVAILABLE TO IT IN THE EVENT OF DEFAULT, LENDER SHALL NOT BE LIABLE FOR THE CONSTRUCTION OF OR FAILURE TO CONSTRUCT OR COMPLETE OR PROTECT THE PROPERTY OR FOR PAYMENT OF ANY EXPENSE INCURRED IN CONNECTION WITH THE EXERCISE OF ANY REMEDY AVAILABLE TO LENDER OR FOR THE CONSTRUCTION OR COMPLETION OF THE PROPERTY OR FOR THE PERFORMANCE OR NONPERFORMANCE OF ANY OTHER OBLIGATION OF BORROWER.

**6.3.3.    Remedies Cumulative.**  Each of the rights and remedies of Lender provided in the Loan Documents is cumulative and not exclusive of, and shall not prejudice, any other right or remedy provided in any Loan Document or at law or equity.  Each right or remedy may be exercised from time to time as often as deemed necessary by Lender, and in such order and manner as Lender may determine.  No failure or delay by Lender in exercising any right or remedy shall operate as a waiver of any such right or remedy; nor shall any single or partial exercise of any right or remedy preclude any other or further exercise of such right or remedy or of any other right or remedy.  No application of payments, or advances or other action by Lender, will cure or waive any Event of Default or prevent acceleration, or continued acceleration, of amounts payable under the Loan Documents or prevent the exercise, or continued exercise, of any rights or remedies of Lender.

## ARTICLE 7
## INDEMNITIES; RELATIONSHIP OF LENDER AND BORROWER

**7.1.    Indemnity and Liability of Borrower**.

**7.1.1.**    Except to the extent of/due solely to Lender's gross negligence or willful misconduct, Borrower hereby agrees to defend (by counsel reasonably satisfactory to Lender), indemnify and hold harmless Lender, its officers, directors, shareholders, agents, employees, affiliates, subsidiaries, participants, agents, professionals, successors and assigns (collectively, "*Indemnitees*"), from and against all losses, damages, liabilities, claims, actions, judgments, costs and reasonable attorneys' and experts' fees and documented out of pocket costs and expenses which any Indemnitee may incur, in any capacity, as a direct or indirect consequence of (a) the making of the Loan (except for violations of banking law or regulations by Lender); (b) Borrower's failure to perform any obligations as and when required by any Loan Document; (c) the failure at

- 34 -

166453742.14

any time of any of Borrower's representations or warranties to be true and correct in any material respect; or (d) any act, omission, negligence, or willful misconduct by Borrower, any agent, contractor, subcontractor, engineer, architect, tenant, subtenant, or other person with respect to the Property.

**7.1.2.** Borrower shall commence performance of its duty to defend, indemnify and hold Indemnitees harmless immediately upon the assertion against any Indemnitee of any claim which, either on its face or by reasonable inference from the allegations, would be within the scope of such duty, and Borrower shall continue to perform such duty through final adjudication, settlement, appeal or other resolution of the claim.  It is not a condition or defense to Borrower's duty to defend, indemnify and hold harmless that it first be determined (judicially or otherwise) that (a) a claim against an Indemnitee is in fact within the scope of Borrower's duty to defend, indemnify and hold harmless, (b) such claim has merit, or (c) Borrower was negligent or otherwise at fault in any respect.

**7.2.    Relationship Between Borrower and Lender.**    Borrower and Lender acknowledge, understand and agree as follows:

**7.2.1.    No Partnership or Joint Venture.**  The relationship between Borrower and Lender is, and shall at all times remain, solely that of borrower and lender.  Neither of the parties is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other party; and Borrower shall indemnify and hold harmless Lender from any and all damages resulting from a contrary construction of the relationship of the parties.  Except as specifically provided in the Loan Documents, neither Borrower nor Lender shall solicit, negotiate, execute or enter into any agreements of whatsoever nature on behalf of or in the name of the other or deal with third parties so as to commit or bind the other or purport to commit or bind the other in any manner whatsoever.

**7.2.2.    Inspections, Etc.**    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of the quality, adequacy or suitability of anything to do with the Property including any of the following:  alterations and additions thereto; the environmental condition or suitability of the Property for the intended use; architects, contractors, subcontractors, and materialmen employed or utilized in the construction, or workmanship of or the materials used by any of them.

**7.2.3.    No Duty of Lender.**  Lender owes no duty of care to protect the Borrower against negligent, faulty, inadequate or defective building or construction, or any environmental condition.

**7.2.4.    No Warranty by Lender.**  By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Lender pursuant hereto or pursuant to any of the documents evidencing the Loan, including any certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

166453742.14

## ARTICLE 8
## GENERAL PROVISIONS

**8.1.    No Waiver.**  No delay or omission of Lender in exercising any right or power arising from any default by Borrower shall be construed as a waiver of such default or as an acquiescence therein, nor shall any single or partial exercise of any such right or power preclude any further exercise thereof.  Lender may, at its option, waive or postpone satisfaction of any condition herein, all of which are for its benefit, and any such waiver or postponement shall not be deemed a waiver of Lender's rights hereunder but shall be deemed made pursuant to, and not in modification of, this Agreement.  No waiver of any Event of Default shall be construed to be a waiver of or acquiescence in or consent to any preceding or subsequent Event of Default.  No waiver of any kind by Lender shall be deemed to have occurred unless set forth in writing, signed by Lender and delivered to Borrower, and any such written waiver shall be operative only for the time and to the extent expressly stated therein.

**8.2.    Parties Bound and Benefited.**  This Agreement is made for the sole benefit of Borrower, Lender, and Lender's successors and assigns and any participants in the Loan.  No other person shall have any rights or remedies under or by reason of this Agreement nor shall Lender owe any duty whatsoever to any claimant (a) for labor performed or material furnished in connection with the construction of improvements, (b) to advance any portion of the Loan to pay any such claim, or (c) to exercise any right or power of Lender hereunder or arising from any default by Borrower.  This Agreement shall, subject to **Section 8.7**, bind Borrower's legal representatives, successors and assigns.

**8.3.    Notices.**  Except as otherwise required by applicable law, all notices, demands and other communications required or permitted hereunder shall be in writing, addressed to the appropriate party as its address as follows, or to such other address as may be designated from time to time by notice to the other parties in the manner set forth herein.  All such communications shall be deemed effective (a) upon actual delivery if delivered by personal delivery or certified postage prepaid mail, (b) three Business Days following deposit, first class postage prepaid, with the United States Mail, (c) on the next Business Day after timely and proper deposit with a nationally-recognized overnight courier marked for next Business Day delivery, or (d) sent to the e-mail address specified below and shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement).

Address of Lender:          DTLA LENDING LLC.
                            200 Park Avenue, 9th Floor
                            New York, New York 10166
                            Attention:  Peter Campbell
                            Email: peter.campbell@lendlease.com
                            Attention: Bruce Ambler
                            Email: bruce.ambler@lendlease.com

166453742.14

<table>
<tr><td>with a copy to:</td><td>PERKINS COIE LLP<br>505 Howard Street, Suite 1000<br>San Francisco, California 94105<br>Attention:  Allan E. Low, Esq.<br>Email: alow@perkinscoie.com</td></tr>
<tr><td>Address of Borrower:</td><td>OCEANWIDE PLAZA LLC<br>c/o Development Specialists, Inc.<br>333 S Grand Ave, Suite 4100<br>Los Angeles, CA 90071-1544<br>Attention: Bradley Sharp<br>Email: bsharp@DSIConsulting.com</td></tr>
<tr><td>With a copy to (which<br>shall not constitute notice):</td><td>Bryan Cave Leighton Paisner LLP<br>120 Broadway, Suite 300<br>Santa Monica, CA  90401-2386<br>Attention:  Sharon Z. Weiss<br>Email:  Sharon.weiss@bclplaw.com</td></tr>
</table>

**8.4.    Entire Agreement**.  The Orders and the Loan Documents and any other Loan Documents to which Borrower is a party collectively constitute the entire understanding between Lender and Borrower as to the matters contemplated therein and may not be modified, amended or terminated except by written agreement signed by both Lender and Borrower.

**8.5.    Approvals, Consents, Waivers; Acceptability to Lender.**  No approval, acceptance or consent of Lender required by any provision of the Loan Documents, nor any statement or waiver of any required approval, acceptance, acceptability, consent or condition, shall be deemed to have occurred unless set forth in writing, signed by Lender, and delivered to Borrower.  Oral statements made during discussions or negotiations, unsigned draft agreements, term sheets or anything else short of a fully approved, signed and delivered written agreement shall not constitute binding agreements or commitments, and the parties hereby waive any claims for reliance or otherwise relating to or arising out of such oral statements or negotiations.  Any approval, acceptance, consent, waiver or statement of acceptability granted by Lender shall be applicable only to the particular occurrence, circumstance or instance identified in such writing, and shall not constitute a continuing approval, acceptance, consent, waiver or statement of acceptability or be otherwise applicable to any other occurrence, circumstance or instance, whether similar or dissimilar.  When this Agreement or any other Loan Document requires the consent or approval of Lender, or provides that any document, matter, act, event, occurrence or person must be satisfactory or acceptable to Lender or words of similar import, such consent or approval may be given or withheld by Lender, and such document, matter, act, event, occurrence or person must be satisfactory or acceptable to Lender, in its sole and absolute discretion, unless otherwise expressly provided herein or therein.

**8.6.    Documentation.**  In addition to the instruments and documents referred to herein, Borrower will, at its own cost and expense, supply Lender with such other instruments, documents, information and data as may, in Lender's opinion, be reasonably necessary for the purposes hereof,

166453742.14

including Disbursements hereunder, all of which shall be in form and content acceptable to Lender. All documentation delivered to Lender by Borrower shall become the property of Lender.

**8.7.    Assignment.**  Neither this Agreement nor any rights or obligations hereunder shall be assigned or assignable by Borrower without the prior written consent of Lender.  Any purported assignment without such consent shall be void and at Lender's option constitute an Event of Default.  Subject to the foregoing restriction, this Agreement shall bind Borrower, its heirs, executors, administrators, successors and assigns.  This Agreement shall inure to the benefit of Lender, its successors, assigns and participants.

**8.8.    Time is of the Essence.**  Time is of the essence of the Loan Documents and of every part hereof, and Borrower therefore acknowledges that Lender has no obligation to grant any extension of any provision thereof, and any extension which Lender may elect to grant may be conditioned upon such terms and conditions as Lender may impose in its sole discretion.

**8.9.    Joint and Several Obligations.**  If more than one person has executed this Agreement as Borrower, the obligations of all such persons shall be joint and several.  Any married person who executes this Agreement agrees that recourse may be had against his or her separate property and against community property.  If Borrower is a partnership, the obligations of Borrower shall be the joint and several obligations of all general partners therein.

**8.10.   Agency.**  Borrower hereby appoints and authorizes Lender, as its agent, to record any notices of completion, cessation of labor and other notices that Lender deems necessary to protect any interest of Lender under the Loan Documents.  This agency is a power coupled with an interest and is irrevocable.

**8.11.   Governmental Regulations.**  If payment of the Loan is to be insured or guaranteed by any governmental agency, Borrower shall comply with all rules, regulations, requirements and statutes relating thereto or provided in any commitment issued by any such agency to insure or guarantee such payment.

**8.12.   Enforcement Fees and Costs.**  Borrower shall reimburse Lender on the Maturity Date for reasonable attorneys' and experts' fees and documented out of pocket costs and expenses, incurred by Lender for:  (a) enforcement of the Loan Documents or any of their terms, or the exercise of any rights or remedies thereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; (b) representation of Lender in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding of or relating to Borrower, to any person liable (by way of guaranty, assumption, endorsement or otherwise) upon any of the obligations of the Loan Documents or to the Property; or (c) representation of Lender in any action or proceeding relating to the Property, whether commenced by Lender or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings.  All such fees and costs shall bear interest until paid at the rate applicable to enforcement fees and costs under the Note.

**8.13.   Litigation.**  Lender shall have the right to commence, appear in or defend any action or proceeding reasonably purporting to affect the rights, duties, or liabilities of the parties hereunder or the Disbursement of any funds, if not being pursued by Borrower.  In connection

- 38 -

166453742.14

therewith, Lender may incur and pay reasonable attorneys' and experts' fees and documented out of pocket costs and expenses. Borrower shall pay to Lender on demand all such costs and expenses and Lender is authorized to make Disbursements for such purpose.

**8.14.    Survival.**  All provisions of the Loan Documents shall survive the Closing and the Disbursement of the Loan.

**8.15.    Severability.**  In the event of any invalidity or unenforceability of any Loan Document or any provision of any Loan Documents, the remainder of the Loan Documents shall remain in full force and effect.

**8.16.    Disclosure.**  Lender may disclose terms of the Loan and payment information (a) whenever a request for a credit rating is received, (b) pursuant to a court or regulatory order, (c) pursuant to regulatory reporting requirements, or (d) to facilitate a sale by Lender of all or part of the Loan.

**8.17.    Participations.**  Lender shall have the right at any time, without notice to or consent from Borrower, to sell, assign, transfer, negotiate or grant participations in all or any part of the Loan, the Loan Documents and/or the Loan Documents or any of them, and/or any or all of Lender's rights or obligations under any or all thereof.  In such event, Borrower shall have a direct obligation to each such participant.  Except as Lender and such participants may otherwise agree among themselves, all matters which are, pursuant to the Loan Documents or Loan Documents, subject to the approval of Lender shall also be subject to the approval of all participants in the Loan, and all rights of Lender under the Loan Documents and Loan Documents shall also be rights of all participants of Loan. Without notice to or consent from Borrower, Lender may provide to actual and potential purchasers, assignees, transferees and participants any or all information, documents, data and/or analysis concerning Borrower, the Loan, the or the Property.

**8.18.    Documents.**  The form and substance of all Loan Documents, Orders, and related documents shall be subject to Lender's approval in its sole discretion.

**8.19.    No Third Party Beneficiaries.** Only the Borrower and Lender and their permitted successors and assigns have any rights of action under the Loan Documents.

**8.20.    Assignment.**  Without the prior written consent of Lender in its sole discretion and subject to the Bankruptcy Court, Borrower shall not assign Borrower's interest under any of the Loan Documents, or in any monies due or to become due thereunder, and any assignment without such consent shall be void. Lender may assign its rights and obligations under the Loan Documents, in whole or part, in its sole discretion.

**8.21.    Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Agreement.

**8.22.    Interpretation.**  Each of the Loan Documents shall be construed without regard to whether it was prepared or drafted by one party or the other or either of their attorneys.

**8.23.    Exhibits.**  All exhibits referred to herein are incorporated herein by this reference and are a part hereof.

- 39 -

166453742.14

**8.24.    Controlling Law; Venue.**  THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA, EXCEPT TO THE EXTENT PREEMPTED BY THE BANKRUPTCY CODE AND OTHER FEDERAL LAW.  The parties agree that the Bankruptcy Court shall have exclusive jurisdiction with regard to all actions and proceedings related to the Loan Documents and/or the transactions contemplated hereby.   With respect to any actions that are not subject to the jurisdiction of the Bankruptcy Court, Borrower hereby consents to the exclusive jurisdiction to submit to the jurisdiction of the federal and state courts of the State of California, at Lender's election, with respect to the breach or interpretation of the terms of this Agreement and the enforcement of any and all rights, duties, liabilities, obligations and powers between the parties hereto and Borrower waives any objection which it may have based on lack of personal jurisdiction, improper venue or forum non conveniens to the conduct of any proceeding in any such court and waives personal service of any and all process upon it, and consents that all such service of process be made by mail or messenger directed to it at the address set forth in this Agreement.  Nothing contained herein shall affect the right of Lender to serve legal process in any other manner permitted by law or affect the right of Lender to bring any action or proceeding against Borrower or its property in the courts of any other jurisdiction.

**8.25.    Relationship to Commitment Letter.**  Upon Closing, the Loan Documents shall entirely supersede any commitment letter or term sheet for the Loan, except as set forth in the Orders.

**8.26.    Counterparts.**  This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute a single Agreement.  The signature page of any counterpart may be detached therefrom without impairing the legal effect of the signature(s) thereon provided such signature page is attached to any other counterpart identical thereto except having additional signature pages executed by the other Party.  This Agreement may be executed by a party's signature transmitted by facsimile ("fax") or by electronic mail in pdf format ("pdf"), and copies of this Agreement executed and delivered by means of faxed or pdf signatures shall have the same force and effect as copies hereof executed and delivered with original signatures.  All parties hereto may rely upon faxed or pdf signatures as if such signatures were originals.  All parties hereto agree that a faxed or pdf signature page may be introduced into evidence in any proceeding arising out of or related to this Agreement as if it were an original signature page. THE PARTIES HERETO CONSENT AND AGREE THAT THIS AGREEMENT MAY BE SIGNED AND/OR TRANSMITTED USING ELECTRONIC SIGNATURE TECHNOLOGY (E.G., VIA DOCUSIGN OR SIMILAR ELECTRONIC SIGNATURE TECHNOLOGY), AND THAT SUCH SIGNED ELECTRONIC RECORD SHALL BE VALID AND AS EFFECTIVE TO BIND THE PARTY SO SIGNING AS A PAPER COPY BEARING SUCH PARTY'S HAND-WRITTEN SIGNATURE.  THE PARTIES FURTHER CONSENT AND AGREE THAT (1) TO THE EXTENT A PARTY SIGNS THIS AGREEMENT USING ELECTRONIC SIGNATURE TECHNOLOGY, BY CLICKING "SIGN," SUCH PARTY IS SIGNING THIS AGREEMENT ELECTRONICALLY, AND (2) THE ELECTRONIC SIGNATURES APPEARING ON THIS AGREEMENT SHALL BE TREATED, FOR PURPOSES OF VALIDITY, ENFORCEABILITY AND ADMISSIBILITY, THE SAME AS HAND-WRITTEN SIGNATURES.

166453742.14

**8.27.   WAIVER OF RIGHTS OF TRIAL BY JURY.**  To the greatest extent permitted by law, each of Borrower and Lender hereby voluntarily, knowingly, intentionally, irrevocably and unconditionally waive any right to have a jury participate (including by way of jury trial) in resolving any dispute or litigation (whether based upon contract, tort or otherwise) between or among Borrower and Lender arising out of or in any way related to this Agreement, the Loan, the Loan Documents or actions of Borrower or Lender relating to the Loan and/or the lending relationship which is the subject of this Agreement.  At any time while the Case remains pending, any such dispute or litigation, action or cause of action shall be submitted to and decided by the Bankruptcy Court to the extent of the Bankruptcy Court's jurisdiction.  This waiver is a material inducement to Lender to provide the financing described herein and in the Loan Documents.

| | |
|---|---|
| _____ | _____ |
| BORROWER'S | LENDER'S |
| INITIALS | INITIALS |

[*Signatures on Following Page*]

- 41 -

166453742.14

IN WITNESS WHEREOF, Lender and Borrower have caused this Agreement to be duly execute and delivered as of the date first above written.

**"LENDER":**  DTLA LENDING LLC,
a California limited liability company,

By:  LENDLEASE (US) CONSTRUCTION
HOLDINGS INC.,
a Florida corporation,
its Sole Managing Member

By:  _____
Bruce Ambler,
Director of Operations, Americas

**"BORROWER":**  OCEANWIDE PLAZA LLC,
a Delaware limited liability company

By:  _____
Bradley Sharp,
Chief Restructuring Officer

Signature Page
to
Debtor Possession Financing Loan Agreement

166453742.14

## EXHIBIT A

### Description of Real Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

.

Exhibit A
to
Debtor Possession Financing Loan Agreement

# EXHIBIT B

# Budget

166453742.14

# EXHIBIT C

## Payment Request

Exhibit C
to
Debtor Possession Financing Loan Agreement

166453742.14

PAYMENT REQUEST

_____ ___, 201_

DTLA LENDING LLC.
200 Park Avenue, 9th Floor
New York, New York 10166
Attention: _____
Email: _____

Ladies and Gentlemen:

Reference is made to the Secured Superpriority Debtor in Possession Financing Loan Agreement, dated May ____, 2024 (as amended, restated, supplemented and/or otherwise modified from time to time, the "*Loan Agreement*") among DTLA LENDING LLC, a California limited liability company ("*Lender*") and OCEANWIDE PLAZA LLC, a Delaware limited liability company ("*Borrower*"). Capitalized terms used but not elsewhere defined herein shall have the respective meanings ascribed to such terms in the Loan Agreement.

Borrower hereby requests that Lender make a Disbursement on _____, 201__ (the "*Funding Date*") in the amount of $_____.

Borrower hereby directs Lender to make the requested Disbursement(s) in the accordance with the applicable instructions set forth in Exhibit A attached hereto.

Borrower acknowledges and agrees that even though all or a portion of the Disbursements described in the attached exhibits may be directed to entities other than the Borrower, receipt of such Disbursements by the applicable payees shall constitute receipt of such disbursements by Borrower.

In order to induce Lender to disburse the proceeds of the Loan hereby requested, Borrower hereby certifies to Lender that:

(a)    the representations and warranties of Borrower set forth in the Loan Agreement and the other Loan Documents on the date hereof and on the funding date of the requested Disbursement are true and correct in all material respects;

(b)    no Event of Default or Potential Default has occurred and is continuing;

(c)    The requested Disbursements are in compliance with the Loan Agreement and the Budget.  After the requested Disbursements, the Budget shall remain "in balance" and any individual Disbursement shall not exceed the amount allocated for that payment in the line-item of the Budget.  All invoices pertaining to this application for payment are attached. Pursuant to the terms of the Loan Agreement and exhibits, Borrower has complied with all conditions precedent to funding and is not in default with any current terms of the Loan.

Exhibit C
to
Debtor Possession Financing Loan Agreement

166453742.14

[*remainder of this page intentionally left blank*]

Please contact the undersigned with any questions you may have with regard to this Disbursement Request.

Sincerely,

OCEANWIDE PLAZA LLC,
a Delaware limited liability company

By:_____

_____, Chief  Restructuring
Officer

Exhibit C
to
Debtor Possession Financing Loan Agreement

EXHIBIT A

<u>Entity, Payment Instructions</u>                                                      <u>Amount</u>

1.   _____                              $_____

     Bank Name:
     Bank Address:
     ABA No.:
     Account #:
     Acct Name:
     Reference:

2.   _____                              $_____

     Bank Name:
     Bank Address:
     ABA No.:
     Account #:
     Acct Name:
     Reference:

TOTAL DISBURSEMENTS                                                        $_____

Exhibit C
to
Debtor Possession Financing Loan Agreement

166453742.14

# TAB 3

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

DTLA LENDING LLC
200 Park Avenue, 9th Floor,
New York, New York 10166
Attention: Bruce Ambler

1101 South Flower Street, Los Angeles, California
APN: 5138-015-045

## DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING

MADE BY

**OCEANWIDE PLAZA LLC**,
a Delaware limited liability company,
c/o Development Specialists, Inc.
333 S Grand Ave, Suite 4100, Los Angeles, CA 90071-1544
("**Trustor**")

TO

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, as trustee**
Hereinafter referred to as "**Trustee**"

IN FAVOR OF

**DTLA LENDING LLC**,
a California limited liability company
200 Park Avenue, 9th Floor, New York, New York 10166
("**Beneficiary**")

LOAN AMOUNT:  $10,000,000.00

Dated as of May __, 2024

THIS SECURITY INSTRUMENT IS ALSO A FIXTURE FILING UNDER SECTION 9502(b) OF THE CALIFORNIA COMMERCIAL CODE.

166387635.4

This DEED OF TRUST, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING (this "***Deed of Trust***") is made as of May [__], 2024, by and among OCEANWIDE PLAZA LLC, a Delaware limited liability company ("***Trustor*** whose address is c/o Development Specialists, Inc.,333 S Grand Ave, Suite 4100, Los Angeles, CA 90071-1544; OLD REPUBLIC TITLE COMPANY ("***Trustee***"), whose address is 275 Battery Street, Suite 1500, San Francisco, California 94111; and DTLA LENDING LLC, a California limited liability company ("***Beneficiary***"), whose address is 200 Park Avenue, 9th Floor, New York, New York 10166, with reference to the following facts:

A.      Trustor and Beneficiary have entered into that certain DIP Financing Loan Agreement of even date herewith (as amended, restated, supplemented and/or otherwise modified from time to time, the "***Loan Agreement***"), which provides for a loan by Beneficiary to Trustor to finance the construction of improvements on the real property described below.

B.      Pursuant to the Loan Agreement, for value received Trustor has executed and delivered to Beneficiary that certain Promissory Note of even date herewith (the "***Note***") in the stated principal amount of Ten Million and No/100 Dollars ($10,000,000.00) (the "***Loan***").

C.      As of the date hereof, there is a pending a bankruptcy case, Case No. 2:24-bk-11057-DS ("***Case***") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Los Angeles Division ("***Bankruptcy Court***") in which Trustor is the Debtor and Debtor in Possession.  The Loan was made in accordance with and subject to that certain Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing entered on April 26, 2024, at Docket Entry No.176 in the Case (the "***Postpetition Loan Order***").  Trustor retains possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its business as a debtor in possession.

D.      Trustor has agreed to execute and deliver to Beneficiary this Deed of Trust as security (except as provided in **ARTICLE 3**) for performance of all of its obligations under, among other things, the Loan Agreement and the Note, as more particularly set forth below.

**PURSUANT TO THE POST-PETITION LOAN ORDER, THIS DEED OF TRUST EVIDENCES A VALID, PERFECTED, ENFORCEABLE LIEN INTEREST THAT IS <u>SENIOR IN PRIORITY TO ALL OTHER VOLUNTARY LIENS</u> OF RECORD AS OF THE DATE THIS DEED OF TRUST IS RECORDED, SUBJECT TO THE CARVE OUT AND THE COUNTY SENIOR CLAIMS.**

NOW, THEREFORE, in consideration of the premises, Trustor grants and agrees as follows:

## ARTICLE 1.
## GRANTS; OBLIGATIONS SECURED

**1.1.     Property.**  Trustor irrevocably GRANTS, TRANSFERS AND ASSIGNS to Trustee, its successors and assigns, in trust, with power of sale and right of entry and possession,

166387635.4

all of Trustor's present and future estate, right, title and interest in and to all of the following property, now owned or hereafter acquired (collectively, the "***Property***"):

       **1.1.1.   Real Property.**  That certain real property (the "***Real Property***") described in **Exhibit A** attached hereto and incorporated by this reference, which property is owned by Trustor in fee.

       **1.1.2.   Improvements.**   All present and future structures, buildings and improvements of any kind on the Real Property, and all machinery, equipment, appliances, furnishings, fixtures and other property used or usable in connection with the Real Property or the improvements now or hereafter on the Real Property or any business conducted on the Real Property, now or hereafter attached or affixed in any manner to, installed in, or adapted to the use of, the Real Property or any improvement thereon, including heating and air-conditioning equipment and systems; facilities used to provide utility services, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, recreation or other services; window coverings, drapes and rods; and carpeting and floor coverings (all collectively, the "***Improvements***") (exclusive of any of the foregoing owned or leased by tenants of space in the Improvements);

       **1.1.3.   Appurtenances.**   All present and future appurtenances of the Real Property and rights of the Trustor in and to any streets, alleys, roads, navigable waters, air space, public places, easements or rights of way relating to the Real Property or Improvements;

       **1.1.4.   Leases and Rents.**  All rights of the Trustor, to the extent assignable, under all present and future leases, licenses, franchises, concessions, subleases, rental agreements and other agreements for possession, use or occupancy pertaining to any of the Property to the extent assignable (*subject, however*, to the absolute assignment thereof set forth in the separate Assignment of Lessor's Interest in Leases recorded herewith), and all of the rents, issues, royalties, profits, receipts, revenue and income (including security deposits) of any thereof or any of the Property (the "***Rents***") (*subject, however*, to the absolute assignment of the Rents set forth in **ARTICLE 3**);

       **1.1.5.   Water; Associations.**  All present and future water, water rights and water stock relating to any of the Property, and all present and future documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property;

       **1.1.6.   Minerals.**  All present and future rights to all minerals, oil, gas and other hydrocarbon substances in, on or under the surface of the Real Property (to the extent owned by Trustor); and

       **1.1.7.   Proceeds, Deposits.**  All proceeds, including insurance proceeds, and claims arising on account of any damage to or taking of any of the Property, and all causes of action and recoveries by settlement or otherwise for any loss or diminution in value of any of the Property; all present and future deposits and payments made by Trustor with third parties in connection with the development of and construction upon the Real Property, and refunds thereof; and all present and future deposits and payments made with or other security given to utility companies by Trustor with respect to the Real Property or Improvements, and refunds thereof.

- 3 -

**1.2.    Collateral.**  Trustor, as debtor, hereby GRANTS a security interest to Beneficiary, as secured party, in all of Trustor's present and future right, title and interest in and to all of the following property, now owned or hereafter acquired (collectively, the "***Collateral***"):

**1.2.1.    Tangible Property.**  All goods and tangible personal property (including all appliances, furniture, furnishings, fittings, machinery, fixtures, tools, inventory, materials, supplies and equipment) which are now or hereafter installed on or attached or affixed to the Property, or which are used, necessary for use, or intended for use in connection with the Property (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property), whether or not located or installed on or attached or affixed to the Property, including all goods and tangible personal property (including all appliances, furniture, furnishings, fittings, machinery, fixtures, tools, inventory, materials, supplies and equipment) for providing gas, light, heat, water, air-conditioning, ventilation, shade, refrigeration, laundry, dry cleaning, food preparation, food service, dishwashing, garbage disposal, trash removal, fumigation, pest control, vacuuming, cleaning, window washing, telecommunications, computer, elevator, escalator, transportation, parking, safety, security, alarm, maintenance, landscaping, repair, decoration, recreation, entertainment or other utilities, services, facilities or guest, tenant, visitor or other accommodations of any kind at or for the Property;

**1.2.2.    Intangible Property.**  All intangible personal property, and all documentary, electronic and other evidences and embodiments of any intangible personal property, relating to the Property or the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property or the Collateral), to the extent assignable, including: (a) all names under which or by which any of the Property or the Collateral may at any time be operated or known, all rights to carry on business under any such names or any variants of such names, and all goodwill in any way relating to the Property or the Collateral, (b) all permits, licenses, variances, land use entitlements, approvals, consents, authorizations, franchises and agreements, (c) all rights under any covenants, conditions and restrictions or other matters of record, (d) all contracts (including construction, materials, architectural, service, engineering, consulting, leasing, financing, sale, surety, operating, management, maintenance, repair and landscaping contracts), (e) all reserves, deferred payments, deposits, refunds, rebates, cost savings, letters of credit, rights to proceeds of letters of credit, and payments of any kind, (f) all disbursed proceeds of financing commitments, (g) all insurance policies (whether required by this Deed of Trust or otherwise) and insurance proceeds, (h) all claims, causes of action and recoveries by settlement or otherwise (including for any damage to, or loss, taking or diminution in the value of, any of the Property or the Collateral, or for any breach or rejection in bankruptcy of any other lease of any of the Property or Collateral by Trustor as lessee or lessor), (i) all interests of Trustor under any leases of any personal property of any kind, including any options to purchase, (j) all inventions, patents, trademarks, trade names, trade symbols, trade secrets, trade dress, service marks and copyrights, and all patent, trademark, trade name, trade symbol, trade secret, trade dress, service mark and copyright applications, registrations and licenses, and (k) all computer software and source codes;

**1.2.3.    Plans, Reports, Records, Documents.**  Without limiting the foregoing, , to the extent assignable, all drawings, plans, specifications, tests, reports, studies, designs, data,

- 4 -

166387635.4

appraisals, maps, surveys, engineering reports, promotional materials, business books and records, and other documents of any kind (in paper, electronic or other form) relating to the Property or the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property or the Collateral);

       **1.2.4.**    **Stock.**   Without limiting the foregoing, all shares of stock or other evidence of ownership of any part of the Property or the Collateral that is owned by Trustor in common with others, including any water stock relating to the Property, and all documents and rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property or the Collateral;

       **1.2.5.**    **Other.**  Without limiting the foregoing, to the extent assignable, all goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles, as those terms are or may be defined in the California Uniform Commercial Code from time to time in effect, in any way relating to or deriving from any of the Property, the Collateral or any business operated on any of the Property or using any of the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property, the Collateral or any such business); and

       **1.2.6.**    **Proceeds; Receipts and Revenues.**   All proceeds, replacements, substitutions, products, accessions, and increases (whether in the form of goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles or otherwise) of all of the Collateral; and all receipts, revenues, rents, issues and profits (whether in the form of goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles or otherwise) of operation, use, hiring, leasing or licensing of any of the Collateral.

       **1.3.**    **Fixture Filing.**  The personal property in which Beneficiary has a security interest includes goods which are or will become fixtures on the Property. This Deed of Trust is intended to serve as a fixture filing pursuant to the California Uniform Commercial Code. Trustor is the "***debtor***"; Beneficiary is the "***secured party***"; and the addresses of each are as specified in the first paragraph of this Deed of Trust.

       **1.4.**    **Obligations Secured.**  The grants, assignments and transfers made in **Sections 1.1** and **1.2** secure, in such order of priority as Beneficiary, in its absolute discretion, may determine, the due, prompt and complete payment, performance, observance and satisfaction by Trustor of all of its obligations, covenants, agreements and conditions under all of the following (collectively, the "***Secured Obligations***"):

- 5 -

166387635.4

**1.4.1.**    the Note, the Loan Agreement, this Deed of Trust and all other Loan Documents (as defined in the Loan Agreement);

**1.4.2.**    all other instruments and agreements now or hereafter given to evidence or further secure any obligation secured hereby;

**1.4.3.**    the obligations of Trustor under the Final Order (as defined in the Loan Agreement;

**1.4.4.**    all other agreements to which Trustor (or the then owner of the Property) and Beneficiary may now or hereafter be or become parties which state that Trustor's (or such owner's) obligations under such agreements are secured by this Deed of Trust; and

**1.4.5.**    all extensions, modifications, substitutions, replacements and renewals of any of the foregoing.

## ARTICLE 2.
## COVENANTS OF TRUSTOR

TO PROTECT AND MAINTAIN THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

**2.1.    Payment and Performance of Obligations When Due.**  Trustor shall promptly pay when due all amounts due as part of the Secured Obligations and perform, observe and discharge every condition, obligation, covenant and agreement thereof.

**2.2.    Ownership, Maintenance and Preservation of Property and Collateral; Compliance with Law**.

**2.2.1.**    Trustor shall maintain and keep the Property and the Collateral in at least as good a condition as the condition that exists on the date hereof (subject to ordinary wear and tear and subject to availability of funds in the Budget).  Except as otherwise provided in **Section 2.2.2** below or the Loan Agreement: (a) Trustor shall not alter, remove or demolish any buildings, improvements, machinery, equipment, appliances or fixtures now or hereafter on the Property without Beneficiary's prior written consent, except as may be required by law or the Bankruptcy Court; and (b) Trustor shall not seek, make or consent to any change in the zoning, entitlements or conditions of use of the Property, without Beneficiary's prior written consent.

**2.2.2.**    Trustor shall promptly notify Beneficiary in the event of any damage to or loss of any material Collateral.

**2.2.3.**    Trustor represents and warrants that it is, and as to portions of the Collateral to be acquired hereafter agrees that it will be, the sole owner of the Collateral.  Without Beneficiary's prior written consent, Trustor will not after the date hereof execute, file or authorize to be filed, in any jurisdiction, any financing statement covering any of the Collateral in which Beneficiary is not named as the sole secured party.  Trustor agrees and warrants that after the date hereof, Trustor will not become the lessee of any personal property without Beneficiary's prior written consent.

- 6 -

166387635.4

**2.2.4.**    All of the Collateral shall be and remain located on the Property, except as Beneficiary may consent in writing or as permitted pursuant to the Loan Agreement.  Trustor shall not sell transfer, assign, remove or permit to be removed from the Property any of the Collateral unless: (a) such Collateral is inventory sold or is being repaired in the ordinary course of business and is promptly replenished with like Collateral of equivalent value in which Beneficiary has a first-priority security interest; or (b) Beneficiary has consented thereto in writing, and under such conditions as Beneficiary may reasonably impose; or (c) such Collateral is concurrently replaced with like Collateral of equivalent value and utility in which Beneficiary has a perfected first-priority security interest.

**2.3.**    **Entry and Inspections.**  Subject to compliance with safety protocols, Beneficiary and Trustee and their agents, attorneys, employees and contractors may enter upon any part of the Property at all reasonable times with not less than twenty-four (24) hours prior written notice to Trustor to attend to Beneficiary's or Trustee's interests, respectively, inspect the Property and the Collateral, or perform any act which Beneficiary or Trustee, respectively, is authorized to perform hereunder.  Trustor shall cooperate in such entries and inspections as Beneficiary or Trustee may reasonably request.

**2.4.**    **Insurance**.

**2.4.1.**    **Maintenance of Insurance.**  Trustor shall procure and maintain policies of insurance in form and content and from insurers acceptable to Beneficiary, providing such coverage as Beneficiary may require all in accordance with the requirements of **Section 4.6** of the Loan Agreement.  Trustor shall deliver to Beneficiary certificates of coverage from each insurer containing a stipulation that coverage will not be canceled, diminished in scope or limits of coverage, allowed to lapse, surrendered or materially amended, without a minimum of thirty (30) days written notice to Beneficiary.  At least thirty (30) days prior to the expiration of each required policy, Trustor shall deliver to Beneficiary evidence satisfactory to Beneficiary of the payment of premium and the renewal or replacement of such policy in compliance with the foregoing.

**2.4.2.**    **Insurance Proceeds**.  Trustor shall promptly notify Beneficiary of any material loss or damage to the Property or the Collateral or any material portion thereof.  Trustor irrevocably authorizes Beneficiary, as Trustor's attorney-in-fact, with full power of substitution, at Beneficiary's election, to make proof of loss, adjust and compromise any claim under insurance policies, commence, appear in and prosecute any action arising from such policies, collect and receive insurance proceeds, and deduct therefrom Beneficiary's expenses incurred in the collection thereof, including reasonable attorneys' and experts' fees and documented out-of-pocket costs, but Beneficiary shall not be responsible for any failure to collect any claim, proceeds or award for any reason. Any insurance proceeds payable to Borrower shall be applied as required under Section 2.7 of the Loan Agreement.

**2.4.3.**    **Transfer of Policies.**  Upon any foreclosure under this Deed of Trust or other transfer of title to the Property and/or the Collateral in extinguishment of any portion of the Secured Obligations, all right, title and interest of Trustor in and to any insurance policy, unearned premiums thereon or proceeds thereof shall pass to the purchaser or grantee.

**2.5.**    **Litigation; Attorneys' Fees**.

166387635.4

**2.5.1.**   Trustor shall promptly notify Beneficiary of the commencement or threat of commencement of any litigation which seeks to or could materially affect any of the Property or the Collateral, the lien or security interest of this Deed of Trust, or the rights or powers of Beneficiary or Trustee hereunder.  Trustor shall, at its own expense, appear in and defend any such litigation.  Beneficiary and Trustee shall also have the right, but not the obligation, to appear and participate in any such litigation, and Trustor shall pay all  reasonable documented out-of-pocket costs and expenses (including costs of evidence of title and reasonable attorneys' and experts' fees and  documented out-of-pocket costs) of Beneficiary and Trustee in so appearing.

**2.5.2.**   Subject to approval of the Bankruptcy Court, Trustor shall reimburse Beneficiary on the Maturity Date for reasonable attorneys' and experts' fees and documented out-of-pocket costs and expenses, incurred by Beneficiary for: (a) enforcement of any of the Secured Obligations, this Deed of Trust or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed; or (b) representation of Beneficiary in any action or proceeding relating to the Property or the Collateral, whether commenced by Beneficiary or any other person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings.  All such fees and costs shall bear interest until paid at the rate applicable under the Note.

**2.6.**   **Performance of Obligations by Beneficiary or Trustee.**  Should Trustor fail to make any payment, perform any obligation or do any act set forth in or secured by this Deed of Trust, Beneficiary or Trustee (at the request of Beneficiary), without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from making such payments, performing such obligations or doing such acts, then or in the future, may make such payment, perform such obligation or do such act in such manner and to such extent as Beneficiary or Trustee may deem necessary to protect the security of this Deed of Trust or the interests of Beneficiary or Trustee.  Without limiting the foregoing, Beneficiary or Trustee may pay, purchase, contest or compromise any encumbrance, charge or lien which, in the sole judgment of Beneficiary or Trustee, appears to be prior or superior to this Deed of Trust, subject to approval by the Bankruptcy Court.  In exercising any such power, Beneficiary or Trustee may pay all necessary expenses incurred therefor including reasonable attorneys' and experts' fees and documented out-of-pocket costs.  Trustor shall pay, on the Maturity Date, all sums so expended by Beneficiary or Trustee, with interest, from the date of expenditure, at the rate applicable under the Note.

**2.7.**   **Condemnation**.

**2.7.1.**   Trustor shall promptly notify Beneficiary of any pending or threatened action to condemn or take under eminent domain any of the Property or the Collateral.  Trustor irrevocably authorizes Beneficiary, as Trustor's attorney-in-fact, with full power of substitution, at Beneficiary's election, to make claim for compensation, adjust and compromise any claim, commence, appear in and prosecute any action arising from such condemnation, collect and receive condemnation awards, and deduct therefrom Beneficiary's expenses incurred in the collection thereof, including reasonable attorneys' and experts' fees and documented out-of-pocket costs, but Beneficiary shall not be responsible for any failure to collect any claim or award for any reason.  Any condemnation awards received by Trustor shall be applied pursuant to Section 2.7 of the Loan Agreement.

- 8 -

166387635.4

**2.8.** **Books and Records; Reports**.

**2.8.1.** Trustor shall keep proper books of record and account in which full, true and correct entries will be made of all dealings or transactions of, or in relation to the business and affairs of, Trustor with respect to the Property and the Collateral in accordance with generally accepted accounting principles (or such other system of accounting as may be approved by Beneficiary) consistently maintained. Trustor shall provide Beneficiary with access to such books and records during normal business hours and upon reasonable notice which, in any event shall not be less than forty-eight 48 hours prior to such requested access, and Beneficiary shall have the right to inspect such books and records, and supporting materials, and to make extracts or copies thereof.

**2.8.2.** If Beneficiary so requests, Trustor shall, at its own expense, furnish to Beneficiary within ninety (90) days after the last day of each of Trustor's fiscal years, a complete report in such detail as may be reasonably required by Beneficiary, covering the operations of Trustor with respect to the Property and the Collateral and containing itemized operating statements of income and expenses for such year and a current rent roll specifying the names of tenants, the space leased, rent reserved, and the status of performance of each tenant.

**2.9.** **Estoppel Certificates.** Trustor will promptly furnish, upon Beneficiary's request from time to time, a duly acknowledged written statement specifying: (a) all amounts believed by Trustor to be due on the Secured Obligations; (b) the existence and details of any modifications of the Secured Obligations asserted by Trustor (or specifying that there are no such modifications); (c) the existence and details of any offsets, defenses or counterclaims asserted by Trustor which would in any way affect any liability of Trustor on any of the Secured Obligations (or specifying that there are no such offsets, defenses or counterclaims); and (d) such other matters as Beneficiary may reasonably require. Trustor's failure to provide any such statement, or to specify any asserted modification, offset, defense or counterclaim, shall conclusively establish the absence of any such modification, offset, defense or counterclaim.

**2.10.** **Leases.** If any portion of the Property or the Collateral is leased or to be leased by Trustor as lessor, subject to **Section 4.4.1**, and subject to the requirements of the separate Assignment of Lessor's Interest in Leases recorded herewith:

**2.10.1.** Trustor shall perform all covenants of the lessor under such leases.

**2.10.2.** Each such lease shall be absolutely subordinate to the lien and security interest of this Deed of Trust, but shall contain a provision satisfactory to Beneficiary that in the event of a foreclosure sale hereunder, such lease, at the option of the purchaser at such sale, shall not be terminated and the tenant thereunder shall attorn to such purchaser as lessor.

**2.10.3.** Each such lease shall be in form and content and with lessees approved by Beneficiary, and Trustor shall provide to Beneficiary fully-executed copies of each such lease. Upon request, Trustor shall provide to Beneficiary a current rent roll specifying the names of tenants, the space leased, rent reserved, and the status of performance of each tenant.

**2.11.** **Contracts, Leases, Permits, Licenses, Franchises.** With respect to Property or Collateral consisting of rights in or under contracts, leases, permits, licenses, franchises and the

like, other than those of inconsequential value and the breach or loss of which could have no material adverse effect upon Trustor, the Real Property, or any of the remaining Property or Collateral (the "*Agreements*"):

**2.11.1.** Except to the extent any such action would be in violation of the Bankruptcy Code (as defined in the Loan Agreement), Trustor shall, at its sole cost and expense: (a) give prompt notice to Beneficiary of any notice of default given or received by Trustor under any Agreements, together with a complete copy of any such notice of default; and (b) appear in and defend any action arising out of or relating to the Agreements or the obligations of any party thereunder.

**2.11.2.** Trustor shall not, without Beneficiary's prior written consent and approval of the Bankruptcy Court, take any action to: (a) terminate or amend any Agreements; (b) waive, or release the parties to any Agreements from, any obligation or condition to be performed or satisfied by such parties; or (c) make any other assignment or transfer of any of its rights in any Agreements, absolutely or for security.  Any such purported action by Trustor without Beneficiary's prior written consent shall be void, and shall constitute a default hereunder.

**2.12.   Further Agreements, Acts; Financing Statements.**  Trustor shall execute any and all further agreements, assignments, documents and financing statements, and take such other further acts, as Beneficiary may reasonably request from time to time in order to evidence, protect, perfect or continue the security interest of Beneficiary in the Property and/or the Collateral or otherwise carry out the purposes and intent of this Deed of Trust.  Beneficiary may file financing statements in all states, counties and other jurisdictions as it may elect, without the signature of Trustor if permitted by law.

## ARTICLE 3.
## ABSOLUTE ASSIGNMENT OF RENTS

**3.1.   Absolute Assignment of Rents.**  Trustor absolutely and unconditionally hereby ASSIGNS and TRANSFERS to Beneficiary all of the Rents; reserving to Trustor only the right, prior to any default hereunder (which right shall terminate immediately and automatically upon any such default, without notice), to collect, receive and retain the Rents as and when (and not before) they become due and payable, but not otherwise.  Trustor shall, at the request of Beneficiary, execute such further assignments to Beneficiary of such leases, agreements and Rents as Beneficiary may require.

**3.2.   Rights Upon Default.**  Upon any default hereunder which continues beyond the expiration of any applicable notice and cure periods, Beneficiary may, at any time and without notice, irrespective of whether a notice of default has been delivered to Trustee, and without regard to the adequacy of the security for the Secured Obligations, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of the following, in its own name or in the name of Trustor:  (a) enter upon, take possession of and/or operate the Property, the Collateral or any part thereof; (b) sue for or otherwise collect and receive the Rents (including those past due and unpaid) and apply such Rents (less costs and expenses of operation (including reserves, if any) and collection, including reasonable attorneys' and experts' fees and documented out-of-pocket costs) to the payment of the

Secured Obligations in such order and in proportions as Beneficiary in its absolute discretion may determine; (c) dispossess by usual proceedings any lessee defaulting in the payment of Rents; (d) lease the Property or the Collateral or any part thereof; (e) do any other acts which Beneficiary deems proper to protect this Assignment and its interests hereunder until all of the Secured Obligations are paid in full; and (f) exercise any other right permitted by law.  The exercise of any of the foregoing rights shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice, nor render Beneficiary a mortgagee in possession.

## ARTICLE 4.
## DEFAULT; REMEDIES; ACCELERATION

**4.1.    Events of Default.**  The occurrence of any "Event of Default" as defined in the Loan Agreement shall constitute an event of default under this Deed of Trust, subject to Section 6.2 of the Loan Agreement in all respects.

**4.2.    Remedies**. Subject to Section 6.2 of the Loan Agreement in all respects:

**4.2.1.**    If there occurs an event of default under this Deed of Trust, Beneficiary may, at its sole option, without notice to or demand upon Trustor, do any one or more of the following:

(a)    declare any or all of the Secured Obligations immediately due and payable, irrespective of any otherwise-applicable maturity date;

(b)    enter on or into the Property, in person, by agent or by court-appointed receiver, and take such action as Beneficiary may determine desirable to complete any unfinished development and/or to manage and operate the Property and/or the Collateral and/or to collect the Rents, and Beneficiary may apply any Rents collected against the Secured Obligations without in any way curing or waiving any default of Trustor;

(c)    foreclose, non-judicially and/or by judicial action, in any order, separately or together, at the same or different times and places, against some or all of the Property, the Collateral, and/or any other real or personal property security for the Secured Obligations, without waiving any other part thereof;

(d)    require Trustor to assemble any or all of the Collateral and make it available to Beneficiary in a place designated by Beneficiary, and sell the Collateral at the Property or elsewhere, with or without having the Collateral at the place of sale;

(e)    without removal, render the Collateral unusable and dispose of it on the Property;

(f)    enter upon the Property and possess and remove any or all of the Collateral without legal process, if Beneficiary can do so without a breach of the peace, or by legal action for possession;

(g)     exercise any or all other remedies now or in the future available to a secured party under the California Uniform Commercial Code;

(h)     obtain the appointment of a receiver ex parte and upon such prior notice to Trustor, as required by law;

(i)     exercise any other legal, equitable or contractual right or remedy against Trustor and/or any security and/or any other person liable (by way of guaranty, assumption, endorsement or otherwise) upon the Secured Obligations.

**4.2.2.**     No remedy provided or permitted under this Deed of Trust is exclusive of any other, or of any remedy provided or permitted by law, equity or any instrument or agreement evidencing, securing, guarantying or relating to any of the Secured Obligations.  Each such remedy is cumulative and in addition to every other.  No exercise of remedies, including foreclosure, against any part of the Property or the Collateral shall extinguish Beneficiary's rights to exercise remedies, including foreclosure, against any other part of the Property or the Collateral until the Secured Obligations are paid in full.  Beneficiary may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

**4.2.3.**     No delay or omission of Trustee or Beneficiary in the exercise of any right, remedy or power accruing upon any event of default hereunder shall impair such right, remedy or power or any other, nor shall such delay or omission be deemed a waiver of or acquiescence in any default.

**4.2.4.**     Neither Beneficiary's nor Trustee's nor any receiver's entry upon and/or taking possession of all or any part of the Property or the Collateral, nor any collection of Rents or other security or proceeds of other security, or other sums, nor the application of any collected sum to any Secured Obligation, nor the exercise of any other right or remedy by Beneficiary or Trustee or any receiver shall cure or waive any breach, default or notice of default under this Deed of Trust, or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and Trustor has cured all other defaults), or impair the status of the security, or prejudice Beneficiary or Trustee in the exercise of any right or remedy, or be construed as an affirmation by Beneficiary of any tenancy, lease, or option or a subordination of the lien of this Deed of Trust.

**4.3.     Sale(s) by Trustee of the Property and Collateral**.

**4.3.1.**     If Beneficiary elects to sell any of the Property (separately from or together with all or any part of the Collateral) under the power of sale herein granted, Trustee shall record and give all notices of default, election to sell and sale(s) as may be required by law.  Upon the expiration of such time as is required by law, Trustee shall, without demand on Trustor, sell the Property (and, if so directed by Beneficiary, all or any portion of the Collateral) upon any terms and conditions specified by Beneficiary and permitted by law, at the time and place (or the times and places) fixed in the notice(s) of sale(s), as a whole or in separate parcels or items, and in such order, as Beneficiary may direct in its sole discretion, at public auction(s) to the highest bidder for cash payable at the time of sale(s).  Trustor waives all rights (a) to require that the Property and/or Collateral be sold together or separately, (b) to direct the order in which any of the Property or

- 12 -

166387635.4

Collateral will be sold, and (c) to have any of the Property or Collateral marshalled upon any sale. Trustee may postpone any sale from time to time by public announcement at the time and place of the sale as fixed by notice or by prior postponement.

**4.3.2.** Any person, including Trustee or Beneficiary, may purchase at such sale. Trustee shall deliver to the purchaser a deed conveying the Property or portion thereof sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.

**4.3.3.** Upon a sale by Trustee, and after deducting all costs, expenses, and fees of Trustee and of this trust (including the cost of evidence of title in connection with the sale), Trustee shall apply the proceeds from the sale to the payment of the Secured Obligations in such order as Beneficiary may direct and the remainder, if any, to the person or persons legally entitled thereto.

**4.4.** **Acceleration of Indebtedness Upon Sale of the Property and Upon Change in Ownership, Control, or Membership of Trustor**.

**4.4.1.** In the event Trustor, or any successor in interest to Trustor in the Property, sells, conveys, alienates, leases (other than pursuant to any leasing program approved by Beneficiary), assigns, transfers, encumbers, or disposes of the Property, or any part thereof or any interest therein, or becomes divested of its title or any interest therein in any manner or way, absolutely or for security, voluntarily or involuntarily, or enters into an agreement to do so, in violation of the Loan Agreement and without Beneficiary's prior written consent, then subject to Section 6.2 of the Loan Agreement, Beneficiary may, at its election, declare the Secured Obligations, irrespective of any otherwise-applicable maturity date, immediately due and payable without notice, unless such transfer is authorized by Beneficiary.

**4.4.2.** If Trustor, or any successor in interest to Trustor in the Property, is a corporation, trust, limited or general partnership, limited liability company or joint venture, should there occur a sale, conveyance, transfer, disposition or encumbrance, absolute or for security, voluntary or involuntary, or should an agreement be made to do so, without Beneficiary's prior written consent, with respect to any of the issued and outstanding capital stock of Trustor or such successor (if a corporation), or with respect to any limited partnership interests in Trustor or such successor (if a limited partnership), or with respect to any beneficial interest in Trustor or such successor (if a trust), or with respect to any general partner or joint venture interest in Trustor or such successor (if a general or limited partnership or joint venture), or with respect to any membership interests in Trustor or such successor (if a limited liability company), or if there shall occur such a change in any general partner, joint venturer or member in Trustor or such successor, then subject to Section 6.2 of the Loan Agreement, Beneficiary may, at its election, declare the Secured Obligations, irrespective of any otherwise-applicable maturity date, immediately due and payable without notice, unless such transfer is authorized by Beneficiary.

**4.4.3.** No waiver of the requirement of consent by Beneficiary as set forth herein shall be effective unless in writing. Consent by Beneficiary to any one or more transactions described in **Sections 4.4.1** or **4.4.2** shall not constitute nor be deemed to be a consent, or waiver of the requirement of consent, as to any future or succeeding transactions

- 13 -

166387635.4

**4.5.   Limitation on Remedies**.   Notwithstanding anything to the contrary contained herein, all rights and remedies of the Beneficiary under this Deed of Trust shall be subject to Section 6.2 of the Loan Agreement. In the event of any conflict, with respect to this Article 4, between the Loan Agreement and Deed of Trust, the Loan Agreement will govern.

**ARTICLE 5.**
**MISCELLANEOUS PROVISIONS**

**5.1.   Acceptance of Trust; No Duty to Notify.**   Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is under no obligation to notify any party hereto of any action or proceeding in which Trustor, Beneficiary or Trustee is a party, unless brought by Trustee hereunder.

**5.2.   Substitution of Trustees.**   Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county where the Real Property is located, substitute a successor or successors to any Trustee named herein or acting hereunder.

**5.3.   Affidavit to Trustee.**   Trustee, upon presentation to it of an affidavit signed by or on behalf of Beneficiary setting forth any fact(s) showing a default by Trustor under this Deed of Trust, is authorized to accept as true and conclusive all facts and statements in such affidavit and to act hereunder in complete reliance thereon.

**5.4.   General Rights of Beneficiary and Trustee.**   At any time or from time to time, without liability therefor, without notice and without affecting the liability of any person (including Trustor) for the payment or performance of any of the Secured Obligations or the lien and security interest of this Deed of Trust:

**5.4.1.**   Beneficiary may do any one or more of the following: release any person liable for the payment or performance of any of the Secured Obligations; extend the time or otherwise alter the terms of payment of any of the Secured Obligations; accept additional security therefor of any kind, including deeds of trust and mortgages; and alter, substitute or release any portion of the Property or the Collateral securing the Secured Obligations;

**5.4.2.**   Trustee may, with Beneficiary's prior written consent, do any one or more of the following: consent to the making of any map or plot of the Property; join in granting any easements or creating any restrictions on the Property; join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust; and reconvey or release any portion of the Property or the Collateral.

**5.5.   Power of Attorney.**   During the continuance of an Event of Default, Trustor irrevocably appoints Beneficiary as Trustor's attorney-in-fact, coupled with an interest, to perform any actions necessary and incidental to exercising the Remedies. (a) to execute and record any notices of completion, cessation of labor, or any other notices that Beneficiary deems appropriate to protect Beneficiary's interest in the Property or the Collateral, (b) to perform any actions necessary and incidental to exercising any right or remedy hereunder; and (c) upon the occurrence of a default, to perform any obligation of Trustor under this Deed of Trust; *provided, however*, that Beneficiary, as such attorney-in-fact, shall be accountable only for such funds as are actually

- 14 -

166387635.4

received by Beneficiary, Beneficiary shall have no duty to act as such attorney-in-fact, and Beneficiary shall not be liable to Trustor or any other person or entity for any failure to act.

**5.6.    No Merger.**  No merger shall occur, and Beneficiary shall not be deemed to have intended that any merger occur, as a result of Beneficiary's acquiring any other estate in, or any other lien on, the Property or the Collateral, unless Beneficiary consents to a merger in writing.

**5.7.    Reconveyance.**  Upon written request of Beneficiary stating that all of the Secured Obligations have been paid, upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment to Trustee of its fees, costs and expenses incurred or to be incurred thereby, Trustee shall reconvey, without warranty, the Property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

**5.8.    Acceptance of Late and Partial Payments.**  The acceptance by Beneficiary of the payment of any of the Secured Obligations or any installment thereof after its due date shall not constitute a waiver of the right to require prompt payment when due of all other and future Secured Obligations or installments, or to declare a default as herein provided for any failure to so pay, or to proceed with foreclosure or other remedies for any other default then existing.  The acceptance by Beneficiary of a portion of any amount due on any Secured Obligation shall neither cure nor excuse the default caused by failure to pay the whole amount due or affect any notice of default, unless such notice is expressly revoked in writing by Beneficiary.  Such acceptance shall not constitute a waiver of Beneficiary's rights to require full payment when due of all other and future sums.

**5.9.    Partial Invalidity of this Deed of Trust.**  In the event any one or more of the provisions of this Deed of Trust or the instruments or agreements reflecting the Secured Obligations are held to be invalid, illegal, unenforceable or avoidable in any respect, no other provision of this Deed of Trust, or of any such other instrument or agreement, shall be affected thereby, and such other provisions shall remain binding and enforceable.

**5.10.    Governing Law.**  This Deed of Trust has been executed and delivered in, and is to be construed, enforced and governed according to and by the internal laws of, the State of California, except to the extent federal law applies.

**5.11.    Parties Benefitted.**  Subject to **Section 4.4**, this Deed of Trust applies to, inures to the benefit of and binds all parties hereto and their respective heirs, legatees, devisees, administrators, executors, successors, and assigns.  The term "***Beneficiary***" shall mean the owner and holder, including pledgees, of any of the Secured Obligations.

**5.12.    Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Deed of Trust.

**5.13.    Waiver of Limitations.**  Trustor waives the pleading of any statute of limitations as a defense to the Secured Obligations to the fullest extent permissible by law.

166387635.4

**5.14.   Waiver.**   To the extent permitted by law, Trustor waives the benefit of all laws now existing or hereafter enacted providing for any appraisement before sale of any portion of the Property or the Collateral, extension of the time for performance of the Secured Obligations, or creation or extension of a period of redemption from any sale.   Trustor further waives all rights and remedies which Trustor may have or be able to assert by reason of the laws or decisions pertaining to the rights and remedies of sureties.

**5.15.   Tax.**   In the event of the passage, after the date of this Deed of Trust, of any law deducting from the value of real property, for tax purposes, any lien or charge thereon, or changing in any way the laws now existing for the taxation of deeds of trust or indebtedness secured by deeds of trust for federal, state or local purposes, or changing the manner of collection of any such taxes as to affect this Deed of Trust or the Secured Obligations, Trustor agrees to pay such tax arising from such new law unless it would be illegal to do so.   If Trustor fails to do so, Beneficiary may, at its election and without demand or notice, declare the Secured Obligations immediately due and payable.

**5.16.   Notices.**   All notices hereunder shall be deemed to have been duly given if personally delivered or mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the parties at their addresses set forth in the first paragraph hereof, or such other addresses as they may designate by notice thereof, and shall be deemed complete upon such person delivery or such mailing.

**5.17.   Statements of Indebtedness.**   Trustor agrees to pay Beneficiary reasonable charges, not to exceed the maximum allowed by law, for giving any statement of the status of the Secured Obligations.

**5.18.   Joint and Several Obligations.**   If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons shall be joint and several.   Any married person who executes this Deed of Trust agrees that recourse may be had against his or her separate property.   If Trustor is a partnership, the obligations of Trustor shall be the joint and several obligations of all general partners therein.

**5.19.   Interpretation.**   The words "**herein**," "**hereof**," "**hereunder**" and words of similar import refer to this Deed of Trust as a whole and not to any particular Article, Section or subdivision hereof.   All references to "**Articles**," "**Sections**," "**Exhibits**" and other parts or subdivisions are to the corresponding Articles, Sections, Exhibits or parts or subdivisions of this Deed of Trust, unless otherwise specified.   The terms "**include**," "**including**" and forms thereof mean inclusive without limitation.   The term "**day**" means calendar day.   The term "**person**" means any individual, corporation, partnership, limited liability company, governmental entity or authority, or other entity of any kind.

**5.20.   Approvals, Consents, Waivers; Acceptability to Beneficiary.**   No approval, acceptance or consent of Beneficiary required by any provision of this Deed of Trust, nor any statement or waiver of any required approval, acceptance, acceptability, consent or condition, shall be deemed to have occurred unless set forth in writing, signed by Beneficiary, and delivered to Trustor.   Any approval, acceptance, consent, waiver or statement of acceptability granted by Beneficiary shall be applicable only to the particular occurrence, circumstance or instance

- 16 -

166387635.4

identified in such writing, and shall not constitute a continuing approval, acceptance, consent, waiver or statement of acceptability or be otherwise applicable to any other occurrence, circumstance or instance, whether similar or dissimilar.  When this Deed of Trust requires the consent or approval of Beneficiary, or provides that any document, matter, act, event, occurrence or person must be satisfactory or acceptable to Beneficiary or words of similar import, such consent or approval may be given or withheld by Beneficiary, and such document, matter, act, event, occurrence or person must be satisfactory or acceptable to Beneficiary, in its sole and absolute discretion, unless otherwise expressly provided herein or therein.

**5.21.   Amendments.**  This Deed of Trust cannot be modified, amended or terminated except by written agreement writing signed by the party against whom enforcement of any modification, amendment or termination is sought.

**5.22.   Time is of the Essence.**  Time is of the essence of this Deed of Trust and of every part hereof, and Trustor therefore acknowledges that Beneficiary has no obligation to grant any extension of any provision thereof, and any extension which Beneficiary may elect to grant may be conditioned upon such terms and conditions as Beneficiary may impose in its sole discretion.

**5.23.   Request for Notice.**  Trustor requests that a copy of any notice of default or any notice of sale hereunder be mailed to Trustor at the address set forth in the first paragraph hereof.

**5.24.   WAIVER OF RIGHTS OF TRIAL BY JURY.   TO THE EXTENT PERMITTED BY LAW, EACH OF TRUSTOR AND BENEFICIARY (BY ITS ACCEPTANCE HEREOF) HEREBY VOLUNTARILY, KNOWINGLY, INTENTION-ALLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG TRUSTOR AND BENEFICIARY ARISING OUT OF OR IN ANY WAY RELATED TO THIS DEED OF TRUST, THE LOAN DOCUMENTS (AS DEFINED IN THE LOAN AGREEMENT), THE OBLIGATIONS OF TRUSTOR OR BENEFICIARY UNDER THE LOAN DOCUMENTS, OR THE ACTIONS OF TRUSTOR OR BENEFICIARY RELATING TO SUCH OBLIGATIONS AND/OR THE LENDING RELATIONSHIP WHICH IS THE SUBJECT OF THIS DEED OF TRUST AND THE LOAN DOCUMENTS.  THIS PROVISION AND THE WAIVER SET FORTH HEREIN ARE MATERIAL INDUCEMENTS TO BENEFICIARY TO TAKE THIS DEED OF TRUST AS SECURITY FOR THE NOTE. AT ANY TIME WHILE THE BANKRUPTCY CASE REMAINS PENDING, ANY SUCH DISPUTE OR LITIGATION, ACTION OR CAUSE OF ACTION SHALL BE SUBMITTED TO AND DECIDED BY THE BANKRUPTCY COURT, TO THE EXTENT OF THE BANKRUPTCY COURT'S JURISDICTION.**

**5.25.   Environmental.**  In accordance with Section 736 of the California Code of Civil Procedure, Beneficiary may bring an action for breach of contract against Trustor for breach of any "environmental provision" (as such term is defined in such Section) made by Trustor herein or in any other Loan Document for the recovery of damages and/or the enforcement of the environmental  provision.  In accordance with the California Code of Civil Procedure, Section 726.5, Beneficiary may waive the security under this Deed of Trust with respect to any parcel of

- 17 -

166387635.4

the Real Property that is "environmentally impaired" or is an "affected property" (as such terms are defined in such Section), and as to any personal property which is attached to such parcel, and thereafter exercise against Trustor, to the extent permitted by such Section, the rights and remedies of an unsecured creditor, including reduction of Beneficiary's claim against Trustor to judgment, and any other rights and remedies permitted by law.  In the event Beneficiary elects, in accordance with the California Code of Civil Procedure, Section 726.5, to waive all or part of the security under this Deed of Trust and proceed against Trustor on an unsecured basis, the valuation of the real property, the determination of the environmentally impaired status of such security and any cause of action for money judgment shall, at the request of Beneficiary, be referred to a referee in accordance with the California Code of Civil Procedure, Section 638 *et seq*.  Such referee shall be an M.A.I. appraiser selected by Beneficiary and approved by Trustor, which approval shall not be unreasonably withheld or delayed.  The decision of such referee shall be binding upon both Beneficiary and Trustor and judgment upon the award rendered by such referee shall be entered in the court in which such proceeding was commenced in accordance with the California Code of Civil Procedure, Sections 644 and 645.  Trustor shall pay all costs and expenses incurred by Beneficiary in connection with any proceeding under the California Code of Civil Procedure, Section 726.5.

## ARTICLE 6.
## NON-FOREIGN ENTITY CERTIFICATION

**6.1.    Non-Foreign Entity.**  Section 1445 of the Internal Revenue Code of 1986, as amended ("***Internal Revenue Code***") provides that a transferor of a U.S. real property interest must withhold tax if the transferor is a foreign person, as set forth therein.  To inform Beneficiary that the withholding of tax will not be required in the event of the disposition of any of the Property pursuant to the terms of this Deed of Trust, Trustor hereby certifies, under penalty of perjury, that:

**6.1.1.**    Trustor is not a foreign corporation, foreign partnership, foreign trust, foreign limited liability company or foreign estate, as those terms are defined in the Internal Revenue Code and the regulations promulgated thereunder; and

**6.1.2.**    Intentionally deleted; and

**6.1.3.**    Trustor's chief executive office and principal place of business is the address set forth on the first page of this Deed of Trust.

**6.2.    Disclosure.**  Beneficiary may disclose the contents of this certification to the Internal Revenue Service.

**6.2.1.    Further Certifications.**  Trustor shall execute such further certifications, under penalty of perjury, as Beneficiary may reasonably require.

**6.2.2.    Survival.**  Trustor's certifications under this **ARTICLE 6** shall survive the reconveyance, foreclosure and/or acceptance of a deed in lieu of foreclosure of this Deed of Trust.

**6.3.    Penalties.**  Trustor acknowledges that false statements in its certifications under this **ARTICLE 6** may be punishable by fine, imprisonment or both.

166387635.4

[*Signatures on Following Page*]

- 19 -

166387635.4

[*Signatures on Following Page*]

IN WITNESS WHEREOF, this Deed of Trust is executed as of the date first written above.

**TRUSTOR:**                                            OCEANWIDE PLAZA LLC,
                                                        a Delaware limited liability company


                                                        By: _____
                                                            Bradley Sharp, Chief Restructuring Officer



[*Notary Acknowledgment Follows*]

Signature Page
to
Deed of Trust, Assignment of Rents and Leases,
Security Agreement and Fixture Filing
(1101 South Flower Street, Los Angeles, California)

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )

_____ ) ss.

County of _____ )

On _____, 20___, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Affix seal here]

_____

Signature of Notary Public

Notary Page
to
Deed of Trust, Assignment of Rents and Leases,
Security Agreement and Fixture Filing
(1101 South Flower Street, Los Angeles, California)

## EXHIBIT A

### Description of Real Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

Exhibit A
to
Deed of Trust, Assignment of Rents and Leases,
Security Agreement and Fixture Filing
(1101 South Flower Street, Los Angeles, California)

166387635.4

# TAB 4

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

DTLA LENDING LLC
200 Park Avenue, 9th Floor,
New York, New York 10166
Attention: Bruce Ambler

1101 South Flower Street, Los Angeles, California
APN:: 5138-015-045

## ASSIGNMENT OF LESSOR'S INTEREST IN LEASES
## AND CONTRACTS OF SALE

This ASSIGNMENT OF LESSOR'S INTEREST IN LEASES AND CONTRACTS OF SALE (this "*Assignment*") is made as of May ___, 2024, by OCEANWIDE PLAZA LLC, a Delaware limited liability company ("*Assignor*"), to and for the benefit of DTLA LENDING LLC, a California limited liability company ("*Assignee*"), with reference to the following facts:

A.    Assignor and Assignee have entered into that certain Secured Super-Priority, Debtor- in-Possession Loan Agreement of even date herewith (as modified, amended and/or otherwise modified from time to time, the "*Loan Agreement*"), which provides for a loan by Assignee to Assignor.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

B.    Pursuant to the Loan Agreement, Assignor has executed and delivered to Assignee that certain Promissory Note of even date herewith in the stated principal amount of Ten Million and No/100 Dollars ($10,000,000.00) (the "*Note*"), and a Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith (the "*Deed of Trust*").  As used herein, the term "*Obligations*" refers to all obligations of Assignor of any kind under the Loan Agreement, the Note, the Deed of Trust, and all other Loan Documents, and all extensions, renewals and modifications thereof.

C.    To induce Assignee to make the loan contemplated by the Loan Agreement, Assignor has agreed to execute this Assignment.

D.    This Assignment relates to the real property described in **Exhibit A** attached hereto and incorporated herein by this reference (together with all present and future structures, buildings and improvements the "*Property*").

NOW, THEREFORE, in consideration of the premises, and for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees as follows:

- 1 -

166390334.2

1. **Certain Defined Terms.**  As used herein:

(a)  "*Contracts of Sale*" means all contracts of sale which are now or may be made relating to the sale of a portion of the Property, together with any and all buildings and improvements thereon, but excluding any contracts of sale pursuant to which Assignor is acquiring all or any portion of the Property.

(b)  "*Leases*" means (i) all existing and future leases, licenses, franchises, concessions, subleases, rental agreements and other agreements for possession, use or occupancy pertaining to any of the Property, (ii) all extensions and modifications of any thereof, and (iii) all guarantees of, security for, and letters of credit and other credit enhancements given in connection with any person's obligations under any thereof.

(c)  "*Lessee*" means the party(ies) to a Lease other than Assignor, including a lessee, tenant, licensee, franchisee, concessionaire, sublessee, party to a rental agreement or other agreement for possession, use or occupancy pertaining to any of the Property, or guarantor or surety thereof or other provider of credit support in connection therewith, as applicable.

(d)  "*Purchaser*" means the party(ies) to a Contract of Sale other than Assignor.

(e)  "*Rents*" means all of the rents, issues, royalties, profits, receipts, revenue and income (including security deposits, deficiency rents and liquidated damages) now due or which may become due or to which Assignor may now or shall hereafter become entitled or may demand or claim, arising or issuing from or out of the Leases and of the Property.

2. **Assignment.**  Assignor hereby presently, absolutely and unconditionally grants, transfers and assigns to Assignee, its successors and assigns, to the extent assignable, all of Assignor's present and future right, title and interest in and to all Leases and Contracts of Sale.

3. **Assignor's License to Collect.**

(a)  Subject to the absolute and unconditional assignment to Assignee of the Rents in the Deed of Trust, so long as there shall exist no default by Assignor hereunder or in the payment or performance of any of the other Obligations, Assignor shall have a license to collect and receive, but not more than one (1) month in advance of the time when the same become due, all Rents and to retain, use and enjoy the same, subject, however, to all of the other provisions of this Assignment and all other Loan Documents pertaining to the collection, receipt, use, application and deposit of the Rents.  Upon a default hereunder or in the payment or performance of any of the other Obligations, such license shall, to the fullest extent permitted by law and subject to Section 6.2 of the Loan Agreement, in all respects, be automatically revoked, cease and terminate without any further action and without the necessity of appointment of a receiver and whether or not Assignee has taken possession of the Property.  Any Rents received by Assignor or its agents in violation of, or after termination of, its license to collect Rents hereunder shall be held by Assignor in trust for Assignee and shall not be commingled with other funds of Assignor.

(b)  Notwithstanding the license granted to Assignor hereunder or under the Deed of Trust, if any Lease or Contract of Sale is terminated, canceled, rejected or modified and

in connection therewith any fee, premium, penalty, settlement or other amount is paid, and if there is an uncured Event of Default by Assignor, then, subject to Section 6.2 of the Loan Agreement, such amount shall at Assignee's option be payable directly to Assignee, and at Assignee's option may be applied to amounts due on the Obligations or held by Assignee as additional collateral securing the Obligations; if there is no Event of Default by Assignor at the time of payment of such amount, Assignor may keep such amount without payment to Assignee. Nothing herein shall be deemed approval by Assignee of the termination of any Lease, Contract of Sale or the payment of any such amount.

**4. Termination of Assignment.** Upon the recording of an instrument of satisfaction or full release or reconveyance of the Deed of Trust without the recording of any other trust deeds in favor of Assignee affecting the Property, this Assignment shall become and be void and of no effect.

**5. Duties of Assignor.** Except to the extent any such action would be in violation of the Bankruptcy Code (as defined in the Loan Agreement), Assignor shall, at its sole cost and expense: (a) perform and satisfy every term, covenant, warranty, obligation and condition of the Loan Documents, to be performed or satisfied by the Assignor, the seller or the lessor thereunder; (b) give prompt notice to Assignee of any notice of default given or received by Assignor under the Leases and the Contracts of Sale, together with a complete copy of any such notice of default, and to notify and direct in writing to Lessees or Purchasers that any security deposit, sales deposit or other deposits heretofore delivered to Assignor have been retained by Assignor or assigned and delivered to Assignee, as the case may be (*provided, however*, that the foregoing shall not preclude Assignee from so notifying and directing such Lessees or Purchasers); (c) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Leases to be performed or satisfied by the Lessees thereunder and the Contracts of Sale to be performed or satisfied by the seller thereunder; (d) appear in and defend any action arising out of or relating to any of the Leases or Contracts of Sale or the obligations of any party thereunder, and upon request by Assignee, to do so in the name and on behalf of Assignee but at the expense of Assignor, and to pay all costs and expenses of Assignee, including, without limitation, reasonable attorneys' fees and documented out-of-pocket costs; (e) concurrently with the execution of any future Lease affecting the Property, give notice of this Assignment to the Lessee thereunder on a form approved by Assignee, and obtain from the Lessee such subordination, non-disturbance and attornment agreements and estoppel certificates as Assignee may request; (f) document all future Leases and Contracts of Sale on a form of lease or contract of sale, respectively, approved by Assignee in writing; and (g) furnish to Assignee true and correct copies of all Leases and Contracts of Sale.

**6. Prohibited Acts.** Assignor shall not, without Assignee's prior written consent (which shall not be unreasonably withheld or delayed) and subject to approval of the Bankruptcy Court, take any action to: (a) terminate, modify or amend any material economic term of the Leases or Contracts of Sale to the detriment of Assignor or Assignee; (b) waive, or release any Lessee or Purchaser from, any material economic obligation or condition to be performed or satisfied by any Lessee or Purchaser thereunder; (c) terminate the term of any of the Leases or Contracts of Sale or accept a surrender thereof unless required to do so by the terms thereof or in accordance with enforcement action following a default by the Lessee or Purchaser; (d) collect or accept Rents more than one (1) month in advance of the time when the same becomes due; (e) enter into any agreements whereby Rent is abated, reduced or deferred; (f) cause or permit the leasehold estate

- 3 -

166390334.2

under any of the Leases to merge with Assignor's reversionary interest; (g) make any other assignment or transfer of any of its rights in any of the Leases, the Contracts of Sale or of the Rents, absolutely or for security; or (h) consent to any assignments of or subletting under any Lease or Contract of Sale. Any such purported action by Assignor without Assignee's prior written consent shall be void and shall constitute a default hereunder.

**7. Actions by Assignee.** Should Assignor fail to make any payment or do any act as herein required, then Assignee may (but shall not be obligated to), subject to Section 6.2 of the Loan Agreement, in all respects, without notice to or demand upon Assignor and without releasing Assignor from any obligations hereunder, make or do the same, including appearing in and defending any action purporting to affect this Assignment, the Leases or the Contracts of Sale and performing any obligation of the lessor under the Leases and seller under the Contracts of Sale, and in so doing may pay all necessary costs and expenses, employ counsel, and incur and pay reasonable attorneys' and experts' fees and out-of-pocket costs. Assignor shall pay on the Maturity Date all such sums expended by Assignee together with interest thereon at the rate set forth in the Note from the date of expenditure, and the same shall be added to the indebtedness secured by the Deed of Trust.

**8. Default Under this Assignment.** The occurrence of any "Event of Default" as defined in the Loan Agreement, shall constitute a default under this Assignment, subject to Section 6.2 of the Loan Agreement in all respects (each, a "***Default***").

**9. Rights Upon Default.** Subject to Section 6.2 of the Loan Agreement, in all respects, upon any Default hereunder, Assignee may, without notice to Assignor, irrespective of whether a notice of default under the Deed of Trust has been delivered to the trustee thereunder, and without regard to the adequacy of the security for the Obligations, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of the following, in its own name or in the name of Assignor: (a) terminate the license granted to Assignor to collect as aforesaid the Rents, and then and thereafter, without taking possession, in Assignee's own name, demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittance therefor, and after deducting all necessary and proper costs and expenses of operation and collection, as determined by Assignee, including, without limitation, reasonable attorneys' fees, to apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, upon any indebtedness and in such order as Assignee may determine; (b) enter upon, take possession of, manage and/or operate the Property or any part thereof, make, modify, enforce, cancel or accept surrender of any Leases now in effect or hereafter in effect on the Property or any part thereof, make, modify, cancel or enforce Contracts of Sale; (c) remove and evict any Lessees; (d) fix, modify, increase or decrease Rents; (e) sue for or otherwise collect and receive all Rents (including those past due and unpaid), and apply the same, less costs and expenses of operation (including reserves) and collection, including reasonable attorneys' and experts' fees and documented out-of-pocket costs, to the payment of the Obligations in such order and such proportions as Assignee may in its absolute discretion determine; (f) deliver notice to Lessees or Purchasers directing them to pay Assignee (or its agent) all Rent; (g) do any other acts which Assignee deems proper to protect this Assignment and its interests hereunder until all of the Obligations are paid in full; and (h) exercise any other right permitted by law or equity. The exercise of any of the foregoing rights shall not cure, waive or affect any default or notice of default, or invalidate any act done pursuant to such notice, nor render Assignee a mortgagee in

- 4 -

166390334.2

possession.  Assignor expressly agrees that Assignee's rights hereunder to take possession and/or have a receiver appointed to operate the Property are subject to the Bankruptcy Court.

**10.**     **Remedies Cumulative.**   The rights and remedies of Assignee under this Assignment are cumulative and are in addition to, and the exercise or the failure to exercise the same shall not constitute a waiver of, any other rights and remedies which Assignee shall have under the other Loan Documents or otherwise.  The rights and remedies of Assignee hereunder may be exercised from time to time and as often as Assignee may elect.

**11.**     **Representations and Warranties.**  Assignor represents and warrants to Assignee that:  (a) except as disclosed to the Bankruptcy Court in connection with the Case, it has not executed any prior assignment of its rights under any of the Leases, the Contracts of Sale or of the Rents, (except as set out in the Deed of Trust); (b) it has not done anything which might prevent Assignee from or limit Assignee in operating under any of the provisions hereof; (c) it has not accepted Rent more than one (1) month in advance of when the same became due under the terms thereof; (d) no security deposit has been made by any Lessee except as has been previously disclosed to Assignee; (e) it shall submit to Assignee any Lease documents and Contracts of Sale currently or hereafter executed by Assignor; and (f) it shall disclose to Assignee all defaults existing under any of the Leases or Contracts of Sale currently or hereafter executed by Assignor.

**12.**     **Assignee Not Obligated to Perform; Indemnity.**  Assignee shall not be obligated to perform or satisfy any obligation or condition under any of the Leases, the Contracts of Sale or under or by reason of this Assignment.  Except to the extent of/due solely to Assignee's gross negligence or willful misconduct, Assignor agrees to indemnify and defend Assignee against and hold Assignee harmless from any and all liability, loss or damage, including reasonable attorneys' and experts' fees and documented out-of-pocket costs, which it may or might incur under the Leases, the Contracts of Sale or under or by reason of this Assignment and of and from any and all claims and demands whatsoever which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or satisfy any of the terms of the Leases or Contracts of Sale, or by reason or in defense of any and all claims and demands whatsoever that may be asserted against Assignee arising out of the Leases or the Contracts of Sale. Subject to approval of the Bankruptcy Court, should Assignee incur any such liability, loss, or damage or in defense against any such claims or demands, the amount thereof including costs, expenses, and reasonable attorneys' and experts' fees and documented out-of-pocket costs, together with interest thereon at the rate set forth in the Note, shall be secured by the Deed of Trust, and Assignor shall reimburse Assignee therefor on the Maturity Date.

**13.**     **Authorization to Lessees and Purchasers to Pay Rents to Assignee.**  Assignor hereby expressly authorizes and instructs each and every present and future Lessee and Purchaser to pay all unpaid Rents agreed upon in each Lease and Contract of Sale to Assignee upon receipt of demand from Assignee to so pay.  No Lessee or Purchaser shall have any duty to investigate the validity or accuracy of any such demand by Assignee.  Each Lessee and Purchaser shall be relieved of any liability to Assignor for payment of Rents under its Lease or Contract of Sale to the extent that it has paid Rents to Assignee pursuant to this **Section 13**, even if it is later determined that Assignee's demand for payment of Rents was invalid.

166390334.2

**14.    Security for Leases.**  No security deposited by any Lessee with Assignor under the terms of any of the Leases has been transferred to Assignee, and Assignee assumes no liability for any security deposit made with Assignor.

**15.    Partial Invalidity of this Assignment.**  In the event any one or more of the provisions of this Assignment or the other Loan Documents are held to be invalid, illegal or unenforceable in any respect, no other provision of this Assignment, or of any such other Loan Documents, shall be affected thereby, and such other provisions shall remain binding and enforceable.

**16.    Governing Law.**  This Assignment has been executed and delivered in, and is to be construed, enforced and governed according to and by the internal laws of, the State of California, except to the extent federal law applies.

**17.    Parties Bound and Benefitted.**  This Assignment shall inure to the benefit of the successors and assigns of Assignee.  The term "*Assignee*" shall include both the named Assignee and any future owner or holder, including pledgees and participants, of the Note or any interest therein.  This Assignment shall, subject to **Section 6** above, bind Assignor's legal representatives, successors and assigns.

**18.    Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Assignment.

**19.    Joint and Several Obligations.**  If more than one person has executed this Assignment as "*Assignor*," the obligations of all such persons shall be joint and several.  Any married person who executes this Assignment agrees that recourse may be had against his or her separate property.  If Assignor is a partnership, the obligations of Assignor shall be the joint and several obligations of all general partners therein.

**20.    No Waiver.**  No delay or failure by Assignee to exercise any right or remedy hereunder will be construed as a waiver of that right or remedy.

**21.    Modification.**  No provision of this Assignment or Assignee's rights hereunder can be waived or modified except by a writing signed by Assignee.  No such waiver shall be applicable except in the specific instance for which given.

**22.    Enforcement Costs.**  Subject to the approval of the Bankruptcy Court, Assignor shall reimburse Assignee on the Maturity Date for reasonable attorneys' and experts' fees and documented out-of-pocket costs and expenses, incurred by Assignee for enforcement of this Assignment or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed.  All such fees and costs shall bear interest until paid at the rate applicable under the Note.  Notwithstanding any other provision of this Assignment, in the event that an action is brought to interpret or enforce the rights or obligations of the parties hereunder or under any other Loan Documents, the prevailing party shall be entitled to its reasonable attorneys' fees and documented out-of-pocket costs.

- 6 -

166390334.2

**23.**     **Notices.**   All notices under this Assignment shall be addressed and given as provided in the Deed of Trust.

**24.**     **Further Agreements, Acts.**   Assignor shall execute any and all further agreements, assignments and documents, and take such other further acts, as Assignee may reasonably request from time to time in order to evidence, protect, perfect or continue the assignment to Assignee of the Leases, Contracts of Sale and the Rents or otherwise carry out the purposes and intent of this Assignment.

**25.**     **WAIVER OF RIGHTS OF TRIAL BY JURY.   To the greatest extent permitted by law, each of Assignor and Assignee (by its acceptance hereof) hereby voluntarily, knowingly, intentionally, irrevocably and unconditionally waive any right to have a jury participate (including by way of jury trial) in resolving any dispute or litigation (whether based upon contract, tort or otherwise) between or among Assignor and Assignee arising out of or in any way related to this Assignment, the Loan, Loan Documents or actions of Assignor or Assignee relating to the Loan and/or the lending relationship which is the subject of the Loan Documents.   At any time while the Case remains pending, any such dispute or litigation, action or cause of action shall be submitted to and decided by the Bankruptcy Court to the extent of the Bankruptcy Court's jurisdiction.   This waiver is a material inducement to Assignee to provide the financing described herein and in the Loan Documents.**

*[Signature on Following Page]*

- 7 -

166390334.2

IN WITNESS WHEREOF, this Assignment is executed as of the date first written above.

**ASSIGNOR:**                              OCEANWIDE PLAZA LLC,
                                           a Delaware limited liability company


                                           By:   _____
                                                 Bradley Sharp, Chief Restructuring
                                                 Officer


[*Notary Acknowledgment Follows*]

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _____ )
                                 ) ss.
County of _____ )

On _____, 20___, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Affix seal here]

_____

Signature of Notary Public

Notary Page
to
Assignment of Leases and Rents
(1101 South Flower Street, Los Angeles, California)

## **EXHIBIT A**

### **Description of Real Property**

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

# TAB 5

**COLLATERAL ASSIGNMENT OF AGREEMENTS, PERMITS,
AND LAND USE ENTITLEMENTS**

This COLLATERAL ASSIGNMENT OF AGREEMENTS, PERMITS, AND LAND USE ENTITLEMENTS (this "*Assignment*") is made as of _____, 2024, by OCEANWIDE PLAZA LLC, a Delaware limited liability company ("*Assignor*") to and for the benefit of DTLA LENDING LLC, a California limited liability company ("*Assignee*"), with reference to the following facts:

A.    Assignor and Assignee have entered into that certain Secured Super-Priority, Debtor- in-Possession Loan Agreement of even date herewith (as amended, restated, supplemented and/or otherwise modified from time to time, the "*Loan Agreement*"), which provides for a loan by Assignee to Assignor.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

B.    Pursuant to the Loan Agreement, Assignor has executed and delivered to Assignee that certain Promissory Note of even date herewith (the "*Note*"), and that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith (the "*Deed of Trust*") on certain property located at 1101 South Flower Street, Los Angeles, California (the "*Property*").  As used herein, the term "*Obligations*" refers to all obligations of Assignor of any kind under the Loan Agreement, the Note, the Deed of Trust, and all other Loan Documents (as defined in the Loan Agreement), and all extensions, renewals and modifications thereof.

C.    To induce Assignee to make the loan contemplated by the Loan Agreement, Assignor has agreed to execute this Assignment.

D.    This Assignment is made as additional security for the payment and performance by Assignor of all of the Obligations.

NOW, THEREFORE, in consideration of the premises, and for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor agrees as follows:

**1.    Assignment.**

**1.1.    Agreements.**  For value received, Assignor hereby grants, transfers and assigns to Assignee, its successors and assigns, all of Assignor's right, title and interest in and to certain development agreements, permits, license agreements, construction agreements, operating contracts, and all management, service, supply and maintenance contracts and agreements, and any other agreements, permits or contracts of any nature whatsoever now or hereafter obtained or entered into by Assignor with respect to the ownership, development, operation, maintenance and administration of the Property to the extent assignable and to the extent of Assignor's rights effecting the Property only (collectively, the "*Agreements*").  Concurrently herewith Assignor has also granted to Assignee a security interest in the Agreements pursuant to the Deed of Trust.

**1.2.    Permits.**

**1.2.1.**  Intentionally Omitted.

166390688.4

**1.2.2.**    For value received, Assignor hereby grants, transfers and assigns to Assignee, its successors and assigns, all of Assignor's right, title and interest in and to all now or hereafter issued to Borrower, the Permits, to the extent assignable, together with any and all existing and future amendments, modifications, supplements and addenda thereto, (collectively, the "*Property Rights*"), for the operation of, development of, construction of the Project. Concurrently herewith Assignor has also granted to Assignee a security interest in the Property Rights pursuant to the Deed of Trust.

**2.    Assignor's Rights Under Agreements and Property Rights.**  So long as there shall exist no default by Assignor under this Assignment, Assignor shall have the right to exercise all of its rights under the Agreements and the Property Rights, except as provided in **Section 5**.

**3.    Termination of Assignment.**  Upon payment in full of all indebtedness secured by the Deed of Trust, as evidenced by the recording of an instrument of satisfaction or full release or reconveyance of the Deed of Trust without the recording of any other trust deeds in favor of Assignee affecting the Property, this Assignment shall become and be void and of no effect.

**4.    Duties of Assignor.**  Except to the extent any such action would be in violation of the Bankruptcy Code, Assignor shall, at its sole cost and expense: (a) timely perform and satisfy every obligation and condition of the Agreements and the Property Rights to be performed or satisfied by Assignor; (b) give prompt notice to Assignee of any notice of default given or received by Assignor under the Agreements and the Property Rights, together with a complete copy of any such notice of default; (c) enforce, short of termination, the performance and satisfaction of every obligation and condition of the Agreements and the Property Rights to be performed or satisfied by the parties to the Agreements; (d) appear in and defend any action arising out of or relating to the Agreements and the Property Rights or the obligations of any party thereunder; and (e) keep the Property Rights in full force and effect.

**5.    Prohibited Acts.**  Assignor shall not, without Assignee's prior written consent, (which consent shall not be unreasonably withheld, or delayed) and subject to the approval of the Bankruptcy Court, take any action to: (a) terminate or amend the Agreements or the Property Rights; or (b) make any other assignment or transfer of any of its rights in the Agreements or the Property Rights, absolutely or for security.  Any such purported action by Assignor without Assignee's prior written consent shall be void and shall constitute a default hereunder.

**6.    Actions by Assignee.**  Should Assignor fail to make any payment or do any act as herein required, then Assignee may (but shall not be obligated to), subject to Section 6.2 of the Loan Agreement, without notice to or demand upon Assignor and without releasing Assignor from any obligations hereunder, make or do the same, including appearing in and defending any action purporting to affect this Assignment, the Agreements, or the Property Rights, and performing any obligation of Assignor under the Agreements or the Property Rights, and in so doing may pay all necessary costs and expenses, employ counsel, and incur and pay reasonable attorneys' and experts' fees and documented out-of-pocket costs.  Assignor shall pay on the Maturity Date all such sums expended by Assignee together with interest thereon at the rate set forth in the Note from the date of expenditure, in accordance with the Budget, (as defined in the Loan Agreement) and the same shall be added to the indebtedness secured by the Deed of Trust.

166390688.4

**7.**      **Events of Default.**  The occurrence of any "Event of Default" as defined in the Loan Agreement, shall constitute a default under this Assignment, subject to Section 6.2 of the Loan Agreement in all respects (each, a "***Default***").

**8.**      **Rights Upon Default.**  Subject to Section 6.2 of the Loan Agreement in all respects, upon the occurrence of a Default hereunder, Assignee may, at any time and without notice, and without regard to the adequacy of the security for the obligations of Assignor to Assignee, in person or by agent or representative with or without bringing any action or proceeding, or by a receiver appointed by a court, do any one or more of the following, in its own name or the name of Assignor: (a) exercise any or all rights of Assignor under the Agreements and the Property Rights; (b) sue for or otherwise collect and receive payments and/or other performance due to Assignor under the Agreements and the Property Rights; (c) perform any or all of the duties of Assignor under the Agreements and the Property Rights; (d) cure or take action with respect to a default under the Agreements and the Property Rights; (e) give appropriate receipts, releases and satisfactions for and on behalf of Assignor; (f) do any other acts under or in connection with the Agreements and the Property Rights which Assignor could do if this Assignment had not been made; (g) do any other acts which Assignee deems proper to protect this Assignment and its interests hereunder until all of the obligations of Assignor under the Loan Documents are paid in full; (h) terminate the Agreements and/or the Property Rights; and (i) exercise any other right permitted by law.  The exercise of any or all of the foregoing rights shall not cure, waive or affect any default or notice of default, or invalidate any act done pursuant to such notice.

**9.**      **Exercise of Assigned Rights.**

**9.1.**      **Permits.**  Assignor hereby irrevocably appoints Assignee as its attorney–in–fact with full power of substitution and authority, which appointment is coupled with an interest and is effective from and after the occurrence of any "Event of Default" (as defined in the Loan Agreement) subject to Section 6.2 of the Loan Agreement in all respects, to receive, demand, exercise and enforce any and all of Assignor's rights with respect to the Property Rights and to perform any and all acts in the name of Assignor or, at the option of Assignee, in the name of Assignee with the same force and effect as if performed by Assignor in the absence of this Assignment.

**10.**      **Remedies Cumulative.**  The rights and remedies of Assignee under this Assignment are cumulative and are in addition to, and the exercise or the failure to exercise the same shall not constitute a waiver of, any other rights and remedies which Assignee shall have under the other Loan Documents or otherwise.  The rights and remedies of Assignee hereunder may be exercised from time to time and as often as Assignee may elect.

**11.**      **Representations and Warranties.**  Assignor represents and warrants to Assignee that: (a) it has not executed any prior assignment of its rights under the Agreements or the Property Rights (except as set out in the Deed of Trust); (b) it has not done anything which might prevent Assignee from or limit Assignee in operating under any of the provisions hereof; (c) there are no defaults existing under the Agreements or the Property Rights, except as disclosed to Assignee and the Bankruptcy Court; (d) Assignor has the full right and authority to execute and deliver this Assignment; and (e) no authorizations, consents, approvals, licenses, permits, filings or

166390688.4

registrations with any governmental authority or agency are necessary for the execution, delivery or performance by Assignor of this Assignment or for the validity or enforceability thereof.

**12.      Assignee Not Obligated to Perform; Indemnity.**  Assignee shall not be obligated to perform or satisfy any obligation or condition under the Agreements and the Property Rights under or by reason of this Assignment, and Assignor shall remain liable under the Agreements and the Property Rights to the same extent as if this Assignment had not been executed.  The exercise by Assignee of any rights and remedies hereunder shall not release Assignor from any of its duties or obligations under the Agreements and the Property Rights.  Except to the extent of/due solely to Assignee's gross negligence or willful misconduct, Assignor agrees to protect, indemnify and defend Assignee against and hold Assignee harmless from any and all claims, causes of action, liability, loss or damage, including reasonable attorneys' and experts' fees and documented out-of-pocket costs, which it may incur under the Agreements or the Property Rights or under or by reason of this Assignment, or which may be asserted against it by reason of any alleged obligation or undertaking on its part to perform or satisfy any of the terms of the Agreements or the Property Rights.  Subject to approval of the Bankruptcy Court, should Assignee incur any such liability, loss, or damage for or in defense against any such claims or demands, the amount thereof including costs, expenses and reasonable attorneys' and experts' fees, together with interest thereon at the rate set forth in the Note, shall be secured by the Deed of Trust, and Assignor shall reimburse Assignee therefor on the Maturity Date.

**13.      Subsequent Agreements and Permits.**  Until the indebtedness secured hereby has been paid in full and all obligations secured hereunder have been satisfied, Assignor covenants and agrees to transfer and assign to Assignee any and all subsequent agreements or Permits which are entered into or obtained pursuant to, in replacement of or to serve substantially the same purpose as the Agreements or the Property Rights upon the same or substantially the same terms and conditions as herein contained, and to make, execute and deliver to Assignee, upon demand, any and all instruments that may be necessary therefore.

**14.      Further Assurances.**  Assignor shall, from time to time upon the written request of Assignee, promptly execute and deliver such further documents and take such further action as Assignee may reasonably request in order create, preserve, perfect and protect the assignment and security interest granted hereby or to enable Assignee to exercise and enforce its rights and remedies hereunder.  All of the foregoing shall be at Assignor's expense, including all filing, registration and recording fees and all stamp taxes and other taxes and charges in connection therewith.

**15.      Attorney-in-Fact.**  Assignor hereby appoints Assignee the attorney-in-fact of Assignor, upon the occurrence and continuation of any "Event of Default (as defined in the Loan Agreement),  to receive, demand, exercise and enforce any and all of Assignor's rights with respect to the Property Rights, to perform any and all acts in the name of Assignor or, at the option of Assignee, in the name of Assignee with the same force and effect as if performed by Assignor in the absence of this Assignment, and to carry out the provisions of this Assignment and taking any action and executing any instruments which Assignee may deem necessary or advisable to accomplish the purposes hereof, including the right to sign and file any financing statement (or amendment or extension thereof) deemed necessary by Assignee in connection herewith although

- 4 -

the same has been signed only by Assignee, which appointment as attorney-in-fact is irrevocable and coupled with an interest.

**16.    General Provisions.**

**16.1.    Inconsistencies.**  In the event of any inconsistencies between the terms and conditions hereof and the terms of the Agreements or the Property Rights, the terms and conditions set forth herein shall govern.

**16.2.    Partial Invalidity of this Assignment.**  In the event any one or more of the provisions of this Assignment or the other Loan Documents are held to be invalid, illegal or unenforceable in any respect, no other provision of this Assignment, or of any such other Loan Documents, shall be affected thereby, and such other provisions shall remain binding and enforceable.

**16.3.    Controlling Law; Venue.**  This Assignment shall be deemed to be entered into in California and shall be controlled and interpreted by the internal laws of California without reference to principles of conflict of laws.  Venue for any action brought under this Assignment will be at Assignee's option in the Superior Court, City and County of San Francisco, California. Assignor hereby accepts for itself and in respect to its property, generally and unconditionally, the non-exclusive jurisdiction of the foregoing court.

**16.4.    Parties Bound and Benefitted.**  This Assignment is made for the sole benefit of Assignor, Assignee, and Assignee's successors and assigns and any participants in the Loan.  No other person shall have any rights or remedies under or by reason of this Assignment nor shall Assignee owe any duty whatsoever to any claimant (a) for labor performed or material furnished in connection with the construction of improvements, (b) to advance any portion of the Loan to pay any such claim, in accordance with the Budget (as defined in the Loan Agreement) or (c) to exercise any right or power of Assignee hereunder or arising from any default by Assignor. This Assignment shall, subject to **Section 5**, bind Assignor's legal representatives, successors and assigns.

**16.5.    Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Assignment.

**16.6.    Joint and Several Obligations.**  If more than one person has executed this Assignment as "Assignor," the obligations of all such persons shall be joint and several.  Any married person who executes this Assignment agrees that recourse may be had against his or her separate property and against community property.  If Assignor is a partnership, the obligations of Assignor shall be the joint and several obligations of all general partners therein.

**16.7.    No Waiver.**  No delay or omission of Assignee in exercising any right or power arising from any default by Assignor shall be construed as a waiver of such default or as an acquiescence therein, nor shall any single or partial exercise of any such right or power preclude any further exercise thereof.  Assignee may, at its option, waive or postpone satisfaction of any condition herein, all of which are for its benefit, and any such waiver or postponement shall not be deemed a waiver of Assignee's rights hereunder but shall be deemed made pursuant to, and not in

- 5 -

166390688.4

modification of, this Assignment.  No waiver of any default hereunder shall be construed to be a waiver of or acquiescence in or consent to any preceding or subsequent default.  No waiver of any kind by Assignee shall be deemed to have occurred unless set forth in writing, signed by Assignee and delivered to Assignor, and any such written waiver shall be operative only for the time and to the extent expressly stated therein.

**16.8.   Entire Agreement; Modification; Waiver.**  This Assignment and the other Loan Documents constitute the entire understanding between Assignee and Assignor as to the matters contemplated herein and may not be modified, amended or terminated except by written agreement signed by both Assignee and Assignor.  No provision of this Assignment or Assignee's rights hereunder can be waived except by a writing signed by Assignee, and no such waiver shall be applicable except in the specific instance for which given.

**16.9.   Enforcement Costs.**  Assignor shall reimburse Assignee on the Maturity Date for reasonable attorneys' and experts' fees and documented out-of-pocket costs, incurred by Assignee for enforcement of this Assignment or any of its terms, or the exercise of any rights or remedies hereunder and/or at law, in equity or otherwise, whether or not any action or proceeding is filed.  All such fees and costs shall bear interest until paid at the rate applicable under the Note.

**16.10. Notices.**   All notices, requests and other communications provided for herein shall be given or made in writing in the manner specified in the Deed of Trust.

**16.11. Interpretation.**  The words "**herein**," "**hereof**," "**hereunder**" and words of similar import refer to this Assignment as a whole and not to any particular Section or subdivision hereof.  All references to "**Sections**," "**Exhibits**" and other parts or subdivisions are to the corresponding Sections, Exhibits or parts or subdivisions of this Assignment, unless otherwise specified.  The terms "**include**," "**including**" and forms thereof mean inclusive without limitation. The term "**day**" means calendar day.  The term "**person**" means any individual, corporation, partnership, limited liability company, governmental entity or authority, or other entity of any kind.

**16.12. WAIVER OF RIGHTS OF TRIAL BY JURY.  Each of Assignor and Assignee (by its acceptance hereof) hereby voluntarily, knowingly, intentionally, irrevocably and unconditionally waive any right to have a jury participate (including by way of jury trial) in resolving any dispute or litigation (whether based upon contract, tort or otherwise) between or among Assignor and Assignee arising out of or in any way related to this Assignment, the Loan, Loan Documents or actions of Assignor or Assignee relating to the Loan and/or this Assignment.  At any time while the Case remains pending, any such dispute or litigation, action or cause of action shall be submitted to and decided by the Bankruptcy Court to the extent of the Bankruptcy Court's jurisdiction.  This waiver is a material inducement to Assignee to provide the financing described herein and in the Loan Documents.**

**16.13. Counterparts.**   This Assignment may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Assignment. The words "execution", "signed", "signature", "delivery", and words of like import in or relating to this Assignment and the transactions contemplated hereby

- 6 -

166390688.4

shall be deemed to include Electronic Signatures (as defined below), deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be.  As used herein, "*Electronic Signatures*" means any electronic symbol or process attached to, or associated with, any contract or other record and adopted by a person with the intent to sign, authenticate or accept such contract or record.  If any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing this Assignment (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original hereof or thereof.

[*Signatures on Following Page*]

166390688.4

IN WITNESS WHEREOF, this Assignment is made by Assignor in favor of Assignee on the date first above written.


**ASSIGNOR:**                             OCEANWIDE PLAZA LLC,
                                          a Delaware limited liability company


                                          By: _____
                                          Bradley Sharp, Chief Restructuring Officer



Address of Assignee:      DTLA LENDING LLC
                          200 Park Avenue, 9th Floor
                          New York, New York 10166
                          Attention: Bruce Ambler

with a copy to:           Perkins Coie LLP
                          505 Howard Street, Suite 1000
                          San Francisco, California 94105
                          Attention: Allan E. Low, Esq.

Signature Page
to
Collateral Assignment of Agreements, Permits,
and Land Use Entitlements

TAB 6

## ENVIRONMENTAL INDEMNITY

This ENVIRONMENTAL INDEMNITY, dated May___, 2024 (this "*Indemnity*") by OCEANWIDE PLAZA LLC, a Delaware limited liability company ("*Indemnitor*"), in favor of and for the benefit of DTLA LENDING LLC, a California limited liability company ("*Lender*") and Indemnitees (defined below), with reference to the facts set forth below.

A.      Lender has agreed to make a loan (the "*Loan*") to Indemnitor, pursuant to that certain Secured Superpriority Debtor in Possession Financing Loan Agreement of even date herewith (the "*Loan Agreement*"), executed by Indemnitor and Lender.  The Loan is to be secured by, among other things, that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing of even date herewith (the "*Deed of Trust*"), executed by Indemnitor, as Trustor, in favor of Lender, as Beneficiary, encumbering the real property described in **Exhibit A** attached hereto and all improvements now or hereafter to be located thereon (collectively, the "*Property*").

B.      As a condition of Lender's making the Loan and its agreement to accept the Property as security therefor, Indemnitor is required to, and has agreed to, execute and deliver to Lender this Indemnity.  Lender may also require the execution and delivery of indemnity agreements from other indemnitors (the "*Other Indemnitors*").

NOW, THEREFORE, in consideration of the premises and of the making of the Loan, and other valuable consideration, the receipt of which is hereby acknowledged, and to induce Lender to make the Loan, Indemnitor agrees as follows:

1.      **Definitions.**  Terms with initial capital letters used in this Indemnity have the following meanings, whether used in the singular or plural:

(a)      "*CERCLA*": The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as heretofore or hereafter amended from time to time.

(b)      "*Documents*": Individually and collectively, the Loan Documents and Transaction Documents.

(c)      "*Environmental Actions*": means:

(i)      any written notice of violation, correspondence, complaint, claim (including but not limited to claims based on negligence, trespass, strict liability, nuisance, ultrahazardous activity, toxic-tort or detriment to human health or welfare), citation, demand, inquiry or inquiries, report, action, assertion of potential responsibility, lien, encumbrance, or legal or administrative proceeding regarding the Property, whether formal or informal, absolute or contingent, matured or unmatured, brought or issued by any governmental unit, agency, body, or any person or entity respecting:

(1)      Hazardous Materials Laws;

(2)      public health risks;

166393824.3

(3)     the environmental condition of the Property, or any portion thereof, or any property contiguous to the Property, including actual or alleged damage or injury to wildlife, biota, air surface or subsurface soil or water, or other natural resources;

(4)     the use, exposure, Release, generation, manufacture, transportation to or from, handling, storage, treatment, recycling, reclamation, reuse, disposal or presence of Hazardous Material either on or emanating from the Property or transported off-site for sale, treatment, storage, recycling, reclamation, reuse or disposal;

(ii)     any violation or claim of violation by any Persons of any Hazardous Materials Laws by Indemnitor, any other owner, user, occupant or operator of the Property or any predecessor to any of such persons;

(iii)     any lien against the Property or any other collateral for the Loan for damages caused by, or the recovery of any costs incurred for the investigation, remediation or cleanup of any Release or threatened Release of Hazardous Material; or

(iv)     the destruction or loss of use of all or any portion of the Property, or the injury, illness or death of any officer, director, employee, agent, representative, tenant or invitee of Indemnitor or any other person arising from or caused by the environmental condition of the Property.

(d)     "*Hazardous Materials*": Any substance, material or waste now or in the future defined or listed in, or otherwise classified pursuant to or regulated by, any applicable laws or regulations as a "pollutant," "contaminant," "hazardous substance," "hazardous material," "hazardous waste," "infectious waste," "solid waste," "toxic waste," "toxic substance," "toxic pollutant," "extremely hazardous waste," "restricted hazardous waste," "chemical substance," "special waste," "regulated material," "hazardous chemical," or any other term used to define, list, classify, or regulate substances by reason of deleterious properties such as ignitability, corrosivity, reactivity, carcinogenicity, toxicity, reproductive toxicity, or "EP toxicity," including any natural, artificial or synthetic element, chemical, condition, compound, substance, material, product or waste, including crude oil, petroleum, petroleum fractions, wastes or byproducts, MTBE, BTEX, PCE, TCE, TCA or other chlorinated or non-chlorinated solvents, metal, sludge, solid waste, asbestos or asbestos-containing material, flammable, explosive, radioactive, freon, methane, radon, pesticide, herbicide, fungicide, rodenticide, agricultural chemicals, economic poisons, or any substance whose presence in, on, under, or emanating from any portion of the Property could subject the owner or the occupant of the Property to civil or criminal penalties, damages, or responsibility for clean-up thereof.

(e)     "*Hazardous Materials Activity*": Any actual, proposed or threatened storage, holding, existence, use, Release, emission, discharge, generation, processing, abatement, removal, clean up, detoxification, disposition, handling or transportation of any Hazardous Materials in violation of Hazardous Materials Laws from, under, into or on the Property.

(f)     "*Hazardous Materials Laws*": All present and future federal, state and local laws, ordinances, rules, statutes, codes, orders, decrees, judgments, injunctions, judicial or administrative decisions or policy or guideline, regulations, decisions and other requirements of

-2-

166393824.3

Governmental Authorities relating to Hazardous Materials, health, industrial hygiene, environmental conditions or the regulation or protection of the environment, including the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601, et seq.), the Superfund Amendment and Reauthorization Act of 1986, the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. § 1801 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Oil Pollution Act of 1990 (Pub. L. No. 101-380, 104 Stat. 484), the Clean Air Act (42 U.S.C. § 7401 et seq.), the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Safe Drinking Water Act (42 U.S.C. § 201 et seq.), The Carpenter-Presley-Tanner Hazardous Substance Account Act ("California Superfund") (Cal. Health & Safety Code §§ 25300, et seq.), the California Hazardous Waste Control Act (Cal. Health & Safety Code §§ 25100, et seq.), the Porter-Cologne Water Quality Control Act ("Porter-Cologne Act") (Cal. Water Code §§ 13000, et seq.), the Hazardous Waste Disposal Land Use Law (Cal. Health & Safety Code §§ 25220, et seq.), the Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") (Cal. Health & Safety Code §§ 25249.5, et seq.), the Hazardous Substances Underground Storage Tank Law (Cal. Health & Safety Code §§ 25280, et seq.), and Cal. Health & Safety Code § 25359.7, as any thereof may be amended from time to time, and the rules and regulations relating thereto.

(g)     "*Hazardous Materials Losses*": All Losses suffered or incurred by any Indemnitee, arising directly or indirectly out of or as a result of:  (i) the occurrence of any Hazardous Materials Activity; (ii) the actual or alleged past or present violation of any Hazardous Materials Laws relating to the Property or to the ownership, use, occupancy or operation thereof; (iii) any Environmental Actions relating to the Property; (iv) any loss of value of the Property arising directly or indirectly as a result of any Hazardous Materials Activity; (v) the imposition or recording of a lien or deed notice or restriction on the Property arising directly or indirectly as a result of any Hazardous Materials Activity or Hazardous Materials Law; (vi) any cleanup, remediation, removal or restoration work of site conditions at the Property to the extent required by Hazardous Materials Laws; (vii) any resulting damages, harm or injury to the person or property of any third party or to any natural resources involving Hazardous Materials relating to the Property; (viii) any actual or alleged past or present disposal, generation, manufacture, presence, processing, production, Release, storage, transportation, treatment or use of any Hazardous Materials on, under or above the Property; (ix) any actual or alleged presence of any Hazardous Material on the Property; (x) any actual or alleged past or present migration of any Hazardous Material from the Property to any other property, whether adjoining, in the vicinity, or otherwise, or migration of any Hazardous Material onto the Property from any other property, whether adjoining, in the vicinity, or otherwise; (xi) any claim, demand or cause of action, or any action or other proceeding, whether meritorious or not, brought or asserted against any Indemnitee, which directly or indirectly relates to, arises from or is based on any of the foregoing or any allegation of the foregoing, including, without limitation, (1) any claim by any federal, state or local governmental agency and any claim that any Indemnitee is liable for any such asserted claim allegedly because it is an "owner" or "operator" of the Property, or (2) any such claim asserted against any Indemnitee by any person other than a governmental agency, including any person who purchases or leases all or any portion of the Property from Indemnitor, from any Indemnitee, or from any other person or lessee, by any person who may at any time have any interest in all or any portion of the Property and any person who may at any time be responsible for any cleanup costs or other Losses relating to the Property, and by any person claiming to have been injured in any way as a result of exposure to any Hazardous Material relating to the Property; (xii) any claim

-3-

by which an Indemnitee reasonably believes at any time may be incurred to comply with any law, judgment order, regulation, or regulatory directive relating to Hazardous Materials and the Property, or which any Indemnitee reasonably believes at any time may be incurred to protect the public health or safety; (xiii) any claim resulting from currently-existing conditions in, on, around or materially affecting the Property, whether known or unknown by Indemnitor or the Indemnitee at the time this Indemnity is executed, and any such claim resulting from the activities of Indemnitor, its tenants, or any other person in, on, around or materially affecting the Property; (xiv) any breach of any representation or warranty by or covenant of Indemnitor in this Indemnity; or (xv) any misrepresentation, inaccuracy or breach of any warranty, covenant or agreement contained in this Indemnity.

(h)    "*Indemnitees*": Lender, and any parent, subsidiary or affiliated company of Lender, any assignee or successor-in-interest of all or any part of Lender's interest in the Loan or the Loan Documents, any owner of a participation interest in the Loan or the Loan Documents, any purchaser affiliated with Lender who acquires all or part of the Property from Lender, its parent, or any of its subsidiaries or affiliates (but excluding any third party purchaser of all or any part of the Property at any foreclosure sale or otherwise, any recipient of a deed or assignment in lieu of foreclosure of all or part of the Property), any court-appointed receiver, and the officers, directors, employees, shareholders, partners, subsidiaries, parents, affiliates, directors, agents and attorneys of each of them.

(i)    "*Loan Documents*": As defined in the Loan Agreement.

(j)    "*Losses*": Any and all actual losses, liabilities, damages (excluding consequential, punitive and exemplary damages except to the extent actually incurred by Indemnitee in connection with a third party claim), fines, demands, claims, actions, orders, inquiries, violations, complaints, reports, citations, investigations, studies, notices, judgments, causes of action, litigation, suits, proceedings, defects in title, assessments, liens, encumbrances, penalties, clean up and response costs (including but not limited to consultant, contractor and laboratory fees), other documented out-of-pocket costs and expenses (including but not limited to the reasonable fees and disbursements of outside legal counsel and experts and the reasonable charges of in-house legal counsel and experts), whether formal or informal, absolute or contingent, mature or unmatured.

(k)    "*Release*": Any releasing, spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, migrating, disposing, or dumping of any substance into the environment.

(l)    "*Remedial Work*": Any investigation, preliminary assessment, site investigation, remedial investigation report, remedial work plan, site monitoring, containment, cleanup, removal, restoration or other remedial work.

(m)    "*Transaction Documents*": As defined in the Loan Agreement.

2.    **Indemnity**.

(a)    Indemnitor, at its sole cost and expense (subject to Bankruptcy Court approval), irrevocably and unconditionally agrees to indemnify, defend (including prior to, at trial

-4-

166393824.3

and at appellate levels and otherwise and with counsel, experts and consultants acceptable to Indemnitees), and hold harmless Indemnitees, and each of them, from and against any and all Hazardous Materials Losses and actions and proceedings relating thereto.  Indemnitor agrees to pay on the Maturity Date all judgments and claims for damages, penalties or otherwise against Indemnitees arising out of Hazardous Materials Losses.

(b)     The obligations of Indemnitor under **Section 2(a)** shall apply upon the assertion of any Hazardous Materials Loss or action or proceeding relating thereto, and shall apply whether or not the Hazardous Materials Loss has merit.  Further, the foregoing indemnity is expressly intended to include, and does include, any Hazardous Materials Losses arising as a result of any strict liability imposed or threatened to be imposed on any Indemnitee in connection with any of the indemnified matters described in this **Section 2**, or arising out of or relating to matters disclosed to Indemnitees.  Notwithstanding anything contained in this **subsection (b)** to the contrary, Indemnitor's indemnification obligations shall not apply to the extent any Hazardous Materials Losses arise out of or result from the negligence or willful misconduct of Indemnitee.

(c)     Notwithstanding anything contained herein to the contrary, the foregoing indemnity shall not apply to the extent any Hazardous Materials Losses arise out of or result from (i) the gross negligence or willful misconduct of any Indemnitee, and/or (ii) matters first arising after Lender or its nominee has taken title to or exclusive possession of the Property.

3.     **Separate and Absolute Obligation**.

(a)     This Indemnity is given solely to protect Indemnitees against Hazardous Materials Losses, and not as additional security for, or as a means of repayment of, the Loan.  The obligations of Indemnitor under this Indemnity are independent of, and shall not be measured or affected by (i) any amounts at any time owing under the Loan or the Loan Agreement, or secured by the Deed of Trust, (ii) the sufficiency or insufficiency of any collateral (including the Property) given to secure repayment of the Loan, (iii) any obligations of any person under the Loan Agreement, the Deed of Trust or any other agreements delivered in connection therewith, whether they relate to compliance with Hazardous Materials Laws, Hazardous Materials, Hazardous Materials Activity or otherwise, (iv) the consideration given in order to acquire the Property, or any portion thereof, (v) the modification, expiration or termination of the Loan Agreement or any other document or instrument relating thereto, or (vi) the discharge or repayment in full of the Loan (whether by amounts paid or credit bid at a foreclosure sale, by discharge in connection with a deed in lieu of foreclosure or otherwise).

(b)     The obligations of Indemnitor hereunder are neither limited by nor related to the indebtedness of Indemnitor under the Loan or to any decline in the value of the Property attributable primarily to general market conditions.

(c)     Indemnitor authorizes Lender at any time in its sole discretion (subject to Bankruptcy Court approval and Section 6.2 of the Loan Agreement) to take any of the following actions on such terms and conditions as Lender may elect, upon written notice to Indemnitor but without obtaining the consent of Indemnitor and without affecting Indemnitor's obligations under this Indemnity: (i) accept partial payments or performance on the Loan or obligations under the Documents; (ii) during the continuation of an Event of Default, apply any security, and direct the

166393824.3

order and manner of sale thereof as Lender in its sole discretion may determine; (iii) during the continuation of an Event of Default, settle, release on terms satisfactory to Lender or by operation of law or otherwise, compound, compromise, collect or otherwise liquidate the Documents or obligations thereunder and/or the security or any indemnity therefor in any manner; (iv) release Indemnitor or any other person of its liability under the Documents; (v) participate in any settlement offered by Indemnitor or any other person, whether in liquidation, reorganization, receivership, bankruptcy, assignment for the benefit of creditors or other debtor-relief proceeding or otherwise; (vi) exercise or not exercise rights available to it in any liquidation, reorganization, receivership, bankruptcy, assignment for benefit of creditors or other debtor-relief proceeding, including voting or not voting to accept a plan and filing or not filing a proof of claim; and (vii) assign its rights under this Indemnity in whole or in part.

(d)     To the fullest extent permitted by applicable law, Indemnitor waives and agrees not to assert or take advantage of (i) any right to require Lender to proceed against any Other Indemnitor or any other person or any security now or hereafter held by Lender or to pursue any other remedy whatsoever; (ii) any defense based upon any legal disability of any Other Indemnitor or other person, or any discharge or limitation of the liability of any Other Indemnitor or other person to Lender, or any restraint or stay applicable to actions against any Other Indemnitor or other person, whether such disability, discharge, limitation, restraint or stay is consensual, or arising by order of a court or other governmental authority, or arising by operation of law or any liquidation, reorganization, receivership, bankruptcy, assignment for the benefit of creditors or other debtor-relief proceeding, or from any other cause, including any defense to the payment of interest, reasonable attorneys' fees and costs, and other charges that otherwise would accrue or become payable under the Documents after the commencement of any such proceeding; (iii) setoff, counterclaim, presentment, demand, protest, notice of protest, notice of nonpayment, or other notice of any kind; (iv) any defense based upon the modification, renewal, extension or other alteration of any of the Documents, or of the obligations thereunder; (v) any defense based upon the negligence of Lender, including the failure to record an interest under a deed of trust, the failure to perfect any security interest, or the failure to file a claim in any bankruptcy of any Other Indemnitor or other person; (vi) any defense based upon a statute of limitations to the fullest extent permitted by law and any defense based upon Lender's delay in enforcing this Indemnity or any other agreement; (vii) all rights of subrogation, reimbursement, indemnity and contribution, all rights to enforce any remedy that Lender may have against any Other Indemnitor or any other person and all rights to participate in any security held by Lender, until the obligations under the Documents have been paid and performed in full, and any defense based upon the impairment of any subrogation, reimbursement, indemnity or contribution rights that Indemnitor might have, including any defense or right based upon the acceptance by Lender or an affiliate of Lender of a deed in lieu of foreclosure without extinguishing the obligations under the Documents, even if such acceptance destroys, alters or otherwise impairs subrogation rights of Indemnitor to proceed against any Other Indemnitor or any other person for reimbursement; (viii) any defense to recovery by Lender of a deficiency after non-judicial foreclosure sale of real or personal property; any defense based upon unavailability to Lender of a deficiency judgment after nonjudicial sale of real or personal property; and any defense based upon or arising out of any of Sections 580a, 580b and 580d or 726 of the California Code of Civil Procedure or based upon or arising out of Division 8 or 9 of the California Uniform Commercial Code; (ix) any defense based upon the death, incapacity, lack of authority or termination of existence of, or revocation or rescission or purported revocation or rescission of this Indemnity or any of the obligations under the Documents by, any

-6-

166393824.3

person, or the substitution of any party thereto; (x) any right to revoke this Indemnity or obligations hereunder; (xi) any right to designate the application of any sums or property received by Lender; (xii) any defense based upon any action taken or omitted by Lender in any bankruptcy or insolvency proceeding involving any Other Indemnitor or other persons; and (xiii) any right or defense that is or may become available to Indemnitor by reason of California Civil Code Sections 2787 to and including 2855, 2899 and 3433.

(e)     Indemnitor acknowledges that it is relying upon its own knowledge of and is fully informed with respect to the environmental condition of the Property.  Indemnitor assumes full responsibility for keeping fully informed of the environmental condition of the Property, and agrees that Lender will have no duty to report to Indemnitor any information which Lender receives about the environmental condition of the Property, regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Indemnitor intends to assume or has reason to believe that such facts are unknown to Indemnitor or has a reasonable opportunity to communicate such facts to Indemnitor.

(f)     Indemnitor waives all rights and defenses arising out of an election of remedies by Lender or any other Indemnitee, even though that election of remedies, such as nonjudicial foreclosure with respect to security for the obligations under the Loan Documents, has destroyed Indemnitor's rights of subrogation and/or reimbursement against any Other Indemnitor or any other person by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

(g)     Notwithstanding the provisions of any other document or instrument to the contrary, none of the obligations of Indemnitor hereunder shall be in any way secured by the lien of the Deed of Trust or any other document or instrument securing the Loan or the Loan Agreement.

4.     **Covenants.**  Indemnitor covenants as follows:

(a)     **Absence of Hazardous Material.**  Except for nonmaterial quantities of Hazardous Materials which are used, stored, present or handled in the ordinary course of Indemnitor's business or use of the Property and in compliance with all applicable Hazardous Materials Laws, no Hazardous Materials shall be introduced to or used, stored, generated, presented or handled on the Property in violation of Hazardous Materials Laws.

(b)     **Proceedings and Environmental Actions.**  Indemnitor shall immediately notify Lender of any Environmental Action promptly upon obtaining notice of same, and provide Lender with copies of all written notices, complaints, correspondence and other documents relating thereto within ten (10) days of Indemnitor's receipt of the same.

(c)     **Site Inspections and Assessments.**  Indemnitor shall provide such information and certifications which Lender may reasonably request from time to time to assure Indemnitor's compliance with this Indemnity.  In the event Lender has a reasonable belief that there has been an occurrence of Hazardous Materials Activity on the Property, Indemnitees and their contractors, agents and representatives (collectively, "*Site Reviewers*") shall have the right to enter upon and visit the Property for the purposes of observing the Property, taking and

-7-

166393824.3

removing soil or groundwater samples, and conducting tests and/or site assessments on any part of the Property (collectively, "***Site Assessments***") for the purpose of determining whether there exists on the Property any condition that could result in any material (in the reasonable judgment of Lender) liability, cost or expense to the owner, occupier, or operator of the Property arising under any Hazardous Materials Law or to verify Indemnitor's compliance with each and every term, covenant and condition of this Indemnity. Indemnitees have no duty, however, to conduct any Site Assessment, and no Site Assessment shall impose any liability on any Indemnitee. In no event shall the completion by Indemnitees of any Site Assessment be a representation that Hazardous Materials are or are not present in, on, under or around the Property, or that there has been or shall be compliance with any Hazardous Materials Law or any other law or governmental regulatory or liability pronouncement. Indemnitees owe no duty of care to protect Indemnitor or any other party against, or to inform Indemnitor (except as provided herein) or any other party of any Hazardous Materials or any other adverse condition affecting the Property. Indemnitees shall make reasonable efforts to avoid interfering with Indemnitor's use of the Property in exercising any rights provided in this Section. Indemnitor shall cooperate fully in the conduct of any such Site Assessment. The Site Reviewers are hereby authorized to enter upon the Property upon written notice to Indemnitor for the purpose of conducting Site Assessments. The Site Reviewers are further authorized to perform both above and below the ground testing for environmental conditions or the presence of Hazardous Materials on the Property and such other tests on the Property as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Indemnitor will supply to the Site Reviewers such historical and operational information regarding the Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make itself available for meetings with the Site Reviewers' appropriate personnel having knowledge of such matters. The costs and expenses of performing such Site Assessments shall be paid by Indemnitor on the Maturity Date. On request, Lender shall make the results of such Site Assessments fully available to Indemnitor provided that (i) Indemnitor has fully reimbursed Lender for the cost of such Site Assessments, and (ii) Indemnitor acknowledges in writing that neither Indemnitor nor any other party is entitled to rely on any Site Assessment conducted by or on behalf of any Indemnitee, which Site Assessment shall be for the sole benefit and use of the Indemnitee. Nothing in this Indemnity shall give or be construed as giving Lender the right to direct or control Indemnitor's actions in complying with Hazardous Materials Laws.

(d)     **Right of Entry.** Lender shall have the right, but not the obligation, without in any way limiting Lender's other rights and remedies under the Documents, to enter onto the Property or to take such other actions as it deems reasonably necessary or advisable to clean up, remove, resolve, or minimize the impact of, or otherwise deal with, any Hazardous Materials on or affecting the Property in violation of Hazardous Materials Laws following receipt of any written notice from any person or entity asserting the existence or possible existence of any Hazardous Materials pertaining to the Property or any part thereof that, if true, could result in an Hazardous Materials Loss, order, notice, suit, imposition of a lien on the Property, or other action that, in Lender's reasonable opinion, could jeopardize Lender's security under the Loan Documents.

(e)     **Remedial Work.**

(1)     All Remedial Work shall be performed by contractors, and under the supervision of a consulting engineer, each reasonably approved in advance by Lender. All

166393824.3

reasonable costs and expenses of such Remedial Work and Lender's monitoring or review of such Remedial Work (including reasonable attorneys' fees actually incurred) shall be paid by Indemnitor on the Maturity Date.  If Indemnitor does not timely commence and diligently prosecute to completion any Remedial Work required to comply with Hazardous Materials Laws, Lender may (but shall not be obligated to) cause such Remedial Work to be performed.  Indemnitor agrees to bear and shall pay or reimburse Lender on the Maturity Date for all documented out-of-pocket costs and expenses (including reasonable attorneys' and consultants' fees actually incurred) relating to or incurred by Lender in connection with monitoring, reviewing or performing any Remedial Work.

(2)    Except with Lender's prior written consent (such consent not to be unreasonably withheld), Indemnitor shall not commence any Remedial Work or enter into any settlement agreement, consent decree or other compromise relating to any Hazardous Materials or Hazardous Materials Laws which might, in Lender's sole judgment, impair the value of the Property or Lender's security under the Loan Documents.  Lender's prior consent shall not be required, however, if the presence or threatened presence of Hazardous Materials on, under or about the Property poses an immediate threat to the health, safety or welfare of any person or is of such a nature that an immediate remedial response is necessary, and it is not possible to obtain Lender's prior consent.  In such event, Indemnitor shall notify Lender as soon as practicable of all action taken.

(f)    **Appearance in Action.**  Lender shall have the right at any time to appear in and to participate in, as a party if it elects, and be represented by counsel of its own choice in, any action or proceeding in connection with any Hazardous Materials Law that affects the Property.  Upon demand by any Indemnitee, Indemnitor shall defend any investigation, action or proceeding involving any matter covered by Indemnitor's obligations hereunder which is brought or commenced against any Indemnitee, whether alone or together with Indemnitor or any other person, all at Indemnitor's own cost and by counsel to be approved by any such Indemnitee in the exercise of its reasonable judgment.  In the alternative, any Indemnitee may elect to conduct its own defense at the expense of Indemnitor.

(g)    **Obligations Not Diminished.**  Indemnitor's obligations under this Indemnity shall not be diminished or affected in any respect as a result of any notice, disclosure or knowledge, if any, to or by any of the Indemnitees of the Release, presence, existence or threatened Release of Hazardous Materials in, on, around, or potentially affecting the Property or the soil, groundwater or soil vapor on or under the Property, or of any matter covered by Indemnitor's obligations hereunder.  No Indemnitee shall be deemed to have permitted, caused, contributed to or acquiesced in any such Release, presence, existence or threatened Release of Hazardous Materials or any other matter covered by Indemnitor's obligations hereunder solely because Lender or any other Indemnitee had notice, disclosure or knowledge thereof, whether at the time this Indemnity is delivered or at any other time. Lender is entitled to rely upon Indemnitor's representations, warranties and covenants contained in this Indemnity, despite any independent investigations by Lender or its consultants.

(h)    **No Limitation of Claim or Right.**  Nothing in this Indemnity shall be construed to limit any claim or right which any Indemnitee may otherwise have at any time against Indemnitor or any other person arising from any source other than this Indemnity, including any

-9-

166393824.3

claim for fraud, misrepresentation, waste, or breach of contract other than this Indemnity, and any rights of contribution or indemnity under federal, state or local Hazardous Material Law or other applicable law, regulation or ordinance.

(i)    **No Waiver.**    If any Indemnitee delays or fails to exercise any right or remedy against Indemnitor, that alone shall not be construed as a waiver of that right or remedy. All remedies of any Indemnitee against Indemnitor are cumulative.

5.    **Survival of Obligations**.    All rights of Indemnitees and all obligations of Indemnitor under this Indemnity shall survive the following, as unsecured rights and obligations: (i) the payment and performance of the Loan and obligations created by the Loan Documents; (ii) the surrender of the Promissory Note evidencing the Loan and reconveyance of the Deed of Trust; (iii) the foreclosure of the Deed of Trust; (iv) the extinguishment of the Deed of Trust by any means, including deed or assignment in lieu of foreclosure; (v) the acquisition of the Property or any portion of it by any Indemnitee; (vi) the transfer of all of Lender's rights in the Loan Documents; and (vii) the sale or other transfer of the property by Indemnitor, any Other Indemnitor, any Indemnitee, and any other person.

6.    **Rights Cumulative.**    The rights of Indemnitees under this Indemnity shall be in addition to any other rights and remedies of Indemnitees against Indemnitor and any Other Indemnitor including any right of reimbursement or contribution under CERCLA.    Without limiting the foregoing, nothing in this Indemnity shall be construed to limit any claim or right which any Indemnitee may otherwise have at any time against Indemnitor or any other person arising from any source other than this Indemnity, including any claim for fraud, misrepresentation, waste, or breach of contract other than this Indemnity, and any rights of contribution or indemnity under federal, state or local Hazardous Materials Law or other applicable law, regulation or ordinance.

7.    **Waiver of Reimbursement, Subrogation and Contribution.**    Indemnitor agrees that it shall have no right of reimbursement, contribution (including any right of contribution under CERCLA) or subrogation against any of the Other Indemnitors arising out of or related to this Indemnity unless and until all obligations of Indemnitor and all Other Indemnitors to Lender have been satisfied.    If and to the extent that any such waiver is found by a court of competent jurisdiction to be void or voidable for any reason, any rights of reimbursement, subrogation or contribution Indemnitor may have shall be junior and subordinate to the rights of each Indemnitee against Indemnitor and such Other Indemnitors.

8.    **Obligations Payable on Demand.**    All obligations of Indemnitor hereunder shall be payable on the Maturity Date, and any amount due and payable hereunder to any Indemnitee by Indemnitor which is not paid within ten (10) days after the Maturity Date shall bear interest from the date of such demand at the default rate in Section 4.8 of the Note.

9.    **Payment of Costs.**    Indemnitor agrees to pay to each Indemnitee on the Maturity Date all documented out-of-pocket costs and expenses (including the reasonable fees and disbursements of any Indemnitee's outside legal counsel and consultants and the reasonable charges of any Indemnitee' in-house legal counsel and consultants) incurred by such Indemnitee in connection with this Indemnity or its enforcement.

-10-

166393824.3

10. **Successors and Assigns.** This Indemnity shall be binding upon Indemnitor, its heirs, representatives, administrators, executors, successors and assigns, and shall inure to the benefit of and shall be enforceable by each Indemnitee, its successors, endorsees and assigns (including, without limitation, any person to which Lender assigns or sells all or any portion of its interest in the Loan).

11. **Separate Right of Action.** Notwithstanding any law to the contrary, the parties expressly agree that a separate right of action hereunder shall arise each time Lender acquires knowledge of any matter indemnified by Indemnitor under this Indemnity. Separate and successive actions may be brought hereunder to enforce any of the provisions hereof at any time and from time to time. No action hereunder shall preclude any subsequent action, and Indemnitor hereby waives and covenants not to assert any defense in the nature of splitting of causes of action or merger of judgments.

12. **Reliance on Representations and Warranties.** Indemnitor acknowledges that Lender has and will rely upon the representations, warranties and agreements herein set forth in closing and funding (or modifying as the case may be) the Loan and that the execution and delivery of this Indemnity is an essential condition but for which Lender would not close or fund (or modify) the Loan.

13. **Time of Essence.** Time is of the essence of this Indemnity, and of each and every provision hereof. The waiver by any Indemnitee of any breach or breaches hereof shall not be deemed, nor shall the same constitute, a waiver of any subsequent breach or breaches.

14. **Notices**. Except as otherwise required by applicable law, all notices, demands and other communications required or permitted hereunder shall be in writing, addressed to the appropriate party as its address as follows, or to such other address as may be designated from time to time by notice to the other parties in the manner set forth herein. All such communications shall be deemed effective (a) upon actual delivery if delivered by personal delivery or certified postage prepaid mail, (b) three Business Days following deposit, first class postage prepaid, with the United States Mail, (c) on the next Business Day after timely and proper deposit with a nationally-recognized overnight courier marked for next Business Day delivery, or (d) sent to the e-mail address specified below and shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement).

Address of Lender:

DTLA LENDING LLC.
200 Park Avenue, 9th Floor
New York, New York 10166
Attention: Peter Campbell
Email: peter.campbell@lendlease.com
Attention: Bruce Ambler
Email: bruce.ambler@lendlease.com

with a copy to:

Perkins Coie LLP
505 Howard Street, Suite 1000

-11-

166393824.3

San Francisco, California 94105
Attention: Allan E. Low, Esq.
Email: alow@perkinscoie.com

Address of Indemnitor:                OCEANWIDE PLAZA LLC
c/o Development Specialists, Inc.
333 S Grand Ave, Suite 4100
Los Angeles, CA 90071-1544
Attention: Bradley Sharp
Email: bsharp@DSIConsulting.com

With a copy to (which
shall not constitute notice):         Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Attention:  Sharon Z. Weiss
Email:  Sharon.weiss@bclplaw.com

15.    **Headings.**  Headings herein are used for convenience of reference only and do not define or limit the scope of provisions of this Indemnity.

16.    **Severability.**  In the event of any invalidity or unenforceability of any provision of this Indemnity, the remainder of the Indemnity shall remain in full force and effect.

17.    **No Waiver.**  No failure or delay on the part of any Indemnitee to exercise any power, right or privilege under this Indemnity shall impair any such power, right or privilege, or be construed to be a waiver of any default or an acquiescence therein, nor shall any single or partial exercise of such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege.  No provision of this Indemnity may be changed, modified, waived, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of the change, modification, waiver, discharge or termination is sought.

18.    **Entire Agreement.**  This Indemnity constitutes the entire understanding between the parties as to its subject matter; provided, however, the obligations of Indemnitor hereunder are in addition to any obligations of Indemnitor under the Loan Agreement.

19.    **Interpretation.**  As used herein:

(a)    the terms "include," "including" and forms thereof mean inclusive without limitation;

(b)    the term "person" means any individual, corporation, partnership, limited liability company, trust, governmental authority, or other entity of any kind;

(c)    the term "day" means calendar day;

(d)    singular words shall connote the plural as well as the singular and vice versa as the context requires;

-12-

(e)     each gender will include any other gender;

(f)     the words "herein," "hereof," "hereunder" and words of similar import refer to this Indemnity as a whole and not to any particular Section or subdivision hereof; and

(g)     "Sections," "Exhibits" and other parts or subdivisions are to the corresponding Sections, Exhibits or parts or subdivisions of this Indemnity, unless otherwise specified.

20.     **Joint and Several Obligations.**  If more than one (1) person has executed this Indemnity as "*Indemnitor*," the obligations of all such persons shall be joint and several.  The liability of Indemnitor and any Other Indemnitors is joint and several, and an Indemnitee may enforce the Indemnity against Indemnitor or any one or more Other Indemnitors in such order as Indemnitee may elect.  If Indemnitor is a partnership, the obligations of Indemnitor shall be the joint and several obligations of all general partners therein.  Any married person executing this Indemnity agrees that recourse may be had against community assets and against such person's separate property for the satisfaction of all obligations hereby indemnified.

21.     **Controlling Law; Venue.**  This Indemnity shall be deemed to be entered into in California and shall be controlled and interpreted by the internal laws of California, without regard to conflict of law provisions.  Venue for any action brought under this Indemnity will be at Lender's option in the Superior Court of the County of Los Angeles, California.  Indemnitor hereby accepts for itself and in respect to its property, generally and unconditionally, the non-exclusive jurisdiction of the foregoing court.

22.     **Counterparts.**  This Indemnity may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Indemnity.  The words "execution", "signed", "signature", "delivery", and words of like import in or relating to this Indemnity and the transactions contemplated hereby shall be deemed to include Electronic Signatures (as defined below), deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be.  As used herein, "*Electronic Signatures*" means any electronic symbol or process attached to, or associated with, any contract or other record and adopted by a person with the intent to sign, authenticate or accept such contract or record.  If any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing this Indemnity (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original hereof or thereof..

23.     **WAIVER OF RIGHTS OF TRIAL BY JURY**.  TO THE GREATEST EXTENT PERMITTED BY LAW, INDEMNITOR AND LENDER (BY ITS ACCEPTANCE HEREOF) EACH HEREBY VOLUNTARILY, KNOWINGLY, INTENTIONALLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE (INCLUDING BY WAY OF JURY TRIAL) IN RESOLVING ANY DISPUTE OR LITIGATION

-13-

166393824.3

(WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG INDEMNITOR AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS INDEMNITY, THE LOAN,  THE DOCUMENTS OR ACTIONS OF INDEMNITOR OR LENDER RELATING TO THE LOAN, AND/OR THE LENDING RELATIONSHIP WHICH IS THE SUBJECT TO THE DOCUMENTS.

[*Signatures on Following Page*]

166393824.3

IN WITNESS WHEREOF, this Environmental Indemnity is executed on the date first written above.

**INDEMNITOR:**                    OCEANWIDE PLAZA LLC,
                                   a Delaware limited liability company


                                   By: _____
                                       Bradley Sharp, Chief Restructuring
                                       Officer

166393824.3

## EXHIBIT A

### Description of Real Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

TAB 7

**FILING AUTHORIZATION**

On this May ___, 2024, in connection with the loan to be made by DTLA LENDING LLC, a California limited liability company ("***Lender***") to OCEANWIDE PLAZA LLC, a Delaware limited liability company ("***Borrower***"), in the principal sum not to exceed Ten Million and No/100 Dollars ($10,000,000.00), as set forth in that certain Secured Superpriority Debtor-in-Possession Financing Loan Agreement, dated of even date herewith, by and between Borrower and Lender (the "***Loan Agreement***"), Borrower hereby authorizes the filing of the Financing Statement (Form UCC-1) attached hereto as **Exhibit A** with the Secretary of State for the State of Delaware, in connection with the closing of the loan transaction contemplated by the Loan Agreement.

[*Signature on Following Page*]

166394472.2

IN WITNESS WHEREOF, Borrower has executed this Filing Authorization as of the date first written above.


**BORROWER:**                        OCEANWIDE PLAZA LLC,
                                     a Delaware limited liability company


                                     By:   _____
                                           Bradley Sharp, Chief Restructuring
                                           Officer

166394472.2

## EXHIBIT A

### UCC-1 Financing Statement

[attached]

166394472.2

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and  Address)

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME:  Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OCEANWIDE PLAZA LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| c/o Development Specialists, Inc., 333 S. Grand Ave, Suite 4100 | Los Angles | CA | 90071-1544 | USA |

2. DEBTOR'S NAME:  Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):    Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| DTLA LENDING LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 200 Park Avenue, 9th Floor | New York | NY | 10166 | USA |

4. COLLATERAL:  This financing statement covers the following    collateral:

See Exhibit A attached hereto and incorporated herein by reference

5. Check only if applicable and check only one box:  Collateral  is  ☐ held in a Trust (see UCC1Ad, item 17 and  Instructions)   ☐ being administered by a Decedent's Personal   Representative

6a. Check only if applicable and check only one  box:   ☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:   ☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev.  04/20/11)        International Association of Commercial Administrators (IACA)

166394472.2

UCC-1 FINANCING STATEMENT ADDENDUM
*Debtor: OCEANWIDE PLAZA LLC, a Delaware limited liability company*
*Secured Party: DTLA LENDING LLC, a California limited liability company*
*Page 1*

## EXHIBIT A

### Description of Collateral

This Financing Statement covers all of the Collateral, as defined below, now owned or hereafter acquired by Trustor.

As used in this Description of Collateral:

"***Trustor***" means OCEANWIDE PLAZA LLC, a Delaware limited liability company, the debtor named in this Financing Statement.

"***Deed of Trust***" means that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing, dated [_____], 2024, executed by Trustor in favor of Secured Party and encumbering the Property and the Collateral.

"***Real Property***" means that certain real property, the land portion of which is described in **Exhibit 1** attached hereto and incorporated by this reference, which property is owned by Trustor in fee.

"***Property***" means all of the Real Property and all of the Encumbered Property.

"***Encumbered Property***" means, collectively, all of the following property, now owned or hereafter acquired:

**Real Property.** That certain real property (the "***Real Property***") described in **Exhibit 1** attached hereto and incorporated by this reference, which property is owned by Trustor in fee.

**Improvements.** All present and future structures, buildings and improvements of any kind on the Real Property, and all machinery, equipment, appliances, furnishings, fixtures and other property used or usable in connection with the Real Property or the improvements now or hereafter on the Real Property or any business conducted on the Real Property, now or hereafter attached or affixed in any manner to, installed in, or adapted to the use of, the Real Property or any improvement thereon, including heating and air-conditioning equipment and systems; facilities used to provide utility services, refrigeration, ventilation, laundry, drying, dishwashing, garbage disposal, recreation or other services; window coverings, drapes and rods; and carpeting and floor coverings (all collectively, the "***Improvements***");

**Appurtenances.** All present and future appurtenances of the Real Property and rights of the Trustor in and to any streets, alleys, roads, navigable waters, air space, public places, easements or rights of way relating to the Real Property or Improvements;

**Leases and Rents.** All rights of the Trustor, to the extent assignable, under all present and future leases, licenses, franchises, concessions, subleases, rental agreements and other

166394472.2

UCC-1 FINANCING STATEMENT ADDENDUM
*Debtor: OCEANWIDE PLAZA LLC, a Delaware limited liability company*
*Secured Party: DTLA LENDING LLC, a California limited liability company*
*Page 2*

agreements for possession, use or occupancy pertaining to any of the Property to the extent assignable (*subject, however*, to the absolute assignment thereof set forth in the separate Assignment of Lessor's Interest in Leases recorded herewith), and all of the rents, issues, royalties, profits, receipts, revenue and income (including security deposits) of any thereof or any of the Property (the "***Rents***") (*subject, however*, to the absolute assignment of the Rents set forth in **Article 3** of the Deed of Trust);

**Water; Associations.**  All present and future water, water rights and water stock relating to any of the Property, and all present and future documents of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property;

**Minerals.**  All present and future rights to all minerals, oil, gas and other hydrocarbon substances in, on or under the surface of the Real Property (to the extent owned by Trustor); and

**Proceeds, Deposits.**  All proceeds, including insurance proceeds, and claims arising on account of any damage to or taking of any of the Property, and all causes of action and recoveries by settlement or otherwise for any loss or diminution in value of any of the Property; all present and future deposits and payments made by Trustor with third parties in connection with the development of and construction upon the Real Property, and refunds thereof; and all present and future deposits and payments made with or other security given to utility companies by Trustor with respect to the Real Property or Improvements, and refunds thereof.

"***Collateral***" means, collectively, all of the following property, now owned or hereafter acquired:

**Tangible Property.**  All goods and tangible personal property (including all appliances, furniture, furnishings, fittings, machinery, fixtures, tools, inventory, materials, supplies and equipment) which are now or hereafter installed on or attached or affixed to the Property, or which are used, necessary for use, or intended for use in connection with the Property (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property), whether or not located or installed on or attached or affixed to the Property, including all goods and tangible personal property (including all appliances, furniture, furnishings, fittings, machinery, fixtures, tools, inventory, materials, supplies and equipment) for providing gas, light, heat, water, air-conditioning, ventilation, shade, refrigeration, laundry, dry cleaning, food preparation, food service, dishwashing, garbage disposal, trash removal, fumigation, pest control, vacuuming, cleaning, window washing, telecommunications, computer, elevator, escalator, transportation, parking, safety, security, alarm, maintenance, landscaping, repair, decoration, recreation, entertainment or other utilities, services, facilities or guest, tenant, visitor or other accommodations of any kind at or for the Property;

166394472.2

UCC-1 FINANCING STATEMENT ADDENDUM
*Debtor: OCEANWIDE PLAZA LLC, a Delaware limited liability company*
*Secured Party: DTLA LENDING LLC, a California limited liability company*
*Page 3*

**Intangible Property.**  All intangible personal property, and all documentary, electronic and other evidences and embodiments of any intangible personal property, relating to the Property or the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property or the Collateral), to the extent assignable, including:  (a) all names under which or by which any of the Property or the Collateral may at any time be operated or known, all rights to carry on business under any such names or any variants of such names, and all goodwill in any way relating to the Property or the Collateral, (b) all permits, licenses, variances, land use entitlements, approvals, consents, authorizations, franchises and agreements, (c) all rights under any covenants, conditions and restrictions or other matters of record, (d) all contracts (including construction, materials, architectural, service, engineering, consulting, leasing, financing, sale, surety, operating, management, maintenance, repair and landscaping contracts), (e) all reserves, deferred payments, deposits, refunds, rebates, cost savings, letters of credit, rights to proceeds of letters of credit, and payments of any kind, (f) all disbursed proceeds of financing commitments, (g) all insurance policies (whether required by the Deed of Trust or otherwise) and insurance proceeds, (h) all claims, causes of action and recoveries by settlement or otherwise (including for any damage to, or loss, taking or diminution in the value of, any of the Property or the Collateral, or for any breach or rejection in bankruptcy of any other lease of any of the Property or Collateral by Trustor as lessee or lessor), (i) all interests of Trustor under any leases of any personal property of any kind, including any options to purchase, (j) all inventions, patents, trademarks, trade names, trade symbols, trade secrets, trade dress, service marks and copyrights, and all patent, trademark, trade name, trade symbol, trade secret, trade dress, service mark and copyright applications, registrations and licenses, and (k) all computer software and source codes;

**Plans, Reports, Records, Documents.**  Without limiting the foregoing, to the extent assignable, all drawings, plans, specifications, tests, reports, studies, designs, data, appraisals, maps, surveys, engineering reports, promotional materials, business books and records, and other documents of any kind (in paper, electronic or other form) relating to the Property or the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property or the Collateral);

**Stock.**  Without limiting the foregoing, all shares of stock or other evidence of ownership of any part of the Property or the Collateral that is owned by Trustor in common with others, including any water stock relating to the Property, and all documents and rights of membership in any owners' or members' association or similar group having responsibility for managing or operating any part of the Property or the Collateral;

**Other.**  Without limiting the foregoing, to the extent assignable, all goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles, as those terms are or may be defined in the California Uniform Commercial Code from time to

166394472.2

UCC-1 FINANCING STATEMENT ADDENDUM
*Debtor: OCEANWIDE PLAZA LLC, a Delaware limited liability company*
*Secured Party: DTLA LENDING LLC, a California limited liability company*
*Page 4*

time in effect, in any way relating to or deriving from any of the Property, the Collateral or any business operated on any of the Property or using any of the Collateral (including the ownership, design, development, construction, improvement, equipping, furnishing, use, leasing, operation, management, occupancy, financing or sale of the Property, the Collateral or any such business);

**Property.** Any portion of the Encumbered Property as to which the grant of a security interest is subject to the California Uniform Commercial Code in effect from time to time; and

**Proceeds; Receipts and Revenues.** All proceeds, replacements, substitutions, products, accessions, and increases (whether in the form of goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles or otherwise) of all of the Collateral; and all receipts, revenues, rents, issues and profits (whether in the form of goods, accounts, documents, instruments, cash, money, deposit accounts, chattel paper, electronic chattel paper, securities, securities entitlements, investment property, letters of credit, letter-of-credit rights, rights to proceeds of letters of credit, payment intangibles, software and general intangibles or otherwise) of operation, use, hiring, leasing or licensing of any of the Collateral.

166394472.2

UCC-1 FINANCING STATEMENT ADDENDUM
*Debtor: OCEANWIDE PLAZA LLC, a Delaware limited liability company*
*Secured Party: DTLA LENDING LLC, a California limited liability company*
*Page 5*

## EXHIBIT 1

### Description of Real Property

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

166394472.2

# TAB 8

## INSURANCE AGREEMENT

This INSURANCE AGREEMENT (this "***Agreement***") is entered into as of _____, 2024, by OCEANWIDE PLAZA LLC, a Delaware limited liability company ("***Borrower***"), in favor of DTLA LENDING LLC, a California limited liability company ("***Lender***").

## RECITALS

A.      Borrower and Lender are parties to a Secured Superpriority Debtor In Possession Financing Loan Agreement, dated as of even date herewith (as amended, restated, supplemented and/or otherwise modified from time to time, the "***Loan Agreement***").

B.      All of the documents evidencing or relating to the Loan, including without limitation, any and all documents evidencing and relating to the modifications to the Loan set forth in this Agreement, collectively, shall be referred to as the "***Loan Documents***".

C.      Borrower and Lender desire to set forth the insurance requirements for Borrower in connection with Loan.

NOW, THEREFORE, Borrower and Lender, in consideration of the mutual covenants hereinafter set forth and other good and valuable consideration and intending to be legally bound, hereby agree as follows:

## AGREEMENT

**1.      General Requirements.**

**(A)**      Borrower shall procure and maintain, or cause to be procured and maintained, prior to any Disbursement and at all times until the repayment of the Loan and the satisfaction of the Borrower's obligations set forth in the Loan Documents and, as provided herein, thereafter, policies of insurance in form and amounts reasonably satisfactory to Lender, and issued by companies qualified to do business in the state where the Property is located and having a Best's rating of at least A:VIII and otherwise reasonably satisfactory to Lender, covering such casualties, risks, perils, liabilities and other hazards as may be reasonably required by Lender.  All policies shall expressly protect Lender's interest as required by Lender.  Without limiting the generality of the foregoing, Borrower shall maintain or cause to be maintained the insurance coverage described in Section 2.  If Borrower fails to maintain any insurance coverage required under this Agreement, Lender may, but shall have no obligation to, obtain such insurance, and Borrower shall pay all amounts expended by Lender for such insurance, together with interest thereon at the default interest rate set forth in the Loan Documents, within ten (10) days after written demand by Lender. In the event of any foreclosure of the Deed of Trust or a deed in lieu or in aid thereof or other transfer of title to the Project in extinguishment in whole or in part of Borrower's obligations under the Loan Documents, all right, title and interest of Borrower in and to all proceeds payable under the insurance policies required by this Agreement and then in force shall vest in and pass to the new owner of the Project.

**(B)**      To the extent that Lender elects, in its sole discretion and without obligation, to allow the Closing Date to occur without the completion of Lender's review of all insurance

166394723.2

coverages, (i) the same shall not be deemed or construed to constitute a waiver of any of the terms or requirements of this Agreement, and (ii) Borrower shall promptly pay all reasonable attorneys' fees and documented out-of-pocket costs incurred by Lender in connection with Lender's review and approval of the insurance coverages required by this Agreement in accordance with the Budget.

**2.      Required Coverages.**

Without limiting the generality of <u>Section 2</u>, Borrower shall maintain or cause to be maintained the following insurance coverages:

**(A)      Commercial General Liability Insurance.**  Commercial general liability insurance, written on an Insurance Services Office occurrence policy form (1986 or more recent edition), covering bodily injury, property damage, personal injury and advertising injury arising out of or relating directly or indirectly to the possession, use, leasing, operation, construction, maintenance or condition of the Project, including, without limitation, premises/operations coverage, broad form property damage coverage, products/completed operations coverage and contractual liability coverage, with primary limits of liability not less than One Million Dollars ($1,000,000) bodily injury and property damage per occurrence limit, One Million Dollars ($1,000,000) personal injury and advertising injury limit, and Two Million Dollars ($2,000,000) general aggregate limit (provided on a per location basis for the Project by endorsement reasonably satisfactory to Lender).  Umbrella and/or excess liability policies with total limits of not less than Two Million Dollars ($2,000,000) per occurrence and in the aggregate.  Umbrella and excess liability policies must be at least as broad in coverage as the primary policy and satisfy all the requirements of this Agreement.  Lender shall be named as an additional insured on all liability insurance policies by endorsement CG 20 26 11 85 or equivalent reasonably acceptable to Lender.

**(i)**      Borrower must be listed as a full named insured on all liability policies required by this <u>Section 2</u>.

**(ii)**      The liability policies shall provide coverage for Lender that is at least as broad as that provided to the named insured and shall not contain any exclusionary language or limitations applicable to Lender which are not applicable to the named insured.

**(iii)**      The policies shall not contain any exclusions for subsidence/earth movement and there shall be no sublimits on such coverages.

**(iv)**      The liability policies shall not contain any exclusions or restrictions for blasting or for explosion, collapse or underground (XCU) hazards.

**(v)**      If reasonably available, any professional services exclusion is to be deleted, or modified so that it applies only to architectural, engineering or surveying services performed by Borrower.

**(vi)**      The policies shall provide for a blanket waiver of subrogation where required by written contract.

166394723.2

**(vii)**      The policies shall have a primary and non-contributing clause.

### 3.      Certificates, Endorsements and Policy Requirements.

The original of all certificates and all endorsements required by this Agreement, shall be delivered to and retained by Lender unless Lender agrees otherwise in writing.  Borrower shall deliver renewal or replacement policies, certificates and endorsements to Lender not less than thirty (30) days prior to the expiration of existing coverages.  All policies of insurance, certificates and  endorsements to be furnished hereunder shall be in form reasonably satisfactory to Lender and Borrower shall provide Lender with certified copies of such policies upon request.  All policies: (i) shall have a deductible of (a) not more than Fifty Thousand Dollars ($50,000.00) per occurrence with respect to Borrower's commercial general liability insurance; and (b) not more than Ten Thousand Dollars ($10,000.00) with respect to any other insurance and other specific requirements contained herein; (ii) shall provide that the coverage afforded thereby shall not be non-renewed, terminated, cancelled, materially reduced or materially modified without at least thirty (30) days' prior written notice to Lender.  The "endeavor to" and "failure to mail such notice shall impose no obligation or liability of any kind upon the Company" language and any similar language shall be stricken from all certificates furnished hereunder and any other notice provisions in favor of Lender; (iii) shall include a waiver of subrogation as to Lender and provide that such waiver shall not invalidate or prejudice the coverage available to Borrower or Lender; (iv) may be in the form of blanket policies, in amount, form and content reasonably satisfactory to Lender, provided that any such blanket policy or policies shall specify the address of the Project and the Property, the portion of the total coverage of such blanket policies that is allocated to the Property and the Project, and any sublimits in such blanket policies applicable to the Property and the Project, and provided further that all other requirements of this Agreement are satisfied; (v) shall provide that the coverage afforded is primary and that any other insurance available to Borrower or Lender is secondary, excess and noncontributing; (vi) shall provide for severability of interests (separation of insureds) such that Lender's rights under the policies are separate from and independent of Borrower's; and (vii) shall contain no insured vs. insured exclusions.  Borrower shall not obtain or maintain separate insurance or additional insurance concurrent in form or contributing in the event of loss with that required to be maintained hereunder without the prior written consent of Lender, which consent shall not be unreasonably withheld, provided that such policies satisfy all of the requirements of this Agreement.

### 4.      Waiver of Recovery Against Lender.

Notwithstanding anything to the contrary contained in the Loan Documents, Borrower waives any and all right of action or recovery against Lender, and its affiliates, predecessors, successors, assigns, directors, officers, employees, agents and representatives, for any loss, liability, claim, expense, injury or damage, including without limitation to, or arising out of or relating directly or indirectly to, the Property, the Project, any other collateral securing the Loan, Borrower, Borrower's property, or the property of others under Borrower's control, to the extent such loss, liability, claim, expense, injury or damage is insured against or required to be insured against under this Agreement or is coverable by insurance.

166394723.2

5.      **Compliance with Insurer's Requirements.**

Borrower shall, at Borrower's sole expense, comply with all requirements, guidelines, rules and orders and similar mandates and directives relating to the Project and the Property imposed by any insurer and shall not cause or permit any condition to exist in, at or about Project or the Property which would invalidate or impair the insurance coverage required by this Agreement, which would constitute grounds for cancellation or non-renewal of any policy referred to in this Agreement.

6.      **Assignment of Proceeds.**

Delivery to Lender of the policies, certificates and endorsements referred to in this Agreement shall constitute an assignment of all proceeds payable under such insurance as relating to the Project or the Property by Borrower to Lender as further security for the Loan.

7.      **No Liability.**

Notwithstanding any receipt, review, approval or consent to any insurance referred in this Agreement, Lender and its affiliates, predecessors, successors, assigns, directors, officers, employees, agents and representatives shall incur no liability as a result of the insolvency of any insurer, failure of any insurer to perform, deductibles, inadequacy of limits of any policy, limitations or exclusions from coverage or failure of any insurer to pay any claim, even where Lender has caused insurance to be placed with an insurer after failure by Borrower to comply with the requirements of this Agreement. Borrower expressly acknowledges and agrees that Lender's review, approval and/or consent to the insurance coverages required by this Agreement shall be solely for Lender's benefit only and such review, approval and/or consent shall not constitute an express or implied representation or warranty that such insurance coverages are sufficient to adequately protect Borrower's interests or are sufficient for any purpose other than compliance with the terms of this Agreement. Borrower retains the sole responsibility for determining whether the insurance coverages required by this Agreement are sufficient to adequately protect Borrower's interests and, to the extent such coverages are insufficient, for obtaining, subject to the terms of this Agreement, sufficient insurance coverage.

8.      **Independent from Indemnification Obligations.**

The insurance requirements set forth in this Agreement are independent of Borrower's indemnification obligations and other obligations to Lender hereunder and under the other Loan Documents, and shall not be construed or interpreted to restrict, limit or modify Borrower's indemnification obligations or any other obligations to Lender hereunder or under any of the Loan Documents.

9.      **Non-Conforming Items.**

Delivery to Lender of policies, certificates, endorsements or other insurance documents which do not comply with this Agreement shall not constitute notice to Lender of Borrower's failure to meet the requirements of this Agreement and Lender's receipt of such non-conforming items shall not constitute a waiver of such requirements, nor shall Lender's issuance of the Loan

- 4 -

or making of any Disbursement constitute an acceptance of non-conforming insurance. The requirements of this Agreement may only be modified with Lender's express written approval.

## 10.   Performance of Obligations.

From and after the occurrence of any default by Borrower in the performance of its obligations under this Agreement or any obligation with respect to insurance under any other Loan Document, Lender shall have the right (and Borrower hereby irrevocably constitutes and appoints Lender as its attorney-in-fact, which power is coupled with an interest and is deemed to be non-cancelable, with full power of substitution, to do so), but not the obligation, to (a) demand, receive and enforce Borrower's rights with respect to any or all insurance coverage required by this Agreement and any insurance proceeds thereof, including, without limitation, to collect any or all insurance proceeds, (b) to assign any or all insurance coverage required by this Agreement and/or the proceeds thereof as Lender may from time to time deem necessary in its sole discretion, and (c) take such action as Lender may from time to time deem necessary in its sole discretion to cure any default by Borrower under this Agreement or to protect the rights of Borrower or the rights of Lender as the assignee of Borrower with respect to any or all insurance coverage and any insurance proceeds thereof.

## 11.   Rules of Construction.

Where the identity of the parties to this Agreement or the circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The headings in this Agreement are included for convenience of reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect. The recitals to this Agreement are incorporated herein and made a part hereof. Borrower and Lender have each had an opportunity to review and negotiate the terms of this Agreement; accordingly, the rule requiring that language be construed against the drafting party shall not be applicable to this Agreement.

## 12.   Amendments and Waivers.

This Agreement may only be modified in writing signed by all of the parties hereto or their respective successors and assigns. No waiver of any provision of this Agreement shall in any event be effective without the written agreement of Lender. Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given. Except as expressly required by the terms of this Agreement, no notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in similar or other circumstances.

## 13.   Notices.

All notices, or other documents or demands, required or permitted to be given under this Agreement shall be in writing and shall be given in the manner provided in the Loan Agreement.

- 5 -

166394723.2

**14.    Severability.**

If any term of this Agreement or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Agreement shall be valid and enforceable to the fullest extent.

**15.    Applicable Law.**

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

**16.    Successors and Assigns.**

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**17.    Counterparts.**

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement. The words "execution", "signed", "signature", "delivery", and words of like import in or relating to this Agreement and the transactions contemplated hereby shall be deemed to include Electronic Signatures (as defined below), deliveries or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature, physical delivery thereof or the use of a paper-based recordkeeping system, as the case may be. As used herein, "***Electronic Signatures***" means any electronic symbol or process attached to, or associated with, any contract or other record and adopted by a person with the intent to sign, authenticate or accept such contract or record.  If any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing this Agreement (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original hereof or thereof.

*[Signatures on Following Page]*

- 6 -

166394723.2

IN WITNESS WHEREOF, Borrower has executed this Insurance Agreement as of the date first set forth above.

**BORROWER:**

OCEANWIDE PLAZA LLC,
a Delaware limited liability company


By:  _____

Bradley Sharp, Chief Restructuring
Officer

166394723.2

TAB 9

**HAZARD INSURANCE COVERAGE DISCLOSURE**
**California Civil Code § 2955.5**

**THIS DISCLOSURE TO BE GIVEN AND ACKNOWLEDGED**
**BEFORE EXECUTION OF ANY NOTE OR SECURITY DOCUMENTS**

TO:          OCEANWIDE PLAZA LLC, a Delaware limited liability company

FROM:     DTLA LENDING LLC, a California limited liability company

In connection with a proposed loan that may be made to you by DTLA Lending LLC, you are hereby notified of the following:

California Civil Code § 2955.5(a) provides:

"No lender shall require a borrower, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the improvements on that real property in an amount exceeding the replacement value of the improvements on the property."

For purposes of this statute, the term "hazard insurance coverage" means insurance against losses caused by perils which are commonly covered in policies described as a "Homeowner's Policy," "General Property Form," "Guaranteed Replacement Cost Insurance," "Special Building Form," "Standard Fire," "Standard Fire with Extended Coverage," "Standard Fire with Special Form Endorsement," or comparable insurance coverage to protect the real property against loss or damage from fire or other perils covered within the scope of a standard extended coverage endorsement.  The term "improvements" means buildings or structures attached to the real property.

By executing this form below on May_____, 2024, you acknowledge having received this disclosure prior to execution of any note or security documents in connection with the proposed loan to you from DTLA Lending LLC.

[*Signature on Following Page*]

166693165.1

IN WITNESS WHEREOF, the undersigned has executed this Hazard Insurance Coverage Disclosure on the date first written above.


OCEANWIDE PLAZA LLC,
a Delaware limited liability company


By: _____
        Bradley Sharp, Chief Restructuring Officer

Signature Page
to
Hazard Insurance Coverage Disclosure

# EXHIBIT 2

**Oceanwide Plaza LLC**

**DIP Budget Draft**

| (All amounts in dollars) | 4/29 - 5/5 | 5/6 - 5/12 | 5/13 - 5/19 | 5/20 - 5/26 | 5/27 - 6/2 | 6/3 - 6/9 | 6/10 - 6/16 |
|---|---|---|---|---|---|---|---|
| **Payroll and Supplies** | | | | | | | |
| Payroll and Payroll Benefits | 267,765 | 500 | 50,565 | - | 49,510 | 500 | 50,565 |
| Office Supplies & Licenses | 3,026 | 143 | 406 | 23 | 23 | 100 | 100 |
| Bank Fees | 1,300 | - | - | - | 600 | | |
| **Total Payroll and Supplies** | **272,091** | **643** | **50,971** | **23** | **50,133** | **600** | **50,665** |
| | | | | | | | |
| **Insurance** | | | | | | | |
| Liability Insurance | 100,330 | | | | | | |
| Building Insurance (4) | - | | | | | | |
| Earthquake Insurance (4) | - | | | | | | |
| Directors and Officers/Employee Liability | - | | | | | | |
| Worker's Comp Insurance | 670 | | | | 256 | | |
| ERISA Bond | 150 | | | | | | |
| **Total Insurance** | **101,150** | **-** | **-** | **-** | **256** | **-** | **-** |
| | | | | | | | |
| **Taxes** | | | | | | | |
| Franchise Tax, California | 5,900 | - | | | 3,500 | | |
| Franchise Tax, Delaware | 12,536 | | | | | | |
| Business Personal Property Tax | 3,000 | | | | | | |
| Past Due Property Tax | - | | | | | | |
| Real Property Tax | - | - | | | | | |
| **Total Taxes** | **21,436** | **-** | **-** | **-** | **3,500** | **-** | **-** |
| | | | | | | | |
| **State and City Licenses** | | | | | | | |
| Agent for Service of Process, California(1) | 200 | | | | | | |
| Agent for Service of Process, Delaware(1) | 700 | | | | | | |
| **Total State and City Licenses** | **900** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | |
| **Project Operations** | | | | | | | |
| Site Security (2) | 274,214 | 29,752 | 29,752 | 29,752 | 30,036 | 32,760 | 32,760 |
| Portable Toilet | 838 | - | | | 324 | | |
| Site Cleaning/Trash/Bathrooms/Water Removal | 30,000 | - | | | 15,000 | | |
| Utility | 27,188 | - | | | 11,094 | | |
| Video Monitoring Security System | 200,000 | | | | | | |
| Fence Maintenance | 3,000 | - | | | 1,500 | | |
| Ground Floor Lighting Equipment/Repair | 29,000 | | | | | | |
| Hoists (Repair and Maintenance) | - | - | 539,009 | | 78,505 | | |
| Scaffold Rental | 28,125 | - | | | 8,083 | | |
| Trench Plate Rental | 19,154 | - | | | 9,577 | | |
| Street Use Permit | 30,231 | - | | | 2,877 | | |
| Graffiti Abatement | - | - | 493,900 | | - | | |
| Barricade Ground Floor Entrances (Stairs & Ramps) | 160,000 | - | | | - | | |
| Fire Extinguishers Purchase | 40,000 | | | | | | |
| LAFD Fees | 16,000 | | | | | | |
| Razor Wire | - | | 100,000 | | | | |
| Upgrade Fire Suppression System (3) | - | | 270,000 | | | | |
| Storm Water Pollution Prevention Plan Annual Fee | | | | | | | |
| **Total Project Operations** | **857,750** | **29,752** | **1,432,661** | **29,752** | **156,995** | **32,760** | **32,760** |
| | | | | | | | |
| **Professional Fees** | | | | | | | |
| Chief Restructuring Officer | - | | 150,000 | - | 50,000 | | |
| Financial Advisor | - | | 155,000 | - | 60,000 | | |
| Valuation Report | - | | - | | | | |
| Legal Services - Bankruptcy | - | | 900,000 | - | 350,000 | | |
| Claim Agents | - | | 50,000 | | | | |
| Legal Services - Construction Litigation | - | | 150,000 | - | 55,500 | | |
| Legal Services - Employment | - | | 4,000 | - | 1,000 | | |
| Legal Services - Land Use | - | | 40,000 | - | - | | |
| Legal Services - Other | - | | - | - | - | | |
| Payroll Tax Service | 1,500 | | 1,500 | - | - | | |
| Real Estate Broker | - | | 50,000 | - | 125,000 | | |
| Tax Consultant | - | | 50,000 | | | | |
| US Trustee Fee | 64,000 | | - | | | | |
| **Total Professional Fees** | **65,500** | **-** | **1,550,500** | **-** | **641,500** | **-** | **-** |
| | | | | | | | |
| **Others** | | | | | | | |
| Contingency | 90,000 | 10,000 | 303,413 | 30,000 | 30,000 | 30,000 | 30,000 |
| Interest Reserve | | | | | | | |
| **Total Others** | **90,000** | **10,000** | **303,413** | **30,000** | **30,000** | **30,000** | **30,000** |
| | | | | | | | |
| **Total** | **1,408,827** | **40,395** | **3,337,545** | **59,775** | **882,384** | **63,360** | **113,425** |

le Plaza LLC
t Draft

| (All amounts in dollars) | DIP Budget | | | | | | |
|---|---|---|---|---|---|---|---|
| | 6/16 - 6/22 | 6/22 - 6/28 | 6/29 - 7/5 | 7/5 - 7/11 | 7/12 - 7/18 | 7/19 - 7/25 | 7/26 - 8/1 |
| **Payroll and Supplies** | | | | | | | |
| Payroll and Payroll Benefits | - | 49,510 | 500 | 50,565 | - | 49,510 | 500 |
| Office Supplies & Licenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Bank Fees | | 600 | | | | | 600 |
| **Total Payroll and Supplies** | **100** | **50,210** | **600** | **50,665** | **100** | **49,610** | **1,200** |
| | | | | | | | |
| **Insurance** | | | | | | | |
| Liability Insurance | | | | | | | |
| Building Insurance (4) | | | | | | | |
| Earthquake Insurance (4) | | | | | | | |
| Directors and Officers/Employee Liability | | | | | | | |
| Worker's Comp Insurance | | 256 | | | | | 256 |
| ERISA Bond | | | | | | | |
| **Total Insurance** | **-** | **256** | **-** | **-** | **-** | **-** | **256** |
| | | | | | | | |
| **Taxes** | | | | | | | |
| Franchise Tax, California | | | | | | | |
| Franchise Tax, Delaware | | | | | | | |
| Business Personal Property Tax | | | | | | | |
| Past Due Property Tax | | | | | | | |
| Real Property Tax | | | | | | | |
| **Total Taxes** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | |
| **State and City Licenses** | | | | | | | |
| Agent for Service of Process, California(1) | | | | | | | |
| Agent for Service of Process, Delaware(1) | | | | | | | |
| **Total State and City Licenses** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | |
| **Project Operations** | | | | | | | |
| Site Security (2) | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 |
| Portable Toilet | | 324 | | | | | 324 |
| Site Cleaning/Trash/Bathrooms/Water Removal | | 15,000 | | | | | |
| Utility | | 11,094 | | | | | 11,094 |
| Video Monitoring Security System | | | | | | | |
| Fence Maintenance | | 1,500 | | | | | 1,500 |
| Ground Floor Lighting Equipment/Repair | | | | | | | |
| Hoists (Repair and Maintenance) | | 78,505 | | | | | 78,505 |
| Scaffold Rental | | 8,083 | | | | | 8,083 |
| Trench Plate Rental | | 9,577 | | | | | 9,577 |
| Street Use Permit | | 13,677 | | | | | 2,877 |
| Graffiti Abatement | | | | | | | |
| Barricade Ground Floor Entrances (Stairs & Ramps) | | | | | | | |
| Fire Extinguishers Purchase | | | | | | | |
| LAFD Fees | | | | | | | |
| Razor Wire | | | | | | | |
| Upgrade Fire Suppression System (3) | | | | | | | |
| Storm Water Pollution Prevention Plan Annual Fee | | | | | | | |
| **Total Project Operations** | **32,760** | **170,520** | **32,760** | **32,760** | **32,760** | **32,760** | **144,720** |
| | | | | | | | |
| **Professional Fees** | | | | | | | |
| Chief Restructuring Officer | | 50,000 | | | | | 50,000 |
| Financial Advisor | | 60,000 | | | | | 60,000 |
| Valuation Report | | | | | | | |
| Legal Services - Bankruptcy | | 350,000 | | | | | 300,000 |
| Claim Agents | | | | | | | |
| Legal Services - Construction Litigation | | 55,500 | | | | | 55,500 |
| Legal Services - Employment | | 1,000 | | | | | 1,000 |
| Legal Services - Land Use | | | | | | | |
| Legal Services - Other | | | | | | | |
| Payroll Tax Service | | 1,500 | | | | | 1,500 |
| Real Estate Broker | | | 50,000 | | | | 50,000 |
| Tax Consultant | | | | | | | |
| US Trustee Fee | | | | | | | |
| **Total Professional Fees** | **-** | **518,000** | **50,000** | **-** | **-** | **-** | **518,000** |
| | | | | | | | |
| **Others** | | | | | | | |
| Contingency | 30,000 | 30,000 | 30,000 | 30,000 | 25,000 | 25,000 | 25,000 |
| Interest Reserve | | | | | | | |
| **Total Others** | **30,000** | **30,000** | **30,000** | **30,000** | **25,000** | **25,000** | **25,000** |
| | | | | | | | |
| **Total** | **62,860** | **768,986** | **113,360** | **113,425** | **57,860** | **107,370** | **689,176** |

le Plaza LLC
et Draft

| (All amounts in dollars) | 8/2 - 8/8 | 8/9 - 8/15 | 8/16 - 8/22 | 8/23 - 8/29 | 8/30 - 9/5 | 9/6 - 9/12 | 9/13 - 9/19 |
|---|---|---|---|---|---|---|---|
| **Payroll and Supplies** | | | | | | | |
| Payroll and Payroll Benefits | 50,565 | - | 49,510 | 500 | 50,565 | - | 49,510 |
| Office Supplies & Licenses | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Bank Fees | | | | | 600 | | |
| **Total Payroll and Supplies** | **50,665** | **100** | **49,610** | **600** | **51,265** | **100** | **49,610** |
| | | | | | | | |
| **Insurance** | | | | | | | |
| Liability Insurance | | | | | | | |
| Building Insurance (4) | | | | | | | |
| Earthquake Insurance (4) | | | | | | | |
| Directors and Officers/Employee Liability | | | | | | | |
| Worker's Comp Insurance | | | | | 256 | | |
| ERISA Bond | | | | | | | |
| **Total Insurance** | **-** | **-** | **-** | **-** | **256** | **-** | **-** |
| | | | | | | | |
| **Taxes** | | | | | | | |
| Franchise Tax, California | | | | | | | |
| Franchise Tax, Delaware | | | | | | | |
| Business Personal Property Tax | | | | | | | |
| Past Due Property Tax | | | | | | | |
| Real Property Tax | | | | | | | |
| **Total Taxes** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | |
| **State and City Licenses** | | | | | | | |
| Agent for Service of Process, California(1) | | | | | | | |
| Agent for Service of Process, Delaware(1) | | | | | | | |
| **Total State and City Licenses** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | |
| **Project Operations** | | | | | | | |
| Site Security (2) | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 | 32,760 |
| Portable Toilet | | | | | 324 | | |
| Site Cleaning/Trash/Bathrooms/Water Removal | | | | | | | |
| Utility | | | | | 11,094 | | |
| Video Monitoring Security System | | | | | | | |
| Fence Maintenance | | | | | 1,500 | | |
| Ground Floor Lighting Equipment/Repair | | | | | | | |
| Hoists (Repair and Maintenance) | | | | | 78,505 | | |
| Scaffold Rental | | | | | 8,083 | | |
| Trench Plate Rental | | | | | 9,577 | | |
| Street Use Permit | | | | | 13,677 | | |
| Graffiti Abatement | | | | | | | |
| Barricade Ground Floor Entrances (Stairs & Ramps) | | | | | | | |
| Fire Extinguishers Purchase | | | | | | | |
| LAFD Fees | | | | | | | |
| Razor Wire | | | | | | | |
| Upgrade Fire Suppression System (3) | | | | | | | |
| Storm Water Pollution Prevention Plan Annual Fee | | | | | | | |
| **Total Project Operations** | **32,760** | **32,760** | **32,760** | **32,760** | **155,520** | **32,760** | **32,760** |
| | | | | | | | |
| **Professional Fees** | | | | | | | |
| Chief Restructuring Officer | | | | | 50,000 | | |
| Financial Advisor | | | | | 60,000 | | |
| Valuation Report | | | | | | | |
| Legal Services - Bankruptcy | | | | | 300,000 | | |
| Claim Agents | | | | | | | |
| Legal Services - Construction Litigation | | | | | 55,500 | | |
| Legal Services - Employment | | | | | 1,000 | | |
| Legal Services - Land Use | | | | | | | |
| Legal Services - Other | | | | | | | |
| Payroll Tax Service | | | | | 1,500 | | |
| Real Estate Broker | | | | | 50,000 | | |
| Tax Consultant | | | | | | | |
| US Trustee Fee | 62,550 | | | | | | |
| **Total Professional Fees** | **62,550** | **-** | **-** | **-** | **518,000** | **-** | **-** |
| | | | | | | | |
| **Others** | | | | | | | |
| Contingency | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Interest Reserve | | | | | | | |
| **Total Others** | **25,000** | **25,000** | **25,000** | **25,000** | **25,000** | **25,000** | **25,000** |
| | | | | | | | |
| **Total** | **170,975** | **57,860** | **107,370** | **58,360** | **750,041** | **57,860** | **107,370** |

le Plaza LLC
t Draft

| (All amounts in dollars) | 9/20 - 9/26 | Total |
|---|---|---|
| **Payroll and Supplies** | | |
| Payroll and Payroll Benefits | 500 | 771,138 |
| Office Supplies & Licenses | 100 | 5,320 |
| Bank Fees | | 3,700 |
| **Total Payroll and Supplies** | **600** | **780,158** |
| | | |
| **Insurance** | | |
| Liability Insurance | | 100,330 |
| Building Insurance (4) | | - |
| Earthquake Insurance (4) | | - |
| Directors and Officers/Employee Liability | | - |
| Worker's Comp Insurance | | 1,694 |
| ERISA Bond | | 150 |
| **Total Insurance** | **-** | **102,174** |
| | | |
| **Taxes** | | |
| Franchise Tax, California | | 9,400 |
| Franchise Tax, Delaware | | 12,536 |
| Business Personal Property Tax | | 3,000 |
| Past Due Property Tax | | - |
| Real Property Tax | | - |
| **Total Taxes** | **-** | **24,936** |
| | | |
| **State and City Licenses** | | |
| Agent for Service of Process, California(1) | | 200 |
| Agent for Service of Process, Delaware(1) | | 700 |
| **Total State and City Licenses** | **-** | **900** |
| | | |
| **Project Operations** | | |
| Site Security (2) | 32,760 | 950,426 |
| Portable Toilet | | 2,134 |
| Site Cleaning/Trash/Bathrooms/Water Removal | | 60,000 |
| Utility | | 71,564 |
| Video Monitoring Security System | | 200,000 |
| Fence Maintenance | | 9,000 |
| Ground Floor Lighting Equipment/Repair | | 29,000 |
| Hoists (Repair and Maintenance) | | 853,029 |
| Scaffold Rental | | 60,457 |
| Trench Plate Rental | | 57,462 |
| Street Use Permit | | 63,339 |
| Graffiti Abatement | | 493,900 |
| Barricade Ground Floor Entrances (Stairs & Ramps) | | 160,000 |
| Fire Extinguishers Purchase | | 40,000 |
| LAFD Fees | | 16,000 |
| Razor Wire | | 100,000 |
| Upgrade Fire Suppression System (3) | | 270,000 |
| Storm Water Pollution Prevention Plan Annual Fee | | - |
| **Total Project Operations** | **32,760** | **3,436,311** |
| | | - |
| **Professional Fees** | | |
| Chief Restructuring Officer | | 350,000 |
| Financial Advisor | | 395,000 |
| Valuation Report | | - |
| Legal Services - Bankruptcy | | 2,200,000 |
| Claim Agents | | 50,000 |
| Legal Services - Construction Litigation | | 372,000 |
| Legal Services - Employment | | 8,000 |
| Legal Services - Land Use | | 40,000 |
| Legal Services - Other | | - |
| Payroll Tax Service | | 7,500 |
| Real Estate Broker | | 325,000 |
| Tax Consultant | | 50,000 |
| US Trustee Fee | | 126,550 |
| **Total Professional Fees** | **-** | **3,924,050** |
| | | |
| **Others** | | |
| Contingency | 25,000 | 918,413 |
| Interest Reserve | | - |
| **Total Others** | **25,000** | **918,413** |
| | | |
| **Total** | **58,360** | **9,186,943** |

(1) Includes payments for the immediate parent entity, Oceanwide Real Estate Group (USA) Corp., and subsidiaries, Oceanwide Plaza I LLC and Oceanwide Plaza II LLC.

(2) Executive Event Services (EES) provides two guards 24-7 at $2,473.50 per day, $3,710.25 per holiday.  They will be on duty from February 26, 2024 through at least April 30, 2024.  From May 1, 2024 and after, we assume an estimated six guards 24-7 at $32.5 per hour with EES.

(3) Required by the LA Fire Department in the event of fire. Additionally required by insurance company to provide building insurance.

(4) The Debtor's broker is still obtaining quotes for building and earthquake insurance. Pursuant to the Court's Interim Order [Docket No. 176, para.4], the Debtor will ask to include into the Final Order a provision that reads, "The Debtor is authorized to amend the Final Budget solely to include additional payments for insurance costs upon either (a) receipt of written consent from the DIP Lender, LADI, the United States Trustee, and Los Angeles County to include such additional payments in the Final Budget, or (b) further order of the court authorizing the inclusion of such additional payments in the Final Budget (such order to be entered following an emergency hearing conducted (subject to the Court's availability) on not less than twenty-four hours' notice to the DIP Lender, LADI, the United States Trustee, Los Angeles County and Los Angeles City)."

(5) This budget does not include the Interest Reserve which is estimated at around $138,000 based on current cash draw schedule of the budget.

(6) Loan Expenses are defined in the loan agreement and are also accruing.