**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:      (310) 576-2100
Facsimile:      (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
*jarret.hitchings@bclplaw.com*
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone      (704) 749-8999
Facsimile:      (704) 749-8990

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Oceanwide Plaza LLC,<br><br>               Debtor. | Case No.: 2:24-bk-11057-DS<br><br>Hon. Deborah J. Saltzman<br><br>Chapter 11 Case<br><br>**NOTICE OF FILING (I) DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT, (II) DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED SEPTEMBER 4, 2024), (III) REVISED PROPOSED ORDER; AND (IV) RELATED EXHIBITS**<br><br>Continued Hearing:<br>Date:    September 5, 2024<br>Time:    1:00 p.m.<br>Place:    Courtroom 1639<br>         255 E. Temple St.<br>         Los Angeles, CA 90012 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  **TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY**

2  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND**

3  **OTHER PARTIES-IN-INTEREST:**

4      **PLEASE TAKE NOTICE** that on July 10, 2024, Oceanwide Plaza LLC (the "Debtor")

5  filed its *Debtor's Notice Of Motion And Motion For Order: (1) Approving Disclosure Statement*

6  *Describing Debtor's Liquidating Plan Of Reorganization (Dated July 10, 2024); (2) Establishing*

7  *Voting, Plan Confirmation, And Other Procedures; (3) Scheduling Plan Confirmation Hearing And*

8  *Setting Other Related Dates And Deadlines; And (4) Providing Other Ancillary And Related Relief;*

9  *Memorandum Of Points And Authorities In Support Thereof* (the "Motion to Approve Disclosure

10  Statement") [ECF No. 325].  Debtor submitted a proposed order as Exhibit 1 to the Motion to

11  Approve Disclosure Statement (the "First Proposed Order").

12      **PLEASE TAKE FURTER NOTICE** that on July 10, 2024, Debtor filed its *Disclosure*

13  *Statement Describing Debtor's Liquidating Plan of Reorganization (Dated July 10, 2024)* [ECF

14  No. 328] (the "Disclosure Statement") and the corresponding *Debtor's Liquidating Plan of*

15  *Reorganization (Dated July 10, 2024)* [ECF No. 329] (the "Plan");

16      **PLEASE THAT FURTHER NOTICE** that on July 26, 2024, the United States

17  Bankruptcy Court for the Central District of California (the "Court") directed on the record during

18  a status conference that the Debtor file any supplement to the Disclosure Statement by August 19,

19  2024, *see* ECF No. 327 (providing notice of amended deadlines, the "Amended Disclosure

20  Statement Hearing Notice");

21      **PLEASE TAKE FURTHER NOTICE** that the Debtor filed its *Notice Of Filing (I)*

22  *Debtor's Supplemental Disclosure Statement, (II) Debtor's Supplemental Liquidating Plan Of*

23  *Reorganization (Dated August 19, 2024), And (III) Related Exhibits* (the "First Supplement") on or

24  about August 19, 2024. [ECF 387].

25      **PLEASE TAKE FURTHER NOTICE** that after receiving objections to the Disclosure

26  Statement and the First Supplement, Debtor made additional revisions to the Disclosure Statement,

27  Plan and Proposed First Order to address most of the filed objections and after discussions with the

28  objecting creditors.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

1

NOTICE OF FILING (I) DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT, (II) DEBTOR'S SECOND AMENDED
LIQUIDATING PLAN OF REORGANIZATION (DATED SEPTEMBER 4, 2024), (III) REVISED PROPOSED ORDER; AND (IV) RELATED
EXHIBITS

1    **PLEASE TAKE FURTHER NOTICE** that the revisions to the Disclosure Statement and

2    the Plan are attached hereto as **Exhibit A** (the "Second Amended Disclosure Statement" and the

3    "Second Amended Plan").

4    **PLEASE TAKE FURTHER NOTICE** that redline comparison versions of the Second

5    Amended Disclosure Statement and the Second Amended Plan showing amendments to the First

6    Supplemental Disclosure Statement and Plan are attached hereto as **Exhibit B**.

7    **PLEASE TAKE FURTHER NOTICE** that the revisions to the First Proposed Order is

8    attached hereto as **Exhibit C** (the "Proposed Order").

9    **PLEASE TAKE FURTHER NOTICE** that redline comparison versions of the Proposed

10   Order to the First Proposed Order is attached hereto as **Exhibit D**.

11   **PLEASE TAKE FURTHER NOTICE** that consistent with the Amended Disclosure

12   Statement Hearing Notice, the Debtor intends to seek approval of the Amended Disclosure

13   Statement and relied relief on September 5, 2024, at 1:00 p.m., before the Honorable Deborah J.

14   Saltzman, United States Bankruptcy Judge, in Courtroom 1639 of the United States Bankruptcy

15   Court for the Central District of California (the "Court") at 255 E. Temple Street, Los Angeles,

16   California 90012.

17

18   Dated: September 4, 2024                    BRYAN CAVE LEIGHTON PAISNER LLP

19                                               By: */s/ Sharon Z. Weiss*

20                                                   Sharon Z. Weiss
                                                     Attorneys for Debtor and Debtor-in-Possession

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# EXHIBIT A

1   **BRYAN CAVE LEIGHTON PAISNER LLP**
    Sharon Z. Weiss (State Bar No.: 169446)
2   sharon.weiss@bclplaw.com
    120 Broadway, Suite 300
3   Santa Monica, CA 90401-2386
    Telephone: (310) 576-2100
4   Facsimile: (310) 576-2200

5
    Jarret P. Hitchings (*Admitted Pro Hac Vice*)
6   jarret.hitchings@bclplaw.com
    One Wells Fargo Center
7   301 S. College Street, Suite 2150
    Charlotte, NC 28202
8   Telephone: (704) 749-8999
    Facsimile: (704) 749-8990
9

10  *Attorneys for Debtor and Debtor in Possession*

11

12                  **UNITED STATES BANKRUPTCY COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14                       **LOS ANGELES DIVISION**

15  In re                               Case No. 2:24-bk-11057-DS

16  Oceanwide Plaza LLC,                 Chapter 11

17              Debtor.                  **DEBTOR'S SECOND AMENDED**
                                         **DISCLOSURE STATEMENT DESCRIBING**
18                                       **DEBTOR'S LIQUIDATING PLAN OF**
                                         **REORGANIZATION (DATED SEPTEMBER 4,**
19                                       **2024)**

20
                                         <u>Disclosure Statement Hearing</u>
21                                       Date:   September 5, 2024
                                         Time:   1:00 p.m.
22                                       Place:  Ctrm 1634/Via Zoom
                                                 255 East Temple Street
23                                               Los Angeles, CA 90012

24
                                         <u>Plan Confirmation Hearing</u>
25                                       Date:   October 16, 2024
                                         Time:   10:00 a.m.
26                                       Place:  Ctrm 1634/Via Zoom
                                                 255 East Temple Street
27                                               Los Angeles, CA 90012

28

**TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................... iii

DISCLAIMER ............................................................................................................. 1

I.    INTRODUCTION ............................................................................................. 2

II.   BACKGROUND .............................................................................................. 4

    A.   Description and History of Debtor's Business and a Summary of the
        Circumstances Which Led to the Filing of this Case. ........................... 4

        Debtor's Business Operations ................................................................ 4

        Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize ...... 6

        The Webcor Litigation .......................................................................... 7

        Debtor Is Working With LA City As A Result of International Attention
        Causing Security Issues ......................................................................... 8

    B.   Pre-Petition Financing Arrangements ................................................... 9

    C.   Events During Debtor's Chapter 11 Case. ........................................... 10

        a.    Employment of Professionals and Consultants ..................... 10

        b.    Claims Bar Date .................................................................... 10

        c.    Summary of Scheduled and Filed Claims .............................. 11

            i.    Secured Claims ........................................................ 11

            ii.    Priority Tax Claims ................................................. 11

            iii.   Non-Tax Priority Claims ........................................ 11

            iv.   General Unsecured Claims ..................................... 11

            v.    Intercompany Loans ............................................... 11

        d.    DIP Financing ....................................................................... 12

        e.    Limited Relief from Stay Regarding the State Court Action ... 13

        f.    U.S. Trustee's Motion to Dismiss Denied .............................. 14

        g.    Settlement-Efforts / Mediation With Consulting Parties ........ 14

        h.    Bidding Procedures / Sale of Property ................................... 14

III.  PLAN SUMMARY ........................................................................................ 16

IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS. ..... 19

    A.   What Creditors and Interest Holders Will Receive Under the Plan. ...... 19

    B.   Unclassified Claims. .......................................................................... 20

        1.    DIP Facility Claims .............................................................. 20

        2.    Administrative Claims. ......................................................... 20

        3.    Professional Fee Claims. ....................................................... 20

        4.    Priority Tax Claims. ............................................................. 21

        5.    Statutory Fees. ...................................................................... 21

    C.   Means of Effectuating and Implementing the Plan. ............................. 22

        1.    Funding for the Plan. ............................................................ 22

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

i

|        | 2.   | Sale of the Property. | 22 |
|        | 3.   | Liquidation of Plan Administration Assets. | 22 |
|        | 4.   | Transfer to the Liquidating Trust. | 23 |
|        | 5.   | Causes of Action. | 23 |
|        | 6.   | Composition of Debtor Post-Confirmation. | 23 |
|        | 7.   | Distribution Agent. | 23 |
|        | 8.   | Employment of Professionals by the Liquidating Trustee. | 24 |
|        | 9.   | Protocol for the Liquidation of Disputed Claims. | 24 |
|        | 10.  | Exemption from Transfer Taxes. | 25 |
|        | 11.  | Distributions to Be Made Pursuant to the Plan. | 26 |
|        | 12.  | Injunctions. | 27 |
|        | 13.  | Exculpation. | 27 |
|        | 14.  | Executory Contracts and Unexpired Leases. | 28 |
|        | 15.  | Retention of Jurisdiction. | 31 |
| V.     | TAX CONSEQUENCES OF THE PLAN. | | 33 |
| VI.    | CONFIRMATION REQUIREMENTS AND PROCEDURES. | | 34 |
|        | A.   | Who May Object. | 34 |
|        | B.   | Who May Vote to Accept or Reject the Plan. | 35 |
|        | C.   | What is an Allowed Claim or Interest? | 35 |
|        | D.   | What is an Impaired Claim or Interest? | 35 |
|        | E.   | Who is Not Entitled to Vote. | 36 |
|        | F.   | Who Can Vote in More Than One Class. | 36 |
|        | G.   | Votes Necessary to Confirm the Plan. | 36 |
|        | H.   | Votes Necessary for a Class to Accept the Plan. | 36 |
|        | I.   | Treatment of Non-Accepting Classes. | 37 |
|        | J.   | Liquidation Analysis. | 37 |
|        | K.   | Feasibility. | 39 |
| VII.   | RISK FACTORS REGARDING THE PLAN. | | 40 |
| VIII.  | EFFECT OF CONFIRMATION OF THE PLAN. | | 40 |
|        | A.   | Discharge. | 40 |
|        | B.   | Modification of the Plan. | 40 |
|        | C.   | Post-Confirmation Status Reports. | 41 |
|        | D.   | Post-Confirmation Conversion/Dismissal. | 41 |
|        | E.   | Final Decree. | 41 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
   554 U.S. 33 S. Ct. 2326, 171 L. Ed. 2d 203 (2008) ................................................ 27

*In re New 118th, Inc.*,
   398 B.R. 791 (Bankr. S.D.N.Y. 2009) ..................................................................... 27

**Statutes**

11 U.S.C. § 105 ............................................................................................................. 2, 31

11 U.S.C. § 326 ................................................................................................................... 37

11 U.S.C. § 346 ................................................................................................................... 31

11 U.S.C. § 362 ................................................................................................................... 13

11 U.S.C. § 363 ................................................................................................................... 31

11 U.S.C. § 365(d)(4) ......................................................................................................... 32

11 U.S.C. § 502(d) .............................................................................................................. 31

11 U.S.C. § 505 ................................................................................................................... 31

11 U.S.C. § 507(a)(2) .................................................................................................... 23, 35

11 U.S.C. § 507(a)(3) .......................................................................................................... 35

11 U.S.C. § 507(a)(8) .................................................................................................... 24, 35

11 U.S.C. § 542 ................................................................................................................... 31

11 U.S.C. § 551 ................................................................................................................... 31

11 U.S.C. § 553 ................................................................................................................... 31

11 U.S.C. § 1112(b) ...................................................................................................... 13, 40

11 U.S.C. § 1123 ................................................................................................................. 31

11 U.S.C. § 1123(a)(1) ........................................................................................................ 16

11 U.S.C. § 1125 ................................................................................................................... 2

11 U.S.C. § 1129 ................................................................................................................... 3

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

11 U.S.C. § 1129(a)(8) ........................................................................................ 36

11 U.S.C. § 1129(a)(9)(C) .............................................................................. 24, 27

11 U.S.C. § 1129(b) ........................................................................................... 36

11 U.S.C. § 1141 ................................................................................................ 31

11 U.S.C. § 1146 ................................................................................................ 31

11 U.S.C. § 1146(a) ............................................................................... 27, 31, 37

28 U.S.C. § 1930(a) ........................................................................................... 24

28 U.S.C. § 1930(a)(6) ...................................................................................... 41

31 U.S.C. § 3717 ............................................................................................... 24

Cal. Civ. Code § 8800 ......................................................................................... 7

Cal. Rev. & Tax. Code §11911 ......................................................................... 27

Cal. Rev. & Tax. Code § 11923 ................................................................... 27, 37

LAMC § 21.9.2(a) ............................................................................................. 27

LAMC § 21.9.2(b) ............................................................................................. 27

LAMC § 21.9.6 ........................................................................................... 27, 37

**Other Authorities**

Fed. R. Bankr. P. 3019 ......................................................................................... 4

Fed. R. Bankr. P. 3022 ....................................................................................... 40

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

iv

**DISCLAIMER**

THIS SECOND AMENDED DISCLOSURE STATEMENT[1] (THE "DISCLOSURE STATEMENT") WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS, AND IS NOT INTENDED TO BE, AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR TO BE ADMISSIBLE IN ANY PROCEEDING INVOLVING DEBTOR OR ANY OTHER PARTY, OR TO BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

UNLESS OTHERWISE INDICATED HEREIN, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO

---

[1] Debtor filed its initial Disclosure Statement on July 10, 2024 [ECF No. 328] and its Supplement to its Disclosure Statement on August 19, 2024 [ECF 387]. This Second Amended Disclosure Statement is filed as of September 4, 2024 and includes additional information not available at the time of filing the initial Disclosure Statement and the Supplement to the Disclosure Statement.  In order to provide information in one document, this Supplement replaces the initial Disclosure Statement and Supplemental Disclosure Statement.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS DISCLOSURE STATEMENT OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING DEBTOR OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR EQUITY INTEREST. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b), AND NOT IN ACCORDANCE WITH FEDERAL, OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. SEE SECTION VII BELOW, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED" FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN'S CONSIDERATION.

## I.    INTRODUCTION

Debtor Oceanwide Plaza LLC (the "Debtor") is a chapter 11 debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Case") provides the following disclosure statement (the "Disclosure Statement") pursuant to Sections 105, 1125, and 1129[2] of the Bankruptcy Code. This case was initiated on February 13, 2024 (the "Petition Date"), by the filing of an involuntary petition for relief against Debtor (the "Involuntary Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (this "Court") by Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc.,

---

[2] References to sections shall refer to Title 11 of the United States Code ("Bankruptcy Code"), unless otherwise referenced.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  Woodbridge Glass Inc., and Mitsubishi Electric US, Inc. (collectively, the "Petitioning Creditors").

2  On March 8, 2024, Debtor filed its *Answer* [ECF No. 27] to the Involuntary Petition and consented

3  to entry of an order for relief. On March 11, 2024 (the "Relief Date"), the clerk of the Court entered

4  the *Order for Relief* [ECF No. 29] (the "Relief Order").

5      This document is the Disclosure Statement which describes Debtor's Liquidating Plan of

6  Reorganization ("Plan"). October 8, 2024 (the "Voting Deadline"), is the last date by which ballots

7  accepting or rejecting the Plan must be received by counsel for the Debtor. Ballots must be

8  delivered in one of the following manners so that the Ballot is received by Debtor's Solicitation

9  Agent by mail at Oceanwide Plaza LLC Ballot Processing c/o Stretto 410 Exchange, Suite 100,

10  Irvine    CA    92602    or    electronically    under    the    "File    a    Ballot"    tab    at

11  https://cases.stretto.com/OceanwidePlaza/.

12      Chapter 11 of the Bankruptcy Code allows the debtor, and under some circumstances,

13  creditors, and other parties-in-interest, to propose a plan of reorganization. The Plan is a liquidating

14  plan that contemplates the sale of substantially all of Debtor's assets. After the Plan is fully

15  administered, Debtor will be dissolved. The Plan provides for the closing of the sale of Debtor's

16  Property, as defined below (the "Sale"), on or before the Effective Date, as defined below. The

17  Effective Date of the Plan ("Effective Date") will occur when the following conditions to the

18  effectiveness of the Plan have been satisfied or waived by Debtor: (a) the Plan and all documents,

19  instruments, and agreements to be executed in connection with the Plan shall have been executed

20  and delivered by all parties to such documents, instruments, and agreements; (b) the Plan shall not

21  have been materially altered, amended or modified; (c) there shall be no ruling, judgment, or

22  ordered preventing or prohibiting the consummation of the Sale; and (d) the Sale has been closed

23  and consummated. The sale of the Property will provide the primary means for the implementation

24  of the Plan. All capitalized terms used in this Disclosure Statement are defined in the Plan and shall

25  be deemed to have the same definition as used in the Plan.

26      This Disclosure Statement contains, among other things, (i) a discussion of some of

27  Debtor's history and business, (ii) a summary of some of the events leading to this Case, (iii) the

28  goal of the Case, (iv) risk factors associated with this Case, (v) a summary and analysis of the Plan,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1    and (vi) certain other related matters. Debtor is the proponent of the Plan within the meaning of

2    Section 1129.

3        Copies of this Disclosure Statement, the Plan, and all other documents related to this Case

4    are available for review without charge through Debtor's Notice and Claims Agent at

5    https://cases.stretto.com/oceanwideplaza/ and with charge at https://www.pacer.gov/.

6        ALL HOLDERS OF CLAIMS AGAINST DEBTOR ARE ENCOURAGED TO READ

7    THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, AND TO CONSULT WITH AN

8    ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN, SUBJECT TO

9    CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127,

10   BANKRUPTCY RULE 3019, AND IN THE PLAN, DEBTOR RESERVES THE RIGHT TO

11   ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN, OR ANY PART

12   THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION. IF THERE ARE ANY

13   INCONSISTENCIES BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE

14   TERMS OF THE PLAN WILL GOVERN.

15                    **II.    BACKGROUND**

16   **A.    Description and History of Debtor's Business and a Summary of the**

17   **Circumstances Which Led to the Filing of this Case.**

18       **Debtor's Business Operations**

19   1.      Debtor, a Los-Angeles based real estate developer, is an American subsidiary of a

20   global Chinese conglomerate. Oceanwide Real Estate Group (USA) Corp. ("OREG"), a Delaware

21   corporation, is Debtor's sole member and its manager. Debtor is part of a corporate family

22   consisting of other senior limited liability companies and is indirectly owned by Oceanwide

23   Holdings Co. Ltd, ("Oceanwide Holdings"), in Beijing, China. Debtor's relevant corporate affiliates

24   are shown on **Exhibit 1.**

25   2.      Debtor was organized in 2013 to purchase a block in downtown Los Angeles across

26   from then Staples Center (now Crypto.com Arena), bounded by Figueroa, Flower, 11th and 12th

27   Streets (generally, the "Real Property"). Debtor purchased the Real Property that year for $174

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

4

million. At the time, the Real Property consisted of an asphalt parking lot and a small two-story building.

3.      The Debtor owns Oceanwide Plaza (the "Project"), an approximately 60-percent complete mixed-use development project in downtown Los Angeles. The Project is situated on the Real Property.

4.      In connection with the Project, Debtor additionally acquired certain personal property which is both located at the Real Property and in possession of third parties (the "Personal Property", and together with the Real Property, the "Property").

5.      The Project is across from Crypto.com Arena and consists of three uncompleted high-rise residential towers: two towers are 42 stories tall, and the other is 55 stories tall which includes a planned 11-story hotel. Each tower is built on a 6-story podium, consisting of parking, retail, dining, and office space, and a planned 2-story-high LED screen wrapped around the podium's Figueroa, 11th, and 12th street facades. The Project's external construction is largely complete, but portions of the Project's internal construction is unfinished.

6.      The Project is part of the Los Angeles Sports and Entertainment District, which includes the Convention Center, Crypto.com Arena, LA Live, and the two 30-plus story Circa luxury apartment towers at 12th and Figueroa Streets. It is also part of a broader plan and long-standing goal of the City of Los Angeles ("LA City") to develop this section of downtown Los Angeles into a Times Square-like destination zone with multi-story LED screens, entertainment venues, and night-time dining and clubs.

7.      Debtor's pre-petition funding arrangements are set forth in Section B below.  For purposes of this Section and context, prior to the Petition Date, Debtor largely self-funded Project construction.  However, for short-term needs, L.A. Downtown Investment LP ("LADI") provided Oceanwide with up to $325,000,000 in construction financing (the "Loan"). LADI disbursed $136.5 million to Oceanwide, and Oceanwide re-paid $11 million in principal, reducing the principal owed to $125.5 million.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

5

8.      In 2014, Debtor hired RTKL Associates, Inc., now known as CallisonRTKL Inc., as its architect, and Lendlease (US) Construction, Inc. ("Lendlease") as construction manager, to begin work on the Project and entered into separate contracts with them.

9.      In 2015, the existing structure and parking lot were demolished, and excavation began. Debtor hired Swinerton Management Consulting ("Swinerton") to manage the construction phase and supervise a general contractor.

10.     In 2016, after a bidding process, Debtor hired Lendlease as its general contractor to construct the Project and Lendlease then hired over forty subcontractors.

11.     In March 2018, the Project "topped-out": the high-rise towers were finished to their top floors. Shortly thereafter, Debtor began loan negotiations with JPMorgan Chase Bank, N.A. for a $1.1 billion loan facility. These negotiations continued into 2019 but were ultimately not successful.

**Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize**

12.     In November 2018, Debtor began to have difficulty obtaining additional capital transfers from its affiliates in China. Debtor believes that these funding difficulties arose for several reasons, including regulatory restrictions by the Chinese government on current transfers and other macro-economic conditions.

13.     Debtor understands that as a result of its capital challenges, Lendlease demobilized most of its subcontractors by mid- January 2019, but continued to perform a small amount of work.

14.     Without access to capital, Debtor then pursued three alternative plans beginning in later January 2019: 1) find alternative construction financing to complete the Project, 2) enter into a joint venture agreement to complete the Project, or 3) sell the Project.

15.     Debtor attempted to obtain alternative construction financing from January 2019 to September of 2020, but was unable to close on such financing. Debtor believes that its efforts to obtain alternative financing were negatively impacted by the COVID-19 pandemic and related economic slowdown, which impacted both national and global lending markets.

16.     Debtor then shifted to primarily focus on selling the Project in May 2021. Prior to the Petition Date, Debtor was in serious negotiations with two potential purchasers who were in the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

process of conducting due diligence; one who signed a Letter of Intent ("LOI") in August 2023 and the other who signed a LOI in September 2023.

### The Webcor Litigation

17.    Because Debtor failed to pay contractors, they recorded mechanic's liens on the Real Property. On January 31, 2019, a Lendlease subcontractor, Webcor Construction, LP, ("Webcor") sued to foreclose on its mechanic lien in Los Angeles Superior Court case number 19STCV03357 (the "State Court Action")[3], the first of 44 foreclosure cases filed against Oceanwide or Lendlease, including Lendlease suing Oceanwide. Lendlease and 27 contractors also sued LADI for a judgment holding their liens were superior to LADI's deed of trust; and Lendlease and 7 contractors also named LADI's title insurance company, Chicago Title Insurance Company ("CTIC"). Webcor also sued for declaratory relief that LADI's deed of trust is invalid and unenforceable. LADI and CTIC cross-sued Lendlease. All of these cases were consolidated into the State Court Action.

18.    On March 22, 2023, the Superior Court resolved a threshold issue on cross-motions, holding LADI's Deed of Trust was senior to the contractors' mechanic's liens. The Superior Court then trifurcated the State Court Action into three trials, which are known as Phase One, Phase Two, and Phase Three. Phase Two was later continued to after Phase Three.  A final judgment will be entered incorporating each phase's rulings after the last trial.

19.    In the Phase One trial, the Superior Court ruled Debtor owes Lendlease: (1) $465,494.23 under Lendlease's 2014 contract with Debtor; (2) $2,512,743 for interest due through October 2, 2019 under its 2016 contract with Debtor; (3) prompt payment penalties of $121,866,906 as of on or about March 14, 2024 under California Civil Code section 8800; and (4) $118,482,627, an aggregate amount stipulated by Debtor and Lendlease as owed by Debtor for the reasonable value of work performed by Lendlease and subcontractors except Webcor.

20.    In the Phase Three trial, the Superior Court ruled Debtor owes Lendlease $51 million for the reasonable value of work performed by Webcor.

---

[3]    The description of the State Court Action provided in this Disclosure Statement is intended as a summary only and not intended to be a complete description of all matters asserted and addressed in the State Court Action.

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

21.     The Phase Two trial involves Lendlease's and other subcontractors' challenges to the validity of LADI's Deed of Trust, LADI's and CTIC's cross-claims against Lendlease, and LADI's attempt to reduce Lendlease's lien. More specifically, Lendlease and certain subcontractors assert LADI's underlying loan is invalid because LADI and Debtor are one entity and raise certain other fraud-based claims against LADI. LADI, in turn, asserts Lendlease and its subcontractors subordinated their lien rights to LADI's deed of trust.  Trial was set for June 2024, but was stayed (and vacated) when the Involuntary Petition was filed. This Court lifted the stay, effective June 13, 2024, to allow the State Court Action to continue through final judgment and appeals, and the Phase Two trial is set to start on October 28, 2024.

**Debtor Is Working With LA City As A Result of International Attention Causing Security Issues**

22.     Oceanwide originally garnered international attention for its scale and ambition, its expected substantial economic impact on downtown Los Angeles, creating jobs and boosting the local economy.  It later drew a different kind of focus.

23.     Despite Debtor's lack of funds pre-petition, its security service agreed to provide two guards on a 24/7 full time basis.  There were recent notable incidents, however, in the first quarter of 2024 involving graffiti and base jumping, including a group of graffiti artists and base jumpers that illegally accessed the unfinished skyscraper. These incidents were widely covered in the media and heighted the need for immediate security measures.

24.     On February 9, 2024, the Los Angeles City Council unanimously adopted a resolution stating the Project "has been a blight on Downtown Los Angeles' South Park neighborhood," noting criminal activity had "increased exponentially" in early 2024, including trucks ramming into the Project's gates and driving into the building to facilitate copper wire theft, trespassers climbing hundreds of feet to tag windows with graffiti, and individuals base jumping from the top floor of the Project. LA City also issued an abatement notice ordering Debtor to remove the graffiti and secure the property.  Debtor was unable to comply with the abatement orders due to its lack of funds and the City Council voted to allot nearly $4 million to remove graffiti and secure the Property.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

25.    Since February 1, 2024, the Los Angeles Police Department has had a constant presence at the site. It had allocated significant manpower to this effort to hold the perimeter of the property.  It began installing a 14-foot high, stagger-perforated steel-sheet fence (i.e., anti-climb fencing) around the Project on February 23, 2024, and started to installed razor wire in an area deemed particularly prone to breach.

26.    Debtor took over these security efforts once it secured DIP Financing.

27.    As noted above, Lendlease and four other creditors filed an involuntary bankruptcy petition against Debtor on the Petition Date.

28.    Through the DIP Financing, described below, Debtor is working with LA City to safeguard the Property, pay the cost of security, increased to six 24/7 private security guards, and implement other security measures to prevent trespassing such as the installation of razor wire and blocking off entrances to protect the Property and reduce access for potential trespassers.

**B.    Pre-Petition Financing Arrangements**

31.    Debtor has self-funded construction of the Project with approximately $956.6 million in capital transfers and received approximately $118.4 million in inter-company loans (summarized below).  The capital transfers made up about 80% of the funding.

32.    For short-term needs, and as noted above, Debtor obtained a credit line with a $325 million limit from LADI. Debtor understands that LADI is an investment vehicle deployed under the federal government's EB-5 Immigrant Investor visa program. The credit line extended by LADI (generally, the "EB-5 Loan") is evidenced by a $325 million *Promissory Note* which is secured by a *Deed of Trust* in favor of LADI (the "EB-5 Deed of Trust"). Debtor understands that LADI recorded the EB-5 Deed of Trust against the Property in 2015 to secure repayment of any disbursements under the EB-5 Loan.

33.    LADI has disbursed approximately $136.5 million to Oceanwide. Oceanwide re-paid $11 million of the principal, reducing the principal amount of the debt to $125.5 million, which together with interest, late fees, etc., remains outstanding.

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

34.     In sum, between the self-funded capital transfers and intercompany loans, and the EB-5 Loan disbursements made by LADI, Debtor has invested approximately $1.20 billion in the Project's construction:

| Capital and Debt | Amount |
|---|---|
| *Capital Transfer* | |
| China Oceanwide Holdings Limited | $956,527,033.22 |
| **Subtotal** | **$956,527,033.22** |
| *Debt* | |
| L.A. Downtown Investment LP | $136,500,000.00 |
| Oceanwide Real Estate Group (USA) Corp. | $95,000,000.00 |
| Oceanwide Investment Three (Hungry) Limited Liability Company | $23,400,000.00 |
| **Subtotal** | **$254,900,000.00** |
| **TOTAL** | **$1,211,427,033.22** |

**C.     Events During Debtor's Chapter 11 Case.**

*a.     Employment of Professionals and Consultants*

Debtor has employed, and the Court has authorized the employment of, the following professionals: Bryan Cave Leighton Paisner, LLP ("BCLP") as chapter 11 bankruptcy counsel [ECF No. 298]; Stretto, Inc. ("Stretto") as claims, noticing and solicitation agent ("Claims and Noticing Agent") [ECF No. 315]; Bradley Sharp and Development Specialists, Inc. ("DSI") as Debtor's Chief Restructuring Officer ("CRO") [ECF  No. 306]; B. Riley Advisory Services ("B. Riley") as Financial Advisor [ECF No. 311]; and Colliers International greater Los Angeles, Inc. ("Colliers") and Hilco Real Estate, LLC ("Hilco," and collectively with Colliers, the "Brokers") as real estate brokers [ECF No. 268].

*b.     Claims Bar Date*

At a hearing dated March 29, 2024, and by order of the Court, the Court established a deadline for creditors to file proofs of claim against Debtor. [ECF No. 89]. On April 18, 2024, Debtor submitted its Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No. 159] which provided for a general bar date for creditors of June 26, 2024, and a governmental claim bar date of September 7, 2024.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

*c.*     *Summary of Scheduled and Filed Claims*

Attached as **Exhibit 2** is a chart for each of the claims that Debtor identified in its schedules and each proof of claim with the asserted amount of that claim that has been filed against Debtor along with the amounts and status of each such claim.

Below is a summary of the total scheduled claims by Debtor and the total filed claims by creditors:

i.     <u>Secured Claims</u>

Debtor scheduled a total of approximately $370,730,000 in secured claims, plus super-priority liens granted to DIP Lender in the original principal amount of $9,186,943, plus DIP Lender's reasonable counsel fees and other expenses, and interest. Approximately $372,000,000 in secured claims have been asserted against Debtor in timely filed proofs of claim.

ii.     <u>Priority Tax Claims</u>

Debtor scheduled a total of approximately $145,000 in priority tax claims. Approximately $319,000 in tax priority claims have been asserted against Debtor in timely filed proofs of claim.

iii.     <u>Non-Tax Priority Claims</u>

Debtor has scheduled a total of approximately $60,600 of non-tax priority claims, representing wage claims owed to Debtor's employees. Approximately $79,600 in non-tax priority claims have been asserted against Debtor in timely filed proofs of claim.

iv.     <u>General Unsecured Claims</u>

Debtor scheduled a total of approximately $176,700,000 in non-priority general unsecured claims. Approximately $345,176,000 in non-priority general unsecured claims have been asserted against Debtor in timely filed proofs of claim.  This amount does not include unsecured intercompany loans, which are more fully set out below.

v.     <u>Intercompany Loans</u>

Debtor owes a total of approximately $219,300,000 in intercompany loans, inclusive of interest, which accrued prior to the Petition Date (the "<u>Intercompany Loan Claims</u>"). The intercompany loan claims stem from two loans made to Debtor. First, is a loan which was disbursed in multiple installments from October of 2014 to September of 2015 in the total original principal

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

11

amount of $23.4 million, with annual interest accruing at 11.5%, which is currently held by Oceanwide Investment Three (Hungary) Limited Liability Company.  Second is a loan disbursed in December 2013 in the original principal amount of $95 million, with annual interest accruing at 6.5%, which is currently held by Oceanwide Real Estate Group (USA) Corp.

Debtor's investigation of the Intercompany Loan Claims remains ongoing. To the extent that the allowance of the Intercompany Loan Claims is not resolved on or prior to the Effective Date, the Liquidating Trust will continue any such investigation, and if warranted, prosecute objections to remaining claims. Debtor intends to pay the Allowed Intercompany Loans *in pari passu* with the holders of General Unsecured Claims.

d.      *DIP Financing*

The ability of Debtor to continue to protect and maintain the Property during the pendency of this Case was dependent on Debtor acquiring post-petition financing. Debtor filed a *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay and (IV) Scheduling a Final Hearing* [ECF No. 40] (the "DIP Financing Motion") on March 12, 2024. Debtor initially sought a $10 million dollar secured credit facility ("DIP Financing") from B.H. Capital Ventures, LLC (the "Original DIP Lender"), priming prepetition secured creditors, including, among others, LADI, Lendlease and the County of Los Angeles. Debtor set the DIP Financing Motion for an emergency hearing for March 14, 2024 (the "Initial DIP Hearing").

Prior to the Initial DIP Hearing, Debtor received (i) three objections to the DIP Financing Motion filed by the County of Los Angeles ("LA County") [ECF No. 59] Lendlease [ECF No. 50], and LADI [ECF No. 54], (ii) one joinder filed by petitioning creditor Woodbridge Glass Inc. [ECF No. 51], and (iii) informal comments from the Office of the United States Trustee (the "US Trustee"). Debtor eventually selected DTLA Lending LLC as the lender for the DIP Financing (the "DIP Lender") and the Court eventually authorized Debtor to borrow on an interim basis, an amount up to $1,449,222 and entered its *Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [ECF No. 176] (the "Interim DIP Order")

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

12

1    on April 26, 2024. Debtor then requested authorization to borrower the remainder of the DIP

2    Financing at the final hearing on the DIP Financing Motion scheduled for May 9, 2024 (the "Final

3    DIP Hearing").

4         Debtor successfully negotiated a resolution to the DIP Financing and the remaining

5    objection was withdrawn. The Court entered its *Final Order (I) Authorizing the Debtor to Obtain*

6    *Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and*

7    *(III) Modifying the Automatic Stay* [ECF No. 229] (the "Final DIP Order") on May 16, 2024. Per

8    the terms of the Final Order, and Debtor's resolution of the remaining objection, the Court

9    authorized Debtor to borrow up to $9,186,943 (inclusive of approved interim financing), pursuant

10   to a specific budget, with Debtor obligated to repay the principal amount borrowed, plus DIP

11   Lender's reasonable counsel fees and other expenses, and interest which accrues at the annual rate

12   of 4.5%, all as set forth in the Final DIP Order, DIP Credit Agreement and related documents.

13         *e.    Limited Relief from Stay Regarding the State Court Action*

14         On March 28, 2024, LADI submitted its *Motion for Relief from the Automatic Stay as to*

15   *Nonbankruptcy Action* [ECF No. 80] (the "Relief from Stay Motion") alleging, among other things,

16   that LADI's dispute with Lendlease concerning the priority of their respective liens should be

17   resolved in the State Court Action. On April 11, 2024, Debtor submitted its Objection to LADI's

18   Motion for Relief From Stay [ECF No. 141] (the "Debtor Stay Relief Objection").  Lendlease filed

19   a joinder and supporting evidence to the Debtor Stay Relief Objection [ECF No. 143].  The Court

20   held a hearing on the Relief from Stay Motion on May 15, 2024, and, on May 29, 2024, the Court

21   entered its *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* [ECF

22   No. 241] (the "Stay Relief Order") which, among other things, terminated the automatic stay as to

23   Debtor and Debtor's estate for all parties and stated that such parties could proceed to a final

24   judgment, including appeals, in accordance with non-bankruptcy law. The automatic stay was not

25   terminated with respect to any effort to enforce any judgment rendered in the State Court Action or

26   to collect any claim against Debtor. As of the date of this Disclosure Statement, the State Court

27   Action remains pending.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

*f.*      *U.S. Trustee's Motion to Dismiss Denied*

On June 6, 2024, the United States Trustee filed its *Notice of Motion And Motion Under 11 U.S.C. § 1112(B) To Dismiss, Convert, Or Direct The Appointment Of A Chapter 11 Trustee, Or For A Deadline To Obtain Insurance* [ECF No. 294] (the "UST Motion to Dismiss").  Oppositions to the Motion to Dismiss were filed by Debtor, LA City, and Lendlease [ECF Nos. 333, 334 and 342] and joinders to the oppositions were filed by Secured Creditor and Mechanic's Lien Creditor Bragg Investment Co., Inc.  [ECF No. 348], ACCO Engineered Systems, Inc., Bapko Metal, Inc., and Marin Bros / Marcowall, Inc. [ECF No. 349].  The UST filed its Omnibus Reply on July 18, 2024 [ECF No. 350].  At the hearing held on July 25, 2024, the Court denied the UST Motion to Dismiss, and entered its order to that effect on July 26, 2024.  [ECF No. 371].

*g.*      *Settlement-Efforts / Mediation With Consulting Parties*

In late April 2024 / early May 2024, Debtor, LADI, Lendlease, CTIC and LA City started to engage in serious negotiations to resolve objections to DIP Financing and to work on a path to consensually move the chapter 11 case forward.  The informal settlement-efforts resulted in a consensual resolution of the Final DIP Order that included an agreement to convene confidential regular meetings with these parties (now known as the "Consultation Parties") and an agreement to mediate with the Honorable Randall Newsome (Ret.).  An *Order Approving Stipulation To Approve Confidentiality And Nondisclosure Agreement* was entered on June 25, 2024.  [ECF No. 292].

During the mediation, Debtor and the Consulting Parties agreed on the sale process and deadlines regarding the sale and the disclosure statement and plan of reorganization.  Judge Newsome has agreed to remain "on call" to assist the parties with disputes, if any, as they arise, to try to avoid formal litigation that will delay the sale process and in return, delay or put into jeopardy a return to creditors.

*h.*      *Bidding Procedures / Sale of Property*

The sale of the Property is crucial to the consummation of the plan.  On June 12, 2024, the Court entered an *Order Granting Debtor's Motion to (I) Approve Auction and Bid Procedures for the Sale of Property; (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief* [ECF No. 276] (the "Bid Procedures Order").  Pursuant

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

to the terms of the Bid Procedures Order, (a) bid procedures are approved ("Bidding Procedures") regarding the sale and auction of Debtor's Property; (b) Debtor is authorized, in consultation with the Consultation Parties, upon notice and a hearing, to designate a stalking horse ("Stalking Horse Bidder") and to provide any such Stalking Horse Bidder with certain bid protections ("Bid Protections") in the form of expense reimbursements and/or a breakup fee; and (c) in the event an auction is held to sell Debtor's Property ("Auction").   On July 9, 2024, the Court entered an *Order Approving Stipulation To Modify Certain Sale Schedule Dates* [ECF No. 319] (the "First Modified Bid Procedures Order"). The First Modified Bid Procedures Order 1) extended the deadline to select a Stalking Horse Bidder from July 1, 2024, to July 3, 2024; 2) extended the deadline for the Debtor to file a notice of selection of Stalking Horse Bidder to July 16, 2024; and 3) continued a hearing on a proposed Stalking Horse Bidder and Bid Protections from July 10, 2024 at 1:00 p.m. to July 23, 2024 at 3:00 p.m.  On July 3, 2024, the Debtor selected a proposed stalking horse bidder subject to the Debtor's continued due diligence. However, Debtor was not satisfied with the results of this due diligence and did not proceed with that party as the stalking horse bidder at that time.

Debtor requested that the Court extend the time for Debtor to select a stalking horse bidder and approve a 2.5 % breakup fee that Debtor may offer to a potential Stalking Horse Bidder without further order of the Court (the "Break-Up Fee").  After additional briefing and evidence, the Court entered its *Modified Order Granting Debtor's Motion To (I) Approve Auction And Bid Procedures For The Sale Of Property; (II) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof; And (III) Granting Related Relief*.  [ECF No. 374] (the "Second Modified Bid Procedures Order").  The Second Modified Bid Procedures Order further modified certain sale and plan and disclosure statement dates.  Debtor is keeping the Consultation Parties apprised of its discussions with potential stalking horse bidders, subject to a confidentiality agreement executed by Debtor and each of the Consultation Parties.

The deadline for interested parties to submit bids is August 15, 2024 (the "Bid Deadline") and an auction is scheduled for September 19, 2024.  After the bidder with the highest and best bid, or the second highest and best bid as applicable (the "Winning Bidder") is identified, through the auction or otherwise, Debtor will then seek approval of the sale through the process set forth in it's

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

15

liquidating Chapter 11 Plan, pursuant to the Court's Order confirming that plan. The closing of the

sale of the Property will occur on or before the Effective Date. Debtor anticipates using the amount

received from the Winning Bidder, or the Back-Up Bidder, as the case may be, after all costs and

expenses are deducted from the gross proceeds arising from the sale of an asset, or a deduction of

$200,000 (the "Post-Confirmation Reserve"), (the "Sale Proceeds") to fund the administrative

expenses for the Liquidating Trust which will administer this Plan following the Effective Date

(the "Liquidating Trust"), to satisfy creditors as set forth in Section III, below.

### III.    PLAN SUMMARY

A summary of the composition of each of the classes under the Plan and the treatment of

the members of each class is below.[4] In accordance with Section 1123(a)(1), Debtor has not

classified administrative claims, priority tax claims, and professional fee claims. Debtor anticipates

receiving bids by the Bid Deadline which will provide for a purchase price sufficient to pay Classes

1 through 5 below in full. There is also a possibility that competitive bidding will result in a greater

return and that additional classes will be paid in full. It is possible that Debtor will be unable to

come to an agreement with a bidder, or that any bid may not be consummated, and the final sale

price may be lower. Additionally, to the extent there are any disputes as to the amount or priority

of payments to each of the classes set forth below, the amount of the Sale Proceeds subject to such

dispute will be placed in an interest-bearing escrow account pending a final order of the Court with

respect to such dispute.

*Class 1 – Secured Tax Claims.*  Debtor scheduled $18,463,711.62 in tax claims which are

secured by tax liens on the Property, which have priority over all other secured claims on the

Property including the DIP Facility Claims, described below.  Debtor intends to pay all Secured

Tax Claims in full from the Sale Proceeds.

*Class 2 – LADI Secured Claim.* Debtor believes that the LADI Secured Claim is

approximately $125,000,000, plus interest, fees, expenses and any other amounts allowed under

the applicable loan documents. Debtor anticipates paying the LADI Secured Claim in full from the

---

[4]   Please see Exhibit 2 for a schedule for a list of scheduled claims and filed proofs of claim with the asserted amount
for each claim.

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

Sale Proceeds. To the extent that the Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease Secured Claims and Other Secured Claims in full, or if the LADI Secured Claim is otherwise disputed in whole or in part, then the LADI Secured Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

*Class 3 – Lendlease Secured Claims*. Debtor believes that the Lendlease Secured Claims total approximately $170,730,330. The amount set forth in the Lendlease Secured Claims includes direct claims held by Lendlease against Debtor and secured claims held by subcontractors that Debtor and Lendlease are jointly liable.

Debtor has divided Class 3 into two subclasses. Class 3(a) includes the secured claims held directly by Lendlease. Class 3(b) includes the Secured Claims held by subcontractors of Lendlease for which Debtor and Lendlease are both liable, including Claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates.

Following the Effective Date, the Liquidating Trustee shall identify which claims have been paid by Lendlease and which remain unpaid pursuant to the terms of the Liquidating Trust Agreement. The Liquidating Trust will make a distribution of an allowed Class 3(b) claim directly to the subcontractor, unless it is determined that the Holder of the Class 3(b) claim was paid by Lendlease. In that case, the distribution shall be paid to Lendlease.

Debtor anticipates paying the Lendlease Secured Claims in full from the Sale Proceeds. To the extent that the Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease Secured Claims and Other Secured Claims in full, or if the Lendlease Secured Claim is otherwise disputed in whole or in part, then the Lendlease Secured Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

*Class 4 – Other Secured Claims*. Debtor believes that there are approximately $15,000,000 in other secured claims asserted against the Property, largely representing mechanics lien claimants. Some creditors in Class 4 may have a senior priority lien to Class 3 or Class 4 creditors. Debtor anticipates paying the Other Secured Claims in full from the Sale Proceeds. To the extent that the

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease Secured Claims and Other Secured Claims in full, or if an Other Secured Claim is otherwise disputed in whole or in part, then the Other Secured Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

Class 5 – *Reserved*. *Class 6 – Other Priority Claims*. Debtor believes that certain of its employees hold Other Priority Claims that are entitled to priority under the Bankruptcy Code in the approximate amount of $205,500. Debtor anticipates paying the Holders of Other Priority Claims in full from the Sale Proceeds. However, in the event that the remaining Sale Proceeds are insufficient to pay the Other Priority Claims in full, then the Holder of each such Other Priority Claim shall be paid *pro rata* from the remaining Sale Proceeds based on the size of each Holder's Other Priority Claim. If any Other Priority Claim is disputed, in whole or in part, then such Other Priority Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

*Class 7 – General Unsecured Claims*. Debtor believes that there are approximately $176,700,000 in unsecured claims, excluding intercompany loans, in this estate.[5] Debtor anticipates making a distribution to unsecured creditors. The ultimate recovery of Holders of General Unsecured Claims will depend on the Sale Proceeds generated by the Sale. Debtor believes that such recovery could be high as 100% of the amount of General Unsecured Claims asserted. However, the Holders of General Unsecured Claims could receive no distribution, depending on the final amount of the Sale Proceeds. If any General Unsecured Claim is disputed, in whole or in part, then such General Unsecured Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree. To the extent that any claims initially included in Class 7 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

---

[5]    A breakdown of each of the unsecured claims is set forth in Schedule 1 to this Disclosure Statement.

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Class 8 – Intercompany Claims.* Debtor owes a total of approximately $219,300,000 in Intercompany Loan Claims. Debtor intends to pay Allowed Intercompany Loan Claims *in pari passu* with the General Unsecured Claims outlined in Class 7 above. If any Intercompany Claim is disputed, in whole or in part, then such Intercompany Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree. To the extent that any claims initially included in Class 8 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

*Class 9 – Subordinated Claims.* Class 9 shall consist of all Claims that is subject to (a) subordination under Section 510(b), or (b) equitable subordination, as the Bankruptcy Court determines in a Final Order ("Subordinated Claims"). To date, no Claims scheduled or filed in this matter are Subordinated Claims under this Class 9. If any Subordinated Claim is disputed, in whole or in part, then such Subordinated Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

*Class 10 – Equity Holders*. The equity structure of Debtor will remain unchanged as a result of the Plan and the Confirmation Order. In the event that the Sale Proceeds are sufficient to pay the claims of Classes 1-9 above, any such remaining Sale Proceeds shall be distributed to Equity Holders, in accordance with their interest in Debtor. Class 10 will be entitled to vote on the Liquidating Chapter 11 Plan.

## IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.

### A.  What Creditors and Interest Holders Will Receive Under the Plan.

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive, as described in Section III above.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

### B.    Unclassified Claims.

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for in the Bankruptcy Code. As such, Debtor has not placed the following claims in any class:

#### 1.    DIP Facility Claims.

The DIP Facility is for the original principal amount of $9,186,943. Debtor anticipates seeking authority to borrow an additional $3 million dollars under the DIP Facility. Therefore, Debtor anticipates that advances under the DIP Facility will amount to no more than $14 million, inclusive of interest, fees, costs, and other expenses. Debtor is liable to DIP Lender for all amounts borrowed, plus interest, fees, expenses and any other amounts allowed under the Final DIP Order. The DIP Facility Claim is secured by, among other things, a priming lien on the Property with priority above all other interests, except the Secured Tax Claims. Debtor anticipates paying the DIP Facility Claims in full from the Sale Proceeds upon the closing of the Sale.

#### 2.    Administrative Claims.

Administrative claims are claims for costs or expenses of administering Debtor's chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2) ("Administrative Claims"). The Bankruptcy Code requires that all allowed administrative expense claims be paid in full on the Effective Date unless a particular claimant agrees to a different treatment. The Liquidating Trustee will pay all allowed § 507(a)(2) Administrative Claims, that are not otherwise paid with the DIP Financing, either (i) on or prior to the Effective Date, or (ii) at the time such Administrative Claims are allowed by the Court or as soon thereafter as is practicable. The Liquidating Trustee will pay all such allowed Administrative Claims out of the Sale Proceeds. The Debtor anticipates that all administrative claims will be paid as of the Effective Date of the Plan and that the only claims that will accrue are those set forth in the Final DIP Order, as amended.

#### 3.    Professional Fee Claims.

Professional Fee Claims are Administrative Claims that are also Unclassified. The Court must approve all professional fees and expenses before they may be paid. For all professional fees and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

expenses, except fees owing to the Clerk of the Bankruptcy Court and fees owing to the U.S. Trustee, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan. Much of the professional fees and expenses that will be owed as Administrative Claims following Plan Confirmation will be dependent upon whether Debtor is required to engage in any substantial litigation regarding Plan Confirmation, objecting to any Disputed Claims, or estimating any contingent or unliquidated Claims. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any administrative expense claims. Similarly, Professionals who have been employed in these cases are not being deemed to have agreed to any cap on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order. Debtor also reserves all rights to file objections to any such asserted Administrative Claims.

### 4. **Priority Tax Claims**.

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. Pursuant to the terms of the Plan, Debtor intends to pay Allowed Priority Tax Claims in accordance with the terms set forth in Section 1129(a)(9)(C). To the extent any allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid as may be due in payable under applicable non-bankruptcy law. Debtor is in the process of reviewing all filed priority tax claims and will file objections to any of them which Debtor disputes.

### 5. **Statutory Fees.**

Debtor shall pay all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1  including Plan payments and disbursements in and outside the ordinary course of Debtor's business

2  at the time of Confirmation, pursuant to the applicable statutory payment schedule.

3      **C.      Means of Effectuating and Implementing the Plan.**

4          1.      **Funding for the Plan**.  The sources of the payments to be made by the

5  Liquidating Trustee under the Plan will be from (i) the Sale Proceeds; (ii) the liquidation of all of

6  Debtor's assets not sold to the Winning Bidder, except for Sale Proceeds; (iii) Cash on hand; and

7  (iv) any Causes of Action, less any amounts required to be remitted to the Liquidating Trustee to

8  wind up the estate ("Plan Administration Assets").  Debtor asserts that it will be able to pay its

9  Unclassified Claims, and Classes 1 through 6 if proceeds of the sale of the Property exceeds $430

10  million.  A chart setting forth those assumptions is attached as **Exhibit 3** (the "Break-Even

11  Analysis").  The waterfall distribution to each class of creditors will change depending on the final

12  amount of proceeds realized from the Property.

13          2.      **Sale of the Property.**   The sale of the Property is crucial to the

14  consummation of the Plan. On or before the Effective Date, Debtor shall consummate the Sale, and

15  any other transactions contemplated by the Purchase and Sale Contract. Upon consummation of the

16  Sale, the Property shall be transferred and vest in the Winning Bidder (or Backup Bidder). Upon

17  entry of the Confirmation Order by the Bankruptcy Court, the Sale and Purchase and Sale Contract

18  will be deemed approved. The Sale Proceeds generated by the Sale of the Property will be used to

19  pay allowed claimholders, in the priority outlined in Section II above.

20          3.      **Liquidation of Plan Administration Assets**[6].  On the Effective Date, the

21  trustee of the Liquidating Trust (the "Liquidating Trustee"), who Debtor anticipates will be Bradley

22  Sharp with Development Specialists, Inc., shall accept authority over the Plan Administration

23  Assets, which will include any Personal Property not sold to the Winning Bidder and the Post-

24  Confirmation Reserve, as Liquidating Trustee. The Liquidating Trustee may abandon or otherwise

25  not accept any assets that Liquidating Trustee believes, in good faith, have no value to the

26  administration of the Plan or the Wind Down. As of the Effective Date, all unencumbered assets

27  vested as Plan Administration Assets and all unencumbered assets dealt with in the Plan shall be

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[6]   A copy of the proposed Liquidating Trust will be provided with the Plan Supplement.

22

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

free and clear of all liens, claims, and equity interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Among other powers, the Liquidating Trustee shall have the power to liquidate the Plan Administration Assets and use such funds to pay the holders of allowed claims in the priority outlined above. The Liquidating Trust will remain in place to, among other things, allow for the resolution of any priority disputes between secured creditors and to pay the Priority Tax Claims over time pursuant to 11 U.S.C. § 1129(a)(9)(C)(ii).

4.     **Transfer to the Liquidating Trust.** As of the Effective Date, all remaining assets and property of Debtor will be transferred to the Liquidating Trust. For the avoidance of doubt, Debtor's books and records will be included in any such transfer. The Liquidating Trust will be Debtor's successor to all rights and privileges, including attorney client privilege.   The Liquidating Trust will be funded through either: (a) Sale Proceeds, to the extent that they are enough to pay all secured Claims in full or; (b) a carve out from the holders of Secured Claims for the Post-Confirmation Reserve, subject to the agreement of such secured creditors.

5.     **Causes of Action.**   Any causes of action held by the estate, if any, shall be transferred to the Liquidating Trustee as of the Effective Date. The Liquidating Trustee shall have the authority to assert, settle or abandon any causes of action transferred to it. In the event there is any recovery on any causes of action, such amounts will be used to pay the holders of allowed claims in the priority outlined in Article II above. All causes of action between the Debtor and any other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the Effective Date. At such time, the Liquidating Trust will be entitled to all claims, defenses, and other rights and privileges accorded to the Debtor in such proceedings following their transfer. Parties who are engaged in active litigation as of the Effective Date will be permitted to continue such litigation in the Liquidating Trust.

6.     **Composition of Debtor Post-Confirmation.**  Following the Effective Date of the Plan, Debtor will dissolve.

7.     **Distribution Agent.**    The Liquidating Trustee shall serve as the disbursement agent for purposes of timely making all disbursements to be made under the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

8. **Employment of Professionals by the Liquidating Trustee.** The Liquidating Trustee may retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets.

9. **Protocol for the Liquidation of Disputed Claims.**

a. *Transfer of Disputed Claims to Liquidating Trust.* If the Sale Proceeds are insufficient to pay Holders of Secured Claims in full, or if a Claim is otherwise Disputed, then the portion of the Sale Proceeds that would be used to pay such Claims will be deposited into a blocked segregated account to be maintained by the Liquidating Trust for the benefit of the Holders of such Disputed Claims (the "Disputed Creditor Reserve") with all such liens, claims, encumbrances, and/or interests of the Holder of the Disputed Claim to the Property attaching to the proceeds to the same order and priority as they previously attached to the Property.

b. *Payments and Distributions on Disputed Claims.* Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under this Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the first day that Debtor shall make payment on such claim the later of (i) on the first day that is thirty (30) Business Days after such Disputed Claim becomes Allowed, in whole or in part; (ii) on the day that distributions become available to members of that Class; or (iii) with respect to Holders of General Unsecured Claims, the day the Pro Rata Share of such Holder is determined (the "Disputed Creditor Reserve Treatment") *provided, however*, that: (i) Disputed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary

24

course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II of this Plan.

c.    The Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, including but not limited to the objection to claims. Debtor is in the process of reviewing all timely filed proofs of claim. Prior to the Effective Date, Debtor has the right to bring claim objections to resolve claims. After the Effective Date, the authority to object to any Disputed Claims shall vest in the Liquidating Trustee. Any such objections to Disputed Claims must be brought within 120 days following the Effective Date, unless otherwise ordered by the Court. Debtor or Liquidating Trust intends to file objections with the Court to all Disputed Claims and to have the Court resolve all such disputes unless Debtor and the claimants can reach consensual resolution. Disputed Claims which are Administrative Claims that become allowed after the Effective Date shall be paid in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. Disputed Claims which are Priority Tax Claims that become allowed after the Effective Date shall be paid in accordance with Section 2.2 of the Plan.

10.    **Exemption from Transfer Taxes.**    Pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code, the Sale, and any other transfer from Debtor to any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

25

payment of any such tax or governmental assessment.  For the avoidance of doubt, transfer tax shall include, but not limited to, documentary transfer tax pursuant to Cal. Rev. & Tax. Code ("R&T") §11911 (West).  ("County Tax"); Base City Tax pursuant to Los Angeles Municipal Code ("LAMC") § 21.9.2(a); or, ULA Tax (e.g. Mansion Tax) under LAMC § 21.9.2(b).  *See also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S. Ct. 2326, 2336, 171 L. Ed. 2d 203 (2008) ("the decision whether to transfer a given asset "under a plan confirmed" must be made prior to submitting the Chapter 11 plan to the bankruptcy court, but the transfer itself cannot be "under a plan confirmed" until the court confirms the plan in question. Only at that point does the transfer become eligible for the stamp-tax exemption"); *In re New 118th, Inc.*, 398 B.R. 791, 797 (Bankr. S.D.N.Y. 2009) (Stamp tax exemption applies to post-confirmation transfer of property of Chapter 11 estate that follows a preconfirmation sale if it is necessary to consummation of plan.)

11. **Distributions to Be Made Pursuant to the Plan.** Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Effective Date; *provided, however*, that: (a) Administrative Claims that are not otherwise paid through the DIP Financing will be paid on or prior to the Effective Date or at such time as the Administrative Claim is allowed by the Court, or as soon as reasonably practicable thereafter (b) allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid as may be due and payable under applicable non-bankruptcy Law.

In the event that following the Auction, the expected Sale Proceeds are insufficient to pay Administrative Claims in full, or if the sale of the Property does not close, Debtor will not seek confirmation of the Liquidating Chapter 11 Plan.

"Unclaimed Property" means any distribution of cash or any other property made to the holder of an allowed claim pursuant to the Plan that (a) is returned to the Liquidating Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted distribution by the Liquidating

26

1    Trustee is made to such holder or (b) in the case of a distribution made in the form of a check, is

2    not negotiated within 90 days and no request for re-issuance is made. Unclaimed Property shall

3    be donated to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious

4    organization dedicated to, among other things, promoting research and scholarship in the area of

5    insolvency.

6        12.    **Injunctions.**  The Confirmation Order will enjoin the prosecution, whether

7    directly, derivatively, or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt,

8    right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan.

9    Except as provided in the Plan or the Confirmation Order, all entities that have held, currently hold,

10   or may hold a claim or other debt or liability that is discharged or an interest or other right of an

11   equity security holder are permanently enjoined from taking any of the following actions against

12   Debtor, Liquidating Trustee, or any of their property on account of such discharged claims, debts

13   or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in

14   any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any

15   manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or

16   encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any

17   debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any

18   manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.

19   By accepting a distribution pursuant to this Plan, each holder of an allowed claim shall be deemed

20   to have specifically consented to the injunctions set forth in this Section.

21       13.    **Exculpation.**  Except as otherwise specifically provided for in the Plan, (i)

22   the Debtor; (ii) all officers, directors, and members of the Debtor in each case who are or were

23   acting in such capacity on or after the Petition Date, (iii) all agents, attorneys, advisors, accountants,

24   financial advisors, consultants and other professionals to the extent such parties are or were acting

25   in any such capacity for the parties identified above on or after the Petition Date (each a "Exculpated

26   Party") shall not have or incur any liability for, and each Exculpated Party is hereby exculpated

27   from, any cause of action for any claim related to any act or omission from the Petition Date to the

28   Effective Date in connection with, relating to, or arising out of, Debtor's Chapter 11 Case, in whole

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

or in part, the formulation, preparation, dissemination, and negotiation of this Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of this Chapter 11 case, the pursuit of Plan confirmation, the administration and implementation of this Plan, the distribution of payments made under this Plan or any related act, except for claims or causes of action arising from an act or omission that is judicially determined in a final non-appealable order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Party shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. Each Exculpated Party has, and upon the consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to this Plan and therefore, are not, and on account of such distributions shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the avoidance of doubt, nothing in this section shall prevent any party in interest from objecting to any Intercompany Loan Claim.

14.    **Executory Contracts and Unexpired Leases.**  All Executory Contracts and Unexpired Leases of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule to be provided in a supplementary schedule that will be provided, five (5) days prior to the deadline for parties in interest to object to the Liquidating Plan (the "Assumption Schedule"); (ii) those that have been previously assumed or rejected pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be accepted pursuant to the terms of the Plan. Each Executory Contract and Unexpired Lease assumed but not assigned to a third party shall be deemed to be assigned to Debtor, and be fully enforceable by, Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Plan, or by any order of the Bankruptcy Court.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1    **ANY COUNTER-PARTY TO ANY OF THE ASSUMED CONTRACTS AND**

2    **LEASES WHO DOES NOT FILE A TIMELY OBJECTION TO PLAN CONFIRMATION**

3    **WILL BE DEEMED TO HAVE CONSENTED TO DEBTOR'S ASSERTED CURE**

4    **AMOUNTS. THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM**

5    **ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY**

6    **CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY**

7    **DAYS AFTER THE EFFECTIVE DATE.**

8    Debtor has elected to assume the executory contract with Arcadis Inc., the architect for the

9    Project (the "Architect") upon the confirmation of the Plan. The Architect timely filed a Proof of

10    Claim, claim number 28-1 in the amount of $2,411,799.98 (as may be amended, stipulated to, or

11    otherwise established, the "Architect Claim Amount") for architectural services performed in

12    connection with that certain Agreement dated as of May 26, 2014, by and between Tohigh

13    Construction Investment LLC, and RTKL Associates Inc., as amended and supplemented from

14    time to time (the "Architect Agreement"). Debtor's rights to dispute the additional amount of the

15    claim is reserved it Architect's claim is amended to increase the amount of the claim from the

16    amount set forth above. The amount of any such dispute, if any, shall be reserved and transferred

17    to the Liquidating Trust (the "Potential Architect Reserve").

18    Architect owns the copyright in the Architect's instruments of service (including

19    architectural plans, specifications, designs, associated renderings, and any electronic format thereof

20    including BIM and AutoCAD) (the "Instruments of Service"), which Instruments of Service may

21    not be used in connection with the bidding or sale process without Architect's written consent.

22    Debtor has elected to assume (or assume and assign) the Architect Agreement and will cure

23    any defaults at closing (less the Potential Architect Reserve) by paying the Architect Claim Amount

24    from Sale Proceeds on the Effective Date. Upon such assumption of the Architect Agreement,

25    including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to

26    perform under the Architect Agreement (other than as set forth below), (b) Debtor (or an assignee)

27    shall have no obligation to continue to perform under the Architect Agreement post-closing, and

28    (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

29

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1  or the estate (other than its rights under the Plan, which are expressly preserved, and its rights under

2  any New Architect Agreement, if applicable).

3      Upon the cure of defaults under the Architecture Agreement as provided for herein,

4  including, without limitation, payment of the Architect Claim Amount less the Potential Architect

5  Reserve, Architect will grant a license to Debtor or a buyer of Debtor's assets if the Architect

6  Agreement is assumed and assigned to such buyer (a "<u>Recipient Party</u>"), which license shall (a)

7  allow such Recipient Party to use Architect's Instruments of Service created before the Petition

8  Date under the Architect Agreement and (b) be subject to the following conditions:

9      1.      Any use by Debtor or Recipient Party of the Instruments of Service shall be

10  limited to and strictly comply with the permitted uses and other provisions of the Architect

11  Agreement or as otherwise agreed to by Architect in writing.

12      2.      The license will be limited to the Project, non-exclusive, and subject to the uses

13  and other provisions of the Architect Agreement.

14      3.      Any Recipient Party must fully indemnify and release the design team from any

15  claims by buyer and/or third parties arising out of any use or modification of the Instruments of

16  Service.

17      4.      All of the design teams' logos and any identifying marks must be removed from

18  the Instruments of Service.

19      5.      Any subsequent architects must seal/stamp the Instruments of Service and take on

20  responsible charge as the architect of record.

21      6.      Debtor or any Recipient Party will identify Architect as the design architect.

22      Any post-petition license fee or agreement for post-petition services ("<u>New Architect</u>

23  <u>Agreement</u>") must be separately negotiated between Architect and any Recipient Party. Architect

24  agrees, however, that it is generally willing to remain as the Architect of record for the project

25  under the following terms and conditions, subject to formal documentation between Architect and

26  buyer:

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1.    The other provisions herein relating to Architect's pre-petition claim have been fully complied with, including payment in full of Architect's pre-petition claim as part of the cure provided for above.

2.    Recipient Party reactivates or purchases project-specific professional liability policy reasonably acceptable to Architect.

3.    Recipient Party hires an independent, third-party forensic consultant to review the project and assess the current status of the Project.

4.    Architect and Recipient Party reaching agreement on the scope, schedule, and fees for remaining services.

15.    **Retention of Jurisdiction.**  After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment and any and all objections to the allowance, classification, priority or amount of Claims or Equity Interests;

(b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) Debtor's or Liquidating Trustee's amendment, modification, or supplement after the Effective Date, pursuant to Article V of the Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan;

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

31

(e)      Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving a Debtor, that may be pending on the Effective Date;

(f)      Adjudicate, decide or resolve any and all matters related to Causes of Action;

(g)      Adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(h)      Resolve any and all avoidance or recovery actions under Sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(i)      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order or any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Assumption Schedule, or Confirmation Order;

(j)      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Confirmation Order;

(k)      Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(l)      Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(m)      Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4) of the Bankruptcy Code;

(n)      Enforce the injunction and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(o)      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such, injunctions and other provisions;

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

(p)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(q)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(r)     Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection therewith;

(s)     Enter an order or final decree concluding or closing the Chapter 11 Case;

(t)     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(u)     Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(v)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(w)     Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(x)     Enforce all orders previously entered by the Bankruptcy Court; and

(y)     Hear any other matter not inconsistent with the Bankruptcy Code.

## V.      TAX CONSEQUENCES OF THE PLAN.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present. Debtor CANNOT and DOES NOT represent that the tax consequences contained

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

below are the only tax consequences of the Plan because the Internal Revenue Code, as amended (the "<u>Tax Code</u>") embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action. Also, Debtor has not retained any special tax counsel or tax accountant to analyze any tax consequences resulting from the Confirmation of the Plan.

Although Debtor has attempted to structure the Sale in a manner which is exempt from transfer taxes, Debtor anticipates that the closing of the Sale might result in tax liability. Debtor has not performed any detailed analysis of the extent to which, if any, the confirmation of the Plan may have on any tax liability of the estate. Debtor makes no representations regarding the potential tax consequences to creditors or interest holders from the confirmation of or implementation of the Plan. Debtor has no way of knowing the tax basis of the various investments made by creditors or equity. Without that information and without knowing the final sale amount of the property, it is impossible for Debtor to know or estimate the amount of income tax that could become due on a sale. Similarly, various creditors and equity holders may be liable for taxes in foreign jurisdictions, China as just one example. To the extent that creditors or equity are paid less than the amount of their current tax basis in their claim, an incremental tax loss may be recognized upon sale of the property. Creditors and equity holders are encouraged to consult with their own tax advisors regarding the potential tax effect that could result from a sale of the property.

## VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES.

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

**A.    Who May Object.**  Any party in interest may object to the confirmation of the Plan, even if such party in interest would not be entitled to vote to accept or reject the Plan.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

**B.      Who May Vote to Accept or Reject the Plan.**  A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim or interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**C.      What is an Allowed Claim or Interest?**  As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any timely filed proof of claim or interest will be deemed allowed, unless a party in interest files an objection to the claim or interest. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS WAS JUNE 26, 2024 FOR NON-GOVERNMENTAL UNITS. The bar date for filing a proof of claim in this case for governmental units is September 7, 2024.  A Claim shall be deemed Allowed solely for purposes of voting on the Plan unless (a) such Claim is scheduled as disputed, contingent or unliquidated and no proof of claim has been timely filed or (b) there is an objection with respect to such claim at least fourteen (14) days prior to the Voting Deadline. Such objection will be heard by the Court at least [DATE] days prior to the Voting Deadline.

**D.      What is an Impaired Claim or Interest?**

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

Currently, Debtor believes that all Classes of creditors are impaired and entitled to vote to accept or reject the Plan, except for Class 1. However, Debtor reserves the right to change the treatment of such party to the extent it identifies a Winning Bidder who proposes a Purchase Price sufficient to render a class unimpaired. Parties who dispute Debtor's characterization of their claim

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

or interest as being impaired or unimpaired may file an objection to the Plan contending that Debtor has incorrectly characterized the class.

**E.    Who is Not Entitled to Vote.**  The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes, and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.    Who Can Vote in More Than One Class.**  A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**G.    Votes Necessary to Confirm the Plan.**  If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.    Votes Necessary for a Class to Accept the Plan.**  A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan. A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

I.    **Treatment of Non-Accepting Classes.**  As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law. Debtor will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan. In addition to seeking to confirm the Plan by cramdown, as set forth above.

J.    **Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if Debtor was liquidated under chapter 7 of the Bankruptcy Code. Debtor's Liquidation Analysis is attached as **Exhibit 4**.

In a chapter 7 case, Debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of Debtor. Debtor maintains that this

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

requirement is clearly met. The biggest and most insurmountable issue is that Debtor is only able to operate a sale process for the Property because of the post-petition financing being provided by DTLA Lending LLC. Absent this Chapter 11 case, Debtor anticipates that its principal asset, the Real Property, would either be sold by a Chapter 7 Trustee or one of its secured creditors would obtain relief from the automatic stay and would proceed with a foreclosure sale. In either of these events, the recovery will likely be less than the process proposed by Debtor thought the Plan.

First, through either a sale by a Chapter 7 Trustee or foreclosure sale, any sale to the ultimate purchaser would not be exempt from transfer taxes pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code. Second, in the event of a conversion of Debtor's case to chapter 7, a chapter 7 trustee would be appointed and would be completely unfamiliar with the Property and the complexities of this case. The Chapter 7 Trustee would likely hire all new professionals who would be equally unfamiliar with the Property in this Case. The result of all of that would be the incurrence of an extraordinary amount of additional professional fees incurred by professionals who would need to familiarize themselves with this, all of which is avoided by the current professionals, who are skilled, experienced and already intimately familiar with these cases, continuing with their current roles. Third, the marketing of the Property in the context of a sale by a Chapter 7 Trustee or at a foreclosure sale would be significantly less robust than the marketing plan already implemented by Debtor. Finally, in the event that the Property was sold by the Chapter 7 Trustee, pursuant to section 326 of the Bankruptcy Code, a chapter 7 trustee would be paid a significant amount of money for distributing the funds in these estates. After these costs and expenses, Debtor does not believe that any funds would be available to distribute to holders of unsecured claims following a liquidating of the Property.

In contrast, Debtor projects that Holders of Allowed General Unsecured Claims will receive some distribution pursuant to the Plan, with the prospect for additional upside in the event that the Purchase Price obtained through Debtor's marketing process is higher than estimated. Debtor's projections are based off the progress of its marketing efforts and are subject to revision depending on the amounts provided in the bids it ultimately receivers for the Property.  The

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Break-Even Analysis sets forth the expected sale price that is needed to make a full distribution on the LA County Tax Claim, and to the DIP Lender, LADI, Lendlease and priority creditors.

This option provides all creditors, including general unsecured creditors, with a vastly higher recovery than they would ever receive if Debtor's case were converted to chapter 7. Moreover, it may take many years for a chapter 7 trustee to administer this case and general unsecured creditors would not receive any distribution during the interim. Debtor, therefore, has satisfied the "best interest of creditors test" with respect to any general unsecured creditors who vote to reject the Plan. Debtor also submits that the Plan provides fair and equitable treatment of all classes of creditors and the greatest feasible recovery to all creditors.

**K.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on the Effective Date or shortly thereafter. If a sale of the Property meets or exceeds the price set forth in the Break-Even Analysis, then Debtor anticipates having sufficient Cash as of the Effective Date to pay such claims from the Sale of the Property. If the sale of the Property is lower than the price set forth in the Break-Even Analysis, Debtor will request that its secured creditors provide a carve-out sufficient to allow Debtor to pay all amounts necessary to proceed in confirming the Plan and ask secured creditors to consent to payment of less than the full amount of their unsecured claims. In the event that the Secured Creditor do not consent to a sufficient carve-out, or Debtor is otherwise unable to pay all amounts necessary to have a confirmable plan from the Sale Proceeds, Debtor will not seek confirmation of the Plan. The second aspect considers whether the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments.  Pursuant to the Plan, Debtor has agreed to make payment to each Class depending on the Sale Proceeds obtained through the Sale of the Property. If Debtor does not have sufficient Cash on hand on the Effective Date to pay all of the claims and expenses

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

which are entitled to be paid on the Effective Date or shortly thereafter, Debtor will request that the Holders of Secured Claims agree to a carve-out from their respective claims to pay such expenses. In the event that the Holders of Secured Claims do not agree to such carve-out, the Effective Date will not occur and Debtor will not go forward with the confirmation of this Plan.  If the sale proceeds exceed the break-even sales price, any other post-confirmation activities of the Liquidating Trustee will be funded through Plan Administrative Assets. Debtor, therefore, has satisfied this second aspect of Plan feasibility.

## VII.    RISK FACTORS REGARDING THE PLAN.

As with any sale of property, there is a risk that the ultimate sale price realized will be lower than Debtor anticipates or projects. In this case, the sale of the Property may not close and in that case, Debtor will not seek confirmation of the Liquidating Chapter 11 Plan. Additionally, in the event the parties are unable to close on a sale of the Property with the Winning Bidder or Back-Up Bidder post-confirmation, then there is a possibility that the Effective Date of the Liquidating Chapter 11 Plan will not occur.  There are also a large number of still contingent, unliquidated and disputed claims which will ultimately have to be settled or litigated.

There are also many factors as it relates to the sale of undeveloped property that are outside the control of Debtor.  Based upon the appraisal obtained by Debtor, the discussions that Debtor is having with prospective purchasers of the Property, the amount of interest in the Property, and the opinions of Debtor's Professionals, Debtor believes that there will be a buyer for the Property sufficient to satisfy all Administrative Claims, Secured Claims, and provide at least some return for the Holders of General Unsecured Claims. Debtor also has a reasonable belief there will be a robust auction.

## VIII.    EFFECT OF CONFIRMATION OF THE PLAN.

**A.    Discharge.** Debtor will not receive a discharge under the Plan.

**B.    Modification of the Plan.** Debtor reserves the right to modify the Plan any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan if Debtor modifies the Plan before confirmation. The Liquidating Trustee may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

40

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  substantially consummated and (2) the Court authorizes the proposed modification after notice and

2  a hearing.

3    **C.    Post-Confirmation Status Reports.**  Until a final decree closing Debtor's Case is

4  entered, the Liquidating Trustee will file quarterly status reports with the Court explaining what

5  progress has been made toward consummation of the confirmed Plan.

6    **D.    Post-Confirmation Conversion/Dismissal.**  A creditor or any other party in interest

7  may bring a motion to convert or dismiss these chapter 11 cases under Section 1112(b) of the

8  Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan. If the Court

9  orders these chapter 11 cases converted to chapter 7 after the Plan is confirmed, then all property

10  that had been property of these chapter 11 estates, and that has not been disbursed pursuant to the

11  Plan, will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested

12  property, but only to the extent that relief from stay was not previously authorized by the Court

13  during these cases. The Confirmation Order may also be revoked under very limited circumstances.

14  The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in

15  interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

16  the Confirmation Order.

17    **E.    Final Decree.**  Once Debtor's estate has been fully administered as referred to in

18  Bankruptcy Rule 3022, the Liquidating Trustee will file a motion with the Court to obtain a final

19  decree to close this chapter 11 case. The Liquidating Trustee will be responsible for the timely

20  payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) as well as any and all other

21  fees owing to the U.S. Trustee and/or the Clerk of the Court.

22

23  Dated: September 4, 2024              Respectfully submitted,

24                        BRYAN CAVE LEIGHTON PAISNER LLP

25                        By: _/s/ Sharon Z. Weiss_____
26                            Sharon Z. Weiss
                            Attorneys for Debtor-in-Possession
27

28

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (*Admitted Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:    (704) 749-8999
Facsimile:    (704) 749-8990

*Attorneys for Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:24-bk-11057-DS |
| Oceanwide Plaza, LLC, | Chapter:  11 |
| Debtor. | **DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN** |
| | Plan Confirmation Hearing |
| | Date:   October 16, 2024 |
| | Time:   10:00 a.m. |
| | Place:  Ctrm 1634/Via Zoom |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

1

TABLE OF CONTENTS

2  INTRODUCTION ................................................................................................................ 1

3  I    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF
4       TIME ................................................................................................................................ 1
        A.    Defined Terms ........................................................................................................ 1
5       B.    Rules of Interpretation and Computation of Time ................................................. 12

6  II   UNCLASSIFIED CLAIMS ............................................................................................. 13
        A.    DIP Facility Claims .............................................................................................. 14
7       B.    Administrative Claims .......................................................................................... 14
        C.    Priority Tax Claims .............................................................................................. 15
8       D.    Professional Fee Clams ........................................................................................ 16
9       E.    Statutory Fees ....................................................................................................... 16

10 III  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
        INTERESTS .................................................................................................................. 17
11      A.    Classification of Claims ....................................................................................... 17
        B.    Class Identification ............................................................................................... 17
12      C.    Treatment and Voting Rights of Claims and Equity Interests ............................... 18
13      D.    Special Provision Governing Unimpaired Claims ................................................ 24
        E.    Voting; Presumptions; Solicitation ...................................................................... 24
14      F.    Subordinated Claims ............................................................................................ 25
        G.    No Waiver ............................................................................................................. 26
15
16 IV   MEANS FOR IMPLEMENTATION OF THE PLAN ..................................................... 26
        A.    Compromise of Controversies .............................................................................. 26
17      B.    Sources of Consideration for Plan Distribution .................................................... 26
        C.    Sale ....................................................................................................................... 26
18      D.    Plan Administration and Wind Down .................................................................... 27
        E.    Corporate Action .................................................................................................. 29
19      F.    Vesting of Assets .................................................................................................. 30
        G.    Exemptions from Certain Transfer Taxes and Recording Fees ............................. 30
20      H.    Effectuating Documents; Further Transactions .................................................... 31
        I.    Nonconsensual Confirmation ............................................................................... 31
21      J.    Closing of Chapter 11 Case .................................................................................. 31

22 V    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 31
23      A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ........... 31
        B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........ 33
24      C.    Insurance Policies ................................................................................................ 35
        D.    Reservation of Rights ........................................................................................... 35
25      E.    Nonoccurrence of the Effective Date .................................................................... 35

26 VI   PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 36
27      A.    Distribution on Account of Claims and Equity Interests Allowed as of the
              Effective Date ....................................................................................................... 36
28      B.    Distribution of Account of Claims and Equity Interest Allowed After the
              Effective Date ....................................................................................................... 37

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

C. Timing and Calculation of Amounts to Be Distributed ........................................ 38
D. Delivery of Distributions .......................................................................................... 39
E. Distributions by Distribution Agent ......................................................................... 39
F. Minimum Distributions ............................................................................................. 40
G. Undeliverable Distributions ...................................................................................... 40
H. Compliance with Tax Requirements/Allocations .................................................. 41
I. Surrender of Cancelled Instruments or Securities ................................................. 41
J. Claims Paid or Payable by Third Parties ................................................................. 42

VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY
INTERESTS ......................................................................................................................... 43
A. Allowance of Claims and Equity Interests .............................................................. 43
B. Claims Administration Responsibility ..................................................................... 43
C. Estimation of Claims and Equity Interests ............................................................. 44
D. Adjustment to Claims and Equity Interests Without Objection ........................... 45
E. Disallowance of Certain Claims ............................................................................... 45
F. Amendments to Claims .............................................................................................. 45
G. No Interest on Claims, Equity Interests, or Disputed Claims ............................... 45

VIII    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ......................................... 46
A. Conditions Precedent to Confirmation of the Plan ................................................ 46
B. Conditions Precedent to the Effective Date ............................................................ 46
C. Waiver of Conditions Precedent ............................................................................... 46
D. Effect of Failure of Conditions Precedent .............................................................. 47
E. Reservation of Rights ................................................................................................. 47
F. Substantial Consummation of Plan ......................................................................... 47

IX    EFFECT OF CONFIRMATION ....................................................................................... 47
A. Binding Effect .............................................................................................................. 47
B. Compromise and Settlement of Claims and Controversies .................................. 48
C. Injunctions ................................................................................................................... 48
D. Exculpation .................................................................................................................. 49
E. Setoffs and Recoupment ............................................................................................ 50
F. Retention of Causes of Action; Reservation of Rights ........................................... 50
G. Release of Liens .......................................................................................................... 51

X    RETENTION OF JURISDICTION ................................................................................... 51

XI    MISCELLANEOUS PROVISIONS .................................................................................. 54
A. Immediate Binding Effect .......................................................................................... 54
B. Amendments ................................................................................................................ 54
C. Governing Law ............................................................................................................ 55
D. Successors and Assigns .............................................................................................. 55
E. Severability .................................................................................................................. 55
F. Controlling Document ................................................................................................ 55
G. Filing of Additional Documents ............................................................................... 56
H. Reservation of Rights ................................................................................................. 56
I. Service of Documents ................................................................................................. 56
J. Section 1125(e) of the Bankruptcy Code ................................................................ 57

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

K.    Tax Reporting and Compliance ................................................................ 57
L.    Exhibits, Schedules and Supplements.................................................... 57
M.    Entire Agreement .................................................................................... 58
N.    Allocation of Payments .......................................................................... 58

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Statutes**

4

11 U.S.C. §§ 101 *et seq.*..............................................................................................*passim*

5

11 U.S.C. § 102 ............................................................................................................... 13

6

11 U.S.C. § 105 ............................................................................................................... 52

7

11 U.S.C. § 105(a) .......................................................................................................... 51

8

11 U.S.C. § 327 through 331 .................................................................................... 10, 16

9

11 U.S.C. § 346 ............................................................................................................... 53

10

11 U.S.C. § 347(b) .......................................................................................................... 41

11

11 U.S.C. § 363 ........................................................................................... 10, 16, 33, 53

12

11 U.S.C. § 365 ..................................................................................................5, 6, 12, 33

13

11 U.S.C. § 365(a) .......................................................................................................... 34

14

11 U.S.C. § 365(b) .......................................................................................................... 36

15

11 U.S.C. § 365(b)(1) ..................................................................................................... 35

16

11 U.S.C. § 365(d)(4) ................................................................................................ 37, 53

17

11 U.S.C. § 502 ................................................................................................................. 2

18

11 U.S.C. § 502(c) .......................................................................................................... 44

19

11 U.S.C. § 502(d) .............................................................................................. 2, 45, 52

20

11 U.S.C. § 502(j) ........................................................................................................... 45

21

11 U.S.C. § 503 ............................................................................................................... 10

22

11 U.S.C. § 503(b) ............................................................................................................ 1

23

11 U.S.C. § 503(b)(2) ..................................................................................................... 10

24

11 U.S.C. § 503(b)(3) ..................................................................................................... 10

25

11 U.S.C. § 503(b)(4) ..................................................................................................... 10

26

11 U.S.C. § 505 ............................................................................................................... 53

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

| | |
|---|---|
| 11 U.S.C. § 505(b) | 58 |
| 11 U.S.C. § 506 | 11 |
| 11 U.S.C. § 506(b) | 46 |
| 11 U.S.C. § 507 | 1 |
| 11 U.S.C. § 507(a) | 9 |
| 11 U.S.C. § 507(a)(8) | 10 |
| 11 U.S.C. § 510 | 2, 27 |
| 11 U.S.C. § 510(b) | 12, 27 |
| 11 U.S.C. § 522(f) | 45 |
| 11 U.S.C. § 522(h) | 45 |
| 11 U.S.C. § 541 | 2, 6 |
| 11 U.S.C. § 542-551 | 2, 45, 52 |
| 11 U.S.C. § 553 | 2, 11, 52 |
| 11 U.S.C. § 554 | 30 |
| 11 U.S.C. § 724(a) | 2 |
| 11 U.S.C. § 1101(2) | 48 |
| 11 U.S.C. § 1103 | 16 |
| 11 U.S.C. § 1122 | 17 |
| 11 U.S.C. § 1122(a)(1) | 4 |
| 11 U.S.C. § 1123 | *passim* |
| 11 U.S.C. § 1123(a)(1) | 14, 17 |
| 11 U.S.C. § 1123(b)(2) | 34 |
| 11 U.S.C. § 1123(b)(3) | 31 |
| 11 U.S.C. § 1124 | 7, 11 |
| 11 U.S.C. § 1125 | 5, 9 |
| 11 U.S.C. § 1125(e) | 57 |

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

11 U.S.C. § 1126(b) .................................................................................................... 5, 9

11 U.S.C. § 1126(f) ......................................................................................................... 27

11 U.S.C. § 1127(a) ........................................................................................................ 55

11 U.S.C. § 1127(b) ........................................................................................................ 54

11 U.S.C. § 1129 ........................................................................................................... 4, 5

11 U.S.C. § 1129(a)(8) .................................................................................................... 27

11 U.S.C. § 1129(a)(9)(C) .......................................................................................... 15, 38

11 U.S.C. § 1129(b) ................................................................................................... 33, 54

11 U.S.C. § 1141 ............................................................................................................. 52

11 U.S.C. § 1141(b) ........................................................................................................ 32

11 U.S.C. § 1141(c) ........................................................................................................ 32

11 U.S.C. § 1142 ............................................................................................................. 51

11 U.S.C. § 1145 .......................................................................................................... 5, 9

11 U.S.C. § 1146 ............................................................................................................. 53

11 U.S.C. § 1146(a) ........................................................................................................ 32

11 U.S.C. § 11923 ........................................................................................................... 32

28 U.S.C. § 1930 .............................................................................................................. 3

28 U.S.C. § 1930(a) ........................................................................................................ 16

28 U.S.C. § 2075 .............................................................................................................. 3

31 U.S.C. § 3717 ............................................................................................................. 16

Los Angeles Municipal Code § 21.9.6 ............................................................................. 32

Securities Act of 1933 .................................................................................................... 11

**Other Authorities**

Bankruptcy Rule 2002 .................................................................................................... 57

Bankruptcy Rule 3001 .................................................................................................... 10

Bankruptcy Rule 3012 .................................................................................................... 44

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Bankruptcy Rule 3018...................................................................................... 5, 9, 27

Bankruptcy Rule 3019................................................................................................. 55

Bankruptcy Rule 3020(e)............................................................................................ 54

Bankruptcy Rule 3022................................................................................................. 33

Bankruptcy Rule 7062................................................................................................. 54

Bankruptcy Rule 9006(a)........................................................................................ 4, 13

Bankruptcy Rule 9019........................................................................................ 28, 44, 48

Fed. R. of Civ. P. 59..................................................................................................... 7

Fed. R. of Civ. P. 60..................................................................................................... 7

Local Rule 3022-1....................................................................................................... 33

Los Angeles Municipal Code Section 21.9.6.............................................................. 30

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1

## INTRODUCTION

2   Debtor Oceanwide Plaza LLC (the "Debtor" or "Oceanwide") is a chapter 11 debtor and

3   debtor-in-possession in the above-captioned chapter 11 case (this "Chapter 11 Case"). This case

4   was initiated on February 13, 2024 (the "Petition Date"), by the filing of an involuntary petition for

5   relief against Debtor (the "Involuntary Petition") under chapter 11 of the Bankruptcy Code in the

6   United States Bankruptcy Court for the Central District of California (this "Court") by Lendlease

7   (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc., Woodbridge Glass Inc., and

8   Mitsubishi Electric US, Inc. (collectively, the "Petitioning Creditors"). On March 8, 2024, Debtor

9   filed its *Answer* [ECF No. 27] to the Involuntary Petition and consented to entry of an order for

10   relief. On March 11, 2024 (the "Relief Date"), the clerk of the Court issued the *Order for Relief*

11   [ECF No. 29] (the "Relief Order").

12   This document is Debtor's Second Amended Liquidating Chapter 11 Plan (the "Plan")

13   Chapter 11 of the Bankruptcy Code allows the debtor, and under some circumstances,

14   creditors and other parties-in-interest, to propose a plan of reorganization. This Plan is a liquidating

15   plan of reorganization that contemplates the sale of substantially all of Debtor's assets. The Plan

16   provides for the closing of a sale of Debtor's Property, as defined below, on or before the Effective

17   Date. After the Plan is fully administered, Debtor will be dissolved.

18   **I    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF**

19   **TIME**

20   A.    *Defined Terms*.

21   The following terms shall have the respective meanings specified below when used in

22   capitalized form in this Plan.

23   1.    "***Administrative Claims***" means any and all requests for payment of costs or

24   expenses of the kind specified in Section 503(b) and entitled to priority under Section 507,

25   including, but not limited to: (a) the actual and necessary costs and expenses incurred after the

26   Petition Date and through the Effective Date of preserving the Estate and operating the business of

27   Debtor; (b) Bankruptcy Fees; (c) Cure Costs; and (d) Allowed Professional Fee Claims.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

2.    "***Administrative Claims Bar Date***" means the first Business Day that is the 30th day after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by an order of the Bankruptcy Court.

3.    "***Allowed***" means, with respect to any Claim or Equity Interest: (a) any Claim or Equity Interest arising on or before the Effective Date that is (i) (A) timely filed by the applicable Bar Date or (B) as to which there exists no requirement for the Holder of such Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order; and (ii) (A) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to Section 502(d) or otherwise, has been instituted by the applicable objection deadline, or (B) as to which any objection has been determined in favor of the respective Holder by Final Order, but only to the extent allowed by Final Order; (b) any Claim or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of Debtor; (c) any Claim or Equity Interest as to which the liability of Debtor, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (d) any Claim or Equity Interest expressly allowed hereunder; *provided, however*, that notwithstanding the foregoing, unless expressly waived by the Plan, the Allowed amount of Claims or Equity Interests shall, to the extent applicable, be subject to the limitations under or maximum amounts permitted by the Bankruptcy Code, including Sections 502 or 503.

4.    "***Architect***"  means Arcadis, Inc., or its successors and assigns with respect to the intellectual property rights asserted in the Instruments of Service defined in Article V(f) below.

5.    "***Architect Claim***" means claim number 28-1 submitted by Arcadis, Inc.

6.    "***Architect Claim Amount***" means the amount of claim number 28-1, as it may be amended, stipulated to, or otherwise established.

7.    "***Assets***" means all of Debtor's right, title, and interest of any nature in property of any kind, wherever located, including, but not limited to, as specified in Section 541.

8.    "***Assumption Schedule***" means the schedule (as may be amended), if any, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that Debtor will assume pursuant to the Plan and which will be included in the Plan Supplement.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

9.    "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by Debtor pursuant to any applicable Section, including Sections 502, 510, 542, 544, 545, 547 through 550, 553, and 724(a), or under similar or related state, federal, or foreign Law, including fraudulent transfer or voidable transaction Laws.

10.    "*Ballot*" means a ballot upon which certain Holders of Impaired Claims that are entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and, if applicable, make such other elections as may be made thereon.

11.    "*Ballot Summary*" shall mean the report describing the Ballots submitted accepting or rejecting the Plan, a certification of the amount and number of Allowed Claims in each Class accepting or rejecting the Plan and delineating the Ballots which do not conform to the voting instructions.

12.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as may be amended, as in effect on the date hereof.

13.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of California, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

14.    "*Bankruptcy Fees*" means any and all fees or charges assessed against any Estate under section 1930 of title 28 of the United States Code.

15.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, and the general, local, and chambers rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Case.

16.    "*Bidding Procedures Order*" means the Court's Order Granting Debtor's Motion to (I) Approve Auction and Bid Procedures for the Sale of Property; (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief [ECF

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

No. 276] dated June 27, 2024, as amended by the Court's *Order Approving Stipulation To Modify Certain Sale Schedule Dates* [ECF No. 319] dated July 9, 2024, and as further amended by the *Modified Order Granting Debtor's Motion To (I) Approve Auction And Bid Procedures For The Sale Of Property; (II) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof; And (III) Granting Related Relief* [ECF No. 374] dated July 26, 2024.

17.    "***Business Day***" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

18.    "***Cash***" means the legal tender of the United States of America or the equivalent thereof.

19.    "***Causes of Action***" means any and all actions, causes of action, suits, claims, Claims, interests, damages, remedies, demands, rights, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, franchises, and trespasses of any kind or character whatsoever of or belonging to the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, reduced or not to judgment, liquidated or unliquidated, fixed,

20.    "***Chapter 11 Case***" means the case pending for Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

21.    "***Claim***" means a claim as defined in Section 101(5) against Debtor, whether or not asserted.

22.    "***Claims Bar Date***" means, as applicable, the Administrative Claims Bar Date and any other date or dates to be established by an Order of the Bankruptcy Court by which Proofs of Claim must be filed.

23.    "***Claims Register***" means the official register of Claims maintained by the Notice and Claims Agent.

24.    "***Class***" means a group of Claims or Equity Interests classified together pursuant to Section 1122(a)(1).

25.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order.

26.    "*Confirmation Date*" means the date upon which the Confirmation Order is entered on the Bankruptcy Court's docket.

27.    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under Section 1129.

28.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129.

29.    "*Consummation*" means the occurrence of the Effective Date.

30.    "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to an Executory Contract or Unexpired Lease) and all other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by Debtor pursuant to Sections 365 and 1123.

31.    "*Debtor*" has the meaning set forth in the introductory paragraph of this Plan.

32.    "*DIP Facility Claim*" means the claim held by DTLA Lending LLC, or its successors and assigns, under Debtor's Debtor-in-Possession financing, as approved by the Bankruptcy Court pursuant to the DIP Facility Order.

33.    "*DIP Facility Order*" means the Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and (III) Modifying the Automatic Stay [Dkt. 229] and any subsequent orders or amendments.

34.    "*Disclosure Statement*" means the disclosure statement and the supplement to disclosure statement, as they may be amended, modified, or supplemented from time to time, that were provided with the Plan that was prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

35.    "*Disputed*" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is not yet Allowed. To the extent Debtors dispute only a portion of a Claim or Equity Interest, such Claim or Equity Interest shall be deemed Allowed

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

in the amount Debtors do not dispute, if any, and Disputed as to the balance of such Claims or Equity Interests.

36.     "*Disputed Creditor Reserve Treatment*" shall have the meaning set forth Article VI(B) .

37.     "*Distribution Agent*" means the Liquidating Trustee, or any Person designated by the Liquidating Trustee, in the capacity as distribution agent under the Plan.

38.     "*Distribution Date*" means the date on which Holders of Claims are eligible to receive distributions under the Plan.

39.     "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which date shall be: (a) the Effective Date; or (b) such other date as designated by an order of the Bankruptcy Court.

40.     "*Effective Date*" means the date that is the first Business Day upon which all conditions to the effectiveness of the Plan set forth in Article VIII hereof have been satisfied or waived in accordance with the terms of the Plan. Upon the occurrence of such date, Debtors shall file a notice with the Bankruptcy Court indicating that the Effective Date has occurred.

41.     "*Entity*" means an "entity" as defined in Section 101(15).

42.     "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership, limited liability company interests (whether certificated or uncertificated), or other instrument evidencing an ownership interest in Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such interests at any time, and all rights arising with respect thereto that existed immediately before the Petition Date.

43.     "*Estate*" means the estate created for Debtor pursuant to Section 541 upon the commencement of the Chapter 11 Case.

44.     "*Exculpated Parties*" means each of the following in their capacities as such: (i) Debtor; (ii) all officers, directors, and members of Debtor in each case who are or were acting in such capacity on or after the Petition Date, (iii) all agents, attorneys, advisors, accountants, financial

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

advisors, consultants and other professionals to the extent such parties are or were acting in any such capacity for the parties identified above on or after the Petition Date.

45. "***Executory Contract***" means a contract or lease to which Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Sections 365 or 1123.

46. "***Final Order***" means, an order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction, as applicable, which has not been reversed, vacated, or stayed and as to which the time to appeal, petition for certiorari, or move for new trial, stay, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, re-argument, or rehearing is pending, or as to which any right to appeal, petition for certiorari, move for a new trial, move for a stay, reargue, or rehear has been waived in writing in form and substance satisfactory to Debtor or, in the event that an appeal, writ of certiorari, new trial, stay, or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction (as applicable) has been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing has been denied and the time to take any further appeal, petition for certiorari, or move for new trial, stay, re-argument, or rehearing has expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state or provincial court rules, may be filed with respect to such order, ruling, or judgment shall not cause an order, ruling, or judgment not to be a Final Order.

47. "***General Unsecured Claim***" means any unsecured Claim against Debtor not otherwise provided for in the Plan, including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which Debtor is a party; and (b) Claims arising from any litigation or other court, administrative, or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, Debtor related thereto.

48. "***Governmental Unit***" shall mean any United States national, federal, state, provincial, municipal, or local government, governmental, regulatory or administrative authority, agency, instrumentality or commission or any court, tribunal, or judicial body.

49. "***Holder***" means the beneficial holder of any Claim or Equity Interest.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

50.    "*Impaired*" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that falls within a Class of Claims or Equity Interests that is impaired within the meaning of Section 1124.

51.    *"Involuntary Petition"* means the involuntary petition for relief against Debtor submitted by the Petitioning Creditors under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

52.    *"LADI Secured Claim"* means any and all Claims of Los Angeles Development Inc., and its successors and assigns, against Debtor which are Secured Claims arising prior to the Petition Date.

53.    "*Law*" means any federal, state, local, or foreign "law" (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction.

54.    *"Lendlease Secured Claim"* means any and all Claims of Lendlease (US) Construction Inc. ("Lendlease") against Debtor which are Secured Claims arising prior to the Petition Date. The Lendlease Secured Claim is divided into subclasses (a) and (b). Class 3(a) includes the secured Claims held directly and exclusively by Lendlease, but does not include claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates. Class 3(b) includes the secured Claims held by subcontractors of Lendlease regarding which Debtor and Lendlease are both liable, including Claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates.

55.    "*Lien*" means a lien as defined in Section 101(37).

56.    "*Liquidating Trust*" means the trust established as of the Effective Date to, among other things, (i) distribute funds to Holders of Allowed Claims; (ii) administer and liquidate the Plan Administration Assets; and (iii) assert, settle or abandon any Causes of Action held by Debtor as of the Effective Date pursuant to a Liquidating Trust Agreement to be included in the Plan Supplement.

57.    "*Liquidating Trustee*" means the trustee of the Liquidation Trust, or his, her, or its successor who Debtor anticipates will be Bradley Sharp with Development Specialists, Inc.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

58.    "*Notice and Claims Agent*" means Stretto, Inc., in its capacity as noticing and claims agent for Debtor.

59.    "*Other Priority Claims*" means any and all Claims against Debtor entitled to priority in right of payment under Section 507(a) that are not Administrative Claims, Priority Tax Claims, or Professional Fee Claims.

60.    "*Other Secured Claims*" means any Secured Claims against Debtor that are not LADI Secured Claims, Lendlease Secured Claims or Secured Tax Claims.

61.    "*Person*" means a "person" as defined in Section 101(41).

62.    "*Petitioning Creditors*" shall mean Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc., Woodbridge Glass Inc., and Mitsubishi Electric US, Inc.

63.    "*Petition Date*" means the date the Involuntary Petition was filed.

64.    "*Plan*" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be amended, modified, or supplemented from time to time, that is prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

65.    "*Plan Administration Assets*" means all of Debtor's assets not sold to Purchaser, except for Sale Proceeds.

66.    "*Plan Documents*" means any and all documents, other than the Plan or Disclosure Statement, to be executed, delivered, or performed in connection with the occurrence of the Effective Date, subject to any consent rights set forth in the Plan.

67.    "*Plan Objection Deadline*" means the deadline established pursuant to the Bankruptcy Code, Bankruptcy Rules, or Order of the Court for parties to object to Confirmation of the Plan.

68.    "*Plan Supplement*" means the compilation of documents, schedules, and exhibits to the Plan, and forms thereof, to be filed by Debtor no later than the Plan Supplement Filing Date, as the same may be amended, modified, or supplemented.

69.    "*Plan Supplement Filing Date*" means the date that is seven calendar days prior to the Plan Objection Deadline, or such later date as is determined by Debtor.

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

70. "*Potential Architect Reserve*" means the amounts transferred to the Liquidating Trust equal to the amount any disputed portion of the Architect Claim. . Such amounts will be held by the Liquidating Trust until the dispute is resolved by Final Order, as set forth in Article III(B)(5) below.

71. "*Priority Tax Claims*" means any and all Claims against Debtor of the kind specified in Section 507(a)(8).

72. "*Professionals*" means (a) any and all professionals employed in the Chapter 11 Case pursuant to Sections 327, 328, 363, or 1103, or otherwise, and (b) any and all professionals or other Entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4).

73. "*Professional Fee Claim*" means any Claim of a Professional seeking payment of compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date and through and including the Confirmation Date, under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5).

74. "*Proof of Claim*" means a "proof of claim," as defined in Bankruptcy Rule 3001, or a motion or request for payment of fees, costs, or expenses made pursuant to Section 503 filed in the Chapter 11 Case.

75. "*Property*" means the property to be sold to Winning Bidder or the Backup Bidder, as defined in the Bidding Procedures Order, pursuant to the Purchase and Sale Contract.

76. "*Pro-Rata Share*" means as to a particular holder of an Allowed General Unsecured Claim, the ratio that the amount of such claim bears to the total amount of all Allowed General Unsecured Claims, following the resolution of all Disputed General Unsecured Claims.  .

77. "*Purchase and Sale Contract*" means that certain Purchase and Sale Contract, by and between Purchaser and Winning Bidder or Back-Up Bidder, as applicable and as defined in the Bid Procedures Order, as thereafter may be amended or modified, pertaining to the Sale.

78. "*Purchaser*" shall mean the Person or Entity purchasing the Property pursuant to the Bidding Procedures Order and Purchase and Sale Contract.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

79.     "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Equity Interests, the treatment provided for in Section 1124.

80.     "*Relief Date*" shall mean March 11, 2024, the date that the Court issued the Relief Order.

81.     "*Relief Order*" shall mean the Order for Relief entered by the Court on the Relief Date.

82.     "*Sale*" means the sale of the Property as set forth herein and pursuant to the Purchase and Sale Contract.

83.     "*Sale Proceeds*" means the net proceeds actually received by Debtor upon the closing of the Sale, less all costs and expenses arising from the sale of the Property.

84.     "*Section*" shall refer to the applicable section of the Bankruptcy Code, unless otherwise stated.

85.     "*Secured Claim*" means any and all Claims against Debtor that (a) are secured by a Lien on, or security interest in, property of Debtor, or that has the benefit of rights of setoff under Section 553, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value of such Holder's interest in Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in Section 506, or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

86.     "*Securities Act*" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

87.     "*Security*" has the meaning ascribed to such term in Section 101(49).

88.     "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege tax (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and any other similar tax imposed or assessed by any Governmental Unit.

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

89.    "**Statutory Fees**" means all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717.

90.    "**Subordinated Claim**" means any Claim that is subject to (a) subordination under Section 510(b), or (c) equitable subordination, as the Bankruptcy Court determines in a Final Order.

91.    "**Tax Code**" means the Internal Revenue Code, as amended.

92.    "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to Debtor of an intent to accept a particular distribution; (c) responded to Debtor's request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

93.    "**Unexpired Lease**" means a lease to which Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Section 365.

94.    "**Unimpaired**" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

95.    "**U.S. Trustee**" means the United States Trustee for the Central District of California.

96.    "**Wind Down**" means the process to wind down, dissolve, and liquidate Debtor and the Estate and distribute any of the Sale Proceeds and remaining assets in accordance with the Plan through the Liquidating Trustee.

B.    *Rules of Interpretation and Computation of Time.*

(1)    For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (ii) unless otherwise specified herein, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified herein, any reference to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  be amended, modified, or supplemented; (iv) unless otherwise specified herein, all references

2  herein to "Articles" and "Exhibits" are references to Articles and Exhibits, respectively, of the Plan;

3  (v) the words "herein," "hereof," "hereunder," and "hereto" refer to the Plan in its entirety rather

4  than to a particular portion or section of the Plan; (vi) the words "include" and "including," and

5  variations thereof, shall not be deemed to be terms of limitations, and shall be deemed to be

6  followed by the words "without limitation"; (viii) references to "shareholders," "directors," and/or

7  "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined

8  under the applicable state limited liability company Laws; (viii) captions and headings to Articles

9  are inserted for convenience of reference only and are not intended to be a part of or to affect the

10  interpretation hereof; (ix) unless otherwise specified herein, the rules of construction set forth in

11  Section 102 shall apply; (x) any term used in capitalized form herein that is not otherwise defined

12  but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned

13  to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xi) references

14  to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Case

15  under the Bankruptcy Court's CM/ECF system; and (xii) except as otherwise provided herein, any

16  references to the "Effective Date" shall mean the Effective Date or as soon as reasonably practicable

17  thereafter.

18  (2)    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of

19  time prescribed or allowed herein, unless otherwise provided for herein.

20  (3)    All references in this Plan to monetary figures refer to currency of the United States

21  of America, unless otherwise expressly provided.

22  (4)    Any immaterial effectuating provision may be interpreted by Debtor in a manner

23  that is consistent with the overall purpose and intent of the Plan without further Final Order of the

24  Bankruptcy Court.

25  **II    <u>UNCLASSIFIED CLAIMS</u>**

26  In accordance with Section 1123(a)(1), Administrative Claims, Priority Tax Claims and

27  Professional Fee Claims have not been classified and are thus excluded from the Classes of Claims

28  and Equity Interests Set forth in Article III of the Plan Below.

A.    *DIP Facility Claims*.

Unless otherwise agreed to by the Holder of an Allowed DIP Facility Claim and Debtor, each Holder of an Allowed DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed DIP Facility Claim on the date the Sale is closed unless the Sale Proceeds are less than the amount needed to pay the Allowed Secured Tax claims and the Allowed DIP Facility Claims in full, and in such circumstances, the amount of the Sale Proceeds not necessary to pay the Allowed Secured Tax Claim in full shall be paid to the Holder of an Allowed DIP Facility Claim pursuant to the DIP Facility Order.

B.    *Administrative Claims*.

(1)    Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and Debtor, each Holder of an Allowed Administrative Claim (except with respect to Priority Tax Claims, Professional Fee Claims, and Statutory Fees) shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed Administrative Claim, an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter; or (iii) at such other time and upon such other terms as set forth in a Final Order of the Bankruptcy Court.

(2)    All requests for payment of an Administrative Claim (other than Professional Fee Claims, Statutory Fees, or Administrative Claims that are not disputed and arose in the ordinary course of business) that accrued on or before the Effective Date must be filed with the Bankruptcy Court and served on Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims (other than Professional Fee Claims) that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

against Debtor, or the Estate, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

(3)    Debtor, in its sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. Debtor may also object to any Administrative Claim no later than 45 days after the Administrative Claims Bar Date, subject to: (i) any extensions granted by the Bankruptcy Court, (i) the agreement in writing of Debtor and the Holder of such Administrative Claim, or (iii) on motion of a party in interest approved by the Bankruptcy Court. Unless Debtor, the Liquidating Trustee, or other party with standing, objects to a timely filed and properly served Administrative Claim, a timely filed and properly served Administrative Claim shall be deemed Allowed in the amount requested. In the event that Debtor or the Liquidating Trustee objects to an Administrative Claim, the parties thereto may confer to attempt to settle such objection and, in the event that such settlement attempts fail, shall file a motion with the Bankruptcy Court to determine whether such Administrative Claim should be allowed and, if so, in what amount.

C.    *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C); *provided however*, that Debtor or the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty. To the extent any allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between Debtor and the Holder of such Claim, which such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy Law, or in the ordinary course of business. In the event that an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

D.    *Professional Fee Clams*

(1)    All final requests for payment of Professional Fee Claims must be filed no later than the Administrative Claims Bar Date. After notice and hearing, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(2)    Unless otherwise agreed to by the Holder of an Allowed Professional Fee Claim and Debtor, as applicable, to the extent an Allowed Professional Fee Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Professional Fee Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for of its Allowed Professional Fee Claim an amount of Cash equal to the unpaid portion of such Allowed Professional Fee Claim within five Business Days of entry of an Order approving such Professional Fee Claim, or as soon as reasonably practical thereafter.

(3)    Except as otherwise specifically provided herein, on and after the Confirmation Date, Debtor shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the implementation of the Plan and Consummation incurred by Debtor after the Confirmation Date in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court. Debtor shall pay, within ten Business Days, or as soon as reasonably practical thereafter, after submission of a detailed invoice to Debtor, such reasonable Claims for compensation or reimbursement of expenses incurred by Debtor's Professionals. From and after the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Statutory Fees*

Debtor shall pay all Statutory Fees on all disbursements, including Plan payments and disbursements in and outside the ordinary course of Debtor's business at the time of Confirmation, pursuant to the applicable statutory payment schedule. On and after the Effective Date, to the extent that the Chapter 11 Case remains open, and for so long as the Liquidating Trustee remains obligated to pay such quarterly fees, the Liquidating Trustee shall pay such applicable fees as they become

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1    due in the ordinary course of business until the Bankruptcy Court enters a final decree in the Chapter

2    11 Case.

3    **III     CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

4         A.     *Classification of Claims*[1]

5         The Plan constitutes a chapter 11 plan for Debtor, and the classification of Claims and

6    Equity Interests set forth herein shall apply to Debtor. In accordance with Section 1123(a)(1),

7    Debtors have not classified DIP Facility Claims, Administrative Claims, Priority Tax Claims, and

8    Professional Fee Claims, as described in Article II above.

9         The categories of Claims and Equity Interests listed below classify Claims and Equity

10   Interests for all purposes, including for purposes of voting, Confirmation, and distribution pursuant

11   to the Plan and pursuant to Sections 1122 and 1123(a)(1). A Claim or Equity Interest shall be

12   deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies

13   within the description of such Class and shall be deemed classified in a different Class to the extent

14   that any remainder of such Claim or Equity Interest qualifies within the description of such different

15   Class.

16        The classification and the manner of satisfying all Claims under the Plan take into

17   consideration: (a) the existence of guarantees or alleged guarantees by Debtor of obligations of

18   other Affiliates or Entities, if any; and (b) that Debtor may be joint obligors with other Affiliates or

19   Entities with respect to the same obligation.

20        B.     *Class Identification*

21        The following chart represents the classification of Claims and Equity Interests for Debtor

22   pursuant to the Plan:

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|------------------------------|--------|---------------|
| Class 1 | Secured Tax Claims | Not Impaired | No |
| Class 2 | LADI Secured Claims | Impaired | Yes |
| Class 3 | Lendlease Secured Claims | Impaired | Yes |
| Class 4 | Other Secured Claims | Impaired | Yes |

[1]   Debtor reserves the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law.

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

| Class 5 | Reserved | Not Impaired | No |
|---------|----------|--------------|-----|
| Class 6 | Other Priority Claims | Impaired | Yes |
| Class 7 | All General Unsecured Claims | Impaired | Yes |
| Class 8 | Intercompany Claims | Impaired | Yes |
| Class 9 | Subordinated Claims | Impaired | Yes |
| Class 10 | Equity Interests | Impaired | Yes |

C.    *Treatment and Voting Rights of Claims and Equity Interests*

Except to the extent that Debtor and a Holder of an Allowed Claim or Allowed Equity Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated herein, the Holder of an Allowed Claim or Allowed Equity Interest, as applicable, shall receive such treatment on the Effective Date, except as otherwise provided in and subject to Article VII below, or, if payment is not due, in accordance with its terms in the ordinary course.

(1)    *Class 1 – Secured Tax Claims*

    (a)    *Classification:* Class 1 consists of the Holders of tax claims which are secured by tax liens on the Property ("<u>Secured Tax Claims</u>").

    (b)    *Treatment:* Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Secured Tax Claim, each Holder of such Allowed Secured Tax Claim shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets up to the full amount of its Claim on or as soon as reasonably practicable after (1) the Effective Date, (2) the date on which such other Secured Tax Claim becomes an Allowed Secured Tax Claim, or (3) such other date as may be ordered by the Bankruptcy Court.

    (c)    *Impairment and Voting:* Class 1 is not impaired and not entitled to vote to accept or reject the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

(2)    *Class 2 – LADI Secured Claims*

    (a)    *Classification*: Class 2 consists of the LADI Secured Claim.

    (b)    *Treatment:* Except to the extent that a Holder of the Allowed LADI Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for the LADI Secured Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Allowed Secured Tax Claims and Allowed DIP Facility Claim are paid in full, following the payment of all or any portion of the Allowed Lendlease Secured Claims and/or Allowed Other Secured Claims which a court of competent jurisdiction has ruled has priority over any portion or all of any Allowed LADI Secured Claim in a Final Order, up to the full amount of the unpaid portion of such Allowed LADI Secured Claim, on the later of: (A) the Effective Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed.

    (c)    *Impairment and Voting:* Class 2 is Impaired and entitled to vote to accept or reject the Plan.

(3)    *Class 3 – Lendlease Secured Claims*

    (a)    *Classification:* Class 3 consists of all Lendlease Secured Claims.

    (b)    *Sub-Classes:* Class 3 is divided into two sub-classes. Class 3(a) includes the secured Claims held directly by Lendlease. Class 3(b) includes the Secured Claims held by subcontractors of Lendlease for which Debtor and Lendlease are both liable, including Claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates.

    (c)    *Treatment.*  Except to the extent that a Holder of the Allowed Lendlease Secured Claim in Classes 3(a) or 3(b) agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1    exchange for the Lendlease Secured Claims in Classes 3(a) and 3(b), each

2    Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan

3    Administration Assets remaining after the Allowed Secured Tax Claims and

4    Allowed DIP Facility Claim are paid in full, following the payment of all or

5    any portion of the Allowed LADI Secured Claim and/or Allowed Other

6    Secured Claims which a court of competent jurisdiction has ruled has

7    priority over any portion or all of any Allowed Lendlease Secured Claims in

8    a Final Order, up to the full amount of the unpaid portion of such Allowed

9    Lendlease Secured Claim, on the later of: (A) the Effective Date; (B) the

10    date calculated pursuant to the Disputed Creditor Reserve Treatment, as

11    defined in Article VI(B), if applicable; and (C) at such other time as Debtor

12    and such Holder agree or have agreed.

13    (d)    *Duplicative Claims*: The Liquidating Trust will make a distribution of an

14    Allowed Class 3(b) claim directly to the Holder, unless it is determined,

15    pursuant to the terms set forth in the Liquidating Trust Agreement, that the

16    Holder of the Class 3(b) claim was paid by Lendlease. In the event the

17    Holder of the Class 3(b) Claim was paid by Lendlease (US) Construction

18    Inc., the Liquidating Trust will make the distribution of such Allowed Claim

19    to Lendlease (US) Construction Inc.

20    (e)    *Impairment and Voting:* Class 3 is Impaired and entitled to vote to accept or

21    reject the Plan.

22    (4)    *Class 4 – Other Secured Claims*

23    (a)    *Classification:* Class 4 consists of all Other Secured Claims.

24    (b)    *Treatment:* Except to the extent that a Holder of the Allowed Other Secured

25    Claim agrees to less favorable treatment, in full and final satisfaction,

26    compromise, settlement, and release of and in exchange for the Other

27    Secured Claims, each Holder thereof shall be paid in Cash from the Sale

28    Proceeds and/or Plan Administration Assets remaining after the Allowed

1        Secured Tax Claims and Allowed DIP Facility Claim are paid in full,

2        following the payment of all or any portion of the Allowed LADI Secured

3        Claim and/or Allowed Lendlease Secured Claims which a court of

4        competent jurisdiction has ruled has priority over any portion or all of any

5        Allowed Other Secured Claim in a Final Order, up to the full amount of the

6        unpaid portion of such Allowed Other Secured Claim, on the later of: (A)

7        the Effective Date; (B) the date calculated pursuant to the Disputed Creditor

8        Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such

9        other time as Debtor and such Holder agree or have agreed.

10    (c)    *Treatment:* Class 4 is Impaired and entitled to vote to accept or reject the

11        Plan.

12  (5)    *Class 5- Reserved*

13  (6)    *Class 6 - Other Priority Claims*

14    (a)    *Classification:* Class 6 consists of all Other Priority Claims.

15    (b)    *Treatment*: Except to the extent that a Holder of an Other Priority Claim

16        agrees to less favorable treatment, in full and final satisfaction, compromise,

17        settlement, and release of and in exchange for each Other Priority Claim,

18        each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan

19        Administration Assets remaining after the Secured Tax Claims, LADI

20        Secured Claims, Lendlease Secured Claims, Other Secured Claims,

21        Administrative Claims, Priority Tax Claims, Professional Fee Claims, and

22        Statutory Fees are paid in full, up to the full amount of the unpaid portion of

23        such Other Priority Claim on the later of: (A) the Effective Date; (B) the date

24        calculated pursuant to the Disputed Creditor Reserve Treatment, as defined

25        in Article VI(B), if applicable; and (C) at such other time as Debtor and such

26        Holder agree or have agreed.

27    (c)    *Treatment:* Class 6 is Impaired and entitled to vote to accept or reject the

28        Plan.

*Bryan Cave Leighton Paisner LLP*
*120 Broadway, Suite 300*
*Santa Monica, CA 90401-2386*

(7)   *Class 7 – All General Unsecured Claims*

    (a)   *Classification:* Class 6 consists of all General Unsecured Claims.

    (b)   *Treatment:* Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each General Unsecured Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other Priority Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Statutory Fees are paid in full, up to the full amount of the unpaid portion of such General Unsecured Claim on the later of: (A) the Effective Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed. To the extent that any claims initially included in Class 7 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

    (c)   *Treatment:* Class 7 is Impaired and entitled to vote to accept or reject the Plan.

(8)   *Class 8 – Intercompany Claims.*

    (a)   *Classification:* Class 8 consists of all Claims held by Debtor's parents or affiliates ("<u>Intercompany Loan Claims</u>").

    (b)   *Treatment:* Except to the extent that a Holder of a Intercompany Loan Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Intercompany Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Priority Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Statutory Fees are paid in full, up to the full amount of the unpaid portion of such Intercompany Claim on the later of: (A) the Effective Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed. The Holders of Allowed Intercompany Claims shall be paid *in pari passu* with Holders of Allowed General Unsecured Claims outlined in Class 7 above. To the extent that any claims initially included in Class 8 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

(c)  *Treatment:* Class 8 is Impaired and entitled to vote to accept or reject the Plan

(9)  *Class 9 – Subordinated Claims*

(a)  *Classification*: Class 9 consists of all Subordinated Claims.

(b)  *Treatment*: Except to the extent that a Holder of a Subordinated Claim agrees to less favorable treatment, in full and final satisfaction, compromise and settlement, and release of an in exchange for each Subordinated Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after each Class with priority over such Subordinated Claim according to the Final Order which found that such Claim was a Subordinated Claim on the later of: (A) the Effective Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; or (C) at such other time as Debtor and such Holder agree or have agreed.

(10)  *Class 10 – Equity Interests*

(a)  *Classification:* Class 10 consists of all Equity Interests.

(b)  *Treatment:* Except to the extent that a Holder of an Equity Interest agrees to less favorable treatment, in full and final satisfaction, compromise,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  settlement, and release of and in exchange for each Equity Interest, each
2  Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan
3  Administration Assets remaining after the Secured Tax Claims, LADI
4  Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other
5  Priority Claims, Administrative Claims, Priority Tax Claims, Professional
6  Fee Claims, Statutory Fees, and General Unsecured Claims are paid in full,
7  on the later of: (A) the Effective Date; or (B) at such other time as Debtor
8  and such Holder agree or have agreed.

9     D.    *Special Provision Governing Unimpaired Claims*

10    To the extent that Debtor later amends this Plan to note that one or more of the Classes
11 identified above are Unimpaired, except as otherwise expressly provided herein, nothing in the Plan
12 shall affect Debtor's rights with respect to any Unimpaired Claim, including, but not limited to, all
13 rights to legal and equitable defenses, setoffs or recoupments against any such Unimpaired Claim.

14    E.    *Voting; Presumptions; Solicitation*

15    (1)    *Acceptance by Certain Impaired Classes.* Only Holders of Allowed Claims in
16 Impaired Classes are entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall
17 have accepted the Plan if: (i) the Holders of at least 66.6% in amount of the Allowed Claims actually
18 voting in such Class have voted to accept the Plan and (ii) the Holders of more than one half (1/2)
19 in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.
20 Currently, all Classes, except for Class1, are Impaired and have received, or will receive, Ballots
21 containing detailed voting instructions. Debtor reserves the right to amend this Plan to designate
22 certain Classes as Unimpaired in the event that a Purchase and Sale Contract is executed which, if
23 closed, result in one or more of the Classes identified above being unimpaired prior to the
24 submission of the Ballot Summary.

25    (2)    *Conclusively Presumed Acceptance by Unimpaired Classes.* In the event that this
26 Plan is amended to demonstrate that one or more Classes are Unimpaired, holders of such
27 Unimpaired Claims shall be conclusively presumed to accept the Plan pursuant to Section 1126(f)

28

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

of the Bankruptcy Code. Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holder shall not be solicited or included in the Ballot Summary.

(3)    *Controversy Concerning Impairment.* If a controversy arises as to whether any Claims or Equity Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

(4)    *Elimination of Classes.* To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan, for purposes of determining whether such Class has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

F.    *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and their respective distributions and treatments under the Plan, shall take into account and confirm the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under the general principles of equitable subordination, Section 510(b), or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Equity Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or any other such similar legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Pursuant to Section 510 of the Bankruptcy Code, except where otherwise provided herein, Debtor reserves the right to seek to reclassify any Allowed Claim or Equity Interest, following notice and a hearing and by Final Order

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

of the Court in accordance with any contractual, legal, or equitable subordination rights relating thereto.

G.    *No Waiver.*

Nothing contained in this Plan shall be construed to waive a Debtor's or other Entity's right to object on any basis to any Claim or Lien, including after the Effective Date.

**IV    MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *Compromise of Controversies*

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved under the Plan, and shall be deemed a motion to approve such good-faith compromise and settlement, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of Debtor and the Estate. Subject to Article VII below, all distributions made to Holders of Allowed Claims and Allowed Equity Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Sources of Consideration for Plan Distribution*

Debtor shall fund distributions under the Plan with the Sale Proceeds, Plan Administration Assets, and Cash on hand. Cash payments to be made pursuant to the Plan will be made by Debtor or the Liquidating Trustee.

C.    *Sale.*

(1)    After Confirmation, Debtor shall consummate the Sale, and any other transactions contemplated by the Purchase and Sale Contract. Upon consummation of the Sale, the Property shall be transferred and vest in Purchaser, pursuant to the terms of the Purchase and Sale Contract, the Plan, and Confirmation Order. Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and Purchase and Sale Contract will be deemed approved, all matters provided for under

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

the Purchase and Sale Contract and any related documentation will be deemed authorized and approved without any requirement of further act or action and Debtor will be authorized to execute and deliver, and to Consummate the transactions contemplated by, the Purchase and Sale Contract and any related documentation, as well as to execute, deliver, file, record, and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(2)     Prior to, on, or as soon as reasonably practicable after the Effective Date, Debtor may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or any Plan Supplement, including: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; and (ii) all other actions that Debtor reasonably determines are necessary or appropriate.

D.     *Plan Administration and Wind Down*

(1)     On the Effective Date, and subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall accept authority over the Plan Administration Assets as a plan administration officer; *provided however*, that that the Liquidating Trustee may abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, have no value to the administration of the Plan or the Wind Down. As of the Effective Date, all assets vested as Plan Administration Assets and all unincumbered assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order

(2)     The powers, rights, and responsibilities of the Liquidating Trustee shall include the authority and responsibility to: (i) receive, manage, invest, supervise, and protect the Plan Administration Assets; (ii) pay taxes or other obligations incurred by the Estate after the Effective Date; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

and distribution of Plan Administration Assets; (iv) calculate and implement distributions of Plan Administration Assets; (v) assert, settle, and abandon retained Causes of Action; (vi) resolve issues involving Claims and Equity Interests; (vii) liquidate the Plan Administration Assets in a commercially reasonable manner, and (viii) perform such other duties and functions that are consistent with the implementation of the Plan and undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case. The Liquidating Trustee is the successor to Debtor, the Estate, and Debtor's rights to books and records and to all of Debtor's rights and privileges, including attorney client privilege. The Liquidating Trustee shall be authorized pursuant to Section 554, in its sole discretion without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals or copies of any documents, books and records, including any electronic records, of Debtor which the Liquidating Trustee reasonably concludes are burdensome or of inconsequential value and benefit five (5) years following the Effective Date, so long as such documents are no longer subject to any pending litigation hold.

(3)     On the Effective Date, the Liquidating Trustee shall also have the power, right, and responsibility to conduct the Wind Down and to take possession of all books, records, and files of Debtor and the Estate and provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines that retention of same is no longer necessary or required. The Liquidating Trustee is authorized and empowered to effect the dissolution of Debtor as soon as practicable after the Effective Date, but after the Plan Administration Assets are liquidated, without the need for any company action or approval, and neither Debtor nor the Liquidating Trustee shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date, the Liquidating Trustee shall Wind Down the affairs of Debtor and file final tax returns for Debtor. The Liquidating Trustee shall be authorized to file on behalf of Debtor and any non-Debtor Affiliates, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of Debtor.

(4)     Debtor shall indemnify and hold harmless the Liquidating Trustee solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Trustee's gross negligence, willful misconduct, or criminal conduct.

(5)     From and after the Effective Date, assertion, settlement, or abandonment of all retained Causes of Action shall be the sole responsibility of the Liquidating Trustee pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estate to assert, settle, or abandon such retained Causes of Action as the sole representative of the Estate pursuant to Section 1123(b)(3) of the Bankruptcy Code. All such retained Causes of Action are reserved and preserved. All causes of action between the Debtor and any other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the Effective Date. At such time, the Liquidating Trust will be entitled to all claims, defenses, and other rights and privileges accorded to the Debtor in such proceedings following their transfer.  Parties who are engaged in active litigation as of the Effective Date will be permitted to continue such litigation in the Liquidating Trust.

(6)     All reasonable expenses incurred by the Liquidating Trustee, if any, shall be the responsibility of the Estate and paid from Plan Administration Assets or Sale Proceeds.

E.     *Corporate Action*.

(1)     On the Effective Date, all actions contemplated by the Plan, any Plan Supplement, and the Purchase and Sale Contract shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of Debtor and any corporate action required by Debtor in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, directors, or officers of Debtor or otherwise.

(2)     On or before the Effective Date, as applicable, the appropriate officers of Debtor, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan and the Purchase and Sale Contract (or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

necessary or desirable to effect the transactions contemplated by the foregoing) in the name of and on behalf of Debtor, and any and all agreements, documents, and instruments relating to the foregoing.

(3)    The authorizations and approvals contemplated by this Section IV, E. shall be effective notwithstanding any requirements under non-bankruptcy Law.

(4)    After the Effective Date, to the extent necessary and pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of Debtor, including the winding down and dissolution of Debtor.

F.    *Vesting of Assets.*

On the Effective Date, pursuant to Sections 1141(b) and (c), the Plan Administration Assets, if any, shall vest in the Liquidating Trust for the purpose of liquidating the Plan Administration Assets and winding down the Estate. Unencumbered Plan Administration Assets shall transfer to the Liquidating Trust free and clear of all Liens, Claims, charges, and other encumbrances.

G.    *Exemptions from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by Section 1146(a), Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code, the Sale, and any other transfer from Debtor to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

H.    *Effectuating Documents; Further Transactions.*

Prior to, on, and after the Effective Date, Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to both Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

I.    *Nonconsensual Confirmation*

Debtor intends to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

J.    *Closing of Chapter 11 Case.*

The Liquidating Trustee shall promptly after the full administration of the Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Case. Upon the filing of a motion to close the Case, Debtor shall file a final report with respect to the Case pursuant to Local Rule 3022-1.

**V    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

(1)    All Executory Contracts and Unexpired Leases of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and

requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule; (ii) those that have been previously assumed pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be assumed pursuant to the terms of the Plan. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V but not assigned to a third party shall be deemed to be accepted by Debtor, and be fully enforceable by, Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Plan, or by any order of the Bankruptcy Court.

(2)    The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in this Plan, any Plan Supplement, and the Assumption Schedule pursuant Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of Debtor, the Estate, and all parties in interest in the Chapter 11 Case; and (iii) providing that the requirements for assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein; *provided, however*, that such Claims must be filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee and counsel for Debtor within thirty (30) days of the Bankruptcy Court entering the Confirmation Order; *provided, further*, that any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within the time required by this section will be forever barred from assertion against Debtor, the Estate, the property of Debtor, or the Liquidating Trustee. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a General Unsecured Claim.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(3)  Except as otherwise provided herein or agreed to by Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

(4)  Debtor shall create the Assumption Schedule in consultation with Purchaser, and Purchaser shall approve any assumptions, rejections, or modifications of material Executory Contracts and Unexpired Leases as set forth therein, and such approval may not be unreasonably withheld, conditioned, or delayed. Notwithstanding anything to the contrary herein, Debtor reserves the right to alter, amend, modify, or supplement the Assumption Schedule at any time before the Effective Date, in consultation with Purchaser.

B.  *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(1)  Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1), by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. No later than the Plan Supplement Filing Date, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Debtor shall file and serve upon the counterparties to the agreements listed in the Assumption Schedule notices of proposed assumption and proposed Cure Costs, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost must be filed, served, and received by Debtor within fourteen (14) days of such assumption or assumption and assignment.

(2)    Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Cost five (5) Business Days prior to the Confirmation Hearing shall be deemed to have consented to such assumption, assumption and assignment, or Cure Cost. In the event of a dispute regarding: (i) the amount of any Cure Cost, (ii) the ability Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365(b), if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assumption and assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assumption and assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided, however*, that Debtor may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, Debtor reserves the right to reject any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost for an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

(3)    Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the associated Cure Cost, if any, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the associated Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Insurance Policies*

Notwithstanding anything to the contrary in this Plan, objection to any Claim, or any other document related to any of the foregoing, all insurance policies pursuant to which Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by Debtor or the Liquidating Trustee, as applicable, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies not expressly assumed or assumed and assigned shall be deemed rejected.

D.    *Reservation of Rights*.

Nothing contained in this Plan shall constitute an admission by Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtor shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

E.    *Nonoccurrence of the Effective Date*.

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to pursuant to Section 365(d)(4), unless such deadline(s) have expired.

F.    *Assumption of the Architect Claim*.

Architect owns the copyright in the Architect's instruments of service (including architectural plans, specifications, designs, associated renderings, and any electronic format thereof

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

including BIM and AutoCAD) (the "<u>Instruments of Service</u>"), which Instruments of Service may not be used in connection with the bidding or sale process without Architect's written consent.

Debtor has elected to assume (or assume and assign) the Architect Agreement and will cure any defaults at the closing of the Sale by paying the Architect Claim Amount, less the Potential Architect Reserve, from Sale Proceeds on the Effective Date. Upon such assumption of the Architect Agreement, including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to perform under the Architect Agreement (other than as set forth below), (b) Debtor (or an assignee) shall have no obligation to continue to perform under the Architect Agreement post-closing, and (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor or the estate (other than its rights under the Plan, which are expressly preserved, and its rights under any New Architect Agreement, if applicable).  Architect has provided provisions for its consent a license and or New Architect Agreement, that will be set forth in the Assumption Schedule (defined below). However, no payment of any portion of the Architect Claim Amount that is Disputed as of the Effective Date will be made until such disputed portions are resolved pursuant to Article VII below.

## VI    PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distribution on Account of Claims and Equity Interests Allowed as of the Effective Date.*

Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Distribution Date; *provided, however*, that: (a) Allowed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article II of this Plan, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    the Effective Date, such Claim shall be paid in accordance with the terms of any agreement

2    between Debtor and the Holder of such Claim, or as may be due and payable under applicable

3    non-bankruptcy Law, or in the ordinary course of business.

4          On or before the Effective Date, and in the event that the Sale Proceeds are insufficient to

5    pay the LADI Secured Claims and Lendlease Secured Claims in full, Debtor shall deposit all Sale

6    Proceeds, less the amounts paid to satisfy the DIP Facility Claims and any costs associated with

7    the Sale, into an escrow account, pursuant to an interest bearing escrow agreement that is

8    reasonably acceptable to the Holders of the LADI Secured Claims and Lendlease Secured Claims

9    and for the benefit of the Holders of the LADI Secured Claims and Lendlease Secured Claims.

10    The Sale Proceeds that are escrowed shall be released from the escrow account only be: (i) Final

11    Order of the Court regarding the respective priorities of the LADI Secured Claims and Lendlease

12    Secured Claims, or (ii) by written agreement of the Holders of the LADI Secured Claims and

13    Lendlease Secured Claims.

14          B.    *Distribution of Account of Claims and Equity Interest Allowed After the Effective*

15    *Date.*

16          (1)    *Disputed Creditor Reserve Treatment.*

17          (a)    *Transfer of Disputed Claims to Liquidating Trust.* If the Sale Proceeds are

18    insufficient to pay Holders of Secured Claims in full, or if a Claim is

19    otherwise Disputed, then the portion of the Sale Proceeds that would be used

20    to pay such Claims will be deposited into a blocked segregated account to

21    be maintained by the Liquidating Trust for the benefit of the Holders of such

22    Disputed Claims (the "Disputed Creditor Reserve") with all such liens,

23    claims, encumbrances, and/or interests of the Holder of the Disputed Claim

24    to the Property attaching to the proceeds to the same order and priority as

25    they previously attached to the Property.

26          (b)    *Payments and Distributions on Disputed Claims.* Except as otherwise

27    provided in this Plan, a Final Order, or as agreed to by the relevant parties,

28    distributions under this Plan on account of Disputed Claims that become

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Allowed after the Effective Date shall be made on the first day that Debtor shall make payment on such claim the later of (i) on the first day that is thirty (30) Business Days after such Disputed Claim becomes Allowed, in whole or in part; (ii) on the day that distributions become available to members of that Class; or (iii) with respect to Holders of General Unsecured Claims, the day the Pro Rata Share of such Holder is determined (the "Disputed Creditor Reserve Treatment") *provided, however*, that: (i) Disputed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II of this Plan.

(2)     *Special Rules for Distributions to Holders of Disputed Claims.* Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes related to such Disputed Claim has been resolved by settlement or agreement among the relevant parties or by Final Order.

C.     *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided herein, on the Distribution Date, each Holder of an Allowed Claim shall receive the full amount of the distribution that the Plan provides for Allowed Claims in the applicable Class. Except as otherwise provided in this Plan or any order of the Bankruptcy Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding the foregoing, Holders of Secured Claims subject to the

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Disputed Creditor Reserve Treatment may recover post-Effective Date interest if otherwise allowed pursuant to Section 506(b) of the Bankruptcy Code.

      D.     *Delivery of Distributions.*

      (1)     On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty (20) or fewer days before the Distribution Date, Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. Debtor, the Liquidating Trustee and the Distribution Agent shall have no obligation to recognize any transfer of any applicable Claims occurring after the close of business on the Distribution Record Date, and shall be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date.

      (2)     *Cash Distributions*. Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of Debtor or the Liquidating Trustee, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

      (3)     *Delivery of Distributions in General*. Except as otherwise provided in the Plan, Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in Debtor's records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided, however*, that the manner of such distributions shall be determined at the discretion of Debtor or the Liquidating Trustee, and no Distribution Agent shall incur any liability whatsoever on account of any distributions under the Plan.

      E.     *Distributions by Distribution Agent.*

      The Liquidating Trustee shall serve as Distribution Agent (provided that the Liquidating Trustee may hire professional or consultants to assist with making disbursements or to act as

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Distribution Agent) and shall cause all distributions to be made to Holders of Claims after the Effective Date. Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

F.      *Minimum Distributions.*

Notwithstanding anything herein to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar or share of applicable equity interests (up or down), with half dollars and half shares of applicable equity interests or less being rounded down.

G.      *Undeliverable Distributions.*

(1)      *Holders of Certain Undeliverable Distributions.* If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to Debtor or the Liquidating Trustee (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of Debtor or the Liquidating Trustee, subject to Section 6.7(b) below, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(2)      *Failure to Claim Undeliverable Distributions.* Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after such distribution shall be deemed unclaimed property under Section 347(b) and such Unclaimed Distribution shall revert to and vest in Debtor or the Liquidating Trustee free of any restrictions thereon. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(3)    *Failure to Present Checks*. Checks issued by Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check forever barred, estopped, and enjoined from asserting any such Claim against Debtor, the Liquidating Trustee, or its property. Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment Laws, all such distributions shall revert to Debtor or the Liquidating Trustee. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

H.    *Compliance with Tax Requirements/Allocations*.

In connection with this Plan, to the extent applicable, Debtor and the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.    *Surrender of Cancelled Instruments or Securities*.

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim shall be deemed to have surrendered such certificate or instrument to the Liquidating Trustee. Except as otherwise expressly provided in the Plan, such surrendered certificate or instrument shall be

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

cancelled solely with respect to Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interests, which shall continue in effect. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

J.      *Claims Paid or Payable by Third Parties*.

(1)      *Claims Paid by Third Parties*. The Notice and Claims Agent, as applicable, shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trustee without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(2)      *Claims Payable by Insurance*. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of Debtor's insurance policies, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policies. To the extent that one or more of Debtor's insurers satisfies or agrees to satisfy in full or in part a Claim, if any, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(3)      Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

nor shall anything contained herein constitute or be deemed a waiver by such insurers of any

defenses, including coverage defenses, held by such insurers.

## VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY INTERESTS

A.    *Allowance of Claims and Equity Interests.*

(1)    Except as provided in Article IX of this Plan, the Liquidating Trustee shall have and retain any and all rights and defenses Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

(2)    Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties.

B.    *Claims Administration Responsibility.*

As of the Effective Date, all pending objections to Claims transferred to the Liquidating Trust, who will be entitled to all rights, privileges and defenses held by the Debtor with respect to such Claims. Except as otherwise specifically provided in this Plan or order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, and subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the authority for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Equity Interests in, Debtor, including the authority: (a) to file, withdraw, or litigate to judgment objections to Claims or Equity Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

approval by the Bankruptcy Court. In the event that any objection to a Claim filed by Debtor remains pending as of the Effective Date, the Liquidating Trustee shall be deemed substituted for Debtor as the objecting party.

Notwithstanding this Article VII(B), other parties in interest may object to Claims in accordance with the terms of the Liquidating Trust Agreement.

C.    *Estimation of Claims and Equity Interests.*

Before or after the Effective Date, Debtor or the Liquidating Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Equity Interest pursuant to Section 502(c), or determine the amounts of secured and priority claims pursuant to Bankruptcy Rule 3012, for any reason, regardless of whether any party previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or Equity Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Equity Interest, such estimated amount shall constitute a limitation on the maximum amount of such Claim or Equity Interest for all purposes under the Plan, and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any distribution on such Claim or Equity Interest. Notwithstanding Section 502(j), in no event shall any Holder of a Claim that has been estimated be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. Each of the foregoing procedures are cumulative and not exclusive of one another. Claims may be estimated and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. For the avoidance of doubt, nothing in this subsection shall impact any priority dispute pending between any other Creditors in this Court or any court of competent jurisdiction.

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

D.      *Adjustment to Claims and Equity Interests Without Objection.*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without filing an objection to such Claim or Equity Interest or further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Certain Claims.*

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550, or 553 or by a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be deemed disallowed pursuant to Section 502(d), and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due have been turned over or paid to the Liquidating Trustee.

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice, action, order, or approval of the Bankruptcy Court and the Holders of such Claims shall not receive any distributions on account of such Claims.

F.      *Amendments to Claims.*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

G.      *No Interest on Claims, Equity Interests, or Disputed Claims.*

Unless otherwise specifically provided for in this Plan, or as otherwise required by Section 506(b) of the Bankruptcy Code, Postpetition interest shall not accrue or be paid on Claims or Equity Interests and no Holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Equity Interest. Without limiting the foregoing, unless otherwise specifically provided for in this Plan, or otherwise required by Section 506(b) of the Bankruptcy

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Code, interest shall not accrue or be paid on any Disputed Claim from the Effective Date to the date a final distribution is made, if any.

## VIII    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to Confirmation of the Plan.*

The following are conditions precedent to the entry of the Confirmation Order:

(1)    The Plan Supplement and all of the schedules, documents, and exhibits contained therein a have been filed, and;

(2)    The Winning Bidder and/or Backup Bidder (as defined in the Bidding Procedures Order) has been selected, through the Auction or otherwise.

B.    *Conditions Precedent to the Effective Date*

The Effective Date shall not occur unless and until each of the following conditions have occurred or been waived in accordance with the terms herein:

(1)    all documents, certificates, and agreements necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable Laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(2)    there shall be no ruling, judgment, or order issued, by any Governmental Unit or otherwise making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Sale; and

(3)    the Sale shall have closed and been consummated.

C.    *Waiver of Conditions Precedent.*

Debtor may waive any of the conditions to the Effective Date set forth above at any time, without any notice to any parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

D.      *Effect of Failure of Conditions Precedent.*

If the Effective Date does not occur, then upon notice by Debtor to the Bankruptcy Court: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in this Plan or the Confirmation Order shall: (i) constitute a waiver or release of any Claims, Equity Interests, (ii) prejudice in any manner the rights of Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtor or any other Entity.

E.      *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained in this Plan, or action taken by Debtor or First Lien Lender with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

F.      *Substantial Consummation of Plan.*

Substantial consummation of the Plan under Section 1101(2) shall be deemed to occur on the Effective Date.

## IX    **EFFECT OF CONFIRMATION**

A.      *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind and inure to the benefit of Debtor, the Liquidating Trustee, and each Holder of a Claim against or Equity Interest in Debtor and inure to the benefit of and be binding on Debtor's, the Liquidating Trustee, and Holder's respective successors and assigns, regardless of whether the Claim or Equity Interest of such Holder is Impaired under the Plan and whether such Holder has accepted or rejected the Plan or is deemed to have accepted or rejected the Plan.

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

B.       *Compromise and Settlement of Claims and Controversies*.

Pursuant to Section 1123 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest, and shall be deemed a motion to approve such good-faith compromise. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against Debtor and its Estate and Causes of Action against other Entities.

C.       *Injunctions*.

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively, or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, or termination pursuant to this Plan. Except as provided in this Plan or the Confirmation Order, all entities that have held, currently hold, or may hold a claim or other debt or liability or an interest or other right of an equity security holder are permanently enjoined from taking any of the following actions against Debtor, the Liquidating Trustee, or any of their property on account of such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

or is inconsistent with the provisions of this Plan. By accepting a distribution pursuant to this Plan, each holder of an allowed claim shall be deemed to have specifically consented to the injunctions set forth in this Section. For the avoidance of doubt, nothing in this subsection shall impact any priority dispute pending between any other Creditors in this Court or any court of competent jurisdiction.

D.    *Exculpation.*

Except as otherwise specifically provided for in this Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby exculpated from, any cause of action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, Debtor's Chapter 11 Case, in whole or in part, the formulation, preparation, dissemination, and negotiation of this Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with this Plan, the Disclosure Statement, the filing of this Chapter 11 case, the pursuit of Plan confirmation, the administration and implementation of this Plan, or distribution of payments made under this Plan or any related act , except for claims or causes of action arising from an act or omission that is judicially determined in a final non-appealable order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon the consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to this Plan and therefore, are not, and on account of such distributions shall not b, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the avoidance of doubt, nothing in this subsection shall impact any priority dispute pending between any other Creditors in this Court or any court of competent jurisdiction and nothing in this section shall prevent any party in interest from objecting to any Intercompany Loan Claim.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

E.    *Setoffs and Recoupment*

(1)    Except as otherwise provided herein, the Liquidating Trustee, pursuant to the Bankruptcy Code, applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or the Liquidating Trustee may hold against such Holder, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order, or otherwise); *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Liquidating Trustee with respect to such Claims, rights, and Causes of Action.

(2)    In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of a Debtor or the Liquidating Trustee, as applicable, unless such Holder has timely and properly filed a Proof of Claim preserving such setoff or recoupment in such Proof of Claim.

F.    *Retention of Causes of Action; Reservation of Rights*.

Except as otherwise provided in this Article IX, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with Debtor including actions arising under Chapter 5 of the Bankruptcy Code. Except as provided in any order entered by the Bankruptcy Court, the Liquidating Trustee shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's legal and equitable rights in respect of any Unimpaired Claim may be asserted after the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1  Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been

2  commenced..

3      G.    *Release of Liens*

4      Except as otherwise provided herein or in any contract, instrument, release, or other

5  agreement or document created pursuant to the Plan, on the Effective Date and concurrently with

6  the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges,

7  or other security interests against any unencumbered property of the Estate shall be fully released

8  and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of

9  trust, Liens, pledges, or other security interests shall revert to the Liquidating Trustee and its

10  successors and assigns. For the avoidance of doubt, nothing in this subsection shall impact any

11  priority dispute pending between any other Creditors in this Court or any court of competent

12  jurisdiction and any distributions on account of such Disputed Claims shall be made as set forth

13  in Article VI(B).

14  **X    RETENTION OF JURISDICTION**

15      Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

16  Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the

17  Liquidating Trust, Chapter 11 Case and the Plan pursuant to Sections 105(a) and 1142, including

18  jurisdiction to:

19      (1)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority,

20  nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including

21  the resolution of any request for payment and any and all objections to the allowance, classification,

22  priority or amount of Claims or Equity Interests;

23      (2)    Decide and resolve all matters related to the granting and denying, in whole or in

24  part, of any applications for allowance of compensation or reimbursement of expenses to

25  Professionals authorized pursuant to the Bankruptcy Code or the Plan;

26      (3)    Resolve any matters related to: (i) the assumption, assumption and assignment, or

27  rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary,

28  liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Contract or Unexpired Lease that is assumed; (iii) Debtor's or the Liquidating Trustee's amendment, modification, or supplement after the Effective Date, pursuant to Article V of this Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(4)    Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan;

(5)    Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving a Debtor, that may be pending on the Effective Date;

(6)    Adjudicate, decide or resolve any and all matters related to Causes of Action;

(7)    Adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(8)    Resolve any and all avoidance or recovery actions under Sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(9)    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order or any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Plan Supplement, or Confirmation Order;

(10)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or Consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, indentures, and other agreements or documents created in connection with this Plan or the Confirmation Order;

(11)    Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(12)    Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(13)    Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4) of the Bankruptcy Code;

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(14)    Enforce the injunction and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(15)    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the injunctions and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

(16)    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(17)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(18)    Determine any other matters that may arise in connection with or relate to this Plan, the Confirmation Order, or any contract, instrument, indenture, or other agreement or document created in connection therewith;

(19)    Enter an order or final decree concluding or closing the Chapter 11 Case;

(20)    Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(21)    Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(22)    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(23)    Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(24)    Enforce all orders previously entered by the Bankruptcy Court; and

(25)    Hear any other matter not inconsistent with the Bankruptcy Code.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## XI  **MISCELLANEOUS PROVISIONS**

A.  *Immediate Binding Effect.*

Notwithstanding the Bankruptcy Rules, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor, the Liquidating Trustee, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.  *Amendments.*

(1)  *Plan Modifications.* Subject to the limitations contained in this Plan, and in accordance with the Bankruptcy Code and the Bankruptcy Rules: (i) Debtor reserves the right, to amend or modify this Plan, including amendments or modifications to satisfy Section 1129(a) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, Debtor or the Liquidating Trustee, as applicable, may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

(2)  *Effect of Confirmation on Modifications.* Upon entry of the Confirmation Order, all modifications or amendments to the Plan occurring on or after the solicitation thereof shall be deemed approved pursuant to Section 1127(a) of the Bankruptcy Code and shall not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

(3)  *Technical Amendments.* Prior to the Effective Date, Debtor may make technical adjustments and modifications to the Plan that do not adversely affect the treatment of Holders of Claims or Equity Interests thereunder, without further order or approval of the Bankruptcy Court.

C.      *Governing Law.*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule, or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan provides otherwise, the Plan shall be governed and construed in accordance with the Laws of the State of California, without giving effect to the principles of conflict of Laws thereof. Corporate governance matters shall be governed by the laws of the applicable state of incorporation, formation, or functional equivalent thereof, as applicable.

D.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, Affiliate, assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

E.      *Severability.*

If, prior to the entry of the Confirmation Order, the Bankruptcy Court determines that any term or provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor, shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, which term shall thereafter apply as so altered or interpreted. Notwithstanding the forgoing, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified, and (c) non-severable and mutually dependent.

F.      *Controlling Document.*

In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

document or in the Confirmation Order). In the event of a conflict between the Plan and the Disclosure Statement, the terms of this Plan shall control.

The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency or conflict between the Plan and the Confirmation Order that cannot be so construed, then, solely to the extent necessary, the applicable provisions of the Confirmation Order shall control and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

G.    *Filing of Additional Documents.*

On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor or the Liquidating Trustee, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.    *Reservation of Rights.*

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. The Plan, Disclosure Statement, and Plan Supplement, or anything contained therein, or any action Debtor takes with respect thereto, shall be deemed to be an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

I.    *Service of Documents.*

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Liquidating Trustee shall also be served on:

Bradley Sharp
333 South Grand Ave. Ste. 4100
Los Angeles, CA 90071

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

With copies to:
Bryan Cave Leighton Paisner, LLP
Sharon Z. Weiss
120 Broadway, Ste. 300
Santa Monica, CA 90401

After the Effective Date, the Liquidating Trustee has authority to provide notice to Parties in Interest that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such requests.

J.      *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date: (a) Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy Law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) Debtor, and its agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

K.      *Tax Reporting and Compliance.*

Debtor shall be authorized to request an expedited determination under Section 505(b) for all tax returns filed for, or on behalf of, Debtor for any and all taxable periods ending after the Petition Date through, and including, the dissolution of Debtor.

L.      *Exhibits, Schedules and Supplements.*

All exhibits, schedules, and supplements to this Plan are incorporated into and made a part of Plan as if fully set forth herein. To the extent any exhibit, schedule, or supplement is inconsistent with the terms of this Plan and unless otherwise provided for in the Confirmation Order, the terms of such exhibit, schedule, or supplement shall control as to the transactions contemplated thereby

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    and the terms of this Plan shall control as to any Plan provision as may be required under such

2    exhibit, schedule, or supplement.

3        M.    *Entire Agreement*.

4        Except as otherwise set forth herein, on the Effective Date the Plan shall supersede all

5    previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

6    representations on such subjects, all of which have become merged and integrated into the Plan.

7        N.    *Allocation of Payments*.

8        To the extent that any Allowed Claim entitled to distribution hereunder is comprised of

9    indebtedness and accrued but unpaid interest thereon, such distribution shall, for all U.S. federal

10    income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent

11    that the consideration exceeds such principal amount, to the portion of such Claim representing

12    accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such

13    Allowed Claim).

14

15    Dated: September 4, 2024            Respectfully submitted,

16                        BRYAN CAVE LEIGHTON PAISNER LLP

17                        By: */s/ Sharon Z. Weiss*
                            Sharon Z. Weiss
18                        Attorneys for Debtor-in-Possession

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

# EXHIBIT B

1 | **BRYAN CAVE LEIGHTON PAISNER LLP**
2 | Sharon Z. Weiss (State Bar No.: 169446)
  | sharon.weiss@bclplaw.com
3 | 120 Broadway, Suite 300
  | Santa Monica, CA 90401-2386
4 | Telephone: (310) 576-2100
  | Facsimile: (310) 576-2200
5 |
6 | Jarret P. Hitchings (*Admitted Pro Hac Vice*)
  | jarret.hitchings@bclplaw.com
7 | One Wells Fargo Center
  | 301 S. College Street, Suite 2150
8 | Charlotte, NC 28202
  | Telephone: (704) 749-8999
9 | Facsimile: (704) 749-8990

10 | *Attorneys for Debtor and Debtor in Possession*

11

12 | **UNITED STATES BANKRUPTCY COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | **LOS ANGELES DIVISION**

15 | In re | Case No. 2:24-bk-11057-DS

16 | Oceanwide Plaza LLC, | Chapter 11

17 | Debtor. | **DEBTOR'S ~~SUPPLEMENT TO~~SECOND**
18 | | **AMENDED DISCLOSURE STATEMENT**
   | | **DESCRIBING DEBTOR'S LIQUIDATING**
19 | | **PLAN OF REORGANIZATION (DATED**
   | | **~~August 19~~SEPTEMBER 4, 2024)**

20 | | Disclosure Statement Hearing
21 | | Date:   September 5, 2024
   | | Time:   1:00 p.m.
22 | | Place:  Ctrm 1634/Via Zoom
23 | |         255 East Temple Street
   | |         Los Angeles, CA 90012
24 |
25 | | Plan Confirmation Hearing
   | | Date:   October 16, 2024
26 | | Time:   10:00 a.m.
   | | Place:  Ctrm 1634/Via Zoom
27 | |         255 East Temple Street
   | |         Los Angeles, CA 90012
28 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................... iii

DISCLAIMER ........................................................................................................1

I.      INTRODUCTION ....................................................................................2

II.     BACKGROUND ......................................................................................4

        A.    Description and History of Debtor's Business and a Summary of the
              Circumstances Which Led to the Filing of this Case. ............................4

              Debtor's Business Operations ..................................................................4

              Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize ................6

              The Webcor Litigation ..........................................................................~~6~~7

              Debtor Is Working With LA City As A Result of International Attention
              Causing Security Issues ...........................................................................8

        B.    Pre-Petition Financing Arrangements ........................................................9

        C.    Events During Debtor's Chapter 11 Case. .............................................10

              a.    Employment of Professionals and Consultants ...........................10

              b.    Claims Bar Date ........................................................................10

              c.    Summary of Scheduled and Filed Claims ...................................~~10~~11

                    i.     Secured Claims .................................................................11

                    ii.    Priority Tax Claims .........................................................11

                    iii.   Non-Tax Priority Claims .................................................11

                    iv.    General Unsecured Claims ...............................................11

                    v.     Intercompany Loans ........................................................11

              d.    DIP Financing .............................................................................12

              e.    Limited Relief from Stay Regarding the State Court Action ................13

              f.     U.S. Trustee's Motion to Dismiss Denied ...................................~~13~~14

              g.    Settlement-Efforts / Mediation With Consulting Parties ........................14

              h.    Bidding Procedures / Sale of Property ..........................................14

III.    PLAN SUMMARY.................................................................................16

        ~~1.    Any use by Debtor or Recipient Party of the Instruments of Service shall
        be limited to and strictly comply with the permitted uses and other provisions of
        the Architect Agreement~~ or as otherwise ~~agreed to by Architect in writing~~......~~19~~

IV.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS. ...........~~21~~19

        A.    What Creditors and Interest Holders Will Receive Under the Plan.............~~21~~19

        B.    Unclassified Claims. ..............................................................................~~21~~20

              1.     DIP Facility Claims. ........................................................................~~21~~20

              2.     Administrative Claims. ...................................................................~~22~~20

              3.     Professional Fee Claims. ..................................................................~~22~~20

              4.     Priority Tax Claims. .........................................................................~~23~~21

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

5.      Statutory Fees. ...........................................................~~23~~21
C.   Means of Effectuating and Implementing the Plan. .........................~~23~~22
1.      Funding for the Plan. ................................................~~23~~22
2.      Sale of the Property. ...............................................~~23~~22
3.      Liquidation of Plan Administration Assets. ................~~24~~22
4.      Transfer to the Liquidating Trust. ..........................~~24~~23
5.      Causes of Action. ....................................................~~24~~23
6.      Composition of Debtor Post-Confirmation. ...........~~25~~23
7.      Distribution Agent. .................................................~~25~~23
8.      Employment of Professionals by the Liquidating Trustee. ................~~25~~24
9.      Protocol for the Liquidation of Disputed Claims. ...........~~25~~24
10.     Exemption from Transfer Taxes. ..........................~~26~~25
11.     Distributions to Be Made Pursuant to the Plan. ....................26
12.     Injunctions. ...............................................................27
13.     Exculpation. ............................................................~~28~~27
14.     Executory Contracts and Unexpired Leases. ........................28
15.     Retention of Jurisdiction. .....................................~~29~~31
V.      TAX CONSEQUENCES OF THE PLAN. ................................~~32~~33
VI.     CONFIRMATION REQUIREMENTS AND PROCEDURES. ............~~33~~34
A.   Who May Object. ....................................................~~33~~34
B.   Who May Vote to Accept or Reject the Plan. ..........~~33~~35
C.   What is an Allowed Claim or Interest? ....................~~33~~35
D.   What is an Impaired Claim or Interest? ..................~~33~~35
E.   Who is Not Entitled to Vote. ..................................~~34~~36
F.   Who Can Vote in More Than One Class. ................~~34~~36
G.   Votes Necessary to Confirm the Plan. ....................~~34~~36
H.   Votes Necessary for a Class to Accept the Plan. ....................~~35~~36
I.   Treatment of Non-Accepting Classes. ....................~~35~~37
J.   Liquidation Analysis. ..............................................~~35~~37
K.   Feasibility. ................................................................~~37~~39
VII.    RISK FACTORS REGARDING THE PLAN. .........................~~38~~40
VIII.   EFFECT OF CONFIRMATION OF THE PLAN. ..................~~39~~40
A.   Discharge. ................................................................~~39~~40
B.   Modification of the Plan. ........................................~~39~~40
C.   Post-Confirmation Status Reports. .........................~~39~~41
D.   Post-Confirmation Conversion/Dismissal. ..............~~39~~41
E.   Final Decree. ...........................................................~~39~~41

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

ii

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
554 U.S. 33 S. Ct. 2326, 171 L. Ed. 2d 203 (2008) ................................................................. 27

*In re New 118th, Inc.*,
398 B.R. 791 (Bankr. S.D.N.Y. 2009) ................................................................................... 27

**Statutes**

11 U.S.C. § 105 ................................................................................................................... 2, 31

11 U.S.C. § 326 ....................................................................................................................... 37

11 U.S.C. § 346 ....................................................................................................................... 31

11 U.S.C. § 362 ....................................................................................................................... 13

11 U.S.C. § 363 ....................................................................................................................... 31

11 U.S.C. § 365(d)(4) ............................................................................................................. 32

11 U.S.C. § 502(d) .................................................................................................................. 31

11 U.S.C. § 505 ....................................................................................................................... 31

11 U.S.C. § 507(a)(2) ......................................................................................................... 23, 35

11 U.S.C. § 507(a)(3) .............................................................................................................. 35

11 U.S.C. § 507(a)(8) ......................................................................................................... 24, 35

11 U.S.C. § 542 ....................................................................................................................... 31

11 U.S.C. § 551 ....................................................................................................................... 31

11 U.S.C. § 553 ....................................................................................................................... 31

11 U.S.C. § 1112(b) ........................................................................................................... 13, 40

11 U.S.C. § 1123 ..................................................................................................................... 31

11 U.S.C. § 1123(a)(1) ............................................................................................................ 16

11 U.S.C. § 1125 ....................................................................................................................... 2

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

11 U.S.C. § 1129 ........................................................................................................ 3

11 U.S.C. § 1129(a)(8) ............................................................................................... 36

11 U.S.C. § 1129(a)(9)(C) ................................................................................... 24, 27

11 U.S.C. § 1129(b) ................................................................................................... 36

11 U.S.C. § 1141 ........................................................................................................ 31

11 U.S.C. § 1146 ........................................................................................................ 31

11 U.S.C. § 1146(a) ........................................................................................ 27, 31, 37

28 U.S.C. § 1930(a) ................................................................................................... 24

28 U.S.C. § 1930(a)(6) ............................................................................................... 41

31 U.S.C. § 3717 ........................................................................................................ 24

Cal. Civ. Code § 8800 .................................................................................................. 7

Cal. Rev. & Tax. Code §11911 .................................................................................. 27

Cal. Rev. & Tax. Code § 11923 ........................................................................... 27, 37

LAMC § 21.9.2(a) ...................................................................................................... 27

LAMC § 21.9.2(b) ...................................................................................................... 27

LAMC § 21.9.6 ..................................................................................................... 27, 37

**Other Authorities**

Fed. R. Bankr. P. 3019 ................................................................................................. 4

Fed. R. Bankr. P. 3022 ............................................................................................... 40

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

**DISCLAIMER**

THIS ~~SUPPLEMENTAL~~SECOND AMENDED DISCLOSURE STATEMENT[1] (THE "DISCLOSURE STATEMENT") WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS, AND IS NOT INTENDED TO BE, AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR TO BE ADMISSIBLE IN ANY PROCEEDING INVOLVING DEBTOR OR ANY OTHER PARTY, OR TO BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

UNLESS OTHERWISE INDICATED HEREIN, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF. THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[1] Debtor filed its initial Disclosure Statement on July 10, 2024 [ECF No. 328]. ~~Debtor filed this~~ and its Supplement to its Disclosure Statement on August 19, 2024~~, which~~ [ECF 387]. This Second Amended Disclosure Statement is filed as of September 4, 2024 and includes additional information not available at the time of filing the initial Disclosure Statement and the Supplement to the Disclosure Statement. In order to provide information in one document, this Supplement replaces the initial Disclosure Statement and Supplemental Disclosure Statement.

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS DISCLOSURE STATEMENT OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING DEBTOR OR THE VALUE OF ITS PROPERTY HAVE BEEN AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR EQUITY INTEREST. THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b), AND NOT IN ACCORDANCE WITH FEDERAL, OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. SEE SECTION VII BELOW, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED" FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN'S CONSIDERATION.

## I.  INTRODUCTION

Debtor Oceanwide Plaza LLC (the "Debtor") is a chapter 11 debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Case") provides the following disclosure statement (the "Disclosure Statement") pursuant to Sections 105, 1125, and 1129[2] of the Bankruptcy Code. This case was initiated on February 13, 2024 (the "Petition Date"), by the filing of an involuntary petition for relief against Debtor (the "Involuntary Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (this "Court") by Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc.,

---

[2] References to sections shall refer to Title 11 of the United States Code ("Bankruptcy Code"), unless otherwise referenced.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

Woodbridge Glass Inc., and Mitsubishi Electric US, Inc. (collectively, the "Petitioning Creditors"). On March 8, 2024, Debtor filed its *Answer* [ECF No. 27] to the Involuntary Petition and consented to entry of an order for relief. On March 11, 2024 (the "Relief Date"), the clerk of the Court entered the *Order for Relief* [ECF No. 29] (the "Relief Order").

This document is the Disclosure Statement which describes Debtor's Liquidating Plan of Reorganization ("Plan"). October 8, 2024 (the "Voting Deadline"), is the last date by which ballots accepting or rejecting the Plan must be received by counsel for the Debtor. Ballots must be delivered in one of the following manners so that the Ballot is received by Debtor's Solicitation Agent by mail at Oceanwide Plaza LLC Ballot Processing c/o Stretto 410 Exchange, Suite 100, Irvine CA 92602 or electronically under the "File a Ballot" tab at https://cases.stretto.com/OceanwidePlaza/.

Chapter 11 of the Bankruptcy Code allows the debtor, and under some circumstances, creditors, and other parties-in-interest, to propose a plan of reorganization. The Plan is a liquidating plan that contemplates the sale of substantially all of Debtor's assets. After the Plan is fully administered, Debtor will be dissolved. The Plan provides for the closing of the sale of Debtor's Property, as defined below (the "Sale"), on or before the Effective Date, as defined below. The Effective Date of the Plan ("Effective Date") will occur when the following conditions to the effectiveness of the Plan have been satisfied or waived by Debtor: (a) the Plan and all documents, instruments, and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments, and agreements; (b) the Plan shall not have been materially altered, amended or modified; (c) there shall be no ruling, judgment, or ordered preventing or prohibiting the consummation of the Sale; and (d) the Sale has been closed and consummated. The sale of the Property will provide the primary means for the implementation of the Plan. All capitalized terms used in this Disclosure Statement are defined in the Plan and shall be deemed to have the same definition as used in the Plan.

This Disclosure Statement contains, among other things, (i) a discussion of some of Debtor's history and business, (ii) a summary of some of the events leading to this Case, (iii) the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

goal of the Case, (iv) risk factors associated with this Case, (v) a summary and analysis of the Plan, and (vi) certain other related matters. Debtor is the proponent of the Plan within the meaning of Section 1129.

Copies of this Disclosure Statement, the Plan, and all other documents related to this Case are available for review without charge through Debtor's Notice and Claims Agent at https://cases.stretto.com/oceanwideplaza/ and with charge at https://www.pacer.gov/.

ALL HOLDERS OF CLAIMS AGAINST DEBTOR ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN, SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE PLAN, DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION. IF THERE ARE ANY INCONSISTENCIES BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE TERMS OF THE PLAN WILL GOVERN.

## II.    BACKGROUND

**A.    Description and History of Debtor's Business and a Summary of the Circumstances Which Led to the Filing of this Case.**

### Debtor's Business Operations

1.    Debtor, a Los-Angeles based real estate developer, is an American subsidiary of a global Chinese conglomerate. Oceanwide Real Estate Group (USA) Corp. ("OREG"), a Delaware corporation, is Debtor's sole member and its manager. Debtor is part of a corporate family consisting of other senior limited liability companies and is indirectly owned by Oceanwide Holdings Co. Ltd, ("Oceanwide Holdings"), in Beijing, China. Debtor's relevant corporate affiliates are shown on **Exhibit 1.**

2.    Debtor was organized in 2013 to purchase a block in downtown Los Angeles across from then Staples Center (now Crypto.com Arena), bounded by Figueroa, Flower, 11th and 12th

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

Streets (generally, the "Real Property"). Debtor purchased the Real Property that year for $174 million. At the time, the Real Property consisted of an asphalt parking lot and a small two-story building.

3.    The Debtor owns Oceanwide Plaza (the "Project"), an approximately 60-percent complete mixed-use development project in downtown Los Angeles. The Project is situated on the Real Property.

4.    In connection with the Project, Debtor additionally acquired certain personal property which is both located at the Real Property and in possession of third parties (the "Personal Property", and together with the Real Property, the "Property").

5.    The Project is across from Crypto.com Arena and consists of three uncompleted high-rise residential towers: two towers are 42 stories tall, and the other is 55 stories tall which includes a planned 11-story hotel. Each tower is built on a 6-story podium, consisting of parking, retail, dining, and office space, and a planned 2-story-high LED screen wrapped around the podium's Figueroa, 11th, and 12th street facades. The Project's external construction is largely complete, but portions of the Project's internal construction is unfinished.

6.    The Project is part of the Los Angeles Sports and Entertainment District, which includes the Convention Center, Crypto.com Arena, LA Live, and the two 30-plus story Circa luxury apartment towers at 12th and Figueroa Streets. It is also part of a broader plan and long-standing goal of the City of Los Angeles ("LA City") to develop this section of downtown Los Angeles into a Times Square-like destination zone with multi-story LED screens, entertainment venues, and night-time dining and clubs.

7.    Debtor's pre-petition funding arrangements are set forth in Section B below. For purposes of this Section and context, prior to the Petition Date, Debtor largely self-funded Project construction. However, for short-term needs, L.A. Downtown Investment LP ("LADI") provided Oceanwide with up to $325,000,000 in construction financing (the "Loan"). LADI disbursed $136.5 million to Oceanwide, and Oceanwide re-paid $11 million in principal, reducing the principal owed to $125.5 million.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

8.      In 2014, Debtor hired RTKL Associates, Inc., now known as CallisonRTKL Inc., as its architect, and Lendlease (US) Construction, Inc. ("Lendlease") as construction manager, to begin work on the Project and entered into separate contracts with them.

9.      In 2015, the existing structure and parking lot were demolished, and excavation began. Debtor hired Swinerton Management Consulting ("Swinerton") to manage the construction phase and supervise a general contractor.

10.     In 2016, after a bidding process, Debtor hired Lendlease as its general contractor to construct the Project and Lendlease then hired over forty subcontractors.

11.     In March 2018, the Project "topped-out": the high-rise towers were finished to their top floors. Shortly thereafter, Debtor began loan negotiations with JPMorgan Chase Bank, N.A. for a $1.1 billion loan facility. These negotiations continued into 2019 but were ultimately not successful.

**Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize**

12.     In November 2018, Debtor began to have difficulty obtaining additional capital transfers from its affiliates in China. Debtor believes that these funding difficulties arose for several reasons, including regulatory restrictions by the Chinese government on current transfers and other macro-economic conditions.

13.     Debtor understands that as a result of its capital challenges, Lendlease demobilized most of its subcontractors by mid- January 2019, but continued to perform a small amount of work.

14.     Without access to capital, Debtor then pursued three alternative plans beginning in later January 2019: 1) find alternative construction financing to complete the Project, 2) enter into a joint venture agreement to complete the Project, or 3) sell the Project.

15.     Debtor attempted to obtain alternative construction financing from January 2019 to September of 2020, but was unable to close on such financing. Debtor believes that its efforts to obtain alternative financing were negatively impacted by the COVID-19 pandemic and related economic slowdown, which impacted both national and global lending markets.

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

16. Debtor then shifted to primarily focus on selling the Project in May 2021. Prior to the Petition Date, Debtor was in serious negotiations with two potential purchasers who were in the process of conducting due diligence; one who signed a Letter of Intent ("LOI") in August 2023 and the other who signed a LOI in September 2023.

**The Webcor Litigation**

17. Because Debtor failed to pay contractors, they recorded mechanic's liens on the Real Property. On January 31, 2019, a Lendlease subcontractor, Webcor Construction, LP, ("Webcor") sued to foreclose on its mechanic lien in Los Angeles Superior Court case number 19STCV03357 (the "State Court Action")[3], the first of 44 foreclosure cases filed against Oceanwide or Lendlease, including Lendlease suing Oceanwide. Lendlease and 27 contractors also sued LADI for a judgment holding their liens were superior to LADI's deed of trust; and Lendlease and 7 contractors also named LADI's title insurance company, Chicago Title Insurance Company ("CTIC"). Webcor also sued for declaratory relief that LADI's deed of trust is invalid and unenforceable. LADI and CTIC cross-sued Lendlease. All of these cases were consolidated into the State Court Action.

18. On March 22, 2023, the Superior Court resolved a threshold issue on cross-motions, holding LADI's Deed of Trust was senior to the contractors' mechanic's liens. The Superior Court then trifurcated the State Court Action into three trials, which are known as Phase One, Phase Two, and Phase Three. Phase Two was later continued to after Phase Three. A final judgment will be entered incorporating each phase's rulings after the last trial.

19. In the Phase One trial, the Superior Court ruled Debtor owes Lendlease: (1) $465,494.23 under Lendlease's 2014 contract with Debtor; (2) $2,512,743 for interest due through October 2, 2019 under its 2016 contract with Debtor; (3) prompt payment penalties of $121,866,906 as of on or about March 14, 2024 under California Civil Code section 8800; and (4) $118,482,627, an aggregate amount stipulated by Debtor and Lendlease as owed by Debtor for the reasonable value of work performed by Lendlease and subcontractors except Webcor.

---

[3] The description of the State Court Action provided in this Disclosure Statement is intended as a summary only and not intended to be a complete description of all matters asserted and addressed in the State Court Action.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

20.    In the Phase Three trial, the Superior Court ruled Debtor owes Lendlease $51 million for the reasonable value of work performed by Webcor.

21.    The Phase Two trial involves Lendlease's and other subcontractors' challenges to the validity of LADI's Deed of Trust, LADI's and CTIC's cross-claims against Lendlease, and LADI's attempt to reduce Lendlease's lien. More specifically, Lendlease and certain subcontractors assert LADI's underlying loan is invalid because LADI and Debtor are one entity and raise certain other fraud-based claims against LADI. LADI, in turn, asserts Lendlease and its subcontractors subordinated their lien rights to LADI's deed of trust.  Trial was set for June 2024, but was stayed (and vacated) when the Involuntary Petition was filed. This Court lifted the stay, effective June 13, 2024, to allow the State Court Action to continue through final judgment and appeals, and the Phase Two trial is set to start on October 28, 2024.

**Debtor Is Working With LA City As A Result of International Attention Causing Security Issues**

22.    Oceanwide originally garnered international attention for its scale and ambition, its expected substantial economic impact on downtown Los Angeles, creating jobs and boosting the local economy.  It later drew a different kind of focus.

23.    Despite Debtor's lack of funds pre-petition, its security service agreed to provide two guards on a 24/7 full time basis.  There were recent notable incidents, however, in the first quarter of 2024 involving graffiti and base jumping, including a group of graffiti artists and base jumpers that illegally accessed the unfinished skyscraper. These incidents were widely covered in the media and heighted the need for immediate security measures.

24.    On February 9, 2024, the Los Angeles City Council unanimously adopted a resolution stating the Project "has been a blight on Downtown Los Angeles' South Park neighborhood," noting criminal activity had "increased exponentially" in early 2024, including trucks ramming into the Project's gates and driving into the building to facilitate copper wire theft, trespassers climbing hundreds of feet to tag windows with graffiti, and individuals base jumping from the top floor of the Project. LA City also issued an abatement notice ordering Debtor to

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

1    remove the graffiti and secure the property.  Debtor was unable to comply with the abatement orders

2    due to its lack of funds and the City Council voted to allot nearly $4 million to remove graffiti and

3    secure the Property.

4         25.    Since February 1, 2024, the Los Angeles Police Department has had a constant

5    presence at the site. It had allocated significant manpower to this effort to hold the perimeter of the

6    property.  It began installing a 14-foot high, stagger-perforated steel-sheet fence (i.e., anti-climb

7    fencing) around the Project on February 23, 2024, and started to installed razor wire in an area

8    deemed particularly prone to breach.

9         26.    Debtor took over these security efforts once it secured DIP Financing.

10         27.    As noted above, Lendlease and four other creditors filed an involuntary bankruptcy

11    petition against Debtor on the Petition Date.

12         28.    Through the DIP Financing, described below, Debtor is working with LA City to

13    safeguard the Property, pay the cost of security, increased to six 24/7 private security guards, and

14    implement other security measures to prevent trespassing such as the installation of razor wire and

15    blocking off entrances to protect the Property and reduce access for potential trespassers.

16    **B.**    ==Pre-Petition Financing Arrangements==

17         31.    Debtor has self-funded construction of the Project with approximately $956.6

18    million in capital transfers and received approximately $118.4 million in inter-company loans

19    (summarized below).  The capital transfers made up about 80% of the funding.

20         32.    For short-term needs, and as noted above, Debtor obtained a credit line with a $325

21    million limit from LADI. Debtor understands that LADI is an investment vehicle deployed under

22    the federal government's EB-5 Immigrant Investor visa program. The credit line extended by LADI

23    (generally, the "EB-5 Loan") is evidenced by a $325 million *Promissory Note* which is secured by

24    a *Deed of Trust* in favor of LADI (the "EB-5 Deed of Trust"). Debtor understands that LADI

25    recorded the EB-5 Deed of Trust against the Property in 2015 to secure repayment of any

26    disbursements under the EB-5 Loan.

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

9

33.     LADI has disbursed approximately $136.5 million to Oceanwide. Oceanwide re-paid $11 million of the principal, reducing the principal amount of the debt to $125.5 million, which together with interest, late fees, etc., remains outstanding.

34.     In sum, between the self-funded capital transfers and intercompany loans, and the EB-5 Loan disbursements made by LADI, Debtor has invested approximately $1.20 billion in the Project's construction:

| Capital and Debt | Amount |
|---|---|
| *Capital Transfer* | |
| China Oceanwide Holdings Limited | $956,527,033.22 |
| **Subtotal** | **$956,527,033.22** |
| *Debt* | |
| L.A. Downtown Investment LP | $136,500,000.00 |
| Oceanwide Real Estate Group (USA) Corp. | $95,000,000.00 |
| Oceanwide Investment Three (Hungry) Limited Liability Company | $23,400,000.00 |
| **Subtotal** | **$254,900,000.00** |
| **TOTAL** | **$1,211,427,033.22** |

**C.     Events During Debtor's Chapter 11 Case.**

*a.     Employment of Professionals and Consultants*

Debtor has employed, and the Court has authorized the employment of, the following professionals: Bryan Cave Leighton Paisner, LLP ("BCLP") as chapter 11 bankruptcy counsel [ECF No. 298]; Stretto, Inc. ("Stretto") as claims, noticing and solicitation agent ("Claims and Noticing Agent") [ECF No. 315]; Bradley Sharp and Development Specialists, Inc. ("DSI") as Debtor's Chief Restructuring Officer ("CRO") [ECF No. 306]; B. Riley Advisory Services ("B. Riley") as Financial Advisor [ECF No. 311]; and Colliers International greater Los Angeles, Inc. ("Colliers") and Hilco Real Estate, LLC ("Hilco," and collectively with Colliers, the "Brokers") as real estate brokers [ECF No. 268].

*b.     Claims Bar Date*

At a hearing dated March 29, 2024, and by order of the Court, the Court established a deadline for creditors to file proofs of claim against Debtor. [ECF No. 89]. On April 18, 2024, Debtor submitted its Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

159] which provided for a general bar date for creditors of June 26, 2024, and a governmental claim bar date of September 7, 2024.

    *c.*     *Summary of Scheduled and Filed Claims*

Attached as **Exhibit 2** is a chart for each of the claims that Debtor identified in its schedules and each proof of claim with the asserted amount of that claim that has been filed against Debtor along with the amounts and status of each such claim.

Below is a summary of the total scheduled claims by Debtor and the total filed claims by creditors:

    i.     <u>Secured Claims</u>

Debtor scheduled a total of approximately $370,730,000 in secured claims, plus super-priority liens granted to DIP Lender in the original principal amount of $9,186,943, plus DIP Lender's reasonable counsel fees and other expenses, and interest. Approximately $372,000,000 in secured claims have been asserted against Debtor in timely filed proofs of claim.

    ii.     <u>Priority Tax Claims</u>

Debtor scheduled a total of approximately $145,000 in priority tax claims. Approximately $319,000 in tax priority claims have been asserted against Debtor in timely filed proofs of claim.

    iii.     <u>Non-Tax Priority Claims</u>

Debtor has scheduled a total of approximately $60,600 of non-tax priority claims, representing wage claims owed to Debtor's employees. Approximately $79,600 in non-tax priority claims have been asserted against Debtor in timely filed proofs of claim.

    iv.     <u>General Unsecured Claims</u>

Debtor scheduled a total of approximately $176,700,000 in non-priority general unsecured claims. Approximately $345,176,000 in non-priority general unsecured claims have been asserted against Debtor in timely filed proofs of claim. This amount does not include unsecured intercompany loans, which are more fully set out below.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

v.      Intercompany Loans

Debtor owes a total of approximately $219,300,000 in intercompany loans, inclusive of interest, which accrued prior to the Petition Date (the "Intercompany Loan Claims"). The intercompany loan claims stem from two loans made to Debtor. First, is a loan which was disbursed in multiple installments from October of 2014 to September of 2015 in the total original principal amount of $23.4 million, with annual interest accruing at 11.5%, which is currently held by Oceanwide Investment Three (Hungary) Limited Liability Company. Second is a loan disbursed in December 2013 in the original principal amount of $95 million, with annual interest accruing at 6.5%, which is currently held by Oceanwide Real Estate Group (USA) Corp.

Debtor's investigation of the Intercompany Loan Claims remains ongoing. To the extent that the allowance of the Intercompany Loan Claims is not resolved on or prior to the Effective Date, the Liquidating Trust will continue any such investigation, and if warranted, prosecute objections to remaining claims. Debtor intends to pay the Allowed Intercompany Loans *in pari passu* with the holders of General Unsecured Claims.

d.      *DIP Financing*

The ability of Debtor to continue to protect and maintain the Property during the pendency of this Case was dependent on Debtor acquiring post-petition financing. Debtor filed a *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay and (IV) Scheduling a Final Hearing* [ECF No. 40] (the "DIP Financing Motion") on March 12, 2024. Debtor initially sought a $10 million dollar secured credit facility ("DIP Financing") from B.H. Capital Ventures, LLC (the "Original DIP Lender"), priming prepetition secured creditors, including, among others, LADI, Lendlease and the County of Los Angeles. Debtor set the DIP Financing Motion for an emergency hearing for March 14, 2024 (the "Initial DIP Hearing").

Prior to the Initial DIP Hearing, Debtor received (i) three objections to the DIP Financing Motion filed by the County of Los Angeles ("LA County") [ECF No. 59] Lendlease [ECF No. 50], and LADI [ECF No. 54], (ii) one joinder filed by petitioning creditor Woodbridge Glass Inc. [ECF

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

No. 51], and (iii) informal comments from the Office of the United States Trustee (the "US Trustee"). Debtor eventually selected DTLA Lending LLC as the lender for the DIP Financing (the "DIP Lender") and the Court eventually authorized Debtor to borrow on an interim basis, an amount up to $1,449,222 and entered its *Interim Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* [ECF No. 176] (the "Interim DIP Order") on April 26, 2024. Debtor then requested authorization to borrower the remainder of the DIP Financing at the final hearing on the DIP Financing Motion scheduled for May 9, 2024 (the "Final DIP Hearing").

Debtor successfully negotiated a resolution to the DIP Financing and the remaining objection was withdrawn. The Court entered its *Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and (III) Modifying the Automatic Stay* [ECF No. 229] (the "Final DIP Order") on May 16, 2024. Per the terms of the Final Order, and Debtor's resolution of the remaining objection, the Court authorized Debtor to borrow up to $9,186,943 (inclusive of approved interim financing), pursuant to a specific budget, with Debtor obligated to repay the principal amount borrowed, plus DIP Lender's reasonable counsel fees and other expenses, and interest which accrues at the annual rate of 4.5%, all as set forth in the Final DIP Order, DIP Credit Agreement and related documents.

e.    *Limited Relief from Stay Regarding the State Court Action*

On March 28, 2024, LADI submitted its *Motion for Relief from the Automatic Stay as to Nonbankruptcy Action* [ECF No. 80] (the "Relief from Stay Motion") alleging, among other things, that LADI's dispute with Lendlease concerning the priority of their respective liens should be resolved in the State Court Action. On April 11, 2024, Debtor submitted its Objection to LADI's Motion for Relief From Stay [ECF No. 141] (the "Debtor Stay Relief Objection"). Lendlease filed a joinder and supporting evidence to the Debtor Stay Relief Objection [ECF No. 143]. The Court held a hearing on the Relief from Stay Motion on May 15, 2024, and, on May 29, 2024, the Court entered its *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* [ECF

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

13

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

No. 241] (the "Stay Relief Order") which, among other things, terminated the automatic stay as to Debtor and Debtor's estate for all parties and stated that such parties could proceed to a final judgment, including appeals, in accordance with non-bankruptcy law. The automatic stay was not terminated with respect to any effort to enforce any judgment rendered in the State Court Action or to collect any claim against Debtor. As of the date of this Disclosure Statement, the State Court Action remains pending.

f.    *U.S. Trustee's Motion to Dismiss Denied*

On June 6, 2024, the United States Trustee filed its *Notice of Motion And Motion Under 11 U.S.C. § 1112(B) To Dismiss, Convert, Or Direct The Appointment Of A Chapter 11 Trustee, Or For A Deadline To Obtain Insurance* [ECF No. 294] (the "UST Motion to Dismiss"). Oppositions to the Motion to Dismiss were filed by Debtor, LA City, and Lendlease [ECF Nos. 333, 334 and 342] and joinders to the oppositions were filed by Secured Creditor and Mechanic's Lien Creditor Bragg Investment Co., Inc. [ECF No. 348], ACCO Engineered Systems, Inc., Bapko Metal, Inc., and Marin Bros / Marcowall, Inc. [ECF No. 349]. The UST filed its Omnibus Reply on July 18, 2024 [ECF No. 350]. At the hearing held on July 25, 2024, the Court denied the UST Motion to Dismiss, and entered its order to that effect on July 26, 2024. [ECF No. 371].

g.    *Settlement-Efforts / Mediation With Consulting Parties*

In late April 2024 / early May 2024, Debtor, LADI, Lendlease, CTIC and LA City started to engage in serious negotiations to resolve objections to DIP Financing and to work on a path to consensually move the chapter 11 case forward. The informal settlement-efforts resulted in a consensual resolution of the Final DIP Order that included an agreement to convene confidential regular meetings with these parties (now known as the "Consultation Parties") and an agreement to mediate with the Honorable Randall Newsome (Ret.). An *Order Approving Stipulation To Approve Confidentiality And Nondisclosure Agreement* was entered on June 25, 2024. [ECF No. 292].

During the mediation, Debtor and the Consulting Parties agreed on the sale process and deadlines regarding the sale and the disclosure statement and plan of reorganization. Judge Newsome has agreed to remain "on call" to assist the parties with disputes, if any, as they arise, to

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

1    try to avoid formal litigation that will delay the sale process and in return, delay or put into jeopardy

2    a return to creditors.

3        h.    *Bidding Procedures / Sale of Property*

4        The sale of the Property is crucial to the consummation of the plan.  On June 12, 2024, the

5    Court entered an *Order Granting Debtor's Motion to (I) Approve Auction and Bid Procedures for*

6    *the Sale of Property; (II) Scheduling an Auction and Approving the Form and Manner of Notice*

7    *Thereof; and (III) Granting Related Relief* [ECF No. 276] (the "Bid Procedures Order").  Pursuant

8    to the terms of the Bid Procedures Order, (a) bid procedures are approved ("Bidding Procedures")

9    regarding the sale and auction of Debtor's Property; (b) Debtor is authorized, in consultation with

10   the Consultation Parties, upon notice and a hearing, to designate a stalking horse ("Stalking Horse

11   Bidder") and to provide any such Stalking Horse Bidder with certain bid protections ("Bid

12   Protections") in the form of expense reimbursements and/or a breakup fee; and (c) in the event an

13   auction is held to sell Debtor's Property ("Auction").   On July 9, 2024, the Court entered an *Order*

14   *Approving Stipulation To Modify Certain Sale Schedule Dates* [ECF No. 319] (the "First Modified

15   Bid Procedures Order").  The First Modified Bid Procedures Order 1) extended the deadline to

16   select a Stalking Horse Bidder from July 1, 2024, to July 3, 2024; 2) extended the deadline for the

17   Debtor to file a notice of selection of Stalking Horse Bidder to July 16, 2024; and 3) continued a

18   hearing on a proposed Stalking Horse Bidder and Bid Protections from July 10, 2024 at 1:00 p.m.

19   to July 23, 2024 at 3:00 p.m.  On July 3, 2024, the Debtor selected a proposed stalking horse bidder

20   subject to the Debtor's continued due diligence. However, Debtor was not satisfied with the results

21   of this due diligence and did not proceed with that party as the stalking horse bidder at that time.

22       Debtor requested that the Court extend the time for Debtor to select a stalking horse bidder

23   and approve a 2.5 % breakup fee that Debtor may offer to a potential Stalking Horse Bidder without

24   further order of the Court (the "Break-Up Fee").  After additional briefing and evidence, the Court

25   entered its *Modified Order Granting Debtor's Motion To (I) Approve Auction And Bid Procedures*

26   *For The Sale Of Property; (II) Scheduling An Auction And Approving The Form And Manner Of*

27   *Notice Thereof; And (III) Granting Related Relief.*  [ECF No. 374] (the "Second Modified Bid

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

15

1  Procedures Order"). The Second Modified Bid Procedures Order further modified certain sale and

2  plan and disclosure statement dates. Debtor is keeping the Consultation Parties apprised of its

3  discussions with potential stalking horse bidders, subject to a confidentiality agreement executed

4  by Debtor and each of the Consultation Parties.

5       The deadline for interested parties to submit bids is August 15, 2024 (the "Bid Deadline")

6  and an auction is scheduled for September 19, 2024. After the bidder with the highest and best bid,

7  or the second highest and best bid as applicable (the "Winning Bidder") is identified, through the

8  auction or otherwise, Debtor will then seek approval of the sale through the process set forth in

9  ~~its~~it's liquidating Chapter 11 Plan, pursuant to the Court's Order confirming that plan. The closing

10 of the sale of the Property will occur on or before the Effective Date. Debtor anticipates using the

11 amount received from the Winning Bidder, or the Back-Up Bidder, as the case may be, after all

12 costs and expenses are deducted from the gross proceeds arising from the sale of an asset, or a

13 deduction of $200,000 (the "Post-Confirmation Reserve"), (the "Sale Proceeds") to fund the

14 administrative expenses for the Liquidating Trust which will administer this Plan following the

15 Effective Date (the "Liquidating Trust"), to satisfy creditors as set forth in Section III, below.

16                    **III.    PLAN SUMMARY**

17      A summary of the composition of each of the classes under the Plan and the treatment of

18 the members of each class is below.[4] In accordance with Section 1123(a)(1), Debtor has not

19 classified administrative claims, priority tax claims, and professional fee claims. Debtor anticipates

20 receiving bids by the Bid Deadline which will provide for a purchase price sufficient to pay Classes

21 1 through 5 below in full. There is also a possibility that competitive bidding will result in a greater

22 return and that additional classes will be paid in full. It is possible that Debtor will be unable to

23 come to an agreement with a bidder, or that any bid may not be consummated, and the final sale

24 price may be lower. Additionally, to the extent there are any disputes as to the amount or priority

25 of payments to each of the classes set forth below, the amount of the Sale Proceeds subject to such

26

27 ─────────────────
   [4]  Please see Exhibit 2 for a schedule for a list of scheduled claims and filed proofs of claim with the asserted amount
28      for each claim.

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  dispute will be placed in an interest-bearing escrow account pending a final order of the Court with

2  respect to such dispute.

3      *Class 1 – Secured Tax Claims.*  Debtor scheduled $18,463,711.62 in tax claims which are

4  secured by tax liens on the Property, which have priority over all other secured claims on the

5  Property including the DIP Facility Claims, described below.  Debtor intends to pay all Secured

6  Tax Claims in full from the Sale Proceeds.

7      *Class 2 – LADI Secured Claim.* Debtor believes that the LADI Secured Claim is

8  approximately $125,000,000, plus interest, fees, expenses and any other amounts allowed under

9  the applicable loan documents. ~~A dispute exists between LADI and Lendlease concerning the~~

10 ~~priority of the LADI Secured Claim and the Lendlease Secured Claims liens on the Property.~~ Debtor

11 anticipates paying the LADI Secured Claim in full from the Sale Proceeds. To the extent that the

12 Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease Secured Claims and

13 Other Secured Claims in full, ~~Debtor will deposit the Sale Proceeds, less the amounts paid to satisfy~~

14 ~~the (1) the obligations owed to the DIP Lender in full unless otherwise agreed by the DIP Lender,~~

15 ~~(2) administrative claims not otherwise satisfied by the DIP Facility (3) the closing costs in the~~

16 ~~approximate amount of 2% of the Purchase Price plus any commission due to the Brokers, which~~

17 ~~will be no more than 1.5% of the sale price of the Property; (4) the LA County Tax Claim in the~~

18 ~~approximate amount of $27,000,000; (5) any amounts required to be remitted to the Liquidating~~

19 ~~Trustee to wind up the estate; and (6) if applicable, the Break-Up Fee (collectively, the "Reserve~~

20 ~~Proceeds") into a blocked segregated account to be maintained by Debtor~~ for the benefit of the

21 ~~Holders of~~or if the LADI Secured Claim~~, Lendlease Secured Claims and Other Secured Claims~~

22 ~~with all such liens, claims, encumbrances and/or interest of~~ is otherwise disputed in whole or in

23 part, then the LADI Secured Claim~~, Lendlease Secured Claims and Other Secured Claims~~ ~~to the~~

24 ~~Property to attach to the Reserve Proceeds in the same order and priority as they previously~~

25 ~~attached to the Property. The Reserve Proceeds shall be released from the blocked account only~~

26 ~~upon: (i) Final Order of the Bankruptcy Court, or other court of competent jurisdiction, regarding~~

27 ~~the respective priorities of the LADI Secured Claim, Lendlease Secured Claims, and any secured~~

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

1    ~~claims asserted against Debtor that are not LADI Secured Claim or Lendlease Secured Claims,~~

2    ~~which some or all of those creditors may have priority over LADI Secured Claim or Lendlease~~

3    ~~Secured Claims ("Other Secured Claims") or (ii) by written agreement of the Holders of the LADI~~

4    ~~Secured Claim, Lendlease Secured Claims and Other Secured Claims (the "Disputed Secured~~ will

5    be subject to the Disputed Creditor Reserve Treatment"), as defined in Section 9(C)(4) below and

6    will only be paid as provided for in that Section, unless the parties otherwise agree.

7        *Class 3 – Lendlease Secured Claims.* Debtor believes that the Lendlease Secured Claims

8    total approximately $170,730,330. The amount set forth in the Lendlease Secured Claims includes

9    direct claims held by Lendlease against Debtor and secured claims held by subcontractors that

10   Debtor and Lendlease are jointly liable.

11       Debtor has divided Class 3 into two subclasses. Class 3(a) includes the secured claims held

12   directly by Lendlease. Class 3(b) includes the Secured Claims held by subcontractors of Lendlease

13   for which Debtor and Lendlease are both liable, including Claims of subcontractors to Lendlease

14   which have been or may be assigned to Lendlease or any of its affiliates.

15       Following the Effective Date, the Liquidating Trustee shall identify which claims have been

16   paid by Lendlease and which remain unpaid pursuant to the terms of the Liquidating Trust

17   Agreement. The Liquidating Trust will make a distribution of an allowed Class 3(b) claim directly

18   to the subcontractor, unless it is determined that the Holder of the Class 3(b) claim was paid by

19   Lendlease.  In that case, the distribution shall be paid to Lendlease.

20       Debtor anticipates paying the Lendlease Secured Claims in full from the Sale Proceeds. To

21   the extent that the Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease

22   Secured Claims and Other Secured Claims in full, ~~Debtor will deposit the Reserve Proceeds to be~~

23   ~~release in accordance with~~ or if the Lendlease Secured Claim is otherwise disputed in whole or in

24   part, then the Lendlease Secured Claim will be subject to the Disputed ~~Secured~~ Creditor Reserve

25   Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section,

26   unless the parties otherwise agree.

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    *Class 4 – Other Secured Claims.* Debtor believes that there are approximately $15,000,000

2    in other secured claims asserted against the Property, largely representing mechanics lien claimants.

3    Some creditors in Class 4 may have a senior priority lien to Class 3 or Class 4 creditors.  Debtor

4    anticipates paying the Other Secured Claims in full from the Sale Proceeds.  To the extent that the

5    Sale Proceeds are insufficient to pay the LADI Secured Claim, Lendlease Secured Claims and

6    Other Secured Claims in full, ~~Debtor will deposit the Reserve Proceeds to be release in accordance~~

7    ~~with~~ or if an Other Secured Claim is otherwise disputed in whole or in part, then the Other Secured

8    Claim will be subject to the Disputed ~~Secured~~ Creditor Reserve Treatment, as defined in Section

9    9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise

10    agree.

11    ~~Class 5 – *Arcadis Inc., formerly known as CallisonRTKL Inc.* and *RTKL Associates Inc.*~~

12    ~~Class 5 consists of the executory contract with Arcadis Inc., the architect for the Project (the~~

13    ~~"Architect").  The Architect timely filed a Proof of Claim, claim number 28-1 in the amount of~~

14    ~~$2,411,799.98 (as may be amended, stipulated to, or otherwise established, the "Architect Claim~~

15    ~~Amount") for architectural services performed in connection with that certain Agreement dated as~~

16    ~~of May 26, 2014, by and between Tohigh Construction Investment LLC, and RTKL Associates~~

17    ~~Inc., as amended and supplemented from time to time (the "Architect Agreement").  Debtor's rights~~

18    ~~to dispute the additional amount of the claim is reserved it Architect's claim is amended to increase~~

19    ~~the amount of the claim from the amount set forth above.  The amount of any such dispute, if any,~~

20    ~~shall be reserved and transferred to the Liquidating Trust (the "Potential Architect Reserve").~~

21    ~~Architect owns the copyright in the Architect's instruments of service (including~~

22    ~~architectural plans, specifications, designs, associated renderings, and any electronic format thereof~~

23    ~~including BIM and AutoCAD) (the "Instruments of Service"), which Instruments of Service may~~

24    ~~not be used in connection with the bidding or sale process without Architect's written consent.~~

25    ~~Debtor has elected to assume (or assume and assign) the Architect Agreement and will cure~~

26    ~~any defaults at closing (less the Potential Architect Reserve) by paying the Architect Claim Amount~~

27    ~~from Sale Proceeds on the Effective Date. Upon such assumption of the Architect Agreement,~~

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

19

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1 including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to

2 perform under the Architect Agreement (other than as set forth below),  (b) Debtor (or an assignee)

3 shall have no obligation to continue to perform under the Architect Agreement post-closing, and

4 (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor

5 or the estate (other than its rights under the Plan, which are expressly preserved, and its rights under

6 any New Architect Agreement, if applicable). Classes 1 and 5 are not impaired and will not be

7 entitled to vote on the Liquidating Plan.

8 　　　　Upon the cure of defaults under the Architecture Agreement as provided for herein,

9 including, without limitation, payment of the Architect Claim Amount less the Potential Architect

10 Reserve, Architect will grant a license to Debtor or a buyer of Debtor's assets if the Architect

11 Agreement is assumed and assigned to such buyer (a "Recipient Party"), which license shall (a)

12 allow such Recipient Party to use Architect's Instruments of Service created before the Petition

13 Date under the Architect Agreement and (b) be subject to the following conditions:

14 　　　　1. Any use by Debtor or Recipient Party of the Instruments of Service shall be limited to

15 and strictly comply with the permitted uses and other provisions of the Architect Agreement or as

16 otherwise agreed to by Architect in writing.

17 　　　　2. The license will be limited to the Project, non-exclusive, and subject to the uses and

18 other provisions of the Architect Agreement.

19 　　　　3. Any Recipient Party must fully indemnify and release the design team from any claims

20 by buyer and/or third parties arising out of any use or modification of the Instruments of Service.

21 　　　　4. All of the design teams' logos and any identifying marks must be removed from the

22 Instruments of Service.

23 　　　　5. Any subsequent architects must seal/stamp the Instruments of Service and take on

24 responsible charge as the architect of record.

25 　　　　6. Debtor or any Recipient Party will identify Architect as the design architect.

26 　　　　Any post-petition license fee or agreement for post-petition services ("New Architect

27 Agreement") must be separately negotiated between Architect and any Recipient Party. Architect

28

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    ~~agrees, however, that it is generally willing to remain as the Architect of record for the project~~

2    ~~under the following terms and conditions, subject to formal documentation between Architect and~~

3    ~~buyer:~~

4    ~~1.    The other provisions herein relating to Architect's pre-petition claim have been fully~~

5    ~~complied with, including payment in full of Architect's pre-petition claim as part of the cure~~

6    ~~provided for above.~~

7    ~~2.    Recipient Party reactivates or purchases project-specific professional liability policy~~

8    ~~reasonably acceptable to Architect.~~

9    ~~3.    Recipient Party hires an independent, third-party forensic consultant to review the~~

10   ~~project and assess the current status of the Project.~~

11   ~~4.    Architect and Recipient Party reaching agreement on the scope, schedule, and fees~~

12   ~~for remaining services.~~

13   <u>Class 5 – *Reserved.*</u> *Class 6 – Other Priority Claims.* Debtor believes that certain of its

14   employees hold Other Priority Claims that are entitled to priority under the Bankruptcy Code in the

15   approximate amount of $205,500. Debtor anticipates paying the Holders of Other Priority Claims

16   in full from the Sale Proceeds. However, in the event that the remaining Sale Proceeds are

17   insufficient to pay the Other Priority Claims in full, then the Holder of each such Other Priority

18   Claim shall be paid *pro rata* from the remaining Sale Proceeds based on the size of each Holder's

19   Other Priority Claim. <u>If any Other Priority Claim is disputed, in whole or in part, then such Other</u>

20   <u>Priority Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section</u>

21   <u>9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise</u>

22   <u>agree.</u>

23   *Class 7 – General Unsecured Claims.* Debtor believes that there are approximately

24   $176,700,000 in unsecured claims, excluding intercompany loans, in this estate.[5] Debtor anticipates

25   making a distribution to unsecured creditors~~, the minimum which will be determined after July 16,~~

26   ~~2024, when Debtor files its Designation of a Stalking Horse Bidder~~. The ultimate recovery of

27

28   ─────────────────────
     [5]   A breakdown of each of the unsecured claims is set forth in Schedule 1 to this Disclosure Statement.

21

Holders of General Unsecured Claims will depend on the Sale Proceeds generated by the Sale. Debtor believes that such recovery could be high as 100% of the amount of General Unsecured Claims asserted. However, the Holders of General Unsecured Claims could receive no distribution, depending on the final amount of the Sale Proceeds. ~~Following any designation of a Stalking Horse Bidder, Debtor intends to supplement this disclosure statement to identify the amount of such bid and provide an illustrative chart showing the anticipated distribution of claim holders, assuming the stalking horse bid is consummated.~~ If any General Unsecured Claim is disputed, in whole or in part, then such General Unsecured Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree. To the extent that any claims initially included in Class 7 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

*Class 8 – Intercompany Claims*. Debtor owes a total of approximately $219,300,000 in Intercompany Loan Claims. Debtor intends to pay Allowed Intercompany Loan Claims *in pari passu* with the General Unsecured Claims outlined in Class 7 above. If any Intercompany Claim is disputed, in whole or in part, then such Intercompany Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree. To the extent that any claims initially included in Class 8 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

*Class 9 – Subordinated Claims.* Class 9 shall consist of all Claims that is subject to (a) subordination under Section 510(b), or (b) equitable subordination, as the Bankruptcy Court determines in a Final Order ("Subordinated Claims"). To date, no Claims scheduled or filed in this matter are Subordinated Claims under this Class 9. If any Subordinated Claim is disputed, in whole or in part, then such Subordinated Claim will be subject to the Disputed Creditor Reserve Treatment, as defined in Section 9(C)(4) below and will only be paid as provided for in that Section, unless the parties otherwise agree.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

1    *Class 9̶10 – Equity Holders*. The equity structure of Debtor will remain unchanged as a

2    result of the Plan and the Confirmation Order. In the event that the Sale Proceeds are sufficient to

3    pay the claims of Classes 1̶-8̶1-9 above, any such remaining Sale Proceeds shall be distributed to

4    Equity Holders, in accordance with their interest in Debtor. Class 9̶10 will be entitled to vote on

5    the Liquidating Chapter 11 Plan.

6    **IV.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS.**

7    **A.    What Creditors and Interest Holders Will Receive Under the Plan**.

8    As required by the Bankruptcy Code, the Plan classifies claims and interests in various

9    classes according to their right to priority. The Plan states whether each class of claims or interests

10   is impaired or unimpaired. The Plan provides the treatment each class will receive, as described in

11   Section III above.

12

13

14   **B.    Unclassified Claims.**

15   Certain types of claims are not placed into voting classes; instead, they are unclassified.

16   They are not considered impaired, and they do not vote on the Plan because they are automatically

17   entitled to specific treatment provided for in the Bankruptcy Code. As such, Debtor has not placed

18   the following claims in any class:

19        1.    **DIP Facility Claims.**

20   The DIP Facility is for the original principal amount of $9,186,943. Debtor anticipates

21   seeking authority to borrow an additional $3 million dollars under the DIP Facility. Therefore,

22   Debtor anticipates that advances under the DIP Facility will amount to no more than $1̶1̶14 million,

23   inclusive of interest, fees, costs, and other expenses. Debtor is liable to DIP Lender for all amounts

24   borrowed, plus interest, fees, expenses and any other amounts allowed under the Final DIP Order.

25   The DIP Facility Claim is secured by, among other things, a priming lien on the Property with

26   priority above all other interests, except the Secured Tax Claims. Debtor anticipates paying the DIP

27   Facility Claims in full from the Sale Proceeds upon the closing of the Sale.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

2.   **Administrative Claims.**

Administrative claims are claims for costs or expenses of administering Debtor's chapter 11 case which are allowed under Bankruptcy Code Section 507(a)(2) ("Administrative Claims"). The Bankruptcy Code requires that all allowed administrative expense claims be paid in full on the Effective Date unless a particular claimant agrees to a different treatment. The Liquidating Trustee will pay all allowed § 507(a)(2) Administrative Claims, that are not otherwise paid with the DIP Financing, either (i) on or prior to the Effective Date, or (ii) at the time such Administrative Claims are allowed by the Court or as soon thereafter as is practicable. The Liquidating Trustee will pay all such allowed Administrative Claims out of the Sale Proceeds. The Debtor anticipates that all administrative claims will be paid as of the Effective Date of the Plan and that the only claims that will accrue are those set forth in the Final DIP Order, as amended.

3.   **Professional Fee Claims.**

Professional Fee Claims are Administrative Claims that are also Unclassified. The Court must approve all professional fees and expenses before they may be paid. For all professional fees and expenses, except fees owing to the Clerk of the Bankruptcy Court and fees owing to the U.S. Trustee, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan. Much of the professional fees and expenses that will be owed as Administrative Claims following Plan Confirmation will be dependent upon whether Debtor is required to engage in any substantial litigation regarding Plan Confirmation, objecting to any Disputed Claims, or estimating any contingent or unliquidated Claims. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any administrative expense claims. Similarly, Professionals who have been employed in these cases are not being deemed to have agreed to any cap on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order. Debtor also reserves all rights to file objections to any such asserted Administrative Claims.

4.     **Priority Tax Claims**.

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date. Pursuant to the terms of the Plan, Debtor intends to pay Allowed Priority Tax Claims in accordance with the terms set forth in Section 1129(a)(9)(C). To the extent any allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid as may be due in payable under applicable non-bankruptcy law. Debtor is in the process of reviewing all filed priority tax claims and will file objections to any of them which Debtor disputes.

5.     **Statutory Fees.**

Debtor shall pay all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of Debtor's business at the time of Confirmation, pursuant to the applicable statutory payment schedule.

**C.     Means of Effectuating and Implementing the Plan.**

1.     **Funding for the Plan**.  The sources of the payments to be made by the Liquidating Trustee under the Plan will be from (i) the Sale Proceeds; (ii) the liquidation of all of Debtor's assets not sold to the Winning Bidder, except for Sale Proceeds; (iii) Cash on hand; and (iv) any Causes of Action, less any amounts required to be remitted to the Liquidating Trustee to wind up the estate ("Plan Administration Assets"). Debtor asserts that it will be able to pay its Unclassified Claims, and Classes 1 through 6 if proceeds of the sale of the Property exceeds $430 million.  A chart setting forth those assumptions is attached as **Exhibit 3** (the "Break-Even Analysis").  The waterfall distribution to each class of creditors will change depending on the final amount of proceeds realized from the Property.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

2.      **Sale of the Property.**    The sale of the Property is crucial to the consummation of the Plan. On or before the Effective Date, Debtor shall consummate the Sale, and any other transactions contemplated by the Purchase and Sale Contract. Upon consummation of the Sale, the Property shall be transferred and vest in the Winning Bidder (or Backup Bidder). Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and Purchase and Sale Contract will be deemed approved. The Sale Proceeds generated by the Sale of the Property will be used to pay allowed claimholders, in the priority outlined in Section II above.

3.      **Liquidation of Plan Administration Assets**[6].  On the Effective Date, the trustee of the Liquidating Trust (the "Liquidating Trustee"), who Debtor anticipates will be Bradley Sharp with Development Specialists, Inc., shall accept authority over the Plan Administration Assets, which will include any Personal Property not sold to the Winning Bidder and the Post-Confirmation Reserve, as Liquidating Trustee. The Liquidating Trustee may abandon or otherwise not accept any assets that Liquidating Trustee believes, in good faith, have no value to the administration of the Plan or the Wind Down. As of the Effective Date, all unencumbered assets vested as Plan Administration Assets and all unencumbered assets dealt with in the Plan shall be free and clear of all liens, claims, and equity interests except as otherwise specifically provided in the Plan or in the Confirmation Order. Among other powers, the Liquidating Trustee shall have the power to liquidate the Plan Administration Assets and use such funds to pay the holders of allowed claims in the priority outlined above. The Liquidating Trust will remain in place to, among other things, allow for the resolution of any priority disputes between secured creditors and to pay the Priority Tax Claims over time pursuant to 11 U.S.C. § 1129(a)(9)(C)(ii).

4.      **Transfer to the Liquidating Trust.** As of the Effective Date, all remaining assets and property of Debtor will be transferred to the Liquidating Trust. For the avoidance of doubt, Debtor's books and records will be included in any such transfer. The Liquidating Trust will be Debtor's successor to all rights and privileges, including attorney client privilege.    The Liquidating Trust will be funded through either: (a) Sale Proceeds, to the extent that they are enough

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[6]    A copy of the proposed Liquidating Trust will be provided ~~in connection~~ with ~~the motion to confirm~~ the Plan Supplement.

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  to pay all secured Claims in full or; (b) a carve out from the holders of Secured Claims for the Post-

2  Confirmation Reserve, subject to the agreement of such secured creditors.

3       5.   **Causes of Action.**  Any causes of action held by the estate, if any, shall be

4  transferred to the Liquidating Trustee as of the Effective Date. The Liquidating Trustee shall have

5  the authority to assert, settle or abandon any causes of action transferred to it. In the event there is

6  any recovery on any causes of action, such amounts will be used to pay the holders of allowed

7  claims in the priority outlined in Article II above. All causes of action between the Debtor and any

8  other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the

9  Effective Date. At such time, the Liquidating Trust will be entitled to all claims, defenses, and other

10  rights and privileges accorded to the Debtor in such proceedings following their transfer. Parties

11  who are engaged in active litigation as of the Effective Date will be permitted to continue such

12  litigation in the Liquidating Trust.

13       6.   **Composition of Debtor Post-Confirmation.**  Following the Effective Date

14  of the Plan, Debtor will dissolve.

15       7.   **Distribution Agent.**  The Liquidating Trustee shall serve as the

16  disbursement agent for purposes of timely making all disbursements to be made under the Plan.

17       8.   **Employment of Professionals by the Liquidating Trustee.**  The

18  Liquidating Trustee may retain and compensate, without further order of the Bankruptcy Court, the

19  services of employees, professionals, and consultants to advise and assist in the administration,

20  prosecution, and distribution of Plan Administration Assets.

21       9.   **Protocol for the Liquidation of Disputed Claims.**

22      *a.*  *Transfer of Disputed Claims to Liquidating Trust.* If the Sale Proceeds are

23  insufficient to pay Holders of Secured Claims in full, or if a Claim is

24  otherwise Disputed, then the portion of the Sale Proceeds that would be

25  used to pay such Claims will be deposited into a blocked segregated

26  account to be maintained by the Liquidating Trust for the benefit of the

27  Holders of such  Disputed Claims (the "Disputed Creditor Reserve") with

27

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

1         all such liens, claims, encumbrances, and/or interests of the Holder of the

2         Disputed Claim to the Property attaching to the proceeds to the same order

3         and priority as they previously attached to the Property.

4     b.    *Payments and Distributions on Disputed Claims.* Except as otherwise

5         provided in this Plan, a Final Order, or as agreed to by the relevant parties,

6         distributions under this Plan on account of Disputed Claims that become

7         Allowed after the Effective Date shall be made on the first day that Debtor

8         shall make payment on such claim the later of (i) on the first day that is

9         thirty (30) Business Days after such Disputed Claim becomes Allowed, in

10        whole or in part; (ii) on the day that distributions become available to

11        members of that Class; or (iii) with respect to Holders of General

12        Unsecured Claims, the day the Pro Rata Share of such Holder is

13        determined (the "Disputed Creditor Reserve Treatment") *provided,*

14        *however,* that: (i) Disputed Administrative Claims with respect to liabilities

15        incurred by Debtor in the ordinary course of business during the Chapter

16        11 Case or assumed by Debtor on or before the Effective Date that become

17        Allowed after the Effective Date shall be paid or performed in the ordinary

18        course of business in accordance with the terms and conditions of any

19        controlling agreements, course of dealing, course of business, or industry

20        practice; and (ii) Disputed Priority Tax Claims that become Allowed

21        Priority Tax Claims after the Effective Date shall be treated as Allowed

22        Priority Tax Claims in accordance with Article II of this Plan.

23     c.    The Bankruptcy Court shall retain jurisdiction over the Liquidating Trust,

24        including but not limited to the objection to claims.  Debtor is in the

25        process of reviewing all timely filed proofs of claim. Prior to the Effective

26        Date, Debtor has the right to bring claim objections to resolve claims. After

27        the Effective Date, the authority to object to any Disputed Claims shall vest

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

in the Liquidating Trustee. Any such objections to Disputed Claims must be brought within 120 days following the Effective Date, unless otherwise ordered by the Court. Debtor or Liquidating Trust intends to file objections with the Court to all Disputed Claims and to have the Court resolve all such disputes unless Debtor and the claimants can reach consensual resolution. ~~No payments or distributions shall be made with respect to any claim Debtor or the Liquidating Trustee objects to (each a "Disputed Claim") until all such disputes in connection with the Disputed Claim have been resolved by settlement or agreement among~~ the relevant parties ~~or by Final Order. In the event that such Disputed Claim becomes an allowed claim, Debtor shall make payment on such claim on the first day~~ that is thirty (30) Business Days after such Disputed Claim becomes ~~allowed.~~ Disputed Claims which are Administrative Claims that become allowed after the Effective Date shall be paid in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice. Disputed Claims which are Priority Tax Claims that become allowed after the Effective Date shall be paid in accordance with Section 2.2 of the Plan.

10.    **Exemption from Transfer Taxes.**  Pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code, the Sale, and any other transfer from Debtor to any Entity pursuant to, in contemplation of, or in connection with the Plan shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  For the avoidance of doubt, transfer tax shall include, but not limited to, documentary transfer tax pursuant to Cal. Rev. & Tax. Code ("R&T")

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

§11911 (West).   ("County Tax"); Base City Tax pursuant to Los Angeles Municipal Code ("LAMC") § 21.9.2(a); or, ULA Tax (e.g. Mansion Tax) under LAMC § 21.9.2(b).  *See also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S. Ct. 2326, 2336, 171 L. Ed. 2d 203 (2008) ("the decision whether to transfer a given asset "under a plan confirmed" must be made prior to submitting the Chapter 11 plan to the bankruptcy court, but the transfer itself cannot be "under a plan confirmed" until the court confirms the plan in question. Only at that point does the transfer become eligible for the stamp-tax exemption"); *In re New 118th, Inc.*, 398 B.R. 791, 797 (Bankr. S.D.N.Y. 2009) (Stamp tax exemption applies to post-confirmation transfer of property of Chapter 11 estate that follows a preconfirmation sale if it is necessary to consummation of plan.)

11.    **Distributions to Be Made Pursuant to the Plan.**  Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Effective Date; *provided, however*, that: (a) Administrative Claims that are not otherwise paid through the DIP Financing will be paid on or prior to the Effective Date or at such time as the Administrative Claim is allowed by the Court, or as soon as reasonably practicable thereafter (b) allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid as may be due and payable under applicable non-bankruptcy Law.

In the event that following the Auction, the expected Sale Proceeds are insufficient to pay Administrative Claims in full, or if the sale of the Property does not close, Debtor will not seek confirmation of the Liquidating Chapter 11 Plan.

"Unclaimed Property" means any distribution of cash or any other property made to the holder of an allowed claim pursuant to the Plan that (a) is returned to the Liquidating Trustee as undeliverable and no appropriate forwarding address is received within the later of (i) 90 days after the Effective Date and (ii) 90 days after such attempted distribution by the Liquidating Trustee is made to such holder or (b) in the case of a distribution made in the form of a check, is

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

30

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

not negotiated within 90 days and no request for re-issuance is made. Unclaimed Property shall be donated to the American Bankruptcy Institute Endowment Fund, a not-for-profit, non-religious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency.

12.    **Injunctions.**  The Confirmation Order will enjoin the prosecution, whether directly, derivatively, or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan. Except as provided in the Plan or the Confirmation Order, all entities that have held, currently hold, or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder are permanently enjoined from taking any of the following actions against Debtor, Liquidating Trustee, or any of their property on account of such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan. By accepting a distribution pursuant to this Plan, each holder of an allowed claim shall be deemed to have specifically consented to the injunctions set forth in this Section.

13.    **Exculpation.**  Except as otherwise specifically provided for in the Plan, (i) the Debtor; (ii) all officers, directors, and members of the Debtor in each case who are or were acting in such capacity on or after the Petition Date, (iii) ~~all agents, members of management and~~ ~~other employees and representatives of the Debtor, in each case who are or were acting in such~~ ~~capacity on or after the Petition Date; (iv)~~ all agents, attorneys, advisors, accountants, financial advisors, consultants and other professionals to the extent such parties are or were acting in any such capacity for the parties identified above on or after the Petition Date (each a "Exculpated Party") shall not have or incur any liability for, and each Exculpated Party is hereby exculpated

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S
LIQUIDATING
PLAN OF REORGANIZATION

from, any cause of action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, Debtor's Chapter 11 Case, in whole or in part, the formulation, preparation, dissemination, and negotiation of this Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of this Chapter 11 case, the pursuit of Plan confirmation, the administration and implementation of this Plan, the distribution of payments made under this Plan or any related act, except for claims or causes of action arising from an act or omission that is judicially determined in a final non-appealable order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Party shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. Each Exculpated Party has, and upon the consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to this Plan and therefore, are not, and on account of such distributions shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the avoidance of doubt, nothing in this section shall prevent any party in interest from objecting to any Intercompany Loan Claim.

14.      **Executory Contracts and Unexpired Leases.** All Executory Contracts and Unexpired Leases of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule to be provided in a supplementary schedule that will be provided, five (5) days prior to the deadline for parties in interest to object to the Liquidating Plan (the "Assumption Schedule"); (ii) those that have been previously assumed or rejected pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be accepted pursuant to the terms of the Plan. Each Executory Contract and Unexpired Lease assumed but not

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

assigned to a third party shall be deemed to be assigned to Debtor, and be fully enforceable by, Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Plan, or by any order of the Bankruptcy Court.

**ANY COUNTER-PARTY TO ANY OF THE ASSUMED CONTRACTS AND LEASES WHO DOES NOT FILE A TIMELY OBJECTION TO PLAN CONFIRMATION WILL BE DEEMED TO HAVE CONSENTED TO DEBTOR'S ASSERTED CURE AMOUNTS. THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.**

Debtor has elected to assume the executory contract with Arcadis Inc., the architect for the Project (the "Architect") upon the confirmation of the Plan. The Architect timely filed a Proof of Claim, claim number 28-1 in the amount of $2,411,799.98 (as may be amended, stipulated to, or otherwise established, the "Architect Claim Amount") for architectural services performed in connection with that certain Agreement dated as of May 26, 2014, by and between Tohigh Construction Investment LLC, and RTKL Associates Inc., as amended and supplemented from time to time (the "Architect Agreement").  Debtor's rights to dispute the additional amount of the claim is reserved it Architect's claim is amended to increase the amount of the claim from the amount set forth above.  The amount of any such dispute, if any, shall be reserved and transferred to the Liquidating Trust (the "Potential Architect Reserve").

Architect owns the copyright in the Architect's instruments of service (including architectural plans, specifications, designs, associated renderings, and any electronic format thereof including BIM and AutoCAD) (the "Instruments of Service"), which Instruments of Service may not be used in connection with the bidding or sale process without Architect's written consent.

Debtor has elected to assume (or assume and assign) the Architect Agreement and will cure any defaults at closing (less the Potential Architect Reserve) by paying the Architect Claim Amount from Sale Proceeds on the Effective Date. Upon such assumption of the Architect Agreement,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

33

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

1  including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to

2  perform under the Architect Agreement (other than as set forth below),  (b) Debtor (or an assignee)

3  shall have no obligation to continue to perform under the Architect Agreement post-closing, and

4  (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor

5  or the estate (other than its rights under the Plan, which are expressly preserved, and its rights under

6  any New Architect Agreement, if applicable).

7  Upon the cure of defaults under the Architecture Agreement as provided for herein,

8  including, without limitation, payment of the Architect Claim Amount less the Potential Architect

9  Reserve, Architect will grant a license to Debtor or a buyer of Debtor's assets if the Architect

10  Agreement is assumed and assigned to such buyer (a "Recipient Party"), which license shall (a)

11  allow such Recipient Party to use Architect's Instruments of Service created before the Petition

12  Date under the Architect Agreement and (b) be subject to the following conditions:

13  1.  Any use by Debtor or Recipient Party of the Instruments of Service shall be

14  limited to and strictly comply with the permitted uses and other provisions of the Architect

15  Agreement or as otherwise agreed to by Architect in writing.

16  2.  The license will be limited to the Project, non-exclusive, and subject to the uses

17  and other provisions of the Architect Agreement.

18  3.  Any Recipient Party must fully indemnify and release the design team from any

19  claims by buyer and/or third parties arising out of any use or modification of the Instruments of

20  Service.

21  4.  All of the design teams' logos and any identifying marks must be removed from

22  the Instruments of Service.

23  5.  Any subsequent architects must seal/stamp the Instruments of Service and take on

24  responsible charge as the architect of record.

25  6.  Debtor or any Recipient Party will identify Architect as the design architect.

26  Any post-petition license fee or agreement for post-petition services ("New Architect

27  Agreement") must be separately negotiated between Architect and any Recipient Party. Architect

28

34

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

agrees, however, that it is generally willing to remain as the Architect of record for the project under the following terms and conditions, subject to formal documentation between Architect and buyer:

    1.    The other provisions herein relating to Architect's pre-petition claim have been fully complied with, including payment in full of Architect's pre-petition claim as part of the cure provided for above.

    2.    Recipient Party reactivates or purchases project-specific professional liability policy reasonably acceptable to Architect.

    3.    Recipient Party hires an independent, third-party forensic consultant to review the project and assess the current status of the Project.

    4.    Architect and Recipient Party reaching agreement on the scope, schedule, and fees for remaining services.

    15.    **Retention of Jurisdiction.**  After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Court will retain such jurisdiction as is legally permissible including for the following purposes:

    (a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment and any and all objections to the allowance, classification, priority or amount of Claims or Equity Interests;

    (b)    Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals authorized pursuant to the Bankruptcy Code or the Plan;

    (c)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) Debtor's or Liquidating Trustee's amendment, modification, or supplement after the Effective Date, pursuant to Article V of the Plan, of the lists

of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(d)    Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan;

(e)    Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving a Debtor, that may be pending on the Effective Date;

(f)    Adjudicate, decide or resolve any and all matters related to Causes of Action;

(g)    Adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(h)    Resolve any and all avoidance or recovery actions under Sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(i)    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order or any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Assumption Schedule, or Confirmation Order;

(j)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan or the Confirmation Order;

(k)    Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(l)    Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(m)    Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4) of the Bankruptcy Code;

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

(n)     Enforce the injunction~~, release, discharge, and~~ and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(o)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the ~~releases,~~ injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such ~~releases~~, injunctions~~,~~ and other provisions;

(p)     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(q)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(r)     Determine any other matters that may arise in connection with or relate to ~~this~~the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection therewith;

(s)     Enter an order or final decree concluding or closing the Chapter 11 Case;

(t)     Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(u)     Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(v)     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(w)     Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(x)     Enforce all orders previously entered by the Bankruptcy Court; and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

(y)    Hear any other matter not inconsistent with the Bankruptcy Code.

## V.    TAX CONSEQUENCES OF THE PLAN.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present. Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Internal Revenue Code, as amended (the "Tax Code") embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action. Also, Debtor has not retained any special tax counsel or tax accountant to analyze any tax consequences resulting from the Confirmation of the Plan.

Although Debtor has attempted to structure the Sale in a manner which is exempt from transfer taxes, Debtor anticipates that the closing of the Sale might result in tax liability. Debtor has not performed any detailed analysis of the extent to which, if any, the confirmation of the Plan may have on any tax liability of the estate. Debtor makes no representations regarding the potential tax consequences to creditors or interest holders from the confirmation of or implementation of the Plan. Debtor has no way of knowing the tax basis of the various investments made by creditors or equity. Without that information and without knowing the final sale amount of the property, it is impossible for Debtor to know or estimate the amount of income tax that could become due on a sale. Similarly, various creditors and equity holders may be liable for taxes in foreign jurisdictions, China as just one example. To the extent that creditors or equity are paid less than the amount of their current tax basis in their claim, an incremental tax loss may be recognized upon sale of the property. Creditors and equity holders are encouraged to consult with their own tax advisors regarding the potential tax effect that could result from a sale of the property.

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

1

## VI.    CONFIRMATION REQUIREMENTS AND PROCEDURES.

2    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

3    SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

4    CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

5    The following discussion is intended solely for the purpose of alerting readers about basic

6    confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.

7    Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete

8    summary of the law on this topic.

9    **A.    Who May Object.**  Any party in interest may object to the confirmation of the Plan,

10    even if such party in interest would not be entitled to vote to accept or reject the Plan.

11    **B.    Who May Vote to Accept or Reject the Plan.**  A creditor or interest holder has a

12    right to vote for or against the Plan if that creditor or interest holder has a claim or interest which

13    is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

14    **C.    What is an Allowed Claim or Interest?**  As noted above, a creditor or interest

15    holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any timely

16    filed proof of claim or interest will be deemed allowed, unless a party in interest files an objection

17    to the claim or interest. When an objection to a claim or interest is filed, the creditor or interest

18    holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either

19    overrules the objection or allows the claim or interest for voting purposes.

20    THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT

21    OF PRE-PETITION CLAIMS WAS JUNE 26, 2024 FOR NON-GOVERNMENTAL UNITS. The

22    bar date for filing a proof of claim in this case for governmental units is September 7, 2024.  A

23    ~~claim is deemed allowed if~~<span style="color:blue">Claim shall be deemed Allowed solely for purposes of voting on the</span>

24    <span style="color:blue">Plan unless (1</span>~~a) it~~<span style="color:red">such Claim</span> is scheduled ~~on Debtor's schedules and such claim is not scheduled~~

25    as disputed, contingent~~,~~ or unliquidated~~, and (2) no party in interest has objected to the claim. An~~

26    ~~interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.~~

27    <span style="color:blue">and no proof of claim has been timely filed or (b) there is an objection with respect to</span> <span style="color:green">such claim</span>

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

at least fourteen (14) days prior to the Voting Deadline. Such objection will be heard by the Court at least [DATE] days prior to the Voting Deadline.

**D.    What is an Impaired Claim or Interest?**

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

Currently, Debtor believes that all Classes of creditors are impaired and entitled to vote to accept or reject the Plan, except for Class 51. However, Debtor reserves the right to change the treatment of such party to the extent it identifies a Winning Bidder who proposes a Purchase Price sufficient to render a class unimpaired. Parties who dispute Debtor's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that Debtor has incorrectly characterized the class.

**E.    Who is Not Entitled to Vote.**  The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes, and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.    Who Can Vote in More Than One Class.**  A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**G.      Votes Necessary to Confirm the Plan.**  If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.      Votes Necessary for a Class to Accept the Plan.**  A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan. A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

**I.      Treatment of Non-Accepting Classes.**  As noted above, even if all impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law. Debtor will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan. In addition to seeking to confirm the Plan by cramdown, as set forth above.

**J.      Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~ SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if Debtor was liquidated under chapter 7 of the Bankruptcy Code. Debtor's Liquidation Analysis is attached as **Exhibit 4**.

In a chapter 7 case, Debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of Debtor. Debtor maintains that this requirement is clearly met. The biggest and most insurmountable issue is that Debtor is only able to operate a sale process for the Property because of the post-petition financing being provided by DTLA Lending LLC. Absent this Chapter 11 case, Debtor anticipates that its principal asset, the Real Property, would either be sold by a Chapter 7 Trustee or one of its secured creditors would obtain relief from the automatic stay and would proceed with a foreclosure sale. In either of these events, the recovery will likely be less than the process proposed by Debtor thought the Plan.

First, through either a sale by a Chapter 7 Trustee or foreclosure sale, any sale to the ultimate ~~Winning Bidder~~purchaser would not be exempt from transfer taxes pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code. Second, in the event of a conversion of Debtor's case to chapter 7, a chapter 7 trustee would be appointed and would be completely unfamiliar with the Property and the complexities of this case. The Chapter 7 Trustee would likely hire all new professionals who would be equally unfamiliar with the Property in this Case. The result of all of that would be the incurrence of an extraordinary amount of additional professional

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

fees incurred by professionals who would need to familiarize themselves with this, all of which is avoided by the current professionals, who are skilled, experienced and already intimately familiar with these cases, continuing with their current roles. Third, the marketing of the Property in the context of a sale by a Chapter 7 Trustee or at a foreclosure sale would be significantly less robust than the marketing plan already implemented by Debtor. Finally, in the event that the Property was sold by the Chapter 7 Trustee, pursuant to section 326 of the Bankruptcy Code, a chapter 7 trustee would be paid a significant amount of money for distributing the funds in these estates. After these costs and expenses, Debtor does not believe that any funds would be available to distribute to holders of unsecured claims following a liquidating of the Property.

In contrast, Debtor projects that Holders of Allowed General Unsecured Claims will receive some distribution pursuant to the Plan, with the prospect for additional upside in the event that the Purchase Price obtained through Debtor's marketing process is higher than estimated. Debtor's projections are based off the progress of its marketing efforts and are subject to revision depending on the amounts provided in the bids it ultimately receivers for the Property.   The Break-Even Analysis sets forth the expected sale price that is needed to make a full distribution on the LA County Tax Claim, and to the DIP Lender, LADI, Lendlease and priority creditors.

This option provides all creditors, including general unsecured creditors, with a vastly higher recovery than they would ever receive if Debtor's case were converted to chapter 7. Moreover, it may take many years for a chapter 7 trustee to administer this case and general unsecured creditors would not receive any distribution during the interim. Debtor, therefore, has satisfied the "best interest of creditors test" with respect to any general unsecured creditors who vote to reject the Plan. Debtor also submits that the Plan provides fair and equitable treatment of all classes of creditors and the greatest feasible recovery to all creditors.

**K.    Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor.

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING PLAN OF REORGANIZATION

There are at least two important aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses which are entitled to be paid on the Effective Date or shortly thereafter. If a sale of the Property meets or exceeds the price set forth in the Break-Even Analysis, then Debtor anticipates having sufficient Cash as of the Effective Date to pay such claims from the Sale of the Property. If the sale of the Property is lower than the price set forth in the Break-Even Analysis, Debtor will request that its secured creditors provide a carve-out sufficient to allow Debtor to pay all amounts necessary to proceed in confirming the Plan and ask secured creditors to consent to payment of less than the full amount of their unsecured claims. In the event that the Secured Creditor do not consent to a sufficient carve-out, or Debtor is otherwise unable to pay all amounts necessary to have a confirmable plan from the Sale Proceeds, Debtor will not seek confirmation of the Plan. The second aspect considers whether the Reorganized Debtors will have enough cash over the life of the Plan to make the required Plan payments.  Pursuant to the Plan, Debtor has agreed to make payment to each Class depending on the Sale Proceeds obtained through the Sale of the Property. If Debtor does not have sufficient Cash on hand on the Effective Date to pay all of the claims and expenses which are entitled to be paid on the Effective Date or shortly thereafter, Debtor will request that the Holders of ~~the LADI~~ Secured ~~Claim and Lendlease Secured Claim~~Claims agree to a carve-out from their respective claims to pay such expenses. In the event that the Holders of ~~the LADI~~ Secured ~~Claim and/or Lendlease Secured~~ Claims do not agree to such carve-out, the Effective Date will not occur and Debtor will not go forward with the confirmation of this Plan.  If the sale proceeds exceed the break-even sales price, any other post-confirmation activities of the Liquidating Trustee will be funded through Plan Administrative Assets. ~~As of today, Debtor does not believe that there will be any post-confirmation action that the Liquidating Trustee will need to take, beyond routine claims reconciliation and distributing the Sale Proceeds to Holders of Allowed Claims.~~ Debtor, therefore, has satisfied this second aspect of Plan feasibility.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENT TO~~SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

VII.    **RISK FACTORS REGARDING THE PLAN.**

As with any sale of property, there is a risk that the ultimate sale price realized will be lower than Debtor anticipates or projects. In this case, the sale of the Property may not close and in that case, Debtor will not seek confirmation of the Liquidating Chapter 11 Plan. Additionally, in the event the parties are unable to close on a sale of the Property with the Winning Bidder or Back-Up Bidder post-confirmation, then there is a possibility that the Effective Date of the Liquidating Chapter 11 Plan will not occur.  There are also a large number of still contingent, unliquidated and disputed claims which will ultimately have to be settled or litigated.

There are also many factors as it relates to the sale of undeveloped property that are outside the control of Debtor.  Based upon the appraisal obtained by Debtor, the discussions that Debtor is having with prospective purchasers of the Property, the amount of interest in the Property, and the opinions of Debtor's Professionals, Debtor believes that there will be a buyer for the Property sufficient to satisfy all Administrative Claims, Secured Claims, and provide at least some return for the Holders of General Unsecured Claims. Debtor also has a reasonable belief there will be a robust auction.

VIII.    **EFFECT OF CONFIRMATION OF THE PLAN.**

A.    **Discharge.**  Debtor will not receive a discharge under the Plan.

B.    **Modification of the Plan.**  Debtor reserves the right to modify the Plan any time before confirmation. However, the Court may require a new disclosure statement and/or re-voting on the Plan if Debtor modifies the Plan before confirmation. The Liquidating Trustee may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

C.    **Post-Confirmation Status Reports.**  Until a final decree closing Debtor's Case is entered, the Liquidating Trustee will file quarterly status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENT TO SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S LIQUIDATING
PLAN OF REORGANIZATION

**D.      Post-Confirmation Conversion/Dismissal.**  A creditor or any other party in interest may bring a motion to convert or dismiss these chapter 11 cases under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan. If the Court orders these chapter 11 cases converted to chapter 7 after the Plan is confirmed, then all property that had been property of these chapter 11 estates, and that has not been disbursed pursuant to the Plan, will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during these cases. The Confirmation Order may also be revoked under very limited circumstances. The Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Confirmation Order.

**E.      Final Decree.**  Once Debtor's estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trustee will file a motion with the Court to obtain a final decree to close this chapter 11 case. The Liquidating Trustee will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) as well as any and all other fees owing to the U.S. Trustee and/or the Clerk of the Court.

Dated: September 4, 2024                    Respectfully submitted,

                                            BRYAN CAVE LEIGHTON PAISNER LLP


                                            By: _/s/ Sharon Z. Weiss_
                                                 Sharon Z. Weiss
                                                 Attorneys for Debtor-in-Possession

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 9/4/2024 10:59:25 PM | |
|---|---|
| **Style name:** Firm | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2024-08-19 Oceanwide First Amended Disclosure Statement.docx | |
| **Modified filename:** 2024-09-04 Oceanwide Second Amended Disclosure Statement.docx | |
| **Changes:** | |
| Add | 131 |
| Delete | 124 |
| Move From | 45 |
| Move To | 45 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 6 |
| **Total Changes:** | 351 |

1  **BRYAN CAVE LEIGHTON PAISNER LLP**
2  Sharon Z. Weiss (State Bar No.: 169446)
   sharon.weiss@bclplaw.com
3  120 Broadway, Suite 300
   Santa Monica, CA 90401-2386
4  Telephone:    (310) 576-2100
   Facsimile:    (310) 576-2200
5
6  Jarret P. Hitchings (*Admitted Pro Hac Vice*)
   jarret.hitchings@bclplaw.com
7  One Wells Fargo Center
   301 S. College Street, Suite 2150
8  Charlotte, NC 28202
   Telephone:    (704) 749-8999
9  Facsimile:    (704) 749-8990

10 *Attorneys for Debtor and Debtor in Possession*

11

12            **UNITED STATES BANKRUPTCY COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                 **LOS ANGELES DIVISION**

15 In re                              Case No. 2:24-bk-11057-DS

16 Oceanwide Plaza, LLC,              Chapter: 11

17            Debtor.                 **DEBTOR'S** ~~SUPPLEMENTAL~~ **SECOND
                                      AMENDED** **LIQUIDATING CHAPTER 11**
18                                    **PLAN**

19                                    Plan Confirmation Hearing
                                      Date:  October 16, 2024
20                                    Time:  10:00 a.m.
                                      Place: Ctrm 1634/Via Zoom
21                                           255 East Temple Street
22                                           Los Angeles, CA 90012

23

24

25

26

27

28

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF
TIME ........................................................................................................................ 1
    A.    Defined Terms ............................................................................................... 1
    B.    Rules of Interpretation and Computation of Time ........................................... ~~13~~12

II    UNCLASSIFIED CLAIMS ....................................................................................... ~~14~~13
    A.    DIP Facility Claims ...................................................................................... 14
    B.    Administrative Claims .................................................................................. 14
    C.    Priority Tax Claims ...................................................................................... ~~16~~15
    D.    Professional Fee Clams ................................................................................ 16
    E.    Statutory Fees .............................................................................................. ~~17~~16

III    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ............................................................................................................ 17
    A.    Classification of Claims ............................................................................... 17
    B.    Class Identification ....................................................................................... ~~18~~17
    C.    Treatment and Voting Rights of Claims and Equity Interests ........................ 18
    D.    Special Provision Governing Unimpaired Claims .......................................... ~~27~~24
    E.    Voting; Presumptions; Solicitation ............................................................... ~~27~~24
    F.    Subordinated Claims .................................................................................... ~~28~~25
    G.    No Waiver .................................................................................................... ~~29~~26

IV    MEANS FOR IMPLEMENTATION OF THE PLAN ................................................ ~~29~~26
    A.    Compromise of Controversies ...................................................................... ~~29~~26
    B.    Sources of Consideration for Plan Distribution ............................................. ~~29~~26
    C.    Sale .............................................................................................................. ~~29~~26
    D.    Plan Administration and Wind Down ........................................................... ~~30~~27
    E.    Corporate Action .......................................................................................... ~~32~~29
    F.    Vesting of Assets ......................................................................................... ~~33~~30
    G.    Exemptions from Certain Transfer Taxes and Recording Fees ...................... ~~33~~30
    H.    Effectuating Documents; Further Transactions ............................................. ~~33~~31
    I.    Nonconsensual Confirmation ....................................................................... ~~34~~31
    J.    Closing of Chapter 11 Case .......................................................................... ~~34~~31

V    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... ~~34~~31
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ....... ~~34~~31
    B.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..... ~~36~~33
    C.    Insurance Policies ........................................................................................ ~~38~~35
    D.    Reservation of Rights ................................................................................... ~~38~~35
    E.    Nonoccurrence of the Effective Date ............................................................ ~~38~~35

VI    PROVISIONS GOVERNING DISTRIBUTIONS ..................................................... ~~38~~36
    A.    Distribution on Account of Claims and Equity Interests Allowed as of the
Effective Date ............................................................................................. ~~38~~36
    B.    Distribution of Account of Claims and Equity Interest Allowed After the
Effective Date ............................................................................................. ~~39~~37

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

i

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

C.    Timing and Calculation of Amounts to Be Distributed ................................... ~~40~~38
D.    Delivery of Distributions.................................................................................. ~~40~~39
E.    Distributions by Distribution Agent................................................................. ~~41~~39
F.    Minimum Distributions ..................................................................................... ~~41~~40
G.    Undeliverable Distributions ............................................................................. ~~41~~40
H.    Compliance with Tax Requirements/Allocations .............................................. ~~42~~41
I.     Surrender of Cancelled Instruments or Securities............................................ ~~43~~41
J.     Claims Paid or Payable by Third Parties.......................................................... ~~43~~42

VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY
        INTERESTS............................................................................................................. ~~44~~43
A.    Allowance of Claims and Equity Interests ....................................................... ~~44~~43
B.    Claims Administration Responsibility .............................................................. ~~45~~43
C.    Estimation of Claims and Equity Interests ....................................................... ~~45~~44
D.    Adjustment to Claims and Equity Interests Without Objection........................ ~~46~~45
E.    Disallowance of Certain Claims ....................................................................... ~~46~~45
F.    Amendments to Claims ..................................................................................... ~~47~~45
G.    No Interest on Claims, Equity Interests, or Disputed Claims .......................... ~~47~~45

VIII   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................................... ~~47~~46
A.    Conditions Precedent to Confirmation of the Plan .......................................... ~~47~~46
B.    Conditions Precedent to the Effective Date ..................................................... ~~47~~46
C.    Waiver of Conditions Precedent ....................................................................... ~~48~~46
D.    Effect of Failure of Conditions Precedent ........................................................ ~~48~~47
E.    Reservation of Rights ........................................................................................ ~~49~~47
F.    Substantial Consummation of Plan ................................................................... ~~49~~47

IX     EFFECT OF CONFIRMATION .............................................................................. ~~49~~47
A.    Binding Effect ................................................................................................... ~~49~~47
B.    Compromise and Settlement of Claims and Controversies .............................. ~~49~~48
C.    Injunctions......................................................................................................... ~~50~~48
D.    Exculpation ....................................................................................................... ~~50~~49
E.    Setoffs and Recoupment ................................................................................... ~~51~~50
F.    Retention of Causes of Action; Reservation of Rights ..................................... ~~52~~50
G.    Release of Liens ................................................................................................ ~~52~~51

X     RETENTION OF JURISDICTION .......................................................................... ~~52~~51

XI    MISCELLANEOUS PROVISIONS .......................................................................... ~~55~~54
A.    Immediate Binding Effect ................................................................................. ~~55~~54
B.    Amendments ...................................................................................................... ~~55~~54
C.    Governing Law .................................................................................................. ~~56~~55
D.    Successors and Assigns ..................................................................................... ~~56~~55
E.    Severability ....................................................................................................... ~~56~~55
F.    Controlling Document........................................................................................ ~~57~~55
G.    Filing of Additional Documents ....................................................................... ~~57~~56
H.    Reservation of Rights ........................................................................................ ~~57~~56
I.     Service of Documents ....................................................................................... ~~58~~56
J.     Section 1125(e) of the Bankruptcy Code .......................................................... ~~58~~57

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

K.      Tax Reporting and Compliance ......................................................................... ~~59~~57

L.      Exhibits, Schedules and Supplements............................................................. ~~59~~57

M.     Entire Agreement ............................................................................................. ~~59~~58

N.      Allocation of Payments ..................................................................................... ~~59~~58

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## **TABLE OF AUTHORITIES**

**Page(s)**

**Statutes**

11 U.S.C. §§ 101 *et seq.*...................................................................................*passim*

11 U.S.C. § 102 ...................................................................................................... 13

11 U.S.C. § 105 ...................................................................................................... 52

11 U.S.C. § 105(a) .................................................................................................. 51

11 U.S.C. § 327 through 331 ............................................................................. 10, 16

11 U.S.C. § 346 ...................................................................................................... 53

11 U.S.C. § 347(b) .................................................................................................. 41

11 U.S.C. § 363 ................................................................................... 10, 16, 33, 53

11 U.S.C. § 365 ............................................................................... 5, 6, 12, 33

11 U.S.C. § 365(a) .................................................................................................. 34

11 U.S.C. § 365(b) .................................................................................................. 36

11 U.S.C. § 365(b)(1) ............................................................................................. 35

11 U.S.C. § 365(d)(4) ........................................................................................ 37, 53

11 U.S.C. § 502 ........................................................................................................ 2

11 U.S.C. § 502(c) .................................................................................................. 44

11 U.S.C. § 502(d) ........................................................................................ 2, 45, 52

11 U.S.C. § 502(j) ................................................................................................... 45

11 U.S.C. § 503 ...................................................................................................... 10

11 U.S.C. § 503(b) .................................................................................................... 1

11 U.S.C. § 503(b)(2) ............................................................................................. 10

11 U.S.C. § 503(b)(3) ............................................................................................. 10

11 U.S.C. § 503(b)(4) ............................................................................................. 10

11 U.S.C. § 505 ...................................................................................................... 53

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

11 U.S.C. § 505(b) ............................................................................................................. 58

11 U.S.C. § 506 ................................................................................................................. 11

11 U.S.C. § 506(b) ............................................................................................................. 46

11 U.S.C. § 507 ................................................................................................................... 1

11 U.S.C. § 507(a) .............................................................................................................. 9

11 U.S.C. § 507(a)(8) ........................................................................................................ 10

11 U.S.C. § 510 ............................................................................................................ 2, 27

11 U.S.C. § 510(b) ....................................................................................................... 12, 27

11 U.S.C. § 522(f) ............................................................................................................. 45

11 U.S.C. § 522(h) ............................................................................................................ 45

11 U.S.C. § 541 ............................................................................................................. 2, 6

11 U.S.C. § 542-551 .................................................................................................. 2, 45, 52

11 U.S.C. § 553 ...................................................................................................... 2, 11, 52

11 U.S.C. § 554 ................................................................................................................. 30

11 U.S.C. § 724(a) .............................................................................................................. 2

11 U.S.C. § 1101(2) ........................................................................................................... 48

11 U.S.C. § 1103 ............................................................................................................... 16

11 U.S.C. § 1122 ............................................................................................................... 17

11 U.S.C. § 1122(a)(1) ......................................................................................................... 4

11 U.S.C. § 1123 ........................................................................................................ *passim*

11 U.S.C. § 1123(a)(1) ................................................................................................... 14, 17

11 U.S.C. § 1123(b)(2) ....................................................................................................... 34

11 U.S.C. § 1123(b)(3) ....................................................................................................... 31

11 U.S.C. § 1124 ........................................................................................................... 7, 11

11 U.S.C. § 1125 ............................................................................................................. 5, 9

11 U.S.C. § 1125(e) ........................................................................................................... 57

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

11 U.S.C. § 1126(b) ................................................................................................ 5, 9

11 U.S.C. § 1126(f) ...................................................................................................... 27

11 U.S.C. § 1127(a) ...................................................................................................... 55

11 U.S.C. § 1127(b) ...................................................................................................... 54

11 U.S.C. § 1129 ........................................................................................................ 4, 5

11 U.S.C. § 1129(a)(8) .................................................................................................. 27

11 U.S.C. § 1129(a)(9)(C) ...................................................................................... 15, 38

11 U.S.C. § 1129(b) ............................................................................................... 33, 54

11 U.S.C. § 1141 ........................................................................................................... 52

11 U.S.C. § 1141(b) ...................................................................................................... 32

11 U.S.C. § 1141(c) ...................................................................................................... 32

11 U.S.C. § 1142 ........................................................................................................... 51

11 U.S.C. § 1145 ........................................................................................................ 5, 9

11 U.S.C. § 1146 ........................................................................................................... 53

11 U.S.C. § 1146(a) ...................................................................................................... 32

11 U.S.C. § 11923 ......................................................................................................... 32

28 U.S.C. § 1930 ............................................................................................................. 3

28 U.S.C. § 1930(a) ...................................................................................................... 16

28 U.S.C. § 2075 ............................................................................................................. 3

31 U.S.C. § 3717 ........................................................................................................... 16

Los Angeles Municipal Code § 21.9.6 ........................................................................ 32

Securities Act of 1933 .................................................................................................. 11

**Other Authorities**

Bankruptcy Rule 2002 .................................................................................................. 57

Bankruptcy Rule 3001 .................................................................................................. 10

Bankruptcy Rule 3012 .................................................................................................. 44

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Bankruptcy Rule 3018.................................................................................................. 5, 9, 27

Bankruptcy Rule 3019.......................................................................................................... 55

Bankruptcy Rule 3020(e)..................................................................................................... 54

Bankruptcy Rule 3022.......................................................................................................... 33

Bankruptcy Rule 7062.......................................................................................................... 54

Bankruptcy Rule 9006(a)................................................................................................. 4, 13

Bankruptcy Rule 9019.............................................................................................. 28, 44, 48

Fed. R. of Civ. P. 59............................................................................................................... 7

Fed. R. of Civ. P. 60............................................................................................................... 7

Local Rule 3022-1................................................................................................................. 33

Los Angeles Municipal Code Section 21.9.6........................................................................ 30

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**INTRODUCTION**

Debtor Oceanwide Plaza LLC (the "Debtor" or "Oceanwide") is a chapter 11 debtor and debtor-in-possession in the above-captioned chapter 11 case (this "Chapter 11 Case"). This case was initiated on February 13, 2024 (the "Petition Date"), by the filing of an involuntary petition for relief against Debtor (the "Involuntary Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (this "Court") by Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc., Woodbridge Glass Inc., and Mitsubishi Electric US, Inc. (collectively, the "Petitioning Creditors"). On March 8, 2024, Debtor filed its *Answer* [ECF No. 27] to the Involuntary Petition and consented to entry of an order for relief. On March 11, 2024 (the "Relief Date"), the clerk of the Court issued the *Order for Relief* [ECF No. 29] (the "Relief Order").

This document is Debtor's Second Amended Liquidating Chapter 11 Plan (the "Plan")

Chapter 11 of the Bankruptcy Code allows the debtor, and under some circumstances, creditors and other parties-in-interest, to propose a plan of reorganization. This Plan is a liquidating plan of reorganization that contemplates the sale of substantially all of Debtor's assets. The Plan provides for the closing of a sale of Debtor's Property, as defined below, on or before the Effective Date. After the Plan is fully administered, Debtor will be dissolved.

**I    DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME**

A.    *Defined Terms*.

The following terms shall have the respective meanings specified below when used in capitalized form in this Plan.

1.    "***Administrative Claims***" means any and all requests for payment of costs or expenses of the kind specified in Section 503(b) and entitled to priority under Section 507, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of Debtor; (b) Bankruptcy Fees; (c) Cure Costs; and (d) Allowed Professional Fee Claims.

2.    "***Administrative Claims Bar Date***" means the first Business Day that is the 30th day after notice of entry of the Confirmation Order is filed with the Bankruptcy Court or such later date as may be established by an order of the Bankruptcy Court.

3.    "***Allowed***" means, with respect to any Claim or Equity Interest: (a) any Claim or Equity Interest arising on or before the Effective Date that is (i) (A) timely filed by the applicable Bar Date or (B) as to which there exists no requirement for the Holder of such Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order; and (ii) (A) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to Section 502(d) or otherwise, has been instituted by the applicable objection deadline, or (B) as to which any objection has been determined in favor of the respective Holder by Final Order, but only to the extent allowed by Final Order; (b) any Claim or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of Debtor; (c) any Claim or Equity Interest as to which the liability of Debtor, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (d) any Claim or Equity Interest expressly allowed hereunder; *provided, however*, that notwithstanding the foregoing, unless expressly waived by the Plan, the Allowed amount of Claims or Equity Interests shall, to the extent applicable, be subject to the limitations under or maximum amounts permitted by the Bankruptcy Code, including Sections 502 or 503.

4.    "***Architect***" means Arcadis, Inc., or its successors and assigns with respect to the intellectual property rights asserted in the Instruments of Service defined in Article V(f) below.

5.    "***Architect Claim***" means claim number 28-1 submitted by Arcadis, Inc.

6.    "***Architect Claim Amount***" means the amount of claim number 28-1, as it may be amended, stipulated to, or otherwise established.

7.    ~~4.~~ "***Assets***" means all of Debtor's right, title, and interest of any nature in property of any kind, wherever located, including, but not limited to, as specified in Section 541.

8.    ~~5.~~ "***Assumption Schedule***" means the schedule (as may be amended), if any, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that Debtor will assume pursuant to the Plan and which will be included in the Plan Supplement.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

9. 6. "*Avoidance Actions*" means any and all actual or potential claims and causes of action to avoid a transfer of property or an obligation incurred by Debtor pursuant to any applicable Section, including Sections 502, 510, 542, 544, 545, 547 through 550, 553, and 724(a), or under similar or related state, federal, or foreign Law, including fraudulent transfer or voidable transaction Laws.

10. 7. "*Ballot*" means a ballot upon which certain Holders of Impaired Claims that are entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and, if applicable, make such other elections as may be made thereon.

11. 8. "*Ballot Summary*" shall mean the report describing the Ballots submitted accepting or rejecting the Plan, a certification of the amount and number of Allowed Claims in each Class accepting or rejecting the Plan and delineating the Ballots which do not conform to the voting instructions.

12. 9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as may be amended, as in effect on the date hereof.

13. 10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of California, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

14. 11. "*Bankruptcy Fees*" means any and all fees or charges assessed against any Estate under section 1930 of title 28 of the United States Code.

15. 12. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, and the general, local, and chambers rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Case.

16. 13. "*Bidding Procedures Order*" means the Court's Order Granting Debtor's Motion to (I) Approve Auction and Bid Procedures for the Sale of Property; (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof; and (III) Granting Related Relief

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

[ECF No. 276] dated June 27, 2024, as amended by the Court's *Order Approving Stipulation To Modify Certain Sale Schedule Dates* [ECF No. 319] dated July 9, 2024, and as further amended by the *Modified Order Granting Debtor's Motion To (I) Approve Auction And Bid Procedures For The Sale Of Property; (II) Scheduling An Auction And Approving The Form And Manner Of Notice Thereof; And (III) Granting Related Relief* [ECF No. 374] dated July 26, 2024.

17. ~~14.~~ "**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

18. ~~15.~~ "**Cash**" means the legal tender of the United States of America or the equivalent thereof.

19. ~~16.~~ "**Causes of Action**" means any and all actions, causes of action, suits, claims, Claims, interests, damages, remedies, demands, rights, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, franchises, and trespasses of any kind or character whatsoever of or belonging to the Estate, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, reduced or not to judgment, liquidated or unliquidated, fixed,

20. ~~17.~~ "**Chapter 11 Case**" means the case pending for Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

21. ~~18.~~ "**Claim**" means a claim as defined in Section 101(5) against Debtor, whether or not asserted.

22. ~~19.~~ "**Claims Bar Date**" means, as applicable, the Administrative Claims Bar Date and any other date or dates to be established by an Order of the Bankruptcy Court by which Proofs of Claim must be filed.

23. ~~20.~~ "**Claims Register**" means the official register of Claims maintained by the Notice and Claims Agent.

24. ~~21.~~ "**Class**" means a group of Claims or Equity Interests classified together pursuant to Section 1122(a)(1).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

25. 22. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order.

26. 23. "*Confirmation Date*" means the date upon which the Confirmation Order is entered on the Bankruptcy Court's docket.

27. 24. "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under Section 1129.

28. 25. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129.

29. 26. "*Consummation*" means the occurrence of the Effective Date.

30. 27. "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties to an Executory Contract or Unexpired Lease) and all other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed by Debtor pursuant to Sections 365 and 1123.

28. "*D&O Insurance*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of Debtor with respect to Debtor's directors, managers, officers, and employees.

31. 29. "*Debtor*" has the meaning set forth in the introductory paragraph of this Plan.

32. 30. "*DIP Facility Claim*" means the claim held by DTLA Lending LLC, or its successors and assigns, under Debtor's Debtor-in-Possession financing, as approved by the Bankruptcy Court pursuant to the DIP Facility Order.

33. 31. "*DIP Facility Order*" means the Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and (III) Modifying the Automatic Stay [Dkt. 229] and any subsequent orders or amendments.

34. 32. "*Disclosure Statement*" means the disclosure statement and the supplement to disclosure statement, as they may be amended, modified, or supplemented from time to time, that were provided with the Plan that was prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

35. 33. "***Disputed***" means, with respect to any Claim or Equity Interest, except as otherwise provided herein, a Claim or Equity Interest that is not yet Allowed. To the extent Debtors dispute only a portion of a Claim or Equity Interest, such Claim or Equity Interest shall be deemed Allowed in the amount Debtors do not dispute, if any, and Disputed as to the balance of such Claims or Equity Interests.

36. 34. "***Disputed Secured Creditor Reserve Treatment***" means, the treatment provided to Holders of Secured Claims in the event that the Sale Proceeds are insufficient to pay all Holders of Allowed LADI Secured Claims, Lendlease Secured Claims, and Other Secured Claims in full, as described in Article III below. Any amounts subject to the Disputed Secured Creditor Reserve Treatment shall be transferred to the Liquidating Trustee upon the Effective Date, to be held in a reserve account pending resolution by agreement of the Holders of Secured Claims or Final Order. shall have the meaning set forth Article VI(B) .

37. 35. "***Distribution Agent***" means the Liquidating Trustee, or any Person designated by the Liquidating Trustee, in the capacity as distribution agent under the Plan.

38. 36. "***Distribution Date***" means the date on which Holders of Claims are eligible to receive distributions under the Plan.

39. 37. "***Distribution Record Date***" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which date shall be: (a) the Effective Date; or (b) such other date as designated by an order of the Bankruptcy Court.

40. 38. "***Effective Date***" means the date that is the first Business Day upon which all conditions to the effectiveness of the Plan set forth in Article VIII hereof have been satisfied or waived in accordance with the terms of the Plan. Upon the occurrence of such date, Debtors shall file a notice with the Bankruptcy Court indicating that the Effective Date has occurred.

41. 39. "***Entity***" means an "entity" as defined in Section 101(15).

42. 40. "***Equity Interest***" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership, limited liability company interests (whether certificated or uncertificated), or other instrument evidencing an ownership interest in Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    to purchase or acquire such interests at any time, and all rights arising with respect thereto that

2    existed immediately before the Petition Date.

3        43.    41. "*Estate*" means the estate created for Debtor pursuant to Section 541 upon the

4    commencement of the Chapter 11 Case.

5        44.    42. "*Exculpated Parties*" means each of the following in their capacities as such: (i)

6    Debtor; (ii) all officers, directors, and members of Debtor in each case who are or were acting in

7    such capacity on or after the Petition Date, (iii) all agents, members of management and other

8    employees and representatives of Debtor, in each case who are or were acting in such capacity on

9    or after the Petition Date; (iv) all agents, attorneys, advisors, accountants, financial advisors,

10   consultants and other professionals to the extent such parties are or were acting in any such capacity

11   for the parties identified above on or after the Petition Date.

12       45.    43. "*Executory Contract*" means a contract or lease to which Debtor is a party that

13   is subject to assumption, assumption and assignment, or rejection under Sections 365 or 1123.

14       46.    44. "*Final Order*" means, as applicable, an order, ruling, or judgment of the

15   Bankruptcy Court or any other court of competent jurisdiction, as applicable, which has not been

16   reversed, vacated, or stayed and as to which the time to appeal, petition for certiorari, or move for

17   new trial, stay, re-argument, or rehearing has expired and as to which no appeal, petition for

18   certiorari, or motion for new trial, stay, re-argument, or rehearing is pending, or as to which any

19   right to appeal, petition for certiorari, move for a new trial, move for a stay, reargue, or rehear has

20   been waived in writing in form and substance satisfactory to Debtor or, in the event that an appeal,

21   writ of certiorari, new trial, stay, or re-argument or rehearing thereof has been sought, such order

22   of the Bankruptcy Court or other court of competent jurisdiction (as applicable) has been

23   determined by the highest court to which such order was appealed, or certiorari, reargument, or

24   rehearing has been denied and the time to take any further appeal, petition for certiorari, or move

25   for new trial, stay, re-argument, or rehearing has expired; *provided, however*, that the possibility

26   that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous

27   rule under the Bankruptcy Rules or applicable state or provincial court rules, may be filed with

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

respect to such order, ruling, or judgment shall not cause an order, ruling, or judgment not to be a Final Order.

47. ~~45.~~ "**General Unsecured Claim**" means any unsecured Claim against Debtor not otherwise provided for in the Plan, including (a) Claims arising from the rejection of Unexpired Leases and Executory Contracts to which Debtor is a party; and (b) Claims arising from any litigation or other court, administrative, or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, Debtor related thereto.

48. ~~46.~~ "**Governmental Unit**" shall mean any United States national, federal, state, provincial, municipal, or local government, governmental, regulatory or administrative authority, agency, instrumentality or commission or any court, tribunal, or judicial body.

49. ~~47.~~ "**Holder**" means the beneficial holder of any Claim or Equity Interest.

50. ~~48.~~ "**Impaired**" means, with respect to a Claim or Equity Interest, such Claim or Equity Interest that falls within a Class of Claims or Equity Interests that is impaired within the meaning of Section 1124.

~~49. "**Indemnification Obligation**" means Debtor's obligation to indemnify, reimburse, or otherwise hold financially harmless its Indemnified Parties with respect to or based upon any act or omission taken or omitted in any of the relevant capacities, or for or on behalf of Debtor, pursuant to and to the maximum extent provided by such Debtor's certificates of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.~~

~~50. "**Indemnified Parties**" means Debtor's current and former directors, officers, managers, employees, attorneys, other professionals, and agents that were employed or served in such capacity as of or prior to the Effective Date and that are entitled to be indemnified by Debtor pursuant to, among other things, Debtor's bylaws, certificates of incorporation (or other formation documents), board resolutions, employment contracts, or other agreements.~~

51.    "**Involuntary Petition**" means the involuntary petition for relief against Debtor submitted by the Petitioning Creditors under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

52.    ***"LADI Secured Claim"*** means any and all Claims of Los Angeles Development Inc., and its successors and assigns, against Debtor ~~and secured by the Property~~which are Secured Claims arising prior to the Petition Date.

53.    "***Law***" means any federal, state, local, or foreign "law" (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction.

54.    ***"Lendlease Secured Claim"*** means any and all Claims of Lendlease (US) Construction Inc. ("Lendlease") against Debtor ~~and secured by the Property~~which are Secured Claims arising prior to the Petition Date. The Lendlease Secured Claim is divided into subclasses (a) and (b). Class 3(a) includes the secured Claims held directly and exclusively by Lendlease, but does not include claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates. Class 3(b) includes the secured Claims held by subcontractors of Lendlease regarding which Debtor and Lendlease are both liable, including Claims of subcontractors to Lendlease which have been or may be assigned to Lendlease or any of its affiliates.

55.    "***Lien***" means a lien as defined in Section 101(37).

56.    "***Liquidating Trust***" means the trust established as of the Effective Date to, among other things, (i) distribute funds to Holders of Allowed Claims; (ii) administer and liquidate the Plan Administration Assets; and (iii) assert, settle or abandon any Causes of Action held by Debtor as of the Effective Date pursuant to a Liquidating Trust Agreement to be included in the Plan Supplement.

57.    "***Liquidating Trustee***" means the trustee of the Liquidation Trust, or his, her, or its successor ~~which shall be means Oceanwide or a form of Oceanwide that, in the sole discretion of Debtor, shall be established on or before the Effective Date for the benefit of holders of Claims against, and Equity Interests in, Debtor in connection with the distribution of the Sale Proceeds and any other assets of Debtor, and otherwise for the administration of the Plan for Debtor and the Estate.~~ who Debtor anticipates will be Bradley Sharp with Development Specialists, Inc.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

58.    "*Notice and Claims Agent*" means Stretto, Inc., in its capacity as noticing and claims agent for Debtor.

59.    "*Other Priority Claims*" means any and all Claims against Debtor entitled to priority in right of payment under Section 507(a) that are not Administrative Claims, Priority Tax Claims, or Professional Fee Claims.

60.    "*Other Secured Claims*" means any Secured Claims against Debtor that are not LADI Secured Claims, Lendlease Secured Claims or Secured Tax Claims.

61.    "*Person*" means a "person" as defined in Section 101(41).

62.    "*Petitioning Creditors*" shall mean Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc., Woodbridge Glass Inc., and Mitsubishi Electric US, Inc.

63.    "*Petition Date*" means the date the Involuntary Petition was filed.

64.    "*Plan*" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be amended, modified, or supplemented from time to time, that is prepared and distributed in accordance with Sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable Laws.

65.    "*Plan Administration Assets*" means all of Debtor's assets not sold to Purchaser, except for Sale Proceeds.

66.    "*Plan Documents*" means any and all documents, other than the Plan or Disclosure Statement, to be executed, delivered, or performed in connection with the occurrence of the Effective Date, subject to any consent rights set forth in the Plan.

67.    "*Plan Objection Deadline*" means the deadline established pursuant to the Bankruptcy Code, Bankruptcy Rules, or Order of the Court for parties to object to Confirmation of the Plan.

68.    "*Plan Supplement*" means the compilation of documents, schedules, and exhibits to the Plan, and forms thereof, to be filed by Debtor no later than the Plan Supplement Filing Date, as the same may be amended, modified, or supplemented.

69.    "*Plan Supplement Filing Date*" means the date that is ~~five~~seven calendar days prior to the Plan Objection Deadline, or such later date as is determined by Debtor.

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

70.    "***Potential Architect Reserve***" means the amounts transferred to the Liquidating Trust equal to the amount any disputed portion of ~~a claim under Class 5~~the Architect Claim. . Such amounts will be held by the Liquidating Trust until the dispute is resolved by Final Order, as set forth in Article III(B)(5) below.

71.    "***Priority Tax Claims***" means any and all Claims against Debtor of the kind specified in Section 507(a)(8).

72.    "***Professionals***" means (a) any and all professionals employed in the Chapter 11 Case pursuant to Sections 327, 328, 363, or 1103, or otherwise, and (b) any and all professionals or other Entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4).

73.    "***Professional Fee Claim***" means any Claim of a Professional seeking payment of compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date and through and including the Confirmation Date, under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5).

74.    "***Proof of Claim***" means a "proof of claim," as defined in Bankruptcy Rule 3001, or a motion or request for payment of fees, costs, or expenses made pursuant to Section 503 filed in the Chapter 11 Case.

75.    "***Property***" means the property to be sold to Winning Bidder or the Backup Bidder, as defined in the Bidding Procedures Order, pursuant to the Purchase and Sale Contract.

76.    "***Pro-Rata Share***" means as to a particular holder of an Allowed General Unsecured Claim ~~at any date~~, the ratio that the amount of such claim bears to the total amount of all Allowed General Unsecured Claims ~~(not otherwise electing a cash payment,~~ if applicable) ~~determined as if all disputed~~, following the resolution of all Disputed General Unsecured Claims ~~were allowed claims~~. .

77.    "***Purchase and Sale Contract***" means that certain Purchase and Sale Contract, by and between Purchaser and Winning Bidder or Back-Up Bidder, as applicable and as defined in the Bid Procedures Order, as thereafter may be amended or modified, pertaining to the Sale.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

78.     **"Purchaser"** shall mean the Person or Entity purchasing the Property pursuant to the Bidding Procedures Order and Purchase and Sale Contract.

79.     "**Reinstated**" or "**Reinstatement**" means, with respect to Claims and Equity Interests, the treatment provided for in Section 1124.

80.     **"Relief Date"** shall mean March 11, 2024, the date that the Court issued the Relief Order.

81.     **"Relief Order"** shall mean the Order for Relief entered by the Court on the Relief Date.

82.     "**Sale**" means the sale of the Property as set forth herein and pursuant to the Purchase and Sale Contract.

83.     "**Sale Proceeds**" means the net proceeds actually received by Debtor upon the closing of the Sale, less all costs and expenses arising from the sale of the Property.

84.     "**Section**" shall refer to the applicable section of the Bankruptcy Code, unless otherwise stated.

85.     "**Secured Claim**" means any and all Claims against Debtor that (a) are secured by a Lien on, or security interest in, property of Debtor, or that has the benefit of rights of setoff under Section 553, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law, but only to the extent of the value of such Holder's interest in Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in Section 506, or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

86.     "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

87.     "**Security**" has the meaning ascribed to such term in Section 101(49).

88.     "**Stamp or Similar Tax**" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege tax (including, without limitation, privilege taxes on construction contracting with

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

regard to speculative builders and owner builders), and any other similar tax imposed or assessed by any Governmental Unit.

89.    "*Statutory Fees*" means all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717.

90.    89. "*Subordinated Claim*" means any Claim that is subject to (a) subordination under Section 510(b), or (bc) equitable subordination, as the Bankruptcy Court determines in a Final Order.

91.    90. "*Tax Code*" means the Internal Revenue Code, as amended.

92.    91. "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to Debtor of an intent to accept a particular distribution; (c) responded to Debtor's request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

93.    92. "*Unexpired Lease*" means a lease to which Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Section 365.

94.    93. "*Unimpaired*" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

95.    94. "*U.S. Trustee*" means the United States Trustee for the Central District of California.

96.    95. "*Wind Down*" means the process to wind down, dissolve, and liquidate Debtor and the Estate and distribute any of the Sale Proceeds and remaining assets in accordance with the Plan through the Liquidating Trustee.

B.    *Rules of Interpretation and Computation of Time.*

(1)    For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (ii) unless otherwise specified herein, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions

means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified herein, any reference to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified herein, all references herein to "Articles" and "Exhibits" are references to Articles and Exhibits, respectively, of the Plan; (v) the words "herein," "hereof," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion or section of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitations, and shall be deemed to be followed by the words "without limitation"; (viii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (viii) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (ix) unless otherwise specified herein, the rules of construction set forth in Section 102 shall apply; (x) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xi) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Case under the Bankruptcy Court's CM/ECF system; and (xii) except as otherwise provided herein, any references to the "Effective Date" shall mean the Effective Date or as soon as reasonably practicable thereafter.

(2)    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein, unless otherwise provided for herein.

(3)    All references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

(4)    Any immaterial effectuating provision may be interpreted by Debtor in a manner that is consistent with the overall purpose and intent of the Plan without further Final Order of the Bankruptcy Court.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

**II      UNCLASSIFIED CLAIMS**

In accordance with Section 1123(a)(1), Administrative Claims, Priority Tax Claims and Professional Fee Claims have not been classified and are thus excluded from the Classes of Claims and Equity Interests Set forth in Article III of the Plan Below.

A.      *DIP Facility Claims*.

Unless otherwise agreed to by the Holder of an Allowed DIP Facility Claim and Debtor, each Holder of an Allowed DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed DIP Facility Claim on the date the Sale is closed unless the Sale Proceeds are less than the amount needed to pay the Allowed Secured Tax claims and the Allowed DIP Facility Claims in full, and in such circumstances, the amount of the Sale Proceeds not necessary to pay the Allowed Secured Tax Claim in full shall be paid to the Holder of an Allowed DIP Facility Claim pursuant to the DIP Facility Order.

B.      *Administrative Claims*.

(1)      Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and Debtor, each Holder of an Allowed Administrative Claim (except with respect to Priority Tax Claims, Professional Fee Claims, and Statutory Fees) shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed Administrative Claim, an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter; or (iii) at such other time and upon such other terms as set forth in a Final Order of the Bankruptcy Court.

(2)      All requests for payment of an Administrative Claim (other than ~~professional~~Professional Fee Claims ~~or~~, Statutory Fees, or Administrative Claims that are not disputed and arose in the ordinary course of business) that accrued on or before the Effective Date

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

must be filed with the Bankruptcy Court and served on Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims (other than Professional Fee Claims) that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against Debtor, or the Estate, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

(3)      Debtor, in its sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. Debtor may also object to any Administrative Claim no later than 45 days after the Administrative Claims Bar Date, subject to: (i) any extensions granted by the Bankruptcy Court, (i) the agreement in writing of Debtor and the Holder of such Administrative Claim, or (iii) on motion of a party in interest approved by the Bankruptcy Court. Unless Debtor, the Liquidating Trustee, or other party with standing, objects to a timely filed and properly served Administrative Claim, a timely filed and properly served Administrative Claim shall be deemed Allowed in the amount requested. In the event that Debtor or the Liquidating Trustee objects to an Administrative Claim, the parties thereto may confer to attempt to settle such objection and, in the event that such settlement attempts fail, shall file a motion with the Bankruptcy Court to determine whether such Administrative Claim should be allowed and, if so, in what amount.

C.      *Priority Tax Claims*

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C); *provided however*, that Debtor or the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty. To the extent any allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between Debtor and the Holder of such Claim, which such Allowed Priority Tax Claim becomes due and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S SUPPLEMENTAL SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

payable under applicable non-bankruptcy Law, or in the ordinary course of business. In the event that an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

D.    *Professional Fee Clams*

(1)    All final requests for payment of Professional Fee Claims must be filed no later than the Administrative Claims Bar Date. After notice and hearing, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(2)    Unless otherwise agreed to by the Holder of an Allowed Professional Fee Claim and Debtor, as applicable, to the extent an Allowed Professional Fee Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Professional Fee Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for of its Allowed Professional Fee Claim an amount of Cash equal to the unpaid portion of such Allowed Professional Fee Claim within five Business Days of entry of an Order approving such Professional Fee Claim, or as soon as reasonably practical thereafter.

(3)    Except as otherwise specifically provided herein, on and after the Confirmation Date, Debtor shall pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to the implementation of the Plan and Consummation incurred by Debtor after the Confirmation Date in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court. Debtor shall pay, within ten Business Days, or as soon as reasonably practical thereafter, after submission of a detailed invoice to Debtor, such reasonable Claims for compensation or reimbursement of expenses incurred by Debtor's Professionals. From and after the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Statutory Fees*

Debtor shall pay all ~~fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717~~<u>Statutory Fees</u> on

DEBTOR'S ~~SUPPLEMENTAL~~<u>SECOND AMENDED</u> LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

all disbursements, including Plan payments and disbursements in and outside the ordinary course of Debtor's business at the time of Confirmation, pursuant to the applicable statutory payment schedule. On and after the Effective Date, to the extent that the Chapter 11 Case remains open, and for so long as the Liquidating Trustee remains obligated to pay such quarterly fees, the Liquidating Trustee shall pay such applicable fees as they become due in the ordinary course of business until the Bankruptcy Court enters a final decree in the Chapter 11 Case.

## III   CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.   *Classification of Claims*[1]

The Plan constitutes a chapter 11 plan for Debtor, and the classification of Claims and Equity Interests set forth herein shall apply to Debtor. In accordance with Section 1123(a)(1), Debtors have not classified DIP Facility Claims, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, as described in Article II above.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, Confirmation, and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1). A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

The classification and the manner of satisfying all Claims under the Plan take into consideration: (a) the existence of guarantees or alleged guarantees by Debtor of obligations of other Affiliates or Entities, if any; and (b) that Debtor may be joint obligors with other Affiliates or Entities with respect to the same obligation.

B.   *Class Identification*

The following chart represents the classification of Claims and Equity Interests for Debtor pursuant to the Plan:

---

[1]   Debtor reserves the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

| Class | Claims and Equity Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Secured Tax Claims | Not Impaired | No |
| Class 2 | LADI Secured Claims | Impaired | Yes |
| Class 3 | Lendlease Secured Claims | Impaired | Yes |
| Class 4 | Other Secured Claims | Impaired | Yes |
| Class 5 | ~~Architect Claim~~Reserved | Not Impaired | No |
| Class 6 | Other Priority Claims | Impaired | Yes |
| Class 7 | All General Unsecured Claims | Impaired | Yes |
| Class 8 | Intercompany Claims | Impaired | Yes |
| Class 9 | Subordinated Claims | Impaired | Yes |
| Class ~~9~~10 | Equity Interests | Impaired | Yes |

C.    *Treatment and Voting Rights of Claims and Equity Interests*

Except to the extent that Debtor and a Holder of an Allowed Claim or Allowed Equity Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated herein, the Holder of an Allowed Claim or Allowed Equity Interest, as applicable, shall receive such treatment on the Effective Date, except as otherwise provided in and subject to Article VII below, or, if payment is not due, in accordance with its terms in the ordinary course.

(1)    *Class 1 – Secured Tax Claims*

(a)    *Classification:* Class 1 consists of the Holders of tax claims which are secured by tax liens on the Property ("Secured Tax Claims").

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Secured Tax Claim, each Holder of such Allowed Secured Tax Claim shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets up to the full amount of its Claim on or as soon as reasonably practicable after (1) the Effective Date, (2) the date on which such other Secured Tax Claim becomes an Allowed

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1      Secured Tax Claim, or (3) such other date as may be ordered by the

2      Bankruptcy Court.

3          (c)     *Impairment and Voting:* Class 1 is not impaired and not entitled to vote to

4      accept or reject the Plan.

5     (2)     *Class 2 – LADI Secured Claims*

6          (a)     *Classification*: Class 2 consists <u>of</u> the LADI Secured Claim.

7          (b)     *Treatment:* Except to the extent that a Holder of the Allowed LADI Secured

8      Claim agrees to less favorable treatment, in full and final satisfaction,

9      compromise, settlement, and release of and in exchange for the LADI

10      Secured Claim, each Holder thereof shall be paid in Cash from the Sale

11      Proceeds and/or Plan Administration Assets remaining after the Allowed

12      Secured Tax Claims and Allowed DIP Facility Claim are paid in full,

13      following the payment of all or any portion of the Allowed Lendlease

14      Secured Claims and/or Allowed Other Secured Claims which a court of

15      competent jurisdiction has ruled has priority over any portion or all of any

16      Allowed LADI Secured Claim in a Final Order, up to the full amount of the

17      unpaid portion of such Allowed LADI Secured Claim, on the later of: (A)

18      the Effective Date; (B) the ~~entry of a Final Order from a court of competent~~

19      ~~jurisdiction ruling on the respective priorities of the Holders of a LADI~~

20      ~~Secured Claim, Lendlease Secured Claim, or Other Secured Claims in the~~

21      ~~event the Sale Proceeds are insufficient to pay the Allowed Lendlease~~

22      ~~Secured Claims, LADI Secured Claims, and Other Secured Claims in full;~~

23      ~~(C) if such LADI Secured Claim is Allowed after the Effective Date, then~~

24      ~~within five (5) Business Days, or as soon as reasonably practicable~~

25      ~~thereafter, following a Final Order  or Final Orders determining the allowed~~

26      ~~amount of the LADI Secured Claim and determining the priority of the~~

27      ~~Lendlease Secured Claims and Other Secured Claims on the Property; or (D)~~

28      <u>date calculated pursuant to the Disputed Creditor Reserve Treatment, as</u>

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~<u>SECOND AMENDED</u> LIQUIDATING CHAPTER 11 PLAN

1    defined in Article VI(B), if applicable; and (C) at such other time as Debtor

2    and such Holder agree or have agreed. For the avoidance of doubt, if the Sale

3    Proceeds are insufficient to pay all Holders of Allowed LADI Secured

4    Claims, Lendlease Secured Claims, and Other Secured Claims in full, then

5    no portion of the LADI Secured Claim will be Allowed until all priority

6    disputes between Holders of LADI Secured Claims, Lendlease Secured

7    Claims, and Other Secured Claims are resolved by Final Order(s) (the

8    "Disputed Secured Creditor Reserve Treatment").

9    (c)    *Impairment and Voting:* Class 2 is Impaired and entitled to vote to accept or

10    reject the Plan.

11    (3)    *Class 3 – Lendlease Secured Claims*

12    (a)    *Classification:* Class 3 consists of all Lendlease Secured Claims.

13    (b)    *Sub-Classes:* Class 3 is divided into two sub-classes. Class 3(a) includes the

14    secured Claims held directly by Lendlease. Class 3(b) includes the Secured

15    Claims held by subcontractors of Lendlease for which Debtor and Lendlease

16    are both liable, including Claims of subcontractors to Lendlease which have

17    been or may be assigned to Lendlease or any of its affiliates.

18    (c)    *Treatment.*  Except to the extent that a Holder of the Allowed Lendlease

19    Secured Claim in Classes 3(a) or 3(b) agrees to less favorable treatment, in

20    full and final satisfaction, compromise, settlement, and release of and in

21    exchange for the Lendlease Secured Claims in Classes 3(a) and 3(b), each

22    Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan

23    Administration Assets remaining after the Allowed Secured Tax Claims and

24    Allowed DIP Facility Claim are paid in full, following the payment of all or

25    any portion of the Allowed LADI Secured Claim and/or Allowed Other

26    Secured Claims which a court of competent jurisdiction has ruled has

27    priority over any portion or all of any Allowed Lendlease Secured Claims in

28    a Final Order, up to the full amount of the unpaid portion of such Allowed

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENTALSECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Lendlease Secured Claim, on the later of: (A) the Effective Date; (B) the ~~entry of a Final Order from a court of competent jurisdiction ruling on the respective priorities of the Holders of a LADI Secured Claim, Lendlease Secured Claim, or Other Secured Claims in the event the Sale Proceeds are insufficient to pay the Allowed Lendlease Secured Claims, LADI Secured Claims, and Other Secured Claims in full; (C) if such Lendlease Secured Claim is Allowed after the Effective Date, then within five (5) Business Days, or as soon as reasonably practicable thereafter, following a Final Order or Final Orders determining the allowed amount of the Lendlease Secured Claim and determining the priority of the LADI Secured Claim and Other Secured Claims on the Property; or (D)~~date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed. ~~For the avoidance of doubt, if the Sale Proceeds are insufficient to pay all Holders of Allowed LADI Secured Claims, Lendlease Secured Claims, and Other Secured Claims in full then Debtor will deposit the remaining Sale Proceeds in accordance with the Disputed Secured Creditor Reserve Treatment.~~

(d)    *Duplicative Claims*: The Liquidating Trust will make a distribution of an Allowed Class 3(b) claim directly to the Holder, unless it is determined, pursuant to the terms set forth in the Liquidating Trust Agreement, that the Holder of the Class 3(b) claim was paid by Lendlease. In the event the Holder of the Class 3(b) Claim was paid by Lendlease (US) Construction Inc., the Liquidating Trust will make the distribution of such Allowed Claim to Lendlease (US) Construction Inc.

(e)    *Impairment and Voting:* Class 3 is Impaired and entitled to vote to accept or reject the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

(4)    *Class 4 – Other Secured Claims*

(a)    *Classification:* Class 4 consists of all Other Secured Claims.

(b)    *Treatment:* Except to the extent that a Holder of the Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for the Other Secured Claims, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Allowed Secured Tax Claims and Allowed DIP Facility Claim are paid in full, following the payment of all or any portion of the Allowed LADI Secured Claim and/or Allowed Lendlease Secured Claims which a court of competent jurisdiction has ruled has priority over any portion or all of any Allowed Other Secured Claim in a Final Order, up to the full amount of the unpaid portion of such Allowed Other Secured Claim, on the later of: (A) the Effective Date; (B) the ~~entry of a Final Order from a court of competent jurisdiction ruling on the respective priorities of the Holders of a LADI Secured Claim, Lendlease Secured Claim, or Other Secured Claims in the event the Sale Proceeds are insufficient to pay the Allowed Lendlease Secured Claims, LADI Secured Claims, and Other Secured Claims in full; (C) if such Other Secured Claim is Allowed after the Effective Date, then within five (5) Business Days, or as soon as reasonably practicable thereafter, following a Final Order or Final Orders determining the allowed amount of the Other Secured Claim and determining the priority of the LADI Secured Claim and Lendlease Secured Claims on the Property; or (D)~~date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed. ~~For the avoidance of doubt, if the Sale Proceeds are insufficient to pay all Holders of Allowed LADI Secured Claims, Lendlease Secured Claims, and Other Secured Claims in full then Debtor~~

1    ~~will deposit the remaining Sale Proceeds in accordance with the Disputed~~

2    ~~Secured Creditor Reserve Treatment.~~

3    (c)    *Treatment:* Class 4 is Impaired and entitled to vote to accept or reject the

4    Plan.

5    (5)    *Class 5-* ~~Architect Claim.~~ *Reserved*

6    ~~(a) *Classification:* Class 5 consists of the executory contract with Arcadis Inc., the~~

7    ~~architect for the development at the Property (the "Architect"). The Architect~~

8    ~~timely filed a Proof of Claim, claim number 28-1 in the amount of~~

9    ~~$2,411,799.98 (as may be amended, stipulated to, or otherwise established,~~

10   ~~the "Architect Claim Amount") for architectural services performed in~~

11   ~~connection with that certain Agreement dated as of May 26, 2014, by and~~

12   ~~between Tohigh Construction Investment LLC, and RTKL Associates Inc.,~~

13   ~~as amended and supplemented from time to time (the "Architect~~

14   ~~Agreement"). Debtor's rights to dispute the additional amount of the claim~~

15   ~~is reserved if Architect's claim is amended to increase the amount of the~~

16   ~~claim from the amount set forth above. The amount of any such dispute, if~~

17   ~~any, shall be reserved and transferred to the Liquidating Trust (the "Potential~~

18   ~~Architect Reserve").~~

19   ~~(b) Architect owns the copyright in the Architect's instruments of service (including~~

20   ~~architectural plans, specifications, designs, associated renderings, and any~~

21   ~~electronic format thereof including BIM and AutoCAD) (the "Instruments~~

22   ~~of Service"), which Instruments of Service may not be used in connection~~

23   ~~with the bidding or sale process without Architect's written consent.~~

24   ~~(c) *Treatment:* Debtor has elected to assume (or assume and assign) the Architect~~

25   ~~Agreement and will cure any defaults at the closing of the Sale by paying~~

26   ~~the Architect Claim Amount, less the Potential Architect Reserve, from Sale~~

27   ~~Proceeds on the Effective Date. Upon such assumption of the Architect~~

28   ~~Agreement, including payment of the Architect Cure Amount: (a) Architect~~

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   ~~shall have no duty to continue to perform under the Architect Agreement~~
2   ~~(other than as set forth below), (b) Debtor (or an assignee) shall have no~~
3   ~~obligation to continue to perform under the Architect Agreement post-~~
4   ~~closing, and (c) Architect shall have no further pre-petition or post-petition~~
5   ~~rights, title or claims against Debtor or the estate (other than its rights under~~
6   ~~the Plan, which are expressly preserved, and its rights under any New~~
7   ~~Architect Agreement, if applicable).  Architect has provided provisions for~~
8   ~~its consent a license and or New Architect Agreement, that will be set forth~~
9   ~~in the Assumption Schedule (defined below). However, no payment of any~~
10  ~~portion of the Architect Claim Amount that is Disputed as of the Effective~~
11  ~~Date will be made until such disputed portions are resolved pursuant to~~
12  ~~Article VII below.~~

13  ~~(d) *Treatment:* Class 5 is not impaired and will not be entitled to vote on the~~
14  ~~Liquidating Plan.~~

15  (6)    *Class 6 - Other Priority Claims*

16         (a)    *Classification:* Class 6 consists of all Other Priority Claims.

17         (b)    *Treatment*: Except to the extent that a Holder of an Other Priority Claim
18                agrees to less favorable treatment, in full and final satisfaction, compromise,
19                settlement, and release of and in exchange for each Other Priority Claim,
20                each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan
21                Administration Assets remaining after the Secured Tax Claims, LADI
22                Secured Claims, Lendlease Secured Claims, Other Secured Claims,
23                Administrative Claims, Priority Tax Claims, Professional Fee Claims, and
24                Statutory Fees are paid in full, up to the full amount of the unpaid portion of
25                such Other Priority Claim on the later of: (A) the Effective Date; (B) ~~if such~~
26                ~~Other Priority Claim is Allowed after the Effective Date, on the date that~~
27                ~~such order determining and allowing such Other Priority Claim becomes a~~
28                ~~Final Order or as soon as reasonably practicable thereafter~~<u>the date calculated</u>

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~<u>SECOND AMENDED</u> LIQUIDATING CHAPTER 11 PLAN

pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed.

(c)    *Treatment:* Class 6 is Impaired and entitled to vote to accept or reject the Plan.

(7)    *Class 7 – All General Unsecured Claims*

(a)    *Classification:* Class 6 consists of all General Unsecured Claims.

(b)    *Treatment:* Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each General Unsecured Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other Priority Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Statutory Fees are paid in full, up to the full amount of the unpaid portion of such General Unsecured Claim on the later of: (A) the Effective Date; (B) ~~if such General Unsecured Claim is Allowed after the Effective Date, on the date that such order determining and allowing such General Unsecured Claim becomes a Final Order or as soon as reasonably practicable thereafter~~the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; and (C) at such other time as Debtor and such Holder agree or have agreed. To the extent that any claims initially included in Class 7 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.

(c)    *Treatment:* Class 7 is Impaired and entitled to vote to accept or reject the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

(8)  *Class 8 – Intercompany Claims*.

(a)  *Classification:* Class 8 consists of all Claims held by Debtor's parents or affiliates ("Intercompany Loan Claims").

(b)  *Treatment:* Except to the extent that a Holder of a Intercompany Loan Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Intercompany Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other Priority Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, and Statutory Fees are paid in full, up to the full amount of the unpaid portion of such Intercompany Claim on the later of: (A) the Effective Date; (B) ~~if such General Unsecured Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Intercompany Claim becomes a Final Order or as soon as reasonably practicable thereafter~~<u>the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable</u>; and (C) at such other time as Debtor and such Holder agree or have agreed. The Holders of Allowed Intercompany Claims shall be paid *in pari passu* with Holders of Allowed General Unsecured Claims outlined in Class 7 above. <u>To the extent that any claims initially included in Class 8 are re-characterized and Allowed as equity interests, they will be instead by included in Class 10 below.</u>

(c)  *Treatment:* Class 8 is Impaired and entitled to vote to accept or reject the Plan~~.~~

(9)  *Class 9 – ~~Equity Interests~~<u>Subordinated Claims</u>*

(a)  <u>*Classification*: Class 9 consists of all Subordinated Claims.</u>

(b)  <u>*Treatment*: Except to the extent that a Holder of a Subordinated Claim agrees to less favorable treatment, in full and final satisfaction, compromise and</u>

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

settlement, and release of an in exchange for each Subordinated Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after each Class with priority over such Subordinated Claim according to the Final Order which found that such Claim was a Subordinated Claim on the later of: (A) the Effective Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article VI(B), if applicable; or (C) at such other time as Debtor and such Holder agree or have agreed.

(10)    *Class 10 – Equity Interests*

(a)    *Classification:* Class ~~9~~10 consists of all Equity Interests.

(b)    *Treatment:* Except to the extent that a Holder of an Equity Interest agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Equity Interest, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claims, Lendlease Secured Claims, Other Secured Claims, Other Priority Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, Statutory Fees, and General Unsecured Claims are paid in full, on the later of: (A) the Effective Date; or (B) at such other time as Debtor and such Holder agree or have agreed.

D.    *Special Provision Governing Unimpaired Claims*

To the extent that Debtor later amends this Plan to note that one or more of the Classes identified above are Unimpaired, except as otherwise expressly provided herein, nothing in the Plan shall affect Debtor's rights with respect to any Unimpaired Claim, including, but not limited to, all rights to legal and equitable defenses, setoffs or recoupments against any such Unimpaired Claim.

E.    *Voting; Presumptions; Solicitation*

(1)    *Acceptance by Certain Impaired Classes.* Only Holders of Allowed Claims in Impaired Classes are entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

have accepted the Plan if: (i) the Holders of at least 66.6% in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders of more than one half (1/~~3~~2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. Currently, all Classes, except for ~~Classes 1 and 5~~Class1, are Impaired and have received, or will receive, Ballots containing detailed voting instructions. Debtor reserves the right to amend this Plan to designate certain Classes as Unimpaired in the event that a Purchase and Sale Contract is executed which, if closed, result in one or more of the Classes identified above being unimpaired prior to the submission of the Ballot Summary.

(2)      *Conclusively Presumed Acceptance by Unimpaired Classes.* In the event that this Plan is amended to demonstrate that one or more Classes are Unimpaired, holders of such Unimpaired Claims shall be conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holder shall not be solicited or included in the Ballot Summary.

(3)      *Controversy Concerning Impairment.* If a controversy arises as to whether any Claims or Equity Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

(4)      *Elimination of Classes.* To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan, for purposes of determining whether such Class has accepted or rejected this Plan under Section 1129(a)(8) of the Bankruptcy Code.

F.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and their respective distributions and treatments under the Plan, shall take into account and confirm the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under the general principles of equitable subordination, Section 510(b), or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

on account of Claims or Equity Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or any other such similar legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Pursuant to Section 510 of the Bankruptcy Code, except where otherwise provided herein, Debtor reserves the right to seek to reclassify any Allowed Claim or Equity Interest, following notice and a hearing and by Final Order of the Court in accordance with any contractual, legal, or equitable subordination rights relating thereto.

G.    *No Waiver*.

Nothing contained in this Plan shall be construed to waive a Debtor's or other Entity's right to object on any basis to any Claim or Lien, including after the Effective Date.

## IV    **MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *Compromise of Controversies*

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classifications, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, Causes of Action, and controversies resolved under the Plan, and shall be deemed a motion to approve such good-faith compromise and settlement, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of Debtor and the Estate. Subject to Article VII below, all distributions made to Holders of Allowed Claims and Allowed Equity Interests (as applicable) in any Class are intended to be and shall be final.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

B.       *Sources of Consideration for Plan Distribution*

Debtor shall fund distributions under the Plan with the Sale Proceeds, Plan Administration Assets, and Cash on hand. Cash payments to be made pursuant to the Plan will be made by Debtor or the Liquidating Trustee.

C.       *Sale.*

(1)       After Confirmation, Debtor shall consummate the Sale, and any other transactions contemplated by the Purchase and Sale Contract. Upon consummation of the Sale, the Property shall be transferred and vest in Purchaser, pursuant to the terms of the Purchase and Sale Contract ~~and Bidding Procedures~~, the Plan, and Confirmation Order. Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and Purchase and Sale Contract will be deemed approved, all matters provided for under the Purchase and Sale Contract and any related documentation will be deemed authorized and approved without any requirement of further act or action and Debtor will be authorized to execute and deliver, and to Consummate the transactions contemplated by, the Purchase and Sale Contract and any related documentation, as well as to execute, deliver, file, record, and issue any notes, documents (including UCC financing statements), or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

(2)       Prior to, on, or as soon as reasonably practicable after the Effective Date, Debtor may take all actions as may be reasonably necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan or any Plan Supplement, including: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; and (ii) all other actions that Debtor reasonably determines are necessary or appropriate.

D.       *Plan Administration and Wind Down*

(1)       On the Effective Date, and subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall accept authority over the Plan Administration Assets as a plan

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

administration officer; *provided however*, that that the Liquidating Trustee may abandon or otherwise not accept any assets that the Liquidating Trustee believes, in good faith, have no value to the administration of the Plan or the Wind Down. As of the Effective Date, all assets vested as Plan Administration Assets and all <u>unencumbered</u> assets dealt with in the Plan shall be free and clear of all Liens, Claims, and Equity Interests except as otherwise specifically provided in the Plan or in the Confirmation Order.

(2)    The powers, rights, and responsibilities of the Liquidating Trustee shall include the authority and responsibility to: (i) receive, manage, invest, supervise, and protect the Plan Administration Assets; (ii) pay taxes or other obligations incurred by the Estate after the Effective Date; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets; (iv) calculate and implement distributions of Plan Administration Assets; (v) assert, settle, and abandon retained Causes of Action; (vi) resolve issues involving Claims and Equity Interests; (vii) liquidate the Plan Administration Assets in a commercially reasonable manner, and (viii) perform such other duties and functions that are consistent with the implementation of the Plan and undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case. The Liquidating Trustee is the successor to Debtor, the Estate, and Debtor's rights to books and records and to all of Debtor's rights and privileges, including attorney client privilege. The Liquidating Trustee shall be authorized pursuant to Section 554, in its sole discretion without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals or copies of any documents, books and records, including any electronic records, of Debtor which the Liquidating Trustee reasonably concludes are burdensome or of inconsequential value and benefit five (5) years following the Effective Date, <u>so long as such documents are no longer subject to any pending litigation hold</u>.

(3)    On the Effective Date, the Liquidating Trustee shall also have the power, right, and responsibility to conduct the Wind Down and to take possession of all books, records, and files of Debtor and the Estate and provide for the retention and storage of such books, records, and files

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~<u>SECOND AMENDED</u> LIQUIDATING CHAPTER 11 PLAN

until such time as the Liquidating Trustee determines that retention of same is no longer necessary or required. The Liquidating Trustee is authorized and empowered to effect the dissolution of Debtor as soon as practicable after the Effective Date, but after the Plan Administration Assets are liquidated, without the need for any company action or approval, and neither Debtor nor the Liquidating Trustee shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date, the Liquidating Trustee shall Wind Down the affairs of Debtor and file final tax returns for Debtor. The Liquidating Trustee shall be authorized to file on behalf of Debtor and any non-Debtor Affiliates, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of Debtor.

(4)    Debtor shall indemnify and hold harmless the Liquidating Trustee solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Trustee's gross negligence, willful misconduct, or criminal conduct.

(5)    From and after the Effective Date, assertion, settlement, or abandonment of all retained Causes of Action shall be the sole responsibility of the Liquidating Trustee pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estate to assert, settle, or abandon such retained Causes of Action as the sole representative of the Estate pursuant to Section 1123(b)(3) of the Bankruptcy Code. All such retained Causes of Action are reserved and preserved. All causes of action between the Debtor and any other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the Effective Date. At such time, the Liquidating Trust will be entitled to all claims, defenses, and other rights and privileges accorded to the Debtor in such proceedings following their transfer. Parties who are engaged in active litigation as of the Effective Date will be permitted to continue such litigation in the Liquidating Trust.

(6)    All reasonable expenses incurred by the Liquidating Trustee, if any, shall be the responsibility of the Estate and paid from Plan Administration Assets or Sale Proceeds.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

E.      *Corporate Action.*

(1)      On the Effective Date, all actions contemplated by the Plan, any Plan Supplement, and the Purchase and Sale Contract shall be deemed authorized and approved in all respects, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of Debtor and any corporate action required by Debtor in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the security holders, directors, or officers of Debtor or otherwise.

(2)      On or before the Effective Date, as applicable, the appropriate officers of Debtor, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan and the Purchase and Sale Contract (or necessary or desirable to effect the transactions contemplated by the foregoing) in the name of and on behalf of Debtor, and any and all agreements, documents, and instruments relating to the foregoing.

(3)      The authorizations and approvals contemplated by this Section IV, E. shall be effective notwithstanding any requirements under non-bankruptcy Law.

(4)      After the Effective Date, to the extent necessary and pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of Debtor, including the winding down and dissolution of Debtor.

F.      *Vesting of Assets.*

On the Effective Date, pursuant to Sections 1141(b) and (c), the Plan Administration Assets, if any, shall vest in the Liquidating Trust for the purpose of liquidating the Plan Administration Assets and winding down the Estate. Unencumbered Plan Administration Assets shall transfer to the Liquidating Trust free and clear of all Liens, Claims, charges, and other encumbrances.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

G.    *Exemptions from Certain Transfer Taxes and Recording Fees.*

To the fullest extent permitted by Section 1146(a), Section 11923 of the California Revenue and Tax Code and Section 21.9.6 of the Los Angeles Municipal Code, the Sale, and any other transfer from Debtor to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

H.    *Effectuating Documents; Further Transactions.*

Prior to, on, and after the Effective Date, Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.

The Confirmation Order shall, and shall be deemed to, pursuant to both Sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

I.    *Nonconsensual Confirmation*

Debtor intends to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

J.    *Closing of Chapter 11 Case.*

The Liquidating Trustee shall promptly after the full administration of the Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Case. Upon the filing of a motion to close the Case, Debtor shall file a final report with respect to the Case pursuant to Local Rule 3022-1.

**V    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*.

(1)    All Executory Contracts and Unexpired Leases of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule; (ii) those that have been previously assumed pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be assumed pursuant to the terms of the Plan. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V but not assigned to a third party shall be deemed to be accepted by Debtor, and be fully enforceable by, Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Plan, or by any order of the Bankruptcy Court.

(2)    The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts or Unexpired Leases, as described in this Plan, any Plan Supplement, and the Assumption Schedule pursuant Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of Debtor, the Estate, and all parties in interest in the Chapter 11 Case; and (iii) providing that the requirements for

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

assumption or assumption and assignment of any Executory Contract or Unexpired Lease to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases subject to compliance with the requirements herein; *provided, however*, that such Claims must be filed with the clerk of the Bankruptcy Court and served upon the Liquidating Trustee and counsel for Debtor within thirty (30) days of the Bankruptcy Court entering the Confirmation Order; *provided, further*, that any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within the time required by this section will be forever barred from assertion against Debtor, the Estate, the property of Debtor, or the Liquidating Trustee. Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim shall be classified as a General Unsecured Claim.

(3)     Except as otherwise provided herein or agreed to by Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(4)     Debtor shall create the Assumption Schedule in consultation with Purchaser, and Purchaser shall approve any assumptions, rejections, or modifications of material Executory Contracts and Unexpired Leases as set forth therein, and such approval may not be unreasonably withheld, conditioned, or delayed. Notwithstanding anything to the contrary herein, Debtor reserves the right to alter, amend, modify, or supplement the Assumption Schedule at any time before the Effective Date, in consultation with Purchaser.

B.     *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

(1)     Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1), by payment of the Cure Cost in Cash on the Effective Date, subject to the limitation described in the following paragraph, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree. No later than the Plan Supplement Filing Date, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, Debtor shall file and serve upon the counterparties to the agreements listed in the Assumption Schedule notices of proposed assumption and proposed Cure Costs, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a contract or lease counterparty to a proposed assumption, assumption and assignment, or related Cure Cost must be filed, served, and received by Debtor within fourteen (14) days of such assumption or assumption and assignment.

(2)     Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Cost five (5) Business Days prior to the Confirmation Hearing shall be deemed to have consented to such assumption, assumption and assignment, or Cure Cost. In the event of a dispute regarding: (i) the amount of any Cure Cost, (ii) the ability Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365(b), if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assumption and assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assumption and assignment becoming effective, and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

the applicable Cure Costs associated therewith (if any) shall be paid following entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment and shall not prevent or delay implementation of the Plan or Effective Date; *provided, however*, that Debtor may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court; *provided, further,* that notwithstanding anything to the contrary herein, Debtor reserves the right to reject any Executory Contract or Unexpired Lease within 30 days after the entry of a Final Order resolving an objection to assumption or assumption and assignment, determining the Cure Cost for an Executory Contract or Unexpired Lease that was subject to a dispute, or resolving any request for adequate assurance of future performance required to assume such Executory Contract or Unexpired Lease.

(3)     Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the associated Cure Cost, if any, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned, and the associated Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

C.     *Insurance Policies*

Notwithstanding anything to the contrary in this Plan, objection to any Claim, or any other document related to any of the foregoing, all insurance policies pursuant to which Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by Debtor or the Liquidating Trustee, as applicable, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies not expressly assumed or assumed and assigned shall be deemed rejected.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

D.      *Reservation of Rights.*

Nothing contained in this Plan shall constitute an admission by Debtor that any contract or lease is in fact an Executory Contract or Unexpired Lease or that Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtor shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

E.      *Nonoccurrence of the Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to pursuant to Section 365(d)(4), unless such deadline(s) have expired.

F.      *Assumption of the Architect Claim.*

Architect owns the copyright in the Architect's instruments of service (including architectural plans, specifications, designs, associated renderings, and any electronic format thereof including BIM and AutoCAD) (the "Instruments of Service"), which Instruments of Service may not be used in connection with the bidding or sale process without Architect's written consent.

Debtor has elected to assume (or assume and assign) the Architect Agreement and will cure any defaults at the closing of the Sale by paying the Architect Claim Amount, less the Potential Architect Reserve, from Sale Proceeds on the Effective Date. Upon such assumption of the Architect Agreement, including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to perform under the Architect Agreement (other than as set forth below), (b) Debtor (or an assignee) shall have no obligation to continue to perform under the Architect Agreement post-closing, and (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor or the estate (other than its rights under the Plan, which are expressly preserved, and its rights under any New Architect Agreement, if applicable). Architect has provided provisions for its consent a license and or New Architect Agreement, that will be set forth in the Assumption Schedule (defined below). However, no payment of any portion of the Architect Claim Amount that is Disputed as of the Effective Date will be made until such disputed portions are resolved pursuant to Article VII below.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

S

**VI    PROVISIONS GOVERNING DISTRIBUTIONS**

A.    *Distribution on Account of Claims and Equity Interests Allowed as of the Effective Date.*

Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made on the Distribution Date; *provided, however*, that: (a) Allowed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article II of this Plan, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy Law, or in the ordinary course of business.

On or before the Effective Date, and in the event that the Sale Proceeds are insufficient to pay the LADI Secured Claims and Lendlease Secured Claims in full, Debtor shall deposit all Sale Proceeds, less the amounts paid to satisfy the DIP Facility Claims and any costs associated with the Sale, into an escrow account, pursuant to an interest bearing escrow agreement that is reasonably acceptable to the Holders of the LADI Secured Claims and Lendlease Secured Claims and for the benefit of the Holders of the LADI Secured Claims and Lendlease Secured Claims. The Sale Proceeds that are escrowed shall be released from the escrow account only be: (i) Final Order of the Court regarding the respective priorities of the LADI Secured Claims and Lendlease Secured Claims, or (ii) by written agreement of the Holders of the LADI Secured Claims and Lendlease Secured Claims.

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

B.    *Distribution of Account of Claims and Equity Interest Allowed After the Effective Date.*

(1)    *Disputed Creditor Reserve Treatment.*

(a)    *Transfer of Disputed Claims to Liquidating Trust. If the Sale Proceeds are insufficient to pay Holders of Secured Claims in full, or if a Claim is otherwise Disputed, then the portion of the Sale Proceeds that would be used to pay such Claims will be deposited into a blocked segregated account to be maintained by the Liquidating Trust for the benefit of the Holders of such Disputed Claims (the "Disputed Creditor Reserve") with all such liens, claims, encumbrances, and/or interests of the Holder of the Disputed Claim to the Property attaching to the proceeds to the same order and priority as they previously attached to the Property.*

(b)    (1) *Payments and Distributions on Disputed Claims.* Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under this Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the first day that Debtor shall make payment on such claim the later of (i) on the first day that is thirty (30) Business Days after such Disputed Claim becomes an Allowed Claim:, in whole or in part; (ii) on the day that distributions become available to members of that Class; or (iii) with respect to Holders of General Unsecured Claims, the day the Pro Rata Share of such Holder is determined (the "Disputed Creditor Reserve Treatment") *provided, however*, that: (i) Disputed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

(ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article II of this Plan.

(2)    *Special Rules for Distributions to Holders of Disputed Claims.* Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes related to such Disputed Claim has been resolved by settlement or agreement among the relevant parties or by Final Order.

C.    *Timing and Calculation of Amounts to Be Distributed.*

Except as otherwise provided herein, on the Distribution Date, each Holder of an Allowed Claim shall receive the full amount of the distribution that the Plan provides for Allowed Claims in the applicable Class. Except as otherwise provided in this Plan or any order of the Bankruptcy Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding the foregoing, Holders of Secured Claims subject to the Disputed Creditor Reserve Treatment may recover post-Effective Date interest if otherwise allowed pursuant to Section 506(b) of the Bankruptcy Code.

D.    *Delivery of Distributions.*

(1)    On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty (20) or fewer days before the Distribution Date, Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. Debtor, the Liquidating Trustee and the Distribution Agent shall have no obligation to recognize any transfer of any applicable Claims occurring after the close of business on the Distribution Record Date, and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

shall be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date.

(2)    *Cash Distributions*. Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of Debtor or the Liquidating Trustee, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(3)    *Delivery of Distributions in General*. Except as otherwise provided in the Plan, Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in Debtor's records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided, however*, that the manner of such distributions shall be determined at the discretion of Debtor or the Liquidating Trustee, and no Distribution Agent shall incur any liability whatsoever on account of any distributions under the Plan.

E.    *Distributions by Distribution Agent.*

The Liquidating Trustee shall serve as Distribution Agent (provided that the Liquidating Trustee may hire professional or consultants to assist with making disbursements or to act as Distribution Agent) and shall cause all distributions to be made to Holders of Claims after the Effective Date. Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

F.    *Minimum Distributions.*

Notwithstanding anything herein to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar or share of applicable equity interests (up or down), with half dollars and half shares of applicable equity interests or less being rounded down.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

G.     *Undeliverable Distributions*.

(1)     *Holders of Certain Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to Debtor or the Liquidating Trustee (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of Debtor or the Liquidating Trustee, subject to Section 6.7(b) below, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

(2)     *Failure to Claim Undeliverable Distributions*. Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after such distribution shall be deemed unclaimed property under Section 347(b) and such Unclaimed Distribution shall revert to and vest in Debtor or the Liquidating Trustee free of any restrictions thereon. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

(3)     *Failure to Present Checks*. Checks issued by Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 90 days after the issuance of such check. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 90 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check forever barred, estopped, and enjoined from asserting any such Claim against Debtor, the Liquidating Trustee, or its property. Within 90 days after the mailing or other delivery of any such distribution checks, notwithstanding applicable escheatment Laws, all such distributions shall revert to Debtor or the Liquidating Trustee. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

H.      *Compliance with Tax Requirements/Allocations.*

In connection with this Plan, to the extent applicable, Debtor and the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

I.      *Surrender of Cancelled Instruments or Securities.*

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim shall be deemed to have surrendered such certificate or instrument to the Liquidating Trustee. Except as otherwise expressly provided in the Plan, such surrendered certificate or instrument shall be cancelled solely with respect to Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interests, which shall continue in effect. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

J.      *Claims Paid or Payable by Third Parties.*

(1)      *Claims Paid by Third Parties.* The Notice and Claims Agent, as applicable, shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trustee without any

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

further notice to or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

(2)    *Claims Payable by Insurance*. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of Debtor's insurance policies, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policies. To the extent that one or more of Debtor's insurers satisfies or agrees to satisfy in full or in part a Claim, if any, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(3)    Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## VII    PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR EQUITY INTERESTS

A.    *Allowance of Claims and Equity Interests*.

(1)    Except as provided in Article IX of this Plan, the Liquidating Trustee shall have and retain any and all rights and defenses Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect to any Claim deemed Allowed under the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

(2)    Except as expressly provided in this Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties.

B.    *Claims Administration Responsibility.*

As of the Effective Date, all pending objections to Claims transferred to the Liquidating Trust, who will be entitled to all rights, privileges and defenses held by the Debtor with respect to such Claims. Except as otherwise specifically provided in this Plan or order of the Bankruptcy Court, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, and subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the ~~sole~~ authority for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against, and Equity Interests in, Debtor, including the authority: (a) to file, withdraw, or litigate to judgment objections to Claims or Equity Interests; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. In the event that any objection to a Claim filed by Debtor remains pending as of the Effective Date, the Liquidating Trustee shall be deemed substituted for Debtor as the objecting party.

Notwithstanding this Article VII(B), ~~upon the request of a party~~other parties in interest~~, the Liquidating Trustee may in its sole discretion consent to such party in interest pursuing an objection to a specific claim or equity interest~~ may object to Claims in accordance with the terms of the Liquidating Trust Agreement.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

C.      *Estimation of Claims and Equity Interests.*

Before or after the Effective Date, Debtor or the Liquidating Trustee, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim or Equity Interest pursuant to Section 502(c), or determine the amounts of secured and priority claims pursuant to Bankruptcy Rule 3012, for any reason, regardless of whether any party previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection; and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or Equity Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim or Equity Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Equity Interest, such estimated amount shall constitute a limitation on the maximum amount of such Claim or Equity Interest for all purposes under the Plan, and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any distribution on such Claim or Equity Interest. Notwithstanding Section 502(j), in no event shall any Holder of a Claim that has been estimated be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated. Each of the foregoing procedures are cumulative and not exclusive of one another. Claims may be estimated and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. For the avoidance of doubt, nothing in this subsection shall impact any priority dispute pending between any other Creditors in this Court or any court of competent jurisdiction.

D.      *Adjustment to Claims and Equity Interests Without Objection.*

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without filing an objection to such Claim or Equity Interest or further notice to or action, order, or approval of the Bankruptcy Court.

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

E.      *Disallowance of Certain Claims.*

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550, or 553 or by a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be deemed disallowed pursuant to Section 502(d), and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due have been turned over or paid to the Liquidating Trustee. All Proofs of Claim filed on account of an Indemnification Obligation to a director, officer or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice, action, order, or approval of the Bankruptcy Court and the Holders of such Claims shall not receive any distributions on account of such Claims.

F.      *Amendments to Claims.*

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

G.      *No Interest on Claims, Equity Interests, or Disputed Claims.*

Unless otherwise specifically provided for in this Plan, or as otherwise required by Section 506(b) of the Bankruptcy Code, Postpetition interest shall not accrue or be paid on Claims or Equity Interests and no Holder of a Claim or Equity Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Equity Interest. Without limiting the foregoing, unless otherwise specifically provided for in this Plan, or otherwise required by Section 506(b) of the Bankruptcy

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S SUPPLEMENTAL SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

Code, interest shall not accrue or be paid on any Disputed Claim from the Effective Date to the date a final distribution is made, if any.

**VIII    CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.    *Conditions Precedent to Confirmation of the Plan.*

The following are conditions precedent to the entry of the Confirmation Order:

(1)    The Plan Supplement and all of the schedules, documents, and exhibits contained therein a have been filed, and;

(2) The Plan shall not have been materially amended, altered, or modified except as set forth herein; and

(2)    (3) The Winning Bidder and/or Backup Bidder (as defined in the Bidding Procedures Order) has been selected, through the Auction or otherwise.

B.    *Conditions Precedent to the Effective Date*

The Effective Date shall not occur unless and until each of the following conditions have occurred or been waived in accordance with the terms herein:

(1)    all documents, certificates, and agreements necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable Laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(2) The Plan shall not have been materially amended, altered, or modified in the Confirmation Order, unless such material amendment, alteration, or modification has been made as set forth herein;

(2)    (3) there shall be no ruling, judgment, or order issued, by any Governmental Unit or otherwise making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Sale; and

(3)    (4) the Sale shall have closed and been consummated.

DEBTOR'S SUPPLEMENTAL SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

C.     *Waiver of Conditions Precedent*.

Debtor may waive any of the conditions to the Effective Date set forth above at any time, without any notice to any parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.

D.     *Effect of Failure of Conditions Precedent*.

If the Effective Date does not occur, then upon notice by Debtor to the Bankruptcy Court: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in this Plan or the Confirmation Order shall: (i) constitute a waiver or release of any Claims, Equity Interests, (ii) prejudice in any manner the rights of Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtor or any other Entity.

E.     *Reservation of Rights*.

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained in this Plan, or action taken by Debtor or First Lien Lender with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

F.     *Substantial Consummation of Plan*.

Substantial consummation of the Plan under Section 1101(2) shall be deemed to occur on the Effective Date.

**IX    EFFECT OF CONFIRMATION**

A.     *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan shall bind and inure to the benefit of Debtor, the Liquidating Trustee, and each Holder of a Claim against or Equity Interest in Debtor and inure to the benefit of

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1  and be binding on Debtor's, the Liquidating Trustee, and Holder's respective successors and

2  assigns, regardless of whether the Claim or Equity Interest of such Holder is Impaired under the

3  Plan and whether such Holder has accepted or rejected the Plan or is deemed to have accepted or

4  rejected the Plan.

5        B.    *Compromise and Settlement of Claims and Controversies.*

6        Pursuant to Section 1123 and Bankruptcy Rule 9019 and in consideration for the

7  distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall

8  constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the

9  contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have

10  with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of

11  such Allowed Claim or Equity Interest, and shall be deemed a motion to approve such good-faith

12  compromise. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval

13  of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as

14  a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of

15  Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.

16  In accordance with the provisions of the Plan, without any further notice to or action, order, or

17  approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may

18  compromise and settle Claims against Debtor and its Estate and Causes of Action against other

19  Entities.

20        C.    *Injunctions.*

21        The Confirmation Order shall enjoin the prosecution, whether directly, derivatively, or

22  otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action,

23  liability or interest released, or termination pursuant to this Plan. Except as provided in this Plan or

24  the Confirmation Order, all entities that have held, currently hold, or may hold a claim or other debt

25  or liability or an interest or other right of an equity security holder are permanently enjoined from

26  taking any of the following actions against Debtor, the Liquidating Trustee, or any of their property

27  on account of such discharged claims, debts or liabilities or extinguished interests or rights: (i)

28  commencing or continuing, in any manner or in any place, any action or other proceeding; (ii)

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order;

2  (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of

3  subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and

4  (v) commencing or continuing any action in any manner, in any place, that does not comply with

5  or is inconsistent with the provisions of this Plan. By accepting a distribution pursuant to this Plan,

6  each holder of an allowed claim shall be deemed to have specifically consented to the injunctions

7  set forth in this Section. For the avoidance of doubt, nothing in this subsection shall impact any

8  priority dispute pending between any other Creditors in this Court or any court of competent

9  jurisdiction.

10      D.    *Exculpation*.

11      Except as otherwise specifically provided for in this Plan, no Exculpated Party shall have

12  or incur any liability for, and each Exculpated Party is hereby exculpated from, any cause of action

13  for any claim related to any act or omission from the Petition Date to the Effective Date in

14  connection with, relating to, or arising out of, Debtor's Chapter 11 Case, in whole or in part, the

15  formulation, preparation, dissemination, and negotiation of this Plan, the Disclosure Statement, any

16  contract, instrument, release, or other agreement or document created or entered into in connection

17  with this Plan, the Disclosure Statement, the filing of this Chapter 11 case, the pursuit of Plan

18  confirmation, the administration and implementation of this Plan, or distribution of payments made

19  under this Plan or any related act , except for claims or causes of action arising from an act or

20  omission that is judicially determined in a final non-appealable order to have constituted actual

21  fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be

22  entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with

23  respect to their duties and responsibilities. The Exculpated Parties have, and upon the

24  consummation of this Plan shall be deemed to have, participated in good faith and in compliance

25  with the applicable laws with regard to the solicitation of, and distribution of, consideration

26  pursuant to this Plan and therefore, are not, and on account of such distributions shall not b, liable

27  at any time for the violation of any applicable law, rule, or regulation governing the solicitation of

28  acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the

avoidance of doubt, nothing in this subsection shall impact any priority dispute pending between any other Creditors in this Court or any court of competent jurisdiction and nothing in this section shall prevent any party in interest from objecting to any Intercompany Loan Claim.

E.    *Setoffs and Recoupment*

(1)    Except as otherwise provided herein, the Liquidating Trustee, pursuant to the Bankruptcy Code, applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or the Liquidating Trustee may hold against such Holder, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order, or otherwise); *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Liquidating Trustee with respect to such Claims, rights, and Causes of Action.

(2)    In no event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right, or Cause of Action of a Debtor or the Liquidating Trustee, as applicable, unless such Holder has timely and properly filed a Proof of Claim preserving such setoff or recoupment in such Proof of Claim.

F.    *Retention of Causes of Action; Reservation of Rights*.

Except as otherwise provided in this Article IX, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that Debtor had immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Causes of Action against parties with a relationship with Debtor including actions arising under Chapter 5 of the Bankruptcy Code. Except as provided in any order entered by the Bankruptcy Court, the Liquidating Trustee shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff or recoupment, and other legal or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

1  equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's

2  legal and equitable rights in respect of any Unimpaired Claim may be asserted after the

3  Confirmation Date and Effective Date to the same extent as if the Chapter 11 Case had not been

4  commenced..

5         G.  *Release of Liens*

6        Except as otherwise provided herein or in any contract, instrument, release, or other

7  agreement or document created pursuant to the Plan, on the Effective Date and concurrently with

8  the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges,

9  or other security interests against any unencumbered property of the Estate shall be fully released

10  and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of

11  trust, Liens, pledges, or other security interests shall revert to the Liquidating Trustee and its

12  successors and assigns. For the avoidance of doubt, nothing in this subsection shall impact any

13  priority dispute pending between any other Creditors in this Court or any court of competent

14  jurisdiction and any distributions on account of such Disputed Claims shall be made as set forth

15  in Article VI(B).

16  **X**  **RETENTION OF JURISDICTION**

17        Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

18  Date, the Bankruptcy Court shall retain ~~exclusive~~ jurisdiction over all matters arising out of, or

19  related to, the Liquidating Trust, Chapter 11 Case and the Plan pursuant to Sections 105(a) and

20  1142, including jurisdiction to:

21       (1)  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority,

22  nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including

23  the resolution of any request for payment and any and all objections to the allowance, classification,

24  priority or amount of Claims or Equity Interests;

25       (2)  Decide and resolve all matters related to the granting and denying, in whole or in

26  part, of any applications for allowance of compensation or reimbursement of expenses to

27  Professionals authorized pursuant to the Bankruptcy Code or the Plan;

28

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(3)    Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory Contract or Unexpired Lease that is assumed; (iii) Debtor's or the Liquidating Trustee's amendment, modification, or supplement after the Effective Date, pursuant to Article V of this Plan, of the lists of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

(4)    Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan;

(5)    Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving a Debtor, that may be pending on the Effective Date;

(6)    Adjudicate, decide or resolve any and all matters related to Causes of Action;

(7)    Adjudicate, decide or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(8)    Resolve any and all avoidance or recovery actions under Sections 105, 502(d), 542 through 551 and 553 of the Bankruptcy Code;

(9)    Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order or any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Plan Supplement, or Confirmation Order;

(10)    Enter and implement such orders as may be necessary or appropriate to execute, implement, or Consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, indentures, and other agreements or documents created in connection with this Plan or the Confirmation Order;

(11)    Enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(12)    Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(13)    Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4) of the Bankruptcy Code;

(14)    Enforce the injunction and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

(15)    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the injunctions and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

(16)    Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

(17)    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(18)    Determine any other matters that may arise in connection with or relate to this Plan, the Confirmation Order, or any contract, instrument, indenture, or other agreement or document created in connection therewith;

(19)    Enter an order or final decree concluding or closing the Chapter 11 Case;

(20)    Adjudicate any and all disputes arising from or relating to distributions under the Plan;

(21)    Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(22)    Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(23)    Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(24)    Enforce all orders previously entered by the Bankruptcy Court; and

(25)    Hear any other matter not inconsistent with the Bankruptcy Code.

**XI    MISCELLANEOUS PROVISIONS**

A.    *Immediate Binding Effect.*

Notwithstanding the Bankruptcy Rules, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor, the Liquidating Trustee, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

B.    *Amendments.*

(1)    *Plan Modifications.* Subject to the limitations contained in this Plan, and in accordance with the Bankruptcy Code and the Bankruptcy Rules: (i) Debtor reserves the right, to amend or modify this Plan, including amendments or modifications to satisfy Section 1129(ba) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, Debtor or the Liquidating Trustee, as applicable, may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

(2)    *Effect of Confirmation on Modifications.* Upon entry of the Confirmation Order, all modifications or amendments to the Plan occurring on or after the solicitation thereof shall be deemed approved pursuant to Section 1127(a) of the Bankruptcy Code and shall not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

(3)    *Technical Amendments.* Prior to the Effective Date, Debtor may make technical adjustments and modifications to the Plan that do not adversely affect the treatment of Holders of Claims or Equity Interests thereunder, without further order or approval of the Bankruptcy Court.

C.    *Governing Law.*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule, or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan provides otherwise, the Plan shall be governed and construed in accordance with the Laws of the State of California, without giving effect to the principles of conflict of Laws thereof. Corporate governance matters shall be governed by the laws of the applicable state of incorporation, formation, or functional equivalent thereof, as applicable.

D.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, Affiliate, assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

E.    *Severability.*

If, prior to the entry of the Confirmation Order, the Bankruptcy Court determines that any term or provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor, shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, which term shall thereafter apply as so altered or interpreted. Notwithstanding the forgoing, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified, and (c) non-severable and mutually dependent.

DEBTOR'S ~~SUPPLEMENTAL~~ SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

F.      *Controlling Document*.

In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of a conflict between the Plan and the Disclosure Statement, the terms of this Plan shall control.

The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that in the event of any inconsistency or conflict between the Plan and the Confirmation Order that cannot be so construed, then, solely to the extent necessary, the applicable provisions of the Confirmation Order shall control and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

G.      *Filing of Additional Documents.*

On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor or the Liquidating Trustee, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.      *Reservation of Rights*.

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. The Plan, Disclosure Statement, and Plan Supplement, or anything contained therein, or any action Debtor takes with respect thereto, shall be deemed to be an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

I.      *Service of Documents*.

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Liquidating Trustee shall also be served on:

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Bradley Sharp
333 South Grand Ave. Ste. 4100
Los Angeles, CA 90071

With copies to:
Bryan Cave Leighton Paisner, LLP
Sharon Z. Weiss
120 Broadway, Ste. 300
Santa Monica, CA 90401

After the Effective Date, the Liquidating Trustee has authority to provide notice to Parties in Interest that in order to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such requests.

J.      *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date: (a) Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy Law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) Debtor, and its agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

K.      *Tax Reporting and Compliance.*

Debtor shall be authorized to request an expedited determination under Section 505(b) for all tax returns filed for, or on behalf of, Debtor for any and all taxable periods ending after the Petition Date through, and including, the dissolution of Debtor.

L.      *Exhibits, Schedules and Supplements*.

All exhibits, schedules, and supplements to this Plan are incorporated into and made a part of Plan as if fully set forth herein. To the extent any exhibit, schedule, or supplement is inconsistent

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  with the terms of this Plan and unless otherwise provided for in the Confirmation Order, the terms

2  of such exhibit, schedule, or supplement shall control as to the transactions contemplated thereby

3  and the terms of this Plan shall control as to any Plan provision as may be required under such

4  exhibit, schedule, or supplement.

5          M.      *Entire Agreement*.

6          Except as otherwise set forth herein, on the Effective Date the Plan shall supersede all

7  previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and

8  representations on such subjects, all of which have become merged and integrated into the Plan.

9          N.      *Allocation of Payments*.

10          To the extent that any Allowed Claim entitled to distribution hereunder is comprised of

11  indebtedness and accrued but unpaid interest thereon, such distribution shall, for all U.S. federal

12  income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent

13  that the consideration exceeds such principal amount, to the portion of such Claim representing

14  accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such

15  Allowed Claim).

16

17  Dated: September 4, 2024              Respectfully submitted,

18                                        BRYAN CAVE LEIGHTON PAISNER LLP

19                                        By: */s/ Sharon Z. Weiss*

20                                            Sharon Z. Weiss
                                          Attorneys for Debtor-in-Possession

21

22

23

24

25

26

27

28

DEBTOR'S ~~SUPPLEMENTAL~~SECOND AMENDED LIQUIDATING CHAPTER 11 PLAN

| Summary report: | |
|---|---|
| **Litera Compare for Word 11.7.0.54 Document comparison done on 9/4/2024 11:00:40 PM** | |
| **Style name:** Firm | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2024-08-19 Oceanwide Liquidating Plan.docx | |
| **Modified filename:** 2024-09-04 Oceanwide Second Liquidating Plan.docx | |
| **Changes:** | |
| Add | 242 |
| Delete | 224 |
| Move From | 39 |
| Move To | 39 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 545 |

# EXHIBIT C

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
*jarret.hitchings@bclplaw.com*
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

*Attorneys for Debtor and Debtor in Possession*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor. | Chapter 11 Case |

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER: (1) APPROVING DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED SEPTEMBER 4, 2024); (2) ESTABLISHING VOTING, PLAN CONFIRMATION, AND OTHER PROCEDURES; (3) SCHEDULING PLAN CONFIRMATION HEARING AND SETTING OTHER RELATED DATES AND DEADLINES; AND (4) PROVIDING OTHER ANCILLARY AND RELATED RELIEF**

Hearing:
Date:    September 5, 2024
Time:    1:00 p.m.
Place:   Courtroom 1639
         255 E. Temple St.
         Los Angeles, CA 90012

1    The *Motion for Order: (1) Approving Disclosure Statement Describing Debtor's*

2 *Liquidating Plan of Reorganization (Dated July 10, 2024); (2) Establishing Voting, Plan*

3 *Confirmation, and Other Procedures; (3) Scheduling Plan Confirmation Hearing and Setting Other*

4 *Related Dates and Deadlines; and (4) Providing Other Ancillary and Related Relief* (the "Motion"),

5 filed by Oceanwide Plaza LLC (the "Debtor"), came on for hearing on August 21, 2024, at 1:00

6 p.m., before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge. Appearances

7 were as noted on the record at the hearing.

8    This Court having considered the Motion, all papers and documents submitted in support of

9 the Motion, the *Second Amended Disclosure Statement Describing Debtor's Liquidating Plan of*

10 *Reorganization (Dated September 4, 2024)* (the "Disclosure Statement"), the Debtor's *Second*

11 *Amended Liquidating Plan of Reorganization (Dated September 4, 2024)* (the "Plan"), all other

12 papers filed in support of, in response to, or otherwise in connection with, the Motion, the

13 Disclosure Statement, and the Plan, the record in this bankruptcy case, arguments, statements, and

14 representations of counsel on the record at the hearing; and finding that the notice of the hearing to

15 consider the adequacy of the Disclosure Statement and notice of the hearing on the Motion was

16 sufficient and timely and properly served on all necessary parties; and the Court finding that the

17 Disclosure Statement contains adequate information witin the meaning of 11 U.S.C. § 1125; and

18 the Court further finding that the confirmation, voting, tabulation, and other procedures proposed

19 in the Motion, the form of notice of the confirmation hearing and related matters attached as Exhibit

20 "2" to the Motion, the form of Ballot attached as Exhibit "3" to the Motion, and the proposed

21 schedule, dates, deadlines, and other relief proposed and requested in the Motion are fair, reasonable,

22 and appropriate, authorized by the applicable provisions of the Bankruptcy Code, the Federal Rules

23 of Bankruptcy Procedure, and the Local Bankruptcy Rules, and in the best interests of the Debtor's

24 estate; and good cause appearing therefor,

25    **It is hereby ORDERED as follows:**

26    1.    The Motion is GRANTED as set forth herein.

27    2.    The Disclosure Statement is approved.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

3.    The form of Confirmation Hearing Notice (as defined in the Motion), which form is attached as Exhibit "2" to the Motion, is approved.

4.    The form of Ballot (as defined in the Motion), which form is attached as Exhibit "3" to the Motion, is approved.

5.    The Voting and Tabulation Procedures (as set forth in Exhibit 2) are approved.

6.    The Debtor is are authorized to, and by no later than September 10, 2024, shall serve, by regular mail or e-mail, a plan solicitation package (the "Solicitation Package") on all creditors, interest holders, the United States Trustee, and other parties in interest, which package shall include: (a) the Confirmation Hearing Notice; (b) Ballot (to the extent the receiving party is entitled to vote on the Plan); (c) the Disclosure Statement; (d) the Plan; and (e) any other related materials or materials as the Court may direct or authorize. The Debtor may transmit the Solicitation Package by regular mail or e-mail. The Debtor's inclusion of a Ballot in the Solicitation Package shall not be construed as an admission by the Debtor that the party receiving such Solicitation Package is entitled to vote on the Plan. The Debtor is authorized to make any non-substantive/non-material changes to the Disclosure Statement and Plan, and related exhibits and documents, without further order of the Court, including ministerial changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement and Plan and any other materials in the Solicitation Package prior to mailing.

7.    The following additional dates, deadlines, and procedures shall apply:

a.    September 10, 2024 is the last date by which the Debtor must file and serve its motion to confirm the Plan, which shall include a memorandum of points and authorities and all evidence in support of confirmation of the Plan, including witness declarations on direct testimony and related exhibits (the "Plan Confirmation Motion"). The Plan Confirmation Motion need only be served on ECF-registered parties, parties who filed an objection to the Disclosure Statement, the United States Trustee, and parties who requested special notice.

b.    October 8, 2024 (the "Voting Deadline"), is the last date by which ballots accepting or rejecting the Plan must be received by counsel for the Debtor. Ballots must be delivered in one of the following manners so that the Ballot is received by Debtor's Solicitation

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    Agent by mail at Oceanwide Plaza LLC Ballot Processing c/o Stretto 410 Exchange, Suite 100,

2    Irvine    CA    92602    or    electronically    under    the    "File    a    Ballot"    tab    at

3    https://cases.stretto.com/OceanwidePlaza/. A claimant in an impaired class who fails to timely

4    submit a Ballot shall be deemed to have accepted the proposed treatment of its claim under the

5    Plan.

6        c.    A Claim shall be deemed Allowed solely for purposes of voting on the Plan unless

7    (a) such Claim is scheduled as disputed, contingent or unliquidated and no proof of claim has been

8    timely filed or (b) there is an objection with respect to such claim at least fourteen (14) days prior

9    to the Voting Deadline.  Such objection will be heard by the Court at least [DATE] days prior to

10    the Voting Deadline.

11        d.    The Plan Supplement shall be filed on or before September 25, 2024.

12        e.    October 11, 2024, is the last date by which the Debtor must file a Ballot summary,

13    which shall include a tabulation of Ballots received.

14        f.    October 2, 2024 (the "Objection Deadline"), is the last date by which any party

15    objecting to confirmation of the Plan must file and serve its objection and evidence in support

16    thereof. Any objection to confirmation of the Plan must:

17            i.        be in writing;

18            ii.        be accompanied by a memorandum of points and authorities;

19            iii.        set forth in detail the name and address of the party filing the

20    objection, the grounds for the objection, and any evidentiary support for the objection in the nature

21    of declarations submitted under penalty of perjury; and

22            iv.        be served on the Debtor, its counsel, and the United States

23    Trustee.

24        e.    October 9, 2024 is the last date by which the Debtor must file any reply memorandum

25    and supporting declarations and evidence in support of confirmation of the Plan.

26        f.    Any objection or opposition to confirmation of the Plan must be submitted

27    by the Objection Deadline. The failure to file and serve a timely objection to the Plan by the

28    Objection Deadline may be deemed by the Court to be consent to the Motion.

g.      The hearing on the confirmation of the Plan shall be held on October 16, 2024, at10:00 a.m. (the "Confirmation Hearing"), before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge. The Confirmation Hearing may be continued by announcement in open court without further notice to creditors or parties in interest.

h.      Unless otherwise ordered by the Court, in the event of a contested Plan Confirmation Hearing: (i) all declarants must appear, without need for subpoena, at the Confirmation Hearing to be available for cross-examination; and (ii) the testimony of any declarant who is not present for cross-examination at the Confirmation Hearing will be stricken from the record and will not be considered in determining contested matters at the Confirmation Hearing.

###

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:     (310) 576-2100
Facsimile:     (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone     (704) 749-8999
Facsimile     (704) 749-8990

*Attorneys for Debtor and Debtor in Possession*

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor. | Chapter 11 Case |

**NOTICE OF: (1) APPROVAL OF SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED SEPTEMBER 4, 2024); (2) HEARING ON CONFIRMATION OF PLAN OF REORGANIZATION AND RELATED DATES AND DEADLINES; AND (3) PROCEDURES AND REQUIREMENTS RELATING TO VOTING ON PLAN OF REORGANIZATION**

<u>**Confirmation Hearing**</u>

Hearing:
Date:     October 16, 2024
Time:     10:00 a.m.
Place:     Courtroom 1639
              255 E. Temple St.
              Los Angeles, CA 90012

**TO CREDITORS, EQUITY INTEREST HOLDERS, THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, following a hearing before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in the above-referenced case of Oceanwide Plaza LLC (the "Debtor"), the Court approved the *Second Amended Disclosure Statement Describing Debtor's Second Amended Liquidating Plan of Reorganization (Dated September 4, 2024)* (the "Disclosure Statement"), the *Debtor's Second Amended Liquidating Plan of Reorganization (Dated September 4, 2024)* (the "Plan"), to enable creditors, interest holders, and other parties in interest to make an informed judgment and decision regarding whether to accept or reject the Plan.

PLEASE TAKE FURTHER NOTICE that the Court approved for distribution to creditors, interest holders, and other parties in interest, the following materials, all of which are included in the package being transmitted to you with the present notice (collectively, the "Plan Solicitation Materials"):

(1)    this Notice (the "Plan Confirmation Notice"), which includes notice of: (a) approval of the Disclosure Statement; (b) the hearing on confirmation of the Plan and related dates and deadlines; and (c) the Court-approved procedures and requirements relating to voting to accept or reject the Plan and tabulation of Plan ballots (the "Voting and Tabulation Procedures");

(2)    the Disclosure Statement;

(3)    the Plan; and

(4)    the ballot for creditors to use to vote to accept or reject the Plan ("Ballot").

**PLEASE TAKE FURTHER NOTICE OF THE FOLLOWING:**

**<u>DISTRIBUTION OF PLAN SOLICITATION MATERIALS</u>**

1.    The Court has approved the adequacy of the Disclosure Statement as containing "adequate information" within the meaning of 11 U.S.C. § 1125, and has authorized transmittal of the Disclosure Statement, the Plan, and the other Plan Solicitation Materials (itemized above).

2.    If you received the Plan Solicitation Materials, the Debtor believes that, either: (i) you are a creditor or equity security holder of the Debtor; or (ii) you are a party in interest entitled to receive the Plan Solicitation Materials.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

3.      You may obtain, at no expense to you, additional copies of the Plan Solicitation Materials by sending a written request to:

<table>
<tr><td>Sharon Z. Weiss, Esq.<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401-2386<br><em>sharon.weiss@bclplaw.com</em></td><td>Jarret P. Hitchings, Esq.<br>301 South College Street, Suite 2150<br>Charlotte, North Carolina 28202<br><em>jarret.hitchings@bclplaw.com</em></td></tr>
</table>

Copies of the Plan Solicitation Materials are also available (a) for a fee via PACER at http://www.cacb.uscourts.gov; or (b) at no charge from Stretto, Inc. (the "Solicitation Agent") by: (i) accessing the Debtor's restructuring website at

https://cases.stretto.com/OceanwidePlaza/

(ii) writing to Oceanwide Plaza LLC Ballot Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; (iii) emailing TeamOceanwidePlaza@stretto.com; or (iv) calling the Solicitation Agent at:

U.S. Toll Free:  888-808-1469

International:  949-358-6856

The manner in which the Debtor may transmit any additional copies of the Plan Solicitation Materials requested is within the Debtor's sole discretion.

## VOTING AND TABULATION PROCEDURES

The Court has approved the following procedures and requirements for voting on the Plan:

1.      The deadline to vote on the Plan is October 8, 2024 (the "Voting Deadline"). This means you must return your completed Ballot so that the Debtor, receives it by the Voting Deadline, by submitting the Ballot to the Solicitation Agent by mail at

Oceanwide Plaza LLC Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

or electronically under the "File a Ballot" tab at

https://cases.stretto.com/OceanwidePlaza/

2.      The fact that you received a Ballot with these Plan Solicitation Materials does not mean the Debtor believes you are entitled to vote on the Plan, and you should not construe your

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  receipt of a Ballot in that manner. Consult the Plan to determine whether or not you are entitled to

2  vote on the Plan.

3      3.    Ballots must be delivered in one of the following manners so that the Ballot is

4  received by the Solicitation Agent by the Voting Deadline: (i) mail; (ii) overnight courier;; or (iii)

5  via the Solicitation Agent's website maintained for this case. A claimant in an impaired class who

6  fails to timely submit a Ballot shall be deemed to have accepted the proposed treatment of its claim

7  under the Plan.

8      4.    Solely for the purposes of voting on the Plan and tabulating acceptance or rejection

9  of the Plan, the amount of the claim for each voting party will be treated as allowed in an amount

10 equal to the greater of: (i) the amount of such claim as set forth in the Debtor's schedules, or (ii) the

11 amount of such claim as set forth in a timely filed proof of claim to which no objection has been

12 filed, or if an objection has been filed, then in the amount of any order entered allowing the holder

13 of such claim to vote, as of the date the Plan Solicitation Materials are transmitted to creditors, except

14 that each holder of a claim shall be entitled to vote all of the non-duplicative claims it holds, but may

15 only vote a single ballot as to all claims within a particular class.

16     5.    Any Ballot that is illegible or contains insufficient information to permit the

17 identification of the holder of the claim voted shall not be counted.

18     6.    Any Ballot cast by a person or entity that does not holds an Allowed Claim (as

19 defined in the Plan) shall not be counted. A Claim shall be deemed Allowed solely for purposes of

20 voting on the Plan if there is no objection filed with respect to such claim fourteen (14) days prior

21 to the Voting Deadline or the Claim is not otherwise scheduled as disputed, contingent, or

22 unliquidated. Debtor reserves the right to object to any claim deemed Allowed for purposes of

23 voting on the Plan pursuant to this Order.   Such objection will be heard by the Court at least

24 [DATE] days prior to the Voting Deadline.

25     7.    Any Ballot that is properly completed, executed, and timely returned to the Debtor

26 that does not indicate an acceptance or rejection of the Plan shall be counted as an acceptance of

27 the Plan.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

8. Any Ballot that is properly completed, executed, and timely returned to the Debtor that indicates both acceptance and rejection of the Plan shall be counted as an acceptance of the Plan.

9. Any objection or opposition to confirmation of the Plan must be submitted by the Objection Deadline. The failure to file and serve a timely objection to the Plan by the Objection Deadline may be deemed by the Court to be consent to confirmation of the requested relief. Whenever a holder in a voting class returns more than one Ballot voting the same claim by the Voting Deadline, only the last Ballot timely returned to the Debtor shall be counted.

10. Each holder of a claim in a voting class shall be deemed to have voted the full amount of its claim.

11. Holders of claims in a voting class shall not split their vote, but shall vote their entire claim within a particular class either to accept or reject the Plan, and a Ballot (or a Ballot or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan shall be counted as an acceptance of the Plan. For the avoidance of doubt, to the extent that any portion of any secured claim is ultimately undersecured, by agreement or other otherwise, such secured creditor may vote that portion of its unsecured claim separately.

12. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtor in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

13. Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

## HEARING ON CONFIRMATION OF THE PLAN AND RELATED DEADLINES

The Court has approved the following schedule to consider confirmation of the Plan:

1. The hearing on the confirmation of the Plan shall be held on October 16, 2024, at 10:00 a.m. before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge. The

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Confirmation Hearing may be continued by announcement in open court without further notice to creditors or parties in interest.

2.    September 10, 2024, is the last date by which the Debtor must file and serve its motion to confirm the Plan, which shall include a memorandum of points and authorities and all evidence in support of confirmation of the Plan, including witness declarations on direct testimony and related exhibits (the "Plan Confirmation Motion"). The Plan Confirmation Motion need only be served on ECF-registered parties, parties who filed an objection to the Disclosure Statement, the United States Trustee, and parties who requested special notice.

3.    October 11, 2024, is the last date by which the Debtor must file a Ballot summary, which shall include a tabulation of Ballots received.

4.    October 2, 2024  (the "Objection Deadline"), is the last date by which any party objecting to confirmation of the Plan must file and serve its objection and evidence in support thereof. Any objection to confirmation of the Plan must:

    a.    be in writing;

    b.    be accompanied by a memorandum of points and authorities;

    c.    set forth in detail the name and address of the party filing the objection, the grounds for the objection, and any evidentiary support for the objection in the nature of declarations submitted under penalty of perjury; and

    d.    be served on the Debtor, its counsel, and the United States Trustee.

5.    October 9, 2024 is the last date by which the Debtor must file any reply memorandum and supporting declarations and evidence in support of confirmation of the Plan.

6.    Any objection or opposition to confirmation of the Plan must be submitted by the Objection Deadline. The failure to file and serve a timely objection to the Plan by the Objection Deadline may be deemed by the Court to be consent to the Motion.

7.    Unless otherwise ordered by the Court, in the event of a contested Plan Confirmation Hearing: (i) all declarants must appear, without need for subpoena, at the Confirmation Hearing to be available for cross-examination; and (ii) the testimony of any declarant who is not present for

cross-examination at the Confirmation Hearing will be stricken from the record and will not be considered in determining contested matters at the Confirmation Hearing.

      8.    Confirmation Hearing: (a) all declarants must appear, without need for subpoena, at the Confirmation Hearing to be available for cross-examination; and (b) the testimony of any declarant who is not present for cross-examination at the Confirmation Hearing will be stricken from the record and will not be considered in determining contested matters at the Confirmation Hearing.

Dated:                          BRYAN CAVE LEIGHTON PAISNER LLP

                               By:_____
                                  Sharon Z. Weiss
                             **Attorneys for Debtor and Debtor-in-Possession**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor. | Chapter 11 Case |
| | **PLAN BALLOT** |
| | **[Use For Voting on *Debtor's Second Amended Liquidating Plan of Reorganization (Dated September 4 , 2024)* (the "Plan")]** |
| | Voting Deadline: October 8, 2024 |

**CLASS [_] BALLOT FOR HOLDERS OF [VOTING CLASS]**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY OCTOBER 8, 2024, (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

You are receiving this Class [_] ballot (this "Class [_] Ballot" or "Ballot") because you are a Holder of a [Voting Class] (your "[Voting Class]") as of the date of this Order(the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Second Amended Disclosure Statement ("Disclosure Statement"), which was included in the package (the "Solicitation Package") you are receiving with this Class [_] Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.cacb.uscourts.gov; or (b) at no charge from Stretto, Inc. (the "Solicitation Agent") by: (i) accessing the Debtor's restructuring website at https://cases.stretto.com/OceanwidePlaza/; (ii) writing to Oceanwide Plaza LLC Ballot Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; (iii) emailing TeamOceanwidePlaza@stretto.com; or (iv) calling the Solicitation Agent at:

U.S. Toll Free:  888-808-1469

International:  949-358-6856

This Class [_] Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Class [_] Ballot in error, or if you believe you have received the wrong Ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your [Voting Class] has been placed in Class [_] under the Plan. If you hold Claims or Interests in more than one Class, you will receive a Ballot or Notice of Non-Voting Status, as applicable for each such Class. **PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot. Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**Oceanwide Plaza LLC Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to** TeamOceanwidePlaza@stretto.com **and provide the anticipated date and time of your delivery.**

***OR***

**Via Balloting Portal. Submit your Ballot via the Solicitation Agent's online portal, by visiting https://cases.stretto.com/OceanwidePlaza/ (the "Balloting Portal"). Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Password:_____**

**The Solicitation Agent's Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot. Please complete and submit an electronic Ballot for each Password you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Portal should NOT also submit a paper Ballot. In the event you submit a Ballot using the Balloting Portal and a paper Ballot, the last properly executed Ballot timely received shall control.**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**Item 1.**        **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of [Voting Class] in the following aggregate unpaid amount (insert amount in box below):

$\underline{\text{\$\hspace{4cm}}}$

**Item 2.**        **Vote on Plan.**

The Holder of the [Voting Class] set forth in Item 1 votes to (please check only <u>one</u>)

☐  <u>**ACCEPT**</u> (vote FOR) the Plan          ☐  <u>**REJECT**</u> (vote AGAINST) the Plan

**Item 3.**        **Certifications.**

By signing this Class [_] Ballot, the undersigned certifies to the Bankruptcy Court and the Debtor that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of the [Voting Class] being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the [Voting Class]  being voted;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)        the Entity has cast the same vote with respect to all [Voting Class]; and

(d)        no other Class [_] Ballots with respect to the amount of the [Voting Class] identified in Item 1 have been cast or, if any other Class [_] Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Class [_] Ballots are hereby revoked.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Name of Holder: _____

(Print or Type)

Signature: _____

Name of Signatory: _____

(If other than the Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE OCTOBER 8, 2024, AT 4:00 P.M., PREVAILING PACIFIC TIME, (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTOR.**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# EXHIBIT D

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
*jarret.hitchings@bclplaw.com*
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

*Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Oceanwide Plaza LLC,<br><br>                Debtor. | Case No.: 2:24-bk-11057-DS<br><br>Hon. Deborah J. Saltzman<br><br>Chapter 11 Case<br><br>**ORDER GRANTING DEBTOR'S MOTION FOR ORDER: (1) APPROVING DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED ~~JULY 10~~SEPTEMBER 4, 2024); (2) ESTABLISHING VOTING, PLAN CONFIRMATION, AND OTHER PROCEDURES; (3) SCHEDULING PLAN CONFIRMATION HEARING AND SETTING OTHER RELATED DATES AND DEADLINES; AND (4) PROVIDING OTHER ANCILLARY AND RELATED RELIEF**<br><br>Hearing:<br>Date:  ~~August 21~~September 5, 2024<br>Time:  1:00 p.m.<br>Place:  Courtroom 1639<br>       255 E. Temple St.<br>       Los Angeles, CA 90012 |

~~ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVONG DISCLOSURE STATEMENT AND OTHER RELEIF RELATED TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 11 PLAN~~

1    The *Motion for Order: (1) Approving Disclosure Statement Describing Debtor's*

2    *Liquidating Plan of Reorganization (Dated July 10, 2024); (2) Establishing Voting, Plan*

3    *Confirmation, and Other Procedures; (3) Scheduling Plan Confirmation Hearing and Setting Other*

4    *Related Dates and Deadlines; and (4) Providing Other Ancillary and Related Relief* (the "Motion"),

5    filed by Oceanwide Plaza LLC (the "Debtor"), came on for hearing on August 21, 2024, at 1:00

6    p.m., before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge. Appearances

7    were as noted on the record at the hearing.

8    This Court having considered the Motion, all papers and documents submitted in support of

9    the Motion, the *Second Amended Disclosure Statement Describing Debtor's Liquidating Plan of*

10   *Reorganization (Dated ~~July 10~~September 4, 2024)* (the "Disclosure Statement"), the Debtor's

11   *Second Amended Liquidating Plan of Reorganization (Dated ~~July 10~~September 4, 2024)* (the

12   "Plan"), all other papers filed in support of, in response to, or otherwise in connection with, the

13   Motion, the Disclosure Statement, and the Plan, the record in this bankruptcy case, arguments,

14   statements, and representations of counsel on the record at the hearing; and finding that the notice

15   of the hearing to consider the adequacy of the Disclosure Statement and notice of the hearing on

16   the Motion was sufficient and timely and properly served on all necessary parties; and the Court

17   finding that the Disclosure Statement contains adequate information ~~within~~witin the meaning of 11

18   U.S.C. § 1125; and the Court further finding that the confirmation, voting, tabulation, and other

19   procedures proposed in the Motion, the form of notice of the confirmation hearing and related

20   matters attached as Exhibit "2" to the Motion, the form of Ballot attached as Exhibit "3" to the

21   Motion, and the proposed schedule, dates, deadlines, and other relief proposed and requested in the

22   Motion are fair, reasonable, and appropriate, authorized by the applicable provisions of the

23   Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules,

24   and in the best interests of the Debtor's estate; and good cause appearing therefor,

25   **It is hereby ORDERED as follows:**

26   1.    The Motion is GRANTED ~~in its entirety~~as set forth herein.

27   2.    The Disclosure Statement is approved.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

3.     The form of Confirmation Hearing Notice (as defined in the Motion), which form is attached as Exhibit "2" to the Motion, is approved.

4.     The form of Ballot (as defined in the Motion), which form is attached as Exhibit "3" to the Motion, is approved.

5.     The Voting and Tabulation Procedures (as ~~defined~~set forth in ~~the Motion~~Exhibit 2) are approved.

6.     The Debtor is are authorized to, and by no later than ~~August 26~~September 10, 2024, shall serve, by regular mail or e-mail, a plan solicitation package (the "Solicitation Package") on all creditors, interest holders, the United States Trustee, and other parties in interest, which package shall include: (a) the Confirmation Hearing Notice; (b) Ballot (to the extent the receiving party is entitled to vote on the Plan); (c) the Disclosure Statement; (d) the Plan; and (e) any other related materials or materials as the Court may direct or authorize. The Debtor may transmit the Solicitation Package by regular mail or e-mail. The Debtor's inclusion of a Ballot in the Solicitation Package shall not be construed as an admission by the Debtor that the party receiving such Solicitation Package is entitled to vote on the Plan. The Debtor is authorized to make any non-substantive/non-material changes to the Disclosure Statement and Plan, and related exhibits and documents, without further order of the Court, including ministerial changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement and Plan and any other materials in the Solicitation Package prior to mailing.

7.     The following additional dates, deadlines, and procedures shall apply:

~~a.  July 26, 2024 is the last day for the Debtor to supplement the Disclosure Statement, if necessary, to provide (i) an update to all interested parties regarding the designation and Court approval of a stalking horse bidder for the sale of the Debtor's property, if any, the approval of which is scheduled for hearing on July 23, 2024 at 3:00 p.m. (PT)~~ and (ii) an estimated ~~distribution to creditors based on the purchase price for the stalking horse bidder.~~

a.     ~~b. August 30~~September 10, 2024 is the last date by which the Debtor must file and serve its motion to confirm the Plan, which shall include a memorandum of points and authorities and all evidence in support of confirmation of the Plan, including witness declarations

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

on direct testimony and related exhibits (the "Plan Confirmation Motion"). The Plan Confirmation Motion need only be served on ECF-registered parties, parties who filed an objection to the Disclosure Statement, the United States Trustee, and parties who requested special notice.

b.    c. September 23October 8, 2024 (the "Voting Deadline"), is the last date by which ballots accepting or rejecting the Plan must be received by counsel for the Debtor. Ballots must be delivered in one of the following manners so that the Ballot is received by the Debtor" counsel by the Voting Deadline: (i) mail; (ii) overnight courier; (iii) hand delivery; or (iv) emailDebtor's Solicitation Agent by mail at Oceanwide Plaza LLC Ballot Processing c/o Stretto 410 Exchange, Suite 100, Irvine CA 92602 or electronically under the "File a Ballot" tab at https://cases.stretto.com/OceanwidePlaza/. A claimant in an impaired class who fails to timely submit a Ballot shall be deemed to have accepted the proposed treatment of its claim under the Plan.

c.    A Claim shall be deemed Allowed solely for purposes of voting on the Plan unless (a) such Claim is scheduled as disputed, contingent or unliquidated and no proof of claim has been timely filed or (b) there is an objection with respect to such claim at least fourteen (14) days prior to the Voting Deadline.  Such objection will be heard by the Court at least [DATE] days prior to the Voting Deadline.

d.    The Plan Supplement shall be filed on or before September 25, 2024.

e.    d. October 111, 2024, is the last date by which the Debtor must file a Ballot summary, which shall include a tabulation of Ballots received.

f.    e. [October —2, 2024] (the "Objection Deadline"), is the last date by which any party objecting to confirmation of the Plan must file and serve its objection and evidence in support thereof. Any objection to confirmation of the Plan must:

i.    be in writing;

ii.    be accompanied by a memorandum of points and authorities;

iii.    set forth in detail the name and address of the party filing the objection, the grounds for the objection, and any evidentiary support for the objection in the nature of declarations submitted under penalty of perjury; and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    iv.    be served on the Debtor, its counsel, and the United States

2  Trustee.

3    e.    [October —9, 2024]  is the last date by which the Debtor must file any reply

4  memorandum and supporting declarations and evidence in support of confirmation of the Plan.

5    f.    Any objection or opposition to confirmation of the Plan must be submitted

6  by the Objection Deadline. The failure to file and serve ana timely objection to the Plan by

7  the Objection Deadline shallmay be deemed by the Court to be consent to confirmation of

8  the PlanMotion.

9    g.    The hearing on the confirmation of the Plan shall be held on October —16, 2024,

10  at ____: 0    at10:00 a.m. (the "Confirmation Hearing"), before the Honorable Deborah J.

11  Saltzman, United States Bankruptcy Judge. The Confirmation Hearing may be continued by

12  announcement in open court without further notice to creditors or parties in interest.

13    h.    Unless otherwise ordered by the Court, in the event of a contested Plan Confirmation

14  Hearing: (i) all declarants must appear, without need for subpoena, at the Confirmation Hearing to

15  be available for cross-examination; and (ii) the testimony of any declarant who is not present for

16  cross-examination at the Confirmation Hearing will be stricken from the record and will not be

17  considered in determining contested matters at the Confirmation Hearing.

18    ###

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:      (310) 576-2100
Facsimile:      (310) 576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone      (704) 749-8999
Facsimile:      (704) 749-8990

*Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor. | Chapter 11 Case |

**NOTICE OF: (1) APPROVAL OF SECOND AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED ~~JULY 10~~SEPTEMBER 4, 2024); (2) HEARING ON CONFIRMATION OF PLAN OF REORGANIZATION AND RELATED DATES AND DEADLINES; AND (3) PROCEDURES AND REQUIREMENTS RELATING TO VOTING ON PLAN OF REORGANIZATION**

**Confirmation Hearing**

Hearing:
Date:    October ~~—~~16, 2024
Time:    ~~[TBD]~~10:00 a.m.
Place:    Courtroom 1639
            255 E. Temple St.
            Los Angeles, CA 90012

~~ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVONG DISCLOSURE STATEMENT AND OTHER RELEIF RELATED TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 11 PLAN~~

**TO CREDITORS, EQUITY INTEREST HOLDERS, THE UNITED STATES TRUSTEE, AND ALL OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that, following a hearing before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, in the above-referenced case of Oceanwide Plaza LLC (the "Debtor"), the Court approved the *Second Amended Disclosure Statement Describing Debtor's Second Amended Liquidating Plan of Reorganization (Dated July 10September 4, 2024)* (the "Disclosure Statement"), the *Debtor's Second Amended Liquidating Plan of Reorganization (Dated July 10September 4, 2024)* (the "Plan"), to enable creditors, interest holders, and other parties in interest to make an informed judgment and decision regarding whether to accept or reject the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Court approved for distribution to creditors, interest holders, and other parties in interest, the following materials, all of which are included in the package being transmitted to you with the present notice (collectively, the "Plan Solicitation Materials"):

(1)   this Notice (the "Plan Confirmation Notice"), which includes notice of: (a) approval of the Disclosure Statement; (b) the hearing on confirmation of the Plan and related dates and deadlines; and (c) the Court-approved procedures and requirements relating to voting to accept or reject the Plan and tabulation of Plan ballots (the "Voting and Tabulation Procedures");

(2)   the Disclosure Statement;

(3)   the Plan; and

(4)   the ballot for creditors to use to vote to accept or reject the Plan ("Ballot").

**PLEASE TAKE FURTHER NOTICE OF THE FOLLOWING:**

**DISTRIBUTION OF PLAN SOLICITATION MATERIALS**

1.   The Court has approved the adequacy of the Disclosure Statement as containing "adequate information" within the meaning of 11 U.S.C. § 1125, and has authorized transmittal of the Disclosure Statement, the Plan, and the other Plan Solicitation Materials (itemized above).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

2.      If you received the Plan Solicitation Materials, the Debtor believes that, either: (i) you are a creditor or equity security holder of the Debtor; or (ii) you are a party in interest entitled to receive the Plan Solicitation Materials.

3.      You may obtain, at no expense to you, additional copies of the Plan Solicitation Materials by sending a written request to:

| | |
|---|---|
| Sharon Z. Weiss, Esq. | Jarret P. Hitchings, Esq. |
| 120 Broadway, Suite 300 | 301 South College Street, Suite 2150 |
| Santa Monica, CA 90401-2386 | Charlotte, North Carolina 28202 |
| *sharon.weiss@bclplaw.com* | *jarret.hitchings@bclplaw.com* |

Copies of the Plan Solicitation Materials are also available (a) for a fee via PACER at http://www.cacb.uscourts.gov; or (b) at no charge from Stretto, Inc. (the "Solicitation Agent") by: (i) accessing the Debtor's restructuring website at

https://cases.stretto.com/OceanwidePlaza/

(ii) writing to Oceanwide Plaza LLC Ballot Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; (iii) emailing TeamOceanwidePlaza@stretto.com; or (iv) calling the Solicitation Agent at:

U.S. Toll Free:  888-808-1469

International:  949-358-6856

The manner in which the Debtor may transmit any additional copies of the Plan Solicitation Materials requested is within the Debtor's sole discretion.

## **VOTING AND TABULATION PROCEDURES**

The Court has approved the following procedures and requirements for voting on the Plan:

1.      The deadline to vote on the Plan is ~~September 23~~October 8, 2024 (the "Voting Deadline"). This means you must return your completed Ballot so that the Debtor, receives it by the Voting Deadline, by submitting the Ballot to the Solicitation Agent by mail at

Oceanwide Plaza LLC Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

or electronically under the "File a Ballot" tab at

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1          https://cases.stretto.com/OceanwidePlaza/

2          2.      The fact that you received a Ballot with these Plan Solicitation Materials does not

3   mean the Debtor believes you are entitled to vote on the Plan, and you should not construe your

4   receipt of a Ballot in that manner. Consult the Plan to determine whether or not you are entitled to

5   vote on the Plan.

6          3.      Ballots must be delivered in one of the following manners so that the Ballot is

7   received by the Solicitation Agent by the Voting Deadline: (i) mail; (ii) overnight courier; (iii) hand

8   delivery; or (iv/iii) via the Solicitation Agent's website maintained for this case. A claimant in an

9   impaired class who fails to timely submit a Ballot shall be deemed to have accepted the proposed

10  treatment of its claim under the Plan.

11         4.      Solely for the purposes of voting on the Plan and tabulating acceptance or rejection

12  of the Plan, the amount of the claim for each voting party will be treated as allowed in an amount

13  equal to the greater of: (i) the amount of such claim as set forth in the Debtor's schedules, or (ii) the

14  amount of such claim as set forth in a timely filed proof of claim to which no objection has been

15  filed, or if an objection has been filed, then in the amount of any order entered allowing the holder

16  of such claim to vote, as of the date the Plan Solicitation Materials are transmitted to creditors, except

17  that each holder of a claim shall be entitled to vote all of the non-duplicative claims it holds, but may

18  only vote a single ballot as to all claims within a particular class.

19         5.      Any Ballot that is illegible or contains insufficient information to permit the

20  identification of the holder of the claim voted shall not be counted.

21         6.      Any Ballot cast by a person or entity that does not hold holds an Allowed Claim (as

22  defined in the Plan) shall not be counted. A Claim shall be deemed Allowed solely for purposes of

23  voting on the Plan if there is no objection filed with respect to such claim fourteen (14) days prior

24  to the Voting Deadline or the Claim is not otherwise scheduled as disputed, contingent, or

25  unliquidated. Debtor reserves the right to object to any claim deemed Allowed for purposes of

26  voting on the Plan pursuant to this Order.   Such objection will be heard by the Court at least

27  [DATE] days prior to the Voting Deadline.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

7.    Any Ballot that is properly completed, executed, and timely returned to the Debtor that does not indicate an acceptance or rejection of the Plan shall be counted as an acceptance of the Plan.

8.    Any Ballot that is properly completed, executed, and timely returned to the Debtor that indicates both acceptance and rejection of the Plan shall be counted as an acceptance of the Plan.

~~9. Any claimant entitled to vote that does not timely return a Ballot shall be deemed to have accepted the Plan and the Ballot shall be counted and treated as such for all purposes.~~

9.    ~~10.~~ Any objection or opposition to confirmation of the Plan must be submitted by the Objection Deadline. The failure to file and serve a timely objection to the Plan by the Objection Deadline may be deemed by the Court to be consent to confirmation of the requested relief. Whenever a holder in a voting class returns more than one Ballot voting the same claim by the Voting Deadline, only the last Ballot timely returned to the Debtor shall be counted.

10.    ~~11.~~ Each holder of a claim in a voting class shall be deemed to have voted the full amount of its claim.

11.    ~~12.~~ Holders of claims in a voting class shall not split their vote, but shall vote their entire claim within a particular class either to accept or reject the Plan, and a Ballot (or a Ballot or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan shall be counted as an acceptance of the Plan. For the avoidance of doubt, to the extent that any portion of any secured claim is ultimately undersecured, by agreement or other otherwise, such secured creditor may vote that portion of its unsecured claim separately.

12.    ~~13.~~ For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtor in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

13.    ~~14.~~ Neither the Debtor nor any other person or entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**HEARING ON CONFIRMATION OF THE PLAN AND RELATED DEADLINES**

The Court has approved the following schedule to consider confirmation of the Plan:

1.     The hearing on the confirmation of the Plan shall be held on October ~~—~~16, 2024, at ~~____:____0____.m.,~~10:00 a.m. before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge. The Confirmation Hearing may be continued by announcement in open court without further notice to creditors or parties in interest.

2.     ~~August 30, 2024,~~September 10, 2024, is the last date by which the Debtor must file and serve its motion to confirm the Plan, which shall include a memorandum of points and authorities and all evidence in support of confirmation of the Plan, including witness declarations on direct testimony and related exhibits (the "Plan Confirmation Motion"). The Plan Confirmation Motion need only be served on ECF-registered parties, parties who filed an objection to the Disclosure Statement, the United States Trustee, and parties who requested special notice.

3.     October ~~1~~11, 2024, is the last date by which the Debtor must file a Ballot summary, which shall include a tabulation of Ballots received.

4.     [October ~~—~~2, 2024] (the "Objection Deadline"), is the last date by which any party objecting to confirmation of the Plan must file and serve its objection and evidence in support thereof. Any objection to confirmation of the Plan must:

      a.     be in writing;

      b.     be accompanied by a memorandum of points and authorities;

      c.     set forth in detail the name and address of the party filing the objection, the grounds for the objection, and any evidentiary support for the objection in the nature of declarations submitted under penalty of perjury; and

      d.     be served on the Debtor, its counsel, and the United States Trustee.

5.     [October ~~—~~9, 2024] is the last date by which the Debtor must file any reply memorandum and supporting declarations and evidence in support of confirmation of the Plan.

6.     Any objection or opposition to confirmation of the Plan must be submitted by the Objection Deadline. The failure to file and serve ~~an~~a timely objection to the Plan by the Objection Deadline ~~shall~~may be deemed by the Court to be consent to ~~confirmation of~~ the ~~Plan~~Motion.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

7.      Unless otherwise ordered by the Court, in the event of a contested Plan Confirmation Hearing: (i) all declarants must appear, without need for subpoena, at the Confirmation Hearing to be available for cross-examination; and (ii) the testimony of any declarant who is not present for cross-examination at the Confirmation Hearing will be stricken from the record and will not be considered in determining contested matters at the Confirmation Hearing.

8.      Confirmation Hearing: (a) all declarants must appear, without need for subpoena, at the Confirmation Hearing to be available for cross-examination; and (b) the testimony of any declarant who is not present for cross-examination at the Confirmation Hearing will be stricken from the record and will not be considered in determining contested matters at the Confirmation Hearing.

Dated: September 4, 2024                          BRYAN CAVE LEIGHTON
PAISNER LLP


By:_____
         Sharon Z. Weiss
Attorneys for Debtor and Debtor-in-Possession

ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVONG DISCLOSURE STATEMENT AND OTHER RELEIF RELATED TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 11 PLAN



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:                                          Case No.: 2:24-bk-11057-DS

Oceanwide Plaza LLC,                 Hon. Deborah J. Saltzman

                    Debtor.            Chapter 11 Case

                                        **PLAN BALLOT**

                                        **[Use For Voting on *Debtor's Second Amended Liquidating Plan of Reorganization (Dated ~~July 10~~September 4 , 2024)* (the "Plan")]**

                                        Voting Deadline: ~~September 23,~~October 8, 2024

**CLASS [_] BALLOT FOR HOLDERS OF [VOTING CLASS]**

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY ~~SEPTEMBER 23~~OCTOBER 8, 2024, (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

You are receiving this Class [_] ballot (this "Class [_] Ballot" or "Ballot") because you are a Holder of a [Voting Class] (your "[Voting Class]") as of ~~July 10, 2024~~the date of this Order(the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

Your rights are described in the Second Amended Disclosure Statement ("Disclosure Statement"), which was included in the package (the "Solicitation Package") you are receiving with this Class [_] Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.cacb.uscourts.gov; or (b) at no charge from Stretto, Inc. (the "Solicitation Agent") by: (i) accessing the Debtor's restructuring website at https://cases.stretto.com/OceanwidePlaza/; (ii) writing to Oceanwide Plaza LLC Ballot Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602; (iii) emailing TeamOceanwidePlaza@stretto.com; or (iv) calling the Solicitation Agent at:

U.S. Toll Free:  888-808-1469

~~ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVONG DISCLOSURE STATEMENT AND OTHER RELEIF RELATED TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 11 PLAN~~

International:  949-358-6856

This Class [_] Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Class [_] Ballot in error, or if you believe you have received the wrong Ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your [Voting Class] has been placed in Class [_] under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a Ballot or Notice of Non-Voting Status, as applicable for each such Class.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**Oceanwide Plaza LLC Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**If you would like to coordinate hand delivery of your Ballot, please send an email to**
TeamOceanwidePlaza@stretto.com **and provide the anticipated date and time of your delivery.**

***OR***

**Via Balloting Portal.  Submit your Ballot via the Solicitation Agent's online portal, by visiting https://cases.stretto.com/OceanwidePlaza/ (the "Balloting Portal").  Click on the "File a Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Password:**_____

**The Solicitation Agent's Balloting Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each Password is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each Password you receive, as applicable.**

**Holders of Claims who cast a Ballot using the Balloting Portal should NOT also submit a paper Ballot.  In the event you submit a Ballot using the Balloting Portal and a paper Ballot, the last properly executed Ballot timely received shall control.**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**Item 1.**        **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of [Voting Class] in the following aggregate unpaid amount (insert amount in box below):

$\boxed{\$\rule{3cm}{0.4pt}}$

**Item 2.**        **Vote on Plan.**

The Holder of the [Voting Class] set forth in Item 1 votes to (please check only <u>one</u>)

| | |
|---|---|
| ☐  **ACCEPT** (vote FOR) the Plan | ☐  **REJECT** (vote AGAINST) the Plan |

**Item 3.**        **Certifications.**

By signing this Class [_] Ballot, the undersigned certifies to the Bankruptcy Court and the Debtor that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of the [Voting Class] being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the [Voting Class]  being voted;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)        the Entity has cast the same vote with respect to all [Voting Class]; and

(d)        no other Class [_] Ballots with respect to the amount of the [Voting Class] identified in Item 1 have been cast or, if any other Class [_] Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Class [_] Ballots are hereby revoked.

1

Name of Holder: _____

2
                                                    (Print or Type)

Signature: _____

3

Name of Signatory: _____

4
                                              (If other than the Holder)

5

Title: _____

6

Address: _____

7
              _____

8
              _____

Telephone

9

Number: _____

10

Email: _____

11

Date Completed: _____

12

13

14

15

16

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE ~~SEPTEMBER 23~~OCTOBER 8, 2024, AT 4:00 P.M., PREVAILING PACIFIC TIME, (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTOR.**

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

~~ORDER GRANTING DEBTOR'S MOTION FOR ORDER APPROVONG DISCLOSURE STATEMENT AND OTHER RELEIF RELATED TO CONFIRMATION OF DEBTOR'S PROPOSED CHAPTER 11 PLAN~~

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 9/4/2024 10:27:03 PM | |
|---|---|
| **Style name:** Firm | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 2027-07-10 Oceanwide Plaza Proposed Order re DS and Confirmation Schedule Motion.docx | |
| **Modified filename:** 2024-09-04 Oceanwide Plaza Proposed Order re Second DS and Confirmation Schedule Motion.docx | |
| **Changes:** | |
| Add | 78 |
| Delete | 80 |
| Move From | 4 |
| Move To | 4 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 2 |
| **Total Changes:** | 168 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Bryan Cave Leighton Paisner LLP, 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

A true and correct copy of the foregoing document(s) entitled: **NOTICE OF FILING (I) DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT, (II) DEBTOR'S SECOND AMENDED LIQUIDATING PLAN OF REORGANIZATION (DATED SEPTEMBER 4, 2024), AND (III) RELATED EXHIBITS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 4, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **PLEASE SEE ATTACHED LIST**

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 4, 2024 | Raul Morales | *[signature]* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Melody G Anderson
  manderson@kjfesq.com

- James W Bates on behalf of Creditor Kovach Enclosure Systems, LLC
  jbates@jbateslaw.com

- Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
  oblumenfeld@lakklawyers.com, ncondren@lakklawyers.com;smcfadden@lakklawyers.com

- Paul Brent on behalf of Interested Party Courtesy NEF
  snb300@aol.com

- Sara Chenetz on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
  schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com; jkulow@perkinscoie.com;
  chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Jacquelyn H Choi on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
  jacquelyn.choi@rimonlaw.com, docketingsupport@rimonlaw.com

- Leslie A Cohen on behalf of Interested Party Courtesy NEF
  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

- Gloria D Cordova on behalf of Creditor Carrara, Inc.
  gdc@gcordovalaw.com, NEF@gcordovalaw.com;ssg@gcordovalaw.com

- Sean C Coughlin on behalf of Creditor Commercial Scaffolding of California, Inc.
  scc@coughlin-law.com, lb@coughlin-law.com

- Matthew Dill on behalf of Interested Party Courtesy NEF
  mdill@counsel.lacounty.gov

- Luke N Eaton on behalf of Creditor CMF, Inc.
  lukeeaton@cozen.com, jacqueline.sims@troutman.com

- Amir Gamliel
  amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com

- Jon F Gauthier on behalf of Petitioning Creditor Standard Drywall, Inc.
  jgauthier@ftblaw.com, jrobinson@ftblaw.com;storres@ftblaw.com

- Richard Girgado on behalf of Interested Party Courtesy NEF
  rgirgado@counsel.lacounty.gov

- Richard H Golubow on behalf of Petitioning Creditor Woodbridge Glass Inc.
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

- Mark Isola on behalf of Creditor Fetzers' Inc.
  misola@brotherssmithlaw.com

- Gary E Klausner on behalf of Interested Party Courtesy NEF
  gek@lnbyg.com

- Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)
  Noreen.Madoyan@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

- Allison C. Murray on behalf of Creditor Schuff Steel Company, Inc.
  acmurray@swlaw.com, kcollins@swlaw.com

- Douglas M Neistat on behalf of Interested Party Douglas Neistat
  dneistat@gblawllp.com, mramos@gblawllp.com

- Rosemary Nunn on behalf of Petitioning Creditor Mitsubishi Electric US, Inc.
  rosemary.nunn@procopio.com

- Misty A Perry Isaacson on behalf of Interested Party Courtesy NEF
  misty@ppilawyers.com, ecf@ppilawyers.com;pagterandperryisaacson@jubileebk.net

- Matthew D Pham on behalf of Attorney Matthew D. Pham
  mpham@allenmatkins.com, mdiaz@allenmatkins.com

- Michael B Reynolds on behalf of Creditor Schuff Steel Company, Inc.
  mreynolds@swlaw.com, kcollins@swlaw.com

- Robert L. Rosvall on behalf of Interested Party Courtesy NEF
  rrosvall@ccllp.law, kvargas@ccllp.law

- Jeremy H Rothstein on behalf of Creditor ACCO Engineered Systems, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com;MBowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Bapko Metal, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com;MBowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Martin Bros./Marcowall, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; MBowes@gblawllp.com

- Leonard M Shulman on behalf of Interested Party Kpc Global Care Inc. A Cal Corp
  lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com

- Howard Steinberg
  steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov

- J Scott Williams on behalf of Interested Party Courtesy NEF
  jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

- Donna Wong on behalf of Interested Party City of Los Angeles
  donna.wong@lacity.org

- Richard Lee Wynne on behalf of Interested Party City of Los Angeles
  richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com;cindy.mitchell@hoganlovells.com;rick-wynne-7245@ecf.pacerpro.com

- Chelsea Zwart on behalf of Petitioning Creditor Star Hardware, Inc.
  czwart@cgdrlaw.com, service@cgdrlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                           **F 9013-3.1.PROOF.SERVICE**