**BRYAN CAVE LEIGHTON PAISNER LLP**
SHARON Z. WEISS (State Bar No. 169446)
sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

JARRET P. HITCHINGS (*Pro Hac Vice*)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah Saltzman |
| Debtor and Debtor-in-Possession. | Chapter 11 |
| | **DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF** |
| | **[HEARING TO BE SET]** |

Bryan Cave Leighton
Paisner LLP
Attorneys at Law

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

## I.      INTRODUCTION

Debtor Oceanwide Plaza LLC ("Oceanwide" or "Debtor"), has reached a global Settlement Agreement (together with the exhibits thereto, "Settlement Agreement") with L.A. Downtown Investment LP ("LADI"), KPC Plaza, LLC ("KPC"), Lendlease (US) Construction Inc. ("US Construction"), Lendlease (US) Construction Holdings Inc. ("Construction Holdings"), Chicago Title Insurance Company ("CTIC"), DTLA Funding, LLC ("DTLA Funding"), and DTLA Lending, LLC ("DTLA Lending"), (collectively, the "Settling Parties"). The Settlement Agreement, subject to this Court's approval, resolves a host of complex, multi-party disputes that have dominated this chapter 11 case and a related state court action, threatening to exhaust the estate's resources with no clear end in sight, except through this Settlement Agreement. [1]The Settlement Agreement provides a clear path forward by resolving disputed secured claims, ending the enormously expensive and protracted State Court Action, and establishing a consensual framework for both the sale of the Debtor's primary asset - the Oceanwide Plaza project (the "Project") - and a plan of liquidation. In the business judgment of the Debtor's Chief Restructuring Officer, the Settlement Agreement is a practical and necessary solution that is fair, equitable, and in the best interests of the estate and its creditors. The Debtor therefore respectfully requests that the Court approve the compromises contained in the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019(a) and 11 U.S.C. 105 ("Rule 9019"). A true and correct copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Bradley D. Sharp, filed herewith.

## II.      PERTINENT FACTUAL BACKGROUND

### A.      The Bankruptcy Case

On February 13, 2024 ("Petition Date"), an involuntary petition for relief under chapter 11 of the Bankruptcy Code was filed against the Debtor. The Debtor consented to an order for relief, which this Court entered on March 11, 2024. The Debtor remains in possession of its estate.

---

[1]      Unless otherwise defined herein, all capitalized terms used in this Motion shall have the meanings ascribed to them in the Settlement Agreement.

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

### B.    The Property and the State Court Action

The Debtor's primary asset is the Project, a partially completed mixed-use development in downtown Los Angeles. Prior to the bankruptcy, the Project was embroiled in a complex, multi-phase state court action (the "State Court Action") involving many of the Settling Parties. The State Court Action commenced in 2019. Three phases of trial were conducted over a multi-year period, in part after this Bankruptcy Case began, with a fourth phase originally scheduled to begin in the fall of 2025. The presiding judge in the State Court Action repeatedly continued the start of the Phase IV trial because the involved Parties indicated they were close to completing the Settlement Agreement. These efforts are now complete.

The disputes in the State Court Action center on the validity, priority, and amount of various claims against the Project, including a secured claim asserted by LADI, in the amount of not less than $180 million as of the Petition Date (the "LADI Bankruptcy Claim"), a claim by CTIC for attorneys' fees, costs, and expenses totaling approximately $31 million in attorneys' fees and costs as of November 14, 2025 (the "CTIC Claim"), and $168 million in mechanics' lien claims (the "Mechanic's Lien Claims") now held by US Construction and DTLA Funding. This litigation has been active for years, resulting in several statements of decision through three trial phases, thus far, and without the approval of the Settlement Agreement, another trial phase occurring (the "Phase IV Trial"), then entry of a judgment, and likely appeals. Sharp Declaration ¶ 6.

The pendency of the State Court Action and the resulting uncertainty due to the disputes regarding lien priority and amounts has detrimentally impacted the Debtor's ability to sell the Project, as indicated by potentially interested bidders. Sharp Declaration ¶ 5.

In addition, pre-petition, the Project was subject to highly publicized acts of vandalism and was covered in graffiti, requiring police protection at a high cost to the City of Los Angeles (and thereby now as a creditor of the estate) and, post-petition, to the estate.

Post-petition, the State Court Action continued to generate significant litigation in this Court. On May 15, 2024, the Court held a hearing on a contested motion for relief from the automatic stay filed by L.A. Downtown Investment LP. The motion was opposed by the Debtor and others. On May 29, 2024, the Court entered an order (Docket No. 241) granting relief from the

Bryan Cave Leighton
Paisner LLP
Attorneys at Law

2
DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

automatic stay under 11 U.S.C. § 362(d)(1). The order terminated the automatic stay as to the Debtor and the Debtor's bankruptcy estate to permit all parties in the State Court Action, including Chicago Title Insurance Company, to proceed to final judgment (including any appeals) in accordance with applicable non-bankruptcy law. Critically, however, the order expressly provided that the automatic stay was not terminated as to any party to enforce any judgment entered in the State Court Action or to collect on any claim against the Debtor. Thus, while the State Court Action could proceed to judgment to liquidate and prioritize claims, no party may enforce that judgment against the estate without further relief from this Court. Pursuant to that order, the Debtor has already executed the Settlement Agreement to the extent it provides for the liquidation and priority of claims in the State Court Action; however, other terms of the Settlement Agreement remain subject to this Court's approval. This Settlement Agreement will also permit the bankruptcy estate to more easily proceed to a sale and plan confirmation.

As discussed in the Sharp Declaration, negotiations of the Settlement Agreement began in the spring of 2025, if not earlier. The Settling Parties engaged in several mediation sessions with the Honorable Randall Newsome (Ret.), including a fourth session in April 2025, and were ordered by the Superior Court to attend at least two settlement conferences with Superior Court Judge Timothy Dillon. These formal proceedings supplemented numerous attempts by the Settling Parties to resolve the disputed issues without the assistance of a neutral. Certain primary terms of the Settlement Agreement were agreed upon shortly after the April 2025 mediation session; however, notwithstanding these extensive efforts, it took many additional months for all Settling Parties, with their divergent interests and priorities, to finalize the Settlement Agreement, including its exhibits and all attendant details. It is only because completion of the Settlement Agreement was confidently at hand that the Debtor was in a position to request that this Court reset the hearing on plan confirmation and related proceedings. See Docket Nos. 777 and 779.

## III.    KEY TERMS OF THE SETTLEMENT AGREEMENT

The following is a summary of the material terms of the Settlement Agreement. The precise language of the Settlement Agreement controls.

The Settlement Agreement (including its exhibits) constitutes a global resolution with

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

3

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

1
2
3
4
5
6

intertwined terms best viewed as a single, comprehensive package. The resolution of the amount and priority of the allowed LADI Bankruptcy Claim and Mechanic's Lien Claims in appropriate amounts and priorities, vetted, negotiated, and ultimately agreed by the Debtor, and the Debtor's ability to move forward with a value-maximizing sale and plan, without contention among its largest creditors and claimholders, long at odds and at great costs to the estate and others, are the cornerstones of the Settlement Agreement.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Among other things, the Settlement Agreement: (i) resolves the State Court Action in its entirety; (ii) establishes the amount and seniority of the LADI Secured Claim at $230,000,000 as of October 31, 2025, plus a per diem of $60,000 (or $40,000 in the event of a Qualifying All Cash Asset Sale) and accruing Reimbursable Costs, (iii) each of the Mechanic's Lien Claims at a total of $168,950,128.56 (with $71,349,256 held by US Construction and $97,600,872.56 held by DTLA Funding); (iv) provides for a settlement payment of $20,000,000.00 by US Construction to CTIC to resolve disputes among them (which at the time of filing is either held by the Escrow Agent or may have been delivered by the Escrow Agent to CITC),  (v) creates the basis for CTIC to: (1) withdraw its filed proof of claim against the estate, and (2) waive any right to assert a claim against the estate, and (3) resolve its contention that CTIC has an independent secured claim against the Property, all for the betterment of all of the Debtor's creditors; (vi) sets forth an agreed-upon adjustment to the LADI Bankruptcy Claim and US Construction Secured Claim (each to be adjusted by $20,000,000) in the event of a Qualifying All Cash Asset Sale; and (v) provides a framework for a consensual chapter 11 plan and sale, and a distribution waterfall for the proceeds from  a sale. While not expressly stated in the Settlement Agreement, it also provides a consensual path for additional DIP financing to provide a smooth transition through a sale, subject to the usual resolution of the specifics of a go forward budget.

24
25
26
27
28

As a component of the settlement process, US Construction and CTIC entered into an Escrow Agreement (Exhibit B to the Settlement Agreement), and as noted above, US Construction deposited the $20 million Settlement Payment with the Escrow Agent, which has since been released to CTIC. The Agreed Judgment has been submitted to the Superior Court of California, County of Los Angeles. The Approval Order shall become final on the fifteenth (15th) consecutive

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

4

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

1  calendar day immediately following the date of entry without the filing of a notice of appeal, a

2  motion to extend the time to file a notice of appeal, or an order staying enforcement (the "Approval

3  Date").

4  **IV.    LEGAL ARGUMENT**

5       The Settlement Agreement is in the best interest of creditors and the estate for purposes of

6  Rule 9019.  Under Rule 9019 of the Federal Rules of Bankruptcy Procedure, the court may approve

7  a compromise or settlement if it is in the best interest of the estate and is "fair and equitable" for

8  creditors. The approval of a settlement turns on whether the compromise is in the best interest of

9  the estate.

10      In the Ninth Circuit, courts evaluate four factors to determine the fairness, reasonableness,

11  and adequacy of a settlement: (a) the probability of success in the litigation; (b) the difficulties, if

12  any, to be encountered in collection; (c) the complexity of the litigation involved, and the expense,

13  inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors

14  and a proper deference to their reasonable views. *In re A & C Properties*, 784 F.2d 1377, 1380-81

15  (9th Cir. 1986). Here, each factor weighs heavily in favor of approving the Settlement Agreement.

16      **A.    Probability of Success in the Litigation.**

17      This factor strongly favors approval. Although the Debtor is not a primary combatant in the

18  State Court Action at this stage, its role as the owner of the Project requires its active and costly

19  participation. While all parties believe in their respective positions, the outcome of the State Court

20  Action is highly uncertain. The litigation has already been hard-fought through multiple trial

21  phases, and a final, costly damages phase and lengthy, expensive appeals process are virtually

22  guaranteed, regardless of the outcome if the Settlement Agreement is not approved. These

23  protracted and costly battles carry the substantial risk of an adverse judgment that could encumber

24  the Property with secured debt well beyond the amounts to be allowed as a part of approval of the

25  Settlement Agreement, diluting the value of the Project and resulting in a worse outcome for the

26  estate and creditors. The Settlement Agreement eliminates this considerable litigation risk and

27  provides a certain, beneficial and fair resolution. The Debtor estimates that the professional fees

28  incurred by the Debtor specifically as a result of the pendency of the State Court Action is not less

5

than $725,000. The allowed and paid fees of special construction counsel alone is approximately $550,000 and approximately $100,000 has accrued since special construction counsel filed its last interim fee application. Debtor's general bankruptcy counsel estimates that it fees and expenses attributable to the State Court Action total at least $75,000 but does not include general bankruptcy counsel fees for work that indirectly related to or was necessitated by the State Court Action or any of its fees incurred after July 15, 2025 (at the end of the second interim period). The actual total impact on the estate is likely higher when considering indirect costs and the ongoing nature of the litigation through the settlement negotiations.

Ending this Debtor's professional fee burn is success alone. Still, that is not where the litigation risk and costs end. LADI and KPC (the current holder of the LADI Loan Documents) both argued that the LADI Bankruptcy Claim should be allowed in a greater amount than is proposed here. Accruing reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs are part of the LADI Bankruptcy Claim and continue to accrue interest at the rate of 10% simple per annum from and after the date paid. Ending the litigation greatly limits the growth in the amount of the LADI Bankruptcy Claim, the most senior claim under the Settlement Agreement, other than secured tax claims and DIP Loan Claims.

Moreover, approval of the Settlement Agreement is the best way to maximize the value of the Debtor's Property and other assets. It paves the way for a long stalled sale.

**B.      Difficulties in Collection.**

This factor strongly favors settlement. The primary source of recovery for all creditors is through the sale of the Project. Absent this Settlement Agreement, the estate faces grave difficulties in liquidating its assets. The continued litigation would continue to stall sale process, and the Debtor might face a risk of foreclosure by its secured creditors or potentially other aggressive actions by stakeholders, including the City of Los Angeles. The Settlement Agreement avoids these difficulties by establishing a consensual framework for a controlled, agreed value-maximizing sale of the Project and a clear distribution of proceeds, without creditors fighting amongst themselves and the Debtor about how sale proceeds should be used and the amount and priority of the claims that need to be satisfied.

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

6

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

### C.     Complexity, Expense, Inconvenience, and Delay of the Litigation.

This factor weighs decisively in favor of approval. The State Court Action is exceptionally complex, involving novel legal issues and a voluminous factual record developed over years of discovery, motion practice, and multiple trial phases, with yet another trial phase to occur but for approval of the Settlement Agreement. Continued litigation through trial and appeals would be enormously expensive and time-consuming, with legal fees projected to cost the estate millions more. These costs directly deplete the funds available for distribution to all creditors and would likely be compounded by accruing interest and potential liability for adverse parties' legal fees, all while the opportunity to sell the Property diminishes and its value declines. The Settlement Agreement puts an immediate stop to this value-destructive litigation, preserving estate assets and allowing the Debtor to pivot from endless legal battles to the productive work of selling the Project and confirming a plan.

### D.     The Paramount Interest of Creditors.

This factor strongly favors settlement. The paramount interest of all creditors is maximizing their recovery from the estate, and continued litigation places any potential recovery in serious jeopardy. The Settlement Agreement directly serves this interest by halting the costly disputes, providing certainty regarding major secured claims, and creating a consensual and efficient path for the sale of the Project and confirmation of a plan.

Furthermore, the Settlement Agreement serves a significant public interest. The partially-completed Project is a high-profile civic issue for the City of Los Angeles, creating blight and public safety concerns. A prompt sale and eventual completion of the Project is a major priority for the City and the public at large, particularly with the upcoming 2028 Olympic Games in Los Angeles. The City fully supports the approval of the Settlement Agreement. Similarly, it is the sale of the Property that will lead to the permanent removal of graffiti at the "Graffiti Tower" and the permanent elimination of safety concerns at the Property. This settlement is a critical step toward achieving these important public goals.

## V.     CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

7

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

substantially in the form attached to this 9019 Motion as Exhibit 2: (1) granting the Motion; (2) approving the Settlement Agreement; (3) authorizing the Debtor to perform its obligations under the Settlement Agreement, implement the terms of the Settlement Agreement, and execute any documents necessary to consummate its terms; (4) providing that the Settlement Agreement is enforceable against all parties-in-interest in the Bankruptcy Case, including Oceanwide and all the other Parties (as defined in the Settlement Agreement); (5) authorizing the Parties to enforce the terms of the Settlement Agreement; (6) authorizing any Party to submit for entry by the Superior Court of California, County of Los Angeles, the Agreed Judgment, such that, upon entry, the Agreed Judgment shall have full effect and enforceability against the Debtor and its estate, including all affected property thereof; and (7) granting such other and further relief as the Court deems just and proper.

Dated: January 28, 2026

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Sharon Z. Weiss*
      Sharon Z. Weiss
Attorneys for Debtor and Debtor-in-Possession

## DECLARATION OF BRADLEY D. SHARP

1.　　I am the Chief Restructuring Officer ("CRO") for Debtor and Debtor-in-Possession Oceanwide Plaza LLC ("Oceanwide" or the "Debtor") in the above-captioned chapter 11 case. I was appointed by order of this Court on June 28, 2024. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2.　　I submit this declaration in support of the Debtor's *Motion for Approval of Settlement Agreement and Related Relief Pursuant to Federal Rule of Bankruptcy Procedure 9019 et al.* (the "9019 Motion"). Since my appointment, I have become thoroughly familiar with the Debtor's business, the history of this case, and the complex state court litigation involving the Settling Parties. I, along with the Debtor's advisors, engaged in extensive, arm's-length, and hard-fought negotiations with all the Settling Parties to reach the global resolution embodied in the Settlement Agreement. These negotiations were conducted with all parties represented by counsel and reflect a carefully balanced compromise of numerous disputed issues.

3.　　Based on my detailed review of the litigation, the Project's circumstances, and my direct involvement in the negotiations, I have concluded in my business judgment that the Settlement Agreement is fair, reasonable, and in the best interests of the Debtor's estate and its creditors. The Settlement Agreement's terms and related exhibits are intertwined to create a global package; its value comes from the comprehensive resolution of the amount and priority of key claims, which allows the Debtor to move forward with a sale and plan. In reaching my judgment, I considered the four factors for approving a settlement under Rule 9019, as set forth below.

4.　　<u>Probability of Success.</u> The outcome of the State Court Action is highly uncertain. While I believe the Debtor has meritorious positions, a negative outcome is a significant risk that could severely harm the estate. Although the Debtor is not a primary combatant, its position as owner of the Project requires its active and costly participation. The litigation has already been hard-fought through multiple trial phases, and a final, costly damages phase and lengthy, expensive appeals process are virtually guaranteed, regardless of the outcome, if the Settlement Agreement is not approved. These protracted and costly battles carry the substantial risk of an adverse judgment that could encumber the Property with secured debt well beyond the amounts to be allowed as part

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

1

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

of approval of the Settlement Agreement, subordinating and diluting the claims of other creditors and the value of the Project itself, resulting in a worse outcome for the estate and creditors. The Settlement Agreement eliminates this considerable litigation risk and provides a certain, beneficial, and fair resolution. Moreover, LADI and KPC (the current holder of the LADI Loan Documents) both argued that the LADI Bankruptcy Claim should be allowed in a greater amount than is proposed here. Accruing reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs are part of the LADI Bankruptcy Claim and continue to accrue interest at the rate of 10% simple per annum from and after the date paid. Ending the litigation greatly limits the growth in the amount of the LADI Bankruptcy Claim, the most senior claim under the Settlement Agreement, other than secured tax claims and DIP Loan Claims. Approval of the Settlement Agreement is the best way to maximize the value of the Debtor's Property and other assets and paves the way for a long-stalled sale.

5.      Difficulties in Collection. The Project is the estate's only significant asset. Without this Settlement Agreement, ongoing litigation would impede any sale efforts, and the estate would face a substantial risk of foreclosure or other aggressive action by its secured creditors or potentially other stakeholders, including the City of Los Angeles. The Settlement Agreement avoids these difficulties by establishing a consensual framework for a controlled, value-maximizing sale of the Project and a clear distribution of proceeds, without creditors fighting amongst themselves and the Debtor about how sale proceeds should be used and the amount and priority of the claims that need to be satisfied.

6.      Complexity, Expense, and Delay. The State Court Action is exceptionally complex, involving novel legal issues and a voluminous factual record developed over years of discovery, motion practice, and multiple trial phases, with yet another trial phase to occur but for approval of the Settlement Agreement. The Debtor estimates that the professional fees incurred by the Debtor specifically as a result of the pendency of the State Court Action is not less than $725,000. The allowed and paid fees of special construction counsel alone is approximately $550,000 and approximately $100,000 has accrued since special construction counsel filed its last interim fee application. Debtor's general bankruptcy counsel estimates that it fees and expenses attributable to

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

2

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

1   the State Court Action total at least $75,000 but does not include general bankruptcy counsel fees

2   for work that indirectly related to or was necessitated by the State Court Action or any of its fees

3   incurred after July 15, 2025 (at the end of the second interim period). The actual total impact on

4   the estate is likely higher when considering indirect costs and the ongoing nature of the litigation

5   through the settlement negotiations and the litigation's impact on the administration of this estate,

6   including the sale of the Project. Continued litigation through trial and appeals would be

7   enormously expensive and time-consuming, with legal fees projected to cost the estate millions

8   more. These costs directly deplete the funds available for distribution to all creditors and would

9   likely be compounded by accruing interest and potential liability for adverse parties' legal fees, all

10  while the opportunity to sell the Property diminishes and its value declines. The Settlement

11  Agreement puts an immediate stop to this value-destructive litigation, preserving estate assets and

12  allowing the Debtor to pivot from endless legal battles to the productive work of selling the Project

13  and confirming a plan.

14         7.      <u>The Paramount Interest of Creditors</u>. The paramount interest of all creditors is

15  maximizing their recovery from the estate, and continued litigation places any potential recovery

16  in serious jeopardy. The Settlement Agreement directly serves this interest by halting the costly

17  disputes, providing certainty regarding major secured claims, and creating a consensual and

18  efficient path for the sale of the Project and confirmation of a plan. Further, the Settlement

19  Agreement serves a significant public interest. The partially-completed Project is a high-profile

20  civic issue for the City of Los Angeles, creating blight and public safety concerns. A prompt sale

21  and eventual completion of the Project is a major priority for the City and the public at large,

22  particularly with the upcoming 2028 Olympic Games in Los Angeles. This path is the most viable

23  option to maximize value and create a possibility for some recovery for unsecured creditors, which

24  would otherwise be virtually impossible.

25         8.      I have been informed that the Escrow Agent has released the Settlement Payment to

26  CTIC and that the Agreed Judgment has been submitted to the Superior Court of California, County

27  of Los Angeles.

28

BRYAN CAVE LEIGHTON
PAISNER LLP
ATTORNEYS AT LAW

3

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

1

2          9.      Attached hereto as Exhibit 1 is a true and correct copy of the executed Settlement

3   Agreement.

4          I declare under penalty of perjury under the laws of the United States of America that the

5   foregoing is true and correct.

6          Executed on the <u>28</u>of January 2026, in Los Angeles, California.

7

8

9                                                _____
                                                  Bradley D. Sharp
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryan Cave Leighton
Paisner LLP
Attorneys at Law

4

DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT
AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.

# EXHIBIT 1

## SETTLEMENT AGREEMENT, RELEASE & COVENANT NOT TO SUE

This **SETTLEMENT AGREEMENT, RELEASE & COVENANT NOT TO SUE** (the "*Agreement*"), dated January 28, 2026 (the "*Execution Date*") is entered into by and among:

> **LENDLEASE (US) CONSTRUCTION INC. ("*US Construction*"),** formerly known as Lend Lease (US) Construction, Inc., a Florida corporation, and **LENDLEASE (US) CONSTRUCTION HOLDINGS INC.,** a New York corporation formerly known as Lend Lease (US) Construction Holdings Inc. (**"*Construction Holdings*"** and, together with US Construction, collectively "*Lendlease*");

> **CHICAGO TITLE INSURANCE COMPANY,** a Florida corporation ("*CTIC*" or "*Chicago Title*");

> **L.A. DOWNTOWN INVESTMENT LP**, a California limited partnership ("*LADI*");

> **KPC PLAZA LLC**, a California limited liability company ("KPC");

> **OCEANWIDE PLAZA LLC,** a Delaware limited liability company formerly known as Tohigh Construction Investment, LLC, including as debtor and debtor-in-possession, and for the bankruptcy estate titled In re Oceanwide Plaza LLC, case number 2:24-bk-11057-DS (the "*Bankruptcy Case*"), pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division (the "*Bankruptcy Court*"), (hereinafter collectively referred to as "*Oceanwide*");

> **DTLA FUNDING, LLC,** a California limited liability company **("DTLA Funding"),** which as of the Execution Date is the assignee and holder of certain of the Mechanic's Lien Claims (defined below); and

> *DTLA LENDING, LLC*, a California limited liability company ("*DTLA Lending*") is the debtor-in-possession (DIP) lender of a loan made to Oceanwide in the Bankruptcy Case on terms and amounts approved by the Bankruptcy Court in the Bankruptcy Case (the "*DIP Loan*").

### I.    CERTAIN DEFINITIONS.

The "*Project*" means the construction project on the Property (defined below) known as Oceanwide Plaza.

The "*Property*" means the real property described in **Exhibit A** attached hereto and improvements thereon located at 1101 S. Flower Street, Los Angeles, California, 90015.

"*Parties*" shall mean Lendlease, DTLA Funding, DTLA Lending, CTIC, LADI, KPC, and Oceanwide; individually, and each of the Parties may be referred to as a "*Party*."

"*Chicago Title Entities*" means, collectively, CTIC and Chicago Title Company, a California corporation.

"*Lendlease Parties*" shall mean Lendlease, DTLA Funding, and DTLA Lending, collectively.

"*Effective Date*" shall mean the date on which the Agreed Judgment (defined below) is entered by the Superior Court (defined below) in the State Court Action (defined below).

### II.    RECITALS.

A.    Disputes existed amongst a number of the Parties and others regarding the Project, resulting in the filing of a lawsuit pending in the Superior Court of the State of California, County of Los Angeles (the "*Superior Court*"), captioned *Webcor Construction, LP ("Webcor") v. Lendlease (US) Construction, Inc. et al.*, Case No. 19STCV03357 ("*Lead Case*") and numerous additional lawsuits all related to or consolidated with the Lead Case (collectively hereafter referred to as the "*State Court Action*"). For clarity, the Chicago Title Oceanwide Action (defined below) is not a part of or included in the State Court Action.

B.      Webcor assigned to US Construction its mechanic's lien, and all rights and remedies related thereto, including its claims for foreclosure of mechanic's lien, declaratory relief, and quantum meruit pled in the State Court Action, as more fully set forth in an Assignment of Claims between Webcor and US Construction, dated October 12, 2023.  As of the Effective Date, US Construction is, shall be, and remain, the holder of Webcor's mechanic's lien and the claims assigned by Webcor to US Construction.

C.      In the State Court Action: (i) US Construction asserted claims against Oceanwide, LADI, Chicago Title, and other persons and/or entities (the "***Lendlease State Court Claims***"); (ii) LADI asserted claims against Lendlease (the "***LADI State Court Claims***"); and (iii) Chicago Title asserted claims against Lendlease (the "***Chicago Title State Court Claims***") (the Lendlease State Court Claims, the LADI State Court Claims, and the Chicago Title State Court Claims are collectively referred to as the "***State Court Claims***").

D.      LADI is the original beneficiary under the Deed of Trust, Fixture Filing, Assignment of Rents and Leases, and Security Agreement dated May 28, 2015, executed by Oceanwide, as trustor, in favor of CTIC, as Trustee, and LADI, as beneficiary (the "***DOT***"), which was recorded against title to the Property on July 20, 2015, as Instrument No. 20150874467, in the Official Records of the Recorder's Office for the County of Los Angeles, State of California. On the terms set forth in the DOT, the DOT secures a loan made by LADI to Oceanwide evidenced, inter alia, by a promissory note given by Oceanwide to LADI (the "***Note***") having an original principal face amount of $325,000,000.00 made by LADI to Oceanwide, and all other indebtedness and obligations of Oceanwide set forth in the Note and the DOT (the "***LADI Loan***").  The DOT, the Note, and all other documents executed by Oceanwide or any accommodation party or parties and delivered to LADI at LADI's request in connection with the LADI Loan are referred to collectively as the "***LADI Loan Documents***." The amount secured by the DOT is equal to the LADI Bankruptcy Claim (defined below) and is referred to herein as the "***LADI Secured Claim***."

E.      LADI has assigned to KPC, and KPC has assumed, LADI's entire right, title, and interest in and to the LADI Loan and in and to the LADI Loan Documents pursuant to, among other documents, that certain Assignment of Deed of Trust recorded on November 3, 2025, as Instrument No. 20250761978 in the Official Records of the Recorder's Office for the County of Los Angeles, State of California (the "***LADI Loan Assignment***"). Pursuant to the LADI Loan Assignment and Allonge to Promissory Note dated January 7, 2025, KPC is the present beneficiary under the DOT and the present holder of the LADI Loan, including the Note, DOT, and other LADI Loan Documents. (Hereinafter, the holder of LADI Loan, including the Note, DOT, and other LADI Loan Documents, is referred to as the "***Holder***.")

F.      On the terms set forth in the DOT, "***Reimbursable Costs***" (as such term is defined in the DOT and as used herein) include but are not limited to all attorneys' fees, costs, and expenses paid and/or incurred by the holder(s) of the LADI Loan Documents, and CTIC as the defined "Trustee" under the DOT, which Reimbursable Costs constitute additional indebtedness of Oceanwide owing to Holder, and are secured by the DOT.

G.      Prior to CTIC's issuance of a loan policy of title insurance to LADI (being the LADI Policy as defined below) with respect to the DOT, Lendlease provided a Contractor's Indemnity Agreement dated July 8, 2015, to the Chicago Title Entities (the "**Contractor's Indemnity Agreement**").

H.      CTIC issued a Loan Policy of Title Insurance, dated July 20, 2015, Policy No. CA-FBSC-IMP-72307-1-15-00037416 to L.A. Downtown Investment LP (the "***LADI Policy***").  KPC acquired the LADI Loan and LADI Loan Documents from LADI and ownership of the indebtedness secured by the DOT pursuant to the LADI Loan Assignment and an Allonge to Promissory Note dated January 7, 2025.  While it retains ownership of the Indebtedness (as defined in the LADI Policy) secured by the DOT insured by the LADI Policy, KPC is the successor insured lender under the LADI Policy.

**I.**      CTIC issued an Owner's Policy of Title Insurance dated December 26, 2013, Policy No. CA-FBSC-IMP-72306-1-13-00015571, to Tohigh Construction Investment, LLC, a Delaware limited liability company, which is now known as Oceanwide Plaza LLC (the "***Oceanwide Policy***").

**J.**      On or about June 29, 2015, Oceanwide and Oceanwide Real Estate Group (USA) Corp. (***"Oceanwide Real Estate Group"***) provided a Developer Indemnity Agreement dated June 29, 2015, to the Chicago Title Entities (the ***"Developer Indemnity Agreement"***).

**K.**      CTIC brought the Chicago Title State Court Claims against Lendlease alleging, among other things, that Lendlease (and each of them) breached their obligations to CTIC under the Contractor's Indemnity Agreement, that CTIC incurred damages as a result of those breaches, and that Lendlease has its own obligation independent of the DOT to pay such damages to CTIC. CTIC asserts that, as of November 14, 2025, the liability of Lendlease for its breach of the Contractor's Indemnity Agreement is $22,319,110.21 including accrued interest. The Chicago Title State Court Claims, including the foregoing, establish CTIC as a creditor of each and both of the Parties comprising Lendlease.

**L.**      On or about October 31, 2023, the Chicago Title Entities filed a complaint against Oceanwide and Oceanwide Real Estate Group in the Superior Court of the State of California, for the County of Los Angeles, Case No. 23STCV26765, in which the Chicago Title Entities sought, among other things, to enforce the terms of the Developer Indemnity Agreement  (the "***Chicago Title Oceanwide Action***"), with the claims asserted therein defined herein as the "***Chicago Title Oceanwide Claims***." The Chicago Title Oceanwide Action is an independent action, is not included in the definition of State Court Action, is not impacted or otherwise affected in any manner by this Agreement, including but not limited to the releases contained herein, or any judgment rendered in the State Court Action, is continuing, and is not being dismissed; further, the Chicago Title Oceanwide Claims are not included in the definition of State Court Claims and they remain in place and available as against Oceanwide Real Estate Group.

**M.**      The Superior Court issued numerous orders and decisions in the State Court Action determining, among other things, the validity, enforceability, amount, and priority of the DOT and the various mechanic's liens at issue related to the Project, including: (i) an Order Granting LADI's Cross-Motion for Summary Adjudication and Denying Lendlease and Webcor's Cross-Motion for Summary Adjudication Regarding Lien Priority, dated March 22, 2023 (the "***Lien Priority Order***"); (ii) a Statement of Decision Regarding Lendlease's Claim against Oceanwide for Violation of the Prompt Payment Statutes Following Phase One Trial, dated November 30, 2023 (the "***Phase 1A Statement of Decision***"); (iii) a Statement of Decision Documenting Undisputed or Settled Matters in the Phase 1 Trial, dated December 19, 2023 (the "***Phase 1B Statement of Decision***"); (iv) a Statement of Decision Regarding Trial on Webcor's Mechanic's Lien and Failure to Serve L.A. Downtown Investment LP with Preliminary Notice, dated July 3, 2024 (the "***Phase 3 Statement of Decision***"); and (v) a Statement of Decision for the Phase 2 Trial, dated February 25, 2025 (the "***Phase 2 Statement of Decision***").

**N.**      A fourth phase of trial in the State Court Action on damages owed by Lendlease to CTIC was set for trial on November 19, 2025 (the "***Phase 4 Trial***"), but the Phase 4 Trial was vacated due the Parties agreement to settle the State Court Action.

**O.**      On February 13, 2024, an involuntary petition was filed, commencing a Chapter 11 involuntary bankruptcy case against Oceanwide in the Bankruptcy Court as the Bankruptcy Case. Oceanwide consented to entry of an order for relief on March 8, 2024, and an order for relief was entered by the Bankruptcy Court on March 11, 2024.

**P.**      Oceanwide disputes, among other things, that the CTIC attorneys' fees, costs, and expenses to defend its own interests in the State Court Action, incurred by CTIC, as well as interest thereon, after it was substituted as trustee under the DOT, may be included as part of LADI's Secured Claim.

**Q.**     LADI filed a proof of claim, Stretto claim number 85, in the Bankruptcy Case ("**LADI Proof of Claim**") asserting a secured claim in the amount of not less than $180,424,262 as of date of the commencement of the Bankruptcy Case, and which amount aggregates to and equals $230,000,000 in total indebtedness as of October 31, 2025, and which accrues interest and continues to increase by an interest per diem thereafter of $60,000 as well as by the amount of all attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of (a) LADI on November 1 and 2, 2025, and (b) KPC (and any subsequent Holder) from and after November 3, 2025, including the CTIC Claim (defined below) (the "**LADI Bankruptcy Claim**"). Notwithstanding the foregoing, CTIC is not making or joining any representations as to the amount of the LADI Bankruptcy Claim or LADI Secured Claim.

**R.**     Without prejudice to the rights, duties, and obligations of CTIC and LADI and/or any Insured as defined in the LADI Policy (the "**Insured**"), the Parties agree that in connection with a Qualifying All Cash Asset Sale (defined below) (1) CTIC is entitled to remittance by the Insured of Reimbursable Costs incurred by any Holder after October 31, 2025, and paid by CTIC (the "**CTIC Reimbursement Right**"), and (2) the CTIC Reimbursement Right is the only right to cash proceeds from a Qualifying All Cash Asset Sale of the Property arising after the Approval Date (defined below) and while the Property remains an asset of the Oceanwide estate in the Bankruptcy Case in Chapter 11. CTIC asserts that its subrogation rights in relation to the LADI Policy, the DOT, under the law and in equity are not limited to the CTIC Reimbursement Right with respect to attorneys' fees, costs, and expenses incurred in connection with the State Court Action and the Bankruptcy Case and that the CTIC Claim is enforceable and collectable as part of the LADI Secured Claim, and CTIC reserves its rights related thereto (subject to the terms of this Agreement pursuant to which CTIC compromises such rights upon the conditions and subject to the limitations described herein). The CTIC Reimbursement Right does not provide CTIC or any successor with any interest in the Property, the Project, the LADI Loan, the LADI Loan Documents (including the Note and DOT), the LADI Secured Claim, the LADI Bankruptcy Claim, or any other right or asset of LADI or its successors, including KPC; it merely provides an unsecured right to receive payment from the Insured/Holder solely in the event of a Qualifying All Cash Asset Sale; provided, however, outside of the Bankruptcy Case, CTIC reserves all subrogation rights under the LADI Policy that survive this Agreement.  For the avoidance of doubt, the CTIC Reimbursement Right is a contractual obligation of the Insured/Holder only, shall not be an obligation of Oceanwide or its bankruptcy estate, and shall not be treated as a separate allowed claim against the Oceanwide bankruptcy estate.

**S.**     On or around August 20, 2025, the Superior Court in the State Court Action entered an order determining that (1) $23,883,778.34 in attorneys' fees, costs, expenses, and interest through May 31, 2025, are secured by the DOT, (2) $23,235,226.43 of that amount was paid by CTIC or constitutes interest then due on amounts paid by CTIC, (3) all these attorneys' fees, costs, and expenses were necessary and reasonable, and (4) the determination of the amount of fees, costs, expenses, and interest was without prejudice to the accrual of post-May 31, 2025, attorneys' fees, costs, expenses, and interest ("**State Court Fee Award**"). As set forth in the State Court Fee Award, the Superior Court deferred ruling (until the Phase 4 Trial) on the amount, if any, of attorneys' fees, costs, and expenses incurred by CTIC for its own participation in the State Court Action that are secured by the DOT. CTIC asserts that, as of November 14, 2025, the attorneys' fees, costs, and expenses paid by CTIC in connection with the State Court Action total $26,206,157.19, on which $5,379,082.52 in interest has accrued, for a total of $31,585,239.71 in attorneys' fees, costs, expenses, and interest secured by the DOT as Reimbursable Costs incurred on behalf of LADI and CTIC (the "**CTIC Claim**").

**T.**     CTIC filed an amended proof of claim, Stretto claim number 98, in the Bankruptcy Case asserting, among other things, an unsecured claim in the amount of $15,292,655.87, as of the date of the commencement of the Bankruptcy Case (as may be further amended, the "**CTIC Bankruptcy Claim**").

**U.**     US Construction filed three secured proofs of claim, Stretto claim numbers 57, 58 and 65, in the Bankruptcy Case in the aggregate amount of $171,555,704.08; however, as determined in the State Court Action, the aggregate amount of all secured Mechanic's Lien Claims (defined below) is $168,950,128.56 as set forth in the ML Exhibit (defined below).  The total amount of the Mechanics' Lien Claims held by US Construction is

$71,349,256 (collectively, the "**US Construction Secured Claim**"), and the total amount of the Mechanic's Lien Claims held by DTLA Funding is $97,600,872.56 ("**DTLA Funding Secured Claim**"). US Construction filed three unsecured proofs of claim, Stretto claim numbers 66, 67 and 68 (collectively, the "**US Construction Unsecured Claim**")

**V.**    Oceanwide has and continues to seek to sell substantially all its assets (collectively the "**Assets**") as a part of the Bankruptcy Case.  For the most part, the Assets are comprised of the Property and all improvements thereto; however, the Assets also include all personal property owned by Oceanwide, wherever located.

**W.**    As more particularly set forth below and in the Bankruptcy Stipulation (defined below), the Parties desire under certain specific circumstances to provide for adjustments to the LADI Bankruptcy Claim (but not the LADI Secured Claim) and the US Construction Secured Claim, respectively, which will become operative only in the event that the following sale of the Assets occurs in the Bankruptcy Case: (i) a sale of the Assets to a purchaser paying all cash for such Assets in an amount that provides payment in full of LADI Secured Claim and is approved by the Bankruptcy Court in the Bankruptcy Case, (ii) such sale is consummated, and (iii) the holder of the LADI Secured Claim receives a distribution of cash through the Bankruptcy Case sufficient to pay the LADI Bankruptcy Claim in full, including the full amount of the CTIC Claim, including the CTIC Reimbursement Right, but adjusted by the Bankruptcy Stipulation (defined below) if applicable (a "**Qualifying All Cash Asset Sale**").

**X.**    The Parties desire to avoid the expense, inconvenience, and distraction of the Phase 4 Trial in the State Court Action, potential appeals from the various State Court Action orders, to resolve the State Court Action, and to facilitate further proceedings in the Bankruptcy Case and, by this Agreement, intend to adopt by way of compromise and accord and without admission of any further fact or of liability by any Party beyond those already adjudicated in the State Court Action, a full and final settlement and judgment as to all the State Court Claims, to agree on the appropriate allowed amount of the monetary claims held by the Parties in the Bankruptcy Case, the resolution of certain of CTIC's claims related to the State Court Action, and other terms set forth herein.

### III.    AGREEMENT AMONG THE PARTIES.

**NOW, THEREFORE**, in consideration of the matters described in the Recitals, and in consideration of the mutual covenants and agreements and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1.**    <u>Recitals</u>.  Each of the Parties acknowledges that the Recitals are true and correct as of the Execution Date, and that the Recitals are binding in accordance with California Evidence Code section 622.

**2.**    <u>Escrow and Payment</u>.  Prior to or upon the Execution Date, (i) Lendlease and CTIC have executed and delivered the escrow agreement attached hereto as **Exhibit B** ("**Escrow Agreement**"), and, pursuant thereto, opened escrow (the "**Escrow**") with the Escrow Agent as defined in the Escrow Agreement (the "**Escrow Agent**"), and (ii) US Construction has deposited the sum of Twenty Million and No/100 Dollars ($20,000,000.00) (the "**Settlement Payment**") in Escrow pursuant to wire transfer instructions provided by the Escrow Agent. CTIC shall provide notice to the Parties, confirming Escrow Agent's receipt of the Settlement Payment and its deposit of the Settlement Payment into an interest-bearing account as provided in the Escrow Agreement.

**3.**    <u>Condition Precedent as to Oceanwide</u>.  The Parties acknowledge and agree that, notwithstanding Oceanwide's execution of this Agreement, its authority to be bound by this Agreement insofar as its actions impact matters requiring Bankruptcy Court approval (including but not limited to implementation of the agreed distribution of cash proceeds from any sale) is subject to and conditioned upon the Bankruptcy Court's entry of the Approval Order and the finality thereof as provided below.  A final Approval Order shall be a condition

precedent to the effectiveness and enforceability of Sections 4(e), 6(a), 6(c), 6(d), and 7 (collectively, the "***Bankruptcy Sections***") of this Agreement as to (by or against) Oceanwide and its Affiliated Parties (defined below) insofar as the Bankruptcy Case is concerned.  It is the intent of the Parties that, prior to entry of a final Approval Order, Oceanwide and its Affiliated Parties shall have no rights, benefits, or obligations under the Bankruptcy Sections, the Bankruptcy Sections shall be deemed excised and omitted from this Agreement insofar as Oceanwide is concerned, and all rights, benefits, and obligations relating to Oceanwide and its Affiliated Parties under and pursuant to the Bankruptcy Sections shall be unenforceable and not binding Oceanwide and/or its Affiliated Parties pending the Approval Order becoming final. For clarity, all provisions of this Agreement other than the Bankruptcy Sections are effective and binding on Oceanwide and its Affiliated Parties as of the Execution Date.

(a)  Within three (3) Business Days after the Execution Date, Oceanwide shall file and the other Parties shall support a motion to approve this Agreement (the "***Approval Motion***"), seeking entry of an order substantially in the form attached hereto as **Exhibit C** that (1) approves this Agreement, (2) provides that this Agreement is enforceable against all parties-in-interest in the Bankruptcy Case, including Oceanwide, and (3) authorizes Oceanwide to implement, and the Parties to enforce, the terms of this Agreement (the "***Approval Order***").  The Approval Order otherwise (A) shall be consistent in all material respects with the terms and conditions of this Agreement, and (B) shall become a final non-appealable order which is not subject to stay.  Each of the Parties shall use its reasonable efforts to cause the Bankruptcy Court to issue the Approval Order and no Party or any of their Affiliated Parties (defined below) shall object to or otherwise challenge, including appeal, the Approval Motion or any resulting Approval Order. The hearing on the Approval Motion will be scheduled for the first date available that is at least six (6) Business Days following the Execution Date, as determined by the Bankruptcy Court.

(b)  The date the Approval Order becomes final, non-appealable, and not subject to a stay (the "***Approval Date***") shall be deemed to be the fifteenth (15th) consecutive calendar day immediately following the date of the entry of the Approval Order as shown on the docket of the Bankruptcy Case without the filing of a notice of appeal of the Approval Order, a motion to extend the time to file a notice of appeal of the Approval Order, or an order staying the enforcement of the Approval Order entered on the docket of the Bankruptcy Case during the fourteen (14) consecutive calendar days immediately following the date of entry of the Approval Order. If such a notice, motion, or stay order has been filed or entered on the docket of the Bankruptcy Case, the Approval Date shall be the date upon which such notice, motion, or stay order is resolved favorably to the approval and effectiveness of the Approval Order by subsequent order of the Bankruptcy Court or upon mandate or other order from the last appellate court to consider the issue returning jurisdiction to the Bankruptcy Court. On the date the Approval Order becomes final, counsel for Oceanwide shall notify all Parties and Escrow Agent.

**4.**   **Bankruptcy Stipulation and Related Items**.

(a)  Within three (3) Business Days after CTIC's unconditional receipt of the Settlement Payment in full and in full compliance with the Escrow Agreement, LADI, KPC, CTIC, US Construction and shall fully execute and deliver to Oceanwide the stipulation and proposed order attached hereto as **Exhibit D** (the "***Bankruptcy Stipulation***"), which Oceanwide shall forthwith countersign and file with the Bankruptcy Court.  Pursuant to the Bankruptcy Stipulation, the following shall be effective *only* in the event that a Qualifying All Cash Asset Sale is consummated in the Bankruptcy Case: (i) the LADI Bankruptcy Claim shall be reduced by Twenty Million and No/100 Dollars ($20,000,000.00); and (ii) the US Construction Secured Claim shall be increased by Twenty Million and No/100 Dollars ($20,000,000.00).

(b)  The Parties acknowledge and agree that, for all purposes and as to the world:

(i)      the LADI Secured Claim and the DOT recorded against title to the Property and its proceeds are senior in priority to all the Mechanic's Lien Claims.

(ii)     the amount of the LADI Loan, the LADI Secured Claim, and the LADI Bankruptcy Claim (all being secured by the DOT) have a collective total indebtedness due and owing as of October 31, 2025, in the amount of $230,000,000 ("***LADI Indebtedness***"), which:

     1.     continues to accrue interest (secured by the DOT) at the rate of $60,000 per diem from and after November 1, 2025 (the "***Per Diem***"); provided, however, solely in the event of a Qualifying All Cash Asset Sale and as an accommodating benefit to the bankruptcy estate of Oceanwide, the Holder shall recalculate the Per Diem at $40,000 per day (but otherwise shall not reduce the amounts due), and, solely in the event of a Qualifying All Cash Asset Sale, the Holder will accept such short pay of the LADI Loan as payment in full of the LADI Bankruptcy Claim; and

     2.     continues to accrue reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of (1) LADI on November 1 and 2, 2025, and (2) KPC (and any other Holder) from and after November 3, 2025, which amounts shall be added to the LADI Indebtedness and accrue interest at the rate of 10% simple per annum from and after the date paid (regardless of who pays such amounts);

(iii)    the LADI Bankruptcy Claim is senior in priority and in right to payment of the Mechanic's Lien Claims; and

(iv)    the Holder and its successors and/or assignees have senior lien rights under the DOT to all liens and rights of the holders of the Mechanic's Lien Claims.

(c)     The Parties acknowledge and agree that, for all purposes and as to the world, the secured lien Claims (including but not limited to the US Construction Secured Claim) held by US Construction, its subcontractors, and their respective successors and assignees, including DTLA Funding (collectively "***Mechanic's Lien Claims***"), total $168,950,128.56 in the amounts set forth on attached **Exhibit E** ("***ML Exhibit***"); provided, however, the US Construction Secured Claim may be increased by the Bankruptcy Stipulation solely in accordance with the terms of this Agreement and the Bankruptcy Stipulation, and solely for purposes of the Bankruptcy Case. The Mechanic's Lien Claims are junior in priority and right to payment of the LADI Bankruptcy Claim, and the LADI Bankruptcy Claim is senior in priority to and in right to payment of the Mechanic's Lien Claims.

(d)     LADI, KPC, the Lendlease Parties, and Oceanwide further agree that the LADI Bankruptcy Claim and the Mechanic's Lien Claims shall be allowed and secured in full by the Property.

(e)     The respective owners of the LADI Bankruptcy Claim and Mechanic's Lien Claims may credit bid their respective secured claims towards the purchase of the Property in the amounts set forth above in accordance with their priority.

**5.**     **Stay of and Entry of Judgment in State Court Action; Covenant Not to Sue; Representations and Covenants.**  Immediately following the Execution Date, the Parties shall desist (stay) all litigation activity in the State Court Action, except whatever activity may be necessary to effectuate the provisions of this Agreement. Within two (2) Business Days of the Execution Date, the Parties shall provide notice of the settlement embodied in this Agreement to the Superior Court. It is expressly agreed and acknowledged that nothing in this Agreement precludes or limits the rights of the Holder, being the owner of the LADI Secured Claim, from exercising its rights under the DOT and other LADI Loan Documents in accordance with applicable

               -7-                       SETTLEMENT AGREEMENT
                                                          EXECUTION VERSION

laws, including but not limited to enforcing or otherwise pursuing such rights in any bankruptcy court such as the Bankruptcy Court or in any state court such as in the State Court Action.

(a)     Within three (3) Business Days after CTIC's unconditional receipt of the Settlement Payment from Escrow (and not before), the Parties jointly shall ask the Superior Court to enter judgment in the State Court Action in the form attached hereto as **Exhibit F** ("**Agreed Judgment**") to fully and finally resolve the State Court Action in its entirety. The Agreed Judgment, and/or any amendments thereto, may be recorded by any Party, its successors and assigns in accordance with applicable laws. The Parties shall not appeal, seek reconsideration or rehearing, or otherwise challenge the Agreed Judgment.

(b)     The Parties agree that the Superior Court handling the State Court Action shall retain jurisdiction over the Parties and the State Court Action pursuant to California Code of Civil Procedure section 664.6, to enforce and/or interpret this Agreement and enter a final judgment consistent with this Agreement's terms.  The Parties agree to include language in the Agreed Judgment necessary to effectuate the Superior Court's retention of jurisdiction pursuant to California Code of Civil Procedure section 664.6.  The Parties agree that the Bankruptcy Court will have jurisdiction over issues arising in or relating to the Bankruptcy Case, including without limitation the quantification of claims not liquidated in this Agreement such as the amount of the accruals to the LADI Bankruptcy Claim from and after November 1, 2025.

(c)     Subject to Section 6(b) below and except for (i) seeking to interpret this Agreement and/or to enforce the rights and obligations created by this Agreement and the rights and obligations preserved through this Agreement, (ii) seeking to enforce the rights and obligations preserved in Section 6(b) below, (iii) exercising rights and remedies available to the Holder of the LADI Secured Claim under and pursuant to the DOT and other LADI Loan Documents in accordance with the terms of such documents and applicable law, and (iv) exercising rights and remedies available to the Holder of the DIP Loan Claims (defined below) and Mechanic's Lien Claims in accordance with the terms of applicable documents and applicable law, each of the Parties hereby covenants:

(i)     it will not bring any suit, action, or proceeding, nor make any demand or claim of any type in any forum, nor otherwise bring or sustain any challenge in any forum, nor take a position, against any of the other Parties or otherwise relating to the State Court Claims or which is contrary to or inconsistent with any of the other terms of this Agreement in any forum; provided however, as more particularly set forth in Section 6(b) below:

1.     nothing in this Agreement precludes, limits, or otherwise affects in any way the rights of the owner of the LADI Secured Claim to exercise its rights and remedies under the DOT and other LADI Loan Documents in accordance with the terms of such documents and applicable law, and

2.     except as expressly otherwise provided in this Agreement, nothing in this Agreement precludes, limits, or otherwise affects in any way the rights of the owner of the DIP Loan to exercise its rights under the Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing, dated as of May 16, 2024 ("**DIP DOT**"), and related documents (collectively "**DIP Financing Documents**"), as they have been amended and approved by the Bankruptcy Court in the Bankruptcy Case, from time to time, including without limitation through orders entered on the Bankruptcy Case docket at docket numbers 229, 521, 662, 665 and 735 (collectively "**DIP Orders**") and any additional amendments and supplements to the DIP Financing Documents, executed after the Execution Date with the approval of the Bankruptcy Court, in accordance with the terms of such

-8-

documents and applicable laws. (The amounts lent, interest thereon, counsel fee and other costs due to the DIP Lender under the terms of the DIP Credit Agreement, DIP DOT, other DIP Financing Documents and DIP Orders, including as they may be further amended and supplemented are collectively referred to as the "***DIP Loan Claims***").

(d)    Any of the Parties may plead or assert the covenant not to sue in this Section as a complete defense and bar to any of the State Court Claims (but not Claims (defined below) that might have been but were not brought therein) brought against any of them, or any other suit, action, proceeding or challenge which violates the terms of Section 5(c), or otherwise in contravention of this Section 5.

(e)    For clarity, all Parties, including LADI and KPC, for themselves and their successors and assigns agree that the Agreed Judgment constitutes a final judgment in the State Court Action, that all Claims actually asserted therein, including but not limited to those actually brought against Lendlease, (but not including Claims not actually pursued in the State Court Action) are fully and finally resolved, and that they covenant not to further prosecute or otherwise pursue any Claims actually brought in the State Court Action, including those brought against Lendlease.

6.    <u>**Release of Claims by Certain Parties**</u>.

(a)    Subject to Section 6(b) below and except for (i) the rights and obligations created by this Agreement and the rights and obligations preserved through this Agreement, including but not limited to the Agreed Judgment, the Bankruptcy Stipulation, and the rights and obligations preserved in Section 6(b) below, (ii) the rights and remedies available to the Holder of the LADI Secured Claim and CTIC to exercise their rights (including as to the CTIC Claim) under and pursuant to the DOT and other LADI Loan Documents in accordance with the terms of such documents and applicable laws, (iii) the rights and remedies available to the holders of the Mechanic's Lien Claims to exercise their rights under applicable laws and agreements against the Property and otherwise, (iv) the rights and remedies available to the holder of the DIP Loan to exercise its rights under the DIP DOT, other DIP Loan documents and DIP Orders in accordance with the terms of such documents and applicable laws, and (v) any and all rights and obligations as between CTIC and its Affiliated Parties (defined below), on the one hand, and LADI and KPC and their Affiliated Parties, on the other hand,

(i)    the Lendlease Parties (and each of them), CTIC, and Oceanwide (referred to collectively as the "***Releasors***"), each on behalf of itself and its agents, attorneys, servants, partners, parents, subsidiaries, directors, members, managers, officers, employees, successors, assigns, insurers (not including CTIC), reinsurers, sureties, and all affiliates and designees of the foregoing, in each instance in their capacities as such (such persons and entities other than the Releasors are referred to collectively as the "***Affiliated Parties***") each hereby releases, discharges and acquits each of the other Parties and each of their respective agents, attorneys, servants, partners, parents, subsidiaries, directors, members, managers, officers, employees, successors, assigns, insurers, reinsurers, sureties, and affiliates (referred to collectively as the "***Released Parties***") from any and all suits, claims, liabilities, damages, demands, promises, obligations, costs, expenses, actions and causes of action of every nature, character and description, in law or in equity, whether presently known or unknown, vested or contingent, suspected or unsuspected (collectively, "***Claims***"), arising out of or related to the State Court Claims in any respect which any of the Releasors and their respective Affiliated Parties, owns or holds, or may own or hold, as of or prior to the Effective Date or has at any time previously owned or held against any Released Parties.

(ii)    For clarity, neither LADI nor KPC are Releasors.

    -9-    

(iii)    Notwithstanding anything contained herein, the Affiliated Parties of Oceanwide shall not include the partners, parents, subsidiaries, or members of Oceanwide, and shall include but not be limited to Bradley Sharp, Shelly Cuff, and Development Specialists, Inc., solely in their capacity as Chief Restructuring Officer of Oceanwide.

(iv)    Each of the Releasors hereby acknowledges and agrees that (1) any and all claims, rights, and causes of action it holds or may hold against Oceanwide's bankruptcy estate in the Bankruptcy Case are limited solely to the claims expressly provided for and permitted under this Agreement, and (2) they shall not assert, file, support, or receive any distribution from the Bankruptcy Case on account of any claim not so provided; provided, however, nothing in this Agreement limits any Party's right to enforce this Agreement or to pursue any claims against non-Parties and/or their Affiliated Parties, all of which hereby are preserved.

(b)    Notwithstanding anything to the contrary in Section 5 above (the "***Covenant Not to Sue***"), in Section 6(a) above (the "***Release of Claims***"), or elsewhere in this Agreement:

(i)    Subject to Section 10 below, the Covenant Not to Sue and the Release of Claim shall not apply to any Claims or proofs of claim held or filed by US Construction, DTLA Funding, DTLA Lending, LADI, KPC, CTIC, and/or their respective Affiliated Parties (including any Holder) against Oceanwide or its Affiliated Parties, including without limitation the DIP Loan Claims, the LADI Bankruptcy Claim, the Mechanic's Lien Claims, and the US Construction Unsecured Claim; provided, however, to the extent the LADI Bankruptcy Claim, the CTIC Claim, the CTIC Bankruptcy Claim and the Mechanic's Lien Claims are allowed in the amounts and priorities set forth in this Agreement, the holders thereof agree not to seek allowance thereof in larger amounts than those set forth in and/or permitted by this Agreement;

(ii)    The Covenant Not to Sue and the Release of Claims shall not apply to any Claims by CTIC, and its Affiliated Parties, on the one part, and LADI, KPC, and their respective Affiliated Parties (including any Holder or Insured), on the other part, as against or between one another, nor does the Covenant Not to Sue and Release of Claims apply to CTIC's, LADI's, KPC's, or any successor's or assign's (including any Holder's) respective rights and obligations under the LADI Policy, and the LADI Policy is not terminated, released or affected in any way by or pursuant to this Agreement; provided, however, that notwithstanding the preceding terms of this clause, the Covenant Not to Sue and Release of Claims shall apply with respect to any and all subrogation rights and any other rights held by CTIC against LADI, KPC, any Holder, any Insured, or any of their successors and assigns (other than the CTIC Reimbursement Rights, which CTIC retains), whether or not arising out of or with respect to the LADI Policy and/or the payment by CTIC of any or all attorneys' fees and other costs and expenses of any kind in connection with the State Court Action and Bankruptcy Case, respectively, including any right to recover any or all of such fees, costs and expenses from LADI, KPC, or their Affiliated Parties; provided, however, the Parties may enforce the terms of this Agreement;

(iii)    The Covenant Not to Sue and Release of Claims shall not apply to any Claims by LADI, KPC, or any successor or assign (including any Holder)  under, in connection with, arising out of, or relating to any or all of the LADI Loan, including the Note, DOT, and other LADI Loan Documents against Oceanwide, any successor in interest to Oceanwide, any accommodation party or guarantor of Oceanwide's obligations under any or all of the LADI Loan Documents, any junior lienholders, including but not limited to the Lendlease Parties and their Affiliated Parties, any junior liens, including but not limited to the Mechanic's Lien

                                         -10-                                            SETTLEMENT AGREEMENT
EXECUTION VERSION

Claims, or any or all of the Property or other collateral securing the LADI Loan under the terms of the LADI Loan Documents;

(iv)    The Covenant Not to Sue and the Release of Claims shall not apply to (a) any Claims as against or between CTIC and its Affiliated Parties, on the one hand, and Oceanwide Real Estate Group and its Affiliated Parties (other than Oceanwide), on the other hand, including but not limited to the Chicago Title Oceanwide Action and the Chicago Title Oceanwide Claims, which CTIC is entitled to pursue without prejudice to anything set forth in this Agreement, (b) any Claims that have not been asserted as of the Effective Date of this Agreement by CTIC and/or its Affiliated Parties, on the one part, and Oceanwide and/or its Affiliated Parties (including any holder or insured under the Oceanwide Policy), on the other part, as against or between one another, other than claims that may exist but were required to be asserted in a proof of claim filed prior to the June 26, 2024, bar date but were not filed, and (c) CTIC's, Oceanwide's, or any successor's or assign's (including any insured's) rights and obligations under the Oceanwide Policy. For the avoidance of doubt, the Oceanwide Policy is not terminated, released, or affected in any way by or pursuant to this Agreement, except that, (1) upon entry of a final Approval Order, Oceanwide irrevocably waives and releases all rights and claims under and pursuant to the Oceanwide Policy arising prior to the date the Approval Order becomes final, (2) upon entry of a final Approval Order and CTIC's unconditional receipt of the Settlement Payment, CTIC irrevocably releases and waives any and all Claims against Oceanwide's bankruptcy estate arising prior to the Effective Date as provided in Section 10 below, and (3) nothing herein affects the rights of the parties under the Oceanwide Policy as to non-debtor affiliates.

(v)    The Covenant Not to Sue and the Release of Claims shall not be deemed to affect the rights of each of the Parties, and its Affiliated Parties, to raise, appear in, and be heard on any and all issues and matters in, related to, or concerning the Bankruptcy Case; provided that, the position asserted by such Party with respect to such issue or matter is not inconsistent in any material respect with this Agreement; and

(vi)    Nothing in this Agreement affects in any way (1) the rights and remedies available to the holder of the DIP Loan Claims to exercise its rights under the DIP DOT and other DIP Financing Documents in accordance with the terms of such documents and applicable laws, and (2) the rights and remedies, including defenses, available to the other Parties to challenge the amounts claimed to be due and owing under and pursuant to the DIP Loan. The lien created by the DIP Loan deed of trust is not released or in any way impacted by this Agreement.

(c)    WITH REGARD TO THE MATTERS RELEASED BY THE RELEASE OF CLAIMS CONTAINED IN SECTION 6(a) ABOVE, AND SUBJECT TO SECTION 6(b) ABOVE, EACH OF THE RELEASORS, FOR ITSELF AND ON BEHALF OF ITS AFFILIATED PARTIES, WAIVES ANY RIGHTS AND BENEFITS CONFERRED BY ANY APPLICABLE PROVISION OF LAW EXISTING UNDER ANY STATE OR POLITICAL SUBDIVISION THEREOF WHICH WOULD INVALIDATE ALL OR ANY PORTION OF THE RELEASE OF CLAIMS CONTAINED HEREIN BECAUSE SUCH RELEASE OF CLAIMS EXTENDS TO CLAIMS WHICH THE RELEASOR DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTION OF THIS AGREEMENT. THIS WAIVER EXPRESSLY INCLUDES ALL RIGHTS UNDER SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA ("***SECTION 1542***"), WHICH PROVIDES AS FOLLOWS:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM

OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(d)     Notwithstanding the provisions of Section 1542 or any similar law of any other state, the Release of Claims contained in Section 6(a) above will constitute a full release with respect to the matters released pursuant to such Section, subject to Section 6(b) above.  Each Releasor, for itself and on behalf of its Affiliated Parties, knowingly and voluntarily waives the provisions of Section 1542, and, subject to Section 6(b) above, each Releasor expressly acknowledges that it intends for the release to include, without limitation, to the fullest extent allowed by law, all claims unknown or unsuspected at and as of the Effective Date.

(e)     Notwithstanding anything to the contrary herein, but subject in the case of CTIC and its successors and assigns to all rights and defenses preserved in Sections 6(b)(iv) and 10 of this Agreement, upon a Party's receipt of payment in full of its claim(s) against Oceanwide or the bankruptcy estate as modified by this Agreement, such Party, on behalf of itself and its Affiliated Parties, shall be deemed to have fully released, discharged, and acquitted Oceanwide, its bankruptcy estate, and any successor thereto (including any reorganized debtor) from any and all suits, claims, liabilities, damages, demands, promises, obligations, costs, expenses, actions and causes of action of every nature, character and description, in law or in equity, whether presently known or unknown, vested or contingent, suspected or unsuspected, arising out of or related to such paid claim; provided, however, this release shall not apply to CTIC in circumstances where a buyer acquires the Property by purchasing the equity interests of Oceanwide Plaza LLC from the bankruptcy estate, and this release shall not apply to any unsecured claims not addressed by this Agreement, and all rights with respect to any such unsecured claims are expressly reserved.

7.     **Sale of Assets/Acquisition**.  The Parties irrevocably agree, and shall request the Bankruptcy Court to order in the Approval Order, the following order of distribution of proceeds resulting from any sale in which all or substantially all of the Assets including the Property are sold in the Bankruptcy Case, such that the proceeds should be distributed in the following order, with each of tranches (a) through (e) below satisfied in full before any proceeds are distributed to the tranche below it, unless otherwise agreed in writing by all creditors in the applicable tranche.

(a)     First, to satisfy in full the allowed secured property taxes owed to the County of Los Angeles ("***Secured RP Tax Claims***") or such lesser amount as the purchaser might be allowed to pay to the County of Los Angeles; provided, however, nothing in this Agreement limits or impacts the right of any Party or its Affiliated Parties to object in the Bankruptcy Case to the asserted amount of the Secured RP Tax Claims, including without limitation the right to seek to have the Property reassessed;

(b)     Second, to satisfy in full the total amount of the DIP Loan Claims; provided, however, nothing in this Agreement limits or impacts the right of any Party or its Affiliated Parties to object or otherwise assert in the Bankruptcy Case that the Bankruptcy Court should (1) not allow a future amendment or extension (including any increase in the amount) of the DIP Loan, or (2) approve an amount of the DIP Financing Claims lower than is asserted by DTLA Lending;

(c)     Third, to satisfy in full the transaction costs of the sale in the amount approved by the Bankruptcy Court; provided, however, nothing in this Agreement limits or impacts the right of any Party or its Affiliated Parties to object or otherwise assert in the Bankruptcy Case that the Bankruptcy Court should approve an amount of the transaction costs lower than is asserted.

(d)    Fourth, to satisfy in full the LADI Bankruptcy Claim as may be adjusted by the Bankruptcy Stipulation, and, if CTIC notifies Oceanwide at least three (3) Business Days in advance of any distribution, Oceanwide shall pay to CTIC the amount of any CTIC Reimbursement Right.

(e)    Fifth, to satisfy the Mechanic's Lien Claims, on a pro rata basis as shown in the ML Exhibit, as may be adjusted by the Bankruptcy Stipulation; and

(f)    Thereafter, as directed by the Bankruptcy Court in the Bankruptcy Case, through the terms of a Chapter 11 plan or otherwise.

**8.**    **Representations, Warranties, and Covenants**.

(a)    Each of US Construction, Construction Holdings, CTIC, LADI, KPC, DTLA Funding, and DTLA Lending (each, a "***Representing Party***") represents and warrants to the other Parties that, as of the Execution Date of this Agreement, and except as otherwise expressly stated in this Agreement:

    (i)    The Representing Party has the power and authority to execute this Agreement;

    (ii)    Except as otherwise set forth herein, the Representing Party has not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims which are released by such Representing Party pursuant to the Release of Claims without the consent of the assignee;

    (iii)    The Representing Party knows of no liens, legal, or equitable interests, or other encumbrances upon any Claims which are released by such Representing Party pursuant to the Release of Claims in this Agreement (except as may be expressly described elsewhere in this Agreement, subject to the limitations thereof);

    (iv)    The Representing Party has duly authorized the person executing this Agreement on behalf of such Representing Party;

    (v)    The Representing Party knows and understands the contents and effect of the express terms of this Agreement, has not relied on any statement not set out in this Agreement and its exhibits, and that it entered into this Agreement voluntarily;

    (vi)    The Representing Party has received independent advice from legal counsel of its own choice with respect to the advisability of entering into this Agreement; and

    (vii)    The Representing Party is exchanging fair and mutual consideration and reasonably equivalent value through the terms set forth in this Agreement.

(b)    Oceanwide represents and warrants to the other Parties that, as of the Execution Date of this Agreement, it:

    (i)    has the power and authority to execute this Agreement; although, as provided in Section 3, it shall not be fully bound by this Agreement pending entry of a final Approval Order;

    (ii)    has not sold, assigned, transferred, conveyed, or otherwise disposed of any Claims that are released by it pursuant to the Release of Claims;

    (iii)    knows of no liens, legal or equitable interests, or other encumbrances upon any Claims that are released by it pursuant to the Release of Claims (except as may be expressly described elsewhere in this Agreement, subject to the limitations thereof, or in the Bankruptcy Case);

    (iv)    has duly authorized the person or persons executing this Agreement on its behalf to do so solely on behalf of the Oceanwide estate in the Bankruptcy Case and not in an individual capacity;

    (v)    knows and understands the contents and effect of this Agreement, has not relied on any statement not set out in this Agreement and its exhibits, and that it entered into this Agreement voluntarily;

    (vi)    has received independent advice from legal counsel of its own choice with respect to the advisability of entering into this Agreement; and

    (vii)    is exchanging fair and mutual consideration and reasonably equivalent value through the terms set forth in this Agreement.

(c)    As of the Execution Date, each of US Construction and DTLA Funding represent and warrant to the other Parties that:

    (i)    All Mechanic's Lien Claims listed on the ML Exhibit are solely owned by US Construction or DTLA Funding, as indicated on the ML Exhibit;

    (ii)    It has the power and authority to execute this Agreement for and in connection with the Mechanic's Lien Claims, and it controls all rights respecting the Mechanic's Lien Claims;

    (iii)    It has not assigned or otherwise transferred any interest in or control of any of the Mechanic's Lien Claims, or any rights or liens related thereto, and no such assignment or other transfer has occurred;

    (iv)    The total of all the Mechanic's Lien Claims is $168,950,128.56;

    (v)    It has reviewed the ML Exhibit, the ML Exhibit is true and correct, and the ML Exhibit sets forth the totality of the liens asserted against the Property by the Lendlease Parties other than the DIP Loan Claim; and

    (vi)    It does not have or hold any liens against the Property, and there are no other liens asserted by it against the Property, other than its share of the Mechanic's Lien Claims.

(d)    Each of US Construction, Construction Holdings, DTLA Funding, and DTLA Lending represent, stipulate, covenant and agree that as of the Execution Date:

    (i)    the LADI Claims are senior in priority and right to payment to the Mechanic's Lien Claims, including the US Construction Secured Claim and the DTLA Funding Secured Claim;

    (ii)    the Note, DOT, and other LADI Loan Documents, including all liens, rights, and interests created thereby are valid and enforceable; and

    (iii)    it will not commence an appeal, seek reconsideration or rehearing, or otherwise challenge the Agreed Judgment.

**9.**    **Lendlease Acknowledgement of No Rights Under LADI Policy.** Notwithstanding any term of the LADI Policy, the Lendlease Parties, each for themselves and its predecessors, successors, and current and future Affiliated Parties, agree that (a) none of them are or shall become an insured under or a beneficiary of the LADI Policy, (b) none of them have or hold, or shall in the future have or hold, any rights in, to, or under the LADI Policy, and (c) neither the making of the Settlement Payment nor any other act required by this

Agreement or otherwise undertaken shall give rise to their having any rights or benefits of any type or nature in, to, or under the LADI Policy.

10. **Withdrawal of CTIC Bankruptcy Claim.** Within five (5) Business Days after CTIC's unconditional receipt of the Settlement Payment in accordance with the terms of the Escrow Agreement, CTIC shall withdraw the CTIC Bankruptcy Claim with prejudice; thereafter, CTIC shall not file, assert, support, or share in any claim (secured, priority, administrative, or unsecured), motion, application, surcharge, recoupment, setoff, subrogation, or request for payment of any kind against Oceanwide in the Bankruptcy Case or its bankruptcy estate in the Bankruptcy Case or any successor or converted case, including under sections 503, 506(c), 507, 509, or 510 of the Bankruptcy Code, or otherwise, and CTIC shall have waived any right to a distribution in the Bankruptcy Case pursuant to the LADI Policy, the Oceanwide Policy, or otherwise. Notwithstanding the foregoing and for the avoidance of doubt, nothing stated herein impacts or otherwise affects in any manner the CTIC Reimbursement Right (which is preserved), nothing in this Agreement limits any of CTIC's rights, defenses, counterclaims, rights to setoff or recoupment against any claims of any kind brought by third-party, Oceanwide, or its successors or assigns, and nothing in this Agreement limits CTIC's right to prosecute claims of any kind against any partners, parents, members, or subsidiaries of Oceanwide, including but not limited to prosecution of the Chicago Title Oceanwide Action and the Chicago Title Oceanwide Claims as against Oceanwide Real Estate Group. Notwithstanding the foregoing and CTIC's withdrawal of the CTIC Bankruptcy Claim, CTIC reserves and preserves its right to enforce all other rights under this Agreement. The waiver and withdrawal set forth above in this Section shall have no effect on any Claims, nor any claims, rights, obligations, or defenses, as against or between CTIC, on the one hand, and LADI, KPC, and/or any other Insured, on the other hand, related to the LADI Policy.

11. **Waiver of Costs and Attorneys' Fees**. Each of the Parties shall bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiation and drafting of this Agreement, and, except as set forth herein, waive their right to recover the same under any and all theories providing for the recovery of costs, expenses, and attorneys' fees, except that LADI, KPC, and/or any other Holder may accrue and add to the amounts secured by the DOT, all fees, costs, and expenses incurred from and after November 1, 2025. However, if it becomes necessary to interpret and/or enforce any of the terms of this Agreement, the prevailing Party shall be entitled to recover (in addition to any other amounts provided for elsewhere in this Agreement) its reasonable attorneys' fees, costs, and expenses incurred in connection with enforcing the terms of this Agreement from the non-prevailing Party or Parties.

12. **Execution of Additional Documents**. Each of the Parties agrees to promptly execute and deliver such additional documentation as may reasonably be requested by any of the other Parties as being reasonably necessary and to accomplish and fulfill such Party's obligations and agreements as set forth in this Agreement. Each Party agrees that it will include and support the terms (including the terms relating to the distribution Cash Proceeds resulting from a Qualifying All Cash Asset Sale) of this Agreement as material terms in any chapter 11 plan that such Party may file or support in the Bankruptcy Case and will use its commercially reasonable efforts to obtain confirmation of such plan, if filed.

13. **Successors**. Each of the Parties warrants that it is entering into this Agreement on behalf of, and that this Agreement is binding, on itself and its successors and assigns. Regarding Oceanwide, such successors and assigns shall include any trustee appointed in the Bankruptcy Case or in any case to which the Bankruptcy Case may be converted, any other representative of the estate in the Oceanwide Bankruptcy Case, any emerging entity from a Chapter 11 plan confirmed in the Bankruptcy Case, and Oceanwide after emergence from the Bankruptcy Case and/or upon the dismissal or closing of the Bankruptcy Case.

14. **Governing Law**. This Agreement is governed and controlled in all respects by the laws of the State of California (without regard to conflicts of laws principles) and shall be enforceable by the Superior Court in the State Court Action, except to the extent that its effectiveness is subject to, among other conditions, entry of the Approval Order by the Bankruptcy Court. In the event of a dispute relating to this Agreement, venue for

resolution of any such dispute shall be the Superior Court, except to the extent, if any, that the Bankruptcy Court is the court of competent jurisdiction.

15. **Entire Agreement**.  This Agreement and its exhibits represent and contain the entire agreement and understanding among the Parties regarding the subject matter hereof and supersedes any and all prior agreements, representations and understandings, whether written or oral, with respect to the matters contained herein and may only be subsequently modified in writing signed by each Party.  Each Party agrees that it has not relied upon any representation, warranty, condition, understanding or agreement of any kind in entering into this Agreement other than those expressly set forth in this Agreement and its exhibits. Notwithstanding the immediately preceding two sentences and except as otherwise expressly provided in this Agreement, the rights of CTIC (a) under the LADI Policy, the Oceanwide Policy, the Developer Indemnity Agreement, and the Chicago Title Oceanwide Action and in or to the Chicago Title Oceanwide Claims, and (b) pursuant to any guaranty, surety, insurance, agreement, commitment or other credit, recovery, or collection support which exists or may come to exist upon the entry of a final Approval Order or thereafter, none of which are limited or compromised by this Agreement, and all of which are reserved and preserved. Notwithstanding the existence and enforcement (or non-enforcement) by CTIC of its rights under any document or instrument described in the preceding clause (a) or (b), CTIC's rights set forth elsewhere in this Agreement shall not be limited or compromised thereby.

16. **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Facsimile, pdf and DocuSign signatures on this Agreement shall be binding.  Executed counterparts of this Agreement signed by a Party may be delivered to the other Parties by any of the methods described in the Notice Provision set forth below.

17. **No Waiver**.  No waiver of any provisions of the Agreement by a Party shall be effective unless agreed to in writing by the Party against whom such waiver is sought to be enforced.  The waiver of any breach of this Agreement by a Party shall not constitute a waiver of any other or subsequent breach by such Party, whether similar or otherwise.

18. **No Construction Against Drafter**.  Each of the Parties agrees that it has participated in arriving at the final language of this Agreement and, therefore, this Agreement shall not be construed against any Party as the drafter of this Agreement.

19. **Effect of Headings; Interpretation**.  Captions of the sections of this Agreement are for convenience and reference only, and the words contained in the captions shall in no way be employed to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Agreement.  For purposes of the Agreement, (a) the term "*including*" shall mean "*including without limitation*;" (b) the term "*Business Day*" shall mean any calendar day other than a Saturday, Sunday, national holiday that is recognized by the United States Federal Government, or any other day that all banks located in the United States or the State of California are closed for business, and (c) the term "*and/or*" shall mean both the inclusive and disjunctive.

20. **Notices.**  All notices, requests, demands, and other communications (each a "*Notice*") under this Agreement shall be provided in accordance with the terms of this provision (the "*Notice Provision*").  Each and every Notice shall be in writing and shall be deemed duly given and effective only when demonstrated to have been received by a Party via (a) personal delivery and proof of service; (b) email with electronic proof of receipt, or (c) delivery by a nationally recognized next Business Day courier with return receipt required.  All Notices shall be sent to the Parties at the following addresses (or to such other address as a Party may designate by Notice in accordance with this Notice Provision), and no Notice shall be deemed delivered unless received by both the Party and those required to receive copies as provided below.

**[CONTINUED ON NEXT PAGE]**

| If to LADI or its Affiliated Parties: | With a copy to: |
|---|---|
| mickeykycheng@gmail.com | **William S. Small**<br>Enenstein Pham Glass & Rabbat, LLP<br>Los Angeles Office<br>8439 W. Sunset Blvd, Suite 300<br>Los Angeles, CA  90069<br>Tel (Cell): 818-836-0375<br>Tel (Direct): 310-899-2078<br>Fax: (310) 496-1930<br>Email: wsmall@epgrlawyers.com<br><br>**GREENBERG TRAURIG, LLP**<br>Eric V. Rowen<br>Julianna M. Simon<br>1840 Century Park East, Suite 1900<br>Los Angeles, California 90067<br>Telephone: (310) 586-7700<br>Email: Eric.Rowen@gtlaw.com<br>Julianna.Simon@gtlaw.com<br><br>Leslie Cohen<br>**LESLIE COHEN LAW PC**<br>1615-A Montana Ave.<br>Santa Monica, CA 90403<br>T: 310.394.5900<br>F: 310.394.9280<br>Email: leslie@lesliecohenlaw.com |
| **If to KPC or its Affiliated Parties:**<br><br>kpc@globalmso.com | **With a copy to:**<br><br>**GREENBERG TRAURIG, LLP**<br>Eric V. Rowen<br>Julianna M. Simon<br>1840 Century Park East, Suite 1900<br>Los Angeles, California 90067<br>Telephone: (310) 586-7700<br>Email: Eric.Rowen@gtlaw.com<br>Julianna.Simon@gtlaw.com |
| **If to the Lendlease Parties or their Affiliated Parties:**<br><br>Generalcounselamericas@lendlease.com | **With a copy to:**<br><br>**PERKINS COIE LLP**<br>Abby Bloetscher<br>Sara Chenetz<br>Meredith Jones-McKeown<br>505 Howard Street<br>San Francisco, CA 94105<br>Telephone: (415) 344-7000<br>Email: abloetscher@perkinscoie.com<br>schenetz@perkinscoie.com<br>mjonesmckeown@perkinscoie.com |

| If to CTIC or its Affiliated Parties: | With a copy to: |
|---|---|
| John D. Klein<br>*John.Klein@fnf.com*<br><br>Laura Vasey<br>*Laura.Vasey@fnf.com* | **ATKINSON, ANDELSON, LOYA, RUUD, AND ROMO, P.C.**<br>Ryan C. Squire<br>Scott B. Mahler<br>Ani Grigoryan<br>251 S. Lake Ave, Suite 360<br>Pasadena, CA 91101<br>Telephone: (626) 583-8600<br>Email: *ryan.squire@aalrr.com*<br>*scott.mahler@aalrr.com*<br>*ani.grigoryan@aalrr.com*<br><br>**LOEB & LOEB**<br>William M. Hawkins<br>901 New York Avenue NW<br>Suite 300 East<br>Washington, DC 20001<br>Telephone: (202) 618-5020<br>Email: *Whawkins@loeb.com*<br><br>Edd Capewell<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>Telephone: (310) 282-2180<br>Email: *ecapewell@loeb.com* |
| **If to Oceanwide or its Affiliated Parties:** | **With a copy to:** |
| Bradley D. Sharp, solely in his capacity as<br>  Chief Restructuring Officer<br>Shelly Cuff<br>Development Specialists, Inc.<br>bsharp@DSIConsulting.com<br>scuff@DSIConsulting.com | **RALLS GRUBER & NIECE LLP**<br>John Foust<br>601 Montgomery Street, Ste 1800<br>San Francisco, CA 94111<br>Phone: (415) 971-9181<br>Email: *Jfoust@rallsgruber.com*<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>Sharon Z. Weiss<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Telephone: (310) 576-2100<br>Email: *Sharon.weiss@bclplaw.com* |

21.     **Implementation.** Each Party irrevocably covenants that it will take all actions, and refrain from taking any actions, that would reasonably be expected to interfere with, hinder, delay, or prevent the implementation and enforcement of this Agreement in the Bankruptcy Case, including, without limitation, (a) the filing, prosecution, and approval of the Approval Motion and entry of the Approval Order on terms consistent in all material respects with this Agreement; (b) the pursuit, confirmation, and effectiveness of any chapter 11 plan, sale, or other court-approved process that implements or gives effect to the terms of this Agreement; and (c) the consummation of all transactions and performance of all obligations contemplated herein as any time. Without limiting the foregoing, each Party shall support, not object to, and not seek to stay or appeal entry of the Approval Order or any other order that is consistent in all material respects with this Agreement and is reasonably necessary or appropriate to implement it. Nothing in this paragraph requires any Party to support,

or refrain from objecting to, any relief that is inconsistent in any material respect with this Agreement. Nothing contained herein shall limit the right of LADI, KPC, and/or the Lendlease Parties from proposing their own chapter 11 plan, sales process, or other court-approved process provided it implements or gives effect to the terms of this Agreement.

22.    **Cooperation.**  Each of the Parties shall execute such other and further documents, and do such other and further acts, as may be reasonably required to effectuate the intent of the Parties, and to carry out the terms of the Agreement.

23.    **Time is of the Essence**. Time is of the essence to this Agreement and all provisions contained herein, and timing shall be strictly construed; provided, however, that no right of any Party shall be limited or compromised by its delay of its enforcement.

**[SIGNATURES APPEAR ON THE NEXT PAGE]**

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Settlement Agreement, Release, and Covenant Not to Sue as of the Execution Date.

**LENDLEASE (US) CONSTRUCTION INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**CHICAGO TITLE INSURANCE COMPANY,** for itself and its Affiliated Parties,

By: _____
    Laura Maines Vasey
    Senior Vice President, Major Claims Counsel

**OCEANWIDE PLAZA, LLC,** for itself and its Affiliated Parties,

By: _____
    Bradley D. Sharp, solely in his capacity as Chief Restructuring Officer of the Oceanwide Plaza LLC bankruptcy estate

**DTLA LENDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**L.A. DOWNTOWN INVESTMENT LP,** for itself and its Affiliated Parties,

**By: Homewin Management LLC**, a California limited liability company, General Partner

**By:** _____
    **Kwok Yue Cheng, Manager**

**DTLA FUNDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**KPC PLAZA LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Settlement Agreement, Release, and Covenant Not to Sue as of the Execution Date.

**LENDLEASE (US) CONSTRUCTION INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**CHICAGO TITLE INSURANCE COMPANY,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**L.A. DOWNTOWN INVESTMENT LP,** for itself and its Affiliated Parties,

**By: Homewin Management LLC**, a California limited liability company, General Partner

By: _____
    **Kwok Yue Cheng, Manager**

**OCEANWIDE PLAZA, LLC,** for itself and its Affiliated Parties,

By: _____
    Bradley D. Sharp, solely in his capacity as Chief Restructuring Officer of the Oceanwide Plaza LLC bankruptcy estate

**DTLA FUNDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**DTLA LENDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**KPC PLAZA LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Settlement Agreement, Release, and Covenant Not to Sue as of the Execution Date.

**LENDLEASE (US) CONSTRUCTION INC.**, for itself and its Affiliated Parties,

By: _____
    Name:  Claire Johnston
    Title:   Director

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, for itself and its Affiliated Parties,

By: _____
    Name:  Claire Johnston
    Title:   Director

**CHICAGO TITLE INSURANCE COMPANY,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**L.A. DOWNTOWN INVESTMENT LP,** for itself and its Affiliated Parties,

**By: Homewin Management LLC**, a California limited liability company, General Partner

    **By:** _____
        **Kwok Yue Cheng, Manager**

**OCEANWIDE PLAZA, LLC,** for itself and its Affiliated Parties,

By: _____
    Bradley D. Sharp, solely in his capacity as Chief Restructuring Officer of the Oceanwide Plaza LLC bankruptcy estate

**DTLA FUNDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name: Claire Johnston
    Title: Authorized Signatory

**DTLA LENDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:  Shelly Burke
    Title:   Authorized Signatory

**KPC PLAZA LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

SETTLEMENT AGREEMENT
[EXECUTION VERSION]

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Settlement Agreement, Release, and Covenant Not to Sue as of the Execution Date.

**LENDLEASE (US) CONSTRUCTION INC.,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**CHICAGO TITLE INSURANCE COMPANY,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**L.A. DOWNTOWN INVESTMENT LP,** for itself and its Affiliated Parties,

**By: Homewin Management LLC,** a California limited liability company, General Partner

    **By:** _____
        **Kwok Yue Cheng, Manager**

**OCEANWIDE PLAZA LLC,** for itself and its Affiliated Parties,

By: _____
    Bradley D. Sharp, solely in his capacity as Chief Restructuring Officer of the Oceanwide Plaza LLC bankruptcy estate

**DTLA FUNDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**DTLA LENDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**KPC PLAZA LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Settlement Agreement, Release, and Covenant Not to Sue as of the Execution Date.

**LENDLEASE (US) CONSTRUCTION INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**CHICAGO TITLE INSURANCE COMPANY**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**OCEANWIDE PLAZA, LLC,** for itself and its Affiliated Parties,

By: _____
    Bradley Sharp, solely in his capacity as Chief Restructuring Officer of the Oceanwide Plaza LLC bankruptcy estate

**DTLA LENDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**L.A. DOWNTOWN INVESTMENT LP,** for itself and its Affiliated Parties,

By: **Homewin Management LLC**, a California limited liability company, General Partner

    By: _____
        Kwok Yue Cheng, Manager

**DTLA FUNDING, LLC,** for itself and its Affiliated Parties,

By: _____
    Name:
    Title:

**KPC PLAZA LLC**, for itself and its Affiliated Parties,

By: _____
    Name: Kal. P. Chaudhuri
    Title: Manager

Exhibit "A"

Legal Description of Property

## LEGAL DESCRIPTION

THE REAL PROPERTY REFERRED TO HEREIN IS ALL THAT CERTAIN REAL PROPERTY LOCATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA DESCRIBED AS FOLLOWS:

LOTS 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 AND 13 OF TRACT NO. 53384, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1279 PAGES 4 THROUGH 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AS AMENDED BY A CERTIFICATE OF CORRECTION RECORDED MARCH 5, 2010 AS INSTRUMENT NO. 20100307746, OF OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION OF SAID LAND LYING WITHIN LOTS 1 THROUGH 6, INCLUSIVE, OF CARSON AND CURRIER'S SUBDIVISION OF BLOCK 89 OF ORB'S SURVEY, AS PER MAP RECORDED IN BOOK 55, PAGE 3 OF MISCELLANEOUS RECORDS, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR AND EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

ASSESSOR'S PARCEL NOS. 5138-015-026, 5138-015-028, 5138-015-029, 5138-015-030, 5138-015-031, 5138-015-032, 5138-015-033, 5138-015-034, 5138-015-035, 5138-015-036, 5138-015-037 & 5138-015-038.

**Exhibit "B"**

**Escrow Agreement**

**See attached.**

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**
555 S Flower Street, Suite 4420
Los Angeles, CA 90071

**ESCROW AGREEMENT**

**Date:**        January 21, 2026
**Escrow No.:** FBDO-2512047-KT
**Property:**  HOLDING ACCOUNT
                       CA

This Escrow Agreement dated January 21, 2026 (the "**Escrow Effective Date**") is entered into by and among (i) Chicago Title Insurance Company, a Florida corporation ("**CTIC**"); (ii) Lendlease (US) Construction Inc., a Florida corporation ("**US Construction**"); (iii) Lendlease (US) Construction Holdings Inc., a New York corporation ("**Construction Holdings**", and together with US Construction, "**Lendlease**"); and (iv) Fidelity National Title Insurance Company ("**Escrow Agent**").

WHEREAS CTIC, Lendlease, L.A. Downtown Investment LP, and Oceanwide Plaza LLC, as debtor and debtor-in-possession ("**Oceanwide**"), are among the parties to a certain *Settlement Agreement, Release & Covenant Not to Sue*, which the parties have executed or plan to execute soon after execution of this Escrow Agreement (the "**Settlement Agreement**").

WHEREAS, under the terms of the Settlement Agreement, US Construction is required to deposit certain funds into escrow, which are to be disbursed to CTIC following the satisfaction of certain conditions.

WHEREAS CTIC and Lendlease have asked Escrow Agent to hold the deposited funds in escrow and to disburse the funds subject to the terms and conditions set forth herein.

NOW, THEREFORE, CTIC, Lendlease, and Escrow Agent agree as follows:

1.  On or before January 23, 2026 (time being of the essence) ("**Required Deposit Date**"), US Construction shall deposit unconditionally with Escrow Agent, and Escrow Agent shall hold, the sum of Twenty Million and No/100 Dollars ($20,000,000.00) (the "**Settlement Payment**"), pursuant to the following escrow terms.

2.  The funds constituting the Settlement Payment shall be deposited by Escrow Agent into an interest-bearing account for the benefit of US Construction, at the prevailing rate of interest, with City National Bank, 555 S. Flower Street, 17th Floor, Los Angeles, CA 90071 (the "**Escrow Account**") and shall accrue interest at the prevailing rate of interest at City National Bank, which was 2.65% per annum as of January 9, 2026.

3. All interest accrued on the Settlement Payment ("**Interest**") will be reported to the applicable taxing authorities and accrue for income tax purposes to the Tax Identification Number of US Construction, which shall be responsible for paying all taxes on the Interest and which obligation shall survive the expiration of this Escrow Agreement. Escrow Agent shall not commingle the Settlement Payment with other funds held in any "trustees account" or any other escrow or similar account, nor with Escrow Agent's own funds or assets.

4. Prior to or simultaneously with the execution of this Escrow Agreement, US Construction, Construction Holdings, and CTIC each shall provide Escrow Agent with a signed IRS Form W-9 and/or Form W-8BEN-E, as applicable, and the Escrow Supplemental Form and the Escrow Interest Bearing Account Form provided on <u>Exhibits C</u> and <u>D</u> hereto, as well as any other forms reasonably requested by the Escrow Agent.

5. Within one Business Day[1] after US Construction deposits the Settlement Payment with Escrow Agent:

    a. US Construction shall provide CTIC and Escrow Agent with written notice thereof and shall attach a copy of the pertinent confirmation; and

    b. Escrow Agent shall provide CTIC, US Construction, and Bryan Cave Leighton Paisner LLP ("**BCLP**"), counsel for Oceanwide, with written notice thereof, confirm Escrow Agent's deposit of the funds into the Escrow Account, and provide documentation from City National Bank confirming the Escrow Account deposit.

6. Escrow Agent shall disburse the Settlement Payment and Interest as follows:

    a. Escrow Agent shall promptly deliver all or any portion of the Settlement Payment to CTIC and/or all or any portion of the Interest to US Construction (i) as directed in writing jointly by CTIC and either (1) US Construction or (2) Construction Holdings or (ii) by an order of a Court (as defined below).

    b. **Claims Notice and Disputes**.

        i. At any time following the Escrow Effective Date, CTIC may provide to Lendlease and Escrow Agent written notice in the form set forth in <u>Exhibit A</u> hereto (the "**Disbursement Request**"), stating that the Settlement Agreement has been executed by all the parties thereto and request disbursement of the Settlement Payment to CTIC.

        ii. Unless Escrow Agent receives a Dispute Notice from Lendlease within the Dispute Period (as those terms are defined below), the Escrow Agent may rely on receipt of the Disbursement Request as

---

[1] All defined terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

the basis on which to disburse (1) the Settlement Payment funds to CTIC by wire transfer, in accordance with wire transfer instructions that CTIC shall timely provide to Escrow Agent, and (2) the Interest to US Construction in accordance with wire transfer instructions that US Construction shall timely provide to Escrow Agent, both not later than 5 p.m. Los Angeles time on the first (1st) Business Day after CTIC provides the Disbursement Request, and the Escrow Agent shall disburse the Settlement Payment and Interest accordingly.

c.  Notwithstanding the foregoing:

i.  Escrow Agent shall not release all or any portion of the Settlement Payment funds to CTIC if Escrow Agent receives written notice from Lendlease with a copy to CTIC (a **"Dispute Notice"**) within one Business Day after receipt of a Disbursement Request from CTIC (the "**Dispute Period**") (time being of the essence), stating that Lendlease disputes CTIC's right to receive the Settlement Payment funds, specifying the reason(s) why and attaching documentation as set forth in Exhibit B.

ii.  Upon timely receipt of a Dispute Notice, Escrow Agent shall review such Dispute Notice and, assuming the Dispute Notice fulfills the requirements of Exhibit B, the Escrow Agent shall not deliver the Settlement Payment to CTIC, but shall instead retain such Settlement Payment (or such portion thereof challenged by the Dispute Notice), and shall retain the Interest thereon pending instruction in accordance with Section 6(a) hereof, upon direction by an order of a court of competent jurisdiction (a "**Court**"), or upon the Settlement Agreement being executed by all parties thereto, upon which Escrow Agent shall promptly deliver the Settlement Payment to CTIC and the Interest to US Construction. Alternatively, Escrow Agent may commence an appropriate interpleader action in a Court.

iii.  If the Settlement Agreement is not executed by the parties thereto by February 13, 2026, the Settlement Payment will be returned to US Construction. CTIC shall provide Escrow Agent with an executed copy of the Settlement Agreement within one Business Day of execution by all parties thereto, copying Lendlease and BCLP.

d.  Escrow Agent shall disburse all accrued Interest to US Construction simultaneously with disbursement of the Settlement Payment funds to CTIC.

7.  Lendlease and CTIC do hereby jointly and severally agree that Escrow Agent shall incur no liability whatsoever in connection with its good-faith performance under this Escrow Agreement, and do hereby jointly and severally release and waive any

claims against Escrow Agent, which may result from its performance in good faith of its function under this Escrow Agreement, including but not limited to, a delay in the electronic wire transfer of funds. Escrow Agent shall be liable only for loss or damage caused directly by its acts of gross negligence or willful misconduct while performing as Escrow Agent under this Escrow Agreement.

8.  Escrow Agent shall be entitled to rely upon any judgment, certification, demand or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein, the propriety or validity thereof, or the jurisdiction of a court issuing any such judgment, except as expressly provided herein. Escrow Agent may act in reliance upon (a) any instrument or signature believed to be genuine and duly authorized, and (b) advice of counsel in reference to any matter or matters connected therewith.

9.  If a dispute shall arise as to the disposition of the Settlement Payment and/or Interest, Escrow Agent shall have the right, at its option, to either hold the same or seek to deposit the same with a Court pending decision of such Court through an appropriate interpleader action, on notice to Lendlease and CTIC, and Escrow Agent shall be entitled to rely upon (and shall comply with) the decision of such Court. Any such interpleader shall involve only the portion of the Settlement Payment and/or Interest in dispute, the balance of which Escrow Agent shall promptly disburse.

10. Escrow Agent may at its sole discretion resign by giving thirty (30) days' written notice thereof to the parties hereto. Following notice of such resignation, the parties shall furnish to the Escrow Agent written instructions for the release of the Settlement Payment. If Escrow Agent shall not have received such written instructions within the thirty (30) days, Escrow Agent may petition a Court for the appointment of a successor Escrow Agent and upon such appointment deliver the Settlement Payment to such successor.

11. The parties hereto do hereby certify that they are aware that the FDIC coverages apply only to a cumulative maximum amount of $250,000 for each individual depositor for all of the depositor's accounts at the same or related institution. The parties hereto further understand that certain banking instruments such as, but not limited to, repurchase agreements and letters of credit are not covered at all by FDIC insurance.

12. Further the parties hereto understand that Escrow Agent assumes no responsibility for, nor will the parties hereto hold Escrow Agent liable for, a loss occurring which arises from the fact that the amount of the above account may cause the aggregate amount of any individual depositor's accounts to exceed $250,000 and that the excess amount is not insured by the Federal Deposit Insurance Corporation or that FDIC insurance is not available on certain types of bank instruments.

13. If there is a dispute concerning disposition of the Settlement Payment funds, the party to whom the Settlement Payment funds are finally awarded by a Court shall be entitled to be reimbursed by the other party for its reasonable attorneys' fees, costs, and expenses incurred in the dispute. Should the award(s) related to the Settlement Payment funds, or any part of the foregoing, benefit more than one party, such reimbursement shall be on a pro rata basis among parties in accordance with the relative benefits.

14. Oceanwide shall be deemed to have executed the Settlement Agreement to the extent the Settlement Agreement has been signed by Bradley D. Sharp, or his successor, solely in his capacity as Chief Restructuring Officer of Oceanwide, notwithstanding any remaining conditions precedent outstanding under the Settlement Agreement or pending court approval.

15. This Escrow Agreement may not be modified or amended except in writing executed by all parties.

16. **Notices**.

    a. <u>Notice Addresses</u>. All notices required or permitted under this Escrow Agreement shall be in writing and shall be served on the parties at the following addresses:

| If to Lendlease: | With a copy to: |
|---|---|
| Generalcounselamericas@lendlease.com | **PERKINS COIE LLP**<br>Abby Bloetscher<br>Sara Chenetz<br>Meredith Jones-McKeown<br>505 Howard Street<br>San Francisco, CA 94105<br>Telephone: (415) 344-7000<br>Email: abloetscher@perkinscoie.com<br>schenetz@perkinscoie.com<br>mjonesmckeown@perkinscoie.com |
| **If to CTIC:**<br><br>John D. Klein<br>*John.Klein@fnf.com*<br><br>Laura Vasey<br>*Laura.Vasey@fnf.com* | **With a copy to:**<br><br>**ATKINSON, ANDELSON, LOYA, RUUD, AND ROMO, P.C.**<br>Ryan C. Squire<br>Scott B. Mahler<br>Ani Grigoryan<br>251 S. Lake Ave, Suite 360<br>Pasadena, CA 91101<br>Telephone: (626) 583-8600<br>Email: *Ryan.squire@aalrr.com*<br>*Scott.Mahler@aalrr.com*<br>*Ani.Grigoryan@aalrr.com* |

| | LOEB & LOEB<br>William M. Hawkins<br>901 New York Avenue NW<br>Suite 300 East<br>Washington, DC 20001<br>Telephone: (202) 618-5020<br>Email: *Whawkins@loeb.com*<br><br>Edd Capewell<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>Telephone: (310) 282-2180<br>Email: *ecapewell@loeb.com* |
|---|---|
| **If to BCLP**<br><br>**BRYAN CAVE LEIGHTON PAISNER LLP**<br>Sharon Z. Weiss and Jarrett Hitchins<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401<br>Telephone: (310) 576-2100<br>Emails: *Sharon.weiss@bclplaw.com*<br>*jarret.hitchings@bclplaw.com* | |
| **If to Escrow Agent:**<br><br>**FIDELITY NATIONAL TITLE INSURANCE COMPANY**<br>555 S Flower Street, Suite 4420<br>Los Angeles, CA 90071<br>Phone: (213) 452-7100<br>Fax: (213) 439-9951<br>Attention: Kellie Thompson<br>VP, Commercial Escrow Officer<br>Fidelity National Title, National Commercial Services<br><br>Email: Kellie.Thompson@fnf.com | |

    b.  <u>Method of Sending Notices</u>.

          i.  Any notices shall be sent by (1) email transmission and notices shall be deemed delivered upon successful transmission, or (2) overnight delivery by a recognized courier service (including the U.S. Postal Service) to the physical addresses provided above for (A) the "with a copy to" destination(s) (in case of Lendlease and CTIC) or (B) the recipient's physical address (in the case of the Escrow Agent), and such notice(s) shall be deemed delivered upon delivery by the recognized courier service.

    ii.   Any party's contact and address information may be changed by written notice to the other parties; provided, however, no notice of a change of address shall be effective until actual receipt of such notice.

    iii.   Notices delivered to the attorneys for CTIC and Lendlease shall be effective and binding on the parties. Notices may be sent by counsel to either party.

17. This Agreement is governed and controlled in all respects by the laws of the State of California (without regard to conflicts of laws principles) and shall be enforceable by the Court of the State of California, County of Los Angeles (the "**Superior Court**") in the State Court Action.[2] In the event of a dispute relating to this Agreement, venue for resolution of any such dispute shall be the Superior Court. No party shall assign any benefit or right, nor delegate any obligation or duty, under this Escrow Agreement, absent the consent of all other parties to this Escrow Agreement and only to the extent of such consent. Any attempted assignment or delegation in violation of the foregoing shall be of no effect and void ab initio.

18. This Agreement may be executed in counterparts, each of which (or any combination of which) when executed by all the parties shall be deemed an original, but all of which when taken together shall constitute one agreement. Executed copies hereof, which may be signed by DocuSign, may be delivered by email. Transmission of a signed counterpart shall be deemed delivery of a fully executed Agreement and, upon receipt, such signatures shall be deemed originals and binding upon the Parties hereto.

*[Remainder of Page Intentionally Blank; Signatures Appear on the Following Page]*

---

[2] The lawsuit pending in the Superior Court of the State of California, County of Los Angeles captioned *Webcor Construction, LP v. Lendlease (US) Construction, Inc. et al.*, Case No. 19STCV03357 ("**Lead Case**") and numerous additional lawsuits all related to or consolidated with the Lead Case (collectively referred to as the "**State Court Action**").

**IN WITNESS WHEREOF**, the parties have executed this Escrow Agreement as of the Escrow Effective Date.

<u>**CTIC**</u>:

**CHICAGO TITLE INSURANCE COMPANY**,
a Florida corporation

By:_____
        Name: Laura Maines Vasey
        Title:    Senior Vice President, Major Claims Counsel

<u>**LENDLEASE**</u>:

**LENDLEASE (US) CONSTRUCTION INC.**, formerly known as Lend Lease (US) Construction, Inc., a Florida corporation

By:_____
        Name:
        Title:

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, a New York corporation

By:_____
        Name:
        Title:

<u>**ESCROW AGENT**</u>:

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

By:_____
        Name: Kellie Thompson
        Title:    VP, Commercial Escrow Officer

8

**IN WITNESS WHEREOF**, the parties have executed this Escrow Agreement as of the Escrow Effective Date.

**CTIC:**

**CHICAGO TITLE INSURANCE COMPANY**,
a Florida corporation


By:_____
      Name:
      Title:


**LENDLEASE:**

**LENDLEASE (US) CONSTRUCTION INC.**, formerly known as Lend Lease (US) Construction, Inc., a Florida corporation

By:_____
      Name: Claire Johnston
      Title:  Authorized Signatory


**LENDLEASE (US) CONSTRUCTION HOLDINGS INC.**, a New York corporation

By:_____
      Name:  Claire Johnston
      Title:   Authorized Signatory


**ESCROW AGENT:**

**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

By:_____
      Name:
      Title:

## __EXHIBIT A__

## Disbursement Request

**Disbursement Request**

**Date:**
**Escrow No.:**  FBDO-2512047-KT
**Property:**     HOLDING ACCOUNT
                          CA


FIDELITY NATIONAL TITLE INSURANCE COMPANY
 555 S Flower Street, Suite 4420
Los Angeles, CA 90071
Phone: (213) 452-7100
Fax: (213) 439-9951
Attention: Kellie Thompson
VP, Commercial Escrow Officer
Fidelity National Title, National Commercial Services
Email: Kellie.Thompson@fnf.com

> Re: Disbursement Request pursuant to Escrow Agreement ("**Escrow Agreement**")
> among **LENDLEASE (US) CONSTRUCTION INC**., **LENDLEASE (US)
> CONSTRUCTION HOLDINGS INC**., **CHICAGO TITLE INSURANCE COMPANY**, a
> Florida corporation **("CTIC")**; and **FIDELITY NATIONAL TITLE INSURANCE
> COMPANY ("Escrow Agent"**) related to the Settlement Agreement (as defined in the
> Escrow Agreement)


Ladies and Gentlemen,

CTIC hereby notifies you that the Settlement Agreement (as defined in the Escrow Agreement)
has been executed by all parties thereto. A true and correct copy of the Settlement Agreement
is attached. You are therefore directed to disburse the entire amount of the Settlement Payment
(as defined in the Escrow Agreement) to CTIC and Interest (as defined in the Escrow
Agreement) to US Construction to the bank accounts, by wire transfer previously provided to
Escrow Agent by CTIC and US Construction, respectively.

You are to effect these wire transfers on the first business day immediately following the first
(1st) consecutive Business Day after this notice. Accordingly, you are to effect these wire
transfers on or before _____, 2026. Time is of the essence.

Please provide us simultaneous notice upon your initiating the wire transfer to CTIC when you
do so. Thank you.

                                    Very truly yours,

                                    **CHICAGO TITLE INSURANCE COMPANY**

                                    By_____
                                           Name:

Title:

cc: US Construction (to all notice addresses in Escrow Agreement)


Attachments: (Approval Order and Docket)

**<u>EXHIBIT B</u>**

**Dispute Notice**

**Dispute Notice**

**Date:**
**Escrow No.:**  FBDO-2512047-KT
**Property:**  HOLDING ACCOUNT
CA


FIDELITY NATIONAL TITLE INSURANCE COMPANY
555 S Flower Street, Suite 4420
Los Angeles, CA 90071
Phone: (213) 452-7100
Fax: (213) 439-9951
Attention: Kellie Thompson
VP, Commercial Escrow Officer
Fidelity National Title, National Commercial Services
Email: Kellie.Thompson@fnf.com

> Re: Dispute Notice pursuant to Escrow Agreement ("**Agreement**") among **LENDLEASE (US) CONSTRUCTION INC**., formerly known as Lend Lease (US) Construction Inc., a Florida corporation, ("**US Construction**") and **LENDLEASE (US) CONSTRUCTION HOLDINGS INC**., a New York corporation formerly known as Lend Lease (US) Construction Holdings Inc. ("**US Construction Holdings**" and, collectively with US Construction, "**Lendlease**"); **CHICAGO TITLE INSURANCE COMPANY**, a Florida corporation (**"CTIC"**); and **FIDELITY NATIONAL TITLE INSURANCE COMPANY** (**"Escrow Agent"**) related to the Settlement Agreement (as defined in the Agreement)


Ladies and Gentlemen,

Lendlease hereby notifies you that Lendlease disputes CTIC's right to receive the Settlement Payment,[*] as set forth in the Disbursement Request, dated _____, 2026, and states, represents and warrants the following in support of such dispute (collectively, the "**Dispute Grounds**"):

1.  The date of this Dispute Notice is _____..

2.  This Dispute Notice is being delivered to Escrow Agent and CTIC pursuant to the delivery requirements of the Agreement.

3.  This Dispute Notice affects the entire amount of the Settlement Payment unless a lesser amount is inserted here:: _____ (insert portion affected, if applicable. (If no initialing appears, this item shall not provide a Dispute Grounds.)

---

[*] Capitalized terms used but not defined herein shall have the meaning ascribed thereto in the Agreement.

4.   This Dispute Notice is issued because the Settlement Agreement has not been executed by all parties thereto by February 13, 2026.

Please notify us and CTIC (copied below) of any actions that Escrow Agent takes in response to this Dispute Notice. Thank you.

Very truly yours,

**LENDLEASE (US) CONSTRUCTION INC**.

By_____
　　　　Name:
　　　　Title:

and

**LENDLEASE (US) CONSTRUCTION HOLDINGS INC**.

By_____
　　　　Name:
　　　　Title:

Attachments (Docket; notice, motion or stay order; sworn affidavit)

cc: Chicago Title Insurance Company (via email: john.klein@fnf.com; laura.vasey@fnf.com; whawkins@loeb.com; ecapewell@loeb.com; rsquire@aalrr.com; ryan.squire@aalrr.com; scott.mahler@aalrr.com; smahler@aalrr.com; and agrigoryan@aalrr.com).

**<u>EXHIBIT C</u>**

**Escrow Supplemental Form**



**SUPPLEMENTAL
ESCROW INSTRUCTIONS
FUNDS HELD**

Fidelity National Title Insurance Company
555 S Flower Street, Suite 4420
Los Angeles, CA 90071

**Date:**       January 21, 2026
**Escrow No.:**  FBDO-2512047-KT

Fidelity National Title Insurance Company ("**Escrow Agent**") is hereby directed to hold the sum of Twenty Million And No/100 Dollars ($20,000,000.00) (the "**Escrow Funds**") in the account of Fidelity National Title Insurance Company, as holder for Lendlease (US) Construction Inc., a Florida corporation ("**US Construction**"), pursuant to that certain Escrow Agreement dated January 21, 2026 between Chicago Title Insurance Company, a Florida corporation, Lendlease (US) Construction Holdings Inc., a New York corporation, US Construction, and the Escrow Agent (the "**Escrow Agreement**").

Said funds are to be held in ☒ escrow trust account or ☐ savings account.  (If savings account, have savings account instruction form executed.)

**CONDITIONS FOR RELEASE/PAYMENT OF FUNDS**

1.   Escrow Agent shall simultaneously disburse the Escrow Funds to Chicago Title Insurance Company and any accrued interest on such Escrow Funds to US Construction, following receipt of the Disbursement Request Letter (as defined in the Escrow Agreement), unless a Dispute Notice  (as defined in the Escrow Agreement) is timely received by Escrow Agent, and/or Chicago Title Insurance Company has not delivered a copy of the Settlement Agreement (as defined in the Escrow Agreement) to Escrow Agent on or before February 13, 2026.

In the event the requirements for release of funds as stated above have not been met by July 15, 2026, Escrow Holder is authorized to resign by giving thirty (30) days written notice thereof to the parties hereto.  The parties shall furnish the Escrow Agent written instructions for the release of the escrow funds.  If the Escrow Agent shall not have received such written instructions within the thirty (30) days, the Escrow Agent may petition any court of competent jurisdiction for the appointment of a successor Escrow Agent and upon such appointment deliver the escrow funds and escrow documents to such successor.

The undersigned agree that there will be an initial charge of No Dollars And No/100 Dollars ($0.00) for holding said funds and a service charge of No Dollars And No/100 Dollars ($0.00) per calendar month for administering said funds.  The service charge may be deducted from said funds for each and every calendar month or any portion thereof during which these funds are held.

Any modification(s) of these instructions shall be given mutually by the undersigned in writing and Escrow Holder is specifically instructed that only such mutual instructions are to be recognized.

In the event of conflicting claims to the funds held pursuant to these instructions, you have absolute right at your election, to file an action in interpleader requiring the principals to answer and litigate their several claims and rights amongst themselves, and you are authorized to comply with the requisite interpleader statutes of the State of California in this regard.  Any cost relative to same shall be deducted from the funds held.

Costs and fees incurred by or owing to the Escrow Agent may, at the option of the Escrow Agent, be deducted from any funds held pursuant hereto.

The parties hereto do hereby certify that they are aware that the Federal Deposit Insurance Corporation ("**FDIC**") coverages apply only to a cumulative maximum amount of $250,000 for each individual depositor for all of the depositor's accounts at the same or related institution.  The parties hereto further understand that certain banking

# SUPPLEMENTAL ESCROW INSTRUCTIONS
# FUNDS HELD
(continued)

instruments such as, but not limited to, repurchase agreements and letters of credit are not covered at all by FDIC insurance.

Further the parties hereto understand that Escrow Agent assumes no responsibility for, nor will the parties hereto hold Escrow Agent liable for, a loss occurring which arises from the fact that the amount of the above account may cause the aggregate amount of any individual depositor's accounts to exceed $250,000 and that the excess amount is not insured by the Federal Deposit Insurance Corporation or that FDIC insurance is not available on certain types of bank instruments.

These instructions may be executed in counterparts, each of which shall be deemed an original, regardless of the date of execution and delivery.  All such counterparts shall constitute one and the same document.

**END OF INSTRUCTIONS**

## SUPPLEMENTAL ESCROW INSTRUCTIONS
## FUNDS HELD
(continued)

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

**LENDLEASE (US) CONSTRUCTION INC.**


BY:_____          _____
                                              Date


**CHICAGO TITLE INSURANCE COMPANY**

                                              January 21, 2026
BY:_____          _____
                                              Date

Laura Maines Vasey
Senior Vice President, Major Claims Counsel

## SUPPLEMENTAL ESCROW INSTRUCTIONS
## FUNDS HELD
(continued)

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

**LENDLEASE (US) CONSTRUCTION INC.**


BY:_____          January 21, 2026_____
                                                               Date


**CHICAGO TITLE INSURANCE COMPANY**


BY:_____          January 21, 2026_____
                                                               Date

# **EXHIBIT D**

**Escrow Interest Bearing Account Form**

 **Fidelity National Title**
NATIONAL COMMERCIAL SERVICES

**ESCROW INSTRUCTIONS**
**INTEREST BEARING ACCOUNTS**

Fidelity National Title Insurance Company
555 S Flower Street, Suite 4420
Los Angeles, CA 90071
Phone:  (213)452-7100  Fax:  (213)439-9951

**Date:**         January 21, 2026
**Escrow No.:**  FBDO-2512047-KT
**Property:**    HOLDING ACCOUNT
                CA

From the funds deposited in the above numbered escrow for my account, you are hereby instructed to deposit Twenty Million Dollars And No/100 ($20,000,000.00) with CITY NATIONAL BANK whose address is:  555 S. Flower Street, 17th Floor, Los Angeles, CA 90071, in an interest bearing account, at the prevailing rate of interest.

My Taxpayer Identification Number is ▮▮▮▮▮▮▮▮

The account is to be entitled "Fidelity National Title Insurance Company, as holder for Lendlease (US) Construction Inc., a Florida corporation."

☐ Any interest earned by such deposit shall be credited to the account of the undersigned depositor at close of escrow.  In the event the escrow does not close, all interest earned shall be payable as stated on those instructions that allow the escrow to be cancelled.

(or)

☒ Any interest earned by such deposit shall be credited to the account of:
Lendlease (US) Construction Inc., a Florida corporation.

_____

The undersigned hereby acknowledges the following:

1.  The selection of the depository was made at the sole discretion of the undersigned.

2.  The undersigned has made their independent inquiry of the depository and Fidelity National Title Insurance Company has no liability in the event of failure, insolvency or inability of the depository to pay said funds, or accrued interest upon demand for withdrawal.

3.  The undersigned acknowledge their familiarity with limitations on payments made on accounts in excess of Two Hundred Fifty Thousand and No/100 dollars ($250,000.00) and the cumulative effect of other accounts held or owned by undersigned in the above-named depository.

4.  Escrow Holder is prohibited from withdrawing funds except to redeposit them into the escrow trust account.

5.  Fidelity National Title Insurance Company is not responsible for levies by taxing authorities based upon the taxpayer identification number used to establish this interest bearing account.

**END OF INSTRUCTIONS**

IN WITNESS WHEREOF, the undersigned have executed this document on the date(s) set forth below.

**DEPOSITOR(S):**

LendLease (US) Construction Inc.

BY:_____          _____January 21, 2026_____
                                                          Date

**Exhibit "C"**

**Approval Order**

**See attached.**

SETTLEMENT AGREEMENT
EXECUTION VERSION

1

**BRYAN CAVE LEIGHTON PAISNER LLP**
SHARON Z. WEISS (State Bar No. 169446)

2

sharon.weiss@bclplaw.com
120 Broadway, Suite 300

3

Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100

4

Facsimile:    (310) 576-2200

5

JARRET P. HITCHINGS (*Pro Hac Vice*)

6

jarret.hitchings@bclplaw.com
One Wells Fargo Center

7

301 S. College Street, Suite 2150
Charlotte, NC 28202

8

Telephone    (704) 749-8999
Facsimile:    (704) 749-8990

9

Attorneys for Debtor and Debtor-in-Possession

10

11

12

13

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah Saltzman |
| Debtor and Debtor-in-Possession | Chapter 11 |
| | **ORDER GRANTING DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.** |
| | **[HEARING TO BE SET]** |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The Court having reviewed the *Motion For Approval Of Settlement Agreement And Related*

2    *Relief Pursuant To Federal Rule Of Bankruptcy Procedure 9019 et al.; Declaration Of Bradley D.*

3    *Sharp In Support Thereof* (the "9019 Motion") filed by Debtor and the Court having read and

4    considered the 9019 Motion, its supporting *Memorandum of Points and Authorities*, the

5    *Declaration of Bradley D. Sharp* (the "Sharp Declaration"), and the settlement agreement (the

6    "Agreement")[1] attached as Exhibit 1 to the Sharp Declaration and finding that the notice of the

7    9019 Motion was proper, and finding that the relief requested by Oceanwide in the 9019 Motion

8    was proper and supported by evidence; and further finding that the Agreement was highly

9    negotiated by sophisticated parties, was entered into in good faith by all of the Parties thereto, and

10    is in the best interest of creditors and the Estate; and good cause appearing therefor,

11    IT IS HEREBY ORDERED:

12    1.    The Motion is granted.

13    2.    The Agreement described in the 9019 Motion and each of the terms set forth therein

14    are approved pursuant to section 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019.

15    The Agreement is legally binding against the parties thereto in all respects.

16    3.    The following claims are allowed as secured claims against the Debtor's estate in

17    the amounts and priorities set forth below, and the Parties are bound thereby:

18    (a)    The LADI Secured Claim is senior in priority to all Mechanic's Lien Claims.

19    (b)    The amount of the LADI Secured Claim and the LADI Bankruptcy Claim

20    have a collective total indebtedness due and owing as of October 31, 2025, in the amount

21    of $230,000,000 ("LADI Indebtedness"), which: (i) accrues interest at the rate of $60,000

22    per diem from and after November 1, 2025; provided, however, solely in the event of a

23    Qualifying All Cash Asset Sale, the Holder will recalculate the per diem at $40,000 per day;

24    and (ii) continues to accrue reasonable attorneys' fees, costs, expenses, and other

25    Reimbursable Costs incurred by or on behalf of LADI on November 1 and 2, 2025, and

26    KPC (and any other Holder) from and after November 3, 2025, which amounts will be

27

28    [1]    Defined terms used herein, but not defined herein, shall have the meanings ascribed to
such terms in the Agreement.

1    added to the LADI Indebtedness and accrue interest at the rate of 10% simple per annum

2    from and after the date paid.

3         (c)    The Mechanic's Lien Claims held by US Construction and DTLA Funding

4    total $168,950,128.56 in the amounts set forth on the ML Exhibit attached to the Agreement,

5    with the US Construction Secured Claim totaling $71,349,256 and the DTLA Funding

6    Secured Claim totaling $97,600,872.56. The Mechanic's Lien Claims are junior in priority

7    and right to payment of the LADI Bankruptcy Claim.

8         (d)    The LADI Bankruptcy Claim and the Mechanic's Lien Claims are allowed

9    and secured in full by the Property.

10        (e)    The respective owners of the LADI Bankruptcy Claim and Mechanic's Lien

11   Claims may credit bid their respective secured claims towards the purchase of the Property

12   in the amounts set forth above in accordance with their priority.

13        (f)    Solely in the event that a Qualifying All Cash Asset Sale occurs: (a) the

14   LADI Bankruptcy Claim will be reduced by Twenty Million and No/100 Dollars

15   ($20,000,000.00); and (b) the US Construction Secured Claim will be increased by Twenty

16   Million and No/100 Dollars ($20,000,000.00), as set forth in the Bankruptcy Stipulation

17   filed as Docket Number __.

18        4.    In the event of any sale in which all or substantially all of the Assets including the

19   Property are sold in this Bankruptcy Case, the proceeds will be distributed in the following order,

20   with each tranche satisfied in full before any proceeds are distributed to the tranche below it, unless

21   otherwise agreed in writing by all creditors in the applicable tranche:

22        (a)    First, to satisfy in full the allowed secured property taxes owed to the County

23   of Los Angeles ("Secured RP Tax Claims") or such lesser amount as the purchaser might

24   be allowed to pay to the County of Los Angeles;

25        (b)    Second, to satisfy in full the total amount of the DIP Loan Claims;

26        (c)    Third, to satisfy in full the transaction costs of the sale in the amount

27   approved by the Bankruptcy Court;

28

(d)     Fourth, to satisfy in full the LADI Bankruptcy Claim as may be adjusted by the Bankruptcy Stipulation, and, if CTIC notifies Oceanwide at least three (3) Business Days in advance of any distribution, Oceanwide will pay to CTIC the amount of any CTIC Reimbursement Right instead of paying this amount to the holder of the LADI Bankruptcy Claim;

(e)     Fifth, to satisfy the Mechanic's Lien Claims, on a pro rata basis as shown in the ML Exhibit, as may be adjusted by the Bankruptcy Stipulation; and

(f)     Thereafter, as directed by the Bankruptcy Court in this Bankruptcy Case, through the terms of a Chapter 11 plan or otherwise.

5.     The Debtor is authorized to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement and to perform such terms as set forth therein.

6.     This Court retains jurisdiction to interpret and enforce the Agreement and to resolve any disputes arising out of or related to the Agreement or this Bankruptcy Case.

7.     The Court finds that the Agreement was negotiated at arm's length by sophisticated parties represented by counsel, was entered into in good faith, and constitutes a fair and reasonable compromise within the meaning of Federal Rule of Bankruptcy Procedure 9019. The settlement is in the best interests of the Debtor, its estate, and all creditors.

8.     The Agreement is binding upon and inures to the benefit of the Parties and their respective successors, assigns, and parties-in-interest in this Bankruptcy Case, including any trustee appointed in this case or in any case to which this case may be converted, any other representative of the estate, any reorganized debtor emerging from a Chapter 11 plan confirmed in this case, and the Debtor after emergence from this Bankruptcy Case and upon the dismissal or closing of this case.

IT IS SO ORDERED.

###

Bryan Cave Leighton
Paisner LLP

4

**<u>Exhibit "D"</u>**

**<u>Bankruptcy Stipulation and Order</u>**

**See attached.**

-24-                        SETTLEMENT AGREEMENT
                                                                              EXECUTION VERSION

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
Sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310)576-2100
Facsimile:    (310)576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
Jarrett.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:    (704)749-8999
Facsimile:    (704)749-8990

*Attorneys for Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO. 2:24-BK-11057-DS |
| OCEANWIDE PLAZA LLC, | Chapter: 11 |
| Debtor. | **STIPULATION REGARDING THE AMOUNT OF LENDLEASE (US) CONSTRUCTION INC. AND L.A. DOWNTOWN INVESTMENT LP SECURED CLAIMS** |

This stipulation is entered into by and among (i) Lendlease (US) Construction Inc. ("US Construction"), (ii) L.A. Downtown Investment LP ("LADI"), (iii) KPC Plaza, LLC ("KPC") and (iv) Oceanwide Plaza LLC ("Oceanwide" or the "Debtor", and together with US Construction, LADI and KPC, the "Parties"), and acknowledged by Chicago Title Insurance Company ("CTIC") each through its undersigned counsel, hereby agree and enter into this stipulation ("Stipulation") as follows:

# **RECITALS**

A.      Oceanwide is a debtor and debtor-in-possession in the bankruptcy proceeding pending before the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") styled In re Oceanwide Plaza LLC, Case No. 24-11057 (Bankr. C.D. Cal. Feb. 13, 2024). Oceanwide timely filed an answer and reservation of rights [ECF No. 27] with respect to the involuntary petition on March 8, 2024, whereby it consented to the entry of an order for relief. An Order for Relief was entered on March 11, 2024 [ECF No. 28].  Oceanwide remains the Debtor-In-Possession in the Bankruptcy Case.

B.      The Parties, CTIC, and certain others entered into a Settlement Agreement, Release and Covenant Not to Sue, dated January __, 2026 ("Agreement").

C.      The Agreement provides that in the event of a Qualifying All Cash Asset Sale[1], the amount of the LADI Bankruptcy Claim will be reduced by $20,000,000.00 and the amount of the US Construction Secured Claim will be increased by $20,000,000.00, provided that CTIC receives the Settlement Payment on certain terms and conditions. On _____, 2026, CTIC received the Settlement Payment in accordance with such terms and conditions.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1.      If a Qualifying All Cash Asset Sale occurs, the allowed amount of the LADI Bankruptcy Claim will be reduced by $20,000,000.00 and the allowed amount of the US Construction Secured Claim will be increased by $20,000,000.00, specifically to $91,349,256.00.

2.      Each of the Parties warrants that it is entering into this Agreement on behalf of, and this Agreement is and shall be binding upon, itself and its successors and assigns. Regarding the Debtor, such successors and assigns include, without limitation, any trustee appointed in the case including in the event of conversion of this case to a Chapter 7 case, any emerging entity from a Chapter 11 plan confirmed in the case, and Oceanwide after emergence from the Case and/or upon the dismissal or closing of the Case.

---

[1] All defined terms not defined in this Stipulation have the meanings ascribed to them in the Agreement.

184925954.6

3.     The Parties agree to entry of the order (the "Order") substantially in the form of Exhibit A attached to this Stipulation.

4.     The terms and conditions of this Stipulation and the Order shall be immediately effective and enforceable upon entry of the Order.

**IN WITNESS HEREOF,** the Parties and CTIC, by their respective authorized counsel, have executed this Stipulation as of the date written below:

-3-

1

DATED:  January ___, 2026                    **BRYAN CAVE LEIGHTON PAISNER**
2                                                          **LLP**

3
                                                           By:_____
4                                                               Sharon Z. Weiss
                                                                Attorneys for Debtor and Debtor-in-
5                                                               Possession, Oceanwide Plaza LLC

6    DATED:  January __, 2026                     **PERKINS COIE LLP**

7
                                                           By:_____
8                                                               Sara L. Chenetz
                                                                Attorneys for Lendlease (US)
9                                                               Construction Inc. and certain affiliates

10
     DATED:  January __, 2026                     **GREENBERG TRAURIG, LLP**
11

12                                                         By:_____
                                                                Howard J. Steinberg
13                                                              Attorneys for L.A. Downtown Investment
                                                                LP
14
     DATED:  January __, 2026                     **GREENBERG TRAURIG, LLP**
15

16                                                         By:_____
                                                                Eric V. Rowen
17                                                              Attorneys for KPC Plaza, LLC

18   Acknowledged by:

19   DATED:  January __, 2026                     **LOEB & LOEB LLP**

20
                                                           By:_____
21                                                              William M. Hawkins
                                                                Attorneys for Chicago Title Insurance
22                                                              Company

23

24

25

26

27

28

-4-

**<u>Exhibit A</u>**

**Order**

**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
Sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310)576-2100
Facsimile:    (310)576-2200

Jarret P. Hitchings (*Pro Hac Vice*)
Jarrett.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:    (704)749-8999
Facsimile:    (704)749-8990

*Attorneys for Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>OCEANWIDE PLAZA LLC,<br><br>               Debtor. | CASE NO. 2:24-BK-11057-DS<br><br>Chapter: 11<br><br>**ORDER APPROVING AND IMPLEMENTING THE STIPULATION REGARDING THE AMOUNTS OF LENDLEASE (US) CONSTRUCTION INC. AND L.A. DOWNTOWN INVESTMENT LP SECURED CLAIMS** |

The Court having reviewed and considered the *Stipulation Regarding the Amount of Lendlease (US) Construction Inc. and L.A. Downtown Investment LP Secured Claims* [ECF No. ___] (the "Stipulation") and the record in this case, and good cause appearing:

IT IS HEREBY ORDERED that:

1.    The recitals and agreements in the Stipulation are incorporated by reference as if fully set forth herein.

2.    If a Qualifying All Cash Asset Sale occurs, the allowed amount of the LADI

Bankruptcy Claim, will be reduced by $20,000,000.00 and the allowed amount of the US

Construction Secured Claim will be increased by $20,000,000.00, specifically to $91,349,256.00.

3.      The terms of the Stipulation and this Order are binding on all parties to the

Stipulation and Agreement, their successors and assigns, and the Debtor's successors and assigns

including any trustee appointed in the case including in the event of conversion of this case to a

chapter 7 case, any entity emerging from a Chapter 11 plan confirmed in the case, and Oceanwide

after emergence from the case and/or upon the dismissal or closing of the case.

4.      The Debtor is authorized and directed to take any and all actions reasonably

necessary or appropriate to effectuate the relief granted pursuant to the Stipulation and this Order.

5.      The Debtor's claims agent, Stretto, is authorized to take actions consistent with

this Order to update the claims registry maintained in the Bankruptcy Case solely in the event of a

Qualifying All Cash Asset Sale.

6.      The Court retains jurisdiction over all matters arising from or related to the

implementation, interpretation, and enforcement of this Order.

####

-7-

**Exhibit "E"**

**ML Exhibit**

**See attached.**

-25- SETTLEMENT AGREEMENT
EXECUTION VERSION

# List of Mechanic's Lien Claims

| Formerly Held By | Recorded Document Number for Lien | Held By as of Effective Date of Settlement[1] | Amount of Lien |
|---|---|---|---|
| ACCO Engineered Systems, Inc. | 20190567238 | DTLA Funding, LLC | $18,898,044 |
| American Stair Corporation | 20201241227 | DTLA Funding, LLC | $731,322 |
| Bapko Metal, Inc. (Divider Beam) | 20190567267 | DTLA Funding, LLC | $173,004 |
| Bapko Metal, Inc. (Main Contract) | 20190708986 | DTLA Funding, LLC | $3,370,650 |
| CMF, Inc. | 20200133070 | DTLA Funding, LLC | $6,377,586 |
| Continental Marble and Tile Co. T1 | 20201656243 | DTLA Funding, LLC | $49,165 |
| Continental Marble and Tile Co. T2 & T3 | 20201656243 | DTLA Funding, LLC | $2,484,161 |
| Enclos Corp. | 20190566151 | DTLA Funding, LLC | $5,950,000 |
| Fetzers Inc. | 20200334576 | DTLA Funding, LLC | $2,001,694 |
| J.T. Wimsatt Contracting Co., Inc. | 20200019597 | DTLA Funding, LLC | $4,049,373 |
| Johnson Controls Fire Protection LP fka SimplexGrinnel LP | 20200681757 | DTLA Funding, LLC | $1,383,546 |
| Kovach LLC dba Kovach Building Enclosures | 20191114551 | DTLA Funding, LLC | $441,108.47 |
| Lendlease (US) Construction Inc. | 20201438216 | Lendlease (US) Construction Inc. | $16,499,256 |
| Martin Brothers/Marcowall Inc. | 21091440932 | DTLA Funding, LLC | $3,871,200 |
| Mitsubishi Electric US, Inc. dba Elevator & Escalator Division | 202001437424 | DTLA Funding, LLC | $4,800,000 |
| Pan-Pacific Mechanical LLC | 20190347895 | DTLA Funding, LLC | $6,775,430 |
| SASCO | 20200114635 | DTLA Funding, LLC | $17,448,380 |
| Schuff Steel Company | 20201324605 | DTLA Funding, LLC | $4,615,000 |
| Sharpe Interior Systems, Inc. | 20200215838 | Lendlease (US) Construction, Inc. | $3,850,000 |
| Standard Drywall, Inc. | 20190435698 | DTLA Funding, LLC | $1,168,118 |
| Star Hardware, Inc. | 20200618966 | DTLA Funding, LLC | $1,596,331 |
| The Nevell Group, Inc. | 20190434839 | DTLA Funding, LLC | $2,900,241.09 |

[1] DTLA Funding, LLC and Lendlease (US) Construction, Inc. represent and warrant that they have no further obligation to the Mechanic's Lien Claims transferors for these assignments of claims.

| Formerly Held By | Recorded Document Number for Lien | Held By as of Effective Date of Settlement[1] | Amount of Lien |
|---|---|---|---|
| Webcor Construction, LP | 20190264429 | Lendlease (US) Construction Inc. | $51,000,000 |
| Woodbridge Glass, Inc. (Subcontract I) | 20190618245 | DTLA Funding, LLC | $3,465,941 |
| Woodbridge Glass, Inc. (Subcontract II) | 20190618246 | DTLA Funding, LLC | $2,269,610 |
| XL Fire Protection Co. | 20190290462 | DTLA Funding, LLC | $1,912,753 |
| YESCO Signs LLC | 20201424299 | DTLA Funding, LLC | $868,215 |
|  |  |  |  |
|  |  | *Lendlease (US) Construction Inc. Subtotal* | *$71,349,256* |
|  |  | *DTLA Funding, LLC Subtotal* | *$97,600,872.56* |
|  |  | **TOTAL** | $168,950,128.56 |

183317044.4
125976.0043\183317044.4-1/12/26

**Exhibit "F"**

**Agreed Judgment**

**See attached.**

GREENBERG TRAURIG, LLP
Eric V. Rowen (SBN 106234)
Eric.Rowen@gtlaw.com
Julianna M. Simon (SBN 307664)
Julianna.Simon@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: (310) 586-7700 / Fax: (310) 586-7800

Todd A. Pickles (SBN 215629)
picklest@gtlaw.com
400 Capitol Mall, Suite 2400
Sacramento, CA 95814-3938
Tel: (916) 442-1111 / Fax: (916) 448-1709

Attorneys for Defendant and Cross-Defendant
L.A. DOWNTOWN INVESTMENT LP

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| WEBCOR CONSTRUCTION, LP, a California limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>LENDLEASE (US) CONSTRUCTION, INC., a Florida corporation; OCEANWIDE PLAZA, LLC, a Delaware limited liability company; L.A. DOWNTOWN INVESTMENT, LP, a California limited partnership; CHICAGO TITLE INSURANCE COMPANY, a Florida corporation; MASONRY CONCEPTS, INC., a California corporation; TWINING, INC., a California corporation; PHL, INC. doing business as VNSM, a California corporation; and DOES 1 through 100, inclusive, et al.,<br><br>Defendants.<br><br>_____<br><br>AND ALL CONSOLIDATED ACTIONS. | **CASE NO. 19STCV03357**<br><br>Consolidated Cases: 19STCV19167, 19STCV22183, 19STCV24347, 19STCV27946, 19STCV28063, 19STCV28703, 19STCV30916, 19STCV32112, 19STCV42283, 20STCV01887, 20STCV05020, 20STCV11335, 20SCTV13074, 20STCV13374, 20STCV13646, 20STCV18563, 20STCV20642, 20STCV20757, 20STCV23227, 20STCV28240, 20STCV28272, 20STCV29459, 20STCV32733, 20STCV34840, 20STCV37800, 20STCV46046, 20STCV47808, 20STCV49694, 21STCV09007, 21STCV41369, 21STCV42154, 21STCV42277<br><br>[Assigned for all purposes to the Honorable William F. Highberger, Dept. 10]<br><br>**[PROPOSED] FINAL JUDGMENT** |

This Court, having taken evidence and heard arguments, hereby makes and enters the following final judgment in this consolidated matter:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1. The Court adopts as final and incorporates by reference its Order dated March 22, 2023, granting the cross-motion for summary adjudication by L.A. Downtown Investment LP ("LADI"), joined by Chicago Title Insurance Company ("CTIC"), and denying the cross-motion for summary adjudication by Lendlease (US) Construction Inc. ("Lendlease") and Webcor Construction LP ("Webcor").

    a. Further, pursuant to the stipulation of facts submitted by the parties on October 12, 2022, and December 1, 2022, the testimony heard and evidence taken during the bench trial commencing on November 12, 2024, and consideration of California Civil Code Sections 8450, 8454, and 8042, the Court further finds that the deed of trust executed by Oceanwide Plaza LLC ("Oceanwide") for the benefit of LADI and thereafter recorded with the L.A. County Recorder's Office on or about July 20, 2015, as Instrument No. 20150874467 (the "LADI DOT") against title to that certain real property described as a large, mixed-use development located on a full city block having a common address of 1101 S. Flower Street, Los Angeles, California, and legally described as set forth in the LADI DOT ("the Property") has priority over any and all mechanic's liens with respect to the work of improvement that commenced after July 20, 2015 (collectively defined below as the Subordinate Mechanic's Lien Claims), including but not limited to the mechanic's liens adjudicated in this action for all works of improvement performed under limited notices to proceed on or after December 7, 2015, and under the contract entered into between Lendlease and Oceanwide on or about July 19, 2016 ("July 2016 Contract").

2. The Court adopts as final and incorporates herein its Statement of Decision dated December 19, 2023, with respect to the Phase I Trial ("Phase IA Statement of Decision").

3. The Court adopts as final and incorporates herein its Statement of Decision dated November 30, 2023, with respect to the Phase I Trial ("Phase IB Statement of Decision").

a. Lendlease is awarded damages for breach of contract in the amount of $169,948,122.23 against Oceanwide. This amount is made up of (1) $118,482,628 Oceanwide conceded it owed Lendlease during the Phase I Trial; (2) the Court's finding as set out in the Phase IB Statement of Decision that Lendlease was owed a further $465,494.23 in contractual damages, and (3) the Court's findings in the Phase III trial that, based on the agreement between Oceanwide and Lendlease, the reasonable value of Webcor's mechanic's lien under California Civil Code section 8430(a) is $51,000,000.

b. Lendlease is awarded prompt payment penalties in the amount of $121,866,906 against Oceanwide.

c. Lendlease is awarded prejudgment contractual interest in the amount of $2,512,743 against Oceanwide.

4. The Court adopts as final and incorporates herein its Statement of Decision dated July 3, 2024, with respect to the Phase III Trial ("Phase III Statement of Decision").

5. The Court adopts as final and incorporates herein its ruling on October 15, 2024, granting CTIC's motion for summary adjudication  on its second amended cross-complaint against Lendlease and Lend Lease (US) Construction Holdings, Inc., now known as Lendlease (US) Construction Holdings, Inc. ("Construction Holdings"), holding Lendlease was obligated to subordinate its mechanic's liens against the Property to the LADI DOT and to provide a recordable instrument to that effect as required by Paragraph 8 (the subordination provision) of the Contractor's Indemnity Agreement dated July 8, 2015 (the "Indemnity Agreement") entered into by Lendlease and Construction Holdings, which order was filed in LASC Case No. 19STCV03357. This judgment may be recorded, obviating the need for Lendlease to provide a separate recordable subordination agreement regarding the matters resolved by this judgment.

6. The Court adopts as final and incorporates herein its Statement of Decision so ordered by the Court on February 25, 2025, with respect to the Phase II Trial ("Phase II Statement of Decision"). As set forth in the Phase II Statement of Decision, the Court finds, among other things, that:

a. Webcor assigned to Lendlease (by way of an Assignment of Claims dated October 12, 2023) the claims of and mechanic's lien recorded by Webcor on or about March 26, 2019, as Instrument No. 20190264429, Official Records ("Webcor Mechanic's Lien").

b. The LADI DOT is valid, enforceable, and senior in priority to the mechanic's liens of all mechanic lien claimants in this action, including, without limitation, Lendlease's mechanic's liens and the Webcor Mechanic's Lien.

c. Lendlease has subordinated its mechanic's liens, the Webcor Mechanic's Lien, and any and all other mechanic's liens it has or may acquire by assignment or otherwise by operation of Paragraph 8 of the Indemnity Agreement.

d. Lendlease breached the Indemnity Agreement and the covenant of good faith and fair dealing implied therein, and CTIC is entitled to recover damages from that breach including attorney's fees, costs, and expenses CTIC paid on LADI's behalf to defend LADI against Lendlease's claims and affirmative defenses. Pursuant to a settlement by and between, *inter alia*, Lendlease and Construction Holdings, on the one part, and CTIC, on the other part, the Court is advised that damages for this claim have been fully satisfied and, as such, the contemplated Phase IV Trial to determine damages for breach of the Indemnity Agreement was vacated, and no damages calculation is requested or required.

e. As of October 31, 2024, the principal indebtedness (not including fees, costs, and expenses) secured by the LADI DOT was $180,178,235, and the default interest rate of 10% is reasonable and is not a penalty or other punitive accrual.

7. The Court adopts as final and incorporates herein its Order Regarding Amounts Secured by LADI DOT filed on October 10, 2025.

a. Pursuant to this Order and the stipulation of LADI, Oceanwide, CTIC, and Lendlease, the Court finds, among other things, that (i) as of May 31, 2025, LADI had paid $648,551.91 in attorney's fees, costs, and expenses, not including interest, in connection with this action, *In re Oceanwide Plaza LLC*, United States Bankruptcy Court for the Central District of California, Case No. 2:24-bk-l1057-DS (the "Oceanwide Bankruptcy Case"), and arranging for the notice of default and potential notice of sale of the property; (ii) as

[PROPOSED] FINAL JUDGMENT

of May 31, 2025, CTIC had paid or was obligated to pay $19,867,974.40 in attorney's fees, costs and expenses, defending LADI in connection with the Action and the Oceanwide Bankruptcy Case under the terms of the LADI DOT ("CTIC Expenses"); (iii) as of May 31, 2025, $3,367,252.03 in interest has accrued on the CTIC Expenses; and (iv) such Order was without prejudice to CTIC and/or LADI's accrual after May 31, 2025, of reasonable and necessary attorney's fees, costs, and expenses, plus interest under the terms of the LADI DOT.

b. Pursuant to a settlement by, between, and among, *inter alia*, LADI, Oceanwide, CTIC, Lendlease, and DTLA Funding, LLC, the Court finds, among other things, that (i) as of October 31, 2025, the total amount of all indebtedness (including the attorney's fees, fees, costs, and expenses paid by CTIC in this action, together with interest thereon) secured by the LADI DOT was $230,000,000, and (ii) from and after November 1, 2025, the indebtedness secured by the LADI DOT accrues and includes (1) interest at the rate of $60,000 per day, and (2) fees, costs, and expenses defined as "Reimbursable Costs" in the LADI DOT.

8. The Court adopts as final and incorporates herein its Order Granting in Part Motion by LADI and CTIC for Determination of Attorneys' Fees, Costs and Expenses Secured by DOT filed on October 17, 2025.

9. Pursuant to California Civil Code section 8450(a), the following parties or their successors and/or assigns maintain mechanic's liens pari passu as of February 22, 2016 (collectively, the "Subordinate Mechanic's Lien Claims"), against title to the Property in the following amounts:

| Subcontractor Name | Lien Amount |
| --- | --- |
| ACCO Engineered Systems, Inc. | $18,898,044 |
| American Stair Corporation | $731,322 |
| CMF, Inc. | $6,377,586 |
| Continental Marble and Tile Co. T1 | $49,165 |
| Continental Marble and Tile Co. T2 & T3 | $2,484,161 |
| Martin Brothers/Marcowall Inc. | $3,871,200 |
| Fetzers Inc. | $2,001,694 |
| Standard Drywall, Inc. | $1,168,118 |
| Star Hardware, Inc. T1 Deposit | $6,874 |
| Star Hardware, Inc. T2/T3 Deposit | $7,707 |

[PROPOSED] FINAL JUDGMENT
55836193

| Subcontractor Name | Lien Amount |
|---|---|
| Star Hardware, Inc. T1 | $469,836 |
| Star Hardware, Inc. T3 & T3 | $1,111,914 |
| XL Fire Protection Co. | $1,912,753 |
| Bapko Metal, Inc. (Main Contract) | $3,370,650 |
| Bapko Metal, Inc. (Divider Beam) | $173,004 |
| Enclos Corp. | $5,950,000 |
| J.T. Wimsatt Contracting Co., Inc. | $4,049,373 |
| Johnson Controls Fire Protection LP fka SimplexGrinnel LP | $1,383,546 |
| Kovach LLC dba Kovach Building Enclosures | $441,108.47 |
| Mitsubishi Electric US, Inc. dba Elevator & Escalator Division | $4,800,000 |
| Pan-Pacific Mechanical LLC | $6,775,430 |
| SASCO | $17,448,380 |
| Schuff Steel Company | $4,615,000 |
| Sharpe Interior Systems, Inc. | $3,850,000 |
| The Nevell Group, Inc. | $2,900,241.09 |
| Webcor Construction, LP | $51,000,000 |
| Woodbridge Glass, Inc. (Subcontract I) | $3,465,941 |
| Woodbridge Glass, Inc. (Subcontract II) | $2,269,610 |
| YESCO Signs LLC | $868,215 |
| Lendlease (US) Construction, Inc. | $16,499,256 |
| **TOTAL** | **$168,950,128.56** |

10. Solely in respect to the Subordinate Mechanic's Lien Claims, all of which are junior, subordinate, and subject to the LADI DOT:

   a. The levying officer as designated by the Court shall sell the Property at public sale pursuant to and in accordance with applicable law on the date to be set by the levying officer at the time and location to be designated by levying officer through written notice to all parties of record pursuant to and in accordance with applicable law, with such sale of the Property to the highest bidder for cash and with such sale and Property subject to the LADI DOT, which is unaffected by any such sale authorized in this Paragraph and which has priority and is superior over the Subordinate Mechanic's Lien Claims.

   b. The proceeds of the sale of the Property shall be applied in the following priority: (1) to the payment of the costs of Court, (2) to the expenses of levy and sale, (3) to any valid and enforceable tax liens that may exist, (4) to the holders of all senior liens as reflected in the Official Records of the County of Los Angeles, State of California ("Official Records") in

the order of priority of their liens as reflected in this judgment and in the Official Records until paid in full; as to amounts due to the parties or to their successors in interest as set forth in Paragraph 9, with each party or successor identified in Paragraph 9 to receive a pro rata share of any amounts available to it until the sale proceeds equal to the amounts set forth in Paragraph 9 have been satisfied, and (5) to Oceanwide.[1]

11. Pursuant to a settlement agreement by, between, and among, *inter alia*, LADI, Oceanwide, CTIC, Lendlease, and DTLA Funding, LLC, the Court retains jurisdiction over the parties to enforce and interpret the settlement until performance in full of the terms of the settlement.

12. LADI, CTIC, Lendlease, Construction Holdings, and Oceanwide shall bear their own costs.

13. LADI, CTIC, Lendlease, Construction Holdings, and Oceanwide have waived the right to appeal or otherwise challenge this judgment.

**IT IS SO ORDERED, ADJUDGED, AND DECREED:**

Dated: _____

_____
Honorable William F. Highberger
Judge of the Superior Court

**APPROVED AS TO FORM AND CONTENT:**

**PERKINS COIE LLP**

By: _____
       Abby Bloetscher,
Attorneys for Lendlease (US) Construction Inc.
and Lendlease (US) Construction Holdings, Inc.

**ATKINSON, ANDELSON, LOYA, RUUD & ROMO, PC**

By: _____
       Ryan C. Squire,
       Scott B. Mahler,
Attorneys for Chicago Title Insurance Company
and Chicago Title Company

**RALLS GRUBER & NIECE LLP**

By: _____
       John Foust,
Attorneys for Oceanwide Plaza, LLP

**GREENBERG TRAURIG, LLP**

By: _____
       Eric V. Rowen,
Attorneys for L.A. Downtown Investment LP

---

[1] At the time of entry of this final judgment, the Property is subject to the jurisdiction of the Bankruptcy Court in the Oceanwide Bankruptcy Case and the provisions of Paragraph 10 of this final judgment are and remain stayed by reason of the automatic stay imposed by operation of law in the Oceanwide Bankruptcy Case unless and until such time as the Oceanwide Bankruptcy Case is terminated or the Bankruptcy Court issues an order that permits the foreclosure sale set forth in Paragraph 10 to proceed.

# EXHIBIT 2

1    **BRYAN CAVE LEIGHTON PAISNER LLP**
    SHARON Z. WEISS (State Bar No. 169446)
2    sharon.weiss@bclplaw.com
    120 Broadway, Suite 300
3    Santa Monica, CA 90401-2386
    Telephone:    (310) 576-2100
4    Facsimile:    (310) 576-2200

5    JARRET P. HITCHINGS (*Pro Hac Vice*)
    jarret.hitchings@bclplaw.com
6    One Wells Fargo Center
    301 S. College Street, Suite 2150
7    Charlotte, NC 28202
    Telephone    (704) 749-8999
8    Facsimile:    (704) 749-8990

9    Attorneys for Debtor and Debtor-in-Possession

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                 **LOS ANGELES DIVISION**

13

14    In re                                    Case No. 2:24-bk-11057-DS

      Oceanwide Plaza LLC,                     Hon. Deborah Saltzman
15
              Debtor and Debtor-in-Possession  Chapter 11
16
                                               **ORDER GRANTING DEBTOR AND
17                                             DEBTOR-IN-POSSESSION'S MOTION FOR
                                               APPROVAL OF SETTLEMENT
18                                             AGREEMENT AND RELATED RELIEF
                                               PURSUANT TO FEDERAL RULE OF
19                                             BANKRUPTCY PROCEDURE 9019 ET AL.**

20                                             **[HEARING TO BE SET]**

21

22

23

24

25

26

27

28

Bryan Cave Leighton
Paisner LLP

1    The Court having reviewed the *Motion For Approval Of Settlement Agreement And Related*

2    *Relief Pursuant To Federal Rule Of Bankruptcy Procedure 9019 et al.; Declaration Of Bradley D.*

3    *Sharp In Support Thereof* (the "9019 Motion") filed by Debtor and the Court having read and

4    considered the 9019 Motion, its supporting *Memorandum of Points and Authorities*, the

5    *Declaration of Bradley D. Sharp* (the "Sharp Declaration"), and the settlement agreement (the

6    "Agreement")[1] attached as Exhibit 1 to the Sharp Declaration and finding that the notice of the

7    9019 Motion was proper, and finding that the relief requested by Oceanwide in the 9019 Motion

8    was proper and supported by evidence; and further finding that the Agreement was highly

9    negotiated by sophisticated parties, was entered into in good faith by all of the Parties thereto, and

10   is in thereto, and is in the best interest of creditors and the Estate; and good cause appearing therefor,

11        IT IS HEREBY ORDERED:

12        1.    The Motion is granted.

13        2.    The Agreement described in the 9019 Motion and each of the terms set forth therein

14   are approved pursuant to section 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019.

15   The Agreement is legally binding against the parties thereto in all respects.

16        3.    The following claims are allowed as secured claims against the Debtor's estate in

17   the amounts and priorities set forth below, and the Parties are bound thereby:

18        (a)    The LADI Secured Claim is senior in priority to all Mechanic's Lien Claims.

19        (b)    The amount of the LADI Secured Claim and the LADI Bankruptcy Claim have a

20   collective total indebtedness due and owing as of October 31, 2025, in the amount of $230,000,000

21   ("LADI Indebtedness"), which: (i) accrues interest at the rate of $60,000 per diem from and after

22   November 1, 2025; provided, however, solely in the event of a Qualifying All Cash Asset Sale, the

23   Holder will recalculate the per diem at $40,000 per day; and (ii) continues to accrue reasonable

24   attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of LADI on

25   November 1 and 2, 2025, and KPC (and any other Holder) from and after November 3, 2025, which

26

27

---

[1]    Defined terms used herein, but not defined herein, shall have the meanings ascribed to
such terms in the Agreement.

28

1    amounts will be added to the LADI Indebtedness and accrue interest at the rate of 10% simple per

2    annum from and after the date paid.

3        (c)    The Mechanic's Lien Claims held by US Construction and DTLA Funding total

4    $168,950,227.56 in the amounts set forth on the ML Exhibit attached to the Agreement, with the

5    US Construction Secured Claim totaling $71,349,256 and the DTLA Funding Secured Claim

6    totaling $97,600,872.56. The Mechanic's Lien Claims are junior in priority and right to payment of

7    the LADI Bankruptcy Claim.

8        (d)    The LADI Bankruptcy Claim and the Mechanic's Lien Claims are allowed and

9    secured in full by the Property.

10        (e)    The respective owners of the LADI Bankruptcy Claim and Mechanic's Lien Claims

11    may credit bid their respective secured claims towards the purchase of the Property in the amounts

12    set forth above in accordance with their priority.

13        (f)    Solely in the event that a Qualifying All Cash Asset Sale occurs: (a) the LADI

14    Bankruptcy Claim will be reduced by Twenty Million and No/100 Dollars ($20,000,000.00); and

15    (b) the US Construction Secured Claim will be increased by Twenty Million and No/100 Dollars

16    ($20,000,000.00), as set forth in the Bankruptcy Stipulation filed as Docket Number __.

17        4.    In the event of any sale in which all or substantially all of the Assets including the

18    Property are sold in this Bankruptcy Case, the proceeds will be distributed in the following order,

19    with each tranche satisfied in full before any proceeds are distributed to the tranche below it, unless

20    otherwise agreed in writing by all creditors in the applicable tranche:

21        (a)    First, to satisfy in full the allowed secured property taxes owed to the County of Los

22    Angeles ("Secured RP Tax Claims") or such lesser amount as the purchaser might be allowed to

23    pay to the County of Los Angeles;

24        (b)    Second, to satisfy in full the total amount of the DIP Loan Claims;

25        (c)    Third, to satisfy in full the transaction costs of the sale in the amount approved by

26    the Bankruptcy Court;

27        (d)    Fourth, to satisfy in full the LADI Bankruptcy Claim as may be adjusted by the

28    Bankruptcy Stipulation, and, if CTIC notifies Oceanwide at least three (3) Business Days in

BRYAN CAVE LEIGHTON
PAISNER LLP

advance of any distribution, Oceanwide will pay to CTIC the amount of any CTIC Reimbursement Right instead of paying this amount to the holder of the LADI Bankruptcy Claim;

(e)    Fifth, to satisfy the Mechanic's Lien Claims, on a pro rata basis as shown in the ML Exhibit, as may be adjusted by the Bankruptcy Stipulation; and

(f)    Thereafter, as directed by the Bankruptcy Court in this Bankruptcy Case, through the terms of a Chapter 11 plan or otherwise.

5.    The Debtor is authorized to execute any documents or take any actions reasonably necessary to effectuate the terms of the Agreement and to perform such terms as set forth therein.

6.    This Court retains jurisdiction to interpret and enforce the Agreement and to resolve any disputes arising out of or related to the Agreement or this Bankruptcy Case.

7.    The Court finds that the Agreement was negotiated at arm's length by sophisticated parties represented by counsel, was entered into in good faith, and constitutes a fair and reasonable compromise within the meaning of Federal Rule of Bankruptcy Procedure 9019. The settlement is in the best interests of the Debtor, its estate, and all creditors.

8.    The Agreement is binding upon and inures to the benefit of the Parties and their respective successors, assigns, and parties-in-interest in this Bankruptcy Case, including any trustee appointed in this case or in any case to which this case may be converted, any other representative of the estate, any reorganized debtor emerging from a Chapter 11 plan confirmed in this case, and the Debtor after emergence from this Bankruptcy Case and upon the dismissal or closing of this case.

IT IS SO ORDERED.

### ###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

A true and correct copy of the foregoing document(s) entitled: **DEBTOR AND DEBTOR-IN-POSSESSION'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELATED RELIEF PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 ET AL.; DECLARATION OF BRADLEY D. SHARP IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 28, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **PLEASE SEE ATTACHED LIST**

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*), I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 28, 2026 | Raul Morales | *Raul Morales* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                    **F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Adam S Affleck**
  adam-affleck@rbmn.com, jennifer-franklin@rbmn.com

- **Melody G Anderson**
  meanderson@zwickerpc.com

- **James W Bates**
  jbates@jbateslaw.com

- **Ori S Blumenfeld**
  oblumenfeld@lakklawyers.com, ncondren@lakklawyers.com; smcfadden@lakklawyers.com

- **Paul Brent**
  snb300@aol.com

- **Sara Chenetz**
  schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com;
  jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- **Jacquelyn H Choi**
  jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com

- **Leslie A Cohen**
  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;bryn@lesliecohenlaw.com

- **Gloria D Cordova**
  NEF@gcordovalaw.com, NEF@gcordovalaw.com;ssg@gcordovalaw.com

- **Sean C Coughlin**
  scc@coughlin-law.com, lb@coughlin-law.com; bcrena@noonanlance.com; ssuper@noonanlance.com

- **Matthew Dill**
  mdill@counsel.lacounty.gov

- **Luke N Eaton**
  lukeeaton@cozen.com, jacqueline.sims@troutman.com

- **Amir Gamliel**
  agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com

- **Jon F Gauthier**
  jgauthier@ftblaw.com, jrobinson@ftblaw.com

- **Richard Girgado**
  rgirgado@counsel.lacounty.gov

- **Richard H Golubow**
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com

- **Ani Grigoryan**
  agrigoryan@garrett-tully.com, jgootkin@garrett-tully.com

- **Mark Isola**
  misola@brotherssmithlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

- **Lance N Jurich**
  ljurich@loeb.com, pmatsuda@loeb.com; ladocket@loeb.com; ljurich@ecf.courtdrive.com; fmckeown@loeb.com

- **Gary E Klausner**
  gek@lnbyg.com

- **Noreen A Madoyan**
  Noreen.Madoyan@usdoj.gov

- **Allison C. Murray**
  acmurray@swlaw.com, kcollins@swlaw.com

- **Douglas M Neistat**
  dneistat@gblawllp.com, mramos@gblawllp.com

- **Rosemary Nunn**
  rosemary.nunn@procopio.com, nicholas.fortino@procopio.com; gaylene.oyama@procopio.com

- **Matthew D Pham**
  mpham@allenmatkins.com, mdiaz@allenmatkins.com

- **Michael B Reynolds**
  mreynolds@swlaw.com, kcollins@swlaw.com

- **Robert L. Rosvall**
  rrosvall@ccllp.law, kvargas@ccllp.law

- **Jeremy H Rothstein**
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

- **Leonard M. Shulman**
  lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com

- **Howard Steinberg**
  steinbergh@gtlaw.com, pearsallt@gtlaw.com; NEF-BK@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com

- **United States Trustee (LA)**
  ustpregion16.la.ecf@usdoj.gov

- **J Scott Williams**
  jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

- **Donna Wong**
  donna.wong@lacity.org

- **Richard Lee Wynne**
  richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com; cindy.mitchell@hoganlovells.com; rick-wynne-7245@ecf.pacerpro.com

- **Chelsea Zwart**
  czwart@cgdrlaw.com, service@cgdrlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**