**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
sharon.weiss@bclplaw.com
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile:  (310) 576-2200

Jarret P. Hitchings (Admitted Pro Hac Vice)
jarret.hitchings@bclplaw.com
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone: (704) 749-8999

Facsimile:  (704) 749-8990

*Attorneys for Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor. | Chapter 11 |
| | **DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026)** |
| | <u>Plan Confirmation Hearing</u><br>Date:   April 9, 2026<br>Time:   10:00 a.m. (PT)<br>Place:  Ctrm 1639<br>            255 East Temple Street<br>             Los Angeles, CA 90012 |

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION[1] WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF DEBTOR'S KNOWLEDGE, INFORMATION, AND BELIEF. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION EXCEPT AS EXPRESSLY INDICATED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS, AND IS NOT INTENDED TO BE, AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR TO BE ADMISSIBLE IN ANY PROCEEDING INVOLVING DEBTOR OR ANY OTHER PARTY, OR TO BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

UNLESS OTHERWISE INDICATED HEREIN, THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF. THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION SHALL NOT BE DEEMED OR

---

[1] Debtor filed its initial Disclosure Statement on July 10, 2024 [ECF No. 328], its Supplement to its Disclosure Statement on August 19, 2024 [ECF No. 387], its Second Amended Disclosure Statement on September 4, 2024 [ECF No. 431], and its Third Amended Disclosure Statement on September 5, 2024 [ECF No. 440]. This Combined Plan and Disclosure Statement is filed as of February 23, 2026 pursuant to the Court's Scheduling Order Following Chapter 11 Status Conference [ECF No. 771], as amended by the Order Granting Ex Parte Motion to Continue Case Deadlines [ECF 779] and the Order Granting Third Ex Parte Motion to Continue Case Deadlines [ECF 832], and includes additional information not available at the time of filing the initial Disclosure Statement, the Supplement to the Disclosure Statement, the Second Amended Disclosure Statement, and Third Amended Disclosure Statement. In order to provide information in one document, Combined Plan and Disclosure Statement replaces the initial Disclosure Statement, Supplemental Disclosure Statement, Second Amended Disclosure Statement, and Third Amended Disclosure Statement.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OR THEIR OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION OTHER THAN THAT WHICH IS CONTAINED HEREIN. NO REPRESENTATIONS CONCERNING DEBTOR OR THE VALUE OF ITS ASSETS HAVE BEEN AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR EQUITY INTEREST. THIS COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b), AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. SEE ARTICLE 8 BELOW FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN'S CONFIRMATION.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

# TABLE OF CONTENTS

ARTICLE 1 DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................. 1

ARTICLE 2 BACKGROUND AND DISCLOSURES ................................................ 17

ARTICLE 3 UNCLASSIFIED ADMINISTRATIVE AND PRIORITY CLAIMS ...................... 32

ARTICLE 4 CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS .................................................................................................. 39

ARTICLE 5 CONFIRMATION REQUIREMENTS AND PROCEDURES ................................ 49

ARTICLE 6 MEANS FOR IMPLEMENTATION OF THE PLAN ............................................ 57

ARTICLE 7 TREATMENT OF EXECUTORY CONTRACTS .................................................... 64

ARTICLE 8 CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING .......... 70

ARTICLE 9 PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND EQUITY INTERESTS ......................................................... 72

ARTICLE 10 PROVISIONS GOVERNING DISTRIBUTIONS .................................................. 75

ARTICLE 11 SUBSTANTIAL CONSUMMATION OF THE PLAN ......................................... 81

ARTICLE 12 EFFECT OF CONFIRMATION ............................................................................ 83

ARTICLE 13 RETENTION OF JURISDICTION ....................................................................... 88

ARTICLE 14 MISCELLANEOUS PROVISIONS ................................................................... 900

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**INTRODUCTION**

Debtor Oceanwide Plaza LLC (the "<u>Debtor</u>"), a chapter 11 debtor and debtor-in-possession in the above-captioned chapter 11 case (this "<u>Chapter 11 Case</u>"), proposes this combined Plan and Disclosure Statement ("<u>Plan</u>" or "<u>Plan and Disclosure Statement</u>" as it may be amended, modified, or supplemented from time to time, that is prepared and distributed in accordance with Sections 1125 and 1145 and Bankruptcy Rule 3018, and other applicable Laws) for the resolution of outstanding Claims against, and Equity Interests in, Debtor and pursuant to Sections 105, 1125, and 1129 of the Bankruptcy Code. This Plan and Disclosure Statement contains, among other things, a discussion of Debtor's history, business, property, operations, the Chapter 11 Case, certain risk factors, a summary of the Plan and a discussion of certain other related matters.

ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN, SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE PLAN. DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

**ARTICLE 1**

**DEFINED TERMS, RULES OF INTERPRETATION,**

**COMPUTATION OF TIME, AND GOVERNING LAW**

**1.1.    Defined Terms.** As used in this Plan, capitalized terms have the meanings set forth below.

1.1.1.    "***9019 Order***" means the Order Granting Motion for Approval of Settlement Agreement and Related Relief Pursuant to Federal Rule of Bankruptcy Procedure 9019 et al. entered by the Bankruptcy Court on February 3, 2026 [ECF No. 807].

1.1.2.    "***Administrative Claims***" means any and all requests for payment of costs or expenses of the kind specified in Section 503(b) and entitled to priority under Section 507(a)(2), including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of Debtor; (b)

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Bankruptcy Fees; (c) Cure Costs; and (d) Allowed Professional Fee Claims. For the avoidance of doubt, Administrative Claims do not include GAP Claims, which are separately treated as unclassified claims pursuant to Article 3.4.

1.1.3.  "*Administrative Claims Bar Date*" means (a) with respect to Administrative Claims (other than Professional Fee Claims) that accrued through the Confirmation Date, the first Business Day fourteen (14) days after notice of entry of the Confirmation Order is filed with the Bankruptcy Court (the "*Initial Administrative Claims Bar Date*"), (b) with respect to Administrative Claims (other than Professional Fee Claims) that accrued after the Confirmation Date and through the Effective Date, the first Business Day thirty (30) days after the Effective Date (the "*Final Administrative Claims Bar Date*"), and (c) with respect to Professional Fee Claims (including any fees and expenses incurred post-Confirmation and pre-Effective Date), the Final Administrative Claims Bar Date, subject in each case to: (i) any extensions granted by order of the Bankruptcy Court on a motion of a party-in-interest brought prior to the expiration of the applicable bar date, and (ii) the agreement in writing of the Liquidating Trustee (or Purchaser, in the event of a Purchaser Assumption Event) and the Holder of such Administrative Claim.

1.1.4.  "*Administrative Claims Objection Bar Date*" shall mean the first Business Day forty-five (45) days after the applicable Administrative Claims Bar Date, subject to: (i) any extensions granted by the Bankruptcy Court, (ii) the agreement in writing of Liquidating Trustee and the Holder of such Administrative Claim, or (iii) on motion of a party-in-interest approved by the Bankruptcy Court.

1.1.5.  "*Allowed*" means, with respect to any Claim or Equity Interest: (a) any Claim or Equity Interest arising on or before the Effective Date that is (i) (A) timely filed by the applicable Claims Bar Date or (B) as to which there exists no requirement for the Holder of such Claim to file such Claim under the Plan, the Bankruptcy Code, the Bankruptcy Rules, the Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No. 159], or a Final Order; and (ii) (A) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to Section 502(d) or otherwise, has been instituted by the applicable objection deadline, or (B) as to which any objection has been determined in favor of the respective Holder by

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Final Order, but only to the extent allowed by Final Order; (b) any Claim or Equity Interest that is compromised, settled, or otherwise resolved pursuant to the authority of Debtor; (c) any Claim or Equity Interest as to which the liability of Debtor, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court; or (d) any Claim or Equity Interest expressly allowed hereunder; *provided, however*, that notwithstanding the foregoing, unless expressly waived by the Plan, the Allowed amount of Claims or Equity Interests shall, to the extent applicable, be subject to the limitations under or maximum amounts permitted by the Bankruptcy Code, including Sections 502 or 503. For the avoidance of doubt, the amount of the LADI Secured Claim and the LL Secured Claims are Allowed as set forth in the 9019 Order.

1.1.6. "*Alternative Transaction*" shall have the meaning ascribed to such term in the PSA, and which shall be a "Qualifying All Cash Asset Sale" as defined by the Global Settlement Agreement approved by the 9019 Order after any such Alternative Transaction is consummated.

1.1.7. "*Architect*" or "*Arcadis*" means CallisonRTKL Inc. (now known as Arcadis Inc.), or its successors and assigns with respect to the intellectual property rights asserted in the Instruments of Service defined in Article 7.5.

1.1.8. "*Architect Claim Amount*" means the amount of Claim Number 28-1 submitted by Arcadis, in the amount of $2,411,799.98 as it may be stipulated to or otherwise established.

1.1.9. "*Architect Agreement*" means that certain agreement between Debtor and the Architect for the provision of architectural services in connection with the Project, as such agreement may have been amended, modified, or supplemented from time to time prior to the Petition Date.

1.1.10. "*Assets*" means all or substantially all of Debtor's right, title, and interest of any nature in property of any kind, wherever located, including as specified in Section 541.

1.1.11. "*Assumption Schedule*" means the schedule (as it may be amended), if any, of Executory Contracts (including any amendments or modifications thereto) that Debtor will assume pursuant to the Plan, and which will be included in the Plan Supplement.

1.1.12. "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property or an obligation incurred by Debtor pursuant to any applicable

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

3

Section, including Sections 502, 510, 542, 544, 545, 547-551, 553, and 724(a), or under similar or related state, federal, or foreign Law, including fraudulent transfer or voidable transaction Laws.

1.1.13. "*Ballot*" means a ballot upon which certain Holders of Impaired Claims that are entitled to vote may, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and, if applicable, make such other elections as may be made thereon.

1.1.14. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as may be amended, as in effect on the date hereof.

1.1.15. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Central District of California, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

1.1.16. "*Bankruptcy Fees*" means any and all fees or charges assessed against any Estate under section 1930 of title 28 of the United States Code.

1.1.17. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, and the general, local, and chambers rules of the Bankruptcy Court, together with any amendments made thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to the Chapter 11 Case.

1.1.18. "*Business Day*" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

1.1.19. "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

1.1.20. "*Cash Consideration*" means up to Seventy Million Dollars ($70,000,000.00), or such lesser amount in Cash as is provided for in the Confirmation Order, to be paid by Purchaser as part of the consideration under the PSA. For avoidance of doubt, upon the occurrence of a Purchaser Assumption Event, the Cash Consideration shall be reduced by the amount of Claims assumed by Purchaser.

1.1.21. "*Causes of Action*" means any and all actions, causes of action, suits, claims, interests, damages, remedies, demands, rights, debts, dues, sums of money, accounts, reckonings, rights to

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

4

legal remedies, rights to equitable remedies, rights to payment, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, demands, obligations, liabilities, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, franchises, and trespasses of any kind or character whatsoever of or belonging to the Estate, whether known or unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, and which was property of Debtor or in which Debtor holds rights as of the Effective Date.

1.1.22. "***Chapter 11 Case***" shall have the meaning set forth in the Introduction above.

1.1.23. "***Claim***" means a claim as defined in Section 101(5) against Debtor, whether or not asserted.

1.1.24. "***Claims Bar Date***" means, as applicable, (a) June 26, 2024, the general bar date for filing Proofs of Claim for non-governmental creditors as established by the Court's Order Setting Deadline for Filing Proofs of Claim [ECF No. 89] and Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No. 159]; (b) September 7, 2024, the bar date for governmental units to file Proofs of Claim; (c) the Administrative Claims Bar Date (as applicable); and (d) any other date or dates to be established by an Order of the Bankruptcy Court by which Proofs of Claim must be filed.

1.1.25. "***Claims Objection Bar Date***" means, except for Claims subject to the Administrative Claims Objection Bar Date, the first Business Day one-hundred and eighty (180) days after the Confirmation Date or such other date as may be fixed by the Bankruptcy Court upon a motion filed by the Liquidating Trustee served only on the Bankruptcy Rule 2002 service list (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

1.1.26. "***Claims Register***" means the official register of Claims maintained by the Notice and Claims Agent.

1.1.27. "***Claims Stipulation***" means the Stipulation Regarding the Amount of Lendlease (US) Construction Inc. and L.A. Downtown Investment LP Secured Claims [ECF No. 798], as approved by the Bankruptcy Court [ECF Nos. 800, 807].

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

1.1.28. "*Class*" or "*Classes*" means a group of Claims or Equity Interests classified together pursuant to Section 1122(a)(1).

1.1.29. "*Closing Date*" is the same meaning as definition "Closing Date" in the PSA.

1.1.30. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order.

1.1.31. "*Confirmation Date*" means the date upon which the Confirmation Order is entered on the Bankruptcy Court's docket.

1.1.32. "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court to consider Confirmation of the Plan under Section 1129.

1.1.33. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129.

1.1.34. "*Consultation Parties*" means, collectively, LADI, Lendlease, and LA City, as referenced in Article 2.6.7. hereof.[2]

1.1.35. "*Consummation*" means the occurrence of the Effective Date.

1.1.36. "*Credit Bid Consideration*" shall have the meaning ascribed to such term in the PSA.

1.1.37. "*CTIC Reimbursement Right*" shall have the meaning set forth in the Global Settlement Agreement approved by the 9019 Order.

1.1.38. "*Cure Cost*" means all amounts, including an amount of $0.00, required to cure any monetary defaults under any Executory Contract (or such lesser amount as may be agreed upon by the parties to an Executory Contract) and all other obligations required to cure any non-monetary defaults under any Executory Contract that is to be assumed by Debtor pursuant to Sections 365 and 1123.

1.1.39. "*Debtor*" shall have the meaning set forth in the Introduction above.

1.1.40. "*Deficiency Claims*" means any Claim that was scheduled or filed as a Secured Claim that is not a Secured Claim.

1.1.41. "*DIP Facility*" means the financing provided to Debtor pursuant to the DIP Facility Orders.

---

[2]   CTIC was previously a Consultation Party but withdrew its claim pursuant to the Global Settlement Agreement approved by the 9019 Order and is no longer a Consultation Party.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1.1.42. "***DIP Facility Claim***" means all amounts owed by Debtor and the Estate to DIP Lender, its successors and assigns, under the DIP Facility, as approved by the Bankruptcy Court pursuant to the DIP Facility Orders and related Secured Super-Priority Debtor-In-Possession Financing Loan Agreement and other documents, as they have been and may be amended and modified.

1.1.43. "***DIP Facility Orders***" means the Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, and (III) Modifying the Automatic Stay [ECF No. 229] collectively with all subsequent orders of the Bankruptcy Court authorizing Debtor to borrow money from DIP Lender, whenever entered.

1.1.44. "***DIP Lender***" shall mean DTLA Lending LLC, its successors and assigns.

1.1.45. "***Disputed***" means, except as otherwise provided herein, a Claim or Equity Interest that is not yet Allowed. To the extent Debtor disputes only a portion of a Claim or Equity Interest, such Claim or Equity Interest shall be deemed Allowed in the amount Debtor does not dispute, if any, and Disputed as to the balance of such Claims or Equity Interests.

1.1.46. "***Disputed Creditor Reserve***" means the blocked segregated account to be maintained by the Liquidating Trust for the benefit of the Holders of Disputed Claims.

1.1.47. "***Disputed Creditor Reserve Treatment***" shall have the meaning set forth in Article 10.2.1.2.

1.1.48. "***Distribution Agent***" means the Liquidating Trustee, or any Person designated by the Liquidating Trustee, in their capacity as distribution agent under the Plan.

1.1.49. "***Distribution Record Date***" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which date shall be: (a) the Effective Date; or (b) such other date as designated by an order of the Bankruptcy Court.

1.1.50. "***DTLA Funding***" means DTLA Funding LLC, a California limited liability company.

1.1.51. "***Effective Date***" means the date that is the first Business Day that is one (1) Business Day after the closing of the Sale of the PSA Property to Purchaser pursuant to the PSA, upon which all conditions to the effectiveness of the Plan set forth in Article 11.2. hereof have been satisfied or waived in accordance with the terms of the Plan. Upon the occurrence of such date, Debtor or the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

Liquidating Trustee shall file a notice with the Bankruptcy Court indicating that the Effective Date has occurred.

1.1.52. "*Entity*" means an "entity" as defined in Section 101(15).

1.1.53. "*Equity Interest*" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership, limited liability company interests (whether certificated or uncertificated), or other instrument evidencing an ownership interest in Debtor, whether or not transferable, together with any warrants, equity-based awards, or contractual rights to purchase or acquire such interests at any time, and all rights arising with respect thereto that existed immediately before the Petition Date.

1.1.54. "*Estate*" means the estate created for Debtor pursuant to Section 541 upon the commencement of the Chapter 11 Case.

1.1.55. "*Exculpated Parties*" means each of the following solely in their capacities as such and solely with respect to their conduct in such capacities: (i) Debtor; (ii) all officers, directors, and members of Debtor who served in such capacity at any time on or after the Petition Date; (iii) all employees of Debtor who served in such capacity at any time on or after the Petition Date; and (iv) all agents, attorneys, advisors, accountants, financial advisors, consultants, and other Professionals, solely to the extent such parties acted in any such capacity for the parties identified in clauses (i) through (iii) above on or after the Petition Date. For the avoidance of doubt, "Exculpated Parties" shall not include (a) any parent company, sibling company, subsidiary, or other affiliate of Debtor, (b) any Entity in its capacity as a Holder of a Claim or Equity Interest, or (c) any Entity with respect to conduct occurring prior to the Petition Date.

1.1.56. "*Executory Contract*" means a contract or lease to which Debtor is a party that is subject to assumption, assumption and assignment, or rejection under Sections 365 or 1123.

1.1.57. "*Final Order*" means, an order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction, as applicable, which has not been reversed, vacated, or stayed and as to which the time to appeal, petition for certiorari, or move for new trial, stay, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, re-argument, or rehearing is pending, or as to which any right to appeal, petition for certiorari,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

8

move for a new trial, move for a stay, reargue, or rehear has been waived in writing in form and substance satisfactory to Debtor or, in the event that an appeal, writ of certiorari, new trial, stay, or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction (as applicable) has been determined by the highest court to which such order was appealed, or certiorari, re-argument, or rehearing has been denied and the time to take any further appeal, petition for certiorari, or move for new trial, stay, re-argument, or rehearing has expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state or provincial court rules, may be filed with respect to such order, ruling, or judgment shall not prevent an order, ruling, or judgment from being a Final Order.

1.1.58. "*GAP Claims*" means any and all Claims entitled to priority under Sections 502(f) and 507(a)(3). GAP Claims include, but are not limited to, Claims by LA City to recover amounts expended to secure and maintain the Real Property between the Petition Date and Relief Date (as described in Section 2.4 hereof) in the asserted amount of $3,896,392.78. GAP Claims are excepted from the general classification requirements under Section 1123(a)(1) and shall be paid in full in Cash on the Effective Date pursuant to Article 3.4. hereof.

1.1.59. "*General Unsecured Claim*" means any unsecured Claim against Debtor not otherwise provided for in the Plan or Global Settlement Agreement, including (a) Claims arising from the rejection of Executory Contracts to which Debtor is a party; (b) Claims arising from any litigation or other court, administrative, or regulatory proceeding, including damages or judgments entered against, or settlement amounts owing by, Debtor related thereto; and (c) Deficiency Claims. For clarity, General Unsecured Claims **do not** include (i) Administrative Claims, including Professional Fee Claims and Statutory Fees, (ii) Priority Tax Claims, (iii) Other Priority Claims, (iv) Secured Claims, including the DIP Facility Claims, the Junior DIP Facility Claims (if any), and the Secured Tax Claims, (v) the LADI Secured Claim, and (vi) the LL Secured Claims. Further, in the event the Intercompany Loan Claims are not subordinated to the General Unsecured Claims, then any Allowed Intercompany Loan Claim shall be considered a General Unsecured Claim.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

1    1.1.60. "*Global Settlement Agreement*" means the *Settlement Agreement, Release & Covenant*

2    *Not to Sue* dated January 28, 2026, by and among Lendlease (US) Construction Inc., Lendlease

3    (US) Construction Holdings Inc., Chicago Title Insurance Company, L.A. Downtown Investment

4    LP, KPC Plaza LLC, Oceanwide Plaza LLC, DTLA Funding, LLC, and DTLA Lending, LLC, as

5    approved by the 9019 Order.

6    1.1.61. "*Governmental Unit*" shall mean any United States national, federal, state, provincial,

7    municipal, or local government, governmental, regulatory or administrative authority, agency,

8    instrumentality or commission or any court, tribunal, or judicial body.

9    1.1.62. "*Holder*" means the beneficial holder of any Claim or Equity Interest.

10    1.1.63. "*Impaired*" means, with respect to a Claim or Equity Interest, such Claim or Equity

11    Interest that falls within a Class of Claims or Equity Interests that is impaired within the meaning

12    of Section 1124.

13    1.1.64. "*Initial Distribution Date*" means five (5) Business Days following the Effective Date.

14    1.1.65. "*Intercompany Loan Claims*" means Claims held by Debtor's parents or affiliates.

15    1.1.66. "*Junior DIP Facility*" means the financing provided to Debtor pursuant to the Junior

16    DIP Facility Order.

17    1.1.67. "*Junior DIP Facility Claims*" means all amounts owed by Debtor and the Estate to

18    Junior DIP Lender, its successors and assigns, under the Junior DIP Facility pursuant to any Order

19    approving such Junior DIP Facility.

20    1.1.68. "*Junior DIP Facility Order*" means the order of the Bankruptcy Court approving the

21    Junior DIP Facility.

22    1.1.69. "*Junior DIP Lender*" means KPC Plaza, LLC, or its designee.

23    1.1.70. "*Junior Secured Claims*" means any Secured Claims against Debtor that are secured

24    by Liens on the Real Property that are junior in priority to the LADI Secured Claim and LL Secured

25    Claims, and that are not DIP Facility Claims, LADI Secured Claim, LL Secured Claims, or Secured

26    Tax Claims.

27    1.1.71. "*LA City*" means the City of Los Angeles, California.

28    1.1.72. "*LADI*" means L.A. Downtown Investment LP, a California limited partnership.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

10

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

1.1.73. "***LADI Secured Claim***" means the Secured Claim held by LADI, its successors and/or assigns, against Debtor arising prior to the Petition Date, which is in the amount set forth in Section 4.3.2 hereof. As of the date of the filing of this Plan, KPC Plaza is the Holder of the LADI Secured Claim.

1.1.74. "***Laws***" means any federal, state, local, or foreign "law" (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction.

1.1.75. "***Lendlease***" means Lendlease (US) Construction Inc., a Florida corporation.

1.1.76. "***Lien***" shall have the meaning set forth in Section 101(37).

1.1.77. "***Liquidating Trust***" means the trust established as of the Effective Date to, among other things, (i) distribute funds to Holders of certain Allowed Claims; (ii) administer and liquidate the Plan Administration Assets; and (iii) assert, settle or abandon any Causes of Action held by Debtor as of the Effective Date pursuant to the Liquidating Trust Agreement.

1.1.78. "***Liquidating Trust Agreement***" shall mean the agreement forming the Liquidating Trust, which shall be included in the Plan Supplement.

1.1.79. "***Liquidating Trustee***" means the trustee of the Liquidating Trust, or his, her, or its successor. Debtor anticipates that Bradley D. Sharp with Development Specialists, Inc. will be the initial Liquidating Trustee.

1.1.80. "***LL Secured Claims***" means all Secured Claims held by Lendlease and DTLA Funding, their respective successors and assigns, against Debtor arising prior to the Petition Date, which are in the amounts set forth in Section 4.3.3 hereof.

1.1.81. "***Notice and Claims Agent***" means Stretto, Inc., in its capacity as noticing and claims agent for Debtor.

1.1.82. "***Other Priority Claims***" means any and all Claims entitled to priority in right of payment under Section 507(a) that are not Administrative Claims, GAP Claims, Priority Tax Claims, or Professional Fee Claims, to the extent such Claim has not already been paid during the Chapter 11 Case.

1.1.83. "***Person***" shall have the meaning set forth in Section 101(41).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

1.1.84. "***Petition Date***" shall mean February 13, 2024.

1.1.85. "***Relief Date***" means March 11, 2024, the date on which the Bankruptcy Court entered the Order For Relief [ECF No. 28].

1.1.86. "***Plan***" or "***Plan and Disclosure Statement***" shall have the meaning set forth in the Introduction.

1.1.87. "***Plan Administration Assets***" means all of Debtor's Assets not sold to Purchaser, except for Sale Proceeds which are distributed on the Closing Date and the Post Confirmation Reserve, including but not limited to Cash on hand as of the Effective Date, Avoidance Actions and other Causes of Action, and other Assets not sold to Purchaser.

1.1.88. "***Plan Objection Deadline***" means the deadline established pursuant to the Bankruptcy Code, Bankruptcy Rules, or Order of the Court for parties to object to Confirmation of the Plan and set for March 20, 2026, as of the date of this Disclosure Statement and Plan.

1.1.89. "***Plan Supplement***" means the compilation of documents, schedules, and exhibits to the Plan, and forms thereof, to be filed by Debtor and acceptable to Purchaser no later than the Plan Supplement Filing Date, as the same may be amended, modified, or supplemented.

1.1.90. "***Plan Supplement Filing Date***" means the date that is seven (7) calendar days prior to the Plan Objection Deadline, or such later date as is determined by Debtor.

1.1.91. "***Post Confirmation Reserve***" shall mean $200,000 from the proceeds of any sale or other liquidation of Debtor's Assets to fund the Liquidating Trust.

1.1.92. "***Priority Tax Claims***" means any and all Claims of the kind specified in Section 507(a)(8).

1.1.93. "***Professional Fee Claim***" means any Claim of Professionals seeking payment of compensation for services rendered or reimbursement of expenses incurred on or after the Petition Date and through and including the Confirmation Date, under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5).

1.1.94. "***Professionals***" means (a) any and all professionals employed in the Chapter 11 Case pursuant to Sections 327, 328, 363, or otherwise, and (b) any and all professionals or other Entities

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

12

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b)(4).

1.1.95. "***Proofs of Claim***" means any "proof of claim," as defined in Bankruptcy Rule 3001, or a motion or request for payment of fees, costs, or expenses made pursuant to Section 503 filed in the Chapter 11 Case.

1.1.96. "***Pro-Rata Share***" means, as to a particular Holder of a Claim in a particular Class, the ratio (expressed as a percentage) that the Allowed amount of such Holder's Claim in such Class bears to the aggregate Allowed amount of all Claims in such Class. For clarity, Allowed Deficiency Claims and any Allowed Intercompany Loan Claims not subordinated to General Unsecured Claims shall be included in Class 6 for purposes of calculating the Pro-Rata Share.

1.1.97. "***PSA***" means that certain Purchase and Sale Agreement dated as of February 16, 2026, by and between Debtor, as Seller, and KPC Square, LLC, a Delaware limited liability company, or its designee, as buyer, as such agreement may be amended, modified, or supplemented from time to time in accordance with its terms, pursuant to which Debtor shall sell the PSA Property to Purchaser. A copy of the PSA is attached as **Exhibit 4**.

1.1.98. "***PSA Property***" means, collectively, all of Debtor's right, title and interest in and to (a) the Real Property, (b) the appurtenances thereto, (c) the improvements thereon, (d) the personal property related thereto, and (e) the intangible property related thereto, all as more particularly described in the PSA.

1.1.99. "***Purchaser***" means KPC Square, LLC, a Delaware limited liability company, or its permitted designee or assignee pursuant to the terms of the PSA or a buyer under an Alternative Transaction.

1.1.100. "***Purchaser Assumption Event***" means any election by Purchaser, in its sole discretion and with the consent of Debtor, to assume any or all of the Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Priority Claims, and/or GAP Claims, and the obligations under this Plan to pay such assumed Claims, whereupon the Estate shall be fully and unconditionally released and relieved of any and all liability with respect to such assumed Claims; provided, however, that (i) the allowance of any such assumed Claims shall be subject to the terms of this

13

Plan and the Bankruptcy Code, with the Purchaser having the sole rights to object to and settle the allowance of such Claims, (ii) upon the occurrence of any Purchaser Assumption Event, the Cash Consideration shall be reduced by the aggregate amount of the assumed Claims as asserted, and (iii) the Bankruptcy Court shall retain jurisdiction to enforce payment on account of such assumed Claims by the Purchaser.

1.1.101. "**_Real Property_**" shall mean the real property owned by Debtor, which is principally a block in downtown Los Angeles across from the Staples Center (now Crypto.com Arena), bounded by Figueroa, Flower, 11th and 12th Streets, as more particularly described in Exhibit A to the PSA.

1.1.102. "**_Reimbursable Costs_**" is the same meaning as definition "Reimbursable Cost" in the Global Settlement Agreement approved by the 9019 Order.

1.1.103. "**_Sale_**" means the sale of the PSA Property to Purchaser pursuant to the PSA, or pursuant to an Alternative Transaction, on an "as is, where is" basis, free and clear of all Liens, Claims, encumbrances, lawsuits, and interests to the fullest extent permitted by the Bankruptcy Code, as approved by the Confirmation Order.

1.1.104. "**_Sale Proceeds_**" means the net proceeds actually received by Debtor upon the closing of the Sale, consisting of the Cash Consideration paid by Purchaser under the PSA or consisting of the consideration provided in connection with an Alternative Transaction, less (i) all costs and expenses arising from the sale of the PSA Property approved by the Bankruptcy Court, and (ii) any amount necessary to fund the Post Confirmation Reserve.

1.1.105. "**_Section_**" shall refer to the applicable section of the Bankruptcy Code, unless otherwise stated.

1.1.106. "**_Secured Claim_**" means any and all Claims against Debtor that are secured by a Lien on, or security interest in, Assets of Debtor, or that have the benefit of rights of setoff under Section 553, which Lien or right of setoff, as the case may be, is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of such Holder's interest in Debtor's interest in such Assets, or to the extent of the amount subject to setoff, which value shall be determined as provided in Section 506, or has been Allowed pursuant to the 9019 Order, or other order of the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

Bankruptcy Court as a Secured Claim. For clarity, a Secured Claim does not include the Deficiency Claim portion of any such Claim.

1.1.107. "**Secured Tax Claims**" means any and all Claims against Debtor arising from unpaid taxes owed to a Governmental Unit that are secured by Liens on the Real Property.

1.1.108. "**Security**" has the meaning ascribed to such term in Section 101(49).

1.1.109. "**Solicitation Order**" shall mean the Order of the Court conditionally approving the Plan and Disclosure Statement for solicitation purposes only.

1.1.110. "**State Court Action**" means the lawsuit captioned *Webcor Construction, LP v. Lendlease (US) Construction, Inc. et al.*, Case No. 19STCV03357 filed in the Superior Court of the State of California and all related and consolidated cases.

1.1.111. "**Stamp or Similar Taxes**" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege tax (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and any other similar tax imposed or assessed by any Governmental Unit.

1.1.112. "**Statutory Fees**" means all fees due and owing to the U.S. Trustee, including quarterly fees under 28 U.S.C. § 1930(a), plus any interest due and payable under 31 U.S.C. § 3717.

1.1.113. "**Subordinated Claim**" means any Claim that is subject to (a) subordination under Section 510(b), or (b) equitable subordination, as the Bankruptcy Court determines in a Final Order.

1.1.114. "**Subsequent Distribution Date**" means the date following the Initial Distribution Date on which the Liquidating Trustee in its reasonable discretion elects to make distributions to Holders of Allowed Claims or Equity Interests pursuant to the Plan.

1.1.115. "**Tax Code**" means the Internal Revenue Code, as amended.

1.1.116. "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to Debtor of an intent to accept

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

a particular distribution; (c) responded to Debtor's request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

1.1.117. "*Unimpaired*" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

1.1.118. "*U.S. Trustee*" means the United States Trustee for the Central District of California.

1.1.119. "*Voting Deadline*" shall mean the deadline for eligible Holders of Claims and Equity Interests to submit their Ballot to vote on the acceptance or rejection of the Plan. As of the date of this Plan, the Voting Deadline is currently March 20, 2026.

1.1.120. "*Wind Down*" means the process to wind down, dissolve, and liquidate Debtor and the Estate and distribute any of the Sale Proceeds and remaining Assets in accordance with the Plan through the Liquidating Trustee.

**1.2.    Rules of Interpretation.**

For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (ii) unless otherwise specified herein, any reference herein to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified herein, any reference to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (iv) unless otherwise specified herein, all references herein to "Articles" and "Exhibits" are references to Articles and Exhibits, respectively, of the Plan; (v) the words "herein," "hereof," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion or section of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitations, and shall be deemed to be followed by the words "without limitation"; (vii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (viii) captions and headings to Articles are inserted

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (ix) unless otherwise specified herein, the rules of construction set forth in Section 102 shall apply; (x) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xi) references to docket numbers are references to the docket numbers of documents filed in the Chapter 11 Case under the Bankruptcy Court's CM/ECF system; and (xii) except as otherwise provided herein, any references to the "Effective Date" shall mean the Effective Date or as soon as reasonably practicable thereafter. Any immaterial effectuating provision may be interpreted by Debtor in a manner that is consistent with the overall purpose and intent of the Plan without further Final Order of the Bankruptcy Court.

**1.3.    Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**1.4.    Reference to Monetary Figures.**

All references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE 2**

**BACKGROUND AND DISCLOSURES**

**2.1.    Debtor's History and Business Operations.**

Debtor, a Los Angeles based real estate developer, is an American subsidiary of a global Chinese conglomerate. Oceanwide Real Estate Group (USA) Corp., a Delaware corporation ("OREG"), is Debtor's sole member and its manager. Debtor is part of a corporate family consisting of other senior limited liability companies and is indirectly owned by Oceanwide Holdings Co. Ltd, in Beijing, China. Debtor's relevant corporate affiliates are shown on **Exhibit 1**. Debtor was organized in 2013 to purchase the Real Property for $174 million. At the time, the Real Property consisted of an asphalt parking lot and a small two-story building.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

Debtor owns Oceanwide Plaza (the "Project"), an approximately 60-percent complete mixed-use development project in downtown Los Angeles situated on the Real Property. In connection with the Project, Debtor additionally acquired certain Assets that are in its possession and the possession of third parties. The Project is across from Crypto.com Arena and consists of three uncompleted high-rise residential towers: two towers are 42 stories tall, and the other is 55 stories tall and includes a planned 11-story hotel. Each tower is built on a 6-story podium consisting of parking, retail, dining, and office space, and a planned 2-story-high LED screen wrapped around the podium's Figueroa, 11th, and 12th Street facades. The Project's external construction is largely complete, but portions of the Project's internal construction is unfinished. The Project is part of the Los Angeles Sports and Entertainment District, which includes the Convention Center, Crypto.com Arena, LA Live, and the two 30-plus story Circa luxury apartment towers at 12th and Figueroa Streets. It is also part of a broader plan and long-standing goal of LA City to develop this section of downtown Los Angeles into a Times Square-like destination zone with multi-story LED screens, entertainment venues, and night-time dining and clubs.

Debtor's pre-petition funding arrangements are set forth in Article 2.5. below. For context, prior to the Petition Date, Debtor largely self-funded Project construction. However, for short-term needs, LADI provided Debtor with up to $325 million in construction financing, as described more fully below. LADI disbursed $136.5 million to Debtor, and Debtor repaid $11 million in principal, reducing the principal owed to $125.5 million. In 2014, Debtor hired RTKL Associates, Inc., now known as Arcadis as its architect, and Lendlease as construction manager, to begin work on the Project and entered into separate contracts with them. In 2015, the existing structure and parking lot were demolished, and excavation began. Debtor hired Swinerton Management Consulting to manage the construction phase and supervise a general contractor. In 2016, after a bidding process, Debtor hired Lendlease as its general contractor to construct the Project and Lendlease then hired over forty subcontractors. In March 2018, the Project "topped-out": the high-rise towers were finished to their top floors. Shortly thereafter, Debtor began loan negotiations with JPMorgan Chase Bank, N.A. for a $1.1 billion loan facility. These negotiations continued into 2019 but were ultimately not successful.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

1

### 2.2.    Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize.

In November 2018, Debtor began to have difficulty obtaining additional capital transfers from its affiliates in China. Debtor believes that these funding difficulties arose for several reasons, including regulatory restrictions by the Chinese government on current transfers and other macro-economic conditions. Debtor understands that as a result of its capital challenges, Lendlease demobilized most of its subcontractors by mid-January 2019, but continued to perform a small amount of work. Without access to capital, Debtor then pursued three alternative plans beginning in January 2019: 1) find alternative construction financing to complete the Project, 2) enter into a joint venture agreement to complete the Project, or 3) sell the Project.

Debtor attempted to obtain alternative construction financing from January 2019 to September of 2020 but was unable to close on such financing. Debtor believes that its efforts to obtain alternative financing were negatively impacted by the COVID-19 pandemic and related economic slowdown, which impacted both national and global lending markets. Debtor then shifted to primarily focus on selling the Project in May 2021. Prior to the Petition Date, Debtor was in serious negotiations with two potential purchasers who were in the process of conducting due diligence; one who signed a Letter of Intent ("LOI") in August 2023 and the other who signed a LOI in September 2023.

### 2.3.    The State Court Action

The State Court Action commenced in 2019 and involved disputes regarding the validity, priority, and amounts of various claims against the Project. Because Debtor failed to pay contractors, they recorded mechanic's liens on the Real Property. On January 31, 2019, Webcor Construction, LP ("Webcor"), a Lendlease subcontractor, sued to foreclose on its mechanic's lien in Los Angeles Superior Court case number 19STCV03357, the first of 44 foreclosure cases filed against Debtor or Lendlease. Lendlease and 27 contractors also sued LADI for a judgment holding their liens were superior to LADI's deed of trust, and Lendlease and 7 contractors also named CTIC. Webcor also sued for declaratory relief that LADI's deed of trust is invalid and unenforceable. LADI and CTIC cross-sued Lendlease. All of these cases were consolidated into the State Court Action.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

1    The key parties to the State Court Action included: (i) LADI, the original lender that

2    provided a $325 million loan to Debtor secured by a Deed of Trust recorded on July 20, 2015,

3    which loan has since been assigned to KPC Plaza, LLC; (ii) Lendlease, the general contractor on

4    the Project, to whom Debtor conceded during Phase I Trial that it owed approximately $118 million

5    for work performed; (iii) CTIC, the title company that issued both a loan policy to LADI and an

6    owner's policy to Debtor, and asserted claims against Lendlease for breach of the Contractor's

7    Indemnity Agreement; and (iv) multiple mechanic's lien holders totalling $168,950,128.56,

8    including Webcor's $51 million mechanic's lien which was assigned to Lendlease.

9    The State Court Action involved multiple phases of trial conducted over several years. On

10   March 22, 2023, the Superior Court granted LADI's cross-motion for summary adjudication and

11   denied Lendlease and Webcor's cross-motion, establishing that the LADI Deed of Trust has priority

12   over mechanic's liens for work commencing after July 20, 2015. The Phase I Trial (Statements of

13   Decision dated November 30, 2023 and December 19, 2023) resulted in the court awarding

14   Lendlease damages against Debtor totalling $169,948,122.23 for breach of contract, $121,866,906

15   in prompt payment penalties, and $2,512,743 in prejudgment contractual interest. The Phase III

16   Trial (Statement of Decision dated July 3, 2024) determined the reasonable value of Webcor's

17   mechanic's lien at $51 million.

18   The Phase Two Trial (Statement of Decision dated February 25, 2025) addressed issues that

19   were pending as of the Petition Date. After relief from stay was granted, the state court found that

20   (1) the LADI Deed of Trust is valid, enforceable, and senior in priority to all mechanic's liens; (2)

21   Lendlease subordinated its mechanic's liens by operation of an Indemnity Agreement; and (3)

22   Lendlease breached the Indemnity Agreement and CTIC is entitled to recover damages including

23   attorney's fees it paid on LADI's behalf.

24   A fourth phase of trial on damages owed by Lendlease to CTIC was originally scheduled

25   for November 19, 2025. However, the presiding judge in the State Court Action repeatedly

26   continued the start of the Phase IV trial because the parties indicated they were close to completing

27   the Global Settlement Agreement. Negotiations began in Spring 2025, involving several mediation

28   sessions with the Honorable Randall Newsome (Ret.), including a fourth session in April 2025, and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

20

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

at least two settlement conferences with Superior Court Judge Timothy Dillon ordered by the Superior Court.

After months of settlement negotiations, the parties reached the Global Settlement Agreement. As part of the Global Settlement Agreement, the state court entered the agreed final judgment on January 29, 2026. This multi-year, multi-phase litigation was consuming substantial estate resources and preventing the sale of the Real Property, ultimately leading the parties to negotiate the comprehensive Global Settlement Agreement, which was approved by this Court on February 3, 2026.

**2.4.    Cooperation with LA City to Address Security Issues Caused by International Attention.**

Debtor originally garnered international attention for its scale and ambition, its expected substantial economic impact on downtown Los Angeles, creating jobs and boosting the local economy. It later drew a different kind of focus. Despite Debtor's lack of funds pre-petition, its security service agreed to provide two guards on a 24/7 full time basis. There were notable incidents, however, in the first quarter of 2024 involving graffiti and base jumping, including a group of graffiti artists and base jumpers that illegally accessed the unfinished skyscraper. These incidents were widely covered in the media and heightened the need for immediate security measures.

On February 9, 2024, the Los Angeles City Council unanimously adopted a resolution stating the Project "has been a blight on Downtown Los Angeles' South Park neighborhood," noting criminal activity had "increased exponentially" in early 2024, including trucks ramming into the Project's gates and driving into the building to facilitate copper wire theft, trespassers climbing hundreds of feet to tag windows with graffiti, and individuals base jumping from the top floor of the Project. LA City also issued an abatement notice ordering Debtor to remove the graffiti and secure the Real Property. Debtor was unable to comply with the abatement orders due to its lack of funds and the City Council voted to allot nearly $4 million to remove graffiti and secure the Real Property.

In February, 2024 through about May, 2024, the Los Angeles Police Department had a constant presence at the site. It allocated significant manpower to this effort to hold the perimeter

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

of the Real Property. It began installing a 14-foot high, stagger-perforated steel-sheet fence (i.e., anti-climb fencing) around the Project on February 23, 2024, and started to install razor wire in an area deemed particularly prone to breach. Debtor took over these security efforts once it secured financing pursuant to the DIP Facility Orders. Since the DIP Facility began, Debtor, has safeguarded the Real Property, paid the cost of security, increased to six 24/7 private security guards, and implemented other security measures to prevent trespassing such as the installation of razor wire and blocking off entrances to protect the Real Property and reduce access for potential trespassers. LA City continued to incur costs for security and abatement services after the Petition Date. LA City filed Proof of Claim No. 101 asserting, among other things, a priority unsecured expense claim under Section 507(a)(3) in the amount of $3,896,392.78 for post-petition costs incurred to secure and maintain the Real Property between the Petition Date and the Relief Date.[3]

## 2.5.  Pre-Petition Financing Arrangements.

Debtor self-funded construction of the Project with approximately $956.6 million in capital transfers and received approximately $118.4 million in inter-company loans (summarized below). These capital transfers made up about 80% of the funding for the Project. For short-term needs, and as noted above, Debtor obtained a credit line with a $325 million limit from LADI. Debtor understands that LADI is an investment vehicle deployed under the federal government's EB-5 Immigrant Investor visa program. The credit line extended by LADI (generally, the "EB-5 Loan") is evidenced by a $325 million *Promissory Note* which is secured by a *Deed of Trust* in favor of LADI (the "EB-5 Deed of Trust"). Debtor understands that LADI recorded the EB-5 Deed of Trust against the Real Property in 2015 to secure repayment of any disbursements under the EB-5 Loan. LADI has disbursed approximately $136.5 million to Debtor. Debtor re-paid $11 million of the principal, reducing the principal amount of the debt to $125.5 million, which together with interest, late fees, etc., remains outstanding.

---

[3]  The City of Los Angeles filed Proof of Claim No. 101 asserting total claims of $5,066,387.60, comprised of: (i) a General Unsecured Claim of $1,159,520.52 for pre-petition utility charges and abatement costs; (ii) a priority unsecured Claim under Section 507(a)(3) of $3,896,392.78 for post-petition costs to secure and maintain the Real Property between the Petition Date and Relief Date (i.e. the GAP period); and (iii) Administrative Claims of $2,987,015.36 for post-Relief Date charges and $10,474.30 under Section 503(b)(9) for goods delivered within 20 days before the Petition Date.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

In sum, between the self-funded capital transfers and intercompany loans, and the EB-5 Loan disbursements made by LADI, Debtor has invested approximately $1.20 billion in the Project's construction:

| Capital and Debt | Amount |
|---|---|
| *Capital Transfer* | |
| China Oceanwide Holdings Limited | $956,527,033.22 |
| **Subtotal** | **$956,527,033.22** |
| | |
| *Debt* | |
| L.A. Downtown Investment LP | $136,500,000.00 |
| Oceanwide Real Estate Group (USA) Corp. | $95,000,000.00 |
| Oceanwide Investment Three (Hungary) Limited Liability Company | $23,400,000.00 |
| **Subtotal** | **$254,900,000.00** |
| **TOTAL** | **$1,211,427,033.22** |

## 2.6.    Events During Debtor's Chapter 11 Case.

### 2.6.1.   *Employment of Professionals and Consultants*.

Debtor has employed, and the Court has authorized the employment of, the following Professionals: Bryan Cave Leighton Paisner, LLP as chapter 11 bankruptcy counsel [ECF No. 298]; Stretto, Inc. as Notice and Claims Agent [ECF No. 315]; Bradley Sharp and Development Specialists, Inc. as Debtor's Chief Restructuring Officer [ECF No. 306]; GlassRatner Advisory and Capital Group LLC dba B. Riley Advisory Services as Financial Advisor [ECF No. 311]; and Colliers International Greater Los Angeles, Inc. ("Colliers") and Hilco Real Estate, LLC ("Hilco," and collectively with Colliers, the "Real Estate Brokers") as real estate brokers [ECF No. 268]. On November 5, 2025, the Bankruptcy Court entered an order granting Debtor's motion to amend the Colliers listing agreement to extend the term solely with respect to a confidential buyer and to eliminate certain consulting fees [ECF No. 760].

### 2.6.2.   *Claims Bar Date*.

At a hearing dated March 29, 2024, and by order of the Court, the Court established a deadline for creditors to file Proofs of Claim against Debtor. [ECF No. 89]. On April 18, 2024, Debtor submitted its Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

159] which provided for a general bar date for non-governmental creditors of June 26, 2024, and a governmental claim bar date of September 7, 2024.

2.6.3.    *Summary of Scheduled and Filed Claims.*

Attached as **Exhibit 2** is a chart for each of the Claims that Debtor identified in its schedules and each Proof of Claim with the asserted amount of that Claim that has been filed against Debtor along with the amounts and status of each such Claim. A summary of the total Claims scheduled by Debtor and filed by creditors is below:

2.6.3.1.    Secured Tax Claims

LA County Treasurer and Tax Collector hold Secured Tax Claims against the Real Property for delinquent property taxes (Assessor's ID# 5138-015-045). As of October 23, 2024, LA County filed amended Claim No. 2 asserting $28,320,728.76, and the current asserted balance is $38,656,244, which amount will continue to increase with penalties and interest at 18% per annum through the Closing Date. These claims are secured by statutory liens under California state law and have first priority in the distribution waterfall ahead of all other claims, including the DIP Facility Claims, LADI Secured Claim, and LL Secured Claims.

2.6.3.2.    LADI and LL Secured Claims.

As described more fully below, Debtor, Lendlease and LADI have resolved disputes between them concerning the amounts of the LADI Secured Claim and LL Secured Claims, the Bankruptcy Court has approved the Global Settlement Agreement and has Allowed the LADI Secured Claim and LL Secured Claims in the amounts set forth in the 9019 Order and in Sections 4.3.2 and 4.3.3 hereof.

2.6.3.3.    Junior Secured Claims.

Certain additional parties have filed Proofs of Claim asserting their claims are Secured Claims, in whole or in part. Debtor is continuing to evaluate whether the Holders of Junior Secured Claims have properly perfected their asserted security interests; to the extent any such Claims are determined to be unperfected, such Claims shall be reclassified and treated as General Unsecured Claims in Class 6. Notwithstanding the foregoing, for purposes of this Plan and voting on the Plan, all Holders of Junior Secured Claims are classified in Class 4 and shall vote in such Class. Based

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

24

on the Liquidation Analysis attached hereto as Exhibit 3, these Junior Secured Claims total approximately $32,406,596. To the extent any Allowed Junior Secured Claims are not satisfied in full from the Sale Proceeds, the unsecured deficiency portion of such Claims shall be treated as General Unsecured Claims in Class 6.

### 2.6.3.4.    Priority Tax Claims.

Debtor scheduled a total of approximately $145,000 in Priority Tax Claims. Approximately $285,196 in tax priority claims have been asserted against Debtor in timely filed Proofs of Claim.

### 2.6.3.5.    Other Priority Claims.

Debtor scheduled a total of approximately $60,600 in Other Priority Claims. Approximately $79,683 in Other Priority Claims under 11 U.S.C. §§507(a)(4)(A) and (a)(5) have been asserted against Debtor in timely filed Proofs of Claim.

### 2.6.3.6.    General Unsecured Claims.

Debtor scheduled a total of approximately $176,700,000 in General Unsecured Claims. Approximately $161,018,015 in General Unsecured Claims have been asserted against Debtor in timely filed Proofs of Claim. This amount does not include any Junior Secured Claims or Intercompany Loan Claims, which are more fully set out below.

### 2.6.3.7.    Intercompany Loan Claims.

Debtor allegedly owes a total of approximately $221,896,064 in Intercompany Loan Claims, inclusive of interest, which accrued prior to the Petition Date. The Intercompany Loan Claims stem from two purported loans made to Debtor. First, is a loan which was disbursed in multiple installments from October of 2014 to September of 2015 in the total original principal amount of $23.4 million, with annual interest accruing at 11.5%, which is currently held by Oceanwide Investment Three (Hungary) Limited Liability Company. Second is a purported loan disbursed in December 2013 in the original principal amount of $95 million, with annual interest accruing at 6.5%, which is currently held by OREG. Oceanwide Investment Three (Hungary) Limited Liability Company filed a Proof of Claim in the amount of $52,239,710.09. OREG filed a Proof of Claim in the amount of $169,301,076.71.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Debtor has conducted a preliminary investigation of the Intercompany Loan Claims and Debtor's investigation remains ongoing. Debtor reserves all rights to object to the Intercompany Loan Claims or to seek recharacterization of such Claims as Equity Interests if warranted by the evidence. To the extent any Intercompany Loan Claims are recharacterized as Equity Interests by Final Order, such Claims shall be transferred from Class 7 to Class 8 and treated in accordance with Article 4.3.7. For purposes of determining whether the Plan satisfies the requirements of Section 1129(a)(10), Debtor notes that Class 6 (General Unsecured Claims) is an Impaired Class that is entitled to vote on the Plan and does not include any insider Claims. Accordingly, acceptance of the Plan by Class 6 would satisfy Section 1129(a)(10) regardless of the treatment or recharacterization of the Intercompany Loan Claims in Class 7.

To the extent that the allowance of the Intercompany Loan Claims is not resolved on or prior to the Effective Date, the Liquidating Trust will continue any such investigation, and if warranted, prosecute objections to remaining Intercompany Loan Claims. Debtor intends to pay the Allowed Intercompany Loan Claims (i) if not subordinated to General Unsecured Claim, then, *pari passu* with the Holders of General Unsecured Claims, and (ii) if subordinated to General Unsecured Claim, then after payment in full of all Allowed General Unsecured Claims.

2.6.4.  *DIP Financing*.

The ability of Debtor to continue to protect and maintain the Real Property during the pendency of this Chapter 11 Case was dependent on Debtor acquiring post-petition financing. On May 16, 2024, the Court entered its *Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superiority Administrative Expense Claims, and (III) Modifying the Automatic Stay* [ECF No. 229], which approved a $9.3 million debtor-in-possession financing facility from DIP Lender.

The DIP Facility Orders have been amended four times pursuant to the Court's Order Approving Stipulation Authorizing Debtor to Increase Post-Petition Financing for Critical Expenses and Extend Maturity Date [ECF No. 622], the Order Approving Second Stipulation Authorizing Debtor To Amend Post-Petition Financing for Critical Expenses and Extend Maturity Date [ECF No. 665], the Order Approving Third Stipulation Authorizing Debtor To Amend Post-

26

Petition Financing For Critical Expenses and Extend Maturity Date [ECF No. 738], and the Order Approving Fourth Stipulation Authorizing Debtor to Increase Post-Petition Financing for Critical Expenses and Extend Maturity Date [ECF Nos. 825, 833]. The fourth amendment increased the maximum principal balance of the DIP Facility to $19,250,326 and extended the maturity date through March 31, 2026. Unless otherwise agreed to by the Holder of an Allowed DIP Facility Claim and Debtor, each Holder of an Allowed DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed DIP Facility Claim on the date the Sale is closed from the Sale Proceeds, with priority second only to Allowed Secured Tax Claims as set forth in the distribution waterfall established by the Global Settlement Agreement approved by the 9019 Order and the DIP Facility Orders.

2.6.5. *Limited Relief from Stay Regarding the State Court Action.*

On March 28, 2024, LADI submitted its *Motion for Relief from the Automatic Stay as to Nonbankruptcy Action* [ECF No. 80] (the "Relief from Stay Motion") alleging, among other things, that LADI's dispute with Lendlease concerning the priority of their respective liens should be resolved in the State Court Action. On April 11, 2024, Debtor submitted its Objection to LADI's Motion for Relief From Stay [ECF No. 141] (the "Debtor Stay Relief Objection"). Lendlease filed a joinder and supporting evidence to Debtor's Stay Relief Objection [ECF No. 143]. The Court held a hearing on the Relief from Stay Motion on May 15, 2024, and, on May 29, 2024, the Court entered its *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* [ECF No. 241] (the "Stay Relief Order") which, among other things, terminated the automatic stay as to Debtor and Debtor's estate for all parties and stated that such parties could proceed to a final judgment, including appeals, in accordance with non-bankruptcy law. The automatic stay was not terminated with respect to any effort to enforce any judgment rendered in the State Court Action or to collect any claim against Debtor.

2.6.6. *U.S. Trustee's Motion to Dismiss Denied.*

On June 6, 2024, the United States Trustee filed its Notice of Motion And Motion Under 11 U.S.C. § 1112(b) To Dismiss, Convert, Or Direct The Appointment Of A Chapter 11 Trustee, Or

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

27

For A Deadline To Obtain Insurance [ECF No. 294] (the "<u>UST Motion to Dismiss</u>"). Oppositions to the Motion to Dismiss were filed by Debtor, LA City, and Lendlease [ECF Nos. 333, 334 and 342] and joinders to the oppositions were filed by secured creditor and Mechanic's Lien Creditor Bragg Investment Co., Inc. [ECF No. 348], ACCO Engineered Systems, Inc., Bapko Metal, Inc., and Martin Bros / Marcowall, Inc. [ECF No. 349]. The UST filed its Omnibus Reply on July 18, 2024 [ECF No. 350]. At the hearing held on July 25, 2024, the Court denied the UST Motion to Dismiss and entered its order to that effect on July 26, 2024. [ECF No. 371].

2.6.7.  *Settlement-Efforts / Mediation With Consultation Parties*.

In late April 2024 / early May 2024, Debtor, LADI, Lendlease, CTIC and LA City started to engage in serious negotiations to resolve objections to the DIP Facility and to work on a path to consensually move the Chapter 11 Case forward. The informal settlement-efforts resulted in a consensual resolution to the first of the DIP Facility Orders which included an agreement to convene confidential regular meetings with these parties (now known as the "<u>Consultation Parties</u>") and an agreement to mediate with the Honorable Randall Newsome (Ret.). An *Order Approving Stipulation To Approve Confidentiality And Nondisclosure Agreement* was entered on June 25, 2024. [ECF No. 292].

Debtor and the Consultation Parties engaged in several mediation sessions to attempt to resolve, among other things, the matters set forth in the State Court Action and disputes between the parties in this Chapter 11 Case. These formal proceedings supplemented numerous attempts by the parties to resolve the disputed issues without the assistance of a neutral. While certain primary terms were agreed upon shortly after the April 2025 mediation session, the parties continued to discuss the terms and mechanics for any potential settlement. As set forth in Debtor and Debtor-In-Possession's Motion for Approval of Settlement Agreement and Related Relief Pursuant to Federal Rule of Bankruptcy Procedure 9019 [ECF No. 789], as a result of this mediation process and extensive discussions between Debtor, Lendlease, LADI, CTIC and others, the parties ultimately reached a global settlement of the issues between them which was memorialized in the Global Settlement Agreement. As reflected above, the Global Settlement Agreement, among other things, sets forth the parties' agreement regarding the priority of the LADI Secured Claim and LL Secured

28

Claim, sets forth the amount in which these Secured Claims have been Allowed, and provides for the resolution of the State Court Action through a stipulated judgment, which has been entered.

2.6.8.  *Sale and Marketing Process for the Real Property.*

The sale of the Real Property is crucial to the Consummation of the Plan and represents the fastest path to completing construction of the Project in time for the 2028 Los Angeles Olympic Games. During the course of this Chapter 11 Case, Debtor has undertaken extensive efforts to market and sell the Real Property. Debtor believes that a sale of the Real Property through bankruptcy is the best - and perhaps only - way to maximize the Real Property's value and provide creditor recoveries. In support of that effort, Debtor engaged the Real Estate Brokers as joint real estate brokers for the Real Property.

The marketing process drew interest from a broad group of potential buyers. By mid-2024, ninety-one (91) parties had signed confidentiality agreements, and project tours commenced in late July 2024. The Real Property's specialized design presented reuse challenges, including the size of the condominium units and structural choices made during construction. The bidder universe therefore included both developers willing to complete the Project as originally designed and groups evaluating alternative uses. Bidding Procedures were approved by the Bankruptcy Court on June 21, 2024, including authorization to conduct an auction process. [ECF No. 276]. The auction was scheduled to run in person and online and required bidders to meet strict qualification standards, including demonstrated development experience and a viable financing plan.

Debtor received several indications of interests, but the unique nature of the Real Property did not allow those transactions to proceed to the deposit stage, requiring the Bankruptcy Court to modify the dates in the Bidding Order and ultimately vacate the dates.

By August 2025, the field had narrowed to two bidders, one domestic (i.e., the Purchaser) and one international, after a period of broader interest. Debtor and its Professionals maintained intensive engagement with multiple interested parties, with particularly focused negotiations ongoing with at least one serious interested party.

Following these extensive marketing efforts and negotiations with multiple prospective purchasers, Debtor determined that the value of the estate would be best maximized through a sale

29

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

to Purchaser pursuant to the PSA. Given extensive marketing that has occurred and the discussions with multiple buyers before and after this Chapter 11 Case began, Debtor concluded that any attempt at this juncture to find an alternative buyer through a further competitive auction process would be futile, waste time, and add avoidable administrative expense. At the same time, the PSA makes clear that Debtor maintains its fiduciary out to sell to a higher and better bidder.

On February 16, 2026, Debtor and Purchaser entered into the PSA which provides, among other things, that Purchaser will acquire the PSA Property for consideration of Four Hundred Seventy Million Dollars ($470,000,000.00), consisting of (i) the Credit Bid Consideration of approximately Four Hundred Million Dollars ($400,000,000.00),[4] comprised of a credit bid of the LADI Secured Claim and LL Secured Claims made in full satisfaction of such Claims pursuant to Section 363(k) of the Bankruptcy Code, and (ii) the Cash Consideration of up to Seventy Million Dollars ($70,000,000.00).

As set forth in the PSA, the Credit Bid Consideration consists of the LADI Secured Claim and LL Secured Claims at Closing. KPC Plaza, LLC, an affiliate of Purchaser, acquired the LADI Secured Claim from LADI, and Purchaser or its affiliates hold or control the LL Secured Claims, which have been Allowed pursuant to the Global Settlement Agreement approved by the 9019 Order pursuant to Section 363(k) of the Bankruptcy Code. Accordingly, at Closing, Purchaser will credit bid either a portion up to the full amount of the LADI Secured Claim and LL Secured Claims in partial satisfaction of the consideration, with the remaining Cash Consideration to be paid in accordance with the terms of the PSA.

*Fiduciary Out Provision*. The PSA includes provisions that preserve Debtor's fiduciary duties to its creditors and estate. Pursuant to Section 9.5 of the PSA, between the date of execution of the PSA and entry of the Confirmation Order (which shall constitute the Sale Order as defined

---

[4]   The Credit Bid Consideration is actually higher than $400 million at Closing. Pursuant to the Global Settlement Agreement and 9019 Order, the LADI Secured Claim accrues interest at the rate of $60,000 per diem from and after November 1, 2025, together with reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of the Holder of the LADI Secured Claim, which amounts accrue interest at the rate of 10% simple per annum from and after the date paid. Accordingly, the Credit Bid Consideration will increase daily through the Closing Date to reflect such accrued interest and fees.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  in the PSA), Debtor may terminate the PSA if, upon written advice of its counsel, Debtor determines

2  that pursuing the transaction with Purchaser instead of an alternative transaction with a third party

3  is inconsistent with its fiduciary obligations under law; provided, however, that to terminate under

4  this provision: (i) the Alternative Transaction must provide for (a) a cash purchase price equal to at

5  least the consideration provided for under the PSA with payments in full of the LADI Secured

6  Claim and the LL Secured Claims at the closing of the Alternative Transaction, plus three percent

7  (3%) of the consideration, and (b) an outside closing date of forty-five (45) days after the

8  termination of the PSA, which date cannot be extended; (ii) Debtor shall pay in full in cash the DIP

9  Facility Claim on the date the PSA is terminated; and (iii) the deposit shall be returned to Purchaser

10  immediately, automatically, and unconditionally. For the avoidance of doubt, Debtor may not seek

11  to terminate the PSA under the fiduciary out provision on the date of and after the entry of the

12  Confirmation Order.[5]

13       Notwithstanding any other provision of this Plan, in the event that Debtor terminates the

14  PSA pursuant to the fiduciary out provision set forth in Section 9.5 of the PSA, or otherwise

15  consummates an Alternative Transaction in lieu of the Sale to Purchaser, such Alternative

16  Transaction shall be deemed approved under this Plan without the need for any amendment,

17  modification, or supplement to this Plan, and all references herein to the Sale, the PSA, and the

18  Purchaser shall be deemed to refer to such Alternative Transaction and the purchaser thereunder,

19  as applicable, and the closing of either such transaction shall satisfy the conditions precedent to the

20  Effective Date set forth in Article 11.2.

21       Debtor seeks approval of the Sale to Purchaser as set forth in this Plan and pursuant to the

22  Confirmation Order, which shall constitute the Sale Order as defined in the PSA. The closing of the

23  Sale of the PSA Property shall occur on the Closing Date, which shall occur after entry of the

24  Confirmation Order and prior to the Effective Date. The PSA provides for potential extensions of

25  the Closing Date under certain circumstances. Following the closing of the Sale on the Closing

26

27  _____
    [5] The summary description of Alternative Transaction is qualified in its entirety to the definition of
28  Alternative Transaction in the PSA. In the event of an inconsistency between the two, the definition
    in the PSA shall control.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

Date, the Sale Proceeds shall be used by Debtor and, on and after the Effective Date, the Liquidating Trustee, to satisfy Claims as further set forth herein.

**ARTICLE 3**

**UNCLASSIFIED ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with Section 1123(a)(1), DIP Facility Claims, Junior DIP Facility Claims, Administrative Claims, Priority Tax Claims, GAP Claims, and Professional Fee Claims have not been classified and are thus excluded from the Classes of Claims and Equity Interests set forth in Article 4 of the Plan below.

**3.1.    DIP Facility Claims; Junior DIP Facility Claims.**

Pursuant to the Order Approving Fourth Stipulation Authorizing Debtor to Increase Post-Petition Financing for Critical Expenses and Extend Maturity Date [ECF Nos. 825, 833], the Court authorized Debtor to increase the maximum principal balance of the DIP Facility to $19,250,326 and extended the maturity date of the DIP Facility through March 31, 2026, to fund Debtor's operations through Confirmation. Therefore, Debtor anticipates that advances under the DIP Facility will amount to no more than $19,250,326, through March 31, 2026 exclusive of interest fees, costs, and other expenses. Debtor is liable to DIP Lender for all amounts borrowed, plus interest, fees, expenses and any other amounts allowed under the DIP Facility. The DIP Facility Claim is secured by, among other things, a priming lien on the Real Property with priority above all other interests, except the Secured Tax Claims.

Unless otherwise agreed to by the Holder of an Allowed DIP Facility Claim and Debtor, each Holder of an Allowed DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed DIP Facility Claim on the date the Sale is closed from the Sale Proceeds, with priority second only to Allowed Secured Tax Claims as approved by the 9019 Order and DIP Facility Orders.

Further, as contemplated in the PSA, Debtor may incur a Junior DIP Facility Claim under a Junior DIP Facility. In the event such Junior DIP Facility Claim is incurred, and unless otherwise agreed to by the Holder of an Allowed Junior DIP Facility Claim and Debtor, each Holder of an

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

32

Allowed Junior DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed Junior DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed Junior DIP Facility Claim on the date the Sale is closed from the Sale Proceeds, with priority third only to, first, the Allowed Secured Tax Claims and, second, the Allowed DIP Facility Claim.

**3.2.    Administrative Claims.**

Administrative Claims are claims for costs or expenses of administering Debtor's Chapter 11 Case which are allowed under Section 507(a)(2). The Bankruptcy Code requires that all allowed administrative expense claims be paid in full on the Effective Date unless a particular claimant agrees to a different treatment.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and Debtor, each Holder of an Allowed Administrative Claim (except with respect to Priority Tax Claims, Professional Fee Claims, and Statutory Fees) shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed Administrative Claim, an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Initial Distribution Date (or, if not then due, when such Administrative Claim becomes due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter; or (iii) at such other time and upon such other terms as set forth in a Final Order of the Bankruptcy Court.

Notwithstanding the foregoing, the Purchaser, in its sole discretion and with the consent of Debtor, may elect to assume any or all Administrative Claims, and the obligations under this Plan to pay such Administrative Claims, through a Purchaser Assumption Event.

3.2.1.  *Administrative Claims Bar Date*.

All requests for payment of an Administrative Claim (other than Professional Fee Claims or Statutory Fees) that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court and served on Debtor no later than the Initial Administrative Claims Bar Date,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

and all requests for payment of an Administrative Claim (other than Professional Fee Claims or Statutory Fees) that accrued after the Confirmation Date and through the Effective Date must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than the Final Administrative Claims Bar Date. Holders of Administrative Claims (other than Professional Fee Claims) that are required to, but do not, file and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against Debtor, or the Estate, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.

3.2.2. *Allowance of Administrative Claims and Objection Bar Date.*

Debtor, or Liquidating Trustee following the Effective Date, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. Debtor, or Liquidating Trustee following the Effective Date, may also object to any Administrative Claim no later than the Administrative Claims Objection Bar Date. Unless Debtor, the Liquidating Trustee, or other party with standing, objects to a timely filed and properly served Administrative Claim, a timely filed and properly served Administrative Claim shall be deemed Allowed in the amount requested. In the event that Debtor or the Liquidating Trustee objects to an Administrative Claim, the parties thereto may confer to attempt to settle such objection and, in the event that such settlement attempts fail, shall file a motion with the Bankruptcy Court to determine whether such Administrative Claim should be Allowed and, if so, in what amount.

Notwithstanding the foregoing, the Purchaser, in its sole discretion and with the consent of Debtor, may elect to assume any Administrative Claims pursuant to a Purchaser Assumption Event, and the obligations under this Plan to pay such Administrative Claims. In such event, except to the extent that each Holder of an Allowed Administrative Claim agrees to less favorable or different treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall receive an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (i) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Initial Distribution Date

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

(or, if not then due, when such Administrative Claim becomes due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is Allowed after the Effective Date, on the date that such order determining and allowing such Administrative Claim becomes a Final Order or as soon as reasonably practicable thereafter; or (iii) at such other time and upon such other terms as set forth in a Final Order of the Bankruptcy Court; provided, further, the allowance of any such assumed Claim shall be subject to the terms of this Plan and the Bankruptcy Code, with the Purchaser having the sole right to object to and settle the allowance of such Claims. The Purchaser following the Confirmation Date, in its sole and absolute discretion, may settle without further Bankruptcy Court approval any Administrative Claims the Purchaser assumes pursuant to a Purchaser Assumption Event.

**3.3.    Priority Tax Claims.**

Priority Tax Claims include certain unsecured income, employment and other taxes described by Section 507(a)(8). Section 1129(a)(9)(C) requires that each Holder of a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the Allowed amount of such Allowed Priority Tax Claims, over a period ending not later than five years after the Petition Date.

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to less favorable or different treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) as elected by Purchaser; provided *however*, that Debtor or the Liquidating Trustee shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty.

Notwithstanding the foregoing, the Purchaser, in its sole discretion and with the consent of Debtor, may elect to assume any or all Priority Tax Claims pursuant to a Purchaser Assumption Event, and the obligations under this Plan to pay such Priority Tax Claims. In such event, except to the extent that each Holder of an Allowed Priority Tax Claim agrees to less favorable or different treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) as elected by Purchaser; *provided further*, that the Purchaser shall have the right to pay any Allowed Priority Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty. If any or all Priority Tax Claims are assumed by Purchaser following a Purchaser Assumption Event, the Cash Consideration to be paid on the Closing Date shall be reduced by the aggregate amount of all assumed Claims as Allowed by the Bankruptcy Court on or before the Closing Date; provided further, the allowance of any such assumed Claims shall be subject to the terms of this Plan and the Bankruptcy Code, with the Purchaser having the sole right to object to and settle the allowance of such Claims.

In the event that an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as a Junior Secured Claim if such Claim is not otherwise paid in full.

**3.4.    GAP Claims.**

Except to the extent that a Holder of an Allowed GAP Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed GAP Claim, each Holder of such Allowed GAP Claim shall be paid in full in Cash (i) on the Effective Date; (ii) to the extent there is any objection to a GAP Claim on or before the Administrative Claims Objection Bar Date, then on the date that such GAP Claim becomes Allowed; or (iii) as otherwise ordered by the Court. GAP Claims are excepted from the general classification requirements under Section 1123(a)(1) because each creditor holding a GAP Claim is entitled to the treatment provided under the Bankruptcy Code unless that individual claim holder elects otherwise. Accordingly, GAP Claims are entitled to mandatory payment in full in Cash on the Effective Date without the need for acceptance or voting on the Plan. Holders of GAP Claims may not be compelled to accept deferred payment arrangements absent their individual consent. Based on Debtor's review of its books and records, Debtor estimates that total GAP Claims, including the LA City GAP Claim of $3,896,392.78, are approximately $4,000,000 to $4,500,000. GAP Claims may include claims for goods and services provided to Debtor in the ordinary course

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

of business between the Petition Date and the Relief Date. The Liquidating Trustee shall establish a reserve for Disputed GAP Claims in an amount sufficient to pay such claims if Allowed. To the extent not already asserted in conjunction with the bar date for General Unsecured Claims (in which case, a Holder of such Claim shall not be required to refile), any request for payment of a GAP Claim must be filed with the Bankruptcy Court and served on Debtor or the Liquidating Trustee, as applicable, no later than the Initial Administrative Claims Bar Date. Holders of GAP Claims that are required to, but do not, file and serve a request for payment of such GAP Claims by the applicable bar date shall be forever barred, estopped, and enjoined from asserting such GAP Claims against Debtor or the Estate, and such GAP Claims shall be deemed compromised, settled, and released as of the Effective Date.

Notwithstanding the foregoing, the Purchaser, in its sole discretion and with the consent of Debtor, may elect to assume any GAP Claims pursuant to a Purchaser Assumption Event, and the obligations under this Plan to pay such GAP Claims. In such event, except to the extent that each Holder of an Allowed GAP Claim agrees to less favorable or different treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed GAP Claim, each Holder of such Allowed GAP Claim shall be paid in full in Cash (i) on the Effective Date; (ii) to the extent there is any objection to a GAP Claim on or before the Administrative Claims Objection Bar Date, then on the date that such GAP Claim becomes Allowed; or (iii) as otherwise ordered by the Court; provided, further, the allowance of any such assumed Claim shall be subject to the terms of this Plan and the Bankruptcy Code, with the Purchaser having the sole right to object to and settle the allowance of such Claims. The Purchaser following the Confirmation Date, in its sole and absolute discretion, may settle without further Bankruptcy Court approval any GAP Claim the Purchaser assumes pursuant to a Purchaser Assumption Event.

**3.5.    Professional Fee Claims.**

Professional Fee Claims are Administrative Claims that are also unclassified. The Court must approve all professional fees and expenses before they may be paid. For all professional fees and expenses, except fees owing to the Clerk of the Bankruptcy Court and fees owing to the U.S. Trustee, the Professional in question must file and serve a properly noticed fee application and the

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Court must rule on the application. Only the amount of fees and expenses Allowed by the Court will be required to be paid under the Plan. Much of the professional fees and expenses that will be owed as Administrative Claims following Confirmation will be dependent upon whether Debtor is required to engage in any substantial litigation regarding Confirmation, objecting to any Disputed Claims, or estimating any contingent or unliquidated Claims. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any Administrative Claims, and creditors are not waiving any of their rights to object to the allowance of any Administrative Claims. Similarly, Professionals who have been employed in this Chapter 11 Case are not being deemed to have agreed to any cap on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Court order. Debtor also reserves all rights to file objections to any such asserted Administrative Claims.

3.5.1. *Professional Fee Claim Bar Date.*

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Final Administrative Claims Bar Date. After notice and hearing, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

3.5.2. *Payment of Professional Fee Claims.*

In full and final satisfaction, settlement, and release of and in exchange for its Allowed Professional Fee Claim, the Liquidating Trustee shall pay each Holder of an Allowed Professional Fee Claim an amount of Cash equal to the unpaid portion of such Allowed Professional Fee Claim five (5) Business Days after the entry of an Order approving such Professional Fee Claim, or as soon as reasonably practicable thereafter.

**3.6. Statutory Fees.**

Debtor shall pay all Statutory Fees on all disbursements, including Plan payments and disbursements in and outside the ordinary course of Debtor's business at the time of Confirmation, pursuant to the applicable statutory payment schedule. On and after the Effective Date, to the extent that the Chapter 11 Case remains open and, for so long as the Liquidating Trustee remains obligated to pay such quarterly fees, the Liquidating Trustee shall pay such applicable fees as they become

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

38

due in the ordinary course of business until the Bankruptcy Court enters a final decree in the Chapter 11 Case.

# ARTICLE 4

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1.    Classification of Claims.**[6]

The Plan constitutes a chapter 11 plan for Debtor, and the classification of Claims and Equity Interests set forth herein shall apply to Debtor. In accordance with Section 1123(a)(1), Debtor has not classified DIP Facility Claims, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, as described in Article 3 above.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, Confirmation, and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1). A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.

The classification and the manner of satisfying all Claims under the Plan take into consideration: (a) the existence of guarantees or alleged guarantees by Debtor of obligations of other affiliates or Entities, if any; and (b) that Debtor may be joint obligors with other affiliates or Entities with respect to the same obligation.

**4.2.    Class Identification.**

The following chart represents the classification of Claims and Equity Interests for Debtor pursuant to the Plan:

| Class | Claims and Equity Interest | Status | Voting Rights |
|-------|---------------------------|--------|---------------|
| Class 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | LADI Secured Claim | Impaired | Yes |
| Class 3 | LL Secured Claims | Impaired | Yes |

---

[6]    Debtor reserves the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable Law.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

| Class | Claims and Equity Interest | Status | Voting Rights |
|-------|---------------------------|--------|---------------|
| Class 4 | Junior Secured Claims | Impaired | Yes |
| Class 5 | Other Priority Claims | Unimpaired | No (deemed to accept) |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Intercompany Loan Claims | Impaired | Yes |
| Class 8 | Equity Interests | Impaired | No (deemed to reject) |

**4.3.    Treatment of Voting Rights of Claims and Equity Interests.**

Except to the extent that Debtor (or Liquidating Trustee) and a Holder of an Allowed Claim or Allowed Equity Interest, as applicable, agree to less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Equity Interest. Unless otherwise indicated herein, the Holder of an Allowed Claim or Allowed Equity Interest, as applicable, shall receive such treatment on the Initial Distribution Date, unless otherwise set forth below in this Article 4.3.

4.3.1.    *Class 1 – Secured Tax Claims.*

4.3.1.1.    <u>Classification:</u> Class 1 consists of the Holders of Secured Tax Claims.

4.3.1.2.    <u>Anticipated Claim Amount:</u> Debtor scheduled $18,463,711.62 in Secured Tax Claims with priority over all other Secured Claims on the Real Property including the DIP Facility Claims, described above. Debtor understands that the amount of the Secured Tax Claims is approximately $38,656,244, which amount may increase due to the continued accrual of tax, interest, penalties, and other charges through the Closing Date.

4.3.1.3.    <u>Treatment:</u>

Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable or different treatment, in exchange for full and final satisfaction, settlement, and release of each Secured Tax Claim, each Holder of such Allowed Secured Tax Claim shall be paid in Cash from the Sale Proceeds with first priority pursuant to the distribution waterfall established by the Global Settlement Agreement in the full amount of such Claim on, or as soon as reasonably practicable after, the later of: (A) the Initial Distribution Date, (B) the date on which such other Secured Tax Claim becomes an Allowed Secured Tax Claim, or (C) as provided for under Section 1129(a)(9)(C), as elected by Purchaser in its sole discretion; provided, further, that Debtor or the Liquidating

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

40

1
2

Trustee shall have the right to pay any Allowed Secured Tax Claim, or any unpaid balance thereof, in full at any time on or after the Effective Date, without incurring premium or penalty.

3
4
5
6
7
8
9
10
11
12
13

Notwithstanding the foregoing, the Purchaser, in its sole discretion, may elect to assume the Secured Tax Claims, and the obligations under this Plan to pay such Secured Tax Claims, through a Purchaser Assumption Event. In such event, except to the extent that each Holder of an Allowed Secured Tax Claim agrees to less favorable or different treatment, Purchaser will provide the Holder of any assumed Allowed Secured Tax Claim the treatment outlined in this Article 4.3.1.3. If any or all Secured Tax Claims are assumed by Purchaser following a Purchaser Assumption Event, the Cash Consideration to be paid on the Closing Date shall be reduced by the aggregate amount of all assumed Claims as Allowed by the Bankruptcy Court on or before the Closing Date; provided, further, the allowance of any such assumed Claim shall be subject to the terms of this Plan and the Bankruptcy Code, with the Purchaser having the sole right to object to and settle the allowance of such Claims.

14
15

4.3.1.4.    Impairment and Voting: Class 1 is Unimpaired and not entitled to vote to accept or reject the Plan.

16

4.3.2.    *Class 2 - LADI Secured Claim.*

17

4.3.2.1.    Classification: Class 2 consists of the LADI Secured Claim.

18
19
20
21
22
23
24
25
26

4.3.2.2.    Claim Amount: Consistent with the Global Settlement Agreement and 9019 Order, the LADI Secured Claim has been Allowed and is the sum of (i) $230,000,000 as of October 31, 2025, (ii) interest at the rate of $60,000 per diem from and after November 1, 2025 (or $40,000 per diem in the event of an Alternative Transaction), and (iii) reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of LADI on November 1 and 2, 2025, and KPC Plaza, LLC (and any other Holder) from and after November 3, 2025, which amounts accrue interest at the rate of 10% simple per annum from and after the date paid, together subject to a downward adjustment of $20,000,000 pursuant to the Claims Stipulation in the event of an Alternative Transaction.

27
28

4.3.2.3.    Treatment: In the event the Sale under the PSA closes, the LADI Secured Claim will be compromised and be deemed satisfied for purposes of this Plan as part of the consideration

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

the Holder of the LADI Secured Claim is providing to Debtor and its estate under the terms of the PSA. In the event of an Alternative Transaction, except to the extent the Holder of the LADI Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for the LADI Secured Claim, the Holder of the LADI Secured Claim shall receive Cash from the Sale Proceeds pursuant to the distribution waterfall established by the Global Settlement Agreement, provided however in the event of an Alternative Transaction, if CTIC notifies Debtor at least three (3) Business Days in advance of any such distribution, Debtor will pay to CTIC the amount of any CTIC Reimbursement Right instead of paying this amount to the holder of the LADI Secured Claim, which payments shall be made on or as soon as reasonably practicable after, the later of the Initial Distribution Date; as otherwise ordered by the Court. Through and including the Closing Date or the date on which the PSA is validly terminated according to its terms, the Holder of the LADI Secured Claim shall forbear from seeking relief from the automatic stay to foreclose on the Assets securing the LADI Secured Claim. For purposes of clarity, the foregoing forbearance shall not impair or abridge the Purchaser's right to terminate the PSA according to its terms.

4.3.2.4.    Impairment and Voting: Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

4.3.3.    *Class 3 – LL Secured Claims*.

4.3.3.1.    Classification: Class 3 consists of all LL Secured Claims.

4.3.3.2.    Claim Amount: Consistent with the Global Settlement Agreement and 9019 Order, the LL Secured Claims have been Allowed and total $168,950,128.56 and are comprised of Secured Claims held by Lendlease in the amount of $71,349,256, subject to adjustment upward by $20,000,000.00 pursuant to the Claims Stipulation in the event of an Alternative Transaction, and Secured Claims held by DTLA Funding in the amount of $97,600,872.56.

4.3.3.3.    Treatment: In the event the Sale under the PSA closes, the LL Secured Claims will be compromised and be deemed satisfied for purposes of this Plan as part of the consideration the Holder of the LL Secured Claims is providing to Debtor and its estate under the terms of the PSA. In the event of an Alternative Transaction, then except to the extent that a Holder of a LL

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

Secured Claims agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such LL Secured Claim, such Holder of a LL Secured Claim shall receive Cash from the Sale Proceeds pursuant to the distribution waterfall established by the Global Settlement Agreement, including as may be adjusted by the Claims Stipulation.

4.3.3.4.    Impairment and Voting: Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

4.3.4.    *Class 4- Junior Secured Claims.*

4.3.4.1.    Classification: Class 4 consists of all Junior Secured Claims.

4.3.4.2.    Anticipated Claim Amount: Debtor believes that there are approximately $32,406,596 in Junior Secured Claims asserted against the Real Property, largely representing mechanic's lien claimants that are not the Holder of the LL Secured Claims. Debtor has not yet been determined whether any such alleged Claims are valid Secured Claims or otherwise allowable; even if the lien or security interest is valid, such Junior Secured Claims are junior in priority to the LADI Secured Claim and LL Secured Claims and, among other things, subject to extinguishment upon any foreclosure by such senior secured creditors.

4.3.4.3.    Treatment: Except to the extent that a Holder of an Allowed Junior Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Junior Secured Claim: (A) if the Sale is consummated pursuant to the PSA, each Holder of an Allowed Junior Secured Claim shall be considered a Deficiency Claim and receive treatment as a General Unsecured Claim in Class 6 and paid in accordance with the treatment provided for General Unsecured Claims; or (B) if an Alternative Transaction is consummated, each Holder of an Allowed Junior Secured Claim shall be paid in Cash from the Sale Proceeds in accordance with its lien priority as determined by the Bankruptcy Court, to the extent Sale Proceeds are available after satisfaction of all senior Secured Claims, on or as soon as reasonably practicable after, the later of: (i) the Initial Distribution Date; (ii) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article 10.2.1.2., if applicable; (iii) such date provided for in the Liquidating Trust Agreement, or (iv) as otherwise ordered by the Court; provided, however, that to the extent Sale Proceeds are not available to pay

43

an Allowed Junior Secured Claim in full in an Alternative Transaction, the unpaid portion of such Allowed Junior Secured Claim shall be treated as a General Unsecured Claim in Class 6 and paid in accordance with the treatment provided for General Unsecured Claims.

4.3.4.4. <u>Impairment and Voting:</u> Class 4 is impaired and entitled to vote to accept or reject the Plan.

4.3.5. *Class 5 – Other Priority Claims.*

4.3.5.1. <u>Classification</u>: Class 5 consists of all Other Priority Claims.

4.3.5.2. <u>Anticipated Claim Amount</u>: Other Priority Claims include any and all Claims entitled to priority in right of payment under 11 U.S.C. §§507(a)(4)(A) and (a)(5) that are not Administrative Claims, GAP Claims, Priority Tax Claims, or Professional Fee Claims, to the extent such Claim has not already been paid during the Chapter 11 Case. Debtor believes that there are approximately $79,683 owed to certain of its employees. For the avoidance of doubt, GAP Claims are not included in Other Priority Claims and are separately treated as unclassified Claims pursuant to Article 3.4. Except to the extent that a Holder of an Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Other Priority Claim, each Holder thereof shall be paid in full in Cash from Sale Proceeds and/or Plan Administration Assets on or as soon as reasonably practicable after, the later of: (A) the Initial Distribution Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article 10.2.1.2., if applicable; (C) such date provided for in the Liquidating Trust Agreement, or (D) as otherwise ordered by the Bankruptcy Court.

4.3.5.3. <u>Treatment</u>: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder thereof shall be paid in full in Cash from the Sale Proceeds and/or Plan Administration Assets on or as soon as reasonably practicable after, its Other Priority Claim is Allowed. Notwithstanding the foregoing, the Purchaser, in its sole discretion and with the consent of Debtor, may elect to assume any Other Priority Claims pursuant to a Purchaser Assumption Event, and the obligations under this Plan to pay such Other Priority Claims. In such event, except to the extent that each Holder of an Allowed Other Priority

44

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Claim agrees to less favorable or different treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Other Priority Claim, each Holder thereof shall be paid in full in Cash by Purchaser on or as soon as reasonably practicable after its Other Priority Claim is Allowed; provided, further, the allowance of any such assumed Claim shall be subject to the terms of this Plan and the Bankruptcy Code, with the Purchaser having the sole right to object to and settle the allowance of such Other Priority Claims. The Purchaser following the Effective Date, in its sole and absolute discretion, may settle without further Bankruptcy Court approval any Other Priority Claims the Purchaser assumes pursuant to a Purchaser Assumption Event.

4.3.5.4.    Impairment and Voting: Class 5 is Unimpaired and not entitled to vote to accept or reject the Plan.

4.3.6.    *Class 6 – General Unsecured Claims.*

4.3.6.1.    Classification: Class 6 consists of General Unsecured Claims.

4.3.6.2.    Anticipated Claim Amount: Debtor believes that there are approximately $161,018,015 in asserted General Unsecured Claims, excluding Intercompany Loan Claims, against the Estate. The ultimate recovery of Holders of General Unsecured Claims will depend on the Sale Proceeds generated by the Sale including an Alternative Transaction.

4.3.6.3.    Treatment: Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each General Unsecured Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets to the extent available, equal to such Holder's Pro-Rata Share up to the full amount of the unpaid portion of such General Unsecured Claim on or as soon as reasonably practicable after, the later of: (A) the Initial Distribution Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article 10.2.1.2., if applicable; (C) such date provided for in the Liquidating Trust Agreement, or (D) as otherwise ordered by the Court. For the avoidance of doubt, if any Intercompany Loan Claim is Allowed and not subordinated to General Unsecured Claims, such Intercompany Loan Claim shall be included in Class 6 for purposes of distribution, and the Pro-Rata Share shall be adjusted

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

accordingly. To the extent that any Claims initially included in Class 7 are re-characterized and Allowed as Equity Interests, they will instead be included in Class 8 below.

4.3.6.4.    Impairment and Voting: Class 6 is Impaired and entitled to vote to accept or reject the Plan.

4.3.7.    *Class 7 – Intercompany Loan Claims.*

4.3.7.1.    Classification: Class 7 consists of all Intercompany Loan Claims.

4.3.7.2.    Anticipated Claim Amount. Certain of Debtor's affiliates assert they are owed a total of approximately $221,896,064 in Intercompany Loan Claims. Debtor intends to pay the Allowed Intercompany Loan Claims (i) if not subordinated to General Unsecured Claim, then, *pari passu* with the Holders of General Unsecured Claims, and (ii) if subordinated to General Unsecured Claim, then after payment in full of all Allowed General Unsecured Claims. The ultimate recovery of Holders of Intercompany Loan Claims will depend on (i) whether or not such Claims are subordinated to General Unsecured Claims and (ii) the Sale Proceeds generated by the Sale including from an Alternative Transaction.

4.3.7.3.    Treatment: Except to the extent that a Holder of an Intercompany Loan Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Intercompany Loan Claim, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets to the extent available, up to the full amount of the unpaid portion of such Intercompany Loan Claim on or as soon as reasonably practicable after, the later of: (A) the Initial Distribution Date; (B) the date calculated pursuant to the Disputed Creditor Reserve Treatment, as defined in Article 10.2.1.2., if applicable; (C) such date provided for in the Liquidating Trust Agreement, or (D) as otherwise ordered by the Court. If the Intercompany Loan Claims are not subordinated, the Holders of Allowed Intercompany Loan Claims shall be paid pari passu with the Holders of Allowed General Unsecured Claims; if the Intercompany Loan Claims are subordinated, the Holders of Allowed Intercompany Loan Claims shall be paid only after the Holders of Allowed General Unsecured Claims are paid in full. To the extent that any Claims initially included in Class 7 are re-characterized and Allowed as Equity Interests, they will instead be included in Class 8 below.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

4.3.7.4.    <u>Impairment and Voting</u>: Class 7 is Impaired and entitled to vote to accept or reject the Plan.

4.3.8.    *Class 8 – Equity Interests*.

4.3.8.1.    <u>Classification</u>: Class 8 consists of all Equity Interests.

4.3.8.2.    <u>Equity Structure</u>: The equity structure of Debtor will remain unchanged as a result of the Plan and Confirmation Order, and Holders of Equity Interests will retain such Equity Interests only if all Allowed Claims in Classes 1 through 7 are paid in full; otherwise, all Equity Interests shall be cancelled and extinguished on the Effective Date without any distribution to Holders of Equity Interests, in accordance with the absolute priority rule under Section 1129(b)(2)(B)(ii) of the Bankruptcy Code. Holders of Equity Interests are deemed to reject the Plan, and if all Allowed Claims in Classes 1 through 7 are not paid in full, Class 8 shall be deemed to have rejected the Plan for purposes of Section 1129(a)(8), and Debtor shall seek confirmation of the Plan pursuant to Section 1129(b) with respect to Class 8.

4.3.8.3.    <u>Treatment</u>: Except to the extent that a Holder of an Equity Interest agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for each Equity Interest, each Holder thereof shall be paid in Cash from the Sale Proceeds and/or Plan Administration Assets remaining after the Secured Tax Claims, LADI Secured Claim, LL Secured Claims, Junior Secured Claims, Other Priority Claims, GAP Claims, Administrative Claims, Priority Tax Claims, Professional Fee Claims, Statutory Fees, General Unsecured Claims, and Intercompany Loan Claims (to the extent not recharacterized as Equity Interests) are paid in full, on or as soon as reasonably practicable after, the later of: (A) the Initial Distribution Date; (B) such date provided for in the Liquidating Trust Agreement, or (C) as otherwise ordered by the Court; provided, however, that if all Allowed Claims in Classes 1 through 7 are not paid in full, Holders of Equity Interests shall receive no distribution and all Equity Interests shall be cancelled and extinguished on the Effective Date in accordance with the absolute priority rule under Section 1129(b)(2)(B)(ii) of the Bankruptcy Code.

4.3.8.4.    <u>Impairment and Voting</u>: Class 8 is Impaired and is deemed to reject the Plan.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

**4.4.** **Special Provisions Governing Unimpaired Claims.**

To the extent that Debtor later amends this Plan to note that one or more of the Classes identified above are Unimpaired, except as otherwise expressly provided herein, nothing in the Plan shall affect Debtor's rights with respect to any Unimpaired Claim, including, but not limited to, all rights to legal and equitable defenses, setoffs, or recoupments against any such Unimpaired Claim.

**4.5.** **Elimination of Vacant Classes.**

Any Class of Claims or Equity Interests that does not contain a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily Allowed under Bankruptcy Rule 3018(a), as of the date of the Confirmation Hearing shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8).

**4.6.** **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and their respective distributions and treatments under the Plan, shall take into account and confirm the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under the general principles of equitable subordination, Section 510(b), or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Equity Interests, based upon any claimed subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or any other such similar legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. Pursuant to Section 510, except where otherwise provided herein, Debtor reserves the right to seek to reclassify any Allowed Claim or

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

Equity Interest, following notice and a hearing and by Final Order of the Court in accordance with any contractual, legal, or equitable subordination rights relating thereto.

**4.7.    No Waiver.**

Nothing contained in this Plan shall be construed to waive Debtor's, Liquidating Trustee's or other Entity's right to object on any basis to any Claim or Lien, including after the Effective Date.

**ARTICLE 5**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic Confirmation issues, which they may wish to consider, as well as certain relevant deadlines. Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

**5.1.    Confirmation Procedure.**

The Solicitation Order, among other things, will conditionally approve the Plan and Disclosure Statement for solicitation purposes only and authorizes Debtor to solicit votes to accept or reject the Plan. The Confirmation Hearing has been scheduled for **April 9, 2026, at 10:00 a.m.** (prevailing Pacific Time) at the Bankruptcy Court, 255 East Temple Street, Los Angeles, CA 90012 in Courtroom 1639 and *via* Zoom videoconference to consider (a) final approval of the Plan and Disclosure Statement as providing adequate information pursuant to Section 1125 and (b) Confirmation of the Plan pursuant to Section 1129 subject to the consent of the Consultation Parties. The Confirmation Hearing may be adjourned from time to time by Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

**5.2.    Procedure for Objections.**

Any party-in-interest may object to the final approval and Confirmation of the Disclosure Statement and Plan, even if such party-in-interest would not be entitled to vote to accept or reject the Plan. Any such objections must be made in writing and filed with the Bankruptcy Court and served on (i) counsel to Debtor, Bryan Cave Leighton Paisner LLP, 120 Broadway, Suite 300, Santa Monica, CA 90401, Attn: Sharon Weiss (sharon.weiss@bclplaw.com), (ii) counsel to the Holder of the LADI Secured Claim, (iii) counsel to Lendlease, (iv) counsel to the City of Los Angeles, (v) counsel to Purchaser, and (vi) the United States Trustee at 915 Wilshire Blvd., Suite 1850, Attn: Noreen Madoyan, Los Angeles, California, 90017. Objections to Confirmation of the Plan must be in writing and filed with the Bankruptcy Court by no later than **March 20, 2026, 11:59 PM Pacific Time**. [ECF No. 832]. If an objection is not timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**5.3.    Voting.**

5.3.1.    *Who May Vote to Accept or Reject the Plan.* A Holder of a Claim or Equity Interest has a right to vote for or against the Plan if that Holder's Claim or Equity Interest is both (1) Allowed or Allowed for voting purposes and (2) classified in an Impaired Class.

5.3.2.    *What is an Allowed Claim or Interest?* As noted above, only a Holder of an Allowed Claim or Equity Interest has the right to vote. Generally, any timely filed Proofs of Claim or interest will be deemed Allowed, unless a party-in-interest files an objection to the Claim or Equity Interest. When an objection to a Claim or Equity interest is filed, the Holder cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the Claim or Equity Interest for voting purposes.

THE BAR DATE FOR FILING ANY PROOFS OF CLAIM IN THIS CHAPTER 11 CASE ON ACCOUNT OF PRE-PETITION CLAIMS WAS JUNE 26, 2024, FOR NON-GOVERNMENTAL UNITS, AS ESTABLISHED BY THE COURT'S ORDER SETTING DEADLINE FOR FILING PROOFS OF CLAIM [ECF NO. 89] AND NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM IN A CHAPTER 11 CASE [ECF NO. 159]. The bar date for filing any Proofs of Claim in this Chapter 11 Case for governmental units was September 7, 2024.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

A Claim shall be deemed Allowed solely for purposes of voting on the Plan unless (a) such Claim is scheduled as disputed, contingent or unliquidated and no Proofs of Claim has been timely filed or (b) there is an objection with respect to such claim submitted on or before the date that the Solicitation Order is entered.

5.3.3. *What is an Impaired Claim or Interest?* As noted above, a Holder of an Allowed Claim or Equity Interest has the right to vote only if it is in a Class that is <u>Impaired</u> under the Plan. A Class is Impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class. For example, a Class comprised of Holders of General Unsecured Claims is Impaired if the Plan fails to pay the members of that class 100% of what they are owed. Currently, Debtor believes that Classes 2 through 4 and Classes 6 and 7 are Impaired and entitled to vote on the Plan; Class 8 is Impaired and deemed to reject the Plan; and Classes 1 and 5 are Unimpaired and deemed to accept the Plan. However, Debtor reserves the right to change the treatment of such party to the extent it determines that the Sale Proceeds will be sufficient to render a Class Unimpaired. Parties who dispute Debtor's characterization of their Claim or Equity Interest as Impaired or Unimpaired may file an objection to the Plan contending that Debtor has incorrectly characterized the Class.

5.3.4. *Who is Not Entitled to Vote.* The following four types of Claims are <u>not</u> entitled to vote: (1) Claims that have been disallowed; (2) Claims in Unimpaired classes; (3) Claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8); and (4) Claims in Classes that do not receive or retain any value under the Plan. Claims in Unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such Claims are not placed in Classes, and they are required to receive certain treatment specified by the Bankruptcy Code. Claims in Classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

51

### 5.4.    Requirements for Confirmation.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of Section 1129. Among other requirements, the Plan (a) must be accepted by all Impaired Classes of Claims or Equity Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to, such Class; and (b) must be feasible. The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Equity Interests in a permissible manner; (ii) the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and (iii) the Plan is proposed in good faith.

### 5.5.    Voting Requirements and Procedures.

5.5.1.    *Votes Necessary to Confirm the Plan*. If Impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one Impaired Class has accepted the Plan without counting the votes of any insiders within that Class, and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes, as discussed below.

5.5.2.    *Votes Necessary for a Class to Accept the Plan.* A Class of Claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims which actually voted on the Plan, voted in favor of the Plan. A Class of Equity Interests is considered to have "accepted" a Plan when at least two-thirds (2/3) in amount of the Holders of such Equity Interest which actually voted on the Plan, voted to accept the Plan.

5.5.3.    *Treatment of Non-Accepting Classes.* As noted above, even if all Impaired Classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner required by the Bankruptcy Code. The process by which non-accepting Classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting Classes of Claims or Equity Interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

law. Debtor will ask the Court to confirm the Plan by cramdown on any and all Impaired Classes that do not vote to accept the Plan.

5.5.4. *Voting Procedures.* Ballots accepting or rejecting the Plan must be received by Debtor's Notice and Claims Agent on or before the Voting Deadline by mail at Oceanwide Plaza LLC Ballot Processing c/o Stretto 410 Exchange, Suite 100, Irvine CA 92602 or electronically under the "File a Ballot" tab at https://cases.stretto.com/OceanwidePlaza/. Notwithstanding any other provision of this Plan or the Solicitation Order, with the prior written consent of Debtor, a Holder of a Claim entitled to vote on the Plan may change its vote to accept or reject the Plan at any time up to and including the date of the Confirmation Hearing, by submitting a superseding Ballot or by such other means as may be approved by Debtor, with the consent of the Consultation Parties. Any such changed vote shall supersede any prior Ballot submitted by such Holder with respect to the same Claim.

**IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. BALLOTS MAY BE SENT TO DEBTOR'S NOTICE AND CLAIMS AGENT BY MAIL AT:**

**OCEANWIDE PLAZA LLC BALLOT PROCESSING
C/O STRETTO
410 EXCHANGE, SUITE 100,
IRVINE CA 92602**

**OR ELECTRONICALLY UNDER THE "FILE A BALLOT" TAB AT HTTPS://CASES.STRETTO.COM/OCEANWIDEPLAZA/.**

**THE NOTICE AND CLAIMS AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE. IF YOU BELIEVE YOU REQUIRE LEGAL ADVICE, YOU SHOULD CONSULT WITH YOUR ATTORNEY.**

**5.6. Liquidation Analysis.**

Another Confirmation requirement is the "Best Interest Test" under Section 1129(a)(7), which requires a liquidation analysis. Under the Best Interest Test, if a Holder of a Claim or Equity

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Interest is in an Impaired Class and that Holder does not vote to accept the Plan, then that Holder must receive or retain property of a value not less than the amount that such Holder would receive or retain if Debtor was liquidated under chapter 7 of the Bankruptcy Code under the Plan. Debtor's Liquidation Analysis is attached as **Exhibit 3**.

Based on Debtor's analysis, the estimated recoveries under the Plan compared to a hypothetical Chapter 7 liquidation are as follows: In a Chapter 7 liquidation, Debtor estimates that (i) the Assets would be sold at a price of approximately $119,000,000 to $305,000,000 (or less), among other reasons, due to the lack of DIP financing to maintain the Assets, and the absence of a structured marketing process; (ii) Chapter 7 trustee fees under 28 U.S.C. § 326 would consume approximately 3% of all distributions; (iii) additional professional fees for newly-retained professionals unfamiliar with the case would total approximately $1,000,000 to $3,000,000; and (iv) Stamp or Similar Taxes that would not be exempt under Section 1146(a) would total approximately $7,600,000 to $17,000,000. As a result, after payment in full of Secured Tax Claims, the DIP Facility Claims, and the remainder of the LADI Secured Claim, there will be (a) insufficient funds to pay in full the LADI Secured Claims, (b) all LL Secured Claims and all Junior Secured Claims will be Deficiency Claims, and (c) no funds would remain for distribution to Holders of chapter 11 Administrative Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims, and Intercompany Loan Claims.

Under the Plan, the Cash Consideration of up to $70,000,000 will be applied to satisfy Secured Tax Claims, DIP Facility Claims, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Other Priority Claims and GAP Claims. Accordingly, even if Allowed General Unsecured Claims (including any Junior Secured Claim that is a Deficiency Claim) receive no distribution under the Plan; such Holders are no worse off than they would be in a Chapter 7 liquidation, where no funds would be available for distribution to General Unsecured Claims after satisfaction of senior Claims and administrative expenses. For the avoidance of doubt, the General Unsecured Claims pool may increase by the amount of any Deficiency Claim, including from the LADI Secured Claim and the LL Secured Claims to the extent any such Claims are not satisfied in full from the Sale Proceeds. Additionally, to the extent it is fully secured, the LADI Secured Claim

54

shall continue to accrue interest at the Court-ordered rate of $60,000 per diem, together with reasonable attorneys' fees, costs, and expenses, thereby requiring a Chapter 7 trustee to obtain correspondingly higher Sale Proceeds before any distribution could be made to other junior creditors, and to the extent the LADI Secured Claim is not satisfied in full from such Sale Proceeds, such continued accrual shall further increase any resulting Deficiency Claim. Moreover, conversion to Chapter 7 would impose significant additional costs and delays on the Estate, including the potential loss of the current Purchaser, the need to recommence the marketing and sale process, and the risk that no buyer would be identified. Such delays would result in further deterioration of the Real Property and diminished recoveries for all stakeholders, including the City of Los Angeles, Holders of the LADI and LL Secured Claims, which total over $400 million, and taxing authorities. Accordingly, Debtor submits that all Holders of Allowed Claims will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation, and the Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sale proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, equity interest holders receive the balance that remains after all creditors are paid, if any. Debtor maintains that the transactions contemplated by the Plan satisfy the requirements of Section 1129(a)(7).

First, the biggest and most insurmountable issue in a Chapter 7 liquidation is that Debtor is only able to operate a sale process for the Assets because of the post-petition financing provided by DIP Lender. Absent this Chapter 11 Case, Debtor anticipates that its principal asset, the Real Property, would either be sold by a Chapter 7 Trustee, abandoned by the Chapter 7 Trustee as the Estate would have no equity in such property, or one of its secured creditors would obtain relief from the automatic stay and would proceed with a foreclosure sale. In either of these events, the recovery will likely be less than the process proposed by Debtor in this Plan. Second, in either a

sale by a Chapter 7 Trustee, abandonment of the Real Property, or foreclosure sale, any sale to the ultimate purchaser would not be exempt from all Stamp or Similar Taxes. Third, in the event of a conversion of Debtor's case to Chapter 7, a Chapter 7 trustee would be appointed and would be completely unfamiliar with the Real Property and the complexities of this Chapter 11 Case. The Chapter 7 Trustee would likely hire all new professionals equally unfamiliar with the Real Property and other Assets. The result of all of that would be the incurrence of an extraordinary amount of additional professional fees incurred by professionals who would need to familiarize themselves with this matter, all of which is avoided by the current professionals, who are skilled, experienced and already intimately familiar with this Chapter 11 Case, continuing with their current roles. Fourth, the marketing of the Assets in the context of a sale by a Chapter 7 Trustee or at a foreclosure sale would be significantly less robust than the marketing plan already completed by Debtor.

Finally, in the event that the Real Property was sold by the Chapter 7 Trustee, pursuant to Section 326, a chapter 7 trustee would be entitled to a significant administrative expense for distributing the funds in these estates. After these costs and expenses, Debtor does not believe that any funds would be available to distribute to Holders of Allowed General Unsecured Claims following a liquidation of the Real Property and other Assets. The Plan provides all creditors, including Holders of General Unsecured Claims, with a better opportunity for recovery than they would have if this Chapter 11 Case was converted to Chapter 7. Moreover, even if Holders of General Unsecured Claims do not receive a distribution under the Plan, the Plan provides for a more expeditious sale of the Real Property than would occur in a Chapter 7 liquidation, thereby providing subcontractors, who comprise a substantial portion of the General Unsecured Claims pool, with an opportunity to resume work on the Real Property under a new owner with sufficient capital and in coordination with the City of Los Angeles. Debtor, therefore, has satisfied the "best interest of creditors test" with respect to any Impaired Class that votes to reject the Plan.

## 5.7.  Feasibility.

Another requirement for Confirmation involves the feasibility of the Plan, which means that Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

financial reorganization, of Debtor under Section 1129(a)(11). There are at least two important aspects of a feasibility analysis. The first aspect considers whether Debtor will have enough Cash on hand on the Effective Date to pay all the Claims and expenses which are entitled to be paid on the Effective Date or shortly thereafter. Based on the anticipated Sale Proceeds from the PSA and Debtor's projections of the costs associated with completing the Sale, Debtor anticipates having sufficient funds to pay such Claims as of the Effective Date from the Sale Proceeds.

The second aspect considers whether Debtor will have enough Cash over the life of the Plan to make the required Plan payments. Debtor anticipates having sufficient funds to make required payments under the Plan through the Plan Administration Assets and the Post Confirmation Reserve. Debtor, therefore, has satisfied this second aspect of Plan feasibility.

## ARTICLE 6

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1. Sources of Consideration for Plan Distributions.

The sources of the payments to be made by the Liquidating Trustee under the Plan will be from (i) the Sale Proceeds; (ii) Plan Administration Assets; and (iii) Cash on hand, collectively, less the Post Confirmation Reserve. Debtor asserts that it will be able to pay its Administrative Claims, Priority Tax Claims, Professional Fee Claims, Statutory Fees, GAP Claims, Class 1 Secured Tax Claims and Class 5 Other Priority Claims from the Sale Proceeds received if the Sale contemplated by the PSA is consummated, and compromise in full Classes 2 and 3 as a consequence of such Sale. The waterfall distribution to each Class will change depending on the final amount of Sale Proceeds received.

6.1.1.  After Confirmation, Debtor shall consummate the Sale on the Closing Date, and any other transactions contemplated by the PSA. Upon consummation of the Sale, the PSA Property shall be transferred to and vest in Purchaser, free and clear of all Liens, claims, encumbrances, lawsuits, and interests to the fullest extent permitted by the Bankruptcy Code, pursuant to the terms of the PSA, the Plan, and Confirmation Order. Upon entry of the Confirmation Order by the Bankruptcy Court, the Sale and PSA will be deemed approved, all matters provided for under the PSA and any related documentation will be deemed authorized and approved without any

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  requirement of further act or action, and Debtor will be authorized to execute, deliver, and

2  consummate the transactions contemplated by the PSA and any related documentation, as well as

3  to execute, deliver, file, record, and issue any notes, documents (including UCC financing

4  statements), or agreements in connection therewith, without further notice to or order of the

5  Bankruptcy Court, act or action under applicable Law, regulation, order, or rule or the vote, consent,

6  authorization or approval of any Entity. The Sale Proceeds resulting from the Sale will then be used

7  to pay Holders of Allowed Claims and Equity Interests in the priority outlined in Articles 3 and 4

8  above and pursuant to the distribution waterfall established by the Global Settlement Agreement.

9  6.1.2.  *Liquidation of Plan Administration Assets.*[7] On the Effective Date, and subject to the

10  terms of the Liquidating Trust Agreement, the Liquidating Trustee shall accept authority over the

11  Plan Administration Assets as a plan administration officer, as set forth more fully herein.

12  6.1.2.1.  <u>Transfer to the Liquidating Trust</u>. All Assets vested as Plan Administration

13  Assets and all unencumbered Assets dealt with in the Plan shall be free and clear of all Liens,

14  Claims, and interests except as otherwise specifically provided in the Plan or in the Confirmation

15  Order, with any such Liens attaching to the proceeds generated by the sale or other disposition of

16  such Plan Administration Assets *provided however*, that the Liquidating Trustee may abandon or

17  otherwise not accept any Assets that the Liquidating Trustee believes, in good faith, have no value

18  to the administration of the Plan or the Wind Down.

19  6.1.2.2.  <u>Powers of the Liquidating Trustee</u>. Among other powers, the Liquidating Trustee

20  shall have the power to liquidate the Plan Administration Assets and use such funds to pay the

21  Holders of Allowed Claims and Equity Interests as outlined in Articles 3 and 4 above. The

22  Liquidating Trust will remain in place to, among other things, allow for the resolution of any

23  priority disputes between secured creditors and to pay the Priority Tax Claims over time pursuant

24  to 11 U.S.C. § 1129(a)(9)(C)(ii). The powers, rights, and responsibilities of the Liquidating Trustee

25  shall also include the authority and responsibility to:

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[7]  A copy of the proposed Liquidating Trust Agreement will be provided with the Plan Supplement.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

6.1.2.2.1.    receive, manage, invest, supervise, and protect the Plan Administration Assets;

6.1.2.2.2.    pay taxes or other obligations incurred by the Estate after the Effective Date;

6.1.2.2.3.    retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Plan Administration Assets;

6.1.2.2.4.    Serve as Distribution Agent, or designate a Distribution Agent to calculate and implement distributions of Sale Proceeds and Plan Administration Assets;

6.1.2.2.5.    assert, settle, and abandon retained Causes of Action;

6.1.2.2.6.    resolve issues involving Claims and Equity Interests;

6.1.2.2.7.    liquidate the Plan Administration Assets in a commercially reasonable manner; and

6.1.2.2.8.    perform such other duties and functions that are consistent with the implementation of the Plan and undertake all administrative functions of the Chapter 11 Case, including the ultimate closing of the Chapter 11 Case.

6.1.2.3.    <u>Causes of Action.</u> From and after the Effective Date, assertion, settlement, or abandonment of all retained Causes of Action, including Avoidance Actions, shall be the sole responsibility of the Liquidating Trustee pursuant to the Plan and the Confirmation Order. From and after the Effective Date, the Liquidating Trustee shall have exclusive rights, powers, and interests of the Estate to assert, settle, or abandon such retained Causes of Action as the sole representative of the Estate pursuant to Section 1123(b)(3). All such retained Causes of Action are reserved and preserved. All Causes of Action between Debtor and any other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the Effective Date. At such time, the Liquidating Trust will be entitled to all claims, defenses, and other rights and privileges accorded to Debtor in such proceedings following their transfer. All adversary proceedings and contested matters pending as of the Effective Date will continue without change to their status or parties, except that to the extent Debtor is a party thereto, the Liquidating Trustee will be substituted for Debtor, without the need for any further order or action by Debtor or the Liquidating Trustee.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

1
2
3

Any recovery on retained Causes of Action will become Plan Administration Assets and will be distributed to Holders of Claims and Equity Interests on a Subsequent Distribution Date as set forth in Articles 3 and 4 above.

4
5
6
7
8
9
10
11
12

6.1.2.4.    <u>Liquidating Trustee as Successor to Debtor.</u> The Liquidating Trustee is the successor to Debtor, the Estate, and Debtor's rights to books and records and to all of Debtor's rights and privileges, including attorney client privilege. The Liquidating Trustee shall be authorized pursuant to Section 554, in its sole discretion without any further notice to any party or action, order or approval of the Bankruptcy Court, to abandon, dispose of, or destroy in any commercially reasonable manner all originals or copies of any documents, books and records, including any electronic records, of Debtor which the Liquidating Trustee reasonably concludes are burdensome or of inconsequential value and benefit five (5) years following the Effective Date, so long as such documents are no longer subject to any pending litigation hold.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

6.1.2.5.    <u>Wind Down.</u> On the Effective Date, the Liquidating Trustee shall also have the power, right, and responsibility to conduct the Wind Down and to take possession of all books, records, and files of Debtor and the Estate and provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines that retention of same is no longer necessary or required. The Liquidating Trustee is authorized and empowered to effect the dissolution of Debtor as soon as practicable after the Effective Date, but after the Plan Administration Assets are liquidated, without the need for any company action or approval. Neither Debtor nor the Liquidating Trustee shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date, the Liquidating Trustee shall Wind Down the affairs of Debtor and file final tax returns for Debtor. The Liquidating Trustee shall be authorized to file on behalf of Debtor and any non-Debtor affiliates, certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of Debtor.

27
28

6.1.2.6.    <u>Payment of the Liquidating Trustee and Indemnity.</u> All reasonable expenses incurred by the Liquidating Trustee, if any, shall be the responsibility of the Estate and paid from

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

Plan Administration Assets or the Post Confirmation Reserve. Debtor shall indemnify and hold harmless the Liquidating Trustee solely in its capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Liquidating Trustee's gross negligence, willful misconduct, or criminal conduct.

**6.2.    Exemptions from Certain Stamp or Similar Taxes.**

To the fullest extent permitted by section 1146(a), section 11923 of the California Revenue and Tax Code and section 21.9.6 of the Los Angeles Municipal Code, the Sale, and any other transfer from Debtor to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in Debtor; (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any Stamp or Similar Taxes or governmental assessment, and the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

The Confirmation Order shall provide that the Sale of the PSA Property to Purchaser pursuant to the PSA is exempt from all Stamp or Similar Taxes pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code, and Section 21.9.6 of the Los Angeles Municipal Code, and that no transfer taxes of any kind (including, without limitation, the Los Angeles Mansion Tax, Measure ULA) are due upon the closing of the Sale.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

1    For the avoidance of doubt, this provision shall include, but not be limited to, documentary

2    transfer tax pursuant to Cal. Rev. & Tax. Code §11911 (West); Base City Tax pursuant to Los

3    Angeles Municipal Code ("LAMC") § 21.9.2(a); or ULA Tax (e.g. Mansion Tax) under LAMC

4    § 21.9.2(b). *See also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S.

5    Ct. 2326, 2336, 171 L. Ed. 2d 203 (2008) ("the decision whether to transfer a given asset "under a

6    plan confirmed" must be made prior to submitting the Chapter 11 plan to the bankruptcy court, but

7    the transfer itself cannot be "under a plan confirmed" until the court confirms the plan in question.

8    Only at that point does the transfer become eligible for the stamp-tax exemption"); *In re New 118th,*

9    *Inc.*, 398 B.R. 791, 797 (Bankr. S.D.N.Y. 2009) (Stamp tax exemption applies to post-confirmation

10    transfer of property of Chapter 11 estate that follows a pre-confirmation sale if it is necessary to

11    consummation of plan.)

12    **6.3.    Corporate Action and Composition of Debtor Post Effective Date.**

13    Notwithstanding any other provision of this Plan or the Confirmation Order, nothing herein

14    shall be deemed to amend, modify, or supersede the terms of the Global Settlement Agreement, and

15    in the event of any conflict between the terms of this Plan and the Global Settlement Agreement,

16    the terms of the Global Settlement Agreement shall control. The Global Settlement Agreement, as

17    approved by the 9019 Order, shall remain in full force and effect regardless of whether the Effective

18    Date occurs.

19    6.3.1.    *Corporate Action.*

20    6.3.1.1.    Court Approval. On the Effective Date, all actions contemplated by the Plan, any

21    Plan Supplement, and the PSA shall be deemed authorized and approved in all respects, and all

22    such actions taken or caused to be taken shall be deemed to have been authorized and approved

23    by the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure

24    of Debtor and any corporate action required by Debtor in connection with the Plan shall be

25    deemed to have timely occurred and shall be in effect and shall be authorized and approved in

26    all respects, without any requirement of further action by the security holders, directors, or

27    officers of Debtor or otherwise.

28

6.3.1.2.    <u>Corporate Authorization.</u> On or before the Effective Date, as applicable, the appropriate officers of Debtor, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated by the Plan and the PSA (or necessary or desirable to effect the transactions contemplated by the foregoing) in the name of and on behalf of Debtor, and any and all agreements, documents, and instruments relating to the foregoing. The authorizations herein shall be effective notwithstanding any requirements under non-bankruptcy law. Prior to, on, and after the Effective Date, Debtor and the directors, managers, officers, authorized persons, and members of the boards of directors or managers and directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and provisions of the Plan without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan. The Confirmation Order shall, and shall be deemed to, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

6.3.1.3.    <u>Authorization of Liquidating Trustee.</u> After the Effective Date, to the extent necessary and pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have all authority to address any and all matters that would have required the approval of, and to act on behalf of, the stockholders, directors, members, or managers of Debtor, including the Wind Down and dissolution of Debtor.

6.3.2.    *Composition of Debtor Post-Effective Date and Dismissal.*

Following the Effective Date of the Plan, Debtor will dissolve. After Debtor is dissolved and following the full administration of the Chapter 11 Case, the Liquidating Trustee shall promptly file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close this Chapter 11 Case.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

# ARTICLE 7

## TREATMENT OF EXECUTORY CONTRACTS

**7.1.** **All Executory Contracts of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule, as it may be amended through the Confirmation Order or pursuant to Article 7.1.5. below; (ii) those that have been previously assumed pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; (iv) those that are to be assumed pursuant to the terms of the Plan; or (v) the Architect Agreement, which shall be governed by the special provisions set forth in Article 7.5. below.**

7.1.1.  *Executory Contracts Not Otherwise Assumed or Rejected.* All Executory Contracts of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections 365 and 1123, other than (i) those that are identified on the Assumption Schedule, as it may be amended through the Confirmation Order or pursuant to Article 7.1.5. below; (ii) those that have been previously assumed pursuant to a Final Order prior to the Effective Date; (iii) those that are the subject of a motion seeking assumption or rejection as of the Effective Date; or (iv) those that are to be assumed pursuant to the terms of the Plan. Each Executory Contract assumed pursuant to this Article 7 but not assigned to a third party shall be deemed to be accepted by Debtor, and be fully enforceable by, Debtor in accordance with the terms thereof, except as otherwise modified by the provisions of this Plan, or by any order of the Bankruptcy Court.

7.1.2.  *Confirmation Order and Executory Contracts.* The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts (other than the Architect Agreement, which is governed by Article 7.5.), as described in this Plan, any Plan Supplement, and the Assumption Schedule pursuant to Sections 365(a) and 1123(b)(2); (ii) providing that each assumption, assignment, or rejection, as the case may be, is in the best interest of Debtor, the Estate, and all parties-in-interest in the Chapter 11 Case; and (iii) providing that the requirements for assumption

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

or assumption and assignment of any Executory Contract to be assumed have been satisfied. Unless otherwise indicated, all assumptions or rejections of Executory Contracts pursuant to the Plan are effective as of the Effective Date.

7.1.3.    *Claims for Rejection.* Counterparties to Executory Contracts that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts subject to compliance with the requirements herein. **For the avoidance of doubt, the provisions of this Article 7.1.3. do not apply to the Architect Agreement, which is governed by the special provisions set forth in Article 7.5. below. THE BAR DATE FOR FILING ANY PROOFS OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THE FIRST BUSINESS DAY THIRTY (30) DAYS AFTER THE ENTRY OF THE CONFIRMATION ORDER. ALL PROOFS OF CLAIM ARISING FROM REJECTED EXECUTORY CONTRACTS MUST BE FILED WITH THE CLERK OF THE BANKRUPTCY COURT AND SERVED ON DEBTOR OR THE LIQUIDATING TRUSTEE, AS APPLICABLE, AND THEIR COUNSEL. ANY CLAIMS ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT NOT FILED WITHIN THE TIME REQUIRED BY THIS ARTICLE 7.1.3. WILL BE FOREVER BARRED FROM ASSERTING SUCH CLAIM AGAINST DEBTOR, THE ESTATE, OR LIQUIDATING TRUSTEE**. Any Claim arising from the rejection of Executory Contracts that becomes an Allowed Claim shall be classified as a General Unsecured Claim.

7.1.4.    *Effect of Assumption or Assumption and Assignment.* Except as otherwise provided herein or agreed to by Debtor and the applicable counterparty, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. To the maximum extent permitted by law, to the extent any provision in any Executory Contract assumed pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract (including any "change of control" provision), then

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or the validity, priority, or amount of any Claims that may arise in connection therewith. Notwithstanding the foregoing, the Architect Agreement shall be governed by the special provisions set forth in Article 7.5. below and shall not be subject to the provisions of this Article 7.1.4.

7.1.5.   Debtor shall create the Assumption Schedule in consultation with Purchaser, and Purchaser shall approve any assumptions, rejections, or modifications of material Executory Contracts as set forth therein, and such approval may not be unreasonably withheld, conditioned, or delayed. The Architect Agreement shall not be included on the Assumption Schedule and shall instead be governed by the special provisions set forth in Article 7.5. below. Notwithstanding anything to the contrary herein, Debtor reserves the right to alter, amend, modify, or supplement the Assumption Schedule at any time before the Effective Date, in consultation with Purchaser.

**7.2.    Cure of Defaults for Assumed Executory Contracts (Other Than Architect Agreement).**

7.2.1.   *Cure Costs.* Any monetary defaults under each Executory Contract to be assumed or assumed and assigned pursuant to the Plan, if any, shall be satisfied, pursuant to Section 365(b)(1), by payment of the Cure Cost in Cash on the later of (i) the Initial Distribution Date; (ii) after a timely objection, the date Debtor or the Liquidating Trustee, as applicable, and the applicable counterparty agree on the Cure Cost for the assumed Executory Contract, or (iii) following a timely objection, within five (5) Business Days after an Order of the Court determining such Cure Cost becomes a Final Order, unless the applicable Executory Contract is otherwise rejected pursuant to the terms of this Article 7. The provisions of this Article 7.2.1. do not apply to the Architect Agreement, which is governed by the special provisions set forth in Article 7.5. below.

7.2.2.   **ANY COUNTERPARTY TO ANY OF THE EXECUTORY CONTRACTS (OTHER THAN THE ARCHITECT AGREEMENT, WHICH IS GOVERNED BY**

185578645.2

**ARTICLE 7.5. BELOW) DESIGNATED FOR ASSUMPTION OR ASSUMPTION AND ASSIGNMENT WHO DO NOT FILE AN OBJECTION ON THE LATER OF (i) THE PLAN OBJECTION DEADLINE OR (ii) THE FIRST BUSINESS DAY SEVEN (7) DAYS AFTER SUCH EXECUTORY CONTRACT IS DESIGNATED FOR ASSUMPTION OR ASSUMPTION AND ASSIGNMENT SHALL BE DEEMED TO HAVE CONSENTED TO SUCH ASSUMPTION OR ASSUMPTION AND ASSIGNMENT, INCLUDING TO THE CURE COST FOR EACH SUCH EXECUTORY CONTRACT PROVIDED ON THE ASSUMPTION SCHEDULE.**

7.2.3.   *Objections Regarding Assumption or Assumption and Assignment.* In the event of a timely objection to: (i) the amount of any Cure Cost, (ii) the ability of Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of Section 365(b), if applicable, under the Executory Contract to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assumption and assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assumption and assignment becoming effective, and the applicable Cure Costs associated therewith (if any) shall be paid after any order resolving the dispute and approving the assumption or assumption and assignment becomes a Final Order, and shall not prevent or delay implementation of the Plan or Effective Date; *provided, however*, that Debtor may settle any dispute regarding the amount of any Cure Cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court. The provisions of this Article 7.2.3. do not apply to the Architect Agreement, which is governed by the special provisions set forth in Article 7.5. below.

7.2.4.   *Full Satisfaction Upon Assumption.* Assumption or assumption and assignment of any Executory Contract pursuant to the Plan or otherwise, and the payment of the associated Cure Cost, if any, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or at any time prior to the effective date of such assumption or assumption and assignment. Any Proofs of Claim filed with respect to an Executory Contract or that has been assumed or

67

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

assumed and assigned, and the associated Cure Cost paid, shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court. **Any liabilities reflected in the Schedules and any Proofs of Claim filed with respect to an Executory Contract that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity**. The provisions of this Article 7.2.4. do not apply to the Architect Agreement, which is governed by the special provisions set forth in Article 7.5. below.

**7.3.    Insurance Policies.**

Notwithstanding anything to the contrary in this Plan, objection to any Claim, or any other document related to any of the foregoing, all insurance policies pursuant to which Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by Debtor or the Liquidating Trustee, as applicable, and shall continue in full force and effect thereafter in accordance with their respective terms. All other insurance policies not expressly assumed or assumed and assigned shall be deemed rejected.

**7.4.    Reservation of Rights.**

Nothing contained in this Plan shall constitute an admission by Debtor that any contract is in fact an Executory Contract or that Debtor has any liability thereunder. Debtor may reject any Executory Contract (other than the Architect Agreement, which is governed by Article 7.5. below) on or before the first Business Day thirty (30) days after an order resolving any such objection submitted pursuant to Article 7.2.3. becomes a Final Order.

**7.5.    The Architect Agreement.**

The Architect Agreement is not subject to the general assumption and rejection provisions set forth in Articles 7.1. through 7.4. above and shall instead be governed by the special provisions of this Article 7.5.

Architect alleges it owns the copyright in the Architect's Instruments of Service (including architectural plans, specifications, designs, associated renderings, and any electronic format thereof including BIM and AutoCAD) (the "Instruments of Service"), and that the Instruments of Service may not be used in connection with the bidding or sale process without Architect's written consent.

68

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Debtor has elected to assume (or assume and assign) its contract with the Architect (the "<u>Architect Agreement</u>") and will cure any defaults at the closing of the Sale by paying the Architect Claim Amount from Sale Proceeds (the "<u>Architect Cure Amount</u>") on the Initial Distribution Date.

Upon such assumption of the Architect Agreement, including payment of the Architect Cure Amount: (a) Architect shall have no duty to continue to perform under the Architect Agreement (other than as set forth below), (b) Debtor (or an assignee) shall have no obligation to continue to perform under the Architect Agreement post-closing, and (c) Architect shall have no further pre-petition or post-petition rights, title or claims against Debtor or the Estate (other than its rights under the Plan, which are expressly preserved, and its rights under any new Architect Agreement, if applicable).

Architect has provided provisions for its consent for a license to use the Instruments of Service in connection with the Real Property as follows:

Upon the payment of the Architect Claim Amount to Architect, Architect grants a license to Debtor or a buyer of Debtor's Assets if the Architect Agreement is assumed and assigned to such buyer (a "<u>Recipient Party</u>"), which license shall (a) allow such Recipient Party to use Architect's Instruments of Service created before the Petition Date under the Architect Agreement and (b) be subject to a separate agreement between Architect and such Recipient Party.

Any post-petition license fee or agreement for post-petition services ("<u>New Architect Agreement</u>") must be separately negotiated between Architect and any Recipient Party.

**Upon payment of the Architect Cure Amount, (a) all cure obligations under Section 365(b) with respect to the Architect Agreement shall be deemed fully satisfied, without the need for any further order or action by the Bankruptcy Court, and (b) Architect shall have no further Claims, rights, or interests of any kind against Debtor or the Estate, whether monetary or otherwise, arising from or related to the Architect Agreement or the Instruments of Service.**

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

# ARTICLE 8

## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**8.1.    The Plan May Not Be Accepted.**

Debtor can make no assurances that the requisite acceptances of the Plan will be received by Classes entitled to vote.

**8.2.    The Plan May Not Be Confirmed.**

Even if Debtor receives the requisite acceptances from necessary Classes, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determines that the Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met. Moreover, there can be no assurance that modifications to the Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, the Plan will need to be revised, and it is unclear whether a chapter 11 reorganization or liquidation of Debtor's Assets could be implemented and what distribution Holders of Allowed Claims would receive. If an alternative could not be agreed to, it is possible that Debtor would have to liquidate its remaining Assets in Chapter 7, in which case it is likely that Holders of Allowed Claims would receive less favorable

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

treatment than they would receive under the Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to Debtor's creditors as those proposed in the Plan.

**8.3.    Failure to Consummate the Plan.**

In the event that the Sale to Purchaser pursuant to the PSA does not close for any reason other than a Seller Default as defined under the PSA, including but not limited to the failure of conditions precedent, the termination of the PSA by either party, or the exercise by Debtor of its fiduciary out rights, Debtor shall have, without limitation, the following options: (i) seek to consummate an Alternative Transaction, which sale shall be deemed approved under this Plan without the need for any amendment, modification, or supplement to this Plan; (ii) seek to modify this Plan pursuant to Section 1127 of the Bankruptcy Code to provide for a sale to another party or liquidation mechanism; or (iii) seek conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code. Debtor shall promptly notify all parties in interest and the Bankruptcy Court in the event that the Sale to Purchaser does not close or of the termination of the PSA pursuant to its terms and shall file a status report within fourteen (14) days of such event describing Debtor's intended course of action.

The Plan provides for certain conditions that must be satisfied (or waived) prior to the Effective Date, including the closing of the Sale of the PSA Property. Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Effective Date will occur.

As with any sale of property, there is a risk that the Sale will not close, or that the ultimate Sale Proceeds realized will be lower than Debtor anticipates or projects. In the event that the Sale does not close, the Effective Date of the Plan will not occur.

**8.4.    Certain Tax Considerations.**

HOLDERS OF CLAIMS AND EQUITY INTERESTS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present. Debtor CANNOT and DOES NOT represent that the tax consequences contained

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action. Also, Debtor has not retained any special tax counsel or tax accountant to analyze any tax consequences resulting from the Confirmation of the Plan.

Although Debtor has attempted to structure the Sale in a manner which is exempt from Stamp or Similar Taxes, Debtor anticipates that the closing of the Sale might result in tax liability. Debtor has not performed any detailed analysis of the extent to which, if any, the Confirmation of the Plan may have on any tax liability of the Estate. Debtor makes no representations regarding the potential tax consequences to Holders of Claims or Equity Interests from the Confirmation of or implementation of the Plan. Debtor has no way of knowing the tax basis of the various investments made by Holders of Claims or Equity Interests. Without that information, it is impossible for Debtor to know or estimate the amount of income tax that could become due on a sale. Similarly, various Holders of Claims or Equity Interests may be liable for taxes in foreign jurisdictions, China as just one example. To the extent that Holders of Claims or Equity Interests are paid less than the amount of their current tax basis in their Claim, an incremental tax loss may be recognized upon sale of the Real Property. Holders of Claims and Equity Interests are encouraged to consult with their own tax advisors regarding the potential tax effect that could result from the Confirmation of the Plan and the sale of the PSA Property.

**ARTICLE 9**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND EQUITY INTERESTS**

**9.1.    Allowance of Claims and Equity Interests.**

Except as provided in the Global Settlement Agreement, 9019 Order and Article 12 of this Plan, the Liquidating Trustee shall have and retain any and all rights and defenses Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date, except with respect

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

to any Claim Allowed under the Plan.[8] Except as expressly provided in this Plan or in any Final Order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim. All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties, including without limitation the Claims allowed through the 9019 Order.

**9.2.    Claims Administration Responsibility.**

All matters relating to the administration of Claims between Debtor and any other party pending prior to the Effective Date will be transferred to the Liquidating Trust as of the Effective Date. At such time, the Liquidating Trust will be entitled to all defenses and other rights and privileges accorded to Debtor in such proceedings following their transfer. All adversary proceedings and contested matters pending as of the Effective Date will continue without change to their status or parties, except that to the extent Debtor is a party thereto, the Liquidating Trustee will be substituted for Debtor, without the need for any further order or action by Debtor or the Liquidating Trustee. Notwithstanding this Article 9.2., other parties-in-interest may object to Claims in accordance with the terms of the Liquidating Trust Agreement.

**9.3.    Estimation of Claims and Equity Interests.**

Before or after the Effective Date, Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c), or determine the amounts of Junior Secured Claims and priority Claims pursuant to Bankruptcy Rule 3012, for any reason, The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Equity Interest, including during the litigation of any objection to any Claim or during an appeal relating to such objection. Notwithstanding any provision otherwise in this Plan, a Claim that has been expunged

---

[8]  For the avoidance of doubt, Debtor's reservation of rights and defenses applies to Claims that are deemed "Allowed" for purposes of voting on the Plan but may otherwise still be objected to pursuant to the terms of this Plan.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a limitation on the maximum amount of such Claim for all purposes under the Plan, and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any distribution on such Claim after the Effective Date. Notwithstanding Section 502(j), in no event shall any Holder of a Claim that has been estimated be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before the first Business Day twenty-one (21) days after the date on which such Claim is estimated. Each of the foregoing procedures are cumulative and not exclusive of one another. Claims may be estimated and compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**9.4.    Adjustment to Claims and Equity Interests.**

Any Claim or Equity Interest that has been paid or satisfied, or any Claim or Equity Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Liquidating Trustee without filing an objection to such Claim or Equity Interest or further notice to or action, order, or approval of the Bankruptcy Court.

**9.5.    Disallowance of Certain Claims.**

Any Claims held by Entities from which property is recoverable under Section 542, 543, 550, or 553 or by a transferee of a transfer avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be deemed disallowed pursuant to Section 502(d), and Holders of such Claims may not receive any distributions on account of such Claims and Equity Interests until such time as such Causes of Action against that Entity have been settled or a Final Order of the Bankruptcy Court with respect thereto has been entered and all sums due have been turned over or paid to the Liquidating Trustee. Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice, action, order, or approval of the Bankruptcy Court and the Holders of such Claims shall not receive any distributions on account of such Claims.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**9.6.    Amendments to Claims.**

On or after the Effective Date, except as provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Liquidating Trustee, and, to the extent such prior authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

**ARTICLE 10**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**10.1.    Distribution on Allowed Claims and Equity Interests as of the Effective Date.**

Except as otherwise provided in this Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims and Equity Interests Allowed on or before the Effective Date shall be made pursuant to the treatment of the Holder of such Claims or Equity Interests set forth above on or before the Initial Distribution Date, unless otherwise agreed by the Holder of such Claims or Equity Interests.

**10.2.    Distribution on Disputed Claims and Equity Interests Allowed After the Effective Date.**

10.2.1. *Procedure for Payment on Disputed Claims Allowed After the Effective Date.*

10.2.1.1.    <u>Transfer of Sale Proceeds to the Disputed Creditor Reserve.</u> If a Claim is Disputed by Debtor or Liquidating Trustee, as to amount or priority, as of the Effective Date, then the portion of the Sale Proceeds or Plan Administration Assets, if any, that would be used to pay such Claims either in its full, or its Pro-Rata Share as applicable, will be deposited in the Disputed Creditor Reserve with any Liens, claims, encumbrances, and/or interests of the Holder of such Claims to any such Assets disposed of attaching to the Sale Proceeds in the same order and priority as they previously attached. For the avoidance of doubt, the Claims Allowed through the 9019 Order may not be disputed by the Liquidating Trustee or any other party, including as they may be adjusted through paragraph 2(f) of the 9019 Order.

10.2.1.2.    <u>Disputed Creditor Reserve Treatment.</u> Except as otherwise provided in this Plan, a Final Order, or as agreed to by the Liquidating Trustee and the Holder of a Disputed Claim, distributions, if any, under this Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made by the Liquidating Trustee on account of such Allowed Claim from

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

the Disputed Creditor Reserve on the later of (i) five (5) Business Days after such Disputed Claim becomes Allowed; (ii) the day that distributions become available to members of that Class, with all appropriate reserves for remaining Disputed Claims being in place *provided, however*, that: (I) Disputed Administrative Claims with respect to liabilities incurred by Debtor in the ordinary course of business during the Chapter 11 Case or assumed by Debtor on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice; and (II) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with Article 3 of this Plan.

10.2.1.3.    <u>Resolution of Disputed Claims.</u> The Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, including but not limited to objections to Claims. After the Effective Date, the authority to object to any Claims and their priority of distribution, not subject to an objection as of the Effective Date, shall vest in the Liquidating Trustee. Any such post-Effective Date objections must be brought on or before the Claims Objection Bar Date. Debtor or Liquidating Trust intends to file objections with the Court to all Disputed Claims and to have the Court resolve all such disputes unless Debtor and the Holders of such Claims can reach consensual resolution.

10.2.1.4.    *Special Rules for Distributions to Holders of Disputed Claims.* Notwithstanding any provision otherwise in this Plan and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes related to such Disputed Claim has been resolved by settlement or agreement among the relevant parties or by Final Order.

**10.3.    Timing and Calculation of Amounts to be Distributed.**

Except as otherwise provided in this Plan or any order of the Bankruptcy Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in this Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding the foregoing, Holders of Secured Claims subject to the Disputed Creditor Reserve Treatment may recover post-Effective Date interest if otherwise Allowed pursuant to

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

Section 506(b), if applicable. Otherwise, following the Initial Distribution Date, the Liquidating Trustee will determine the amount and frequency of Subsequent Distribution Dates in accordance with the Liquidating Trust Agreement.

**10.4.    Delivery of Distributions.**

10.4.1. *Distribution Record Date.* As of the Distribution Record Date, the Claims Register shall be closed and Debtor or Distribution Agent, as applicable, shall be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on such date. Notwithstanding the foregoing, if a Claim is transferred twenty (20) or fewer calendar days before the Distribution Record Date, Distribution Agent shall make distributions to the transferee only to the extent practicable and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. Debtor, the Liquidating Trustee and the Distribution Agent shall have no obligation to recognize any transfer of any applicable Claims occurring after the close of business on the Distribution Record Date and shall be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date.

10.4.2. *Cash Distributions.* Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of Debtor or the Liquidating Trustee, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

10.4.3. *Delivery of Distributions.* Except as otherwise provided in the Plan, Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in Debtor's records as of the date of the Initial Distribution Date or any Subsequent Distribution Date, including the address set forth in any Proofs of Claim filed by that Holder; *provided, however*, that the manner of such distributions shall be determined at the discretion of Debtor or the Liquidating Trustee, and no Distribution Agent shall incur any liability whatsoever on account of any distributions under the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

**10.5.    Distribution Agent.**

The Liquidating Trustee shall serve as Distribution Agent (provided that the Liquidating Trustee may hire professional or consultants to assist with making disbursements or to act as Distribution Agent) and shall cause all distributions to be made to Holders of Claims after the Effective Date. Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

**10.6.    Minimum Distributions.**

Notwithstanding anything herein to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall not be required to make distributions or payments of less than $100 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar or share of applicable Equity Interests (up or down), with half dollars and half shares of applicable Equity Interests or less being rounded down.

**10.7.    Undeliverable Distributions.**

10.7.1. *Distributions Returned as Undeliverable.* If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to Debtor or the Liquidating Trustee (or its Distribution Agent) as undeliverable, no further distributions shall be made to such Holder. Undeliverable distributions shall remain in the possession of Debtor or the Liquidating Trustee, subject to Article 10.7.2-3. below, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends, or other accruals of any kind on account of their distribution being undeliverable.

10.7.2. *Failure to Claim Undeliverable Distributions.* Any distribution under the Plan that is an Unclaimed Distribution for a period of six (6) months after such distribution shall be deemed unclaimed property under Section 347(b), and such Unclaimed Distribution shall revert to and vest in Debtor or the Liquidating Trustee free of any restrictions thereon. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be cancelled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property Laws to the

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

contrary. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

10.7.3. *Failure to Present Checks.* Checks issued by Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days after the issuance of such check. Any Holder of an Allowed Claim holding an unnegotiated check that does not request reissuance of such unnegotiated check within ninety (90) calendar days after the date of mailing or other delivery of such check shall have its Claim for such unnegotiated check forever barred, estopped, and enjoined from asserting any such Claim against Debtor, the Liquidating Trustee, or the Assets. Within ninety (90) calendar days after the mailing or other delivery of any such distribution checks, and notwithstanding applicable escheatment Laws, all such distributions shall revert to Debtor or the Liquidating Trustee. Nothing contained herein shall require Debtor or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

**10.8.    Compliance with Tax Requirements and Allocations.**

In connection with this Plan, to the extent applicable, Debtor and the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, Debtor, the Liquidating Trustee, and Distribution Agent shall be authorized to take all actions reasonably necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. Debtor and the Liquidating Trustee reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**10.9.    Surrender of Cancelled Instruments or Securities.**

Except as otherwise provided in this Plan, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim shall be deemed

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

to have surrendered such certificate or instrument to the Liquidating Trustee. Except as otherwise expressly provided in the Plan, such surrendered certificate or instrument shall be cancelled solely with respect to Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, including with respect to any indenture or agreement that governs the rights of the Holder of a Claim or Equity Interests, which shall continue in effect. Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

**10.10. Claims Paid or Payable by Third Parties.**

10.10.1. *Claims Paid by Third Parties.* The Notice and Claims Agent or Liquidating Trustee, as applicable, shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not Debtor or the Liquidating Trustee without any further notice to, or action, order, or approval of the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not Debtor or the Liquidating Trustee on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

10.10.1.1.  *Claims Payable by Insurance.* No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any of Debtor's insurance policies, if any, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policies. To the extent that one or more of Debtor's insurers satisfies or agrees to satisfy in full or in part a Claim, if any, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to, or action, order, or approval of the Bankruptcy Court. Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

waiver of any Cause of Action that Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE 11

### SUBSTANTIAL CONSUMMATION OF THE PLAN

**11.1.    Conditions Precedent to Confirmation of the Plan.** The following are conditions precedent to entry of the Confirmation Order, which Confirmation Order shall constitute the Sale Order as defined in the PSA:

11.1.1. The Plan Supplement and all of the schedules, documents, and exhibits contained therein have been filed, and;

11.1.2. The PSA is in full force and effect and has not been terminated by Debtor or Purchaser in accordance with its terms.

**11.2.    Conditions Precedent to the Effective Date.** The Effective Date shall not occur unless and until the Closing Date has occurred pursuant to either the PSA or an Alternative Transaction, with all consideration due to Debtor having been delivered to Debtor and each of the following conditions have occurred or been waived in accordance with the terms herein within five (5) Business Days after the Closing Date:

11.2.1. all documents, certificates, and agreements necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable Laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

11.2.2. all objections to GAP Claims have been resolved through settlement, a Final Order of the Bankruptcy Court, or as otherwise agreed by the Holder of such GAP Claim, or adequate reserves for Disputed GAP Claims have been established by the Liquidating Trustee (or in the event

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

of a Purchaser Assumption Event for GAP Claims, the reserve to be established by the Purchaser), at the election of Purchaser;

11.2.3. the Plan shall not have been materially altered, amended or modified;

11.2.4. there shall be no ruling, judgment, or order issued, by any Governmental Unit or otherwise making illegal, enjoining, or otherwise preventing or prohibiting the consummation of the Sale; and

11.2.5. Debtor shall have executed and delivered (or caused to be executed and delivered) all documents required to be delivered by Debtor under Section 5.1.1 of the PSA at or prior to the Closing Date, and Purchaser shall have executed and delivered (or caused to be executed and delivered) all documents required to be delivered by Purchaser under Section 5.1.2 of the PSA at or prior to the Closing Date.

**11.3.    Waiver of Conditions.**

Subject to the consent of the Purchaser, Debtor may waive any of the conditions to the Effective Date set forth above at any time, without any notice to any parties-in-interest and without any further notice to, or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan.

**11.4.    Substantial Consummation.**

Substantial Consummation of the Plan under Section 1101(2) shall be deemed to occur on the Effective Date.

**11.5.    Effect of Non-Occurrence of the Effective Date.**

If the Effective Date does not occur, then upon notice by Debtor to the Bankruptcy Court: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts effected under the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in this Plan or the Confirmation Order shall: (i) constitute a waiver or release of any Claims, Equity Interests, (ii) prejudice in any manner the rights of Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtor or any other Entity.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

**11.6.    Reservation of Rights.**

The Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained in this Plan, or action taken by Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

**ARTICLE 12**

**EFFECT OF CONFIRMATION**

**12.1.    Binding Effect.**

Notwithstanding the Bankruptcy Rules, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon Debtor, the Liquidating Trustee, and any and all Holders of Claims and Equity Interests (irrespective of whether Holders of such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts. The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rule 3020(e) and 7062.

In addition, the Liquidating Trustee shall file post-Confirmation quarterly reports or any pre-Confirmation monthly operating reports not filed as of the Effective Date in conformity with the U.S. Trustee guidelines, until entry of an order converting, dismissing, or closing the Chapter 11 Case.

**12.2.    Compromise and Settlement of Claims and Controversies.**

Pursuant to Section 1123 and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest, and shall be deemed a motion to approve such good-faith

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

compromise. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, without any further notice to, or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidating Trustee may compromise and settle Claims against Debtor and its Estate and Causes of Action against other Entities.

**12.3.    Non-Discharge of Debtor.**

In accordance with Section 1141(d)(3), the Plan does not discharge Debtor. Section 1141(c) nevertheless provides, among other things, that the Assets dealt with by the Plan are free and clear of all Claims and Equity Interests against Debtor. As such, no Entity holding a Claim against Debtor may receive any payment from, or seek recourse against, any Assets that are sold or to be distributed under the Plan other than Assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any Assets to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or other interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

**12.4.    Injunctions.**

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively, or otherwise, of any Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged, or terminated pursuant to this Plan. Except as provided in this Plan or the Confirmation Order, all Entities that have held, currently hold, or may hold a Claim or other debt or liability or an interest or other right of a Holder of an Equity Interest are permanently enjoined from taking any of the following actions against Debtor, the Liquidating Trustee, or any of their property on account of such Claims, debts, or liabilities that are addressed, released, or terminated pursuant to this Plan, or such extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching,

collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan, including but not limited to taking such acts against Assets acquired by Purchaser or taking any of the foregoing acts against the Purchaser. Each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein. The Confirmation Order shall contain specific findings of fact and conclusions of law sufficient to support the injunctions set forth in this Article 12.4., as required under applicable law.

Notwithstanding any other provision of this Plan or the Confirmation Order, nothing herein shall be construed to (i) release, discharge, or enjoin any claim or cause of action by any Entity other than Debtor or the Liquidating Trustee against any other Entity other than Debtor, the Estate, or the Liquidating Trustee, except to the extent such claim or cause of action is derivative of a Claim against Debtor or the Estate, (ii) release any claim or cause of action arising under any insurance policy issued to or for the benefit of Debtor which exists as of the Confirmation Date, or (iii) enjoin any Entity from pursuing any such claims against any insurer or insurance policy. For the avoidance of doubt, the injunction provisions of this Article 12.4. are intended solely to protect Debtor, the Estate, the Liquidating Trustee, and the Purchaser from the assertion of Claims that are addressed by this Plan, and are not intended to affect the rights of non-Debtor parties as against other non-Debtor parties, except to the extent expressly provided herein.

**12.5.    Exculpation.**

Except as otherwise specifically provided for in this Plan, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is hereby exculpated from, solely in its capacity as an estate fiduciary or in connection with its role in the Chapter 11 Case, any cause of action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, Debtor's Chapter 11 Case, in whole or in part, the formulation, preparation, dissemination, and negotiation of this Plan and Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with this

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

Plan and Disclosure Statement, the filing of this Chapter 11 Case, the pursuit of Confirmation, the administration and implementation of this Plan, or distribution of payments made under this Plan or any related act; provided, however, that the foregoing exculpation shall not apply to (i) any act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) any obligation arising under the Plan or any document executed in connection therewith, or (iii) any conduct that occurred prior to the Petition Date. Nothing in this Article 12.5. shall be construed to exculpate any Entity from liability for conduct that is not related to the Chapter 11 Case or the Plan. The Exculpated Parties have, and upon the Consummation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of, and distribution of, consideration pursuant to this Plan and therefore, are not, and on account of such distributions shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. For the avoidance of doubt, the exculpation set forth in this Article 12.5. is limited to Exculpated Parties acting in their capacities as fiduciaries of the Estate or in connection with the administration of the Chapter 11 Case, and shall not extend to any Entity that does not qualify as an Exculpated Party as defined herein.

**12.6.    Setoffs and Recoupment.**

Except as otherwise provided herein or in the Global Settlement Agreement, the Liquidating Trustee, pursuant to the Bankruptcy Code, applicable bankruptcy or non-bankruptcy Law, or as may be agreed to by the Holder of an Allowed Claim, may set off or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the applicable Debtor or the Liquidating Trustee may hold against such Holder, to the extent such Claims, rights, or Causes of Action have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan, a Final Order, or otherwise); *provided, however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Liquidating Trustee with respect to such Claims, rights, and Causes of Action. In no

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

1  event shall any Holder of Claims be entitled to set off or recoup any Claim against any Claim, right,

2  or Cause of Action of Debtor or the Liquidating Trustee, as applicable, unless such Holders have

3  timely and properly filed Proofs of Claim preserving such setoff or recoupment in such Proofs of

4  Claim.

5  **12.7.    Retention of Causes of Action and Reservation of Rights.**

6  Except as otherwise provided herein or in the PSA, nothing contained in the Plan or the

7  Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes

8  of Action, rights of setoff or recoupment, or other legal or equitable defenses that Debtor had

9  immediately prior to the Effective Date on behalf of the Estate or itself in accordance with any

10  provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without

11  limitation, any affirmative Causes of Action against parties with a relationship with Debtor

12  including actions arising under Chapter 5 of the Bankruptcy Code, whether such Claims or Causes

13  of Action are known or unknown, or discovered before or after the Confirmation Date or the

14  Effective Date. Except as provided in any order entered by the Bankruptcy Court, the Liquidating

15  Trustee shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights

16  of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Case had

17  not been commenced, and all of Debtor's legal and equitable rights in respect of any Unimpaired

18  Claim may be asserted after the Confirmation Date and the Effective Date to the same extent as if

19  the Chapter 11 Case had not been commenced.

20  **12.8.    Release of Liens.**

21  Except as otherwise provided herein or in any contract, instrument, release, or other

22  agreement or document created pursuant to the Plan, on the Effective Date and concurrently with

23  the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges,

24  or other security interests against any Plan Administration Assets of the Estate shall be fully

25  released and discharged, and all of the right, title, and interest of any Holder of such mortgages,

26  deeds of trust, Liens, pledges, or other security interests shall revert to the Liquidating Trustee and

27  its successors and assigns.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

# ARTICLE 13

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Liquidating Trust, Chapter 11 Case and the Plan pursuant to Sections 105(a) and 1142, including jurisdiction to:

**13.1.** Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, nature, validity, amount, or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment and any and all objections to the allowance, classification, priority or amount of Claims or Equity Interests, not previously ruled on through the 9019 Order or another order of the Bankruptcy Court;

**13.2.** Decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

**13.3.** Resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract and to hear, determine, and, if necessary, liquidate, any Cure Costs arising therefrom; (ii) any potential obligation under any Executory Contract that is assumed; (iii) Debtor's or the Liquidating Trustee's amendment, modification, or supplement after the Effective Date, pursuant to Article 7 of this Plan, of the lists of Executory Contracts to be assumed or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory or expired;

**13.4.** Ensure that distributions to Holders of Allowed Claims are carried out pursuant to the provisions of the Plan, the Global Settlement Agreement and the 9019 Order;

**13.5.** Adjudicate, decide, or resolve any motions, adversary proceedings, any other matters, and any applications involving Debtor, that may be pending on the Effective Date;

**13.6.** Adjudicate, decide or resolve any and all matters related to Causes of Action;

**13.7.** Adjudicate, decide or resolve any and all matters related to Section 1141;

**13.8.** Resolve any and all Avoidance Actions;

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**13.9.** Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or Confirmation Order, and any Entity's obligations incurred in connection with the Plan or Confirmation Order, including disputes arising under or in connection with any agreements, documents, or instruments executed in connection with the Plan, Plan Supplement, or Confirmation Order;

**13.10.** Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan or Confirmation Order and all contracts, instruments, indentures, and other agreements or documents created in connection with this Plan or the Confirmation Order;

**13.11.** Enter and enforce any order for the sale of Assets pursuant to Sections 363, 1123, or 1146(a);

**13.12.** Adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146;

**13.13.** Enforce the injunction and exculpation provisions of the Plan, and issue injunctions, enter and implement orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

**13.14.** Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the injunctions and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such injunctions and other provisions;

**13.15.** Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Equity Interest for amounts not timely repaid;

**13.16.** Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**13.17.** Determine any other matters that may arise in connection with or relate to this Plan, the Confirmation Order, or any contract, instrument, indenture, or other agreement or document created in connection therewith;

**13.18.** Enter an order or final decree concluding or closing the Chapter 11 Case;

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**13.19.** Adjudicate any and all disputes arising from or relating to distributions under the Plan;

**13.20.** Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

**13.21.** Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

**13.22.** Hear and determine all disputes involving the existence, nature, or scope of Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

**13.23.** Enforce all orders previously entered by the Bankruptcy Court; and

**13.24.** Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

### 14.1. Additional Documents.

On or before the Effective Date, Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtor, all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan, and all other parties-in-interest shall prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 14.2. Amendments.

14.2.1. *Plan Modifications.* Subject to the limitations contained in this Plan, and in accordance with the Bankruptcy Code and the Bankruptcy Rules: (i) Debtor reserves the right, to amend or modify this Plan, including amendments or modifications to satisfy Section 1129(a); and (ii) after the entry of the Confirmation Order, Debtor or the Liquidating Trustee, as applicable, may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with Section 1127(b), or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

1
2
be necessary to carry out the purpose and intent of this Plan. Purchaser consent shall be required to the extent the amendment or modification affects its substantive rights.

3
4
5
6
14.2.2. *Effect of Confirmation on Modifications.* Upon entry of the Confirmation Order, all modifications or amendments to the Plan occurring on or after the solicitation thereof shall be deemed approved pursuant to Section 1127(a) and shall not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

7
8
9
14.2.3. *Technical Amendments.* Prior to the Effective Date, Debtor may make technical adjustments and modifications to the Plan that do not adversely affect the treatment of Holders of Claims or Equity Interests thereunder, without further order or approval of the Bankruptcy Court.

10
**14.3.**    Governing Law.

11
12
13
14
15
16
Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal Law, rule, or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan provides otherwise, the Plan shall be governed and construed in accordance with the law of the State of California, without giving effect to the principles of conflict of laws thereof. Corporate governance matters shall be governed by the Laws of the applicable state of incorporation, formation, or functional equivalent thereof, as applicable.

17
**14.4.**    Successors and Assigns.

18
19
20
21
The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor, affiliate, assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

22
**14.5.**    Severability.

23
24
25
26
27
28
If, prior to the entry of the Confirmation Order, the Bankruptcy Court determines that any term or provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court, at the request of Debtor, shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, which term shall thereafter apply as so altered or interpreted. Notwithstanding the foregoing, the remaining terms and provisions of the Plan shall

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified, and (c) non-severable and mutually dependent.

**14.6.** Reservation of Rights.

The Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Nothing in the Plan and Disclosure Statement, Plan Supplement, or anything contained therein, or any action Debtor takes with respect thereto, shall be deemed to be an admission or waiver of any rights of Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

**14.7.** Service of Documents.

After the Effective Date, any pleading, notice or other document required by the Plan to be served on or delivered to the Liquidating Trustee shall also be served on:

Bradley Sharp
333 South Grand Ave. Ste. 4100
Los Angeles, CA 90071

With copies to:
Bryan Cave Leighton Paisner, LLP
Sharon Z. Weiss
120 Broadway, Ste. 300
Santa Monica, CA 90401

After the Effective Date, the Liquidating Trustee may require parties-in-interest to file a renewed request to continue to receive documents pursuant to Bankruptcy Rule 2002 by providing such parties written notice. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such requests.

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

**14.8.** Votes Solicited in Good Faith.

As of the Confirmation Date: (a) Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and any applicable non-bankruptcy Law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) Debtor, and its agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable Laws, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**14.9.** Tax Reporting and Compliance.

Debtor or the Liquidating Trustee and, in the event of a Purchaser Assumption Event, the Purchaser, shall be authorized to request an expedited determination under Section 505(b) for all tax returns filed for, or on behalf of, Debtor for any and all taxable periods ending after the Petition Date through, and including, the dissolution of Debtor.

**14.10.** Exhibits, Schedules, and Supplements.

All exhibits, schedules, and supplements to this Plan are incorporated into and made a part of the Plan as if fully set forth herein. To the extent any exhibit, schedule, or supplement is inconsistent with the terms of this Plan and unless otherwise provided for in the Confirmation Order, the terms of such exhibit, schedule, or supplement shall control as to the transactions contemplated thereby and the terms of this Plan shall control as to any Plan provision as may be required under such exhibit, schedule, or supplement.

**14.11.** Entire Agreement.

Except as otherwise set forth herein, on the Effective Date the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION
185578645.2

**14.12.** Allocation of Payments.

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all U.S. federal income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**14.13.** Waiver or Estoppel.

Each Holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured or not, subordinated by virtue of an agreement made with Debtor or its counsel, or any other Entity, if such agreement was not disclosed in the Plan and Disclosure Statement, or papers filed with the Bankruptcy Court before the Confirmation Date.

Dated: February 23, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

By: */s/ Sharon Z. Weiss*
Sharon Z. Weiss
Attorneys for Debtor-in-Possession

DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

185578645.2

# EXHIBIT 1



# EXHIBIT 2

**Oceanwide Plaza LLC**

**Exhibit 2**

| Creditors | Debtor's Claim Estimate Based on Schedules | | | Filed Proof of Claims | | | Amount allowed for purpose of voting [1] | | |
|---|---|---|---|---|---|---|---|---|---|
| | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount |
| Addison Pools | | | $38,848.00 | | | $279,712.00 | | | $279,712.00 |
| Adobe, Inc. | | | $575.76 | | | | | | $575.76 |
| Advanced Equipment Corporation | | | $1,800.00 | | | $1,800.00 | | | $1,800.00 |
| Aesthetic Maintenance Corporation | | | $276,898.65 | | | | | | $276,898.65 |
| AIG Property Casualty, Inc. | | | | | | $252,500.00 | | | $252,500.00 |
| American Contractors Indemnity Company | | | | Unknown | | Unknown | $0.00 | | $0.00 |
| Asia-Pacific Property & Casualty Insurance | | | $86,972.60 | | | | | | $86,972.60 |
| ASSI Security | | | $135.00 | | | | | | $135.00 |
| AT&T | | | $1,283.54 | | | | | | $1,283.54 |
| Beaubois | | | Undetermined | | | | | | |
| Beaubois (T1) | | | $1,633,732.00 | | | | | | |
| Beaubois (T2) | | | $1,042,204.00 | | | | | | |
| Bigge Crane and Rigging Co. | | | $2,885,694.80 | $1,612,313.20 | | $2,324,016.38 | $1,612,313.20 | | $2,324,016.38 |
| Bragg Investment Co., Inc. | $2,792,381.49 | | $3,052,970.89 | $5,845,352.38 | | | $5,845,352.38 | | |
| BrandSafway Services, LLC [Safway, Safway Atlantic] | | | $400,133.25 | | | $465,776.86 | | | $465,776.86 |
| Calex | | | $9,399.00 | | | $9,399.00 | | | $9,399.00 |
| California Benefit Planners | | | $900.00 | | | $4,695.00 | | | $4,695.00 |
| California Community Foundation | | | $100,000.00 | | | $300,000.00 | | | $300,000.00 |
| CallisonRTKL Inc. (now known as Arcadis Inc.) [RTKL Associates Inc.] | $1,621,565.62 | | | $1,613,530.62 | | $798,269.36 | | | |
| Carrara, Inc. | | | $1,537,637.00 | $1,147,913.69 | | $1,705,279.16 | $1,147,913.69 | | $1,705,279.16 |
| CCC Investment Group, Inc | | | $40,000.00 | | | | | | $40,000.00 |
| CDC Curtain Wall Design and Consulting | | | $11,561.68 | | | | | | $11,561.68 |
| Central City Association of Los Angeles | | | $16,000.00 | | | | | | $16,000.00 |
| Chao Wang | | | Unliquidated | | | $1,500,000.00 | | | $1,500,000.00 |
| Chen & Fan Accountancy Corporation | | | $33,137.26 | | | | | | $33,137.26 |
| Chubb | | | $270,000.00 | | | | | | |
| Chute Systems | | | $55,405.00 | $56,035.00 | | | $56,035.00 | | |
| City of LA - Building and Safety | | | $356.10 | | | | | | |
| City of LA Bureau of Street Services | | | $22,996.89 | | | | | | $22,996.89 |
| Cleveland Marble | | | Undetermined | | | | | | |
| Cleveland Marble, Inc. | | | $72,000.00 | | | $72,000.00 | | | $72,000.00 |
| CNA Surety | | | $158,440.00 | | | | | | |
| Commercial Scaffolding of California, Inc. | | | $2,683,505.23 | $2,711,442.86 | | | $2,711,442.86 | | |
| Compass, Inc. | | | $170,807.19 | | | | | | |
| Continental Marble and Tile Company | | | $845,635.00 | | | | | | |
| County of Los Angeles | | $3,066.53 | | | | | | $3,066.53 | |
| Creditors Adjustment Bureau, Inc. (as assignee of CNA Surety) | | | | | | $178,103.20 | | | $178,103.20 |
| Crisp Imaging | | | $20,700.00 | | | | | | $20,700.00 |
| CSC | | | $868.00 | | | | | | $868.00 |
| DAG Tech LLC | | | $540.00 | | | $540.00 | | | $540.00 |
| Daniel A. Cantor | | $15,150.00 | $7,425.06 | | $15,150.00 | $59,459.37 | | $15,150.00 | $59,459.37 |
| Department of Treasury - Internal Revenue Service | | $101,911.91 | | | $240,595.71 | | | $240,595.71 | |
| Diane Chang | | | $2,322.17 | | | $7,590.59 | | | $7,590.59 |
| DSM Construction, Inc. | | | $5,698.00 | | | | | | |
| Eberhard | | | $17,858.00 | | | $22,817.00 | | | $22,817.00 |
| EES Security [EES Security] | | | | | | $1,677,899.36 | | | $1,677,899.36 |
| Employers Preferred Insurance Co. | | | $5,267.00 | | | | | | $5,267.00 |
| Enclos | $5,950,000.00 | | | | | | $5,950,000.00 | | |
| Ernst & Young LLP | | | $77,000.00 | | | | | | $77,000.00 |
| Executive Event Services | | | $1,441,570.58 | | | | | | |
| Fetzers' Inc. | $2,001,694.00 | | $650,000.00 | $1,992,748.33 | | $218,513.67 | $1,992,748.33 | | $218,513.67 |
| Ficcadenti Waggoner and Castle | | | $28,600.00 | | | | | | $28,600.00 |
| FPL and Associates, Inc. | | | $3,976.00 | | | $24,236.00 | | | $24,236.00 |
| Franchise Tax Board | | | $3,200.00 | | $1,613.91 | $52.00 | | $1,613.91 | $52.00 |
| Galstian Consulting Group, Inc. | | | $8,500.00 | | | | | | |
| Geotechnologies, Inc. | | | $11,696.00 | | | $11,696.00 | | | $11,696.00 |
| Gregory Mowbray | | $15,150.00 | $2,562.39 | | $15,150.00 | $115,551.88 | | $15,150.00 | $115,551.88 |
| Ground Penetrating Radar Systems, LLC (GPRS) | | | $6,000.00 | | | | | | |
| Hancock S-REIT LA Corp. | | | $945,890.09 | | | $952,498.79 | | | $952,498.79 |
| Hongye (Bill) Zhang | | | $34,400.42 | | | | | | $34,400.42 |
| Hyatt Corporation | | | $11,619.63 | | | | | | $11,619.63 |
| Illinois Union Insurance Company | | | | | | $270,000.00 | | | $270,000.00 |

Oceanwide Plaza LLC

Exhibit 2

| Creditors | Debtor's Claim Estimate Based on Schedules | | | Filed Proof of Claims | | | Amount allowed for purpose of voting [1] | | |
|---|---|---|---|---|---|---|---|---|---|
| | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount |
| Jaqueline Hurwitz | | | Unliquidated | | | | | | |
| Johnson & Turner Painting Company, Inc. (T1) | | | $2,198.00 | | | $2,198.66 | | | $2,198.66 |
| Johnson & Turner Painting Company, Inc. (T2 & T3) | | | $45,325.00 | | | $45,325.51 | | | $45,325.51 |
| JPMorgan Chase Bank N.A. | | | $112,994.69 | | | | | | $112,994.69 |
| JSS Construction, Inc | | | $141,702.00 | | | $631,613.67 | | | $631,613.67 |
| JT Wimsatt | $4,049,373.00 | | | $4,049,373.00 | | | | | |
| Justin Tsai | | | | | | $3,349.32 | | | $3,349.32 |
| Karcher Interior Systems, Inc. [ACCO Sub] | $397,945.73 | | | | | | | | |
| Karcher Interior Systems, Inc. [Martin Bros. Sub] | $261,850.00 | | | | | | | | |
| KCJ Engineering Inc. | | | $5,420.00 | | | | | | $5,420.00 |
| Kember | | | Undetermined | | | | | | |
| Kember Flooring Inc. | | | $264,091.00 | | | | | | $0.00 |
| Ken W. Choi | | $15,150.00 | $1,250.55 | | $24,621.47 | $33,353.31 | | $24,621.47 | $33,353.31 |
| Kimberly E. Frascarelli | | | $688.35 | | | $2,664.85 | | | $2,664.85 |
| King Choi | | | $1,557.72 | | | $4,807.69 | | | $4,807.69 |
| Kovach Enclosure Systems LLC [Kovach Building Enclosures] | | | $1,652,713.00 | $1,469,913.00 | | $152,800.00 | $1,469,913.00 | | $152,800.00 |
| KPFF | | | $8,940.60 | | | $11,757.73 | | | $11,757.73 |
| [2] L.A. Downtown Investment, LP | | | | | | | $230,000,000.00 | | Deficiency Claims |
| La Jolla Pacific of California, LTD. | | | $2,825.00 | | | | | | $2,825.00 |
| Larry Methvin Installations, Inc. | | | $313,410.00 | | | | | | |
| Larry Methvin Installations, Inc. (T1) | | | $758,385.00 | | | | | | |
| Larry Methvin Installations, Inc. (T2 & T3)) | | | $148,308.00 | | | | | | |
| [3] Lendlease (US) Construction Inc. | | | $252,000.00 | | | | $168,950,128.56 | | $252,000.00 |
| Lexington Insurance Co. | | | $1,250.00 | | | | | | $1,250.00 |
| Lexis Nexis | | | $3,703.72 | | | | | | $3,703.72 |
| Lincoln Financial Group | | | $2,837.80 | | | | | | $2,837.80 |
| Littler Mendelson | | | | | | | | | |
| Los Angeles County Treasurer and Tax Collector | $18,463,711.62 | | | $28,320,728.76 | | | $28,320,728.76 | | |
| Los Angeles Department of Water and Power | | | $720,713.80 | | | | | | $720,713.80 |
| Los Angeles Police Department | | | $24.00 | | | | | | $24.00 |
| Malone Bailey, LLP | | | $3,000.00 | | | | | | $3,000.00 |
| Marsh USA Inc | | | $891,092.25 | | | | | | $891,092.25 |
| McCormick & Associates, Inc. | | | $5,000.00 | | | | | | $5,000.00 |
| Michael J. Bayard, Esq. | | | $74,062.50 | | | | | | |
| Mitsubishi Electric US, Inc. | $4,176,625.00 | | $637,508.00 | $4,176,625.00 | | $637,508.00 | $4,176,625.00 | | $637,508.00 |
| Morrow Equipment Company, LLC | $997,245.16 | | $2,255,520.96 | $3,252,766.12 | | $66,461.02 | $3,252,766.12 | | $66,461.02 |
| MS Rousse | | | $851,726.00 | | | | | | |
| Navigators Specialty Insurance Company | | | $92,500.00 | | | $92,500.00 | | | $92,500.00 |
| Neil Yu | | | $756.33 | | | $6,075.63 | | | $6,075.63 |
| Nixon Peabody | | | $(25,937.98) | | | | | | $0.00 |
| Ocean Food Services, Inc. | | | $10,689.95 | | | | | | $10,689.95 |
| Ocean Food Services, Inc. | | | $31,590.00 | | | | | | $31,590.00 |
| [4] Oceanwide Investment Three (Hungary) Kft Fa. [Oceanwide Investment Three (Hungary) LLC] | | | $52,112,634.43 | | | $52,239,710.09 | | | $52,239,710.09 |
| [4] Oceanwide Plaza I LLC | | | $355,276.76 | | | | | | $355,276.76 |
| [4] Oceanwide Real Estate Group (USA) Corp. | | | $167,225,590.60 | | | $169,301,076.71 | | | $169,301,076.71 |
| Pacific Building Specialties | | | $21,295.00 | | | $21,294.72 | | | $21,294.72 |
| Paychex | | | $221,231.44 | | | | | | $221,231.44 |
| PayScale | | | $1,600.00 | | | | | | $1,600.00 |
| PeopleReady, Inc. | | | $1,575.84 | | | | | | $1,575.84 |
| Pierre Landscape Inc. | | | $53,420.00 | | | | | | |
| Poggenpohl US Inc. | | | $105,712.00 | | | | | | |
| Project Approval Service | | | $5,500.00 | | | | | | $5,500.00 |
| Pro-Vigil, Inc. | | | $53,356.64 | | | | | | |
| Psomas | | | $203.00 | | | | | | $1,417.59 |
| Public Storage | | | $490.00 | | | | | | $490.00 |
| Pure Water of Los Angeles | | | $120.45 | | | | | | $120.45 |
| PWC | | | $2,500.00 | | | | | | $2,500.00 |
| PwC US TAX LLP | | | $375.00 | | | | | | |
| Quality Assurance Engineering, Inc. [dba Consolidated Engineering Laboratories] | | | | $43,146.92 | | | $43,146.92 | | |
| Ralls Gruber & Niece LLP | | | $906,313.60 | | | $906,314.00 | | | $906,314.00 |
| Registrar-Recorder/County Clerk | | | $16.00 | | | | | | $16.00 |
| Ren Zhou | | | Unliquidated | | | $1,500,000.00 | | | $1,500,000.00 |

Oceanwide Plaza LLC

Exhibit 2

| Creditors | Debtor's Claim Estimate Based on Schedules | | | Filed Proof of Claims | | | Amount allowed for purpose of voting [1] | | |
|---|---|---|---|---|---|---|---|---|---|
| | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount | Secured Claim Amount | Priority Claim Amount | General Unsecured Claim Amount |
| RentYourPlants | | | $458.00 | | | $458.00 | | | $458.00 |
| Repeated Signal Solutions, Inc. | | | $17,789.00 | | | | | | $17,789.00 |
| Ricoh USA Inc | | | $66.00 | | | | | | $66.00 |
| Rynoclad | | | Undetermined | | | | | | $0.00 |
| Rynoclad Technologies Inc. | | | $1,188,187.00 | | | | | | |
| Seamless Care Inc. | | | $319,957.00 | | | | | | |
| Sequent Systems | | | $2,000.00 | | | $10,100.00 | | | $10,100.00 |
| Sharpe Interior Systems, Inc. | $3,850,000.00 | | | | | | $3,850,000.00 | | |
| Smith-Emery Laboratories, Inc. | | | $7,087.00 | | | | | | |
| SoCal Sanitation | | | $970.65 | | | | | | |
| Song (Thomas) Feng | | $15,150.00 | $182,865.50 | | $24,761.34 | $235,286.02 | | $24,761.34 | $235,286.02 |
| Standard Drywall, Inc. | $759,711.39 | | | | | | $759,711.39 | | |
| Standard Drywall, Inc. | $537,840.81 | | | | | | $537,840.81 | | |
| Standard Drywall, Inc. | | | $683,385.00 | | | $683,385.00 | | | $683,385.00 |
| Standard Drywall, Inc. (SDI) [as a LendLease Sub] | | | $408,405.61 | | | | | | |
| Star Hardware, Inc. | $1,596,331.00 | | $783,332.30 | $1,915,993.00 | | $456,420.71 | $1,915,993.00 | | $456,420.71 |
| State of California | | $800.00 | | | | | | $800.00 | |
| State of California | | $38,237.33 | | | | | | $38,237.33 | |
| State of Delaware | | | $6,870.48 | | | | | | $6,870.48 |
| State of Delaware | | $882.50 | | | | | | $882.50 | |
| State Water Resources Control Board | | | $756.00 | | | | | | $756.00 |
| Steel Blue LLC | | | $5,000.00 | | | | | | $5,000.00 |
| Stone Etc., Inc. | | | $1,051,942.00 | | | | | | |
| Stone Etc., Inc. | | | $1,029,819.00 | | | | | | $1,029,819.00 |
| Stone Etc., Inc. Deposit | | | $100,000.00 | | | | | | |
| Suffolk Construction Company, Inc. | | | $25,000.00 | | | | | | $25,000.00 |
| Sunhouse Hospitality LLC | | | $7,448.17 | $7,449.00 | | | $7,449.00 | | |
| Swinerton Inc. dba Swinerton Management and Consulting | | | $761,505.82 | | | | | | |
| Swinerton-Webcor Joint Venture | | | $554,225.28 | | | | | | |
| Terra - Petra | | | $10,899.00 | | | | | | $10,899.00 |
| The City of Los Angeles | | | | | $3,896,392.78 | $1,169,994.82 | | $3,896,392.78 | $1,169,994.82 |
| The Concord Group, LLC | | | $13,500.00 | | | | | | $13,500.00 |
| The Kenrich Group LLC | | | $114,011.50 | | | | | | $114,011.50 |
| The MS Rouse Company, Inc. (T1) | | | $1,771,386.00 | | | $2,491,492.00 | | | $2,491,492.00 |
| Tom Malloy Corp. dba Trench Shoring | | | $392,673.40 | | | | | | |
| Tractel Ltd. | | | $1,229,944.88 | $1,279,944.88 | | | $1,279,944.88 | | |
| Tractel Ltd. | | | $627,644.00 | | | $710,200.24 | | | $710,200.24 |
| TransAmerica | | | $34,910.82 | | | | | | $34,910.82 |
| TriNet | | | $1,725.00 | | | | | | $1,725.00 |
| Turner & Townsend Inc | | | $240,745.68 | | | $240,746.00 | | | $240,746.00 |
| Twining, Inc. | | | $100,897.60 | | | $325,630.99 | | | $325,630.99 |
| U.S. Specialty Insurance Co. | | | $41,320.00 | | | | | | $41,320.00 |
| United Valet Parking Inc | | | $810.00 | | | | | | $810.00 |
| Veritext, LLC | | | | | | $429.72 | | | $429.72 |
| Vigen Onany & Associates | | | $8,095.00 | | | | | | $8,095.00 |
| Vision Communications Co [Khavarian Enteprises Inc.] | | | $6,221.01 | | | $8,158.41 | | | $8,158.41 |
| Western Surety | | | $158,440.00 | | | | | | |
| Williams New York | | | $179,136.00 | | | | | | $179,136.00 |
| Xerox Financial Services LLC | | | $3,591.68 | | | | | | $3,591.68 |
| Yanting Dong | | | Unliquidated | | | $1,500,000.00 | | | $1,500,000.00 |
| Yichen Zhou | | | Unliquidated | | | $1,500,000.00 | | | $1,500,000.00 |
| Yiyang Zhou | | | Unliquidated | | | $1,500,000.00 | | | $1,500,000.00 |
| Zinner Consultants | | | $8,378.75 | | | | | | $8,378.75 |
| **Total** | **$167,025,337.67** | **$205,498.22** | **$271,232,173.42** | **$100,930,933.76** | **$4,218,285.21** | **$303,479,779.26** | **$457,930,052.90** | **$4,261,271.57** | **$257,713,658.68** |

[1]   Debtor's characterization of these claims as "allowed" is for purposes of voting only and Debtor otherwise reserves all rights and defenses to such claims.

[2]   L.A. Downtown Investment, LP's secured claim amount and deficiency claim is calculated pursuant to the 9019 Order [ECF 789], as defined in the Plan.

       Lendlease (US) Construction Inc.'s claim includes the claims of DTLA Funding LLC and certain subcontractors who asserted claims in this matter, as more fully set forth in the 9019 Order [ECF 789], as defined in the Plan.
       The claims of subcontractors included in the Lendlease (US) Construction Claim are set forth in Exhibit E of Exhibit 1 of the 9019 Order.

[4]   Intercompany Loan Claims will vote as a separate class, but will receive the same treatment as General Unsecured Claims unless otherwise subordinated.

[5]   Creditors whose claims that were not scheduled as contingent, unliquidated, or disputed were excused from filing a proof of claim per the notice of bar date for filing proofs of claim [ECF No. 159].

# EXHIBIT 3

**Oceanwide Plaza**

**Liquidation Analysis [18]**

| | | Ch. 7 Liquidation Asset Recovery Estimates | | | | Ch. 11 Plan Asset Recovery Estimates | |
|---|---|---|---|---|---|---|---|
| | Book Value | Recovery % Low % | Estimated Recovery Low $ | Recovery % High % | Estimated Recovery High $ | Recovery % | Estimated Recovery |
| [1] Real Property | $ 433,900,000 | 27% | $ 119,000,000 | 70% | $ 304,147,862 | 113% | $ 489,785,414 |
| [2] Machinery and Equipment | $ 12,881,320 | 20% | $ 2,576,264 | 20% | $ 2,576,264 | 0% | Included in the Purchase Price |
| [3] Inventory | $ 117,366,698 | 10% | $ 11,736,670 | 10% | $ 11,736,670 | 0% | Included in the Purchase Price |
| **Cost of Sale** | | | | | | | |
| [3] Broker Commission | | | $ (892,500) | | $ (2,062,500) | | $ (3,673,391) |
| [4] Closing Costs | | | $ (238,000) | | $ (550,000) | | $ (979,571) |
| Architect Cure Cost | | | $ (2,411,000) | | $ (2,411,000) | | $ (2,411,000) |
| [5] Estimated Transfer and Mansion Tax | | | $ (7,645,082) | | $ (17,098,682) | | |
| Net Proceeds Available for Distribution | | | $ 122,126,352 | | $ 296,338,614 | | $ 482,721,453 |
| Class 1 Secured Tax claims | $ 38,656,244 | | $ 38,656,244 | | $ 38,656,244 | | $ 38,656,244 |
| **Estimated Secured Tax Recovery %** | | | 100% | | 100% | | 100% |
| [6] DIP Balance | $ 20,785,450 | | $ 20,785,450 | | $ 20,785,450 | | $ 20,785,450 |
| [7] Lendlease DIP Professional Fee | $ 900,000 | | $ 900,000 | | $ 900,000 | | $ 900,000 |
| **Estimated Unclassified Recovery %** | | | 100% | | 100% | | 100% |
| [8] Class 2 LADI Secured Claims CH 11 | $ 245,820,000 | | | | | | $ 245,820,000 |
| **Estimated LADI Recovery %** | | | 0% | | 0% | | 100% |
| [9] Class 2 LADI Secured Claims CH 7 | $ 256,770,000 | | $ 61,784,658 | | $ 235,996,920 | | $ - |
| **Estimated LADI Recovery %** | | | 24% | | 92% | | 0% |
| Class 3 Lendlease Secured Claims | $ 168,950,129 | | $ - | | $ - | | $ 168,950,129 |
| **Estimated LendLease Recovery %** | | | 0% | | 0% | | 100% |
| [10] CH. 7 Trustee Fee | $ 3,506,262 | | $ - | | $ - | | |
| [11] CH. 7 Professional Fees | $ 3,000,000 | | $ - | | $ - | | |
| LA City Admin | $ 2,977,541 | | $ - | | $ - | | |
| [12] UST Fees | $ 251,000 | | $ - | | $ - | | |
| **Estimated CH 7 Admin Recovery %** | | | 0% | | 0% | | 0% |
| LA City Admin | $ 2,977,541 | | | | | | $ 2,977,541 |
| GAP Claims - LA City | $ 3,896,393 | | | | | | $ 3,896,393 |
| [13] Priority Tax Claims | $ 285,196 | | | | | | $ 285,196 |
| [14] UST Fees | $ 250,500 | | | | | | $ 250,500 |
| Post Confirmation Trust Reserve | $ 200,000 | | | | | | $ 200,000 |
| [15] **Estimated CH 11 Admin Recovery %** | | | 0% | | 0% | | 100% |
| Class 4 Junior Secured Claims | $ 32,406,596 | | $ - | | $ - | | $ (0) |
| **Estimated Junior Secured Recovery %** | | | 0% | | 0% | | 0% |
| [16] Class 5 Other Priority Claims CH. 7 503 (a)(3) | $ 3,896,393 | | $ - | | $ - | | $ - |
| Class 5 Other Priority Claims CH. 7 503 (a)(4) | $ 79,683 | | $ - | | $ - | | $ - |
| Class 5 Other Priority Claims CH. 7 503 (a)(8) | $ 285,196 | | $ - | | $ - | | $ - |
| **Estimated Other Priority CH. 7 Recovery %** | | | 0% | | 0% | | 0% |
| Class 5 Other Priority Claims CH. 11 503 (a)(4) | $ 79,683 | | $ - | | $ - | | $ - |
| **Estimated Other Priority CH. 11 Recovery %** | | | 0% | | 0% | | 0% |
| Class 6 GUC | $ 161,018,015 | | $ - | | $ - | | $ - |
| **Estimated Unsecured Recovery %** | | | 0% | | 0% | | 0% |
| [17] Class 6 LADI Deficiency Claim | $ 21,900,000 | | | | | | |
| **Estimated GUC Deficiency Recovery %** | | | 0% | | 0% | | 0% |
| Class 7 Intercompany Claims | $ 221,896,064 | | $ - | | $ - | | $ - |
| **Estimated Intercompany Recovery %** | | | 0% | | 0% | | 0% |
| Class 8 Equity Claims | $ - | | $ - | | $ - | | $ - |
| **Estimated Equity Recovery %** | | | 0% | | 0% | | 0% |

[1] For CH 7 recoveries, the high estimate is based on Collier appraised value minus reduction in value. For CH 11 Scenario, the balance is based on credit bid amount of both LADI and Lendlease Claims plus $75,015,285 to pay secured tax and administrative costs. For Chapter 7 recoveries, the low estimate is based on Land Value estimated by Collier appraisal dated April 8, 2024.

[2] Machinery and Equipment, and Inventory are estimated at recovery rates of 20% and 10% respectively in the CH 7 scenario. In the CH 11 Plan the purchase price includes all assets.

[3] Commission cost is based on 0.75% of the sale price

[4] Closing costs are estimated at 0.2% of the sale price

[5] Estimated Mansion tax is 5.5%, estimated LA County Transfer Tax is 0.11% and estimated LA City Transfer Tax is 0.45%

| | | 5.50% | 0.11% | 0.45% | |
|---|---|---|---|---|---|
| | Sale Price | Los Angeles City ULA Mansion Tax | LA County Transfer Tax | Los Angeles City Transfer Tax | Total Mansion and Transfer Taxes |
| $ | 126,156,467 | $ 6,938,606 | $ 138,772 | $ 567,704 | $ 7,645,082 |
| $ | 282,156,467 | $ 15,518,606 | $ 310,372 | $ 1,269,704 | $ 17,098,682 |

[6] DIP Balance is estimated balance as of March 31, 2026 which includes CH 11 Debtor's professional fees, accrued interest and lender's fees but does not include Lender's legal fees. Additional borrowing is expected.

[7] Estimated Lendlease Legal fees for the DIP. These fees are expected to go up.

[8] LADI claim is based on $230 million balance as of 10/31/2025 and an additional $60K per diem accrual to Oct. 2026. In addition, unknown at this time is LADI's reasonable professional fees.

[9] In CH 7 scenario, LADI claims will increase by additional 6 month of accrued interest ($60,000 per diem * 178 days).

[10]

| Ch.7 Trustee Liquidation Fees | Fee% | Fee$ | Total Trustee Fee | Ch.7 Trustee Liquidation | Fee% | Fee$ | Total Trustee Fee |
|---|---|---|---|---|---|---|---|
| Up to 5,000.00 | 25% | $ 5,000 | $ 1,250 | Up to 5,000.00 | 25% | $ 5,000 | $ 1,250 |
| 5,000.01 - 49,999.99 | 10% | $ 45,000 | $ 4,500 | 5,000.01 - 49,999.99 | 10% | $ 45,000 | $ 4,500 |
| 50,000.00 - 999,999.99 | 5% | $ 950,000 | $ 47,500 | 50,000.00 - 999,999.99 | 5% | $ 950,000 | $ 47,500 |
| 1,000,000 and above | 3% | $ 121,126,352 | $ 3,633,791 | 1,000,000 and above | 3% | 295,338,614 | $ 8,860,158 |

[11] CH 7 professional fees are estimated based on the assumption of new attorneys for the estate, legal advice needed on the liquidation trust. Current estimate is $3M.

[12] CH 7 high scenario it is estimated at $250,000 plus an additional 1 year of case remaining open (250*4 = $1000)

[13] Scheduled priority tax claims, $39,037.33 to State of California and $3,066.53 to County of Los Angeles.

[14] UST fee for CH 11 assumes the credit bid and administrative costs occur in the same quarter. An additional 6 months of UST fees are estimated as reserve ($250 *2=$500)

[15] CH 11 administrative and other priority claims will be paid based on the Buyer's discretion.

[16] In CH 7 scenario, LA City GAP Claims and priority tax claims become unsecured claims.

[17] Deficiency Claim for CH 7 scenario is estimated at $60K per diem for 1 year period for LADI interest accrual.

[18] All claims reflected in the liquidation analysis are estimated amounts and are subject to review and approval.

# EXHIBIT 4

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made and entered into as of February __, 2026 (the "**Effective Date**"), by and between OCEANWIDE PLAZA LLC, a Delaware limited liability company, debtor and debtor in possession in the In re Oceanwide Plaza LLC chapter 11 bankruptcy case, case number 2:24-bk-11057-DS ("**Seller**" or "**Debtor**"), and KPC SQUARE, LLC, a Delaware limited liability company, or its designee ("**Buyer**").

WHEREAS, Seller desires to sell, and Buyer desires to buy, the "**Property**" (as hereinafter defined) on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual undertakings of the parties hereto, it is hereby agreed as follows:

1.    **Certain Defined Terms**. As used herein:

1.1    "**Allocation Statement**" has the meaning set forth in <u>Section 3.1</u> of this Agreement.

1.2    "**Appurtenances**" shall mean all easements or licenses benefitting the Land; all streets, alleys and rights of way, open or proposed, in front of or adjoining or servicing all or any part of the Land; all strips and gores in front of or adjoining all or any part of the Land; to the extent assignable under applicable Law, all development rights, air rights, wind rights, water, water rights, riparian rights, and water stock relating to the Land; and to the extent assignable under applicable Law, all other rights, benefits, licenses, interests, privileges, easements, tenements and hereditaments appurtenant to the Land or used in connection with the beneficial use and enjoyment of the Land or the Improvements or in anywise appertaining to the Land or the Improvements.

1.3    "**Architect**" shall mean RTKL Associates Inc.

1.4    "**Architect's Agreement**" shall mean that certain Agreement dated as of May 26, 2014, by and between Tohigh and Architect (as the same may be amended, restated, supplemented or otherwise modified from time to time), including without limitation, those documents set forth in <u>Section 13.2</u> of the Architect's Agreement.

1.5    "**Assignment Order**" has the meaning set forth in <u>Section 7.4.1(b)</u> of this Agreement.

1.6    "**Bankruptcy Case**" shall mean the Debtor's Chapter 11 Bankruptcy Case No. 2:24-bk-11057-DS, which is pending in the Bankruptcy Court.

1.7    "**Bankruptcy Code**" shall mean Title 11 of the United States Code (11 U.S.C. Section 101 et seq.) as now or hereafter in effect, or any successor thereto.

1.8    "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Central District of California, Los Angeles Division with jurisdiction over the Bankruptcy Case.

1.9    "**Bankruptcy Sale**" has the meaning set forth in <u>Section 2</u> of this Agreement.

1.10    "**Broker**" shall mean Hilco Real Estate.

1.11    "**Business Day**" has the meaning set forth in <u>Section 10.4</u> of this Agreement.

1.12    "**Buyer Assignee**" has the meaning set forth in <u>Section 10.7</u> of this Agreement.

1.13    "**Cash Consideration**" has the meaning set forth in <u>Section 3</u> of this Agreement.

1.14    "**Consideration**" has the meaning set forth in <u>Section 3</u> of this Agreement.

1.15    "**Closing**" shall mean Buyer's irrevocable instructions to Escrow Agent to remit the Closing Payment to Seller, and Seller's irrevocable instructions to Escrow Agent to record the Deed.

1.16    "**Closing Date**" shall mean the date that is the earlier of:

**(a)** Six (6) months after the date the Sale Order and the Confirmation Order shall have been entered by the Bankruptcy Court and are not subject to a stay provided, in each case, that the conditions set forth in <u>Section 4.1 and Section 4.2</u> have been met or waived, unless otherwise mutually agreed upon in writing by Buyer and Seller; or

**(b)** Eight (8) calendar days after DIP Expiration (defined below), provided, however, for purposes of this <u>subsection (b)</u> only, Buyer shall have the right, in it sole and absolute discretion, to extend the Closing Date up to four times by ninety (90) days for each extension (each, a "**Closing Date Extension**"), so long as:

**(i)** Buyer provides Seller with written notice of Buyer's election to extend the Closing Date within eight (8) days after DIP Expiration with respect to the first Closing Date Extension, and no later than ten (10) days prior to the then existing Closing Date with respect to the remaining Closing Date Extensions;

**(ii)** A specified affiliate of the Buyer or of a member of the Buyer ("**Junior DIP Financing Lender**") agrees to provide debtor-in-possession financing (the "**Junior DIP Financing**") to the Debtor, subordinate as to all liens, rights and remedies to the DIP Financing, including comparable DIP Financing budgets and comparable DIP Financing terms (which includes, without limitation, for a minimum 10 day cure period of any default), no later than the later of (a) two (2) days prior to the then existing Closing Date, or (b) two (2) days after Court approval of the Junior DIP Financing, or as soon thereafter as is practical; and

**(iii)** Seller shall promptly execute all documentation necessary for any Junior DIP Financing, which documentation shall provide that all liens, rights and remedies thereunder are junior to all liens, rights and remedies under the existing DIP Financing.

(c) The DIP Lender is an express third-party beneficiaries of the terms of Section 1.16(b)(ii) and the provisions thereof survive termination of the Agreement.

(d) Notwithstanding the foregoing, Buyer shall have the right, in its sole and absolute discretion, to accelerate the Closing Date so long as Buyer provides Seller with no less than five (5) business days prior written notice of the same.

1.17    "**Closing Documents**" shall mean any certificate, instrument or other document executed by a party or an affiliate of a party and delivered pursuant to <u>Section 5.1</u> of this Agreement in connection with the Closing.

185753604.1

1.18    "**Closing Payment**" has the meaning set forth in <u>Section 3.3</u> of this Agreement.

1.19    "**Co-Insurer**" shall mean a nationally recognized title insurance company selected by Buyer that will provide co-insurance for the Owner's Policy.

1.20    "**Condemnation/Casualty Notice**" has the meaning set forth in <u>Section 6</u> of this Agreement.

1.21    "**Confirmation Order"** shall mean a Final Order of the Bankruptcy Court in form and substance acceptable to the Buyer in its reasonable discretion, and reasonably acceptable to the Title Company, if needed, confirming a Chapter 11 Plan filed in the Bankruptcy Case. In its sole and absolute discretion, Buyer shall have the right to waive the requirement that the Confirmation Order be a Final Order.

1.22    "**Construction Contract"** shall mean a construction contract solely for the design, construction, and/or improvement of the Property to be performed after the Closing, the costs of which are not included in and are separate from the Consideration and are intended to be funded through construction financing or other post-purchase funding sources. The Construction Contract shall be a guaranteed maximum price contract, with a guaranteed maximum price not to exceed Eight Hundred Million Dollars ($800,000,000.00), by and between Buyer and an independent, third-party general contractor, on terms acceptable to Buyer in its sole and absolute discretion. For the avoidance of doubt, the Construction Contract shall not include, relate to, or allocate any portion of the Consideration, land acquisition costs, or closing costs.

1.23    "**Construction Loan**" means one or more loans procured by Buyer for purposes of funding, in whole or in part, the construction and development of the improvements to be constructed on the Land.

1.24    "**Credit Bid Consideration**" shall mean the approximate amount of $400 million as of October 31, 2025, which is the aggregate amount of the LADI Claims plus the Mechanic's Liens Claims without duplication and is the approximate aggregate amount of the credit bid consideration to be paid by Buyer for the Property, in accordance with Section 363(k) of the Bankruptcy Code.

1.25    "**Cure Amounts"** has the meaning set forth in <u>Section 7.4.1(a)</u> of this Agreement.

1.26    "**Deed**" has the meaning set forth in <u>Section 5.1.1(a)</u> of this Agreement.

1.27    "**DIP Expiration"** shall mean the earliest to occur of **(a)** the stated maturity date of (i) the DIP Financing (as further extended, if applicable) or (ii) the stated maturity date of the Junior DIP Financing if any Junior DIP Financing is lent, **(b)** any acceleration of the indebtedness thereunder by the DIP Lender, or Junior DIP Lender, as applicable, in writing and written notification to Buyer of such acceleration, or **(c)** any termination of the lending commitments under the DIP Financing or Junior DIP Financing, as applicable,  in writing and written notification to Buyer of such termination.

1.28    "**DIP Financing"** shall mean the Secured Super-Priority Debtor-in-Possession Financing Loan Agreement dated as of May 16, 2024, between DIP Lender and Seller, as amended, restated, supplemented or otherwise modified from time to time, together with any extensions, replacements or refinancings thereof approved by the Bankruptcy Court.

1.29    "**DIP Budget**" shall mean the budget provided for in the DIP Financing, as approved by the Bankruptcy Court, that covers the period through the Closing Date and provides for the

3

payment of all costs and expenses of administering the Debtor's estate, including all allowed professional fees and expenses under 11 U.S.C. § 503(b).

1.30    "**DIP Financing Claim**" shall mean all principal, interest, fees and costs due to the Lender under the Secured Super-Priority Debtor-in-Possession Financing Loan Agreement dated as of May 16, 2024 as amended, restated, supplemented or otherwise modified from time to time, as of the Closing.

1.31    "DIP Lender" shall mean DTLA Lending LLC, it successor and assigns in connection with the DIP Financing.

1.32    "**Deposit**" shall mean a deposit in the amount equal to Three Million Dollars ($3,000,000), together with all interest thereon, delivered in accordance with Section 3.2.

1.33    "**Entitlements**" shall mean the licenses, permits, consents, certificates, entitlements (including but not limited to tract maps), approvals, authorizations, and other entitlements and/or governmental approvals believed necessary or desirable (in all cases, in Buyer's sole discretion) to the development of the Property, including, without limitation, the Entitlements listed in Exhibit E attached hereto and made a part hereof.

1.34    "**Escrow Agent**" shall mean the Title Company.

1.35    "**Estimated Repair Cost**" shall mean the estimated cost to repair and/or restore the damage caused by the applicable casualty or condemnation as reasonably determined by a licensed third-party appraiser or consultant, to be mutually agreed upon between Seller and Buyer.

1.36    "**Executory Contracts"** shall mean, to the extent assumable and assignable under 11 U.S.C. Section 365, applicable Law and under the applicable agreement (and to the extent a third-party consent is required, such consent is obtained), all service, management, franchise or equipment leasing contracts relating to the Property.

1.37    "**Executory Contract Assumption Notice**" has the meaning set forth in Section 7.4.1(a) of this Agreement.

1.38    "**Excluded Liens**" shall mean **(a)** any and all deeds of trust, mortgages, collateral assignments of leases and rents, judgment liens, abstracts of judgments, and other monetary liens affecting or encumbering all or any portion of the Property, **(b)** any and all mechanic's or materialmen liens or judgment liens affecting or encumbering all or any portion of the Property, **(c)** any and all lawsuits or other legal actions that affect the Property or any portion thereof, and **(d)** liens for delinquent property taxes or assessments affecting the Property or any portion thereof; provided, however, that the term "**Excluded Liens**" shall exclude **(i)** liens for real property taxes and assessments affecting the Property not yet due and payable; and **(ii)** any deeds of trust, mortgages, liens, judgments or any other matters affecting title to the Property that arise or attach through any act or omission of Buyer.

1.39    "**Extended DIP Financing**" shall mean an extension of the DIP Financing with a DIP Budget approved by the Bankruptcy Court pursuant to a Final Order that (i) covers the period through the Closing Date, and (ii) provides for the payment of all costs and expenses of administering the Debtor's estate, including all allowed professional fees and expenses under 11 U.S.C. § 503(b).

1.40    "**Final Order**" shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified, or amended and is no longer subject to appeal, certiorari proceeding

4

or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding or other proceeding for review or rehearing shall then be pending.

1.41    "**Governmental Entity**" shall mean any United States national, federal, state, provincial, municipal, or local government, governmental, regulatory or administrative authority, agency, instrumentality or commission or any court, tribunal, or judicial body.

1.42    "**Improvements**" shall mean the improvements, structures, and/or fixtures located upon the Land, including, without limitation, the buildings located thereon as well as any other structures located on the Land, all apparatus, installed equipment and appliances located on or in and used in connection with the operation or occupancy of the Land, and any on-site parking.

1.43    "**Intangible Property**" shall mean, as to the Land, the Improvements and the Personal Property, and to the extent the following items are assignable (and to the extent a third-party consent is required, such consent is obtained), and relate solely to the Land, the Improvements and the Personal Property, **(a)** all Executory Contracts that are elected by Buyer to be assumed at the Closing in accordance with the terms hereof (all in Buyer's sole discretion) as provided in this Agreement and as permitted by applicable Law in a Bankruptcy Court order under 11 U.S.C. § 365 of the Code, and **(b)** all of Seller's right, title and interest in and to any and all **(i)** governmental permits, the Entitlements, licenses and approvals, warranties and guarantees received in connection with any work or services performed with respect thereto, or equipment installed therein, **(ii)** advertising materials and marketing and sales studies, analyses and similar materials, if any, **(iii)** books, records, reports, test results, environmental assessments, surveys, plans, specifications, architectural drawings, floor plans, CAD files, software and software files, if any, **(iv)** intellectual property exclusively related to the Property, and **(v)** other intangible property related to the Property, but excluding any Reserved Company Assets, including, without limitation, any claims that Seller may have against third-party vendors with respect to the Property.

1.44    "**IRC**" shall mean the Internal Revenue Code of 1986, as amended from time to time, and any corresponding provisions of succeeding law and any regulations, rulings and guidance issued by the Internal Revenue Service.

1.45    "**Junior DIP Financing**" shall have the meaning ascribed to it in Section 1.16(b).
.

1.46    "**LADI**" shall mean L.A. Downtown Investment L.P.

1.47    "**LADI Claims**" shall mean the aggregate amount of Two Hundred Thirty Million Dollars ($230,000,000.00) secured by that certain Deed of Trust, Fixture Filing, Assignment of Rents and Leases, and Security Agreement dated May 28, 2015, executed by Oceanwide, as trustor, in favor of CTIC as Trustee, and LADI as Beneficiary, which was recorded against title to the Property on July 20, 2015, as Instrument No. 20150874467, in the Official Records of the Recorder's Office for the County of Los Angeles, State of California, as assigned by LADI pursuant to that certain Assignment of Deed of Trust dated July 24, 2025, which was recorded against title to the Property on November 3, 2025, as Instrument No. 20250761978, in the Official Records of the Recorder's Office for the County of Los Angeles, State of California; provided that the allowance of this claim is subject to approval of the Bankruptcy Court and full execution and implementation of the Settlement Agreement entered into between Lendlease, CTIC, LADI, KPC, DTLA Funding, DTLA Lending and Oceanwide.

1.48    "**Land**" shall mean the land owned by Seller and described in **Exhibit A** hereto.

1.49    "**Law(s)**" shall mean any binding domestic laws, statutes, ordinances, rules, resolutions, regulations, codes, or executive orders enacted, issued, adopted, promulgated, applied, or hereinafter imposed by any Governmental Entity, including building, zoning and environmental protection, as to the use, occupancy, rental, management, ownership, subdivision, development, conversion, redevelopment, sale, or transfer of the Property.

1.50    "**Liens**" shall mean any liens, mortgages, deeds of trust, pledges, security interests or other encumbrances securing any debt or obligation.

1.51    "**Mechanic's Lien Claims"** shall mean the secured lien claims held by LENDLEASE (US) CONSTRUCTION INC. ("**US Construction**"), formerly known as Lend Lease (US) Construction, Inc., a Florida corporation, its subcontractors, and their respective successors and assigns, including DTLA Funding, LLC. The Mechanic's Lien Claims are listed on <u>Exhibit F</u>.

1.52    "**NHD Report**" has the meaning set forth in <u>Section 7.5</u> of this Agreement.

1.53    "**NHD Act**" has the meaning set forth in <u>Section 7.5</u> of this Agreement.

1.54    "**OFAC**" has the meaning set forth in <u>Section 10.13</u> of this Agreement.

1.55    "**Owner's Policy**" shall mean a 2021 ALTA extended coverage form Owner's Policy of Title Insurance, issued by Title Company, with respect to the Land and Improvements, which Owner's Policy shall provide for coverage in the amount of the Consideration and show title to the Land to be vested of record in Buyer, subject only to the Permitted Exceptions so long as any such Permitted Exceptions do not constitute Excluded Liens (which shall be removed from title by Seller in accordance with the terms of this Agreement). Seller acknowledges and agrees that Buyer shall have the right to procure **(a)** "co-insurance" with respect to the Owner's Policy to be issued at Closing such that the Title Company shall be the lead title company and insure 50% of the Consideration and the Co-Insurer shall insure 50% of the Consideration, and Seller shall deliver to Co-Insurer all documents that Seller has agreed to deliver to the Title Company under this Agreement in order to issue the Owner's Policy, and **(b)** such "reinsurance" as Buyer may require with title insurance companies selected by Buyer in its sole and absolute discretion.

1.56    "**Offsite Personal Property**" has the meaning set forth in the definition of Personal Property.

1.57    "**Permitted Exceptions**" shall mean the title exceptions set forth in the Preliminary Title Report, but only to the extent such exceptions have been approved by Buyer in accordance with the terms and provisions of <u>Section 7.4.7</u> below.

1.58    "**Personal Property**" shall mean the Property Documents, and as to the Land and Improvements, Seller's right, title and interest in and to all tangible personal property (including all construction-related materials, supplies, hardware, apparatus, equipment, appliances, and building signs (except to the extent such signs constitute fixtures which are covered in the definition of Improvements), carpeting and other inventory of any kind or nature and maintained in connection with the development, ownership, maintenance and operation thereof) that are **(i)** located on the Land or Improvements, including without limitation, those listed on **<u>Exhibit B-1</u>** attached hereto and incorporated herein, and **(ii)** located off-site, including, without limitation, those listed on **<u>Exhibit B-2</u>** attached hereto and incorporated herein (the "**Offsite Personal Property**"), but in each case excluding (a) any other personal property listed on **<u>Exhibit B-3</u>**, and (b) the Reserved Company Assets. Notwithstanding anything to the contrary contained herein or in any other Closing Document, Seller has no obligation to physically deliver to Buyer the Offsite Personal

Property, and Buyer assumes sole responsibility to locate, secure, safeguard, and retrieve any and all such Offsite Personal Property.

1.59    "**Plan**" has the meaning set forth in <u>Section 5.2</u> of this Agreement.

1.60    "**Preliminary Title Report**" shall mean that certain preliminary title report dated as of January 9, 2026, a copy of which is attached hereto as <u>Exhibit G</u>.

1.61    "**Property**" shall mean, collectively, all of Seller's right, title and interest in and to **(a)** the Land, **(b)** the Appurtenances, **(c)** the Improvements, **(d)** the Personal Property, and **(e)** the Intangible Property.

1.62    "**Property Documents**" shall mean all of Seller's right, title and interest in and to all documents, books, records, and correspondences related to the Land, Improvements, Intangible Property and/or Entitlements, including, without limitation, the following: **(i)** copies of records, and any correspondences delivered or received by Seller and/or Tohigh to and from the City of Los Angeles and any associated local departmental, regulatory or administrative authority, agency, instrumentality or commission, including, without limitation, the Los Angeles Department of Water and Power, Los Angeles Unified School District and Los Angeles Department of Recreation and Parks; **(ii)** correspondences, bank records, receipts, and/or other written documentation evidencing the amount of any fees or bonds previously paid by Seller or Tohigh with respect to the construction of the Improvements, including, without limitation, any Development Impact Fees previously paid by Seller or Tohigh; and **(iii)** written documentation with respect to utilities available and capacity letters from the appropriate authorities concerning water, wastewater, electricity, and gas and copies of all information pertaining to any agreements with respect to the same.

1.63    "**Proposed Contract Assumption Schedule**" has the meaning set forth in <u>Section 7.4.1(a)</u> of this Agreement.

1.64    "**Protected Information**" shall mean any books, records, files, or other materials (whether in a printed or electronic format) that consist of or contain (but only to the extent they contain) any of the following: information related to any property owned or operated by Seller other than the Property; information related to Seller's other business operations at locations other than at the Property; Seller's organizational documents or files or records relating thereto; appraisals; budgets; internal analyses; information regarding the marketing of the Property for sale; submissions relating to obtaining internal authorization for the sale of the Property by Seller or any direct or indirect owner of any beneficial interest in Seller; attorney and accountant work product; attorney-client privileged documents; internal correspondence of Seller, any direct or indirect owner of any beneficial interest in Seller, or any of their respective affiliates and correspondence between or among such parties; or other confidential information, including confidential financial records, in the possession or control of Seller, Seller's affiliates, or any direct or indirect owner of any beneficial interest in Seller; provided, however, the foregoing shall not be deemed to limit information which Seller is otherwise required to disclose to Buyer under this Agreement or pursuant to applicable Laws or in any judicial proceeding.

1.65    "**Repair Credit**" has the meaning set forth in <u>Section 6</u> of this Agreement.

1.66    "**Reserved Company Assets**" shall mean the following assets of Seller as of the Closing Date: **(a)** so long as Buyer's right to receive prorations provided for under <u>Section 5.3</u> below is not impaired by the assets referenced under this subsection (a), then all cash, cash equivalents (including certificates of deposit), deposits held by third parties (e.g., deposits held by utility companies), accounts receivable and any right or claim to a refund, reimbursement or other payment relating to a period prior to

the Closing or an occurrence prior to the Closing, including any real estate tax refund (subject to the prorations hereinafter set forth), **(b)** bank accounts, **(c)** claims or other rights against any present or prior partner, member, employee, agent, manager, officer or director of Seller or its direct or indirect partners, members, shareholders or affiliates, **(d)** any refund in connection with termination of Seller's existing insurance policies, **(e)** all contracts between Seller and any law firm, leasing agent and/or broker entered into prior to the Closing, **(f)** any proprietary or confidential materials (including any materials relating to the background or financial condition of a present or prior direct or indirect partner or member of Seller; provided, however, in no event shall any third-party reports relating to the physical condition of the Property be considered proprietary or confidential hereunder) and any Protected Information, **(g)** the internal books and records of Seller relating, for example, to contributions and distributions prior to the Closing, **(h)** the names "Oceanwide", "Oceanwide Plaza", and "Tohigh" and any derivations thereof, and any trademarks, trade names, brand marks, brand names, trade dress or logos relating thereto, **(i)** Intentionally Omitted, **(j)** any other intangible property that is not used exclusively in connection with the Property, and **(k)** any avoidance actions arising from the Bankruptcy Case.

1.67    "**Sale Order**" shall mean, collectively, a Final Order of the Bankruptcy Court in form and substance reasonably acceptable to the Buyer, the Title Company, and Seller: **(i)** approving the sale of the Property and the assumption and assignment of the Executory Contracts (if any) pursuant to the Bill of Sale, Assignment and Assumption Agreement, free and clear of all claims, liens, interests and encumbrances pursuant to either 11 U.S.C. § 363 and/or 11 U.S.C. §§ 1123 and 1129 of the Bankruptcy Code, all on the terms and conditions set forth in this Agreement and in such Order; **(ii)** authorizing consummation of the Transaction; **(iii)** containing a finding that the Transaction is undertaken by the Seller and the Buyer (solely in its capacity as such) at arm's length, without collusion and in good faith by the Buyer within the meaning of Sections 363(m) and 363(n) of the Bankruptcy Code; **(iv)** determining that the Buyer will not be subject to successor liability for any claims or causes of action of any kind or character against any Seller, whether known or unknown, provided, however, any claims or obligations assumed by Buyer pursuant to this Agreement shall become obligations of the Buyer after Closing to the extent such obligations first accrue and are applicable for the period from and after Closing; **(v)** authorizing the Buyer to freely own and operate the Property; **(vi)** providing that the Bankruptcy Court shall retain jurisdiction to hear any disputes arising in connection with the Transaction; **(vii)** permitting the Buyer to waive, in its sole and absolute discretion, the 14-day stay period under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and **(viii)** granting related relief, which order may be the Confirmation Order. In its sole and absolute discretion, Buyer shall have the right to waive the requirement that the Sale Order be a Final Order.

1.68    "**Title Company**" shall mean a nationally recognized title insurance company selected by Buyer.

1.69    "**Tohigh**" shall mean Seller's predecessor-in-interest, Tohigh Construction Investment LLC.

1.70    "**Transaction**" shall mean the transactions contemplated under this Agreement.

1.71    "**Vendor Notices**" has the meaning set forth in <u>Section 5.1.1(d)</u> of this Agreement.

2.    **Purchase and Sale**. Upon the terms and conditions hereinafter set forth, Seller shall sell to Buyer, and Buyer shall purchase from Seller, the Property. Seller shall convey the Property to Buyer pursuant to Section 363(f) of the Bankruptcy Code and with a finding of good faith under 11 U.S.C. § 363(m), 11 U.S.C. § 363(n) or Sections 1123 and 1129 of the Bankruptcy Code (the "**Bankruptcy Sale**"). The sale of the Property shall be on an "as is where is" basis and shall be free and clear of all Liens, claims, encumbrances, lawsuits, and interests to the fullest extent permitted by the Bankruptcy Code.

8

3.      **Consideration**. The consideration exchanged for the Property ("**Consideration**") shall be the sum of **(a)** up to Seventy Million Dollars ($70,000,000.00), or such lesser amount in cash as is provided for in the Confirmation Order (the "**Cash Consideration**"), and **(b)** approximately Four Hundred Million Dollars ($400,000,000.00), plus accruals through the Closing, which is the Credit Bid Consideration and includes full satisfaction of the LADI Claims and the Mechanic's Lien Claims. The Cash Consideration, in part, shall be used to fully pay the DIP Financing Claim in the amount authorized by the Bankruptcy Court.

3.1     Allocation. On or before the date that is five (5) Business Days prior to the Closing Date, Buyer and Seller will use commercially reasonable efforts to agree upon an allocation of the Consideration among **(a)** the Land, the Appurtenances, and the Improvements, **(b)** the Personal Property, and **(c)** the Intangible Property being conveyed to Buyer pursuant to the terms hereof, pursuant to a statement evidencing its allocation to act in accordance with the Allocation Statement in the course of any tax audit, tax litigation or other tax proceeding of the Consideration for Buyer's and Seller's reasonable approval (as approved by the parties, "**Allocation Statement**"), which allocation shall be made in accordance with Section 1060 of the IRC. Buyer and Seller each shall prepare and file on a timely basis the IRC Form 8594, setting forth an allocation of the Consideration pursuant to the Allocation Statement. Not less than ten (10) days prior to filing its respective Form 8594 for the Transaction, each party shall deliver a copy of its Form 8594 to the other party. Buyer and Seller agree to report the Transaction for federal income tax purposes in accordance with the Allocation Statement, and relating to the Transaction. The provisions of this Section 3.1 shall survive the Closing. Notwithstanding the foregoing, in the event the parties are unable to agree on such allocations on or before the date that is five (5) Business Days prior to the Closing Date, then notwithstanding the provisions of the Agreement to the contrary, each party will be permitted to determine and rely upon its own independent allocations for all purposes and the foregoing provisions of this Section 3.1 will no longer apply.

3.2     Deposit. No later than five (5) Business Days after the Effective Date, Buyer shall deliver the Deposit to Escrow Agent. The Deposit shall be nonrefundable except as expressly set forth in this Agreement (including, without limitation, in the event of the failure of a condition precedent as set forth in Section 4.3 below). If the Deposit is not delivered within such period as required above, then Seller may terminate this Agreement by written notice to Buyer and Escrow Agent, in which event the obligations of the parties hereunder shall terminate (and no party hereto shall have any further obligation in connection herewith except under those provisions that expressly survive a termination of this Agreement). The Deposit shall be delivered to the Escrow Agent by wire transfer of immediately available federal funds or by bank or cashier's check drawn on a national bank reasonably satisfactory to Seller. At all times during which amounts so deposited hereunder shall be held by the Escrow Agent, the same shall be held by Escrow Agent as a deposit against the Consideration in accordance with the terms and provisions of this Agreement. Upon written request of Buyer or Seller, Escrow Agent shall place all of any portion of the Deposit received promptly into an interest-bearing account and interest on the Deposit shall accrue to the benefit of the party entitled to said Deposit. At the Closing, the entire Deposit and any interest accrued thereon shall be applied to the Consideration. Notwithstanding the foregoing or anything stated to the contrary in this Agreement, the only circumstances under which Seller shall be entitled to receive the Deposit is at Closing (if the Closing occurs) or Buyer fails to Close when it is obligated to do so under this Agreement as provided in Section 9.2 below.

3.3     Closing Payment. The Consideration, as adjusted by the application of the Deposit and by the prorations and credits specified herein (including but not limited to the Repair Credit, if applicable, and any cure costs required to be paid by Buyer pursuant to the express terms of this Agreement), shall be paid by wire transfer of immediately available federal funds as and when provided in Section 5.1.2(a). The amount to be paid under this Section 3.3 is referred to herein as the "**Closing Payment**".

9

4.    **Conditions Precedent**.

      4.1    Buyer's Conditions Precedent. The obligation of Buyer to acquire the Property as contemplated by this Agreement is subject to satisfaction of all the conditions precedent for the benefit of Buyer set forth in this Section 4.1, any of which may be waived in writing by Buyer on or before the Closing Date.

          4.1.1    Bankruptcy Court Filings and Approvals. The entry by the Bankruptcy Court of **(a)** the Confirmation Order, and **(b)** any additional or supplemental orders seeking the necessary relief to consummate the Transaction, including the Sale Order to the extent the Sale Order is not the Confirmation Order. Seller shall use commercially reasonable efforts to obtain entry of these orders and such other relief from the Bankruptcy Court as may be necessary or appropriate in connection with this Agreement and the consummation of the Transaction and the approvals specified in this Agreement.

          4.1.2    No Stay of Orders. No stays of the Sale Order or Confirmation Order have been issued by any court or sought by any party.

          4.1.3    Transfer Taxes. The written acknowledgement of the County of Los Angeles or a ruling by the Bankruptcy Court that no transfer taxes of any kind (including, without limitation, the Los Angeles Mansion Tax, Measure ULA) are due upon the Closing, which may be the Sale Order or Confirmation Order.

          4.1.4    Performance by Seller. The performance and observance, in all material respects, by Seller of all covenants and agreements of this Agreement to be performed or observed by Seller as set forth in this Agreement, including, without limitation, authorizing the sale of the Property to Buyer and complying with the terms of the Sale Order.

          4.1.5    Representations and Warranties of Seller. The truth, in all material respects, of the representations and warranties of Seller set forth in Sections 7.1, 10.1.1 and 10.13 of this Agreement as of the Effective Date and the Closing Date.

          4.1.6    Issuance of Owner's Policy. At the Closing, the Title Company shall have irrevocably committed to issue to Buyer the Owner's Policy.

          4.1.7    Entitlements. All Entitlements have been procured to the satisfaction of Buyer, in its sole and absolute discretion.

          4.1.8    Construction Contract. The execution and delivery of the Construction Contract.

          4.1.9    Construction Loan. The closing of the Construction Loan shall have occurred on terms acceptable to Buyer in its sole and absolute discretion.

      4.2    Seller's Conditions Precedent. The obligation of Seller to transfer the Property as contemplated by this Agreement is subject to satisfaction of all of the conditions precedent for the benefit of Seller set forth in this Section 4.2, any of which may be waived in writing by Seller on or before the Closing Date.

          4.2.1    Performance by Buyer. The performance and observance, in all material respects, by Buyer of all covenants and agreements of this Agreement to be performed or observed by Buyer as set forth in this Agreement.

4.2.2    Representations and Warranties of Buyer. The truth, in all material respects, of the representations and warranties of Buyer set forth in Sections 7.2, 10.1.1 and 10.13 of this Agreement as of the Effective Date and the Closing Date.

4.3    Failure of a Condition Precedent. If any condition set forth in Section 4.1 and/or Section 4.2 above is not satisfied (or waived in writing) pursuant to the terms of this Agreement, then the party in whose favor such condition exists may terminate this Agreement by providing written notice to the other party on or before the Closing Date, and in connection with any such termination made in accordance with this Section 4.3, Seller and Buyer shall be released from further obligation or liability hereunder (except for those obligations and liabilities that expressly survive such termination), and Buyer shall receive a refund of the Deposit within two (2) Business Days thereafter, automatically, and unconditionally without the need for any concurring instructions from Seller. The Closing shall constitute a waiver of all conditions precedent. Notwithstanding the foregoing, in the event the failure of a condition precedent resulted from a default by a party under the terms of this Agreement, then the party not in default shall continue to have any and all rights, claims, and remedies against the defaulting party in connection with any such default as provided in Section 9.1 or Section 9.2 below, as applicable.

5.    **Closing Procedure**. The Closing shall occur on the Closing Date.

5.1    Closing Deliveries. The parties shall deliver to the Escrow Agent the following:

5.1.1    Seller Deliveries. At least one (1) Business Day prior to the Closing Date, Seller shall deliver (or cause to be delivered) to the Escrow Agent the following:

(a)    A duly executed and acknowledged original grant deed from Seller for the Property (the "**Deed**") in the form of **Exhibit C** attached hereto;

(b)    Two (2) duly executed original counterparts of the bill of sale, assignment and assumption agreement for the Property (a "**Bill of Sale, Assignment and Assumption**") in the form of **Exhibit D** attached hereto;

(c)    An original federal certificate of "non-foreign" status in the form required by Section 1445 of the IRC, duly executed by Seller (or its affiliate, if applicable) and a duly executed original California state Form 593 certificate, both confirming that no withholding is required;

(d)    Unless Buyer and Seller elect to deliver the same outside of escrow, duly executed notices to each of the vendors under any Executory Contract Buyer has elected to assume at Closing as provided in Section 7.4.1(a) of this Agreement ("**Vendor Notices**"), such Vendor Notices to be in such form(s) as are reasonably required by Buyer, which notices Buyer shall, at Buyer's sole cost and expense, mail to each such vendor promptly following the Closing (and Buyer shall provide proof of delivery thereof to Seller) by certified mail, return receipt requested;

(e)    To the extent required by the Title Company, evidence reasonably satisfactory to the Title Company respecting the due organization of Seller and the due authorization and execution by Seller of this Agreement and the documents required to be delivered hereunder by Seller;

(f)    A copy of the executed acknowledgment to the NHD Report;

11

(g)     An owner's affidavit in a form reasonably required by the Title Company in order to issue the Owner's Policy;

(h)     Certified copy of the Sale Order;

(i)     A termination of the existing management agreement, if any, executed by Seller and Seller's property manager;

(j)     Keys and other access control devices for the Property, specifically identified to reflect their respective unit locks, which are in Seller's or its agents' possession (it being understood that such items may be delivered by Seller at the Property or made available for pickup from Seller's property manager on the Closing Date);

(k)     Such additional documents as may be reasonably required by the Escrow Agent and/or Title Company in order to consummate the Transaction (provided the same do not increase in any material respect the costs to, or liability or obligations of, Seller in a manner not otherwise provided for herein).

In addition to the foregoing, Seller shall deliver, or cause to be delivered, to Buyer at the Closing, in each case, to the extent in Seller's possession and control and to the extent assignable under applicable Law: **(i)** all original plans and specifications and architectural renderings for the Improvements for the Property (and to the extent a third-party consent is required, such consent is obtained); and **(ii)** all unexpired warranties and guarantees that Seller has received in connection with any work or services performed with respect to, or equipment installed in, the Property (and to the extent a third-party consent is required, such consent is obtained).

5.1.2   <u>Buyer Deliveries</u>. At least one (1) Business Day prior to the Closing Date (unless a differing time period is provided below), Buyer shall deliver (or cause to be delivered) to the Escrow Agent the following:

(a)     No later than 12:00 p.m. (California time) on the Closing Date, the Closing Payment by wire transfer of immediately available federal funds;

(b)     A duly executed original Bill of Sale, Assignment and Assumption;

(c)     Unless Buyer and Seller elect to deliver the same outside of escrow, duly executed Vendor Notices;

(d)     A duly executed original preliminary change of ownership report for the Property;

(e)     To the extent required by the Title Company, evidence reasonably satisfactory to the Title Company respecting the due organization of Buyer and the due authorization and execution by Buyer of this Agreement and the documents required to be delivered hereunder by Buyer;

(f)     A copy of the executed acknowledgment to the NHD Report; and

(g)     Such additional documents as may be reasonably required by the Escrow Agent and/or the Title Company in order to consummate the Transaction (provided the same do

not increase in any material respect the costs to, or liability or obligations of, Buyer in a manner not otherwise provided for herein).

        5.1.3    <u>Mutual Deliveries</u>. At least two (2) Business Days prior to the Closing Date, Buyer and Seller shall execute and deliver (or cause to be executed and delivered) to the Escrow Agent, the following:

        (a)    As approved by the Plan, a closing statement (the "**Closing Statement**") for Seller or Buyer, as applicable, reflecting the Consideration, the adjustments and prorations required hereunder and the allocation of income and expenses required hereby; and

        (b)    Such transfer tax forms, if any, as are required by state and local authorities.

        5.2    <u>Closing Costs</u>. Seller shall pay: **(a)** 100% of the cost of the CLTA coverage portion of the Owner's Policy, including all costs associated with the cure or removal of any Excluded Liens (but expressly excluding any extended coverage and any endorsements that Buyer may elect to obtain), **(b)** 50% of escrow charges and the Title Company charges, **(c)** 50% of recording fees, and **(d)** all other costs customarily borne by sellers of real property in Los Angeles County, California, provided, however, any and all transfer taxes, if any, shall only be paid by Seller if the sale is pursuant to a plan of reorganization authorized by the Bankruptcy Court (the "**Plan**"). Buyer shall pay: **(i)** 100% of the cost of the extended coverage portion of the Owner's Policy and 100% of the cost of any endorsements requested by Buyer, **(ii)** 50% of escrow charges and the Title Company charges, **(iii)** 50% of recording fees, **(iv)** any and all sales taxes payable in connection with the sale contemplated herein, **(v)** all fees, costs or expenses in connection with Buyer's due diligence reviews and analyses hereunder, and **(vi)** all other costs customarily borne by buyers of real property in Los Angeles County, California. Seller and Buyer shall pay their respective shares of prorations as hereinafter provided. Except as otherwise expressly provided in this Agreement, each party shall pay the fees of its own attorneys, accountants, and other professionals.

        5.3    <u>Prorations and Reimbursements</u>.

        5.3.1    <u>Prorations</u>. The following shall be prorated between Seller and Buyer as of the Closing Date (on the basis of the actual number of days elapsed over the applicable period), with Buyer being responsible for, and entitled to such income and expenses applicable to, the Closing Date. The prorations shall be computed by Escrow Agent as of the Closing Date, and at least two (2) Business Days prior to the Closing Date the parties shall agree upon such prorations.

        (a)    All real estate taxes and assessments on or applicable to the Property for the current tax year shall be prorated as of the Closing Date. If any assessments on the Property are payable in installments, then the installment for the current period of such tax year shall be prorated (with Buyer assuming the obligation to pay any installments due for the period from and after the Closing Date). If there are real estate taxes attributable to the period of time prior to the Closing Date, but that were not assessed prior to the Closing, then Seller shall be responsible to pay or reimburse Buyer for such taxes immediately upon demand by Buyer. Notwithstanding anything to the contrary in this Agreement, the immediately preceding sentence survives the Closing for the period set forth in <u>Section 5.3.2</u>.

        (b)    Any and all fees, costs, and expenses in connection with the Executory Contracts which Buyer has expressly elected to assume, shall be prorated as of the Closing Date; it being understood that any and all expenses, fees, and costs related to any period prior to the Closing shall be paid by Seller prior to the Closing; provided, however any and all cure costs (as defined in

13

11 U.S.C. § 365 of the Code) for any Executory Contracts assumed by Buyer at Closing shall be paid by Buyer at or prior to Closing.

(c)    Buyer shall use commercially reasonable efforts to effectuate the transfer of all utilities to its name as of the Closing Date. Seller shall use commercially reasonable efforts to cause all utility meters to be read as of the Closing Date. All charges for utilities shall be prorated outside of the escrow contemplated herein.

(d)    All other income and expense items related to the Property shall be prorated as of the Closing Date as is customary in the City of Los Angeles, County of Los Angeles, and State of California.

5.3.2    General Provisions.

(a)    In the event any prorations or apportionments made under this Section 5.3 shall prove to be incorrect for any reason, then any party shall be entitled to an adjustment to correct the same. Any item that cannot be finally prorated because of the unavailability of information shall be tentatively prorated on the basis of the best data then available and reprorated when the information is available.

(b)    Notwithstanding anything to the contrary set forth herein, all reprorations contemplated by this Agreement shall be completed within six (6) months after Closing (subject to extension solely as necessary due to the unavailability of final information, but in no event to exceed nine (9) months after Closing).

(c)    The obligations of Seller and Buyer under this Section 5.3 shall survive the Closing for nine (9) months.

(d)    Notwithstanding anything herein to the contrary, Seller hereby expressly waives any and all rights to surcharge the Buyer under Section 506(c) of the United States Bankruptcy Code (11 U.S.C. § 506(c)) for any costs and expenses incurred by Seller in preserving or disposing of the Property; provided, however, that such waiver shall only be effective upon (i) entry of a Final Order approving the Extended DIP Financing with a DIP Budget that provides for the payment of all costs and expenses of administering the Debtor's estate through the Closing Date, including all allowed professional fees and expenses under 11 U.S.C. § 503(b); and (ii) all objections to Debtor's payments under the DIP Financing and the Extended DIP Financing have been resolved or waived. This waiver includes, but is not limited to, any claims for the recovery of costs and expenses related to the maintenance, protection, or enhancement of the value of the Property

6.    **Condemnation or Destruction of Property**. In the event that, after the Effective Date but prior to the Closing Date, either any portion of the Property is taken pursuant to eminent domain proceedings or any of the Improvements are damaged or destroyed by any casualty, Seller shall be required to give Buyer prompt written notice of the same after Seller's actual discovery of the same (a "**Condemnation/Casualty Notice**"), but shall have no obligation to cause any direct or indirect member, partner or owner of Seller to contribute capital to Seller or any other entity, or to repair or replace (or cause to be repaired or replaced) any such damage, destruction or taken property. Seller shall, upon consummation of the Transaction, assign to Buyer all claims of Seller respecting any condemnation or casualty insurance coverage, as applicable, and all condemnation proceeds or proceeds from any such casualty insurance received by Seller on account of any casualty (except to the extent required for repairs by Seller prior to the Closing Date), as applicable and Buyer will receive a credit for any deductible under any insurance policy

14

at Closing. In the event **(x)** the Estimated Repair Cost shall exceed five percent (5%) of the Consideration, or **(y)** the condemnation or casualty materially and adversely affects access to (or parking to the extent required to comply with applicable Laws at) the Property, as reasonably determined by Buyer (in either such case, a "**Material Casualty**"), then Buyer may, at its option, terminate this Agreement by notice to Seller, given on or before the earlier of **(A)** the Closing Date, or **(B)** ten (10) days after Buyer's receipt of the Condemnation/Casualty Notice, whereupon Buyer shall receive a refund of the Deposit within three (3) Business Days after such termination, automatically, and unconditionally without the need for any concurring instructions from Seller, and no party hereto shall have any further obligation in connection herewith except under those provisions that expressly survive a termination of this Agreement. Notwithstanding the foregoing, in no event shall any termination by Buyer operate to waive, limit, impair, or restrict any of Buyer's rights or remedies against Seller arising from any default on the part of Seller under this Agreement, at law or equity. Notwithstanding the foregoing, in the event that, after the Effective Date but prior to the Closing Date, a casualty or condemnation occurs that does not constitute a Material Casualty, Buyer shall receive a credit to the Consideration at Closing in the amount equal to the Estimated Repair Cost ("**Repair Credit**").

7.    **Representations, Warranties and Covenants**.

7.1    Representations and Warranties of Seller. Seller hereby represents and warrants to Buyer as of the Effective Date and as of the Closing Date that:

7.1.1    Due Authority. Subject to the approval of the Bankruptcy Court, this Agreement and all agreements, instruments and documents herein provided to be executed or to be caused to be executed by Seller are duly authorized, executed and delivered by and are binding upon Seller. Seller is a Delaware limited liability company, debtor and debtor-in-possession in chapter 11 bankruptcy, duly organized and validly existing and in good standing under the Laws of such state, and is duly authorized and qualified to do all things required of it under this Agreement. Subject to the approval of the Bankruptcy Court and the express terms of this Agreement, Seller has the capacity and authority to enter into this Agreement and consummate the Transaction without the consent or joinder of any other party (except as otherwise may be set forth in this Agreement).

7.1.2    Sales Tax. Seller, and to Seller's actual knowledge, the receiver or trustee in the Bankruptcy Case, has not made more than two (2) other sales of tangible personal property in the preceding twelve (12) months preceding the Closing, such that the sale of the Property pursuant to this Agreement shall be exempt from all transfer taxes as a casual sale, in accordance with California Revenue and Tax Code §§ 6006.5(a) and 6019.

7.2    Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as of the Effective Date and as of the Closing Date that:

7.2.1    Due Authority. Subject to the approval of the Bankruptcy Court, this Agreement and all agreements, instruments and documents herein provided to be executed or to be caused to be executed by Buyer are duly authorized, executed and delivered by and are binding upon Buyer. Buyer is a Delaware limited liability company, duly organized and validly existing and in good standing under the Laws of the State of Delaware, and is duly authorized and qualified to do all things required of it under this Agreement. Subject to the approval of the Bankruptcy Court and the express terms of this Agreement, Buyer has the capacity and authority to enter into this Agreement and consummate the Transaction without the consent or joinder of any other party (except as otherwise may be set forth in this Agreement).

7.2.2    Insolvency. Buyer has not **(i)** made a general assignment for the benefit of creditors, **(ii)** filed any voluntary petition in bankruptcy or, to its actual knowledge, suffered the filing of

any involuntary petition by Buyer's creditors, **(iii)** to its actual knowledge, suffered the appointment of a receiver to take possession of all, or substantially all, of Buyer's assets, **(iv)** to its actual knowledge, suffered the attachment or other judicial seizure of all, or substantially all, of Buyer's assets, **(v)** admitted in writing its inability to pay its debts as they come due, or **(vi)** made an offer of settlement, extension or composition to its creditors generally.

              7.2.3     <u>Sufficient Funding</u>. Buyer will have sufficient unrestricted cash on hand or other sources of immediately available funds, or readily available financing sources to enable Buyer to make the payments required to be made to Debtor under the terms and conditions of this Agreement.

           7.3     <u>Survival</u>. The representations, warranties and covenants and all other obligations, provisions, and liabilities under this Agreement or any of the Closing Documents (including any cause of action by reason of a breach thereof) shall survive the Closing for a period of one (1) year after the Closing Date, unless otherwise expressly provided in this Agreement.

           7.4     <u>Interim Covenants</u>. Commencing as of the Effective Date and continuing until the Closing Date or the sooner termination of this Agreement, to the extent either party has the right and power to do so, including any rights and powers that may be granted or restricted by orders of the Bankruptcy Court, Seller or Buyer hereby agrees to perform the following covenants applicable to such party:

              7.4.1     <u>Executory Contracts</u>.

              (a)  Within thirty (30) calendar days of the Effective Date, Seller shall deliver to Buyer a schedule of all Executory Contracts (the "**Proposed Contract Assumption Schedule**"), which will include proposed amounts necessary to cure any defaults under such Executory Contracts under Section 365 of the Bankruptcy Code (the "**Cure Amounts**"). Within thirty (30) calendar days of the Effective Date, Seller shall file the Proposed Contract Assumption Schedule with the Bankruptcy Court along with a notice, and serve both on the counterparties of the Executory Contract included in the Proposed Contract Assumption Schedule, that notifies such counterparties that the Buyer may elect to have the Seller assume and assign to Buyer such Executory Contract on the Closing Date and the associated deadlines to object to such assumption and assignment and/or cure amounts. In the event that the Seller identifies any Executory Contracts after its initial filing of the Proposed Contract Assumption Schedule, the Seller shall first notify the Buyer of any additional Executory Contract and associated Cure Amount, and then file the necessary supplement to the Proposed Contract Assumption Schedule with the Court and notify the associated counterparties accordingly. Prior to the Closing Date, Buyer may deliver written notice to Seller identifying which Executory Contract(s), if any, Buyer intends to assume at Closing (the "**Executory Contract Assumption Notice**"); provided, however, notwithstanding the foregoing, the parties acknowledge and agree that the Architect's Agreement will not be assigned by Seller, or assumed by Buyer, at Closing. If Buyer fails to timely deliver such Executory Contract Assumption Notice or such Executory Contract Assumption Notice does not contain a particular Executory Contract, Buyer shall be deemed to have elected <u>not</u> to assume any Executory Contracts or such applicable omitted Executory Contract.

              (b)  Seller shall use commercial reasonable efforts to obtain an order from the Bankruptcy Court authorizing the assumption and assignment of the Executory Contract(s) (the "**Assignment Order**", which Assignment Order may be the Confirmation Order or Sale Order) which Buyer elected to assume in its Executory Contract Assumption Notice. Buyer agrees to **(i)** pay any cure amounts owing under the Executory Contract(s) being assumed, and **(ii)** provide the necessary adequate assurance of future performance required by Section 365 (b)(1) of the Bankruptcy Code; provided, however, notwithstanding anything to the contrary in this Agreement, it shall not be a condition to Closing, or a default by Seller or Buyer hereunder, if an Assignment Order or any third-party consent is not obtained by the Closing Date, and neither Seller nor Buyer shall have any obligation to obtain any third-party consent

185753604.1

to the assumption and assignment of any Executory Contract. Notwithstanding the foregoing or anything stated to the contrary, Seller agrees to pay any cure amounts owing under the Architect's Agreement (and to provide proof of payment thereof to Buyer) prior to or upon the Closing Date (notwithstanding that the Architect's Agreement will not be assigned by Seller, or assumed by Buyer, at Closing) in order to ensure that Buyer has the right to use all plans and specifications and related information provided for under the Architect's Agreement. Other than for the Architect's Agreement (which will not be assigned by Seller, or assumed by Buyer, at Closing), if Buyer elects to assume any other Executory Contract in its Executory Contract Assumption Notice, and the Assignment Order is obtained by the Closing Date, then Buyer shall assume the obligations first accruing and arising from and after the Closing Date under such Executory Contract at Closing pursuant to the Bill of Sale, Assignment and Assumption. Other than for the Architect's Agreement (which will not be assigned by Seller, or assumed by Buyer, at Closing), if **(i)** Buyer elects in the Executory Contract Assumption Notice (or is deemed to have elected) not to assume any Executory Contract, or **(ii)** the Assignment Order is not obtained by the Closing Date, then the parties shall proceed to Closing pursuant to the terms of this Agreement and Seller shall reject such Executory Contract(s) at or prior to the Closing.

(c) Following the Effective Date, without Buyer's written consent (which consent may be withheld in Buyer's sole and absolute discretion), Seller shall not **(i)** enter into additional contracts with architects, contractors or other design or construction professionals or consultants relating to the Property, except to the extent reasonably required or necessary in order to perform work and/or other obligations required by applicable Law, **(ii)** enter into any amendment of any Executory Contracts, or **(iii)** enter into additional service contracts, telecommunications and other facilities leases, utility contracts, maintenance contracts, management contracts, leasing contracts, equipment leases, brokerage and leasing commission agreements or other agreements or rights related to the construction, ownership, use, operation, occupancy, maintenance, repair or development of the Property which would be binding on Buyer from and after Closing. With respect to any request for Buyer's consent pursuant to this Section, if Buyer fails to notify Seller in writing of Buyer's objections within fourteen (14) days of Buyer's receipt of the proposed amendment, termination or new contract terms (and a request for Buyer's approval), then Buyer shall be deemed to have approved the same.

(d) Buyer shall submit a schedule to Seller no less than ten (10) Business Days prior to the Closing Date providing an accounting of the cure costs for the Executory Contracts it has elected to assume (excluding the Architect's Agreement, which will not be assigned by Seller, or assumed by Buyer, at Closing), which schedule shall be reasonably approved by Seller prior to Closing.

7.4.2    Leases. Seller shall not enter into any leases, licenses, or other agreements for the occupancy or use of all or any part of the Property, or any amendments thereto, without the prior written consent of Buyer, which consent may be withheld in Buyer's sole and absolute discretion.

7.4.3    Encumbrances. Except for the DIP Financing Claim, Seller shall not sell, assign, dispose of, or convey any right, title, or interest whatsoever in or to the Property or any portion thereof, or create or permit to attach any lien encumber the Property with any mortgages, deeds of trust, pledges, hypothecations, financing statements, security agreement, easements, or other encumbrances of any kind or nature unless the Parties consent thereto (with no obligation by either Party to do so).

7.4.4    Seller Insurance. Subject to receipt of loan funds from DIP Financing as ordered by the Bankruptcy Court sufficient to pay same, Seller must maintain insurance for the Property in at least such amounts, and with the same deductibles, as are maintained by Seller as of the Effective Date.

7.4.5    Security. Subject to receipt of loan funds from DIP Financing as ordered by the Bankruptcy Court sufficient to pay same, Seller must continue to provide security and monitoring

17

services to the Property consistent with the security and monitoring practices of Seller as of the Effective Date.

7.4.6    Improvements. Seller will not make, nor allow to be made, any modifications, alterations or improvements to the Property, except to the extent required by any governmental authority or as otherwise required by applicable Law.

7.4.7    Title. Commencing from the date of this Agreement and continuing through and including the date which is thirty (30) days after the Effective Date, Buyer shall have the right to approve or disapprove, in its sole and absolute discretion, the title exceptions set forth in the Preliminary Title Report attached hereto as Exhibit G.  In the event Buyer disapproves of any such title exceptions, Buyer shall have the right to terminate this Agreement by providing written notice to Seller on or before the date which is thirty (30) days after the Effective Date, and in connection with any such termination made in accordance with this Section 7.4.7, Seller and Buyer shall be released from further obligation or liability hereunder (except for those obligations and liabilities that expressly survive such termination), and Buyer shall receive a refund of the Deposit within two (2) Business Days thereafter, automatically, and unconditionally without the need for any concurring instructions from Seller.

Seller shall have the unconditional and absolute obligation to cause title to the Land as contemplated on Exhibit A and the Improvements to be conveyed to Buyer free and clear of any and all Excluded Liens and leases, licenses or other occupancy agreements affecting or encumbering the Property or any portion thereof.

7.5    Natural Hazard Disclosure. Within ten (10) days after the Effective Date, Seller shall deliver to Buyer a Natural Hazard Disclosure Report ("**NHD Report**") in a form that complies with the following: the Natural Hazard Disclosure Act, California Government Code Sections 8589.3, 8589.4 and 51183.5, California Public Resources Code Sections 2621.9, 2694 and 4136, and any successor statutes or laws (collectively, the "**NHD Act**"). Buyer acknowledges that Seller retained the services of the Title Company to examine the maps and other information made available to the public by government agencies for the purpose of enabling Seller to fulfill its disclosure obligations with respect to the NHD Act and to prepare the written NHD Report. Seller does not warrant or represent either the accuracy or completeness of the information in the NHD Report, and Buyer shall use same merely as a part in its overall investigation of the Property.

7.6    Future Notices. Seller shall promptly deliver to Buyer any notices it may hereafter receive from time to time that, if not delivered to Buyer, would cause any of Seller's representations and warranties set forth under this Agreement to be untrue if made after Seller's receipt of any such notices.

7.7    Property Documents. Within one (1) Business Day after the Effective Date, Seller shall deliver or make available (via an electronic data room) to Buyer, to the extent in Seller's possession or reasonable control, the Property Documents.

8.    **DISCLAIMER; RELEASE**. AS AN ESSENTIAL INDUCEMENT TO THE PARTIES TO ENTER INTO THIS AGREEMENT, AND AS PART OF THE DETERMINATION OF THE CONSIDERATION, THE PARTIES ACKNOWLEDGE AND AGREE, THAT:

8.1    AS-IS; WHERE-IS. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THE CLOSING DOCUMENTS, AND SUBJECT TO ANY AND ALL REPRESENTATIONS, WARRANTIES, COVENANTS, OBLIGATIONS, AND INDEMNIFICATIONS OF SELLER IN FAVOR OF BUYER UNDER THIS AGREEMENT, THE SALE OF THE PROPERTY HEREUNDER IS AND WILL BE MADE ON AN "AS IS, WHERE IS" BASIS AND WITH ALL

18

FAULTS, AND SELLER WOULD NOT HAVE AGREED TO SELL THE PROPERTY TO BUYER FOR THE CONSIDERATION SET FORTH HEREIN WITHOUT BUYER'S EXPRESS AGREEMENT TO THE FOREGOING. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THE CLOSING DOCUMENTS, AND SUBJECT TO ANY AND ALL REPRESENTATIONS, WARRANTIES, COVENANTS, OBLIGATIONS, AND INDEMNIFICATIONS OF SELLER IN FAVOR OF BUYER UNDER THIS AGREEMENT, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE OF, AS TO, CONCERNING OR WITH RESPECT TO THE PROPERTY OR ANY OTHER MATTER WHATSOEVER, INCLUDING **(A)** THE PRESENT OR FUTURE UTILITY OF THE DEVELOPMENT RIGHTS AND THE ENTITLEMENTS, **(B)** THE PRESENT OR FUTURE PHYSICAL CONDITION OF THE PROPERTY, **(C)** ANY PROPOSED USE OF THE PROPERTY OR ITS DEVELOPMENT POTENTIAL, OR **(D)** THE PROPERTY'S COMPLIANCE WITH LAWS.

8.2 SOPHISTICATION OF THE PARTIES. EACH PARTY IS A SOPHISTICATED ENTITY THAT IS FAMILIAR WITH THE OWNERSHIP, OPERATION AND DEVELOPMENT OF REAL ESTATE PROJECTS SIMILAR TO THE PROPERTY, AND EACH PARTY HAS HAD ADEQUATE OPPORTUNITY PRIOR TO THE EFFECTIVE DATE AND SHALL HAVE AN ADEQUATE OPPORTUNITY TO COMPLETE ALL PHYSICAL AND FINANCIAL EXAMINATIONS RELATING TO THE SALE AND ACQUISITION OF THE PROPERTY HEREUNDER IT DEEMS NECESSARY IN ITS SOLE AND ABSOLUTE DISCRETION. THE PARTIES AGREE TO TRANSACT SOLELY ON THE BASIS OF AND IN RELIANCE UPON SUCH EXAMINATIONS AND THE TITLE INSURANCE PROTECTION AFFORDED BY TITLE INSURANCE AND NOT ON ANY INFORMATION PROVIDED OR TO BE PROVIDED BY THE OTHER PARTY EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THE CLOSING DOCUMENTS, AND SUBJECT TO ANY AND ALL REPRESENTATIONS, WARRANTIES, COVENANTS, OBLIGATIONS, AND INDEMNIFICATIONS MADE IN THIS AGREEMENT.

8.3 RELEASE. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT, THE CLOSING DOCUMENTS, AND SUBJECT TO ANY AND ALL REPRESENTATIONS, WARRANTIES, COVENANTS, AND OBLIGATIONS, EFFECTIVE AS OF THE CLOSING, EACH PARTY HEREBY RELEASES THE OTHER, AND EACH OF ITS OFFICERS, DIRECTORS, EMPLOYEES, MEMBERS, GENERAL CONTRACTORS, SUBCONTRACTORS, CONTRACTORS, AND ATTORNEYS FROM ALL CLAIMS THAT IT OR ANY PARTY CLAIMING BY, THROUGH OR UNDER IT, HAS OR MAY HAVE AS OF CLOSING ARISING FROM OR RELATED TO ANY MATTER OR THING RELATED TO OR IN CONNECTION WITH THE BANKRUPTCY CASE, THE BANKRUPTCY SALE, AND/OR THE PROPERTY, INCLUDING THE PROPERTY INFORMATION, THE ENTITLEMENTS, ANY CONSTRUCTION DEFECTS, ERRORS OR OMISSIONS IN THE DESIGN OR CONSTRUCTION, TITLE CLAIMS, AND ENVIRONMENTAL CONDITIONS, WHETHER KNOWN OR UNKNOWN, OR SUSPECTED OR UNSUSPECTED. NEITHER PARTY SHALL LOOK TO THE OTHER IN CONNECTION WITH THE FOREGOING FOR ANY REDRESS OR RELIEF. THIS RELEASE SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESSED TERMS AND PROVISIONS, WITH RESPECT TO ALL KNOWN, UNKNOWN AND UNSUSPECTED CLAIMS, DAMAGES AND CAUSES OF ACTION AND, IN THAT REGARD, EACH PARTY HEREBY EXPRESSLY WAIVES ALL RIGHTS AND BENEFITS IT MAY NOW HAVE OR HEREAFTER ACQUIRE UNDER CALIFORNIA CIVIL CODE SECTION 1542 WHICH PROVIDES:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR

19

185753604.1

HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**INITIALS OF BUYER**                                    **INITIALS OF SELLER**

NOTWITHSTANDING THE FOREGOING OR ANYTHING STATED TO THE CONTRARY, THE PROVISIONS OF THIS SECTION 8.3 SHALL NOT APPLY TO, AND THE PARTIES DO NOT RELEASE EACH OTHER FROM: **(A)** FRAUD, **(B)** GROSS NEGLIGENCE, **(C)** WILLFUL MISCONDUCT, AND/OR **(D)** ANY CLAIMS OR ACTIONS A PARTY MAY HAVE AGAINST THE OTHER ARISING FROM THIRD-PARTY CLAIMS ASSERTED WITH RESPECT TO ACTIONS OR OCCURRENCES ARISING DURING SUCH PARTY'S PERIOD OF OWNERSHIP.

8.4    SURVIVAL. THIS SECTION 8 SHALL SURVIVE ANY TERMINATION OF THIS AGREEMENT, THE CLOSING, AND THE RECORDATION OF THE DEED AND WILL NOT BE MERGED IN THE DEED.

9.    **Defaults; Termination; Remedies**.

9.1    Default by Seller. In the event Seller fails to Close when it is obligated to do so under this Agreement, then Buyer may, without seeking Bankruptcy Court permission or approval, terminate this Agreement by delivering written notice to Seller, and the Deposit shall be returned to Buyer immediately, automatically, and unconditionally without concurring instructions from Seller (and, only if such failure to Close is due to Seller's default or breach of this Agreement, Seller shall reimburse Buyer for its documented out-of-pocket expenses in connection with this Agreement and the Transaction, not to exceed a cap of 1.5% of the Consideration; provided, however, subject to the provisions of Section 9.5 below, if the Closing fails to occur for any other reason, Seller shall have no obligation to reimburse Buyer for any such expenses). The parties hereby acknowledge and agree that, notwithstanding anything to the contrary in this Agreement, it shall not be a default by Seller if any of the events in Section 9.4 occurs. Notwithstanding anything in this Section 9.1 to the contrary, subject to Section 9.5 below, in the event Seller fails to Close when it is obligated to do so under this Agreement, Buyer shall have the right to commence an action for specific performance, provided that any action for specific performance must be commenced within sixty (60) days after the then-scheduled Closing Date. If Buyer elects to seek specific performance of this Agreement, then as a condition precedent to any suit for specific performance, Buyer shall have on or before the scheduled Closing Date fully performed all of its obligations under Sections 5.1.2 hereof.

9.2    Default by Buyer. IN THE EVENT BUYER FAILS TO CLOSE WHEN IT IS OBLIGATED TO DO SO UNDER THIS AGREEMENT, THEN SELLER MAY TERMINATE THIS AGREEMENT AND THE DEPOSIT SHALL BE DELIVERED TO AND RETAINED BY SELLER AS ITS SOLE AND EXCLUSIVE REMEDY AND AS FULL COMPENSATION AND LIQUIDATED DAMAGES UNDER THIS AGREEMENT FOR SUCH FAILURE TO CLOSE. IN CONNECTION WITH THE FOREGOING, THE PARTIES RECOGNIZE THAT SELLER WILL INCUR EXPENSES IN CONNECTION WITH THE TRANSACTION AND THAT THE PROPERTY MAY BE REMOVED FROM THE MARKET; FURTHER, THAT IT IS EXTREMELY DIFFICULT AND IMPRACTICABLE TO ASCERTAIN THE EXTENT OF DETRIMENT TO SELLER CAUSED BY BUYER'S FAILURE TO PURCHASE THE PROPERTY WHEN IT IS OBLIGATED TO DO SO UNDER THIS AGREEMENT, OR THE AMOUNT OF COMPENSATION SELLER SHOULD RECEIVE AS A RESULT THEREOF, AND THAT THE DEPOSIT REPRESENTS THE PARTIES' BEST CURRENT ESTIMATE OF SUCH DETRIMENT. IF THE CLOSING SHALL NOT OCCUR BY REASON OF BUYER'S FAILURE TO

20

PURCHASE THE PROPERTY WHEN IT IS OBLIGATED TO DO SO UNDER THIS AGREEMENT, THEN THE RETENTION OF THE DEPOSIT SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY UNDER THIS AGREEMENT BY REASON OF SUCH DEFAULT, SUBJECT TO THE PROVISIONS OF THIS AGREEMENT THAT EXPRESSLY SURVIVE A TERMINATION OF THIS AGREEMENT. THE PARTIES HEREBY ACKNOWLEDGE AND AGREE THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, IT SHALL NOT BE A DEFAULT BY BUYER IF ANY OF THE EVENTS IN SECTION 9.4 OCCURS. THIS SECTION 9.2 SHALL SURVIVE ANY TERMINATION OF THIS AGREEMENT. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677.

_____         _____
**BUYER'S INITIALS**                     **SELLER'S INITIALS**

9.3     Closing. If the Closing shall occur, the Deposit shall be applied as a partial payment of the Consideration.

9.4     Mutual Termination. Notwithstanding anything to the contrary set forth herein, this Agreement may be terminated at any time before the Closing Date by either Seller or Buyer if the Bankruptcy Court declines to enter one or more of the Sale Order and/or Confirmation Order for any reason or if a Governmental Entity issues a final, non-appealable ruling or order permanently prohibiting the Transaction, provided, however, that the right to terminate this Agreement pursuant to this Section 9.4 shall not be available to any party whose breach of any of its representations, warranties, covenants or agreements contained herein results in such ruling or order.

In the event of a termination of this Agreement pursuant to this Section 9.4, Seller and Buyer agree that Seller shall promptly (but in any event within two (2) Business Days of such instruction) return to Buyer the Deposit by wire transfer of immediately available funds and the return thereof shall, except as specified in Section 9.1 above, constitute the sole and exclusive remedy of Buyer in the event of a termination hereunder.

9.5     Termination Based on Seller's Fiduciary Duties. Between the Effective Date and entry of the Sale Order (which, for avoidance of doubt, could be the Confirmation Order), the Seller may terminate this Agreement if, upon written advice of its counsel, the Seller determines that pursuing this transaction instead of an alternative transaction with a third-party (an "**Alternative Transaction**") is inconsistent with its fiduciary obligations under law; provided, however, that to terminate under this Section 9.5: **(i)** the Alternative Transaction must provide for **(a)** a Cash purchase price equal to at least the Consideration provided for under this Agreement with payments in full of the LADI Claims and the Mechanic's Liens Claims at the closing of the Alternative Transaction, plus three percent (3%) of the Consideration to be paid to Buyer at the closing of an Alternative Transaction, and **(b)** an outside closing date of forty-five (45) days after the termination of this Agreement under this Section 9.5, which date cannot be extended; **(ii)** the Seller shall pay in full in Cash the DIP Financing Claim, in each case on the date this Agreement is terminated pursuant to this Section 9.5; and **(iii)** the Deposit shall be returned to Buyer immediately, automatically, and unconditionally without concurring instructions from Seller upon termination of this Agreement pursuant to this Section 9.5. For the avoidance of doubt, the Seller may not seek to terminate this Agreement under this Section 9.5 on and after the entry of the Sale Order.

185753604.1

10.      **Miscellaneous**.

10.1      Broker.

10.1.1      Seller represents and warrants to Buyer, and Buyer represents and warrants to Seller, that other than the Broker, neither party hereto has had any contact or dealing regarding the Property, or any communication in connection with the subject matter of the Transaction, through any licensed real estate broker or other person who can claim a right to a commission or finder's fee as a procuring cause of the sale contemplated herein. In the event of a claim for broker's or finder's fee or commissions in connection with the sale contemplated by this Agreement, then Seller shall indemnify, defend and hold harmless Buyer from the same if it shall be based upon any agreement alleged to have been made by Seller, and Buyer shall indemnify, defend and hold harmless Seller from the same if it shall be based upon any agreement alleged to have been made by Buyer.

10.1.2      The provisions of this Section 10.1 shall survive the Closing or any termination of this Agreement.

10.2      Limitation of Liability.

10.2.1      Notwithstanding anything to the contrary contained herein, the direct and indirect shareholders, partners, members, trustees, officers, directors, employees, agents and security holders of the parties are not assuming any, and shall have no, personal liability for any obligations of the parties hereto under this Agreement. In no event shall any party be liable under this Agreement for any consequential, exemplary, special or punitive damages.

10.2.2      The limitations of liability contained in this Section 10.2 are in addition to, and not in limitation of, any limitation on liability provided elsewhere in this Agreement or by Law or by any other contract, agreement or instrument.

10.3      Schedules and Exhibits; Entire Agreement; Amendments. All schedules and exhibits attached and referred to in this Agreement are hereby incorporated herein as if fully set forth in (and shall be deemed to be a part of) this Agreement. This Agreement contains the entire agreement between the parties respecting the matters herein set forth and supersedes all prior agreements between the parties hereto respecting such matters. This Agreement may not be modified or amended except by written agreement signed by both parties.

10.4      Time of the Essence. Time is of the essence of this Agreement. However, whenever action must be taken (including the giving of notice or the delivery of documents) under this Agreement during a certain period of time (or by a particular date) that ends (or occurs) on a non-Business Day, then such period (or date) shall be extended until the immediately following Business Day. As used herein, "**Business Day**" shall mean any calendar day other than a Saturday, Sunday or federal or California state holiday. Unless expressly indicated otherwise, **(a)** all references to time in this Agreement shall be deemed to refer to Pacific time, and **(b)** all time periods provided for under this Agreement shall expire at 5:00 p.m. Pacific time.

10.5      Interpretation. Section headings shall not be used in construing this Agreement. Each party acknowledges that such party and its counsel, after negotiation and consultation, have reviewed and revised this Agreement. As such, the terms of this Agreement shall be fairly construed and the usual rule of construction, to the effect that any ambiguities herein should be resolved against the drafting party, shall not be employed in the interpretation of this Agreement or any amendments, modifications or exhibits hereto or thereto. The words "herein", "hereof", "hereunder", "hereby", "this Agreement" and other similar

references shall be construed to mean and include this Agreement and all amendments and supplements hereto unless the context shall clearly indicate or require otherwise. Whenever the words "including", "include" or "includes" are used in this Agreement, they shall be interpreted in a non-exclusive manner. Except as otherwise indicated, all Schedule, Exhibit and Section references in this Agreement shall be deemed to refer to the Schedules, Exhibits and Sections in this Agreement. Except as otherwise expressly provided herein, any approval or consent provided to be given by a party hereunder must be in writing to be effective and may be given or withheld in the sole and absolute discretion of such party.

10.6    <u>Governing Law and Venue</u>. This Agreement shall be construed and enforced in accordance with the Bankruptcy Code, federal rules of bankruptcy procedure, and, where applicable, the Laws of the State of California. Buyer and Seller hereby irrevocably submit to the jurisdiction of the United States Bankruptcy Court, Central District of California, Los Angeles Division, over any suit, action or proceeding arising out of or relating to this Agreement.

10.7    <u>Successors and Assigns</u>. On or before the Closing Date, Buyer may assign or transfer its rights or obligations under this Agreement (a "**Buyer Assignee**") after giving written notice to Seller; provided, however, that no such assignment shall be effective unless and until such Buyer Assignee assumes in writing all of the transferor's obligations and liabilities hereunder (whenever arising, whether before or after such assumption) and agrees to be bound by this Agreement.  In connection with the foregoing, Buyer agrees to reasonably cooperate with Seller to provide such reasonable evidence and information as Seller may request in connection with its reporting requirements  to the extent required by Law by a Governmental Entity, including, without limitation, the United States bankruptcy trustee.

This Agreement and the terms and provisions hereof shall inure to the benefit of and be binding upon the successors and assigns of the parties.

10.8    <u>Notices</u>. All notices, demands and communications permitted or required to be given hereunder shall be in writing, and shall be delivered **(a)** personally, **(b)** by United States registered or certified mail, postage prepaid, **(c)** by Federal Express or other reputable courier service regularly providing evidence of delivery (with charges paid by the party sending the notice), or **(d)** by a PDF or similar attachment to an e-mail, provided that such e-mail attachment shall be followed within two (2) Business Days by delivery of such notice pursuant to clause (a), (b) or (c) above. Any such notice to a party shall be addressed at the address set forth below (subject to the right of a party to designate a different address for itself by notice similarly given):

|  |  |
|---|---|
| To Seller: | OCEANWIDE PLAZA LLC |
|  | 645 West 9th Street |
|  | Suite 110-625 |
|  | Los Angeles, California 90015 |
|  | Attn:    Mr. Song Feng |
|  | Email:  fengsong@fhkg.com |
|  |  |
| And with copies to: | BRYAN CAVE LEIGHTON PAISNER LLP |
|  | 120 Broadway, Suite 300 |
|  | Santa Monica, California 90401 |
|  | Attn:    Sharon Weiss, Esq. and Vanessa Sunshine, Esq. |
|  | Email: sharon.weiss@bclplaw.com and |
|  | vanessa.sunshine@bclplaw.com |

23

| | |
|---|---|
| To Buyer: | KPC Square, LLC
9 KPC Parkway, Suite 301
Corona, CA 92879
Attn: Bill Thomas
Email: bthomas@GlobalMSO.com |
| And with copies to: | c/o KPC Development Company
9 KPC Parkway, Suite 301
Corona, CA 92879
Attn: Dr. Kali Pradip Chaudhuri
Email: kpcglobal@gmail.com |

c/o KPC Development Company
9 KPC Parkway, Suite 301
Corona, CA 92879
Attn: John D. Petty
Email: john@globalmso.com

Greenberg Traurig
18565 Jamboree Road, Suite 500
Irvine, California 92612
Attn: L. Bruce Fischer, Esq.
Email: fischerb@gtlaw.com

Greenberg Traurig
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Attn: Eric Rowen, Esq.
Email: eric.rowen@gtlaw.com

c/o Lendlease
300 Park Avenue
Suite 1402
New York, New York 10022
Attn: Deputy General Counsel – Investment
Management & Development
Email: generalcounselamericas@lendlease.com

Perkins Coie LLP
110 North Wacker Drive
Suite 3400
Chicago, Illinois 60606
Attn: Daniel G.M. Marre and Sara Chenetz
Email: dmarre@perkinscoie.com and schenetz@perkinscoie.com

Service of any such notice or other communications so made shall be deemed effective on the day of actual delivery (whether accepted or refused); provided, however, that if such actual delivery occurs after 5:00 p.m. local time where received or on a non-Business Day, then such notice or communication so made shall be deemed effective on the first Business Day after the day of actual delivery. The attorneys for any party hereto shall be entitled to provide any notice that a party desires to provide or is required to provide

hereunder. Notice shall not be effective unless it is provided in the manner set forth herein to all persons identified, including all those required to receive copies.

10.9    Third Parties. Except as provided in Section 10.7, nothing in this Agreement, whether expressed or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any person other than the parties hereto and their respective successors and assigns, and nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, and no provision shall give any third parties any right of subrogation or action over or against any party to this Agreement.

10.10    Legal Costs. The parties hereto agree that they shall pay directly any and all legal costs which they have incurred or shall incur on their own behalf in the preparation of this Agreement, all deeds and other agreements pertaining to the Transaction and that such legal costs shall not be part of the closing costs. In addition, if either Buyer or Seller brings any suit or other proceeding, including an arbitration proceeding, with respect to the subject matter or the enforcement of this Agreement, the prevailing party (as determined by the court, agency, arbitrator or other authority before which such suit or proceeding is commenced), in addition to such other relief as may be awarded, shall be entitled to recover reasonable attorneys' fees, expenses and costs of investigation actually incurred. The foregoing includes reasonable attorneys' fees, expenses and costs of investigation (including those incurred in appellate proceedings), reasonable costs incurred in establishing the right to indemnification, or in any action or participation in, or in connection with, any case or proceeding under Chapter 7 or 11 of the Bankruptcy Code (11 United States Code Sections 101 et seq.), or any successor statutes. The provisions of this Section shall survive the Closing or any termination of this Agreement.

10.11    Further Assurances. Each party shall, whenever and as often as it shall be requested so to do by the other, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in the reasonable opinion of the requesting party, in order to carry out the intent and purpose of this Agreement (provided the same do not increase in any material respect the costs to, or liabilities or obligations of, such party in a manner not otherwise provided for herein). The terms of this Section shall survive the Closing or any termination of this Agreement.

10.12    Severability. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by Law.

10.13    Anti-Terrorism Law. Each party shall take any actions that may be required to comply with the terms of the USA Patriot Act of 2001, as amended, any regulations promulgated under the foregoing law, Executive Order No. 13224 on Terrorist Financing, any sanctions program administered by the U.S. Department of Treasury's Office of Foreign Asset Control or Financial Crimes Enforcement Network or any other Laws, regulations or executive orders designed to combat terrorism or money laundering, if applicable, to this Agreement. Each party represents and warrants to the other party that it is not is not acting, directly or indirectly, for, or on behalf of, any group, entity or nation named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism ("**OFAC**")) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or other banned or blocked person, entity, or nation pursuant to any law that is enforced or administered by the Office of Foreign Assets Control and it is not engaging in the Transaction, directly or indirectly, on behalf of, or instigating or facilitating this Transaction, directly or indirectly, on behalf of, any such person, group, entity or nation. Each party further represents and warrants to the other party that it is not engaging

25

in this Transaction, directly or indirectly, in violation of any laws relating to drug trafficking, money laundering or predicate crimes to money laundering. The foregoing representations shall survive the Closing.

10.14    <u>Acceptance of Deed</u>. The recording of the Deed shall be deemed full compliance by Seller of all of Seller's obligations under this Agreement, except for those obligations of Seller which are specifically stated to survive the Closing hereunder and all representations, warranties and indemnities of Seller in favor of Buyer under this Agreement.

10.15    <u>Confidentiality</u>. The terms of the Transaction, the existence of this Agreement and any related purchase discussions, including, without limitation, the Consideration and all other financial terms, shall remain confidential and shall not be disclosed by any party hereto without the written consent of the other except **(a)** in connection with the Bankruptcy Case, **(b)** to such party's directors, officers, partners, employees, legal counsel, accountants, lenders, engineers, architects, brokers, financial advisors and similar professionals and consultants, to the extent such party deems it necessary or appropriate in connection with the Transaction (and such party shall inform each of the foregoing parties of such party's obligations under this Section, secure the agreement of such parties to be bound by the terms hereof, and be liable to the other party for such parties' breaches of the terms hereof), or **(c)** as otherwise required by Law. Nothing in this Section will prevent either Buyer or Seller from disclosing any information otherwise deemed confidential under this paragraph: **(i)** to the extent necessary in order to enforce such party's rights hereunder; **(ii)** to the extent necessary pursuant to any legal requirement, any statutory reporting requirement or any accounting or auditing disclosure requirement applicable to Buyer or Seller; **(iii)** the extent necessary in order for either party to perform its obligations under this Agreement (including, but not limited to, the delivery and recordation of instruments, notices or other documents required hereunder); or **(iv)** to existing or potential investors, participants or assignees in or of the Transaction on a need-to-know basis. Confidential information does not include any information which: **(a)** is already known by the receiving party or its representatives at the time of disclosure; **(b)** is or becomes generally available to the public by acts other than those of the receiving party after receiving it; **(c)** is or has been received lawfully and in good faith by the receiving party from a third party who is not known by the receiving party, after inquiry, to be bound by any obligations of confidentiality relating to such information; or **(d)** has been independently developed by the receiving party, its representatives or any other third party at the time of disclosure. The parties agree that monetary damages would be an insufficient remedy for any breach of the confidentiality and related restrictions of this <u>Section 10.15</u>, and either party shall (in addition to all other remedies available at law or equity) be entitled to seek specific performance and injunctive or other equitable relief in respect of any such breach. The provisions of this Section shall survive any termination of this Agreement or the Closing (as applicable). Except for public disclosures required under Bankruptcy law, neither party will make or allow its representatives, affiliates, contractors and vendors to make, any public announcement, press release or statement regarding this Agreement unless the public announcement, press release or statement is approved in advance by the other party in its sole discretion. In addition, neither party will allow press tours or respond to press inquiries about the Property without obtaining approval from the other party in its sole discretion, except that this restriction does not apply to any press inquiry regarding non-confidential information that is made in a public forum.

10.16    <u>Counterparts; Delivery</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same document. The delivery of an executed counterpart of this Agreement as a PDF or similar attachment to an e-mail shall constitute effective delivery of such counterpart for all purposes with the same force and effect as the delivery of an original, executed counterpart. The parties acknowledge and agree that this Agreement may be executed by electronic signature, which shall be considered as an original signature for all purposes and shall have the same force and effect as an original signature. Without limitation, "electronic signature"

26

shall include electronically scanned and transmitted versions (e.g., via PDF, DocuSign or similar electronic signature technology).

10.17   <u>Effectiveness</u>. In no event shall any draft of this Agreement create any obligation or liability, it being understood that this Agreement shall be effective and binding only when a counterpart hereof has been executed and delivered by each party hereto.

10.18   <u>Authority</u>. Each individual signing this Agreement warrants and represents that he or she has the full authority to execute this Agreement on behalf of the party on whose behalf he or she so signs, that he or she is acting within the scope of such authority, and that this Agreement shall be binding upon and enforceable against the party on whose behalf he or she so signs by virtue of such signature.

10.19   <u>Escrow Provisions</u>.

10.19.1   The parties hereto have mutually requested that the Escrow Agent act as escrow agent for the purpose of holding the Deposit in accordance with the terms of this Agreement.

10.19.2   The Deposit shall be deposited by the Escrow Agent in an interest bearing account approved by Buyer.

10.19.3   The Deposit shall be released or delivered to the party entitled thereto pursuant to this Agreement with reasonable promptness after the Escrow Agent shall have received written notice from Seller and Buyer (except as expressly provided in this Agreement where no joint instructions shall be necessary) authorizing release of the Deposit or the occurrence of the Closing, at which time the Deposit shall be applied to the Consideration.

10.19.4   The Escrow Agent is to be considered as a depository only, shall not be deemed to be a party to any document other than this Agreement, and shall not be responsible or liable in any manner whatsoever for the sufficiency, manner of execution, or validity of any written instructions, certificates or any other documents received by it, nor as to the identity, authority or rights of any persons executing the same. The Escrow Agent shall be entitled to rely at all times on instructions given by Seller and/or Buyer, as the case may be and as required hereunder, without any necessity of verifying the authority therefor.

10.19.5   Intentionally Deleted.

10.19.6   It is further understood by Seller and Buyer that if, as a result of any disagreement between them or adverse demands and claims being made by any of them upon the Escrow Agent, or if the Escrow Agent otherwise shall become involved in litigation with respect to this Agreement, the Escrow Agent may deposit the Deposit with a court of competent jurisdiction and/or in accordance with the order of a court of competent jurisdiction and in any such event, Seller and Buyer agree that they, jointly and severally, are and shall be liable to the Escrow Agent and shall reimburse the Escrow Agent on demand for all costs, expenses and reasonable counsel fees it shall incur or be compelled to pay by reason of any such litigation. Seller and Buyer agree between themselves that each shall be responsible to advance one-half (1/2) of all amounts due the Escrow Agent pursuant to this Section 10.19.6, provided that any such advance by Seller or Buyer as a result of any dispute or litigation between them shall be without prejudice to its right to recover such amount as damages from the breaching party.

10.19.7   Intentionally Deleted.

10.19.8    Upon the satisfaction of the mutual obligations of the parties hereunder, the Escrow Agent shall promptly submit for recording or filing, as applicable, all appropriate instruments delivered to it at the Closing.

10.19.9    The Escrow Agent shall have no right or obligation to approve any amendment to this Agreement unless such amendment purports to affect the Escrow Agent's rights or obligations hereunder.

10.19.10 The Escrow Agent hereby agrees to serve as the "real estate reporting person" (as such term is defined in Section 6045(e) of the Code). This Agreement shall constitute a designation agreement, the name and address of the transferor and transferee of the transaction contemplated hereby as well as the name and address of the Escrow Agent appear in Section 10.8 hereof, and Seller, Buyer and the Escrow Agent agree to retain a copy of this Agreement for a period of four years following the end of the calendar year in which the Closing occurs. The provisions of this Section 10.19 shall survive the Closing.

[Signatures appear on following page.]

IN WITNESS WHEREOF, the parties hereto have executed this Purchase and Sale Agreement as of the Effective Date first above written.

**SELLER:**

**OCEANWIDE PLAZA LLC**,
a Delaware limited liability company

By: _____

Name: _____Bradley Sharp_____

Title: _____Chief Restructuring Officer_____

**BUYER**:

**KPC SQUARE, LLC**,
a Delaware limited liability company

By:_____

Name: _____

Title: Authorized Signatory

185753604.1

IN WITNESS WHEREOF, the parties hereto have executed this Purchase and Sale Agreement as of the Effective Date first above written.

**SELLER:**

**OCEANWIDE PLAZA LLC,**
a Delaware limited liability company

By: _____
Name: _____
Title: _____

**BUYER:**

**KPC SQUARE, LLC,**
a Delaware limited liability company

By: _____
Name: _____
Title: Authorized Signatory

## ACCEPTANCE BY ESCROW AGENT

The Escrow Agent acknowledges receipt of the foregoing Purchase and Sale Agreement and accepts the instructions contained herein.

Dated: _____, 2026

By:    _____

Name:  _____

Title: _____

## LIST OF SCHEDULES AND EXHIBITS

**EXHIBITS**

| A | - | Legal Description of Land |
|---|---|---|
| B-1 | - | List of On-Site Personal Property |
| B-2 | - | List of Off-Site Personal Property |
| B-3 | - | List of Excluded Personal Property |
| C | - | Form of Deed |
| D | - | Form of Bill of Sale, Assignment and Assumption |
| E | - | Entitlements |
| F | - | Mechanic's Lien Claims |
| G | - | Preliminary Title Report |

185753604.1

## Exhibit A
## Description of the Land

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR A D EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

185753604.1

**Exhibit B-1**
**List of On-Site Personal Property**

| Vendor | Trade Scope | Material | Location | GM Update as of 1/15/2026 |
|---|---|---|---|---|
| Bapko Miscellaneous Metals | Miscellaneous Steel | Hotel Canopy, Steel Cladding Support, Retail Elevator Structural Steel & Guardrails | Onsite | Confirmed |
| Kovach Building Enclosures | Podium Façade System | Prodema, Aluminum Composite Material & Aluminum Plates | Onsite | Confirmed |
| Mitsubishi Electric US, Inc. | Elevators and Escalators | Elevator & Escalator Equipment | Onsite | Confirmed |
| Pan Pacific Mechanical LLC | Plumbing | Bathtubs for Residences & Hotel Rooms | Onsite | Confirmed |
| Snaidero USA | T2/T3 Residential Casework | Kitchen & Bath Casework | Onsite | Confirmed |
| YESCO | LED Screens | LED Screen Panels & Related Equipment | Onsite | Confirmed |

185753604.1

**Exhibit B-2**
**List of Off-Site Personal Property**

| Vendor | Trade Scope | Material | Location | GM Update as of 1/15/2026 |
|---|---|---|---|---|
| ACCO | Mechanical | Mechanical Equipment - AHUs, Pumps, Exhaust Fans & WSHPs | Commerce, CA | All equipment disposed of per ACCO VP |
| Addison Pools | Water Features | | 4363 Woodman Ave, Sherman Oaks, CA | Small quantity of pipe left on site per Owner |
| Beaubois Group Inc. T2/T3 | T1 Arch Wood Panels & Millwork | Solid Woods, Wood Veneers, Wood Doors & Frames, Wood Bases, Panel Substrate & Misc. Metals | Quebec, Canada | Disposed per Owner |
| Beaubois Group Inc. T2/T3 | T2/T3 Arch Wood Panels & Millwork | Solid Woods, Wood Veneers, Wood Doors & Frames, Wood Bases, Panel Substrate & Misc. Metals | Quebec, Canada | Disposed per Owner |
| Carrara Marble Company of America, Inc. T2/T3 | T1 Stone Floors, Walls & Countertops | Natural Stone (Marble) & Porcelain Tile | 15939 Phoenix Drive, City of Industry, CA  91765 | Confirmed material still being stored |
| Carrara Marble Company of America, Inc. T2/T3 | T2/T3 Stone Floors, Walls & Countertops | Natural Stone (Marble) | 15939 Phoenix Drive, City of Industry, CA  91765 | Confirmed material still being stored |
| CMF Inc. | Metal Panels | Metal Panels | 1317 W. Grove Ave, Orange, CA | Confirmed material still being stored |
| Continental Marble & Tile Co. T2/T3 | Stone Floors, Walls & Countertops | T2/T3 Countertops | 2460 Anselmo Drive, Corona, CA 92879 | Unknown, subcontractor attorney declined to allow inspection |
| Fetzers' | Architectural Wood Panels & Millwork | Solid Woods, Wood Veneers, Wood Doors & Frames, Wood Bases, Panel Substrate & Misc. Metals | Salt Lake City, UT | Disposed of fabricated casework per Owner, may still be storing veneers |
| Johnson Controls Fire Protection LP aka TYCO aka Simplex Grinnell | Fire Alarm & Security | Fire Alarm & Security | Santa Fe Springs, CA | Project Manager advised that no equipment was ordered, therefore nothing to store |
| Johnson & Turner T2/T3 | Paint | Paint | Los Angeles, CA | Subcontractor was not responsive. Paint has likely reached expiration. |
| Kember Flooring Inc. | T2/T3 Wood Flooring & Acoustic Barriers | Wood Flooring & Underlayment | City of Industry, CA Beaverton, MI | Confirmed small quantity of material stored locally, company says the remainder was shipped to their warehouse in Michigan |

185753604.1

| Vendor | Trade Scope | Material | Location | GM Update as of 1/15/2026 |
|---|---|---|---|---|
| Kovach Building Enclosures | Podium Façade System & Stone | Louver, Columns, Thermal Insulation, Waterproofing, Natural Stone (Granite) via Carrara Marble & Framing via Standard Drywall, Inc. | Chandler, AZ, Ontario, CA, Spain & City of Industry, CA  (Stone) - Carrara | Confirmed still storing façade material |
| Larry Methvin Installations, Inc. T1 | T1 Interior Glazing | Track Systems & Hardware | Upland, CA & Henderson, NV | Confirmed still storing material locally and in Nevada facility |
| Larry Methvin Installations, Inc. T2/T3 | T2/T3 Interior Glazing | Hardware | Upland, CA | Confirmed still storing material locally and in Nevada facility |
| Martin Bros./Marcowall, Inc. | Drywall T2 Including Sprayed Fireproofing | | Gardena, CA | Confirmed material procured for Oceanwide is no longer available |
| The MS Rouse Company, Inc. T1 | T1 Wood Flooring & Acoustic Barriers | Wood & Carpet Flooring & Underlayment | Rancho Dominguez, CA | Confirmed still storing Oceanwide material in local warehouse |
| Rynoclad Technologies Inc. | Architectural Glass Balcony Rails | Glazing | Ontario, CA | Confirmed still storing small quantity of stainless steel for railings |
| SASCO | Electrical & Telecomunication Systems | Electrical & Telecomunication Systems | Fullerton, CA | Still working to confirm status |
| Schuff Steel Co. | Structural Steel | Steel Tubes & Plates | 6251 Paramount Blvd, Long Beach, CA 90805, Phoenix, AZ & Jinhua, China | Confirmed stored material has been disposed |
| Seamless Care Inc. | Specialty Items | Compartments & Cubicles, Lockers & Postal Specialties | Milton & Muncy, PA | Confirmed no longer storing material for Oceanwide project |
| Star Hardware, Inc. T1 | T1 Doors, Frames & Hardware | Metal Frames & Door Hardware | 201 N. Ponderosa Ave, Ontario, CA | Confirmed still storing material for Oceanwide project |
| Star Hardware, Inc. T2/T3 | T2/T3 Doors, Frames & Hardware | Metal Frames, Door Hardware & Wood & Metal Doors | 201 N. Ponderosa Ave, Ontario, CA | Confirmed still storing material for Oceanwide project |
| Stone Etc., Inc. | T1 Hotel Guestrooms and Branded Residences | Natural Stone | 14815 S Broadway, Gardena, CA | Still working to confirm status |
| Tractel Ltd. | Building Maintenance Equipment | Building Cleaning System (Monorail, Arms, Railscarf & Anchors) | Scarborough, Canada | Confirmed still storing equipment for Oceanwide project |
| Troyer Contracting Co., Inc. | Waterproofing | Rubber Asphalt, Protection Sheet, Primer, etc. | Santa Fe Springs, CA | Confirmed no longer storing material for Oceanwide project |

185753604.1

| Vendor | Trade Scope | Material | Location | GM Update as of 1/15/2026 |
|---|---|---|---|---|
| Woodbridge Glass, Inc. I | Podium Façade Glazing | Exterior Glass, RP Aluminum Extrusions, Glass Finwall Metal & Tubes | 14321 Myford Rd, Tustin, CA | Confirmed still storing material for Oceanwide project |
| Woodbridge Glass, Inc. II | Podium Façade Glazing | Exterior Glass, Mullions & Glass Finwall Metal | 14321 Myford Rd, Tustin, CA | Confirmed still storing material for Oceanwide project |
| YESCO | LED Panels & Equipment | Raw Materials for LED Panel Shell and Louver | 1280 Shuying Road Minhang District, Shanghai, 201199 China | Confirmed material in China no longer being stored |

Exhibit B-2

**Exhibit B-3**
**List of Excluded Personal Property**

**NONE.**

**Exhibit C**
**Form of Deed**

[See attached]

Exhibit C

185753604.1

**RECORDED BY:**

_____

WHEN RECORDED MAIL TO:
_____
_____
_____
_____

MAIL TAX STATEMENTS TO:

Same as above.

APN:
Address:

DOCUMENTARY TRANSFER TAX IS $0; THIS CONVEYANCE IS MADE TO EFFECTUATE A PLAN OF REORGANIZATION CONFIRMED UNDER THE FEDERAL BANKRUPTCY CODE (REVENUE & TAXATION) CODE SECTION 11923(a)(1) AND LOS ANGELES MUNICIPAL CODE SECTION 21.9.6)

### GRANT DEED

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, OCEANWIDE PLAZA LLC, a Delaware limited liability company ("**Grantor**") hereby GRANTS to [_____, a _____] ("**Grantee**"), all of that certain real property located in the City of Los Angeles, County of Los Angeles, State of California, as more particularly described in Exhibit A attached hereto and incorporated herein by this reference and made a part hereof (the "**Land**"), together with any and all structures and improvements located thereon, all Grantor's right, title and interest in and to the rights, benefits, privileges, easements, tenements, hereditaments, and appurtenances to the extent belonging or appertaining to the Land or such structures and improvements (collectively, the "**Property**"); subject to the lien of real estate taxes and assessments that are not yet due or payable and those matters identified on Exhibit B attached hereto.

[Signatures on next page]

Exhibit C

185753604.1

IN WITNESS WHEREOF, Grantor has executed this Grant Deed as of the date set forth below, to be made effective upon its recordation in the Official Records of Los Angeles County, California.

Dated: _____, 2026

OCEANWIDE PLAZA LLC,
a Delaware limited liability company


By: _____
Name:_____
Title:_____

Exhibit C

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
COUNTY OF _____ )

On _____, 20__, before me, _____,

personally appeared _____

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____
*Signature of Notary Public*

Exhibit C

## Exhibit A to Grant Deed

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR AND EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

Exhibit C

Exhibit B to Grant Deed

Exceptions

1.
2.
3.

Exhibit C

**Exhibit D**
**Form of Bill of Sale, Assignment and Assumption**

[See attached]

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

This Bill of Sale, Assignment and Assumption Agreement ("**Assignment**") is made and entered into as of _____, 2026 (the "**Effective Date**") by and between OCEANWIDE PLAZA LLC, a Delaware limited liability company ("**Assignor**"), _____, a _____ ("**Assignee**"), with reference to the following facts:

## RECITALS

A.    Assignor is transferring to Assignee the real property, which is more particularly described on **Exhibit A** attached hereto (the "**Property**") and incorporated herein by this reference, pursuant to that certain Purchase and Sale Agreement by and between Assignor and Assignee dated as of _____, 2026 (the "**Purchase Agreement**"). All capitalized terms used herein which are not defined herein shall have the meaning ascribed to such term in the Purchase Agreement.

B.    Assignor desires to assign, convey, transfer and set over unto Assignee all of Assignor's right, title and interest in and to any and all "**Personal Property**," "**Executory Contracts**" and "**Intangible Property**" (each as defined in the Purchase Agreement).

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing Recitals (which Recitals are hereby incorporated into the body of this Assignment), the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    <u>Transfer of Personal Property</u>. Effective on the Effective Date, Assignor hereby sells, transfers, and conveys to Assignee the Personal Property. Notwithstanding anything to the contrary contained herein or in any other Closing Document, Assignor has no obligation to physically deliver to Assignee the Offsite Personal Property, and Assignee assumes sole responsibility to locate, secure, safeguard, and retrieve any and all such Offsite Personal Property.

2.    <u>Assignment of Executory Contracts.</u> Effective on the Effective Date, Assignor hereby sells, transfers, and conveys to Assignee the Executory Contracts that are identified on **Schedule 1** attached hereto.

3.    <u>Assignment of Intangible Property</u>. Effective on the Effective Date, Assignor hereby assigns transfers, grants, delivers and conveys to Assignee the Intangible Property.

4.    <u>Assumption</u>. Effective upon the Effective Date, Assignee hereby accepts the foregoing assignment, transfer and conveyance of the Personal Property, Executory Contracts and Intangible Property, and assumes and agrees to keep, perform and be bound by all of the terms, covenants, conditions and obligations which are required to be performed from and after the Effective Date by Assignor under the Executory Contracts to the extent first arising and applicable to any period after the Effective Date (provided that Buyer shall pay all cure amounts due and owing under the Executory Contracts).

5.    <u>As-Is</u>. Except as otherwise provided for in the Purchase Agreement, the foregoing assignments, transfers, and conveyances of the Personal Property, Executory Contracts and Intangible Property shall be on an "as is where is" basis, without representation, warranty or guaranty by, or recourse against, Assignor of any kind whatsoever; provided however, the assignments, transfers, and conveyances of the Personal Property, Executory Contracts and Intangible Property shall be free and clear of any

Exhibit D

Excluded Liens. Further, any implied warranties of quality, fitness or merchantability are hereby disclaimed.

6.     Attorney's Fees. If either party hereto fails to perform any of its obligations under this Assignment or if a dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Assignment, then the defaulting party or the party not prevailing in such dispute shall pay any and all reasonable costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, reasonable court costs and attorneys' fees and disbursements. Any such attorneys' fees and other expenses incurred by either party in enforcing a judgment in its favor under this Assignment shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Assignment and to survive and not be merged into any such judgment.

7.     Further Assurances. Assignor and Assignee each agree that it will at any time and from time to time after the date hereof, on the written request of the other party, execute, acknowledge and deliver, or cause to be delivered, all such further documents and assurances and perform all such further acts as may be reasonably requested by such requesting party to implement and give effect to this Agreement.

8.     Successors and Assigns. This Assignment shall be binding upon and inure to the benefit of the successors, assignees, personal representatives, heirs and legatees of all the respective parties hereto.

9.     Governing Law. This Assignment shall be governed by, interpreted under, and construed and enforceable in accordance with, the laws of the State of California.

10.     Counterparts and Corporate Authority. This Assignment may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Assignment. The person or persons executing this Assignment on behalf of a party has all corporate power and authority to execute this Assignment on behalf of such party.

11.     No Third Party Beneficiaries. Assignor and Assignee shall not be deemed to be in privity of contract with any other third party nor shall any provision of this Agreement be construed or deemed to create any third party beneficiary status for any third party.

12.     Miscellaneous. Headings in this Assignment are for convenience only and shall not define or limit the provisions hereof. This Assignment shall be construed according to its ordinary meaning and shall not be strictly construed for or against any party hereto. Any modification or waiver of any term of this Assignment, including a modification or waiver of this term, must be in writing signed by the party or parties against whom enforcement of the modification or waiver is sought. Except for the Purchase Agreement and the documents referenced therein, this Assignment constitutes the entire agreement among the parties pertaining to the subject matter hereof and all prior and contemporaneous agreements, representations and understandings, written or oral, express or implied, are hereby superseded and merged into this Assignment. Should any term, provision, covenant or condition of this Assignment be void, invalid or inoperative, the same shall not affect any other term, provision, covenant or condition of this Assignment, but the remainder thereof shall be effective as though such void, invalid or inoperative term, provision, covenant or condition had not been contained herein.

[Signature on following page]

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment the day and year first above written.

**ASSIGNOR**:

OCEANWIDE PLAZA LLC, a Delaware limited liability company

By: _____
Name:
Tile:

[Signatures continued on next page.]

**ASSIGNEE**:

[                    ],
By:_____
Name:
Title: Authorized Signatory

185753604.1

## EXHIBIT A

Legal Description

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGE 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM A PORTION OF SAID LAND, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR AND EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN: 5138-015-045

Exhibit D

185753604.1

Schedule 1

EXECUTORY CONTRACTS

[To be inserted at Closing]

Exhibit D

**"REDACTED AS CONFIDENTIAL"**

Exhibit E

**Exhibit F**
**Mechanic's Lien Claims**

# List of Mechanic's Lien Claims

| Formerly Held By | Recorded Document Number for Lien | Held By as of Effective Date of Settlement[1] | Amount of Lien |
|---|---|---|---|
| ACCO Engineered Systems, Inc. | 20190567238 | DTLA Funding, LLC | $18,898,044 |
| American Stair Corporation | 20201241227 | DTLA Funding, LLC | $731,322 |
| Bapko Metal, Inc. (Divider Beam) | 20190567267 | DTLA Funding, LLC | $173,004 |
| Bapko Metal, Inc. (Main Contract) | 20190708986 | DTLA Funding, LLC | $3,370,650 |
| CMF, Inc. | 20200133070 | DTLA Funding, LLC | $6,377,586 |
| Continental Marble and Tile Co. T1 | 20201656243 | DTLA Funding, LLC | $49,165 |
| Continental Marble and Tile Co. T2 & T3 | 20201656243 | DTLA Funding, LLC | $2,484,161 |
| Enclos Corp. | 20190566151 | DTLA Funding, LLC | $5,950,000 |
| Fetzers Inc. | 20200334576 | DTLA Funding, LLC | $2,001,694 |
| J.T. Wimsatt Contracting Co., Inc. | 20200019597 | DTLA Funding, LLC | $4,049,373 |
| Johnson Controls Fire Protection LP fka SimplexGrinnel LP | 20200681757 | DTLA Funding, LLC | $1,383,546 |
| Kovach LLC dba Kovach Building Enclosures | 20191114551 | DTLA Funding, LLC | $441,108.47 |
| Lendlease (US) Construction Inc. | 20201438216 | Lendlease (US) Construction Inc. | $16,499,256 |
| Martin Brothers/Marcowall Inc. | 21091440932 | DTLA Funding, LLC | $3,871,200 |
| Mitsubishi Electric US, Inc. dba Elevator & Escalator Division | 202001437424 | DTLA Funding, LLC | $4,800,000 |
| Pan-Pacific Mechanical LLC | 20190347895 | DTLA Funding, LLC | $6,775,430 |
| SASCO | 20200114635 | DTLA Funding, LLC | $17,448,380 |
| Schuff Steel Company | 20201324605 | DTLA Funding, LLC | $4,615,000 |
| Sharpe Interior Systems, Inc. | 20200215838 | Lendlease (US) Construction, Inc. | $3,850,000 |
| Standard Drywall, Inc. | 20190435698 | DTLA Funding, LLC | $1,168,118 |
| Star Hardware, Inc. | 20200618966 | DTLA Funding, LLC | $1,596,331 |
| The Nevell Group, Inc. | 20190434839 | DTLA Funding, LLC | $2,900,241.09 |

[1] DTLA Funding, LLC and Lendlease (US) Construction, Inc. represent and warrant that they have no further obligation to the Mechanic's Lien Claims transferors for these assignments of claims.

| Formerly Held By | Recorded Document Number for Lien | Held By as of Effective Date of Settlement[1] | Amount of Lien |
|---|---|---|---|
| Webcor Construction, LP | 20190264429 | Lendlease (US) Construction Inc. | $51,000,000 |
| Woodbridge Glass, Inc. (Subcontract I) | 20190618245 | DTLA Funding, LLC | $3,465,941 |
| Woodbridge Glass, Inc. (Subcontract II) | 20190618246 | DTLA Funding, LLC | $2,269,610 |
| XL Fire Protection Co. | 20190290462 | DTLA Funding, LLC | $1,912,753 |
| YESCO Signs LLC | 20201424299 | DTLA Funding, LLC | $868,215 |
| | | | |
| | | *Lendlease (US) Construction Inc. Subtotal* | *$71,349,256* |
| | | *DTLA Funding, LLC Subtotal* | *$97,600,872.56* |
| | | **TOTAL** | $168,950,128.56 |

## Exhibit G
## Preliminary Title Report

 **Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone:  (213) 488-4300  •  Fax:  (213) 488-4377

Issuing Policies of Chicago Title Insurance Company

ORDER NO.:  **00153470-994-LT2-DB**

Escrow/Customer Phone:  **(213) 488-4300**

Fidelity National Title Group
4 Executive Circle, Suite 270
Irvine, CA 92614
ATTN:   Laura Vasey and John Klein
Email:  Laura.Vasey@fnf.com; John.Klein@fnf.com
REF:  Claim #667216

Title Officer:  Dave Balassi (LA/Comm)
Title Officer Phone:  (213) 488-4394
Title Officer Fax:  (213) 488-4360
Title Officer Email:  TeamX49@ctt.com

PROPERTY:   **1101 S. FLOWER STREET, LOS ANGELES, CA**

*This Preliminary Report and all amendments thereto is confidential under the Tripartite Attorney-Client and Attorney Work-Product privileges. Notwithstanding anything to the contrary stated herein, this Preliminary Report is not issued in connection with any application for title insurance, is not an abstract of or statement or representation of the state of title, without any liability for any errors or omissions, and is not issued in contemplation of or to be used in connection with issuance of any preliminary report, title insurance policy, or other product*

### PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein,* **Chicago Title Company** *hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida corporation.*

*Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.*

*It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.*

Chicago Title Company

By: _____
Authorized Signature

 **Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

## PRELIMINARY REPORT

**EFFECTIVE DATE:**          **January 9, 2026 at 7:30 a.m.**

**ORDER NO.: 00153470-994-LT2-DB**

The form of policy or policies of title insurance contemplated by this report is:

> *This Preliminary Report and all amendments thereto is confidential under the Tripartite Attorney-Client and Attorney Work-Product privileges. Notwithstanding anything to the contrary stated herein, this Preliminary Report is not issued in connection with any application for title insurance, is not an abstract of or statement or representation of the state of title, without any liability for any errors or omissions, and is not issued in contemplation of or to be used in connection with issuance of any preliminary report, title insurance policy, or other product*

1.   THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A Fee Estate**

2.   TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS <u>VESTED IN:</u>

**Oceanwide Plaza LLC, a Delaware limited liability company, formerly known on Tohigh Construction Investment, LLC, a Delaware limited liability company, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

| | |
|---|---|
| **Name of Debtor:** | **Oceanwide Plaza LLC** |
| **Date of Filing:** | **February 13, 2024** |
| **U.S. District Court:** | **Central District of California** |
| **Case No:** | **2:24-bk-11057-DS** |

3.   THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

**See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT
YOUR REFERENCE:  Claim #667216

Chicago Title Company
ORDER NO.:  00153470-994-LT2-DB

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 1 OF TRACT NO. 69414, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1393, PAGES 63 TO 66 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, AND RECORDED ON OCTOBER 20, 2016 AS INSTRUMENT NO. 2016-1293895 OF THE OFFICIAL RECORDS.

EXCEPTING THEREFROM THAT PORTION OF SAID LAND LYING WITHIN LOTS 1 THROUGH 6, INCLUSIVE, OF CARSON AND CURRIER'S SUBDIVISION OF BLOCK 89 OF ORB'S SURVEY, AS PER MAP RECORDED IN BOOK 55, PAGE 3 OF MISCELLANEOUS RECORDS, ALL OIL, GAS AND MINERAL SUBSTANCES, TOGETHER WITH THE RIGHT TO EXPLORE FOR AND EXTRACT SUCH SUBSTANCES PROVIDED THAT THE SURFACE OPENING OF ANY WELL, HOLE, SHAFT, OR OTHER MEANS OF EXPLORING FOR, REACHING, OR EXTRACTING SUCH SUBSTANCES SHALL NOT BE LOCATED WITHIN THE CENTRAL BUSINESS DISTRICT REDEVELOPMENT PROJECT AND SHALL NOT PENETRATE ANY PART OR PORTION OF SAID PROJECT AREA WITHIN 500 FEET OF THE SURFACE THEREOF, AS EXCEPTED AND RESERVED IN THAT CERTAIN ORDER OF CONDEMNATION RECORDED MAY 22, 2001, AS INSTRUMENT NO. 01-876760, OFFICIAL RECORDS.

APN:  **5138-015-045**

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO
THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A.    Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes
to be levied for the fiscal year 2026-2027.

B.    Property taxes, including any personal property taxes and any assessments collected with taxes, are as
follows:

| | |
|---|---|
| Tax Identification No.: | 5138-015-045 |
| Fiscal Year: | 2025-2026 |
| 1st Installment: | $2,802,295.90, Unpaid (Delinquent after December 10) |
| Penalty: | $280,229.59 |
| 2nd Installment: | $2,802,295.89 Unpaid (Delinquent after April 10) |
| Penalty and Cost: | $280,239.58 |
| Homeowners Exemption: | $-None- |
| Code Area: | 13264 |

C.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year
2020-2021. Amounts to redeem for the fiscal year (and subsequent years, if any) are:

| | |
|---|---|
| Amount: | $33,024,507.94, by January 31, 2026 |
| Amount: | $33,382,438.43, by February 27, 2026 |
| Amount: | $33,740,368.92, by March 31, 2026 |
| Amount: | $34,098,299.41, by April 30, 2026 |

D.    The herein described property lies within the boundaries of a Mello-Roos Community Facilities District
(CFD) as follows:

| | |
|---|---|
| CFD No: | 9 (Downtown Streetcar) |
| Disclosed by: | Notice of Special Tax Lien |
| Recording Date: | January 29, 2013 |
| Recording No.: | 2013-0143515, of Official Records |

E.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the
provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4,
respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title
to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring
prior to Date of Policy.

1.    Water rights, claims or title to water, whether or not disclosed by the public records.

2.    An oil and gas lease for the term therein provided with certain covenants, conditions and provisions,
together with easements, if any, as set forth therein.

| | |
|---|---|
| Lessor: | Martha Peck and Samuel Peck, as co-executors of the Estate of Edwin J. Miller, deceased |
| Lessee: | Occidental Petroleum Corporation, a corporation |
| Recording Date: | December 24, 1965 |
| Recording No: | 2669 in Book M-2077 Page 61, of Official Records |

No insurance is made as to the present ownership of the leasehold created by said lease, nor as to other
matters affecting the rights or interests of the lessor or lessee in said lease.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 5

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE:  Claim #667216

Chicago Title Company
ORDER NO.:  00153470-994-LT2-DB

**EXCEPTIONS**
**(Continued)**

3.  An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

| | |
|---|---|
| Lessor: | Bank of America National Trust and Savings Association |
| Lessee: | Standard Oil Company of California, a corporation |
| Recording Date: | August 28, 1967 |
| Recording No: | 2226, of Official Records |

No insurance is made as to the present ownership of the leasehold created by said lease, nor as to other matters affecting the rights or interests of the lessor or lessee in said lease.

4.  An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

| | |
|---|---|
| Lessor: | Emma Bostick |
| Lessee: | Standard Oil Company of California, a corporation |
| Recording Date: | November 8, 1965 |
| Recording No: | 2557 in Book M-2036 Page 175, of Official Records |

No insurance is made as to the present ownership of the leasehold created by said lease, nor as to other matters affecting the rights or interests of the lessor or lessee in said lease.

5.  An oil and gas lease for the term therein provided with certain covenants, conditions and provisions, together with easements, if any, as set forth therein.

| | |
|---|---|
| Lessor: | Richfield Oil Corporation |
| Lessee: | Standard Oil Company of California, a corporation |
| Recording Date: | October 16, 1963 |
| Recording No: | 5455 in Book M-1369 Page 358, of Official Records |

No insurance is made as to the present ownership of the leasehold created by said lease, nor as to other matters affecting the rights or interests of the lessor or lessee in said lease.

6.  A notice that said Land is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the redevelopment plan) as disclosed by a document

| | |
|---|---|
| Redevelopment Agency: | The Central Business District Redevelopment Project Area |
| Recording Date: | July 22, 1975 |
| Recording No: | 3675 of Official Records |
| and Recording Date: | July 30, 1975 |
| and Recording No: | 3868, of Official Records |

185753604.1

## EXCEPTIONS
### (Continued)

7. The terms and provisions contained in the document entitled Disposition and Development Agreement (as assigned, amended and/or memorialized shall hereafter be referred to as the D.D.A.) dated as of October 31, 1997 and executed by and among the Community Redevelopment Agency of the City of Los Angeles (Agency), the City of Los Angeles (City) and L.A. Arena Development Company, LLC (Development Co.) as assigned, amended and/or memorialized as follows:

As assigned by Development Co. to L.A. Arena Company, Inc. (Land Co.) pursuant to that certain Assignment and Assumption Agreement by and between Development Co. and Land Co. dated as of March 23, 1998;

As further partially assigned to L.A. Arena Land Company, LLC (Arena Co.) pursuant to that certain Assignment and Partial Assumption Agreement by and between Land Co. and Arena Co. dated as of March 26, 1998;

As amended by that certain First Implementation to Disposition and Development Agreement dated March 26, 1998;

As disclosed by that certain Memorandum of Disposition and Development Agreement dated March 26, 1998 and recorded March 27, 1998 as Instrument No. 98-501504 of Official Records;

As amended by that certain Second Implementation to Disposition and Development Agreement dated October 15, 1998;

As amended by that certain Developer Declaration of Covenant and Memorandum of Disposition and Development Agreement executed February 1, 1999 and recorded March 11, 1999 as Instrument No. 99-407370, of Official Records;

And as further partially assigned by that certain Assignment and Quitclaim Deed by and between Area Co. and L.A. Arena Funding, LLC dated April 17, 1999;

As disclosed by a recorded Agency Declaration of Covenant and Memorandum of Disposition and Development Agreement and Reciprocal Easement and Environmental Restriction Agreement recorded June 25, 1999 as Instrument No. 99-1170360, of Official Records;

As amended by that certain Third Implementation to Disposition and Development Agreement dated March 1, 2002;

As amended by a recorded Agency Declaration of Covenant and Memorandum of Disposition and Development Agreement and Reciprocal Easement and Environmental Restriction Agreement recorded June 28, 2002 as Instrument No. 02-1467623, of Official Records;

As amended by that certain Fourth Implementation to Disposition and Development Agreement dated September 1, 2005 and disclosed by a Memorandum of Fourth Implementation Agreement to Disposition and Development Agreement recorded December 19, 2005 as Instrument No. 05-3119739, of Official Records;

**EXCEPTIONS**
**(Continued)**

The land described herein has been released from all obligations set forth in the DDA except for those certain assigned obligations as defined and set forth in that certain Partial Assignment and Assumption Agreement (DDA), dated August 11, 2006 and executed by and among L.A. Arena Land Company, Inc., Flower Holdings, LLC and JM Fig LLC, MG Fig LLC, HS Fig LLC and CLAD Resources Borrower, LLC, and recorded on August 15, 2006 as Instrument No. 06-1810547, of Official Records

And as partially assigned by that certain Assignment and Assumption Agreement, dated December 26, 2013, by and between Fig Central Fee Owner LLC and TOHIGH CONSTRUCTION INVESTMENT, LLC, recorded December 26, 2013 as Instrument No. 2013-1804584 of Official Records, upon the terms and provisions contained therein.

8.   Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:      June 25, 1999
Recording No:        99-1170361, of Official Records

9.   Matters contained in that certain document

Entitled:            Agreement Regarding the Recordation of Technical Documents
Recording Date:      December 21, 1999
Recording No:        99-2348186, of Official Records

Reference is hereby made to said document for full particulars.

10.  Matters contained in that certain document

Recording Date:      May 10, 2001
Recording No:        01-806611, of Official Records

Reference is hereby made to said document for full particulars.

Said matter affects that portion of said land lying within realigned 12th Street as shown upon the map of Tract No. 53384 as per map recorded in Book 1279, Pages 4 to 19 inclusive of maps.

11.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

Recording Date:      June 28, 2002
Recording No:        02-1467622, of Official Records

CLTA Preliminary Report Form – Modified (11/17/06)                                              Page 8

## EXCEPTIONS
### (Continued)

12.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording Nos      | 02-1701301 and 02-1701302, both of Official Records  |

Reference is hereby made to said document for full particulars.

13.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording Nos:     | 02-1701303 and 02-1701308, both of Official Records  |

Reference is hereby made to said document for full particulars.

14.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording Nos:     | 02-1701304 and 02-1701307, both of Official Records  |

Reference is hereby made to said document for full particulars.

15.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording Nos:     | 02-1701305 and 02-1701310, of Official Records       |

Reference is hereby made to said document for full particulars.

16.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording Nos:     | 02-1701306 and 02-1701309, all of Official Records   |

Reference is hereby made to said document for full particulars.

17.   Matters contained in that certain document

|                    |                                                      |
|--------------------|------------------------------------------------------|
| Entitled:          | Covenant and Agreement                               |
| Recording Date:    | July 22, 2002                                        |
| Recording No:      | 02-1701311, of Official Records                      |

Reference is hereby made to said document for full particulars.

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
## (Continued)

18.    Matters contained in that certain document

Entitled:             Covenant and Agreement
Recording Date:       July 23, 2002
Recording Nos:        02-1714409 and 02-1714411, both of Official Records

Reference is hereby made to said document for full particulars.

19.    Matters contained in that certain document

Entitled:             Covenant and Agreement
Recording Date:       July 23, 2002
Recording Nos:        02-1714410 and 02-1714412, both of Official Records

Reference is hereby made to said document for full particulars.

20.    Matters contained in that certain document

Entitled:             Covenant and Agreement
Recording Date:       August 23, 2002
Recording No:         02-1991304, of Official Records

Reference is hereby made to said document for full particulars.

21.    Matters contained in that certain document

Entitled:             Covenant and Agreement
Recording Date:       August 23, 2002
Recording No:         02-1991306, of Official Records

Reference is hereby made to said document for full particulars.

22.    Matters contained in that certain document

Entitled:             Covenant and Agreement
Recording Date:       August 23, 2002
Recording No:         02-1991307, of Official Records

Reference is hereby made to said document for full particulars.

23.    Matters contained in that certain document

Recording Date:       October 11, 2002
Recording No:         02-2405121, of Official Records

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 10

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

24.  Matters contained in the dedication statement or elsewhere on the tract or parcel map

Map of:          Tract No. 53384 as per map recorded in Book 1279, Pages 4 to 19 inclusive of
                 maps.
Provisions:      We hereby state that we agree that water and power service will not be supplied
                 to any lot or customer in the tract including airspace lots and common areas until
                 water and power utility easements meeting the approval of the Los Angeles
                 Department of Water and Power have been recorded. The utility easements must
                 provide, at a minimum, satisfactory access from LADWP-provided service points
                 in public ways to each individual lot. LADWP reserves the right to approve the
                 utility easements on a lot-by-lot basis. Compliance with this covenant shall be
                 evidenced by recordation and acceptance of the utility easement on a lot-by-lot
                 basis or by recordation of an instrument terminating the covenant with respect to
                 any lot which LADWP determines does not require a utility easement.

25.  The terms, conditions and provisions of that certain waiver of damages, indemnification agreement, and
right of ingress and egress to run with the land,

Recording Date:      May 12, 2004
Recording No:        04-1205413, of Official Records

Reference is hereby made to said document for full particulars.

26.  Covenants, conditions, terms and provisions contained in that certain document

Entitled:            Third Amended and Restated Development Agreement
Dated:               April 2, 2008
Recording Date:      April 10, 2008
Recording No:        2008-0625541, of Official Records

Reference is hereby made to said document for full particulars.

The terms and provisions of that certain Partial Assignment and Assumption Agreement (Development
Agreement), dated August 11, 2006 and executed by and among L.A. Arena Land Company, Inc., Flower
Holdings, LLC and JM Fig LLC, MG Fig LLC, HS Fig LLC and CLAD Resources Borrower, LLC,

Recording Date:      August 15, 2006
Recording No:        06-1810548, of Official Records

And as partially assigned by that certain Assignment and Assumption Agreement, dated
December 26, 2013, by and between Fig Central Fee Owner LLC and Tohigh Construction Investment,
LLC,

Recording Date:      December 26, 2013
Recording No:        2013-1804583 of Official Records

CLTA Preliminary Report Form – Modified (11/17/06)

Page 11

185753604.1

**EXCEPTIONS**
**(Continued)**

27.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Memorandum of Retail Leasing Restrictions |
| Dated: | August 11, 2006 |
| Recording Date: | August 15, 2006 |
| Recording No: | 06-1810550, of Official Records |

Reference is hereby made to said document for full particulars.

28.     A notice that said Land is included within a project area of the Redevelopment Agency shown below, and that proceedings for the redevelopment of said project have been instituted under the Redevelopment Law (such redevelopment to proceed only after the adoption of the redevelopment plan) as disclosed by a document

| | |
|---|---|
| Redevelopment Agency: | The City Center Redevelopment Project Area |
| Recording Date: | November 30, 2007 |
| Recording No: | 07-2636449, of Official Records |

29.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Certificate of Completion (Arena Disposition and Development Agreement and Hotel Development Agreement) |
| Recording Date: | February 3, 2012 |
| Recording No: | 12-201241, of Official Records |

Reference is hereby made to said document for full particulars.

30.     This exception has been intentionally deleted.

31.     Covenants, conditions and restrictions set out in the Grant Deed,

| | |
|---|---|
| Dated: | December 26, 2013 |
| Executed by: | FIG Central Fee Owner LLC |
| Recording Date: | December 26, 2013 |
| Recording No: | 2013-1804582, of Official Records. |

Reference is hereby made to said document for full particulars.

32.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | November 18, 2014 |
| Recording No: | 2014-1235326, of Official Records |

Reference is hereby made to said document for full particulars.

33.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | November 18, 2014 |
| Recording No: | 2014-1235327, of Official Records |

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)                                                      Page 12

## EXCEPTIONS
## (Continued)

33A.  Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | March 11, 2015 |
| Recording No: | 2015-0266504, of Official Records |

Reference is hereby made to said document for full particulars.

33B.  Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | March 11, 2015 |
| Recording No: | 2015-0266505, of Official Records |

Reference is hereby made to said document for full particulars.

33C.  Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | July 14, 2015 |
| Recording No: | 2015-0845658, of Official Records |

Reference is hereby made to said document for full particulars.

34.  A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $325,000,000.00 |
| Dated: | May 28, 2015 |
| Trustor: | Oceanwide Plaza LLC, a Delaware limited liability company, formerly known as Tohigh Construction Investment, LLC, a Delaware limited liability company |
| Trustee: | Chicago Title Insurance Company |
| Beneficiary: | L. A. Downtown Investment LP, a California limited partnership |
| Recording Date: | July 20, 2015 |
| Recording No: | 2015-0874467 of Official Records |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Old Republic Title Company |
| Recording Date: | May 18, 2023 |
| Recording No: | 2023-324296 of Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Old Republic Title Company, as Trustee |
| Recording Date: | May 18, 2023 |
| Recording No: | 2023-324297 of Official Records |

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
## (Continued)

A Notice

| | |
|---|---|
| Entitled: | Notice of Rescission of Notice of Default |
| For: | To rescind, cancel and withdraw Notice of Default recorded as Instrument No. 2023-324297 of Official Records |
| Executed by: | Old Republic Title Company, as Trustee |
| Recording Date: | May 18, 2023 |
| Recording No: | 2023-325901 of Official Records |

Reference is hereby made to said document for full particulars.

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Old Republic Title Company as Trustee |
| Recording Date: | May 18, 2023 |
| Recording No: | 2023-326068 of Official Records |

An Assignment of Deed of Trust

| | |
|---|---|
| Assignor: | L.A. Downtown Investment, LP, a California limited liability company (*sic*) |
| Assignee: | KPC Plaza, LLC, a California limited liability company |
| Recording Date: | November 3, 2025 |
| Recording No: | 2025-761978 of Official Records |

A Collateral Assignment of Promissory Note, Deed of Trust, and Loan Documents

| | |
|---|---|
| Assignor: | KPC Plaza, LLC, a California limited liability company |
| Assignee: | L.A. Downtown Investment LP, a California limited partnership |
| Recording Date: | November 3, 2025 |
| Recording No: | 2025-761979 of Official Records |

35. Matters contained in that certain document

| | |
|---|---|
| Entitled: | Covenant and Agreement |
| Recording Date: | January 28, 2016 |
| Recording No: | 2016-100886, of Official Records |

Reference is hereby made to said document for full particulars.

36. Matters contained in that certain document

| | |
|---|---|
| Entitled: | Waiver of Damages, Indemnification Agreement and Right of Ingress and Egress |
| Recording Date: | February 18, 2016 |
| Recording No: | 2016-179155, of Official Records |

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 14

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE:  Claim #667216

Chicago Title Company
ORDER NO.:  00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

37.   Matters contained in that certain document

Entitled:            Third Amendment to Third Amended and Restated Development Agreement
Recording Date:      February 23, 2016
Recording No:        2016-194939, of Official Records

Reference is hereby made to said document for full particulars.

38.   Matters contained in that certain document

Entitled:            Covenant and Agreement
Recording Date:      April 21, 2016
Recording No:        2016-448917, of Official Records

Reference is hereby made to said document for full particulars.

39.   Matters contained in that certain document

Entitled:            Covenant and Agreement
Recording Date:      April 21, 2016
Recording No:        2016-448918, of Official Records

Reference is hereby made to said document for full particulars.

40.   Matters contained in that certain document

Entitled:            Covenant and Agreement
Recording Date:      April 21, 2016
Recording No:        2016-448919, of Official Records

Reference is hereby made to said document for full particulars.

41.   Matters contained in that certain document

Entitled:            Master Covenant and Agreement
Recording Date:      May 20, 2016
Recording No:        2016-582343, of Official Records

Reference is hereby made to said document for full particulars.

42.   Matters contained in that certain document

Entitled:            Master Covenant and Agreement
Recording Date:      May 20, 2016
Recording No:        2016-582344, of Official Records

Reference is hereby made to said document for full particulars.

**EXCEPTIONS**
**(Continued)**

43.     Matters contained in that certain document

| | |
|---|---|
| Entitled: | Master Covenant and Agreement |
| Recording Date: | May 20, 2016 |
| Recording No: | 2016-582345, of Official Records |

Reference is hereby made to said document for full particulars.

44.     Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the recorded map shown below:

| | |
|---|---|
| Map of: | Tract No. 69414 |
| Purpose: | Sidewalk |
| Affects: | That portion of said land as shown on said map. |

45.     This exception has been intentionally deleted.

46.     Any rights, claims or interests that may exist or arise by reason of the following facts disclosed by a map dated January 10, 2007 last revised April 5, 2019 of an ALTA/NSPS Land Title Survey completed May 13, 2016 field updated March 27, 2019 prepared by or under the responsible charge of Vincent Lungari LS 9437, of/for Psomas, Project/Job No. 10CE150100.

     A.     Construction fencing surrounding surveyed property extends onto Figueroa Street, 12th Street, Flower Street and 11th Street.
     B.     Overhangs on the southeast side of surveyed property extend onto Flower Street.
     C.     The 5-story parking structure on surveyed property extends onto an easement for sidewalk as shown or as offered for dedication on Tract 69414.
     D.     The fact that surveyed property is under construction at time of survey.
     E.     Possible encroachments by subsurface footing and or foundations of buildings shown on the map.
     F.     The fact that the following matters set forth in the "Minimum Standard Detail Requirements for ALTA/NSPS Land Title Surveys" jointly established and adopted by ALTA and NSPS in 2016, have not been addressed or complied with by the survey in its present form. The numbers in parentheses refer to the specific standard in the requirements.

          (6. B. iv.) The basis of bearings in the comments differs from the basis of bearings on the drawing.

47.     Any rights of the parties in possession of a portion of, or all of, said Land.

48.     The following special use and design restrictions contained in the unrecorded Agreement of Purchase and Sale dated May 12, 2006, between L.A. Arena Land Company and Flower Holdings, LLC as Seller, and Fig Central, LLC as Buyer, as disclosed to this Company:

     a.     Design review approval rights of Seller and development obligations of Buyer as provided in Article 12 "Buyer's Proposed Development";
     b.     Buyer's obligations regarding affordable housing as provided in Article 14 "Affordable Housing Obligation";
     c.     Buyer's obligations regarding traffic mitigation improvements as provided in Section 15.2.1;
     d.     Buyer's obligations regarding streetscape improvements as provided in Section 15.2.2;
     e.     Signage restrictions as provided in Section 15.2.3

**EXCEPTIONS**
**(Continued)**

49.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Alamillo Rebar, Inc. |
| Amount: | $7,841,572.00 |
| Recording Date: | June 29, 2018 |
| Recording No: | 2018-0656043 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 7, 2019 as Instrument No. 2019-0205350 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Alamillo Rebar, Inc. |
| Amount: | $8,282,161.53 |
| Recording Date: | March 5, 2020 |
| Recording No.: | 2020-0262371 of Official Records |

50.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Covenant and Agreement Regarding Maintenance of Building |
| Recording Date: | August 1, 2017 |
| Recording No: | 2017-0867241 of Official Records |

Reference is hereby made to said document for full particulars.

51.    Matters contained in that certain document

| | |
|---|---|
| Entitled: | Covenant Regarding Hatch Cover |
| Recording Date: | December 20, 2017 |
| Recording No: | 2017-1482547 of Official Records |

Reference is hereby made to said document for full particulars.

52.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Masonry Concepts, Inc. |
| Amount: | $877,471.00 |
| Recording Date: | October 4, 2018 |
| Recording No: | 2018-1015495 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded May 30, 2019 as Instrument No. 2019-0497301 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

## EXCEPTIONS
### (Continued)

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Masonry Concepts, Inc. |
| Amount: | $183,469.00 |
| Recording Date: | August 19, 2020 |
| Recording No: | 2020-0965004 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded February 14, 2022 as Instrument No. 2022-179176 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

53. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Webcor Construction, L.P., d/b/a Webcor Builders |
| Amount: | $52,897,261.00 |
| Recording Date: | December 6, 2018 |
| Recording No: | 2018-1229807 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded February 19, 2019 as Instrument No. 2019-0146199 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said documents for full particulars.

54. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Twining Inc. |
| Amount: | $435,360.96 |
| Recording Date: | January 22, 2019 |
| Recording No: | 2019-0060178 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded February 15, 2019 as Instrument No. 2019-0139244 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

PRELIMINARY REPORT
YOUR REFERENCE:  Claim #667216

Chicago Title Company
ORDER NO.:  00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

55.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | PHL, Inc. d/b/a VNSM |
| Amount: | $80,384.00 |
| Recording Date: | January 22, 2019 |
| Recording No.: | 2019-0061140 of Official Records |

A partial release of the above-described mechanic's lien by PHL, Inc. d/b/a VNSM was recorded February 6, 2019 as Instrument No. 2019-0112993 of Official Records.

The effect of a Release of Claim of Mechanics Lien recorded February 20, 2019 as Instrument No. 2019-0151203 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | PHL, Inc. d/b/a VNSM |
| Amount: | $6,009.20 |
| Recording Date: | January 5, 2021 |
| Recording No.: | 2021-0016511 of Official Records |

Reference is hereby made to said documents for full particulars.

The effect of a Release of Claim of Mechanics Lien recorded June 10, 2022 as Instrument No. 2022-621936 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

56.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Shoring Engineers |
| Amount: | $120,931.81 |
| Recording Date: | January 31, 2019 |
| Recording No.: | 2019-0095704 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 22, 2019 as Instrument No. 2019-0256180 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said documents for full particulars.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Shoring Engineers |
| Amount: | $120,931.81 |
| Recording Date: | June 14, 2019 |
| Recording No. | 2019-0563316 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 19

185753604.1

## EXCEPTIONS
### (Continued)

57.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Structural Shotcrete Systems, Inc. |
| Amount: | $62,111.67 |
| Recording Date: | January 31, 2019 |
| Recording No.: | 2019-0095736 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 19, 2019 as Instrument No. 2019-0244490 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Claim of Mechanics Lien recorded March 19, 2019 as Instrument No. 2019-0244497 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Structural Shotcrete Systems, Inc. |
| Amount: | $62,111.67 |
| Recording Date: | June 14, 2019 |
| Recording No. | 2019-0563271 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded December 8, 2020 as Instrument No. 2020-1603620 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Shoring Engineers, a California corporation; Structural Shotcrete Systems, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; Tohigh Construction Investment, LLC, a limited liability company, Lend Lease (US) Construction, Inc., a Delaware corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV20785 |
| Nature of Action: | Foreclosure of mechanic's lien, quantum meruit, breach of subcontract, account stated, and open book account |
| Recording Date: | October 20, 2020 |
| Recording No: | 2020-1306643 of Official Records |

The effect of a Notice of Withdrawal of Lis Pendens recorded January 26, 2022 as Instrument No. 2022-100393 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2020-1306643 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

Reference is hereby made to said documents for full particulars.

PRELIMINARY REPORT
YOUR REFERENCE:  Claim #667216

Chicago Title Company
ORDER NO.:  00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

58.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Penhall Company. |
| Amount: | $410,973.78 |
| Recording Date: | February 5, 2019 |
| Recording No: | 2019-0106920 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 19, 2019 as Instrument No. 2019-0242986 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

59.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Chute Systems, LLC |
| Amount: | $133,200.00 |
| Recording Date: | February 12, 2019 |
| Recording No: | 2019-0129346 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 11, 2019 as Instrument No. 2019-0215469 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

60.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | XL Fire Protection |
| Amount: | $2,220,983.40 |
| Recording Date: | February 15, 2019 |
| Recording No: | 2019-0140673 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 26, 2019 as Instrument No. 2019-0259569 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

185753604.1

## EXCEPTIONS
### (Continued)

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Webcor Construction, L.P. |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership; Chicago Title Insurance Company, a Florida corporation; Masonry Concepts, Inc., a California corporation; Twining, Inc., a California corporation; PHL, Inc., dba VNSM, a California corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | Lead Case No. 19SCTCV03357; (Related Cases: 19STCV19167, 19STCV22183, 19STCV24347, 19STCV27946, 19STCV28063, 19STCV28703, 19STCV30916, 19STCV32112, 19STCV42283, 20STCV05020, 20STCV01887, 20STCV11335, 20SCTV13074, 20STCV13374, 20STCV13646, 20STCV20642, 20STCV20757, 20STCV20785) |
| Nature of Action: | Breach of Contract, Common Counts and Enforcement of Mechanics Lien or Mechanics Lien Release Bond |
| Recording Date: | December 7, 2023 |
| Recording No: | 2023-854193 of Official Records |

61. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Webcor Construction L.P., d/b/a Webcor Builders |
| Amount: | $49,352,474.00 |
| Recording Date: | February 19, 2019 |
| Recording No: | 2019-0146201 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles County |
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 19STCV03357 |
| Recording Date: | February 19, 2019 |
| Recording No: | 2019-0146200 of Official Records |

Said Notice of Pending Action was amended by that certain Amended Notice of Pendency of Action recorded March 27, 2019 as Instrument No. 2019-0267956 of Official Records.

The effect of a Release of Claim of Mechanics Lien recorded March 26, 2019 as Instrument No. 2019-0264430 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a Notice of Lien (Attachment-Enforcement of Judgment) in favor of W.A. Thomas Co.as a result of a Judgment Default in Case No. RG20061664 of the Superior Court of California, County of Alameda, as filed in Superior Court of California, Los Angeles County Case No. 19STCV03357. Reference is hereby made to said documents for full particulars.

**EXCEPTIONS**
**(Continued)**

62.    A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Masonry Concepts, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | None Stated |
| Nature of Action: | Foreclosure of mechanic's lien |
| Recording Date: | February 19, 2019 |
| Recording No: | 2019-0144375, of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Masonry Concepts, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV02937 |
| Nature of Action: | Foreclosure of mechanic's lien |
| Recording Date: | February 27, 2019 |
| Recording No: | 2019-0172949 of Official Records |

The effect of a Notice of Withdrawal of Lis Pendens recorded April 10, 2019 as Instrument No. 2019-0318317 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2019-0144375, of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

The effect of a Notice of Withdrawal of Lis Pendens recorded May 21, 2019 as Instrument No. 2019-0464606 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2019-0172949 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

63.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Coast Insulation Contractors Inc. d/b/a Coast Building Products |
| Amount: | $52,286.60 |
| Recording Date: | February 27, 2019 |
| Recording No: | 2019-0171480 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 14, 2019 as Instrument No. 2019-0231843 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 23

185753604.1

## EXCEPTIONS
## (Continued)

64.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Advanced Cable Solutions Inc. |
| Amount: | $160,407.75 |
| Recording Date: | March 5, 2019 |
| Recording No: | 2019-0194912 of Official Records |

The effect of a Legal Release of Claim of Mechanics Lien recorded September 5, 2019 as Instrument No. 2019-0909675 of Official Records, which purports to release the above-mentioned mechanic's lien. No statement is made hereto as to the effect or validity of said release.

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles County |
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 19STCV19167 |
| Recording Date: | June 21, 2019 |
| Recording No: | 2019-0595772 of Official Records |

The effect of a Withdrawal of Lis Pendens recorded September 5, 2019 as Instrument No. 2019-0909706 of Official Records, which purports to withdraw the above-mentioned Notice of Lis Pendens. No statement is made hereto as to the effect or validity of said withdrawal.

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Advanced Cable Solutions Inc. |
| Amount: | $71,992.45 |
| Recording Date: | June 4, 2020 |
| Recording No: | 2020-0607770 of Official Records |

Reference is hereby made to said documents for full particulars.

The effect of a Legal Release of Claim of Mechanic's Lien recorded February 18, 2021 as Instrument No. 2021-271300 of Official Records, which purports to release the above-mentioned mechanic's lien. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Advanced Cable Solutions, Inc. |
| Defendant: | SimplexGrinnell LP, an unknown entity; SimplexGrinnell LP d/b/a Tyco SimplexGrinnell; Johnson Controls, an unknown entity; Oceanwide Plaza LLC, a Delaware limited liability company , et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV28240 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | September 9, 2020 |
| Recording No: | 2020-1061365 of Official Records |

The effect of a Withdrawal of Lis Pendens recorded February 18, 2021 as Instrument No. 2021-271301 of Official Records, which purports to withdraw the above-mentioned Notice of Lis Pendens. No statement is made hereto as to the effect or validity of said withdrawal.

## EXCEPTIONS
(Continued)

65.    A claim of mechanic's lien or materialman's lien

Claimant:          GGG Demolition, Inc.
Amount:            $4,778.12
Recording Date:    March 6, 2019
Recording No.:     2019-0198976 of Official Records

The effect of a Release of Claim of Mechanics Lien recorded March 26, 2019 as Instrument No. 2019-0264213 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

Claimant:          GGG Demolition, Inc.
Amount:            $60,884.37
Recording Date:    March 6, 2019
Recording No.:     2019-0198994 of Official Records

The effect of a Release of Claim of Mechanics Lien recorded March 26, 2019 as Instrument No. 2019-0264239 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

66.    A claim of mechanic's lien or materialman's lien

Claimant:          Kovach Building Enclosures.
Amount:            $42,833,809.00
Recording Date:    March 7, 2019
Recording No.:     2019-0205484 of Official Records

The effect of a Partial Release of Mechanics Lien recorded March 21, 2019 as Instrument No. 2019-0254357 of Official Records, which purports to partially release the above-mentioned mechanic's lien. No statement is made hereto as to the effective or validity of said release.

The effect of a Release of Claim of Mechanics Lien recorded March 27, 2019 as Instrument No. 2019-0268161of Official Records, which purports to release the above-mentioned mechanic's lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said documents for full particulars.

**EXCEPTIONS**
**(Continued)**

67.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Shaw & Sons, Inc. |
| Amount: | $1,400,150.38 |
| Recording Date: | March 18, 2019 |
| Recording No: | 2019-0236535 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded March 29, 2019 as Instrument No. 2019-0279309 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Shaw & Sons, Inc. |
| Amount: | $1,400,150.38 |
| Recording Date: | June 5, 2019 |
| Recording No. | 2019-0524142 of Official Records |

Reference is hereby made to said document for full particulars.

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles County |
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 19STCV30916 |
| Recording Date: | September 11, 2019 |
| Recording No: | 2019-0938015 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded May 10, 2022 as Instrument No. 2022-509247 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Lis Pendens related to Lead Case No. 19STCV03357 of the Superior Court of California, County of Los Angeles recorded June 17, 2022 as Instrument No. 2022-645714 of Official Records. Reference is hereby made to said documents for full particulars.

68.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Johnson Controls Fire Protection LP |
| Amount: | $1,277,862.03 |
| Recording Date: | March 15, 2019 |
| Recording No: | 2019-0235873 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded April 1, 2019 as Instrument No. 2019-0282545 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said documents for full particulars.

## EXCEPTIONS
### (Continued)

69.   A claim of mechanic's lien or materialman's lien

| Claimant: | Webcor Construction L.P., d/b/a Webcor Builders |
|---|---|
| Amount: | $60,293,186.00 |
| Recording Date: | March 26, 2019 |
| Recording No: | 2019-0264429 of Official Records |

An Amended Notice of Pendency of Action to foreclose said lien

| County: | Los Angeles County |
|---|---|
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 19STCV03357 |
| Recording Date: | March 27, 2019 |
| Recording No: | 2019-0267956 of Official Records |

70.   A claim of mechanic's lien or materialman's lien

| Claimant: | Johnson Controls Fire Protection LP |
|---|---|
| Amount: | $1,277,862.03 |
| Recording Date: | April 1, 2019 |
| Recording No: | 2019-0282546 of Official Records |

The effect of an Amended Mechanic's Lien recorded December 23, 2019 as Instrument No. 2019-1432178 of Official Records, which increases the amount claimed to $1,888,950.68. No statement is made hereto as to the effect or validity of said amended mechanic's lien.

The effect of a claim of mechanic's lien or materialman's lien

| Claimant: | Johnson Controls Fire Protection LP |
|---|---|
| Amount: | $1,888,950.68 |
| Recording Date: | June 23, 2020 |
| Recording No: | 2020-0681757 of Official Records |

A pending court action as disclosed by a recorded notice:

| Plaintiff: | Johnson Controls Fire Protection, LP |
|---|---|
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, LendLease (US) Construction, Inc., a Florida Corporation; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV34840 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | October 5, 2020 |
| Recording No: | 2020-1224644 of Official Records |

71.   A claim of mechanic's lien or materialman's lien

| Claimant: | XL Fire Protection |
|---|---|
| Amount: | $2,220,983.40 |
| Recording Date: | April 3, 2019 |
| Recording No: | 2019-0290462 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)                                          Page 27

**EXCEPTIONS
(Continued)**

72.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Pan-Pacific Mechanical LLC |
| Amount: | $11,101,137.91 |
| Recording Date: | April 18, 2019 |
| Recording No.: | 2019-0347895 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Pan-Pacific Mechanical, LLC |
| Defendant: | Lend Lease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV24347 |
| Nature of Action: | breach of contract, etc. |
| Recording Date: | July 29, 2019 |
| Recording No: | 2019-0746035 of Official Records |

The effect of a Partial Release of Mechanics Lien recorded October 14, 2021 as Instrument No. 2021-1550547 of Official Records, which purports to partially release the above-mentioned mechanics' lien and revise the claimed amount to $7,706,301. No statement is made hereto as to the effect or validity of said release.

73.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Nevell Group Inc. |
| Amount: | $3,873,588.42 |
| Recording Date: | May 3, 2019 |
| Recording No.: | 2019-0434839 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Nevell Group Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, L.A. Downtown Investment LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV27946 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | August 13 2019 |
| Recording No: | 2019-0808340 of Official Records |

**EXCEPTIONS**
**(Continued)**

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Nevell Group Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, L.A. Downtown Investment LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV27946 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | August 19 2019 |
| Recording No: | 2019-0830956 of Official Records |

74. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Standard Drywall, Inc. |
| Amount: | $8,248,460.00 |
| Recording Date: | May 13, 2019 |
| Recording No: | 2019-0435697 of Official Records |

The effect of a Partial Release of Mechanics Lien recorded May 17, 2019 as Instrument No. 2019-0455164 of Official Records, which purports to partially release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Standard Drywall, Inc. |
| Defendant: | Oceanwide Plaza LLC, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV28063 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | August 13, 2019 |
| Recording No: | 2019-0809721 of Official Records |

75. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Standard Drywall, Inc. |
| Amount: | $21,243,544.00 |
| Recording Date: | May 13, 2019 |
| Recording No: | 2019-0435698 of Official Records |

The effect of a Partial Release of Mechanics Lien recorded May 17, 2019 as Instrument No. 2019-0455163 of Official Records, which purports to partially release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a Partial Release of Mechanics Lien recorded May 14, 2020 as Instrument No. 2020-0533552 of Official Records, which purports to partially release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

185753604.1

## EXCEPTIONS
### (Continued)

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Standard Drywall, Inc. |
| Defendant: | Oceanwide Plaza LLC, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV28063 |
| Nature of Action: | foreclosure of mechanic's lien |
| Recording Date: | August 20, 2019 |
| Recording No: | 2019-0836586 of Official Records |

Reference is hereby made to said documents for full particulars.

The effect of a Partial Release of Mechanic's Lien recorded May 10, 2022 as Instrument No. 2022-510081 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $1,308,530.39. No statement is made hereto as to the effect or validity of said release.

76.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Troyer Contracting Company |
| Amount: | $786,261.28 |
| Recording Date: | May 17, 2019 |
| Recording No: | 2019-0452985 of Official Records |

The effect of an Amended Mechanic's Lien recorded August 1, 2019 as Instrument No. 2019-0765520 of Official Records, which increases the amount claimed to $996,594.28. No statement is made hereto as to the effect or validity of said amended mechanic's lien.

The effect of an Amended Mechanic's Lien recorded August 14, 2019 as Instrument No. 2019-0813459 of Official Records, which decreases the amount claimed to $835,932.28. No statement is made hereto as to the effect or validity of said amended mechanic's lien.

The effect of a Partial Release of Mechanics Lien recorded May 6, 2020 as Instrument No. 2020-0499274 of Official Records, which purports to partially release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Troyer Contracting Company, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment LP, a California limited partnership; LendLease (US ) Construction, Inc.; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV28703 |
| Related Case Nos.: | 19STCV03357 (Lead); 19STCV19167; 19STCV24347; 19STCV27946; 19STCV28063; 19STCV30916; 19STCV32112; 19STCV42283 |
| Nature of Action: | breach of contract, quantum meruit, open book account, account stated, enforcement of mechanics lien or mechanics lien release bond |
| Recording Date: | August 28, 2020 |
| Recording No: | 2020-1016387 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 30

Case 2:24-bk-11057-DS   Doc 842   Filed 02/23/26   Entered 02/23/26 12:42:01   Desc
Main Document    Page 192 of 236

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

**EXCEPTIONS
(Continued)**

Reference is hereby made to said documents for full particulars.

The effect of a Release of Mechanics Lien recorded September 1, 2022 as Instrument No. 2022-871385 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0452985 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded September 1, 2022 as Instrument No. 2022-871392 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0765520 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded September 1, 2022 as Instrument No. 2022-871408 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0813459 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded September 23, 2022 as Instrument No. 2022-934236 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0452985 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded September 23, 2022 as Instrument No. 2022-934240 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0813459 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded September 23, 2022 as Instrument No. 2022-934246 of Official Records, which purports to release the above-mentioned mechanics' lien recorded as Instrument No. 2019-0765520 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Notice of Withdrawal of Notice of Pendency of Action (Lis Pendens) recorded October 17, 2022 as Instrument No. 2022-993065 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2020-1016387 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

77.  A claim of mechanic's lien or materialman's lien

Claimant:         Sunshine Supply Company
Amount:           $334,498.17
Recording Date:   May 17, 2019
Recording No:     2019-0456064 of Official Records

The effect of a Release of Claim of Mechanics Lien recorded August 15, 2019 as Instrument No. 2019-0821182 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

## EXCEPTIONS
### (Continued)

The effect of a Release of Claim of Mechanics Lien recorded August 20, 2019 as Instrument No. 2019-0835316 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said documents for full particulars.

78.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Karcher Interior Systems, Inc. |
| Amount: | $397,945.73 |
| Recording Date: | June 12, 2019 |
| Recording No: | 2019-0555690 of Official Records |

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Karcher Interior Systems, Inc. |
| Amount: | $397,945.73 |
| Recording Date: | June 22, 2020 |
| Recording No: | 2020-0677073 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded September 26, 2023 as Instrument No. 2023-0648428 of Official Records , which purports to release the above-mentioned mechanics' lien recorded June 22, 2020 as Instrument No. 2020-0677073 of Official Records. No statement is made hereto as to the effect or validity of said release.

79.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Karcher Interior Systems Inc. |
| Amount: | $261,850.90 |
| Recording Date: | June 12, 2019 |
| Recording No: | 2019-0555691 of Official Records |

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Karcher Interior Systems Inc. |
| Amount: | $261,850.90 |
| Recording Date: | June 22, 2020 |
| Recording No: | 2020-0677083 of Official Records |

## EXCEPTIONS
## (Continued)

80.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Enclos Corp. |
| Amount: | $7,178,930.19 |
| Recording Date: | June 14, 2019 |
| Recording No: | 2019-0566151 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV32112 |
| Recording Date: | September 16, 2019 |
| Recording No: | 2019-0960004 of Official Records |

and Re-Recording Date:September 17, 2019
and Re-Recording No:   2019-0967610 of Official Records

81.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Acco Engineered Systems, Inc. |
| Amount: | $18,898,044.00 |
| Recording Date: | June 14, 2019 |
| Recording No: | 2019-0567238 of Official Records |

82.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Bapko Metal, Inc. |
| Amount: | $5,237,952.07 |
| Recording Date: | June 14, 2019 |
| Recording No: | 2019-0567267 of Official Records |

The effect of an Amended Mechanics Lien recorded July 19, 2019 as Instrument No. 2019-0708986 of Official Records, which purports to amend the above-mentioned mechanics' lien to $5,312,018.07 of the amount claimed. No statement is made hereto as to the effect or validity of said amendment.

The effect of a Partial Release of Claim of Mechanics Lien recorded October 4, 2022 as Instrument No. 2022-0962253, of Official Records which purports to partially release the above-mentioned mechanics' lien, such that the remaining unpaid balance is $5,062,018.07. No statement is made hereto as to the effect or validity of said release.

83.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Bapko Metal, Inc. |
| Amount: | $215,383.92 |
| Recording Date: | June 14, 2019 |
| Recording No: | 2019-0567268 of Official Records |

## EXCEPTIONS
## (Continued)

84.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Sharpe Interior Systems, Inc. |
| Amount: | $4,285,520.00 |
| Recording Date: | June 14, 2019 |
| Recording No: | 2019-0567782 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded October 21, 2019 as Instrument No. 2019-1120390, of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Sharpe Interior Systems, Inc. |
| Amount: | $4,645,520.00 |
| Recording Date: | February 24, 2020 |
| Recording No: | 2020-0215838 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Sharpe Interior Systems, Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV18563 |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | July 14, 2020 |
| Recording No: | 2020-0777272 of Official Records |

Reference is hereby made to said documents for full particulars.

85.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Woodbridge Glass Incorporated |
| Amount: | $2,519,610.40 |
| Recording Date: | June 27, 2019 |
| Recording No: | 2019-0618245 of Official Records |

The effect of a Notice of Extension of Time to Enforce Mechanic's Lien recorded October 24, 2019 as Instrument No. 2019-1144044 of Official Records.

The effect of a Notice of Second Extension of Time to Enforce Mechanic's Lien recorded December 30, 2019 as Instrument No. 2019-1460444 of Official Records.

The effect of a Notice of Third Extension of Time to Enforce Mechanic's Lien recorded June 9, 2020 as Instrument No. 2020-0622935 of Official Records.

The effect of a Notice of Fourth Extension of Time to Enforce Mechanic's Lien recorded June 23, 2020 as Instrument No. 2020-0682425 of Official Records.

## EXCEPTIONS
### (Continued)

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Woodbridge Glass, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV46046 |
| Nature of Action: | foreclosure of mechanics' lien, quantum meruit, etc. |
| Recording Date: | December 29, 2020 |
| Recording No: | 2020-1751516 of Official Records |

Reference is hereby made to said documents for full particulars.

The effect of a Partial Release of Claim of Mechanics Lien recorded November 3, 2022 as Instrument No. 2022-1045421, of Official Records which purports to partially release the above-mentioned mechanics' lien, such that the remaining unpaid balance is $2,269,610.40. No statement is made hereto as to the effect or validity of said release.

86.    A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Woodbridge Glass Incorporated |
| Amount: | $3,535,710.50 |
| Recording Date: | June 27, 2019 |
| Recording No: | 2019-0618246 of Official Records |

The effect of a Notice of Extension of Time to Enforce Mechanic's Lien recorded October 24, 2019 as Instrument No. 2019-1144479, of Official Records.

The effect of a Notice of Second Extension of Time to Enforce Mechanic's Lien recorded December 30, 2019 as Instrument No. 2019-1460445, of Official Records.

The effect of a Notice of Third Extension of Time to Enforce Mechanic's Lien recorded June 9, 2020 as Instrument No. 2020-0622934 of Official Records.

The effect of a Notice of Fourth Extension of Time to Enforce Mechanic's Lien recorded June 23, 2020 as Instrument No. 2020-0682426 of Official Records.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Woodbridge Glass, Inc., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV46046 |
| Nature of Action: | foreclosure of mechanics' lien, quantum meruit, etc. |
| Recording Date: | December 29, 2020 |
| Recording No: | 2020-1751516 of Official Records |

Reference is hereby made to said documents for full particulars.

## EXCEPTIONS
### (Continued)

87.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Martin Bros./Marcowall, Inc. |
| Amount: | $4,792,181.00 |
| Recording Date: | July 2, 2019 |
| Recording No: | 2019-0639883 of Official Records |

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Martin Bros./Marcowall, Inc. |
| Amount: | $4,792,181.00 |
| Recording Date: | September 27, 2019 |
| Recording No: | 2019-1022526 of Official Records |

The effect of a Third Notice and Claim of Mechanic's Lien recorded December 24, 2019 as Instrument No. 2019-1440932 of Official Records.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Martin Bros./Marcowall, Inc. |
| Defendant: | LendLease (US) Construction, Inc., a Florida corporation, Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV11335 |
| Nature of Action: | foreclosure of mechanics' liens, etc. |
| Recording Date: | July 13, 2020 |
| Recording No: | 2020-0764461 of Official Records |

88.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Zolnay Insulation, Inc. |
| Amount: | $204,084.00 |
| Recording Date: | July 8, 2019 |
| Recording No: | 2019-0655135 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded January 28, 2020 as Instrument No. 2020-0107565, of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

89.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Anning Johnson Company |
| Amount: | $156,820.00 |
| Recording Date: | July 30, 2019 |
| Recording No: | 2019-0749348 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded October 16, 2019 as Instrument No. 2019-1102381, of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

Reference is hereby made to said document for full particulars.

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
## (Continued)

90.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | American Stair Corporation |
| Amount: | $833,250.00 |
| Recording Date: | October 17, 2019 |
| Recording No: | 2019-1110301 of Official Records |

91.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Kovach, LLC dba Kovach Building Enclosures |
| Amount: | $1,156,654.58 |
| Recording Date: | October 18, 2019 |
| Recording No: | 2019-1114551 of Official Records |

92.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | SASCO, a California corporation |
| Amount: | $16,434,079.87 |
| Recording Date: | November 12, 2019 |
| Recording No: | 2019-1220840 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded January 29, 2020 as Instrument No. 2020-0114634, of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | SASCO, a California corporation |
| Amount: | $375,415.40 |
| Recording Date: | November 12, 2019 |
| Recording No. | 2019-1220841 of Official Records |

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles County |
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 20STCV05020 |
| Recording Date: | March 6, 2020 |
| Recording No: | 2020-0269855 of Official Records |

The effect of a claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | SASCO, a California corporation |
| Amount: | $20,788,982.25 |
| Recording Date: | January 29, 2020 |
| Recording No. | 2020-0114635 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 37

## EXCEPTIONS
### (Continued)

A Notice of Pending Action to foreclose said lien

| | |
|---|---|
| County: | Los Angeles County |
| Court: | Superior Court of the State of California, Los Angeles County |
| Case No.: | 20STCV05020 |
| Recording Date: | March 6, 2020 |
| Recording No: | 2020-0269856 of Official Records |

The effect of a Partial Release of Mechanic's Lien recorded June 23, 2022 as Instrument No. 2022-661037 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $20,538,982.25. No statement is made hereto as to the effect or validity of said release.

93.     A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Kamran and Company, Inc. |
| Amount: | $474,163.30 |
| Recording Date: | August 30, 2019 |
| Recording No: | 2019-0889685 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Kamran and Company, Inc. |
| Defendant: | Oceanwide Plaza, LLC, a California limited liability company; XL Fire Protection, a California corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV42283 |
| Nature of Action: | breach of contract, etc. |
| Recording Date: | December 2, 2019 |
| Recording No: | 2019-1319832 of Official Records |

The effect of a Release of Mechanics Lien recorded May 4, 2023 as Instrument No. 2023-291661 of Official Records, which purports to release the above-mentioned mechanic's lien recorded as Instrument No. 2019-889685 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Notice of Withdrawal of Pendency of Action (Lis Pendens) recorded May 4, 2023 as Instrument No. 2023-291660 of Official Records, which purports to withdraw the Lis Pendens as to Instrument No. 2019-1319832 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

The effect of an Errata to Release of Mechanics Lien recorded August 10, 2023 as Instrument No. 2023-528807 of Official Records, which purports to correct the name of the owner referenced in the Release of Mechanic's Lien recorded  May 4, 2023 as Instrument No. 2023-291661 of Official Records, which purports to release the above-mentioned mechanic's lien recorded as Instrument No. 2019-889685 of Official Records. No statement is made hereto as to the effect or validity of said release.

## EXCEPTIONS
## (Continued)

94.   A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Webcor Construction, LP, a California limited partnership |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | Lead Case No. 19STCV03357; Related to Case Nos. 19STCV19167, 19STCV24347, 19STCV27946, 19STCV28063, 19STCV28703, 19STCV30916, 19STCV32112 |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | November 27, 2019 |
| Recording No: | 2019-1313436 of Official Records |

95.   A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Webcor Construction, LP, a California limited partnership |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | Lead Case No. 19STCV03357; Related to Case Nos. 19STCV19167, 19STCV24347, 19STCV27946, 19STCV28063, 19STCV28703, 19STCV30916, 19STCV32112 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | November 27, 2019 |
| Recording No: | 2019-1313454 of Official Records |

96.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | JT Wimsatt Contracting Co. |
| Amount: | $7,246,065.00 |
| Recording Date: | January 7, 2020 |
| Recording No: | 2020-00019597 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | J.T. Wimsatt Contracting Company, Inc. |
| Defendant: | Oceanwide Plaza, LLC (FKA Tohigh Construction Investment LLC), a California limited liability company; Lendlease (US) Construction, Inc., a Florida corporation; L.A. Downtown Investment, L.P., a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV13374 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | June 8, 2020 |
| Recording No: | 2020-0620416 of Official Records |

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

97.     A claim of mechanic's lien or materialman's lien

Claimant:           Smith-Emery Laboratories, Inc.
Amount:             $921,781.26
Recording Date:     January 14, 2020
Recording No:       2020-0048669 of Official Records

The effect of a Release of Claim of Mechanics Lien recorded June 30, 2022 as Instrument No. 2022-682676, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

98.     A claim of mechanic's lien or materialman's lien

Claimant:           Martinez Steel, LLC
Amount:             $151,521.34
Recording Date:     January 24, 2020
Recording No:       2020-0093679 of Official Records

The effect of a Release of Claim of Mechanics Lien recorded March 17, 2022 as Instrument No. 2022-310890 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

99.     A claim of mechanic's lien or materialman's lien

Claimant:           CMF INC
Amount:             $7,086,838
Recording Date:     February 3, 2020
Recording No:       2020-0133070 of Official Records

The effect of an Amended Mechanics Lien recorded November 18, 2020 as Instrument No. 2020-1473932 of Official Records, which increases the amount claimed to $7,181,273.00. No statement is made hereto as to the effect or validity of said amended mechanic's lien.

The effect of a Partial Release of Mechanics Lien recorded May 11, 2022 as Instrument No. 2022-515474 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $6,931,273. No statement is made hereto as to the effect or validity of said release.

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

**EXCEPTIONS**
**(Continued)**

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Webcor Construction, LP, a California limited partnership |
| Defendant: | LendLease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downton Investment, LP, a California limited partnership; Chicago Title Insurance Company, a Florida corporation; et al |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV03357 (Consolidated Cases: 19STCV19167, 19STCV22183, 19STCV24347, 19STCV27946, 19STC V28063, 19STCV28703, 19STCV30916, 19STCV32112, 19STCV42283, 20STCV01887, 20STCV05020, 20STCV11335, 20STCV13074, 20STCV13374, 20STCV13646, 20STCV18563, 20STCV20642, 20STCV20757, 20STCV23227, 20STCV28240, 20STCV28272, 20STCV29459, 20STCV32733, 20STCV34840, 20STCV37800, 20STCV46046, 20STCV47808, 20STCV49694, 21STCV09007, 21STCV41369, 21 STCV42154, 21STCV42277) |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | December 18, 2023 |
| Recording No: | 2023-884915 of Official Records |

100. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Emser Tile |
| Amount: | $1,500,000.00 |
| Recording Date: | March 5, 2020 |
| Recording No: | 2020-0263739 of Official Records |

The effect of an Extension of Time to Enforce Mechanics Lien and Notice of Credit recorded June 23, 2020 as Instrument No. 2020-0681588 of Official Records. No statement is made hereto as to the effect or validity of said extension.

The effect of an Extension of Time to Enforce Mechanics Lien and Notice of Credit recorded April 6, 2021 as Instrument No. 2021-538155 of Official Records. No statement is made hereto as to the effect or validity of said extension.

101. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Kovach, LLC dba Kovach Building Enclosures |
| Amount: | $941,108.47 |
| Recording Date: | April 28, 2020 |
| Recording No: | 2020-0464645 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Kovach Enclosure Systems LLC, a Delaware limited liability company |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV01887 |
| Nature of Action: | foreclosure of mechanic's liens |
| Recording Date: | April 28, 2020 |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 41

## EXCEPTIONS
## (Continued)

Recording No: 2020-0464646 of Official Records

The effect of a Partial Release of Mechanics Lien recorded July 26, 2022 as Instrument No. 2022-754698 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $691,108.47. No statement is made hereto as to the effect or validity of said release.

The effect of a Second Partial Release of Mechanics Lien recorded October 17, 2022 as Instrument No. 2022-993066 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $441,108.47. No statement is made hereto as to the effect or validity of said release.

102. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Star Hardware, Inc. |
| Amount: | $1,846,331.00 |
| Recording Date: | June 8, 2020 |
| Recording No: | 2020-0618966 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Star Hardware, Inc., a California corporation |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV03357 |
| Related Cases: | 19STCV28063, 19STCV24347, 19STCV28703, 19STCV32112, 19STCV42283, 19STCV27946, 19STCV19167, 19STCV30916, 19STCV20757, 19STCV22183, 20STCV05020, 20STCV20642, 20STCV20785, 20STCV13074, 20STCV13374, 20STCV13646, 20STCV01887, 20STCV11335, and 20STCV29459 |
| Nature of Action: | foreclosure of mechanic's liens |
| Recording Date: | November 5, 2020 |
| Recording No: | 2020-1407344 of Official Records |

The effect of a Partial Release of Mechanics Lien recorded June 9, 2022 as Instrument No. 2022-616864 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $1,596,331. No statement is made hereto as to the effect or validity of said release.

103. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Continental Marble & Tile Company |
| Amount: | $1,001,497.70 |
| Recording Date: | January 8, 2020 |
| Recording No: | 2020-0028788 of Official Records |

The effect of a Claim of Mechanic's Lien recorded December 15, 2020 as Instrument No. 2020-1656243 of Official Records, which increases the amount claimed to $3,000,476.42. No statement is made hereto as to the effect or validity of said mechanic's lien.

## EXCEPTIONS
### (Continued)

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Continental Marble and Tile Company., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; Lendlease (US) Construction, Inc., a Florida corporation; Downtown Investment, LP, a California limited partnership; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 21STCV09007 |
| Nature of Action: | foreclosure of mechanic's liens |
| Recording Date: | March 26, 2021 |
| Recording No: | 2021-486199 of Official Records |

104. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Fetzers' Inc. |
| Amount: | $3,308,336.38 |
| Recording Date: | March 20, 2020 |
| Recording No: | 2020-0334576 of Official Records |

The effect of a Partial Release of Claim of Mechanics Lien recorded May 18, 2022 as Instrument No. 2022-540554 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $2,808,336.38. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Webcor Construction, LP, a California partnership |
| Defendant: | Lendlease (US) Construction, Inc., a corporation; Oceanwide Plaza, LLC, a limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 19STCV03357 (19STCV19167, 19STCV22183, 19STCV24347, 19STCV27946, 19STCV28063, 19STCV28703, 19STCV30916, 19STCV32112, 19STCV42283, 20STCV01887, 20STCV05020, 20STCV11335, 20SCTV13074, 20STCV13374, 20STCV13646, 20STCV18563, 20STCV20642, 20STCV20757, 20STCV23227, 20STCV28240, 20STCV28272, 20STCV29459, 20STCV32733, 20STCV34840, 20STCV37800, 20STCV46046, 20STCV47808, 20STCV49694, 21STCV09007, 21STCV41369, 21STCV42154, 21STCV42277) |
| Nature of Action: | not stated |
| Recording Date: | December 7, 2023 |
| Recording No: | 2023-854164 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 43

**EXCEPTIONS**
**(Continued)**

105.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Snaidero USA |
| Amount: | $871,306.51 |
| Recording Date: | June 8, 2020 |
| Recording No.: | 2020-0616361 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Snaidero U.S.A. |
| Defendant: | Lendlease (US) Construction, Inc., a corporation; Oceanwide Plaza, LLC, a limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV32733 |
| Nature of Action: | breach of contract, quantum meruit, open book account, account stated, enforcement of mechanics lien or mechanics lien release bond |
| Recording Date: | September 10, 2020 |
| Recording No: | 2020-1088917 of Official Records |

The effect of a Partial Release of Claim of Mechanics Lien recorded February 14, 2022 as Instrument No. 2022-179957 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $621,306.51. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded October 21, 2022 as Instrument No. 2022-1009372 of Official Records, which purports to release the above-mentioned mechanic's lien recorded as Instrument No. 2020-616361 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Notice of Withdrawal of Lis Pendens recorded October 21, 2022 as Instrument No. 2022-1009373 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2020-1088917 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

106.  A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Lendlease (US) Construction, Inc. (f/k/a Lend Lease (US) Construction, Inc.) |
| Amount: | $211,717,677.00 |
| Recording Date: | July 6, 2020 |
| Recording No: | 2020-0736616 of Official Records |

**EXCEPTIONS**
**(Continued)**

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Lendlease (US) Construction, Inc., a corporation , a Florida corporation |
| Defendant: | Oceanwide Plaza, LLC, a limited liability company; L.A. Downtown Investment LP, a California limited partnership; Chicago Title Insurance company, a Florida corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV37800 |
| Nature of Action: | breach of contract, foreclosure of mechanic's lien, quantum meruit, open book account, violation of Prompt Payment Act and declaratory relief |
| Recording Date: | October 8, 2020 |
| Recording No: | 2020-1249690 of Official Records |

And also recorded December 3, 2020 as Instrument No. 2020-1572333 of Official Records.

The effect of a Claim of Mechanic's Lien recorded November 12, 2020 as Instrument No. 2020-1438216 of Official Records, which increases the amount claimed to $218,805,093.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Lendlease (US) Construction, Inc., a corporation , a Florida corporation |
| Defendant: | Oceanwide Plaza, LLC, a limited liability company; L.A. Downtown Investment LP, a California limited partnership; Chicago Title Insurance company, a Florida corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV37800 |
| Nature of Action: | breach of contract, foreclosure of mechanic's lien, quantum meruit, open book account, violation of Prompt Payment Act and declaratory relief |
| Recording Date: | December 30, 2020 |
| Recording No: | 2020-1759134 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 45

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
## (Continued)

107.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Climatec LLC |
| Amount: | $820,356.10 |
| Recording Date: | July 8, 2020 |
| Recording No.: | 2020-0748128 of Official Records |

The effect of an Amended and Supplemental Mechanic's Lien recorded July 14, 2020 as Instrument No. 2020-0776862 of Official Records, which increases the amount claimed to $965,701.10. No statement is made hereto as to the effect or validity of said amended mechanic's lien.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Climatec, LLC, an Arizona limited liability company |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV28272 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | July 30, 2020 |
| Recording No.: | 2020-0866370 of Official Records |

The effect of a Withdrawal of Lis Pendens recorded June 23, 2022 as Instrument No. 2022-661010 of Official Records, which purports to withdraw the Notice of Lis Pendens as to Instrument No. 2020-866370 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

The effect of a Release of Mechanics Lien recorded June 27, 2022 as Instrument No. 2022-668899 of Official Records, which purports to release the above-mentioned mechanic's lien recorded as Instrument No. 2020-748128 of Official Records. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Mechanics Lien recorded June 27, 2022 as Instrument No. 2022-668905 of Official Records, which purports to release the above-mentioned mechanic's lien recorded as Instrument No. 2020-776862 of Official Records. No statement is made hereto as to the effect or validity of said release.

108.   A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Alamillo Rebar, Inc. |
| Defendant: | Webcore (sic) (US) Construction, Inc.; Oceanwide Plaza, LLC, a limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV20642 |
| Nature of Action: | breach of contract, quantum meruit, open book account, etc. |
| Recording Date: | July 20, 2020 |
| Recording No.: | 2020-0798788 of Official Records |

185753604.1

## EXCEPTIONS
## (Continued)

109.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Yesco LLC d/b/a Yesco Signs LLC |
| Amount: | $1,732,504.32 |
| Recording Date: | September 18, 2020 |
| Recording No.: | 2020-1141614 of Official Records |

The effect of an Amended Mechanic's Lien Notice and Claim of Lien, which claims to amend, replace and supersede the above-referenced lien, recorded November 9, 2020 as Instrument No. 2020-1424299 of Official Records, which increases the amount claimed to $1,868,215.52. No statement is made hereto as the effect or validity of said amended mechanic's lien.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Yesco LLC dba Yesco Signs LLC, a Utah limited liability company |
| Defendant: | Lendlease (US) Construction, Inc., a Florida corporation; Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment, LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 20STCV03357 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | December 28, 2020 |
| Recording No: | 2020-1731997 of Official Records |

The effect of a Partial Release of Claim of Mechanics Lien recorded April 11, 2022 as Instrument No. 2022-399588 of Official Records, which claims to amend Instrument No. 2020-1424299 of Official Records, which releases the amount of $1,000,000.00 and notes a remaining unpaid balance due and owing of $868,215.52. No statement is made hereto as to the effect or validity of said partial release.

110.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | American Stair Corporation |
| Amount: | $955,728.00 |
| Recording Date: | October 7, 2020 |
| Recording No: | 2020-1241227 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | American Stair Corporation, an Illinois corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; Lendlease (US) Construction, Inc., a Florida corporation; L.A. Downtown Investment, LP, a California limited partnership; Webcor Construction LP, a California limited partnership, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | None stated |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | January 5, 2021 |
| Recording No: | 2021-0015449 of Official Records |

## EXCEPTIONS
## (Continued)

111.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Mitsubishi Electric US, Inc. |
| Amount: | $6,764,473.37 |
| Recording Date: | November 12, 2020 |
| Recording No: | 2020-1437424 of Official Records |

The effect of an Extension of Time to Enforce Lien and Notice of Credit recorded March 3, 2021 as Instrument No. 2021-355542 of Official Records. No statement is made hereto as to the effect or validity of said extension.

The effect of an Extension of Time to Enforce Lien and Notice of Credit recorded September 13, 2021 as Instrument No. 2021-1399238 of Official Records. No statement is made hereto as to the effect or validity of said extension.

The effect of an Extension of Time to Enforce Lien and Notice of Credit recorded September 13, 2021 as Instrument No. 2021-1399239 of Official Records. No statement is made hereto as to the effect or validity of said extension.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Mitsubishi Electric US, Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; Lend Lease (US) Construction, Inc., a Florida corporation; L.A. Downtown Investment, LP, a California limited partnership; ACCO Engineered Systems, Inc., a California corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 21STCV42277 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | December 9, 2021 |
| Recording No: | 2021-1834890 of Official Records |

The effect of a Partial Release of Claim of Mechanics Lien recorded October 19, 2022 as Instrument No. 2022-1002350, of Official Records which purports to partially release the above-mentioned mechanics' lien, such that the remaining unpaid balance is $6,514,473.37. No statement is made hereto as to the effect or validity of said release.

112.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Comet Electric, Inc. |
| Amount: | $270,546 |
| Recording Date: | January 19, 2021 |
| Recording No: | 2021-0089102 of Official Records |

The effect of an Extension of Time to Enforce Mechanics Lien and Notice of Credit recorded May 17, 2021 as Instrument No. 2021-0789679 of Official Records. No statement is made hereto as to the effect or validity of said extension.

The effect of a Release of Mechanics Lien recorded August 14, 2023 as Instrument No. 2023-535840 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
### (Continued)

113. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Pro-Vigil, Inc. |
| Amount: | $7,969.47 |
| Recording Date: | February 2, 2021 |
| Recording No: | 2021-0187288 of Official Records |

The effect of a Release of Mechanics Lien recorded December 15, 2022 as Instrument No. 2022-1173370 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Pro-Vigil, Inc. |
| Amount: | $53,356.64 |
| Recording Date: | November 8, 2023 |
| Recording No: | 2023-0769930 of Official Records |

114. Any liens or claims of mechanic's lien which arise by reason of a work of improvement recently completed or in progress at the Date of Policy.

115. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2020 |
| Taxpayer: | Oceanwide Plaza LLC fka Tohigh Construction Investment LLC |
| County Identification Number: | 20/40733415 |
| Amount: | $3,629.88 |
| Recording Date: | December 8, 2020 |
| Recording No: | 2020-1595956 of Official Records |

116. Matters contained in that certain document

| | |
|---|---|
| Entitled: | Waiver of Damages, Indemnification Agreement and Right of Ingress and Egress – Covenant to Run With the Land |
| Dated: | December 3, 2020 |
| Executed by: | Oceanwide Plaza, LLC |
| Recording Date: | December 28, 2020 |
| Recording No: | 2020-1733236 of Official Records |

Reference is hereby made to said document for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 49

## EXCEPTIONS
## (Continued)

117. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Tom Malloy Corporation dba Trench Shoring |
| Amount: | $67,041.18 |
| Recording Date: | May 6, 2021 |
| Recording No: | 2021-724880 of Official Records |

The effect of a Claim of Mechanic's Lien recorded June 24, 2021 as Instrument No. 2021-0996499 of Official Records, which increases the amount claimed to $89,196.60. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded August 19, 2021 as Instrument No. 2021-1271259 of Official Records, which increases the amount claimed to $95,774.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded September 24, 2021 as Instrument No. 2021-1462302 of Official Records, which increases the amount claimed to $114,928.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded November 30, 2021 as Instrument No. 2021-1769678 of Official Records, which increases the amount claimed to $134,083.60. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded January 18, 2022 as Instrument No. 2022-0063589 of Official Records, which increases the amount claimed to $153,234.40. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded February 3, 2022 as Instrument No. 2022-141004 of Official Records, which increases the amount claimed to $162,815.80. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded March 9, 2022 as Instrument No. 2022-277671 of Official Records, which increases the amount claimed to $172,393.20. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded May 6, 2022 as Instrument No. 2022-497532 of Official Records, which increases the amount claimed to $191,548.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded June 9, 2022 as Instrument No. 2022-615198 of Official Records, which increases the amount claimed to $201,125.40. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded August 10, 2022 as Instrument No. 2022-806886 of Official Records, which increases the amount claimed to $220,280.20. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded September 15, 2022 as Instrument No. 2022-908388 of Official Records, which increases the amount claimed to $239,435.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

## EXCEPTIONS
### (Continued)

The effect of a Claim of Mechanic's Lien recorded December 19, 2022 as Instrument No. 2022-1181955 of Official Records, which increases the amount claimed to $268,167.20. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded May 1, 2023 as Instrument No. 2023-281727 of Official Records, which increases the amount claimed to $316,054.20. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanic's Lien recorded July 21, 2023 as Instrument No. 2023-481104 of Official Records, which increases the amount claimed to $344,786.40. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanics Lien recorded August 31, 2023 as Instrument No. 2023-583048 of Official Records, which increases the amount claimed to $354,363.80. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanics Lien recorded November 15, 2023 as Instrument No. 2023-790184 of Official Records, which increases the amount claimed to $383,096.00. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a Claim of Mechanics Lien recorded December 21, 2023 as Instrument No. 2023-899061 of Official Records, which increases the amount claimed to $392,673.40. No statement is made hereto as to the effect or validity of said mechanic's lien.

The effect of a claim of Mechanics Lien recorded February 22, 2024 as Instrument No. 2024-117616 of Official Records, which increases the amount claimed to $411,828.20. No statement is made hereto as to the effect or validity of said mechanic's lien.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Tom Malloy Corporation dba Trench Shoring Company |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV13428 |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | July 19, 2023 |
| Recording No: | 2023-475639 of Official Records |

118. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Penhall Company – (201) Los Angeles |
| Amount: | $32,496.50 |
| Recording Date: | June 2, 2021 |
| Recording No: | 2021-0877999 of Official Records |

The effect of a Release of Claim of Mechanics Lien recorded January 18, 2022 as Instrument No. 2022-66078 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

## EXCEPTIONS
### (Continued)

119. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | CallisonRTKL Inc. |
| Amount: | $1,613,530.62 |
| Recording Date: | June 23, 2021 |
| Recording No: | 2021-0989527 of Official Records |

The effect of an Extension of Credit and Notice Thereof Between Claimant and Owner recorded September 22, 2021 as Instrument No. 2021-11447074 of Official Records. No statement is made hereto as to the effect or validity of said extension.

The effect of a Second Extension of Credit and Notice Thereof Between Claimant and Owner recorded January 28, 2022 as Instrument No. 2022-115456 of Official Records. No statement is made hereto as to the effect or validity of said extension.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | CallisonRTKL Inc., a Maryland corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV33793 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | November 3, 2022 |
| Recording No: | 2022-1046260 of Official Records |

120. Any consequences of the lawsuit *Yichen Zhou, et al.* v. *Homewin Management, LLC, et al.* filed as Case No. 21SCTP00335 in the Superior Court of the State of California, County of Los Angeles, as disclosed by the following documents:

| | |
|---|---|
| Entitled: | Order Granting Motion by Defendant L.A. Downtown Investment LP to Expunge *Lis Pendens* Recorded by Plaintiffs, for Award of Attorneys' Fees and Costs, and for Injunctive Relief |
| Dated: | May 24, 2021 |
| Executed by: | Honorable Rupert A. Byrdsong |
| Recording Date: | November 15, 2021 |
| Recording No: | 2021-1691513 of Official Records |

| | |
|---|---|
| Entitled: | Order |
| Dated: | October 8, 2021 |
| Executed by: | Acting P.J. Grimes, J. Wiley and J. Ohta |
| Recording Date: | November 15, 2021 |
| Recording No: | 2021-1691514 of Official Records |

| | |
|---|---|
| Entitled: | Notice of Motion and Motion by Defendant L.A. Downtown Investment LP to Expunge *Lis Pendens* Recorded by Plaintiffs, for Award of Attorneys' Fees and Costs, and in the Alternative, for Injunctive Relief |
| Dated: | February 24, 2021 |
| Executed by: | Rimon, P.C., Attorneys for Defendant L.A. Downtown Investment LP |
| Recording Date: | November 15, 2021 |
| Recording No: | 2021-1691515 of Official Records |

Reference is hereby made to said documents for full particulars.

CLTA Preliminary Report Form – Modified (11/17/06)

Page 52

## EXCEPTIONS
## (Continued)

121. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2021 |
| Taxpayer: | Oceanwide Plaza LLC |
| Certificate No.: | 21314-19579 |
| Year/Bill No.: | 21/40723707 |
| Amount: | $3,265.58 |
| Recording Date: | December 6, 2021 |
| Recording No: | 2021-1799861 of Official Records |

122. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Schuff Steel Company |
| Amount: | $6,299,691.00 |
| Recording Date: | October 23, 2020 |
| Recording No: | 2020-1324605 of Official Records |

The effect of an Extension of Time to Enforce Lien and Notice of Credit recorded February 16, 2021 as Instrument No. 2021-256557 of Official Records. No statement is made hereto as to the effect or validity of said extension.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Schuff Steel Company |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company; L.A. Downtown Investment LP, a California limited partnership, Acco Engineered Systems, Inc., a California corporation; Bapko Metal, Inc., a California corporation, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 21STCV41369 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | May 16, 2022 |
| Recording No: | 2022-529045 of Official Records |

123. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Swinerton Builders |
| Amount: | $761,505.82 |
| Recording Date: | January 14, 2022 |
| Recording No: | 2022-58841 of Official Records |

The effect of an Amendment to Mechanics Lien recorded April 6, 2022 as Instrument No. 2022-383759 of Official Records. No statement is made hereto as to the effect or validity of said amendment.

The effect of a Second Amendment to Mechanics Lien recorded April 18, 2022 as Instrument No. 2022-426291 of Official Records, which clarifies the name of the claimant. No statement is made hereto as to the effect or validity of said amendment.

## EXCEPTIONS
### (Continued)

The effect of a Release of Claim of Mechanics Lien recorded March 6, 2023 as Instrument No. 2023-141288 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

The effect of a Release of Claim of Mechanics Lien recorded April 14, 2023 as Instrument No. 2023-241272 of Official Records, which purports to release the above-mentioned mechanics' lien. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Swinerton Builders dba Swinerton Management & Consulting |
| Defendant: | Oceanwide Plaza, LLC; Oceanwide Holdings Co., Ltd.; Tom Malloy Corporation; Bragg Investment Co., Inc. dba Bragg Crane and Rigging; Morrow Equipment Company, LLC |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV12580 |
| Nature of Action: | foreclosure of mechanics' liens |
| Recording Date: | April 29, 2022 |
| Recording No: | 2022-472052 of Official Records |

The effect of a Notice of Withdrawal of Notice of Pendency of Action recorded May 4, 2023 as Instrument No. 2023-292403 of Official Records, which purports to withdraw the Notice of Pendency of Action as to Instrument No. 2022-472052 of Official Records referenced above. No statement is made hereto as to the effect or validity of said withdrawal.

124. A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Bragg Investment Company dba Bragg Crane Services, Bragg Crane & Rigging |
| Amount: | $3,628,530.82 |
| Recording Date: | March 9, 2022 |
| Recording No: | 2022-277620 of Official Records |

The effect of a Partial Release of Filed Mechanics Lien recorded May 16, 2022 as Instrument No. 2022-528038 of Official Records, which purports to partially release the above-mentioned mechanics' lien and to decrease the amount owed to $3,052,970.89. No statement is made hereto as to the effect or validity of said release.

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Bragg Investment Company, Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV17865 |
| Nature of Action: | foreclosure of mechanics' lien and quantum meruit |
| Recording Date: | June 9, 2022 |
| Recording No: | 2022-617082 of Official Records |

The effect of a Claim of Mechanic's Lien recorded March 1, 2023 as Instrument No. 2023-130698 of Official Records, which adjusts the amount claimed to $2,792,381.49. No statement is made hereto as to the effect or validity of said mechanic's lien.

## EXCEPTIONS
### (Continued)

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Bragg Investment Company, Inc. |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV17865 Lead Case (Consolidated with 22STCV18167) (Related to Lead Case No. 19STCV03357) |
| Nature of Action: | foreclosure of mechanics' lien and quantum meruit |
| Recording Date: | January 11, 2024 |
| Recording No: | 2024-27419 of Official Records |

125.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Morrow Equipment Company, LLC |
| Amount: | $2,255,520.96 |
| Recording Date: | March 10, 2022 |
| Recording No: | 2022-283068 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Morrow Equipment Company, LLC |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV18167 |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | June 10, 2022 |
| Recording No: | 2022-622424 of Official Records |

The effect of a Mechanic's Lien recorded January 20, 2023 as Instrument No. 2023-0042702 of Official Records, which decreases the amount claimed to $997,245.16. No statement is made hereto as to the effect or validity of said mechanic's lien.

126.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Aesthetic Maintenance Corporation |
| Amount: | $323,133.60 |
| Recording Date: | March 31, 2022 |
| Recording No: | 2022-360670 of Official Records |

127.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Bigge Crane and Rigging Company – San Leandro |
| Amount: | $1,537,408.40 |
| Recording Date: | June 2, 2022 |
| Recording No: | 2022-592115 of Official Records |

**EXCEPTIONS
(Continued)**

A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Bigge Crane and Rigging Company – San Leandro |
| Amount: | $1,612,313.20 |
| Recording Date: | July 12, 2022 |
| Recording No: | 2022-714150 of Official Records |

A pending court action as disclosed by a recorded notice:

| | |
|---|---|
| Plaintiff: | Bigge Crane and Rigging Co., a California corporation |
| Defendant: | Oceanwide Plaza, LLC, a Delaware limited liability company, et al. |
| County: | Los Angeles |
| Court: | Superior Court of the State of California |
| Case No.: | 22STCV23903 |
| Nature of Action: | foreclosure of mechanics' lien |
| Recording Date: | September 16, 2022 |
| Recording No: | 2022-908520 of Official Records |

128.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Tractel Ltd. |
| Amount: | $1,279,944.88 |
| Recording Date: | August 23, 2022 |
| Recording No: | 2022-841678 of Official Records |

129.   Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

130.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Brandsafway Services, LLC (072) |
| Amount: | $400,133.25 |
| Recording Date: | September 14, 2023 |
| Recording No: | 2023-613036 of Official Records |

The effect of an Amended Mechanic's Lien recorded July 12, 2024 as Instrument No. 2024-461709 of Official Records, which increases the amount claimed to $465,776.86. No statement is made hereto as to the effect or validity of said amendment.

131.   A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2023 |
| Taxpayer: | Oceanwide Plaza LLC |
| Certificate No.: | 23310-24232 |
| Year/Bill No.: | 23/40709095 |
| Amount: | $2,883.61 |
| Recording Date: | December 11, 2023 |
| Recording No: | 2023-859362 of Official Records |

**EXCEPTIONS
(Continued)**

132.   A claim of mechanic's lien or materialman's lien

| | |
|---|---|
| Claimant: | Commercial Scaffolding of California Inc. |
| Amount: | $2,683,505.23 |
| Recording Date: | February 6, 2024 |
| Recording No: | 2024-82784 of Official Records |

133.   A Notice of Substandard property as disclosed by a document

| | |
|---|---|
| Entitled: | Notice of Building(s), Structure(s), or Premises Classified as Either Hazardous, Substandard or a Nuisance – Abatement Proceedings |
| Recording Date: | February 13, 2024 |
| Recording No: | 2022-95839 of Official Records |

Reference is hereby made to said document for full particulars.

134.   Any and all matters in connection with matters contained in that certain document

| | |
|---|---|
| Entitled: | Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superiority Administrative Expense Claims and (III) Modifying the Automatic Stay |
| Dated: | May 16, 2024 |
| Executed by: | Deborah J. Saltzman |
| Recording Date: | June 21, 2024 |
| Recording No: | 2024-405436 of Official Records |

Reference is hereby made to said document for full particulars.

As affected by that certain Order Granting Motion to Amend Debtor-in-Possession Financing Facility made by the United States Bankruptcy Court Central District of California – Los Angeles Division in Case No. 2:24-bk-11057-DS dated as of November 22, 2024 and recorded December 6, 2024 as Instrument No. 2024-861388 of Official Records.

As affected by that certain Order Approving Stipulation Authorizing Debtor to Amend Post-Petition Financing for Critical Expenses and Extend Maturity Date made by the United States Bankruptcy Court Central District of California Los Angeles Division in Case No. 2:24-bk-11057-DS dated as of March 14, 2025 and recorded March 28, 2025 as Instrument No. 2025-198595 of Official Records.

As affected by that certain Order Approving Second Stipulation Authorizing Debtor to Amend Post-Petition Financing for Critical Expenses and Extend Maturity Date made by the United States Bankruptcy Court Central District of California Los Angeles Division in Case No. 2:24-bk-11057-DS dated as of June 10, 2025 and recorded July 10, 2025 as Instrument No. 2025-462141 of Official Records.

As affected by that certain Order Approving Third Stipulation Authorizing Debtor to Amend Post-Petition Financing For Critical Expenses and Extend Maturity Date made by the United States Bankruptcy Court Central District of California Los Angeles Division in Case No. 2:24-bk-11057-DS dated as of September 29, 2025 and recorded October 20, 2025 as Instrument No. 2025-720672 of Official Records.

## EXCEPTIONS
### (Continued)

135.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $10,000,000.00 |
| Dated: | May 16, 2024 |
| Trustor/Grantor | Oceanwide Plaza LLC |
| Trustee: | Old Republic National Title Insurance Company |
| Beneficiary: | DTLA Lending LLC |
| Recording Date: | June 21, 2024 |
| Recording No: | 2024-405437 of Official Records |

An agreement to modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Entitled: | First Amendment and Modification to Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | December 6, 2024 |
| Recording No: | 2024-861389 of Official Records |

An agreement to further modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Entitled: | Second Amendment and Modification to Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | March 28, 2025 |
| Recording No: | 2025-198596 of Official Records |

An agreement to further modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Entitled: | Third Amendment and Modification to Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | July 10, 2025 |
| Recording No: | 2025-462142 of Official Records |

An agreement to further modify the terms and provisions of said deed of trust as therein provided

| | |
|---|---|
| Entitled: | Fourth Amendment and Modification to Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | October 20, 2025 |
| Recording No: | 2025-720673 of Official Records |

136.   Matters contained in that certain document

| | |
|---|---|
| Entitled: | Assignment of Lessor's Interest in Leases and Contracts of Sale |
| Dated: | May 16, 2024 |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | June 21, 2024 |
| Recording No: | 2024-405438 of Official Records |

Reference is hereby made to said document for full particulars.

## EXCEPTIONS
### (Continued)

An agreement to modify the terms and provisions of said assignment as therein provided

| | |
|---|---|
| Entitled: | First Amendment and Modification to Assignment of Lessor's Interest in Leases and Contracts of Sale |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | December 6, 2024 |
| Recording No: | 2024-861390 of Official Records |

An agreement to modify the terms and provisions of said assignment as therein provided

| | |
|---|---|
| Entitled: | Second Amendment and Modification to Assignment of Lessor's Interest in Leases and Contracts of Sale |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | March 28, 2025 |
| Recording No: | 2025-198597 of Official Records |

An agreement to modify the terms and provisions of said assignment as therein provided

| | |
|---|---|
| Entitled: | Third Amendment and Modification to Assignment of Lessor's Interest in Leases and Contracts of Sale |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | July 10, 2025 |
| Recording No: | 2025-462143 of Official Records |

An agreement to modify the terms and provisions of said assignment as therein provided

| | |
|---|---|
| Entitled: | Fourth Amendment and Modification to Assignment of Lessor's Interest in Leases and Contracts of Sale |
| Executed by: | Oceanwide Plaza LLC and DTLA Lending LLC |
| Recording Date: | October 20, 2025 |
| Recording No: | 2025-720674 of Official Records |

137. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles County |
| Fiscal Year: | 2024 |
| Taxpayer: | Oceanwide Plaza LLC fka Tohigh Construction |
| County Identification Number: | 97002803 |
| Year/Bill Number: | 24/40682019 |
| Amount: | $2,713.81 |
| Recording Date: | December 5, 2024 |
| Recording No: | 2024-855374 of Official Records |

CLTA Preliminary Report Form – Modified (11/17/06)

Page 59

185753604.1

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## EXCEPTIONS
(Continued)

138. A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $130,000,000.00 |
| Dated: | January 7, 2025 |
| Trustor/Grantor | KPC Plaza LLC, a California limited liability company |
| Trustee: | First American Title Company |
| Beneficiary: | L.A. Downtown Investment LP, a California limited partnership |
| Recording Date: | November 3, 2025 |
| Recording No: | 2025-761980 of Official Records |

139. A lien for unsecured property taxes filed by the tax collector of the county shown, for the amount set forth, and any other amounts due.

| | |
|---|---|
| County: | Los Angeles |
| Fiscal Year: | 2025 |
| Taxpayer: | Oceanwide Plaza LLC fka Tohigh Construction Investment LLC |
| Certificate Number: | 25308-26528 |
| Year/Bill Number: | 25/40733753 |
| Index Number: | 97002803 |
| Amount: | $2,966.75 |
| Recording Date: | December 1, 2025 |
| Recording No: | 2025-854561 of Official Records |

140. Any claims for mechanics' or materialman's liens that may be recorded by reason of a recent work of improvement under construction and/or completed at the date hereof.

141. The transaction contemplated in connection with this Report is subject to the review and approval of the Company's Corporate Underwriting Department. The Company reserves the right to add additional items or make further requirements after such review.

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

**END OF EXCEPTIONS**

**REQUIREMENTS SECTION**

---

**END OF REQUIREMENTS**

---

PRELIMINARY REPORT
YOUR REFERENCE: Claim #667216

Chicago Title Company
ORDER NO.: 00153470-994-LT2-DB

## INFORMATIONAL NOTES SECTION

1. None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

2. The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Commercial properties, known as 1101 S. Flower Street, located within the city of Los Angeles, California, , to an Extended Coverage Loan Policy.

3. Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

4. Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5. Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

## END OF INFORMATIONAL NOTES

Dave Balassi (LA/Comm)/kcc

CLTA Preliminary Report Form – Modified (11/17/06)

Page 1

185753604.1

**WIRE SAFE**™ | Inquire before you wire!

## Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| | |
|---|---|
| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
| *http://www.fbi.gov* | *http://www.ic3.gov* |

 **Chicago Title Company**

725 South Figueroa Street, Suite 200, Los Angeles, CA 90017
Phone: (213) 488-4300 ● Fax: (213) 488-4377

### Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Company** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

#### Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

## FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Effective January 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

### Collection of Personal Information

FNF may collect the following categories of Personal Information:
- contact information (e.g., name, address, phone number, email address);
- demographic information (e.g., date of birth, gender, marital status);
- identity information (e.g. Social Security Number, driver's license, passport, or other government ID number);
- financial account information (e.g. loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

### Collection of Browsing Information

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

### Other Online Specifics

Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

### Use of Personal Information

FNF uses Personal Information for three main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

### When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;

- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

### Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

### Choices With Your Information

If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents:   We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

### Information From Children

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### International Users

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

### FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

Copyright © 2021. Fidelity National Financial, Inc. All Rights Reserved
Order No. 00153470-994-LT2-DB

**Your Consent To This Privacy Notice; Notice Changes; Use of Comments or Feedback**
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**
If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 934-3354 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

# ATTACHMENT ONE (Revised 05-06-16)

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

Attachment One – CA (Rev. 05-06-16)                                                                              Page 1

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

185753604.1

c. that result in no loss to You; or
d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
       (i) the occupancy, use, or enjoyment of the Land;
       (ii) the character, dimensions, or location of any improvement erected on the Land;
       (iii) the subdivision of land; or
       (iv) environmental protection;
       or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

(Except as provided in Schedule B - Part II,{ t{or T}his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**{PART I**

{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.}

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:}

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
{The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records. }
7.  {Variable exceptions such as taxes, easements, CC&R's, etc. shown here.}

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY – ASSESSMENTS PRIORITY (04-02-15)**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv)  environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

A true and correct copy of the foregoing document(s) entitled: **DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY  23, 2026)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 23, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **PLEASE SEE ATTACHED LIST**

☒     Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*), I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) February 23, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVED BY EMAIL:**

- Nowell A. Lantz on behalf of Petitioning Creditor Standard Drywall, Inc.
  nlantz@ftblaw.com

- William Hawkins on behalf of Creditor Chicago Title Insurance Company
  whawkins@loeb.com

☐     Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 23, 2026 | Raul Morales | |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Adam S Affleck on behalf of Creditor Fetzers' Inc.
  adam-affleck@rbmn.com, jennifer-franklin@rbmn.com

- Melody G Anderson on behalf of Creditor Creditors Adjustment Bureau, Inc.
  meanderson@zwickerpc.com

- James W Bates on behalf of Creditor Kovach Enclosure Systems, LLC
  jbates@jbateslaw.com

- Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
  ori.blumenfeld@offitkurman.com, liyah.lewis@offitkurman.com; ik-maurice.ibe@offitkurman.com

- Paul Brent on behalf of Creditor BRAGG INVESTMENT CO.
  snb300@aol.com

- Sara Chenetz on behalf of Creditor DTLA Lending LLC
  schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com;
  jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Sara Chenetz on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
  schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com;
  jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Jacquelyn H Choi on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
  jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com

- Leslie A Cohen on behalf of Interested Party Courtesy NEF
  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; camille@lesliecohenlaw.com

- Gloria D Cordova on behalf of Creditor Carrara, Inc.
  NEF@gcordovalaw.com, NEF@gcordovalaw.com; ssg@gcordovalaw.com

- Sean C Coughlin on behalf of Creditor Commercial Scaffolding of California, Inc.
  scc@coughlin-law.com, lb@coughlin-law.com; bcrena@noonanlance.com; ssuper@noonanlance.com

- Matthew Dill on behalf of Interested Party Courtesy NEF
  mdill@counsel.lacounty.gov

- Luke N Eaton on behalf of Creditor CMF, Inc.
  lukeeaton@cozen.com, jacqueline.sims@troutman.com

- Amir Gamliel on behalf of Creditor DTLA Lending LLC
  agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com

- Amir Gamliel on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
  agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com

- Jon F Gauthier on behalf of Petitioning Creditor Standard Drywall, Inc.
  jgauthier@ftblaw.com, jrobinson@ftblaw.com

- Richard Girgado on behalf of Interested Party Courtesy NEF
  rgirgado@counsel.lacounty.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**

- Richard H Golubow on behalf of Petitioning Creditor Woodbridge Glass Inc.
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com

- Ani Grigoryan on behalf of Interested Party Chicago Title Insurance Company
  ani.grigoryan@aalrr.com, jenifer.gootkin@aalrr.com

- Lance N Jurich on behalf of Creditor Chicago Title Company
  ljurich@loeb.com, pmatsuda@loeb.com; ladocket@loeb.com; ljurich@ecf.courtdrive.com;
  fmckeown@loeb.com

- Lance N Jurich on behalf of Creditor Chicago Title Insurance Company
  ljurich@loeb.com, pmatsuda@loeb.com; ladocket@loeb.com; ljurich@ecf.courtdrive.com;
  fmckeown@loeb.com

- Gary E Klausner on behalf of Interested Party Courtesy NEF
  gek@lnbyg.com

- Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)
  Noreen.Madoyan@usdoj.gov

- Allison C. Murray on behalf of Creditor Schuff Steel Company, Inc.
  acmurray@swlaw.com, kcollins@swlaw.com

- Douglas M Neistat on behalf of Creditor ACCO Engineered Systems, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Creditor Bapko Metal, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Creditor Martin Bros./Marcowall, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Interested Party Douglas Neistat
  dneistat@gblawllp.com, mramos@gblawllp.com

- Rosemary Nunn on behalf of Petitioning Creditor Mitsubishi Electric US, Inc.
  rosemary.nunn@procopio.com, nicholas.fortino@procopio.com; gaylene.oyama@procopio.com

- Matthew D Pham on behalf of Attorney Matthew D. Pham
  mpham@allenmatkins.com, mdiaz@allenmatkins.com

- Michael B Reynolds on behalf of Creditor Schuff Steel Company, Inc.
  mreynolds@swlaw.com, kcollins@swlaw.com

- Robert L. Rosvall on behalf of Creditor CallisonRTKL, Inc.
  rrosvall@ccllp.law, kvargas@ccllp.law

- Jeremy H Rothstein on behalf of Creditor ACCO Engineered Systems, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Bapko Metal, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Martin Bros./Marcowall, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

- Leonard M. Shulman on behalf of Interested Party Kpc Global Care Inc A Cal Corp
  lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com; yrivera@shulmanbastian.com

- Howard Steinberg on behalf of Creditor L.A. Downtown Investment, LP
  steinbergh@gtlaw.com, pearsallt@gtlaw.com; NEF-BK@gtlaw.com;
  howard-steinberg-6096@ecf.pacerpro.com

- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov

- J Scott Williams on behalf of Interested Party Courtesy NEF
  jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

- Donna Wong on behalf of Interested Party City of Los Angeles
  donna.wong@lacity.org

- Richard Lee Wynne on behalf of Interested Party City of Los Angeles
  richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com; cindy.mitchell@hoganlovells.com;
  rick-wynne-7245@ecf.pacerpro.com

- Chelsea Zwart on behalf of Petitioning Creditor Star Hardware, Inc.
  czwart@smsm.com, service@cgdrlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          F 9013-3.1.PROOF.SERVICE