**BRYAN CAVE LEIGHTON PAISNER LLP**
Sharon Z. Weiss (State Bar No.: 169446)
*sharon.weiss@bclplaw.com*
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Jarret P. Hitchings (Admitted *Pro Hac Vice*)
*jarret.hitchings@bclplaw.com*
One Wells Fargo Center
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:    (704) 749-8999
Facsimile:    (704) 749-8990

*Attorneys for Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:24-bk-11057-DS |
| Oceanwide Plaza LLC, | Hon. Deborah J. Saltzman |
| Debtor and Debtor-in-Possession. | Chapter 11 |
| | **MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026); MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Declarations of Bradley D. Sharp and Jeffrey Azuse Filed Concurrently Herein] |
| | Date:    April 9, 2026<br>Time:    10:00 a.m. PT<br>Place:    Ctrm 1639 / Via ZoomGov<br>            255 East Temple Street<br>            Los Angeles, CA 90012 |

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     JURISDICTION AND VENUE.................................................................................... 2

III.    BACKGROUND ......................................................................................................... 2

        A.      Description and History of Debtor's Business and a Summary of the
                Circumstances Which Led to the Filing of this Case ....................................... 2

                1.      Debtor's Business Operations ............................................................... 2

                2.      Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize.......... 3

                3.      The State Court Action........................................................................... 4

                4.      Cooperation with LA City to Address Security Issues Caused by
                        International Attention ........................................................................... 5

                5.      Pre-Petition Financing Arrangements ................................................... 6

        B.      Events During Debtor's Chapter 11 Case ........................................................ 7

                1.      Employment of Professionals and Consultants ..................................... 7

                2.      Claims Bar Date .................................................................................... 7

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE DISCLOSURE
        STATEMENT ............................................................................................................ 13

V.      SUMMARY OF THE PLAN ..................................................................................... 15

VI.     THE COURT SHOULD CONFIRM THE PLAN ....................................................... 19

        A.      Standard For Confirmation of a Chapter 11 Plan .......................................... 19

        B.      The Plan Will Satisfy All Applicable Requirements of 11 U.S.C. § 1129 ........... 20

                (a)     Feasibility Standard ............................................................................. 36

                (b)     A Reasonable Probability Exists That Sufficient Cash Will Be Available to
                        Make All Required Effective Date Payments ....................................... 37

                (c)     A Reasonable Probability Exists That Sufficient Cash Will Be Available to
                        Make All Required Future Payments .................................................... 38

        C.      11 U.S.C. § 1129(b): The Plan Satisfies the Requirements for Confirmation Over
                the Objection of Non-Consenting Classes........................................................ 39

        D.      The Exculpation and Injunction Provisions of the Plan Are Allowed Pursuant to 11
                U.S.C. §§ 105(a) and 1123. .................................................................................. 42

ii

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

VII.    CONCLUSION ............................................................................................................... 44

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*In re Acequia, Inc.*,
  787 F.2d 1352 (9th Cir. 1986) ............................................................................36, 37

5

*Bank of America Nat'l Trust & Savings Ass'n v. 203 N. LaSalle St. Partnership*,
  526 U.S. 434, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999) ......................................31

6

7

*Blixseth v. Credit Suisse*,
  961 F.3d 1074 (9th Cir. 2020) ................................................................................42

8

9

*In re Brotby*,
  303 B.R. 177 (B.A.P. 9th Cir. 2003) ...........................................................14, 27, 37

10

*In re Cardinal Congregate I*,
  121 B.R. 760 (Bankr. S.D. Ohio 1990) ...................................................................14

11

12

*In re City of San Bernardino*,
  566 B.R. 46 (Bankr. C.D. Cal. 2017) ......................................................................44

13

14

*In re Coastal Equities, Inc.*,
  33 B.R. 898 (Bankr. S.D. Cal. 1983) .......................................................................29

15

*In re Data Sys., Inc.*,
  561 B.R. 838 (Bankr. D. Or. 2016) .........................................................................20

16

17

*In re Diversified Investors Fund XVII*,
  91 B.R. 559 (Bankr. C.D. Cal. 1988) ......................................................................14

18

19

*In re Eastern 1996D Limited Partnership*,
  2014 Bankr. LEXIS 5085 (Bankr. N.D. Tex. 2014) ................................................39

20

*In re Future Energy Corp.*,
  83 B.R. 470 (Bankr. S.D. Ohio 1988) .....................................................................29

21

22

*In re Genesis Health Ventures, Inc.*,
  266 B.R. 591 (Bankr. D. Del. 2001) ........................................................................20

23

24

*In re Greate Bay Hotel & Casino, Inc.*,
  251 B.R. 213 (Bankr. D.N.J. 2000) .........................................................................20

25

*Matter of Greystone III Joint Venture*,
  995 F.2d 1274 (5th Cir. 1991) .................................................................................21

26

27

*In re Islet Sciences, Inc.*,
  640 B.R. 425 (Bankr. D. Nev. 2022) .......................................................................20

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

*In re Johns-Manville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986) ........................................................................40

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988) .............................................................................19, 20

*In re L & J Anaheim Assocs.*,
  995 F.2d 940 (9th Cir. 1993) .................................................................................22

*In re Leslie Fay Cos.*,
  207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................................................28

*In re Mcorp Fin., Inc.*,
  137 B.R. 219 (Bankr. S.D. Tex. 1992) ...................................................................40

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000) ...................................................................................27

*In re Reg'l Bldg. Sys.*,
  251 B.R. 274 (Bankr. D. Md. 2000) .......................................................................44

*In re Sagewood Manor Assoc. Ltd. P'ship*,
  223 B.R. 756 (Bankr. D. Nev. 1998) ......................................................................37

*In re Shenandoah Realty Partners, L.P.*,
  248 B.R. 505 (W.D. Va. 2000) ..............................................................................44

*In re Sierra-Cal*,
  210 B.R. 168 (Bankr. E.D. Cal. 1997) ...................................................................27

*In re Sound Radio, Inc.*,
  93 B.R. 849 (Bankr. D.N.J. 1988) ..........................................................................30

*In re Station Casinos, Inc.*,
  No. 09-52477-GWZ, 2010 WL 11492265 (Bankr. D. Nev. Apr. 9, 2010) .............44

*Steelcase Inc. v. Johnston (In re Johnston)*,
  21 F.3d 323 (9th Cir. 1994) ...................................................................................21

*In re Sylmar Plaza, L.P.*,
  314 F.3d 1070 (9th Cir. 2002) ...............................................................................28

*Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*,
  229 B.R. 720 (Bankr. W.D. Tenn. 1999) ...............................................................27

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y.) *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988) ............. 29, 30

*In re Trans World Airlines, Inc.*,
  185 B.R. 302 (Bankr. E.D. Mo. 1995) ...................................................................27

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

*In re Transwest Resort Props., Inc.*,
    881 F.3d 724 (9th Cir. 2018) .............................................................................................. 19

*U.S. v. Energy Res. Co. Inc.*,
    495 U.S. 545 (1990) ........................................................................................................... 36

*In re WCI Cable, Inc.*,
    282 B.R. 457 (Bankr. D. Or. 2002) ................................................................................... 43

**Federal Statutes and Rules**

11 U.S.C. § 105(a) ................................................................................................................... 42

11 U.S.C. § 327 ........................................................................................................................ 29

11 U.S.C. § 328 ........................................................................................................................ 29

11 U.S.C. § 329 ........................................................................................................................ 29

11 U.S.C. § 330 ........................................................................................................................ 29

11 U.S.C. § 331 ........................................................................................................................ 29

11 U.S.C. § 365 ........................................................................................................................ 25

11 U.S.C. § 503(b) ................................................................................................................... 29

11 U.S.C. § 507(a)(4)(A) ......................................................................................................... 17

11 U.S.C. § 507(a) (5) ............................................................................................................. 17

11 U.S.C. § 1122(a) ................................................................................................................. 20

11 U.S.C. § 1123(a)(1) ....................................................................................................... 15, 22

11 U.S.C. § 1123(a)(2) ............................................................................................................. 22

11 U.S.C. § 1123(a)(3) ............................................................................................................. 23

11 U.S.C. § 1123(a)(4) ............................................................................................................. 23

11 U.S.C. § 1123(a)(5) ....................................................................................................... 23, 24

11 U.S.C. § 1123(a)(6) ............................................................................................................. 24

11 U.S.C. § 1123(a)(7) ....................................................................................................... 24, 30

11 U.S.C. § 1123(b)(1) ............................................................................................................. 25

11 U.S.C. § 1123(b)(2) ............................................................................................................. 25

11 U.S.C. § 1123(b)(3) ....................................................................................................... 19, 26

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

11 U.S.C. § 1123(b)(4) ........................................................................................................ 26

11 U.S.C. § 1123(b)(5) ........................................................................................................ 26

11 U.S.C. § 1123(b)(6) ............................................................................................. 20, 25, 26

11 U.S.C. § 1124(1) ............................................................................................................ 22

11 U.S.C. § 1125(a)(1) ........................................................................................................ 13

11 U.S.C. § 1126(c) .................................................................................................. 33, 34, 36

11 U.S.C. § 1126(d) ...................................................................................................... 33, 34

11 U.S.C. § 1126(f) ............................................................................................................ 34

11 U.S.C. § 1126(g) ............................................................................................................ 34

11 U.S.C. § 1129(a)(1) ................................................................................................. 20, 26

11 U.S.C. § 1129(a)(2) ................................................................................................. 26, 27

11 U.S.C. § 1129(a)(3) ............................................................................................. 27, 28, 29

11 U.S.C. § 1129(a)(4) ........................................................................................................ 29

11 U.S.C. § 1129(a)(5) ............................................................................................. 24, 29, 30

11 U.S.C. § 1129(a)(6) ........................................................................................................ 30

11 U.S.C. § 1129(a)(7) ................................................................................................. 30, 31

11 U.S.C. § 1129(a)(8) ................................................................................................ *passim*

11 U.S.C. § 1129(a)(9) ............................................................................................. 34, 36, 36

11 U.S.C. § 1129(a)(9)(A) .................................................................................................... 35

11 U.S.C. § 1129(a)(9)(B) .................................................................................................... 35

11 U.S.C. § 1129(a)(9)(C) .................................................................................................... 35

11 U.S.C. § 1129(a)(10) ............................................................................................. 18, 20, 36

11 U.S.C. § 1129(a)(11) ............................................................................................. 36, 37, 38

11 U.S.C. § 1129(a)(12) ...................................................................................................... 38

11 U.S.C. § 1129(a)(14) ...................................................................................................... 39

11 U.S.C. § 1129(a)(15) ...................................................................................................... 39

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

11 U.S.C. § 1129(a)(16) ........................................................................................... 39

11 U.S.C. § 1129(b)(1) ..................................................................................... *passim*

11 U.S.C. § 1129(b)(1) ..................................................................................... 34, 40

11 U.S.C. § 1129(b)(2)(B)(ii) ................................................................................. 18

11 U.S.C. § 1129(b)(2)(C) ................................................................................. 41, 42

11 U.S.C. § 1129(a) ................................................................................................. 20

11 U.S.C. § 1141(c) ........................................................................................... 43, 44

11 U.S.C. § 1146(a) ........................................................................................... 31, 33

28 U.S.C. § 157 ......................................................................................................... 2

28 U.S.C. § 1334 ....................................................................................................... 2

28 U.S.C. § 1408 ....................................................................................................... 2

28 U.S.C. § 1409 ....................................................................................................... 2

Federal Rule of Bankruptcy Procedure 2002 ........................................................... 2

Federal Rule of Bankruptcy Procedure 2002(c)(3) ................................................ 44

Federal Rule of Bankruptcy Procedure 3016 ........................................................... 2

Federal Rule of Bankruptcy Procedure 3017 ........................................................... 2

Federal Rule of Bankruptcy Procedure 9019 ......................................................... 10

**Other Authorities**

7 *Collier on Bankruptcy* ¶ 1122.03[2] (Alan N. Resnick & Henry J. Sommer eds.,
16th ed. 2026) ................................................................................................... 22

7 *Collier on Bankruptcy* ¶ 1129.02[16] (Alan N. Resnick & Henry J. Sommer eds.,
16th ed. 2026) ................................................................................................... 39

7 *Collier on Bankruptcy* ¶ 1129.03[3][a] (Alan N. Resnick & Henry J. Sommer
eds., 16th ed. 2026) .......................................................................................... 40

MOTION FOR ORDER CONFIRMING DEBTOR'S THIRD
AMENDED LIQUIDATING CHAPTER 11 PLAN

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

TO: THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND ALL OTHER PARTIES IN INTEREST:

## I.    INTRODUCTION

The Plan[1] is a liquidating Chapter 11 plan that provides for the sale of substantially all Estate Assets pursuant to the Purchase and Sale Agreement ("PSA"). The Sale of the Real Property and Debtor's other Assets[2] that constitute PSA Property will close on or before the Effective Date, after which all Sale Proceeds and remaining Assets will be transferred to a Liquidating Trust for administration and distribution in accordance with the Bankruptcy Code. The Liquidating Trust will administer the remaining Assets, resolve remaining Claims, and make distributions consistent with the Plan. Upon completion of all Plan obligations, Debtor will be dissolved. The Plan satisfies all requirements for confirmation under section 1129(a) and (b) of title 11 of the United States Code (the "Bankruptcy Code").

Debtor engaged in an extensive marketing effort and conducted discussions with numerous potential purchasers to liquidate its Assets at the highest possible price. Through this process, Debtor identified the Purchaser, as defined below, and believes that the purchase price offered by Purchaser represents the highest and best offer for the PSA Property. The Plan provides a means to sell the PSA Property and return the highest possible recovery to creditors, brings to conclusion years of contentious litigation, and provides a path forward for Debtor's Real Property to be further developed and the planned Project completed. No alternative course of action, whether inside or outside of bankruptcy, provides a more viable means to maximize the value of this high-profile asset. The Plan, therefore, should be confirmed.

---

[1]    Any capitalized term not otherwise defined in this Motion shall have the meaning ascribed to it in the Plan.
[2]    For ease of reference, "Assets" is defined at Section 1.1.10 of the Plan and means all or substantially all of Debtor's right, title, and interest of any nature in property of any kind, wherever located, including as specified in Section 541 [of the Bankruptcy Code]. "PSA Property" is defined in the Plan at Section 1.1.98 and means, collectively, all of Debtor's right, title and interest in and to (a) the Real Property, (b) the appurtenances thereto, (c) the improvements thereon, (d) the personal property related thereto, and (e) the intangible property related thereto, all as more particularly described in the PSA.

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## II.    JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, as well as the Standing Orders of Reference governing the referral of bankruptcy matters and appeals within the Central District of California. Debtor consents to the Court's entry of final orders and judgments in connection with this Motion to the extent such consent is necessary under Article III of the United States Constitution. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein include section 1129 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, and 3017.

## III.    BACKGROUND

### A.    Description and History of Debtor's Business and a Summary of the Circumstances Which Led to the Filing of this Case

#### 1.    Debtor's Business Operations

Debtor, a Los Angeles-based real estate developer, is an American subsidiary of a global Chinese conglomerate. Oceanwide Real Estate Group (USA) Corp. ("OREG"), a Delaware corporation, is Debtor's sole member and its manager. Debtor is part of a corporate family consisting of senior limited liability companies and is indirectly owned by Oceanwide Holdings Co. Ltd. ("Oceanwide Holdings"), based in Beijing, China. Debtor was organized in 2013 to purchase the Real Property for $174 million. At the time, the Real Property consisted of an asphalt parking lot and a small two-story building.

Debtor owns Oceanwide Plaza (the "Project"), an approximately 60% complete mixed-use development project in downtown Los Angeles. The Project is situated on the Real Property. In connection with the Project, Debtor additionally acquired certain personal property Assets some of which are in Debtor's possession and some of which are in the possession of third parties. The Project is across from Crypto.com Arena and consists of three uncompleted high-rise residential towers: two towers are 42 stories tall, and the other is 55 stories tall, which includes a planned 11-story hotel. Each tower is built on a 6-story podium, consisting of parking, retail, dining, and office space. The Project includes a 2-story-high LED screen wrapped around the Figueroa, 11th, and 12th street facades. The Project's external construction is largely complete, but portions of the Project's

2

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

internal construction are unfinished. The Project is part of the Los Angeles Sports and Entertainment District, which includes the Convention Center, Crypto.com Arena, LA Live, and the two 30-plus story Circa luxury apartment towers at 12th and Figueroa Streets. It is also part of a broader plan and long-standing goal of the City of Los Angeles ("LA City") to develop this section of downtown Los Angeles into a Times Square-like destination zone with multi-story LED screens, entertainment venues, and night-time dining and clubs.

Debtor's pre-petition funding arrangements are set forth in Section (A)(5) below. For context, prior to the Petition Date, in Debtor's view, it largely self-funded Project construction. However, for short-term needs, L.A. Downtown Investment LP ("LADI") provided Oceanwide with up to $325 million in construction financing (the "Loan"). LADI disbursed $136.5 million to Oceanwide, and Oceanwide re-paid $11 million in principal, reducing the principal owed to $125.5 million. In 2014, Debtor hired RTKL Associates, Inc., now known as Arcadis, as its architect, and Lendlease (US) Construction, Inc. ("Lendlease") as construction manager, to begin work on the Project and entered into separate contracts with them. In 2015, the existing structure and parking lot were demolished, and excavation began. Debtor hired Swinerton Management Consulting ("Swinerton") to oversee the construction phase. In 2016, after a bidding process, Debtor hired Lendlease as its general contractor to construct the Project and Lendlease then hired over forty subcontractors. In March 2018, the Project "topped-out": the high-rise towers were finished to their top floors. Shortly thereafter, Debtor began loan negotiations with JPMorgan Chase Bank, N.A. for a $1.1 billion loan facility. These negotiations continued into 2019 but were ultimately not successful.

### 2.    Debtor's Liquidity Struggles and Pre-Petition Efforts to Reorganize

In November 2018, Debtor began to have difficulty obtaining additional capital transfers from its affiliates in China. Debtor believes that these funding difficulties arose for several reasons, including regulatory restrictions by the Chinese government on currency transfers and other macro-economic conditions. As a result, Debtor fell far behind in its obligations to pay Lendlease and other vendors. Debtor understands that as a result, Lendlease demobilized most of its subcontractors by mid- January 2019, but continued to perform a small amount of work thereafter. Without access

3

1    to capital, Debtor then pursued three alternative plans beginning in late January 2019: 1) find

2    alternative construction financing to complete the Project; 2) enter into a joint venture agreement to

3    complete the Project; or 3) sell the Project.

4        Debtor attempted to obtain alternative construction financing from January 2019 to

5    September of 2020, but was unable to close on such financing. Debtor believes that its efforts to

6    obtain alternative financing were negatively impacted by the COVID-19 pandemic and related

7    economic slowdown, which impacted both national and global lending markets. Debtor then shifted

8    to primarily focus on selling the Project in May 2021. Prior to the Petition Date, Debtor was in

9    serious negotiations with two potential purchasers who were in the process of conducting due

10   diligence: one who signed a letter of intent in August 2023 and the other who signed a letter of

11   intent in September 2023.

12           3.     The State Court Action

13       On January 31, 2019, a Lendlease subcontractor, Webcor Construction, LP ("Webcor")

14   sued to foreclose on its mechanic lien in Los Angeles Superior Court case number 19STCV03357

15   (the "State Court Action"),[3] the first of 44 foreclosure cases filed against Oceanwide or Lendlease,

16   including Lendlease suing Oceanwide. The State Court Action involved disputes regarding the

17   validity, priority, and amounts of various claims against the Project stemming from Debtor's non-

18   payment of contractors, and the resulting mechanic's liens recorded against the Real Property.

19   Lendlease and 27 contractors also sued LADI in the State Court Action for a judgment holding their

20   liens were superior to LADI's deed of trust; Lendlease and seven contractors also named LADI's

21   title insurance company, Chicago Title Insurance Company ("CTIC"). Webcor also sued for

22   declaratory relief that LADI's deed of trust is invalid and unenforceable. LADI and CTIC cross-

23   sued Lendlease. Most of the foreclosure cases were consolidated in the State Court Action.

24       The State Court Action involved multiple phases of trial conducted over several years. On

25   March 22, 2023, the Superior Court granted LADI's cross-motion for summary adjudication and

26   denied Lendlease's and Webcor's cross-motion, establishing that the LADI Deed of Trust has

27

28   [3]     The description of the State Court Action provided in this Motion is intended as a summary only and not intended to be a complete description of all matters asserted and addressed in the State Court Action.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

priority over mechanic's liens for work commencing after July 20, 2015. The Phase I Trial (Statements of Decision dated November 30, 2023 and December 19, 2023), together with a later settlement in connection with Webcor, resulted in the court awarding Lendlease damages against Debtor totalling $169,948,122.23 for breach of contract, $121,866,906 in prompt payment penalties, and $2,512,743 in prejudgment contractual interest. The Phase III Trial (Statement of Decision dated July 3, 2024) determined the reasonable value of Webcor's mechanic's lien at $51 million.

The Phase II Trial (Statement of Decision dated February 25, 2025) addressed issues that were pending as of the Petition Date. After relief from stay was granted, as described in Section B(3) below, the state court found that (1) the LADI Deed of Trust is valid, enforceable, and senior in priority to all mechanic's liens; (2) Lendlease subordinated its mechanic's liens by operation of an Indemnity Agreement; and (3) Lendlease breached the Indemnity Agreement and CTIC is entitled to recover damages including attorney's fees it paid on LADI's behalf.

A fourth phase of trial on damages owed by Lendlease to CTIC was originally scheduled for November 19, 2025. However, the presiding judge in the State Court Action repeatedly continued the start of the Phase IV trial because the parties indicated they were close to completing the Global Settlement Agreement. The negotiations which culminated in the Global Settlement Agreement began in Spring 2025, involving several mediation sessions with the Honourable Randall Newsome (Ret.), including a fourth session in April 2025, and at least two settlement conferences with Superior Court Judge Timothy Dillon ordered by the Superior Court.

After months of settlement negotiations, the parties reached the Global Settlement Agreement. As part of the Global Settlement Agreement, which was approved by this Court on February 3, 2026, and the state court entered an agreed final judgment on January 29, 2026. This multi-year, multi-phase litigation was consuming substantial estate resources and impacted Debtor's efforts to sell any of its Assets.

4.    Cooperation with LA City to Address Security Issues Caused by
International Attention

The Project originally garnered international attention for its scale and ambition and its expected substantial economic impact on downtown Los Angeles, including job creation and a

5

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

boost to the local economy. It later drew a different kind of focus. Despite Debtor's lack of funds pre-petition, its security service had long agreed to provide two guards on a 24/7 full time basis. There were notable incidents, however, in the first quarter of 2024 including a group of graffiti artists and base jumpers that illegally accessed the unfinished skyscraper. These incidents were widely covered in the media and heightened the need for immediate further security measures.

On February 9, 2024, the Los Angeles City Council unanimously adopted a resolution stating the Project "has been a blight on Downtown Los Angeles' South Park neighborhood," noting criminal activity had "increased exponentially" in early 2024, including trucks ramming into the Project's gates and driving into the building to facilitate copper wire theft, trespassers climbing hundreds of feet to tag windows with graffiti, and individuals base jumping from the top floor of the Project. LA City also issued an abatement notice ordering Debtor to remove the graffiti and secure the property. Debtor was unable to comply with the abatement orders due to its lack of funds and the City Council voted to allot nearly $4 million to remove graffiti and secure the Real Property.

From sometime in February 2024 through about mid-May 2024, the Los Angeles Police Department had a constant presence at the site. The LAPD allocated significant manpower to this effort to secure the perimeter of the Real Property. The LAPD began installing a 14-foot high, stagger-perforated steel-sheet fence (i.e., anti-climb fencing) around the Project on February 23, 2024, and started to install razor wire in an area deemed particularly prone to breach. Debtor took over these security efforts once it secured DIP financing pursuant to the DIP Facility Orders. Since the DIP Facility began, Debtor has safeguarded the Real Property, paid the cost of security, increased to six 24/7 private security guards, and implemented other security measures to prevent trespassing such as the installation of razor wire and blocking off entrances to protect the Real Property and other Assets located at the Project and reduce access for potential trespassers.

### 5.    Pre-Petition Financing Arrangements

Debtor has self-funded construction of the Project with approximately $956.6 million in capital transfers and received approximately $118.4 million in inter-company loans (summarized below). The capital transfers made up about 80% of the funding. For short-term needs, and as noted above, Debtor obtained the construction Loan from LADI. In sum, between the self-funded capital

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

transfers and intercompany loans, and the Loan disbursements made by LADI, Debtor has invested approximately $1.20 billion in the Project's construction:

| Capital and Debt | Amount |
|---|---|
| *Capital Transfer* | |
| China Oceanwide Holdings Limited | $956,527,033.22 |
| **Subtotal** | **$956,527,033.22** |
| *Debt* | |
| L.A. Downtown Investment LP | $136,500,000.00 |
| Oceanwide Real Estate Group (USA) Corp. | $95,000,000.00 |
| Oceanwide Investment Three (Hungary) Limited Liability Company | $23,400,000.00 |
| **Subtotal** | **$254,900,000.00** |
| **TOTAL** | **$1,211,427,033.22** |

### B.     Events During Debtor's Chapter 11 Case

#### 1.     Employment of Professionals and Consultants

Debtor has employed, and the Court has authorized the employment of, the following professionals: Bryan Cave Leighton Paisner, LLP ("BCLP") as chapter 11 bankruptcy counsel [ECF No. 298]; Stretto, Inc. ("Stretto") as claims, noticing and solicitation agent ("Claims Agent") [ECF No. 315]; Bradley Sharp and Development Specialists, Inc. ("DSI") as Debtor's Chief Restructuring Officer ("CRO") [ECF No. 306]; GlassRatner Advisory and Capital Group LLC dba B. Riley Advisory Services as Financial Advisor [ECF No. 311]; and Colliers International Greater Los Angeles, Inc. ("Colliers") and Hilco Real Estate, LLC ("Hilco," and collectively with Colliers, the "Real Estate Brokers") as real estate brokers [ECF No. 268].

#### 2.     Claims Bar Date

At a hearing dated March 29, 2024, and by order of the Court, the Court established a deadline for creditors to file proofs of claim against Debtor. [ECF No. 89]. On or about April 18, 2024, Debtor served its Notice of Bar Date for Filing Proofs of Claim in a Chapter 11 Case [ECF No. 159] which provided for a general bar date for non-governmental creditors of June 26, 2024, and a governmental claim bar date of September 7, 2024.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

3. DIP Financing

The ability of Debtor to continue to protect and maintain the Real Property and other Assets located at the Real Property during the pendency of this Chapter 11 Case was dependent on Debtor acquiring post-petition financing, as Debtor has no other source of funds to pay security or other costs. On May 16, 2024, the Court entered its *Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Granting Liens and Superiority Administrative Expense Claims, and (III) Modifying the Automatic Stay* [ECF No. 229] (the "Initial DIP Facility Order"), which approved a $9.3 million debtor-in-possession financing facility from DIP Lender.

Including the Initial DIP Facility Order, the DIP Facility Orders have been amended or extended a total of five times pursuant to the *Court's Order Approving Stipulation Authorizing Debtor to Increase Post-Petition Financing for Critical Expenses and Extend Maturity Date* [ECF No. 622], the *Order Approving Second Stipulation Authorizing Debtor to Amend Post-Petition Financing for Critical Expenses and Extend Maturity Date* [ECF No. 665], the *Order Approving Third Stipulation Authorizing Debtor to Amend Post-Petition Financing For Critical Expenses and Extend Maturity Da*te [ECF No. 738], and the *Order Approving Fourth Stipulation Authorizing Debtor to Increase Post-Petition Financing for Critical Expenses and Extend Maturity Date* [ECF Nos. 825, 833]. The fourth amendment increased the maximum principal balance of the DIP Facility to $19,250,326 and extended the maturity date through March 31, 2026. Unless otherwise agreed to by the Holder of an Allowed DIP Facility Claim and Debtor, each Holder of an Allowed DIP Facility Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for its Allowed DIP Facility Claim, an amount of Cash equal to the unpaid portion of such Allowed DIP Facility Claim on the date the Sale is closed from the Sale Proceeds, with priority second only to Allowed Secured Tax Claims as set forth in the distribution waterfall established by the Global Settlement Agreement approved by the 9019 Order and the DIP Facility Orders. Under the DIP Facility Orders and related documents, the DIP Lender has a lien on substantially all Debtor's Assets.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

4.      Limited Relief from Stay Regarding the State Court Action

On March 28, 2024, LADI submitted its *Motion for Relief from the Automatic Stay as to Nonbankruptcy Action* [ECF No. 80] (the "Relief from Stay Motion") alleging, among other things, that LADI's dispute with Lendlease concerning the priority of their respective liens should be resolved in the State Court Action. On April 11, 2024, Debtor submitted its Objection to LADI's Motion for Relief From Stay [ECF No. 141] (the "Debtor Stay Relief Objection"). Lendlease filed a joinder and supporting evidence to the Debtor Stay Relief Objection [ECF No. 143]. The Court held a hearing on the Relief from Stay Motion on May 15, 2024, and, on May 29, 2024, the Court entered its *Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362* [ECF No. 241] (the "Stay Relief Order") which, among other things, terminated the automatic stay as to Debtor and Debtor's estate for all parties, for the purposes stated in the Stay Relief Order, and stated that such parties could proceed to a final judgment, including appeals, in accordance with non-bankruptcy law. The automatic stay was not terminated with respect to any effort to enforce any judgment rendered in the State Court Action or to collect any claim against Debtor.

5.      U.S. Trustee's Motion to Dismiss Denied

On June 6, 2024, the US Trustee filed its *Notice of Motion and Motion Under 11 U.S.C. § 1112(b) to Dismiss, Convert, or Direct the Appointment of a Chapter 11 Trustee, or for a Deadline to Obtain Insurance* [ECF No. 294] (the "UST Motion to Dismiss"). Oppositions to the UST Motion to Dismiss were filed by Debtor, LA City, and Lendlease [ECF Nos. 333, 334 and 342] and joinders to the oppositions were filed by creditors Bragg Investment Co., Inc. [ECF No. 348], ACCO Engineered Systems, Inc., Bapko Metal, Inc., and Martin Bros./Marcowall, Inc. [ECF No. 349]. The UST filed its Omnibus Reply on July 18, 2024 [ECF No. 350]. At the hearing held on July 25, 2024, the Court denied the UST Motion to Dismiss, and entered its order to that effect on July 26, 2024. [ECF No. 371].

6.      Settlement-Efforts / Mediation with Consultation Parties

In late April 2024 / early May 2024, Debtor, LADI, Lendlease, CTIC and LA City started to engage in serious negotiations to resolve objections to the requested DIP financing and to work on a path to move the chapter 11 case forward consensually. The informal settlement efforts resulted

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

in a consensual resolution of the Initial DIP Facility Order that included an agreement to convene confidential regular meetings with these parties (then known as the "Consultation Parties") and an agreement to mediate with the Honorable Randall Newsome (Ret.). A related *Order Approving Stipulation to Approve Confidentiality and Nondisclosure Agreement* was entered on June 25, 2024. [ECF No. 292].

Debtor and the Consultation Parties engaged in several mediation sessions to attempt to resolve, among other things, the disputes among them which were part of the State Court Action and disputes between the parties in this Chapter 11 Case. These formal proceedings supplemented numerous attempts by the parties to resolve the disputed issues without the assistance of a neutral.

As set forth in *Debtor and Debtor-In-Possession's Motion for Approval of Settlement Agreement and Related Relief Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. 789], as a result of this mediation process and extensive subsequent discussions between Debtor, Lendlease, LADI, CTIC and others, the parties ultimately reached a global settlement of the issues between them which was memorialized in the Global Settlement Agreement. As reflected above, the Global Settlement Agreement, among other things, sets forth the parties' agreement regarding the priority of the LADI Secured Claim and LL Secured Claims, sets forth the amount in which these Secured Claims have been Allowed, and provides for the resolution of the State Court Action through a stipulated judgment, which has been entered.

7.      Sale and Marketing Process for the Real Property.

The sale of the PSA Property is crucial to the consummation of the Plan and represents the fastest path to completing construction of the Project, and the only path with the possibility of completing the Project prior to the 2028 Olympics. During the course of this Chapter 11 Case, Debtor has undertaken extensive efforts to market and sell the Real Property and other Assets. Debtor believes that a sale of the Real Property through this Chapter 11 case on the terms set forth in the Plan is the best - and perhaps only - way to maximize its value and provide creditor recoveries. In support of that effort, Debtor engaged the Real Estate Brokers as joint real estate brokers for the Real Property.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

The marketing process drew interest from a broad group of potential buyers. By mid-2024, ninety-one (91) parties had signed confidentiality agreements, and project tours commenced in late July 2024. The Real Property's specialized design presented reuse challenges, including the size of the condominium units and structural choices made during construction. The bidder universe included both developers willing to complete the Project as originally designed and groups evaluating alternative uses. Bidding procedures were approved by the Bankruptcy Court on June 21, 2024 ("Bidding Order"), including authorization to conduct an auction process. [ECF No. 276]. The auction was scheduled to run in person and online and required bidders to meet strict qualification standards, including demonstrated development experience and a viable financing plan.

Debtor received several indications of interest, but the unique nature of the Real Property did not allow those transactions to proceed to the deposit stage, requiring Debtor to ask the Bankruptcy Court to modify the dates in the Bidding Order and ultimately to vacate the dates.

By August 2025, the field had narrowed to two primary bidders, one domestic (i.e., the Purchaser) and one international. Debtor and its Professionals maintained intensive engagement with multiple interested parties. Following these extensive marketing efforts and negotiations with multiple prospective purchasers over nearly a two-year period, Debtor determined that the value of the estate would be best maximized through a sale to Purchaser, or through any Alternative Transaction, pursuant to the terms of the PSA. Given extensive marketing that has occurred and the discussions with multiple buyers before and after this Chapter 11 Case began, Debtor concluded that any attempt at this juncture to find an alternative buyer through a further competitive auction process be futile, waste time, and add avoidable administrative expense. At the same time, the PSA makes clear that Debtor maintains its "fiduciary out" to sell to a higher and better bidder.

On February 16, 2026, Debtor and Purchaser entered into the PSA which provides, among other things, that Purchaser will acquire the PSA Property for consideration of Four Hundred Seventy Million Dollars ($470,000,000.00), consisting of (i) the Credit Bid Consideration of

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

approximately Four Hundred Million Dollars ($400,000,000.00),[4] comprised of a credit bid of the LADI Secured Claim and LL Secured Claims and (ii) the Cash Consideration of up to Seventy Million Dollars ($70,000,000.00).

*Fiduciary Out Provision*. The PSA includes provisions that preserve Debtor's fiduciary duties to its creditors and estate. Pursuant to Section 9.5 of the PSA, between the date of execution of the PSA and entry of the Confirmation Order (which shall constitute the Sale Order as defined in the PSA), Debtor may terminate the PSA if, upon written advice of its counsel, Debtor determines that pursuing the transaction with Purchaser instead of an alternative transaction with a third party is inconsistent with its fiduciary obligations under law; provided, however, that to terminate under this provision: (i) the Alternative Transaction must provide for (a) a cash purchase price equal to at least the consideration provided for under the PSA with payments in full of the LADI Secured Claim and the LL Secured Claims at the closing of the Alternative Transaction, plus three percent (3%) of the consideration, and (b) an outside closing date of forty-five (45) days after the termination of the PSA, which date cannot be extended; (ii) Debtor shall pay in full in cash the DIP Facility Claim on the date the PSA is terminated; and (iii) the deposit shall be returned to Purchaser immediately, automatically, and unconditionally. For the avoidance of doubt, Debtor may not seek to terminate the PSA under the fiduciary out provision on the date of and after the entry of the Confirmation Order.[5]

Notwithstanding any other provision of the Plan, in the event that Debtor terminates the PSA pursuant to the fiduciary out provision set forth in Section 9.5 of the PSA, or otherwise consummates an Alternative Transaction in lieu of the Sale to Purchaser, such Alternative Transaction shall be deemed approved under the Plan without the need for any amendment, modification, or supplement to the Plan, and all references herein to the Sale, the PSA, and the

---

[4]    KPC Plaza, LLC, an affiliate of Purchaser, acquired the LADI Secured Claim from LADI, and Lendlease and DTLA Funding hold and control the LL Secured Claims. The Credit Bid Consideration will be higher than $400 million at Closing. Pursuant to the Global Settlement Agreement and 9019 Order, the LADI Secured Claim accrues interest at the rate of $60,000 per diem from and after November 1, 2025, together with reasonable attorneys' fees, costs, expenses, and other Reimbursable Costs incurred by or on behalf of the Holder of the LADI Secured Claim, which amounts accrue interest at the rate of 10% simple per annum from and after the date paid.

[5]    The summary description of Alternative Transaction is qualified in its entirety to the definition of Alternative Transaction in the PSA. In the event of an inconsistency between the two, the definition in the PSA shall control.

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

Purchaser shall be deemed to refer to such Alternative Transaction and the purchaser thereunder, as applicable, and the closing of either such transaction shall satisfy the conditions precedent to the Effective Date set forth in Article 11.2.

Debtor seeks approval of the PSA and Sale to Purchaser as set forth in the Plan and pursuant to the Confirmation Order, which shall constitute the Sale Order as defined in the PSA. The closing of the Sale of the PSA Property shall occur on the Closing Date, which shall occur after entry of the Confirmation Order and prior to the Effective Date. The PSA provides for potential extensions of the Closing Date under certain circumstances. Following the closing of the Sale on the Closing Date, the Sale Proceeds shall be used by Debtor and, on and after the Effective Date, the Liquidating Trustee, to satisfy Claims as further set forth in the Plan.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE DISCLOSURE STATEMENT

On February 25, 2026, the Court entered its *Order Granting Motion for Conditional Approval of Debtor's Combined Disclosure Statement and Plan of Liquidation (Dated February 23, 2026) and Providing Other Ancillary and Related Relief* [ECF No. 848] ("Solicitation Order") which, among other things, conditionally approved the Plan for solicitation purposes only. Debtor served the Solicitation Package, as defined in the Solicitation Order, on creditors and parties in interest on February 27, 2026. [ECF No. 856]. Debtor now respectfully requests that the Court grant final approval of the Disclosure Statement at the Confirmation Hearing. In support of this request, Debtor incorporates its arguments, authorities, and evidence set forth in its *Motion for Order Conditionally Approving the Combined Disclosure Statement and Plan of Liquidation (Dated February 23, 2026) and Providing Other Ancillary and Related Relief* [ECF 841] (the "Conditional Approval Motion").

Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The determination of whether a disclosure statement contains adequate information

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

13

1  is subjective and made on a case-by-case basis, considering the unique facts and circumstances of

2  each case, and is largely within the discretion of the bankruptcy court. *See In re Brotby,* 303 B.R.

3  177, 192 (B.A.P. 9th Cir. 2003); *In re Diversified Investors Fund XVII*, 91 B.R. 559, 564 (Bankr.

4  C.D. Cal. 1988) ("Precisely what constitutes adequate information in any particular instance will

5  develop on a case-by-case basis" and "[c]ourts will take a practical approach as to what is necessary

6  under the circumstances of each case"). Courts have recognized that the adequate information

7  standard is flexible, as "Congress left vague the standard for evaluating what constitutes adequate

8  information so as to permit a case-by-case determination based on the prevailing facts and

9  circumstances." *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990).

10         As set forth in the Conditional Approval Motion, the disclosures provided in the combined

11  Plan and Disclosure Statement ("Disclosure Statement Provisions") satisfy the adequate

12  information standard of Section 1125. The Disclosure Statement Provisions provide creditors and

13  parties in interest with, among other things: (i) a detailed description of Debtor's business

14  operations and the history of the Project; (ii) a summary of the events leading to the filing of this

15  Chapter 11 Case; (iii) a description of Debtor's Assets, including the Real Property; (iv) a

16  description of the PSA and the terms of the proposed Sale; (v) a summary of the Global Settlement

17  Agreement and the resolution of the State Court Action; (vi) a description of the classification and

18  treatment of all Claims and Equity Interests under the Plan; (vii) a liquidation analysis comparing

19  estimated recoveries under the Plan to those in a hypothetical Chapter 7 liquidation; (viii) a

20  description of the Liquidating Trust and the role of the Liquidating Trustee; (ix) a discussion of the

21  risk factors associated with the Plan; and (x) a description of the tax consequences of the Plan. This

22  information is sufficient to enable a hypothetical investor of each relevant Class to make an

23  informed judgment about the Plan. No party in interest has objected to the adequacy of the

24  information contained in the Disclosure Statement. Accordingly, Debtor respectfully requests that

25  the Court grant final approval of the Disclosure Statement pursuant to Section 1125 of the

26  Bankruptcy Code.

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF
LIQUIDATION

## V.    SUMMARY OF THE PLAN

The Plan is a liquidating plan under which Debtor will sell substantially all of its Assets and distribute the proceeds in accordance with the Bankruptcy Code. Under the Plan, the Cash Consideration of up to $70,000,000 will be applied to satisfy Secured Tax Claims, DIP Facility Claims, Administrative Claims, Professional Fee Claims, Priority Tax Claims, GAP Claims, and Other Priority Claims. In accordance with Section 1123(a)(1), Debtor has not classified DIP Facility Claims, Junior DIP Facility Claims (if applicable), Administrative Claims, GAP Claims, Priority Tax Claims, and Professional Fee Claims, as described in Article 3 of the Plan.

Additionally, Debtor anticipates that Secured Tax Claims, the LADI Secured Claim, the LL Secured Claims, and Other Priority Claims will be paid or otherwise satisfied or compromised in full pursuant to the terms of the Plan. Debtor does not anticipate that the consideration for the PSA Property under the PSA will be sufficient to pay Holders of Junior Secured Claims, or to provide a recovery for Holders of Claims in Classes junior to the Junior Secured Claims. However, Debtor maintains that the transaction contemplated by the Plan provides the greatest likelihood for recovery by junior Classes, through an Alternative Transaction contemplated by the Plan and/or by providing vendors, which comprise a substantial portion of the Junior Secured Claims and General Unsecured Claims Classes, with a potential opportunity to resume work related to the Project under a new owner with sufficient capital.

It is possible that the Sale to Purchaser may not be consummated and, in the event that the Sale to Purchaser is not consummated, any final sale price to an alternative purchaser may be lower than is proposed in the PSA, and if the Sale to Purchaser is not consummated the Real Property may not be sold and/or the Chapter 11 Case may be dismissed or converted to a Chapter 7 Case.

To the extent there are any disputes between Debtor or the Liquidating Trustee and a Holder of a Claim as to the amount or priority of payments due on such Claim under the terms of the Plan, the portion of the Sale Proceeds subject to such dispute, if any, will be deposited into the Disputed Creditor Reserve pending a Final Order of the Court with respect to such dispute, as further discussed in Section 10.2. of the Plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

A summary of the total Claims scheduled by Debtor and filed by creditors is below. Parties should refer to the Plan for a more complete description of the treatment of Claims:[6]

*Priority Tax Claims (Unclassified).* Debtor scheduled a total of approximately $145,000 in Priority Tax Claims. Approximately $285,196 in Priority Tax Claims have been asserted against Debtor in timely filed Proofs of Claim.

*Class 1 – Secured Tax Claims.* LA County Treasurer and Tax Collector ("County Tax Collector") hold Secured Tax Claims against the Real Property for delinquent property taxes (Assessor's ID# 5138-015-045). As of October 23, 2024, LA County filed amended Claim No. 2 asserting $28,320,728.76, which amount will continue to increase including with penalties and interest at 18% per annum through the Closing Date, as calculated by the County Tax Collector. The County Tax Collector has asserted that its Secured Tax Claim has an approximate balance of $39,625,190.28 as of March 2026, and no less than $357,930.48 will accrue each month on this Claim until paid. These claims are secured by statutory liens under California state law and have first priority in the distribution waterfall ahead of all other claims, including the DIP Facility Claims, LADI Secured Claim, and LL Secured Claims. Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable or different treatment, Holders of Secured Tax Claims will be paid in full as of the Effective Date and are therefore Unimpaired and deemed to accept the Plan. Notwithstanding the foregoing, the Purchaser, in its sole discretion, may elect to assume the Secured Tax Claims, and the obligations under the Plan to pay such Secured Tax Claims, through a Purchaser Assumption Event.

*Classes 2 & 3 – LADI Secured Claim (Class 2) and LL Secured Claims (Class 3).* The LADI Secured Claim results from the unpaid amount of the LADI Loan, plus interest and certain other costs due under the related Deed of Trust and Note, and the LL Secured Claims result from work completed on the Project by Lendlease and its subcontractors. All such Claims have been liquidated pursuant to the Global Settlement Agreement and the 9019 Order, are Allowed under the Plan, and are being compromised under the Plan. As of the date hereof, KPC Plaza owns the LADI Secured

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

---

[6]    In addition to prepetition Claims, Debtor incurred expenses that constitute Administrative Claims during the pendency of this Chapter 11 Case, including the DIP Facility Claims, GAP Claims and Professional Fee Claims - all as further discussed in the Plan.

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

Claims and Lendlease and DTLA Funding own the LL Secured Claims in the amounts set forth in Articles 4.3.2. and 4.3.3. of the Plan and allowed through the 9019 Order.

*Class 4 – Junior Secured Claims*. Certain additional parties have filed Proofs of Claim asserting their claims are Secured Claims, in whole or in part. Debtor is continuing to evaluate whether the Holders of Junior Secured Claims have properly perfected their asserted security interests; to the extent any such Claims are determined to be unperfected, such Claims shall be reclassified and treated as General Unsecured Claims in Class 6. Based on the Proofs of Claim filed by the Holders of Junior Secured Claims, the Junior Secured Claims total approximately $32,406,596. To the extent any Allowed Junior Secured Claims are not satisfied in full from the Sale Proceeds, the unsecured deficiency portion of such Claims shall be treated as General Unsecured Claims in Class 6.

*Class 5 – Other Priority Claims*. Debtor scheduled a total of approximately $60,600 in Other Priority Claims. Approximately $79,683 in Other Priority Claims under 11 U.S.C. §§507(a)(4)(A) and (a)(5) have been asserted against Debtor in timely filed Proofs of Claim. Holders of Other Priority Claims will be paid in full as of the Effective Date and are therefore Unimpaired and deemed to accept the Plan.

*Class 6 – General Unsecured Claims*. Debtor scheduled a total of approximately $176,700,000 in General Unsecured Claims. Approximately $161,018,015 in General Unsecured Claims have been asserted against Debtor in timely filed Proofs of Claim. This amount does not include any Junior Secured Claims or Intercompany Loan Claims.

*Class 7 – Intercompany Claims*. Debtor allegedly owes a total of approximately $221,896,064 in Intercompany Loan Claims, inclusive of interest, which accrued prior to the Petition Date. The Intercompany Loan Claims stem from two purported loans made to Debtor. First, is a loan which was disbursed in multiple installments from October of 2014 to September of 2015 in the total original principal amount of $23.4 million, with annual interest accruing at 11.5%, which is currently held by Oceanwide Investment Three (Hungary) Limited Liability Company. Second is a purported loan disbursed in December 2013 in the original principal amount of $95 million, with annual interest accruing at 6.5%, which is currently held by OREG. Oceanwide Investment

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

17

Three (Hungary) Limited Liability Company filed a Proof of Claim in the amount of $52,239,710.09. OREG filed a Proof of Claim in the amount of $169,301,076.71.

Debtor has conducted a preliminary investigation of the Intercompany Loan Claims and Debtor's investigation remains ongoing. Debtor reserves all rights to object to the Intercompany Loan Claims or to seek recharacterization of such Claims as Equity Interests if warranted by the evidence. To the extent any Intercompany Loan Claims are recharacterized as Equity Interests by Final Order, such Claims shall be transferred from Class 7 to Class 8 and treated in accordance with Article 4.3.7. of the Plan. For purposes of determining whether the Plan satisfies the requirements of Section 1129(a)(10), Debtor notes that Class 6 (General Unsecured Claims) is an Impaired Class that is entitled to vote on the Plan and does not include any insider Claims. Accordingly, acceptance of the Plan by Class 6 would satisfy Section 1129(a)(10) regardless of the treatment or recharacterization of the Intercompany Loan Claims in Class 7.

To the extent that the allowance of the Intercompany Loan Claims is not resolved on or prior to the Effective Date, the Liquidating Trust will continue any such investigation, and if warranted, prosecute objections to remaining Intercompany Loan Claims. Debtor intends to pay the Allowed Intercompany Loan Claims (i) if not subordinated to General Unsecured Claims, then, *pari passu* with the Holders of General Unsecured Claims, and (ii) if subordinated to General Unsecured Claims, then after payment in full of all Allowed General Unsecured Claims.

*Class 8 – Equity Interests*. The equity structure of Debtor will remain unchanged as a result of the Plan and Confirmation Order, and Holders of Equity Interests will retain such Equity Interests only if all Allowed Claims in Classes 1 through 7 are paid in full; otherwise, all Equity Interests shall be cancelled and extinguished on the Effective Date without any distribution to Holders of Equity Interests, in accordance with the absolute priority rule under Section 1129(b)(2)(B)(ii) of the Bankruptcy Code. Holders of Equity Interests are deemed to reject the Plan, and if all Allowed Claims in Classes 1 through 7 are not paid in full, Class 8 shall be deemed to have rejected the Plan for purposes of Section 1129(a)(8), and Debtor shall seek confirmation of the Plan pursuant to Section 1129(b) with respect to Class 8.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Post-Confirmation and After-Discovered Assets.* Pursuant to Article 6.1.2.3. of the Plan, from and after the Effective Date, the Liquidating Trustee shall have the exclusive right, power, and authority to assert, settle, or abandon all retained Causes of Action, including Avoidance Actions, as the sole representative of the Estate pursuant to Section 1123(b)(3) of the Bankruptcy Code. All such retained Causes of Action are expressly reserved and preserved under the Plan.

In addition, to the extent that any Assets of the Estate are identified, discovered, or otherwise become known after the Effective Date - whether through the Liquidating Trustee's ongoing investigation, the resolution of Disputed Claims, the prosecution of Causes of Action, or otherwise - such Assets shall constitute Plan Administration Assets and shall vest in the Liquidating Trust upon identification. The Liquidating Trustee shall have full authority to pursue, liquidate, and distribute the proceeds of any such after-discovered or post-confirmation Assets in accordance with the priority and distribution scheme set forth in Articles 3 and 4 of the Plan, with any recoveries to be distributed to Holders of Allowed Claims on a Subsequent Distribution Date as determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement.

The Bankruptcy Court shall retain jurisdiction pursuant to Article 13 of the Plan to resolve any disputes arising in connection with the identification, pursuit, or distribution of any post-confirmation or after-discovered Assets, including any disputes regarding the scope of the Liquidating Trustee's authority with respect thereto.

## VI.    THE COURT SHOULD CONFIRM THE PLAN

### A.    Standard For Confirmation of a Chapter 11 Plan

Section 1129 of the Bankruptcy Code outlines the requirements for confirmation of a Chapter 11 plan. A court must confirm a plan if each applicable requirement of Section 1129(a) is satisfied. In such a case, Section 1129(b) need not be considered. *See* 11 U.S.C. § 1129(a), (b). Section 1129(b) only applies when Section 1129(a)(8) is not satisfied. In the event Section 1129(b) is invoked, the Chapter 11 plan need only satisfy the requirements of that section with respect to classes that voted against the plan. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 650–51 (2d Cir. 1988). Recent Ninth Circuit and federal authorities confirm this framework. *See In re Transwest Resort Props., Inc.*, 881 F.3d 724, 728 (9th Cir. 2018) (discussing cramdown provisions

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

under Section 1129(b) and holding that Section 1129(a)(10) applies on a per-plan rather than per-debtor basis); *In re Islet Sciences, Inc.*, 640 B.R. 425, 486 (Bankr. D. Nev. 2022) (finding that confirmation of a plan may be crammed down so long as it does not discriminate unfairly and is fair and equitable "towards each impaired class that has not accepted the plan.").

As discussed below, following the balloting process, Debtor believes that all applicable subsections of Section 1129 will be satisfied. As a result, the Court should confirm the Plan.

### B.    The Plan Will Satisfy All Applicable Requirements of 11 U.S.C. § 1129

The Plan should be confirmed because the applicable requirements of the Bankruptcy Code Section 1129 are met. Section 1129(a) establishes sixteen specific requirements for plan confirmation that must be satisfied, save for Section 1129(a)(8) as discussed above. 11 U.S.C. § 1129(a). These requirements serve as the primary confirmation standard, with courts having an affirmative duty to ensure all provisions are satisfied before confirming any Chapter 11 plan. *In re Data Sys., Inc.*, 561 B.R. 838, 843 (Bankr. D. Or. 2016).

#### 1.    Section 1129(a)(1): The Plan Complies with the Provisions of Title 11

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a plan of reorganization only if "the plan complies with the applicable provisions of this title." The phrase "applicable provisions" has been interpreted to mean Sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan of reorganization. *Johns-Manville Corp.*, 843 F.2d at 648–49. *See also In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 223 (Bankr. D.N.J. 2000).

The Plan complies with both Section 1122 and Section 1123.

##### i.    The Plan Complies with Section 1122: Classification of Claims and Interests

Section 1122(a) provides:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

Courts have interpreted the phrase "substantially similar" to mean that the claims share "common priority and rights." *Matter of Greystone III Joint Venture*, 995 F.2d 1274, 1278 (5th Cir. 1991), *on reh'g* (Feb. 27, 1992). In this regard, courts have recognized that a plan proponent generally has the discretion to separately classify claims where the legal character of a claim accords it different treatment than other creditors. *See Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 328 (9th Cir. 1994). This Court has broad discretionary power to approve a plan's proposed classification of claims. *See Johnston*, 21 F.3d at 327 (citing *In re Palisades-on-the-Desplaines*, 89 F.2d 214, 217 (7th Cir. 1937) for the notion that "Congress intended to give the court 'broad latitude' in classifying claims under analogous provision of [the] former Bankruptcy Act").

Here, the Plan designates seven (7) classes of claims and one (1) class of interests. Certain other types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired, and they do not vote on the Plan because they are automatically entitled to specific treatment provided for in the Bankruptcy Code. Similarly, Classes 1 and 5 are not Impaired and there is no need for Holders of Claims in these Classes to vote.

Based on the foregoing principles, the classification of claims and interests, summarized as follows and discussed in detail above, is appropriate under the Plan. The Plan contains the following classifications:

| Class | Claims and Equity Interests | Status | Voting Rights |
|-------|-----------------------------|--------|---------------|
| Class 1 | Secured Tax Claims | Not Impaired | No |
| Class 2 | LADI Secured Claim | Impaired | Yes |
| Class 3 | LL Secured Claims | Impaired | Yes |
| Class 4 | Junior Secured Claims | Impaired | Yes |
| Class 5 | Other Priority Claims | Not Impaired | No |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Intercompany Claims | Impaired | Yes |
| Class 8 | Equity Interests | Impaired | No |

All of the foregoing Classes of Claims are appropriately classified together, based on the "substantially similar" standard. The classification of Secured Claims separate from unsecured claims is proper, as secured claims and unsecured claims necessarily have different levels of priority and legal character. Similarly, classifying secured claims by their statutory and allowed priority—i.e., Secured Tax Claims (Class 1), then the LADI Secured Claims (Class 2), then the LL Secured

21

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

Claims (Class 3), and finally, Junior Secured Claims, which are purportedly Secured Claims and junior to Classes 1-3 (Class 4)—furthers this goal. Lastly, classification of equity interests separately from claims against Debtor is not only proper; it is required. *See* 7-1122 *Collier on Bankruptcy*, P. 1122.03[2] (16th ed. 2026). Claims and interests are inherently different and, in turn, cannot be classified together.

### ii.    The Plan Complies with Section 1123: Contents of the Plan

Section 1123 sets forth certain mandatory and permissive provisions for a Chapter 11 plan. *See* 11 U.S.C. § 1123(a), (b). The Plan complies with those requirements.

#### (1) Section 1123(a): Mandatory Plan Provisions

##### (a) Section 1123(a)(1): The Plan Designates Classes of Claims and Interests

Section 1123(a)(1) requires a plan "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in Section 507(a)(2) [administrative expense claims], 507(a)(3) [claims arising during the "gap" period in an involuntary case], or 507(a)(8) [priority tax claims], and classes of interests[.]" 11 U.S.C. § 1123(a)(1). Here, the Plan satisfies this statutory requirement. All Classes of Claims designated in the Plan are Claims other than those specified in Sections 507(a)(2), 507(a)(3), and 507(a)(8). *See* Plan, Art. 3, 4. The Plan also designates a Class of Interests (Class 8). *See* Plan, Art. 4.3.8.

##### (b) Section 1123(a)(2): The Plan Specifies the Classes that are Not Impaired

Section 1123(a)(2) requires a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). Section 1124(1) of the Bankruptcy Code provides that "a class of claims or interests is impaired under a plan unless . . . the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." *Id.* § 1124(1). The Ninth Circuit holds that, when determining impairment under Section 1124, "[t]he narrow question that thus arises is whether . . . 'legal, equitable, [or] contractual rights' were changed by the Plan[.]" *See In re L & J Anaheim Assocs.*, 995 F.2d 940, 943 (9th Cir. 1993). Courts have held that Section 1123(a)(2) is satisfied when the plan includes a statement of

22

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

whether each class of claims is impaired or unimpaired. In this case, in satisfaction of Section 1123(a)(2), the Plan expressly states, on a Class-by-Class basis, which Classes are Impaired, and which are Unimpaired. *See* Art. 4.2. (providing a summary of classes that are impaired and unimpaired).

(c) <u>Section 1123(a)(3): The Plan Adequately Specifies the</u>

<u>Treatment of Impaired Classes</u>

Section 1123(a)(3) requires a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Article 4 of the Plan specifies the treatment of all Claims and Interests that are Impaired under the Plan. Since the Plan properly identifies the Impaired Classes and specifies the treatment of such Classes, the Plan satisfies Section 1123(a)(3).

(d) <u>Section 1123(a)(4): The Plan Provides the Same</u>

<u>Treatment for Each Claim or Interest in a Particular Class</u>

Section 1123(a)(4) requires a plan provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This provision provides creditors of the same class with a right to equal treatment. Article 4 of the Plan provides for equality of treatment for each Claim or Interest within a particular Class. The Plan, therefore, complies with Section 1123(a)(4).

(e) <u>Section 1123(a)(5): The Plan Provides Appropriate</u>

<u>Means of Implementation</u>

The Plan also satisfies Section 1123(a)(5). That subsection requires that the plan "provide adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Article 6 of the Plan sets forth in detail the implementation and means of execution of the Plan. In particular, the Plan provides that it will be funded by the liquidation of the substantial majority of Debtor's Assets vis-à-vis the sale of the PSA Property. Debtor shall then fund distributions under the Plan with the Sale Proceeds, Plan Administration Assets, and Cash on hand. Unless otherwise specified in the Plan, cash payments to Holders of Allowed Claims receiving a distribution under the terms of the Plan will be made on the Effective Date or on the Initial Distribution Date, with any distributions

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

thereafter occurring on a Subsequent Distribution Date. *See* Plan, Art. 3, 4. The Plan further permits the Purchaser to make payment directly to holders of Claims whose liabilities the Purchaser, in its discretion, assumes. Accordingly, the Plan satisfies the requirements of Section 1123(a)(5).

### (f) <u>Section 1123(a)(6) Is Not Applicable</u>

Section 1123(a)(6) requires the "inclusion in the charter of the debtor, if the debtor is a corporation . . . of any provision prohibiting the issuance of nonvoting equity securities" and other similar or related provisions. 11 U.S.C. § 1123(a)(6). This provision of the Bankruptcy Code requires that a plan of reorganization provide for appropriate distribution of power among all voting equity classes. Section 1123(a)(6) does not apply to the Plan. The Plan is a liquidating plan and Debtor does not contemplate the issuance of new equity or the distribution of power or equity in a reorganized debtor to different classes under the Plan.

### (g) <u>Section 1123(a)(7): The Plan Is Consistent with the Interests of</u>
### <u>Creditors, Equity Holders, and Public Policy</u>

Section 1123(a)(7) states that a plan shall "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director or trustee." 11 U.S.C. § 1123(a)(7). Section 1129(a)(5), which is discussed below, augments Section 1123(a)(7), and requires, as a condition of confirmation, that the proponent of a plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of an affiliate of the debtor participating in a joint plan with the debtor, or of a successor to the debtor under the plan. In addition, Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with "the interests of creditors and equity security holders and with public policy." *Id*. § 1129(a)(5).

Pursuant to the Plan, Debtor will eventually be dissolved following the liquidation of the Plan Administration Assets. Per Article 6.1.2.5. of the Plan, on the Effective Date, the Liquidating Trustee—currently slated to be the current Chief Restructuring Officer who is most familiar with Debtor's bankruptcy—will have the power, right, and responsibility to conduct the Wind Down and

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

24

to take possession of all books, records, and files of Debtor and the Estate, and to provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee determines that retention is no longer necessary or required. The Liquidating Trustee is authorized and empowered to effect the dissolution of Debtor as soon as practicable after the Effective Date, but only after the Plan Administration Assets are liquidated, or deemed valueless, without the need for any company action or approval, and neither Debtor nor the Liquidating Trustee shall be required to pay any taxes or fees to cause such dissolution. On the Effective Date, the Liquidating Trustee will Wind Down the affairs of Debtor, file final tax returns for Debtor, to the extent required, and will be authorized to file on behalf of Debtor certificates of dissolution and any and all other corporate and company documents necessary to effectuate the Wind Down without further action under applicable law, regulation, order, or rule.

### (h) Section 1123(a)(8) Is Not Applicable

Section 1123(a)(8) applies only "to a case in which the debtor is an individual." Because Debtor is not an individual, Section 1123(a)(8) is inapplicable to the Plan.

### iii. Section 1123(b): Permissive Plan Provisions

Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan, including any "provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(b)(6). Several of these discretionary provisions are contained in the Plan:

Section 1123(b)(1) of the Bankruptcy Code provides that a plan may impair or leave any class of claims, whether secured or unsecured, or of interests unimpaired under the plan. As set forth in the Plan, Classes 2, 3, 4, 6, 7, and 8 are Impaired under the Plan, and Classes 1 and 5 are Unimpaired under the Plan.

Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365 of the Bankruptcy Code, a plan may provide for the assumption, rejection or assignment of any executory contract not previously rejected. Article 7 of the Plan addresses the assumption and rejection of executory contracts. All Executory Contracts of Debtor that are not otherwise assumed or rejected will be deemed rejected by Debtor in accordance with the provisions and requirements of Sections

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

25

365 and 1123. In conjunction with the Sale, Debtor has included a Schedule of Executory Contracts and/or Unexpired Leases to be Assumed ("Assumption Schedule") with its Plan Supplement filed concurrently with this Motion. The Assumption Schedule was prepared in consultation with Purchaser, and may be supplemented or amended on or before the Effective Date pursuant to the terms of the Plan. Debtor consulted with Purchaser in preparing the Assumption Schedule, and Purchaser will approve any assumptions, rejections, or modifications of material executory contracts and unexpired leases as set forth therein on the Effective Date. Thus, as of the Effective Date, there will be a list of all executory contracts and unexpired leases that will be impacted by the Plan that will detail whether those executory contracts are being rejected or assumed.

Section 1123(b)(3) of the Bankruptcy Code specifies that a plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor]." 11 U.S.C. § 1123(b)(3). The Plan provides for the Liquidating Trustee to retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses which Debtor had immediately prior to the commencement of the case. Plan, Art. 6.1.2.3.

Section 1123(b)(4) of the Bankruptcy Code specifies that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4). As discussed herein, the Plan provides for the sale of the PSA Property with the distribution of the Sale Proceeds pursuant to the applicable priorities.

Section 1123(b)(5) of the Bankruptcy Code specifies that a plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." *Id.* § 1123(b)(5). The Plan modifies the rights of Holders of Secured Claims and unsecured Claims in accordance with the terms and conditions set forth in the Plan.

As set forth above, the Plan complies with all of the provisions of Sections 1122 and 1123 of the Bankruptcy Code and, therefore, complies with Section 1129(a)(1) of the Bankruptcy Code.

(1) Section 1129(a)(2): The Plan Proponent Complies with the Provisions of the Bankruptcy Code

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

26

Section 1129(a)(2) of the Bankruptcy Code requires "the proponent of the plan [to] compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). The inquiry under this section is whether the plan proponent has complied with the disclosure and solicitation requirements under Section 1125. *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000); *In re Brotby*, 303 B.R. 177, 192–93 (B.A.P. 9th Cir. 2003) (focusing analysis under Section 1129(a)(2) on adequacy of disclosure of plan); *In re Sierra-Cal*, 210 B.R. 168, 176 (Bankr. E.D. Cal. 1997).

The principal purpose of Section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan under consideration has complied with the requirements of Section 1125 in the solicitation of acceptances of the plan. *See Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720, 732 (Bankr. W.D. Tenn. 1999); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995). Section 1125 precludes the post-petition solicitation of a plan from any holder of a claim:

> unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the Court as containing adequate information.

11 U.S.C. § 1125.

Here, Debtor, as plan proponent, has complied with Section 1125. Pursuant to the Solicitation Order, the Court approved the disclosures in the Plan for solicitation purposes only. As evidenced by the Declaration of Service filed with the Court on February 27, 2026, a copy of the Plan, the Disclosure Statement, a notice regarding the hearing on confirmation of the Plan and the deadlines established by the Court relating thereto, and a ballot (the "Solicitation Package") were sent to each known creditor and party in interest in Debtor's Chapter 11 cases. [ECF No. 856]. Debtor did not commence soliciting acceptances to the Plan until after the Solicitation Package was served. Debtor has acted in good faith and has complied with the provisions of Section 1125 of the Bankruptcy Code. The requirements of Section 1129(a)(2) are satisfied.

(2) Section 1129(a)(3): The Plan Is Proposed in Good Faith

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Ninth Circuit has held that, although the Bankruptcy

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  Code does not define "good faith," "[a] plan is proposed in good faith where it achieves a result

2  consistent with the objectives and purposes of the Code." *In re Sylmar Plaza, L.P.*, 314 F.3d 1070,

3  1074 (9th Cir. 2002) (citing *In re Corey*, 892 F.2d 829, 835 (9th Cir. 1989)). "[F]or purposes of

4  determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself

5  and whether such plan will fairly achieve a result consistent with the objectives and purposes of the

6  Bankruptcy Code." *Id.* (quoting *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984)).

7  The requirement of good faith must be viewed in light of the totality of the circumstances

8  surrounding the establishment of a chapter 11 plan. *Id.* As noted by the Bankruptcy Appellate Panel

9  in *In re Stolrow's, Inc.*:

> Good faith in proposing a Plan of Reorganization is assessed by the Bankruptcy Judge and viewed under the totality of the circumstances. Good faith requires . . . a fundamental fairness in dealing with one's creditors. The Bankruptcy Judge is in the best position to assess the good faith of the parties.

13  84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) (internal citations omitted).

14  Debtor has filed the Plan in good faith. Debtor is proposing to pay all proceeds that it

15  receives from the Sale to its creditors and administrative claim holders. The Plan incorporates terms

16  that were negotiated with Debtor's interested parties, at arm's length and through counsel.

17  Demonstrating the arm's length nature of these negotiations, the negotiation of the Global

18  Settlement Agreement took more than nine months, as described in the pleadings in support of the

19  entry of the 9019 Order. So too, as described above, the Purchaser was one of two parties with

20  which Debtor was negotiating sale terms as of August 2025. It took until February 2026 for the

21  PSA to be completed and executed. Further, none of the parties to the Global Settlement Agreement

22  or the PSA are insiders of Debtor. Rather, they are parties which have long been owed substantial

23  amounts by Debtor and which had been litigants adverse to Debtor for years, their successors, and

24  the DIP Lender, or such parties' successors and assigns. There was no collusion of any kind

25  involving Debtor or any insider of Debtor with regard to the Plan or any Plan terms. As a result, the

26  proposal of the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was

27  made with honesty and good intentions and with a basis for expecting that, under the circumstances,

28  it is the best means for maximizing the recovery by creditors of Debtor. *See In re Leslie Fay Cos.*,

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (citing *In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y.) *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988)). Moreover, Debtor has complied with all court orders. Courts have held compliance with court orders as instructive on whether a plan was proposed in good faith. *See In re Coastal Equities, Inc.*, 33 B.R. 898, 906 (Bankr. S.D. Cal. 1983).

Based on the foregoing, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with Section 1129(a)(3).

(3) Section 1129(a)(4): The Plan Provides that Payments to Estate Professionals Are Subject to Court Approval

Section 1129(a)(4) requires that:

> [a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. § 1129(a)(4).

The Plan satisfies this requirement. All professionals' retention and payment application procedures have been approved by the Court under 11 U.S.C. §§ 327, 328, 329, 330, 331 and 503(b). Debtor will seek approval of any future fee applications in accordance with the Bankruptcy Code and the respective professionals' retention order. This procedure for review and ultimate determination by the Court of the professional fees and expenses to be paid by Debtor satisfies the requirement of Section 1129(a)(4). *Texaco, Inc.*, 84 B.R. at 908; *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988). "Court approval of payments for services and expenses is governed by various Code provisions – e.g., §§ 328, 329, 330, 331 and 503(b) – and need not be explicitly provided for in a Chapter 11 plan." *Future Energy*, 83 B.R. at 488.

A final hearing on the professional fees incurred prior to the effectiveness of the Plan will be scheduled for a date after the Plan effective date. The professionals involved have filed and will continue to file appropriate fee applications. Final fee applications will be heard at a final fee hearing. Debtor will only pay the fees and expenses of professionals employed in this case as approved by the Court. Thus, the provisions of Section 1129(a)(4) are met.

(4) Section 1129(a)(5): The Plan Identifies the Parties to Serve Post-Confirmation

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

29

Section 1129(a)(5) requires the following:

> (A)    (i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . .; and

> (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

> (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

11 U.S.C. § 1129(a)(5).

This section augments Section 1123(a)(7) (discussed above). These requirements are inapplicable to Debtor and the Plan because Debtor intends to dissolve after liquidation of its assets. The Liquidating Trustee will administer the Plan and complete the Wind Down after the Effective Date.

(5) <u>Section 1129(a)(6) Is Not Applicable to the Case</u>

Section 1129(a)(6) requires the approval of any "rate changes" provided under the plan from the relevant governmental regulatory commission. *See* 11 U.S.C. § 1129(a)(6). There are no such rate changes provided under the Plan and no such governmental agency with jurisdiction over Debtor. This section, therefore, does not apply to the Plan. *See In re Sound Radio, Inc.*, 93 B.R. 849, 854 (Bankr. D.N.J. 1988); *Texaco, Inc.*, 84 B.R. at 908.

(6) <u>Section 1129(a)(7): The Plan is in the Best Interests of Creditors</u>

Section 1129(a)(7) requires the following:

> With respect to each impaired class of claims or interests-

> (A) each holder of a claim or interest of such class-

> (i) has accepted the plan; or

> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1129(a)(7).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

30

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

This section — referred to as the "best interests of creditors" test — focuses on individual dissenting creditors, rather than on classes of claims or interests. *See Bank of America Nat'l Trust & Savings Ass'n v. 203 N. LaSalle St. Partnership*, 526 U.S. 434, 442 n.13, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999). Under the best interests of creditors test, with respect to classes impaired under the Plan, creditors and equity holders who do not accept the Plan are to receive at least as much under the Plan as they would receive under a Chapter 7 liquidation. As set forth in the Liquidation Analysis attached to the Plan as Exhibit 3, the Plan fulfills Section 1129(a)(7) with respect to Classes that are Impaired under the Plan.[7]

In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sale proceeds of properties on which the secured creditor has a lien, pursuant to the applicable priority scheme. As to unsecured claims, administrative claims are paid first, next unsecured creditors are paid from any remaining sale proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims. Finally, equity interest holders receive the balance that remains after all creditors are paid, if any.

The Plan satisfies the requirements of Section 1129(a)(7) because all creditors will receive a substantially higher, or equal, recovery under the Plan than they would receive if this Chapter 11 Case were converted to a case under Chapter 7 of the Bankruptcy Code.

First, through either a sale by a Chapter 7 trustee or a foreclosure sale, any sale of the Real Property to an ultimate purchaser would not be exempt from transfer taxes pursuant to Section 1146(a) of the Bankruptcy Code, Section 11923 of the California Revenue and Tax Code, and Section 21.9.6 of the Los Angeles Municipal Code. Such transfer taxes would reduce the net proceeds available for distribution to creditors by many millions of dollars.

Second, the most significant and insurmountable obstacle in a Chapter 7 liquidation is that Debtor is only able to operate a sale process for its Assets because of the post-petition financing provided by DIP Lender. Absent this Chapter 11 Case, Debtor anticipates that its principal asset,

---

[7] Classes 1 and 5 are Unimpaired and are deemed to accept the Plan, so the best interests of creditors test need not be applied to Classes 1 and 5.

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

the Real Property, would either be sold by a Chapter 7 trustee, abandoned by the Chapter 7 trustee as the Estate would have no equity in such property, or one of its secured creditors would obtain relief from the automatic stay and proceed with a foreclosure sale. In any of these scenarios, the recovery to Holders of Secured Claims would likely be substantially less than the recovery provided under the Plan, and Holders of unclassified Claims and General Unsecured Claims would likely receive no recoveries.

Third, in the event of a conversion of Debtor's case to Chapter 7, a Chapter 7 trustee would be appointed who would be completely unfamiliar with the Real Property and the complexities of this Chapter 11 Case. The Chapter 7 trustee would likely retain all new professionals equally unfamiliar with the Real Property and other Assets. The result would be the incurrence of substantial additional professional fees as those professionals familiarized themselves with this matter — costs that are entirely avoided by the current professionals, who are skilled, experienced, and already intimately familiar with this Chapter 11 Case, continuing in their current roles.

Fourth, the marketing of the Assets in the context of a sale by a Chapter 7 trustee or at a foreclosure sale would be significantly less robust than the extensive marketing process already completed by Debtor in this Chapter 11 Case, if a marketing process was undertaken in Chapter 7 at all.

Finally, in the event that the Real Property were sold by a Chapter 7 trustee, such trustee would be entitled to a significant administrative expense pursuant to Section 326 of the Bankruptcy Code for distributing funds from the estate. After payment of such costs and expenses, Debtor does not believe that any funds would remain available for distribution to Holders of Allowed General Unsecured Claims following a liquidation of the Real Property and other Assets. The Plan provides all creditors, including Holders of General Unsecured Claims, with a better opportunity for recovery than they would have if this Chapter 11 Case were converted to Chapter 7. Moreover, even if Holders of General Unsecured Claims do not receive a distribution under the Plan, the Plan provides for a more expeditious sale of the Real Property than would occur in a Chapter 7 liquidation, thereby affording subcontractors — who comprise a substantial portion of the General Unsecured Claims

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

1    pool — an opportunity to resume work on the Real Property under a new owner with sufficient

2    capital.

3        In contrast, the proposed Sale to Purchaser maximizes the value of the Real Property

4    because it avoids the imposition of transfer taxes pursuant to Section 1146(a) of the Bankruptcy

5    Code, Section 11923 of the California Revenue and Tax Code, and Section 21.9.6 of the Los

6    Angeles Municipal Code, and does not require the involvement of a Chapter 7 trustee, and provides

7    a mechanism to satisfy meaningful portions of the LADI Secured Claim and LL Secured Claim, in

8    addition to Claims senior to those Claims, and to fund the costs that need to be paid as part of

9    confirmation of a plan.

10        Further, Purchaser was identified as the best-qualified buyer at the highest proposed price

11    following an extensive marketing process, and there is no indication that any competing buyers or

12    other parties are willing or able to provide a higher purchase price. Accordingly, the proposed Sale

13    to Purchaser maximizes the value of the Real Property and provides all Holders with a greater, or

14    equal, recovery as compared to a liquidation under Chapter 7 of the Bankruptcy Code. Debtor

15    therefore submits that it has satisfied the "best interests of creditors" test with respect to any

16    Impaired Class that votes to reject the Plan, and that the Plan provides fair and equitable treatment

17    of all classes of creditors and the greatest feasible recovery to all creditors.

18    (7) Section 1129(a)(8): All Classes Will Have Either Accepted the Plan or Are Treated in a

19        Manner Consistent with Section 1129(b)

20        Section 1129(a)(8) requires that "each class of claims or interests . . . has accepted the plan;

21    or . . . is not impaired under the plan." 11 U.S.C. § 1129(a)(8). Section 1126(c) and (d) govern

22    whether or not a class has accepted a plan:

23        (c) A class of claims has accepted a plan if such plan has been
24        accepted by creditors . . . that hold at least two-thirds in amount
        and more than one-half in number of the allowed claims of such
25        class held by creditors . . . that have accepted or rejected such plan.

26        (d) A class of interests has accepted a plan if such plan has been
        accepted by holders of such interests . . . that hold at least two-
27        thirds in amount of the allowed interests of such class held by
        holders of such interests . . . that have accepted or rejected such
28        plan.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

33

1    11 U.S.C. § 1126(c), (d).

2        A plan may be confirmed even if an impaired class does not accept the Plan. Rather, in such

3    instance, the plan may be confirmed so long as it complies with Section 1129(b) as to that particular

4    class of claims or interests (and the plan otherwise complies with the other applicable subsections

5    of Section 1129(a)). As Section 1129(b) provides:

6            [I]f all of the applicable requirements of subsection (a) of this section
             other than paragraph (8) are met with respect to a plan, the court, on
7            request of the proponent of the plan, shall confirm the plan
             notwithstanding the requirements of such paragraph if the plan does
8            not discriminate unfairly, and is fair and equitable, with respect to
             each class of claims or interests that is impaired under, and has not
9            accepted, the plan.

10   11 U.S.C. § 1129(b)(1).

11       As discussed below, Debtor believes that all Classes in the Plan will have either accepted

12   the Plan or will be treated in accordance with Section 1129(b). As noted above, the Plan contains

13   eight Classes. Classes 1 and 5 are Unimpaired under the Plan and are therefore conclusively deemed

14   to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Class 8 is Impaired

15   and deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. The

16   remaining Classes — namely Classes 2, 3, 4, 6, and 7 — are Impaired under the Plan and are

17   anticipated to vote to accept the Plan. Debtor will submit a detailed analysis of the ballots cast in

18   connection with the Plan with its Ballot Summary.

19       Based on the foregoing, Debtor respectfully submits that the Plan satisfies (or will satisfy)

20   the requirements of Section 1129(a)(8) or, where applicable, Section 1129(b) of the Bankruptcy

21   Code.

22       (8)  Section 1129(a)(9): The Plan Provides for Payment in Full of All Administrative and Other

23            Priority Claims

24       Section 1129(a)(9) of the Bankruptcy Code states the rules applicable to payment of those

25   unsecured claims entitled to priority in distribution in chapter 11 cases. *See* 11 U.S.C. § 1129(a)(9).

26   It requires that persons holding allowed claims entitled to priority under Section 507(a) receive

27   certain specified treatment. The Plan satisfies the applicable provisions of this section.

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF
LIQUIDATION

Subparagraph (A) of Section 1129(a)(9) addresses the treatment of administrative claims and expenses entitled to priority under Section 507(a)(2) or 507(a)(3). It provides that "on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim," unless "the holder of [such] particular claim has agreed to a different treatment of such claim." 11 U.S.C. § 1129(a)(9)(A). The Plan satisfies this provision, as it provides a mechanism to address and pay Administrative Claims of a kind specified in Sections 507(a)(2) and (a)(3). *See* Plan, Art. 3.2. (addressing Administrative Claims under Section 507(a)(2)); Plan, Art. 3.4. (addressing GAP Claims under Section 507(a)(3)). Unless otherwise agreed by the Holders of such Claims, Allowed Administrative Claims will be paid on the Initial Distribution Date - defined in the Plan as five (5) Business Days following the Effective Date - or as soon as reasonably practicable thereafter. This timing satisfies the requirement of Section 1129(a)(9)(A) that such Claims be paid "on the effective date of the plan." Courts have consistently held that payment within a commercially reasonable period immediately following the effective date satisfies this requirement, particularly where, as here, the Plan's Effective Date is itself conditioned upon the closing of the Sale and the receipt of Sale Proceeds, and the Initial Distribution Date is the first practicable date on which funds are available for distribution. *See* Plan, Art. 1.1.64. (defining "Initial Distribution Date"), Art. 3.2., Art. 3.4.

Subparagraph (B) of Section 1129(a)(9) addresses the treatment of Claims of a kind specified in Section 507(a)(1), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 11 U.S.C. § 1129(a)(9)(B). There are no Holders of Claims entitled to priority under Section 507(a)(1), (a)(6) or (a)(7). Debtor addresses its obligations for Claims entitled to priority under Section 507(a)(4) and (5) as Other Priority Claims in Class 5, as Holders of Allowed Other Priority Claims will be paid in full pursuant to the terms of the Plan on the Initial Distribution Date. Plan, Art. 4.3.5.2.

Subparagraph (C) of Section 1129(a)(9) addresses the treatment of claims of a kind specified in Section 507(a)(8) (i.e., Priority Tax Claims). *See* 11 U.S.C. § 1129(a)(9)(C). Relatedly, Subparagraph (C) of Section 1129(a)(9) addresses the treatment of secured priority tax claims. *See id.* § 1129(a)(9)(C). The Plan provides for payment of Priority Tax Claims and Secured Tax Claims consistent with Section 1129(a)(9)(C). Plan, Art. 3.3., Art. 4.3.1.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

35

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code.

(9) <u>Section 1129(a)(10): At Least One Impaired Class Will Have Accepted the Plan</u>

Section 1129(a)(10) of the Bankruptcy Code provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors … that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors … that have accepted or rejected such plan."

Debtor anticipates that more than one Class of Claims that is Impaired under the Plan (*i.e.,* Classes 2, 3, 4, 6, or 7) will vote to accept the Plan, as determined without including acceptances of the Plan by any insider. However, Debtor will not be able to confirm this requirement until ballots on the Plan have been returned on or before the voting deadline of March 20, 2026. Debtor will submit its Ballot Summary on or before March 26, 2026 pursuant to the Solicitation Order.

Based on the foregoing, Debtor respectfully submits that the Plan satisfies (or will satisfy) the requirements of Section 1129(a)(10) of the Bankruptcy Code.

(10)    <u>Section 1129(a)(11): The Plan Is Feasible</u>

(a) <u>Feasibility Standard</u>

Section 1129(a)(11) requires the plan proponent to establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." 11 U.S.C. § 1129(a)(11). This requirement is often referred to as the "feasibility" requirement, and is satisfied by a showing that the debtor has a "reasonable probability" of satisfying its obligations under a plan. *See In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

The feasibility test in Section 1129(a)(11) requires the court to determine whether the plan is workable and has a reasonable likelihood of success. *See U.S. v. Energy Res. Co. Inc.*, 495 U.S. 545, 549 (1990) (noting that Section 1129(a)(11) "requires a bankruptcy court to assure itself that reorganization will succeed . . ."). A plan has a reasonable likelihood of viability if it is much more than a mere "visionary scheme" and, therefore, satisfies the feasibility requirement of Section

36

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1129(a)(11). *Acequia*, 787 F.2d at 1365 (citing *In re Pizza of Haw.*, 761 F.2d 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.")); *see also In re Sagewood Manor Assoc. Ltd. P'ship*, 223 B.R. 756, 762–63 (Bankr. D. Nev. 1998) ("While a reviewing court must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of § 1129(a)(11) . . . only a relatively low threshold of proof is necessary to satisfy the feasibility requirement." (internal citations omitted)). The Bankruptcy Appellate Panel for the Ninth Circuit summarized the feasibility requirement as follows:

> To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success. The Code does not require the debtor to prove that success is inevitable, *and a relatively low threshold of proof will satisfy § 1129(a)(11), so long as adequate evidence supports a finding of feasibility*.

*Brotby*, 303 B.R. at 191–92 (emphasis added).

The two primary aspects of feasibility are: (i) that the plan proponent will have sufficient cash on hand to make the payments required on the effective date; and (ii) that the plan proponent will have sufficient cash over the life of the plan to make the required plan payments. As discussed below, both aspects are satisfied.

(b) A Reasonable Probability Exists That Sufficient Cash Will Be Available to
Make All Required Effective Date Payments

Debtor maintains that this aspect of feasibility is satisfied. The Plan proposes satisfying Holders of LADI Secured Claims and LL Secured Claims through the Credit Bid Consideration. Debtor will use the Cash Consideration provided under the terms of the PSA to pay Holders of Allowed unclassified Claims and Classes 1 and 5 in full. Debtor anticipates that certain closing and related administrative expenses will be compromised by the present Holders, reducing the amount of cash that would otherwise be needed at Closing. Debtor has determined through its diligence of Purchaser that it has the means to close on the purchase of the PSA Property on the terms provided in the PSA. Purchaser has additionally provided a deposit of $3,000,000.00, which it will forfeit to the extent it does not close on the purchase of the PSA Assets, unless otherwise provided in the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

37

PSA. In light of Debtor's diligence, the execution of the PSA and the deposit advanced by Purchaser, Debtor submits that sufficient evidence exists that sufficient cash will be available to make effective date payments through the Cash Consideration provided in connection with the PSA. Further, in the event that Purchaser does not close on its purchase of the PSA Property and Debtor does not otherwise close on an Alternative Transaction, the Effective Date will not occur. Debtor, therefore, submits that a reasonable probability exists that it will have sufficient cash to make all payments due on the Effective Date, and this requirement for confirmation is met.

(c) A Reasonable Probability Exists That Sufficient Cash Will Be Available to
Make All Required Future Payments

The second aspect considers whether Debtor or its successor after confirmation will have enough cash over the life of the Plan to make the required payments. Pursuant to the Plan, the Liquidating Trustee will make payments to Classes 4, 6, 7, and 8 depending on the amount of Sale Proceeds obtained through the Sale of the Property and Allowed amounts of Administrative and Priority Claims. Thus, since the Liquidating Trustee's obligation to make future payments is dependent on the amount of the Sale Proceeds and the liquidation of Plan Administration Assets, the Liquidating Trustee will either have the ability to make required future payments, or it will not be obligated to make such payments because the funds are not available. Therefore, the second aspect of Plan feasibility has been satisfied.

Debtor, therefore, demonstrates a reasonable probability that sufficient cash will be available to make payments due as of the Effective Date and to make all required future payments and therefore, satisfies the threshold for the finding of feasibility under Section 1129(a)(11).

(11)    Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid

Section 1129(a)(12) requires that "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). The Plan expressly provides for the payment of all such fees as Statutory Fees. Plan, Art. 3.6. As a result, the Plan complies with this section.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

(12)      Section 1129(a)(13) Is Not Applicable

Section 1129(a)(13) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of all retiree benefits … for the duration of the period the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). There are no retiree benefits required to be paid under the Plan and this provision is therefore inapplicable.

(13)      Section 1129(a)(14) Is Not Applicable

Section 1129(a)(14) requires the payment of domestic support obligations "[i]f the debtor is required by a judicial or administrative order, or by statute," to make such payments. 11 U.S.C. § 1129(a)(14). The provisions of this subsection do not apply to these corporate cases.

(14)      Section 1129(a)(15) Is Not Applicable

Section 1129(a)(15) expressly applies only to "a case in which the debtor is an individual[.]" 11 U.S.C. § 1129(a)(15). Therefore, this subsection does not apply to this case.

(15)      Section 1129(a)(16) Is Not Applicable

Section 1129(a)(16) relates to transfers of property by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust." 11 U.S.C. § 1129(a)(16). This provision has been construed only to apply to non-profit entities. *See In re Eastern 1996D Limited Partnership*, 2014 Bankr. LEXIS 5085 (Bankr. N.D. Tex. 2014) (Section 1129(a)(16) is only applicable if debtor is a non-profit corporation or trust); 7-1129 *Collier on Bankruptcy*, P 1129.02[16] (16th ed. 2026).

Debtor is not a non-profit entity; therefore, the requirements of this subsection do not apply in this case.

### C.      11 U.S.C. § 1129(b): The Plan Satisfies the Requirements for Confirmation Over the Objection of Non-Consenting Classes

As noted above, Classes 1 and 5 are Unimpaired under the Plan (and therefore deemed to have accepted the Plan). Classes 2, 3, 4, 6, 7 and 8 are Impaired under the Plan. Debtor anticipates that Classes 2, 3, 4, 6, and 7 will vote to accept the Plan, so it anticipates that it will not need to invoke the "cramdown" requirements of Section 1129(b) of the Bankruptcy Code with respect to

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

39

these classes. Class 8, however, is deemed to reject the Plan so Debtor will need to satisfy the "cramdown" requirements of Section 1129(b) with respect to Holders of Equity Interests within Class 8. However, as discussed below, as long as any one of the Impaired Classes votes to accept the Plan, the "cramdown" requirements will be met with regard to any nonconsenting impaired class(es), including with respect to Class 8.

Section 1129(b)(1) provides:

> [I]f all applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court . . . shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b)(1).

As set forth above, a plan may be confirmed despite not satisfying Section 1129(a)(8) if, with respect to the class of claims that did not accept the plan, the plan: (i) does not discriminate unfairly; and (ii) provides fair and equitable treatment.

1. The Plan Does Not "Unfairly Discriminate" Against Any Classes

The term "discriminate unfairly" is not defined in the Bankruptcy Code. This term has been interpreted generally to require a plan to provide for "fair allocation of reorganization value among claimants with equal nonbankruptcy liquidation priorities[.]" 7-1129 *Collier on Bankruptcy*, P 1129.03[3][a] (16th ed. 2026). Under this standard, a dissenting class should receive "treatment which allocates value to the [dissenting] class in a manner consistent with the treatment afforded to other classes with similar legal claims against the debtor." *In re Mcorp Fin., Inc.*, 137 B.R. 219, 234 (Bankr. S.D. Tex. 1992); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (noting that Section 1129(b)(1) requires that dissenting classes "receive relative value equal to the value given to all other similarly situated classes."). Notably, "[b]y including the 'unfair discrimination' test, Congress made it clear that such a reorganization surplus did not have to be allocated to creditors on the basis of liquidation preferences. There can be 'discrimination,' so long as it is not 'unfair.'" 7-1129 Collier on Bankruptcy, ¶ 1129.03[3] (16th ed. 2015).

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION

The Plan treats creditors fairly and does not unfairly discriminate against any Class of Impaired Claims. Under the terms of the Plan and PSA, the LADI Secured Claim and LL Secured Claims will be satisfied through the Credit Bid Consideration, and the Cash Consideration attributable to the Real Property will be used in part to pay Secured Tax Claims. The remaining Cash Consideration attributable to Debtor's other Assets will be used to pay unclassified Claims, Administrative Expenses and Priority Unsecured Claims. To the extent, if any, all or nearly all holders of Other Secured Claims have liens on any of Debtor's assets, those liens are on the Real Property, as such claims are alleged to be mechanic's liens. To the extent the Sale Proceeds are insufficient to pay such Claims which are ultimately allowed and deemed secured in full, then such Holders will be undersecured, and the remaining balance of such Claims will be treated as General Unsecured Claims. This treatment, the payment of unclassified Claims, Administrative Expenses, and Priority Unsecured Claims prior to the undersecured portion of such Claims does not constitute unfair discrimination since such Holders will be treated equally with the Holders of other General Unsecured Claims.

With respect to Class 8, which is Impaired and deemed to reject the Plan, the Plan provides that Holders of Equity Interests will receive payment on such interests in the event that Holders of Claims are paid in full. Plan, Art. 4.3.8.3. Such treatment for Class 8 maintains their interest in any Sale Proceeds if otherwise sufficient to pay senior Claims in full. Debtor has established that the Plan provides each Impaired Class with value equal to similarly situated Classes and in accordance with their respective priorities and therefore, this prong of the "cramdown" test is satisfied.

2.    The Plan Is "Fair and Equitable" as to All Classes

Whether a plan is "fair and equitable" varies based on whether the non-accepting class is comprised of secured claims (Section 1129(b)(2)(A)), unsecured claims (Section 1129(b)(2)(B)), or interests (Section 1129(b)(2)(C)).

Specifically with respect to Class 8, the Plan must (and does) satisfy Section 1129(b)(2)(C), which provides:

> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

41

1         amount of any fixed liquidation preference to which such holder is
entitled, any fixed redemption price to which such holder is entitled,
2         or the value of such interest; or

3         (ii) the holder of any interest that is junior to the interests of such class
will not receive or retain under the plan on account of such junior
4         interest any property.

5 11 U.S.C. § 1129(b)(2)(C).

6       Here, and as demonstrated by Debtor's Liquidation Analysis, Equity Interests currently

7 have a value of $0.00 in light of the amount of Claims. No Holders of Equity Interests have a fixed

8 liquidation preference or fixed redemption price to which they are entitled. Further, there are no

9 interests junior to Holders of Equity Interests, so no junior class will receive or retain any interest

10 in property on account of such interest. Therefore, since Equity Interests do not currently have any

11 value and there is no other liquidation preference or redemption price that such Holders would be

12 entitled to, the treatment of Class 8 complies with the requirements of Section 1129(b)(2)(C) and

13 is fair and equitable with respect to the Holders of Equity Interests.

14       For clarity, if a Class of Claims does not vote to accept the Plan, Debtor will further address

15 the applicable requirements of Section 1129(b)(2) for each dissenting Class (if any).

16      **D.**      **The Exculpation and Injunction Provisions of the Plan Are Allowed Pursuant**

17             **to 11 U.S.C. §§ 105(a) and 1123.**

18       The exculpation and injunction provisions of the Plan are allowable because they are

19 narrowly tailored to render the Plan viable. Article 12.5. of the Plan provides for the exculpation of

20 the Exculpated Parties. This exculpation is fair and appropriate both under applicable law and the

21 facts and circumstances of this Chapter 11 Case. The Ninth Circuit has recognized that exculpation

22 provisions that are narrowly tailored and limited to releasing parties from liabilities for acts and

23 omissions related to or arising out of the bankruptcy case or bankruptcy filing are proper. *Blixseth*

24 *v. Credit Suisse*, 961 F.3d 1074, 1081 (9th Cir. 2020). Here, Debtor and its professionals

25 participated in good faith in formulating and negotiating the Plan as it relates to Debtor and they

26 should be entitled to protection from exposure to any lawsuits filed by disgruntled creditors or other

27 unsatisfied parties. The exculpation provision does not affect any obligations relating to claims

28 submitted by creditors and exclusively exculpates actions occurring during the bankruptcy

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

42

proceeding. *See id.* Further, the exculpation provision carves out actions which are found to constitute actual fraud, willful misconduct, or gross negligence. Thus, the exculpation proposed by Debtor is narrowly tailored to ensure that Debtor and its professionals are not subject to post-confirmation liability, which may threaten the viability of the Plan, for actions taken in connection with this bankruptcy case and the Plan. The exculpation provision, therefore, is proper.

The injunction provisions set forth in Article 12.4. of the Plan are firmly grounded in federal bankruptcy law and are consistent with controlling Ninth Circuit precedent. The injunctive effect of Plan confirmation is well established.

The Ninth Circuit has established clear and authoritative boundaries for bankruptcy court injunctive authority. In *In re Lowenschuss*, the court held that Section 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors and that "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief [against a non-debtor]." 67 F.3d 1394, 1402 (9th Cir. 1995). The *Lowenschuss* decision, however, focused exclusively on broad "Global Release" provisions that released third parties from liability - a circumstance materially distinct from plan language that channels claims through the confirmed plan structure and provides for finality upon confirmation. The injunction in Article 12.4. of the Plan presents no such infirmity. It does not release any non-Debtor third party from liability; it directs parties holding Claims addressed by the Plan to seek their recovery through the Plan and Confirmation Order rather than through independent litigation. At minimum, such an injunction is appropriate to effectuate 11 U.S.C. § 1141(c), since the property dealt with by the Plan will be free and clear of all claims and interests of creditors, equity security holders and general partners regardless of whether Debtor itself is discharged. *See In re WCI Cable, Inc.*, 282 B.R. 457, 480 (Bankr. D. Or. 2002) (Noting that the proposed injunction was proper to "enforce the discharge provisions of § 1141(c)[,]" among other grounds, and that the provision was consistent with Section 524(e)).

The Plan expressly acknowledges, consistent with Section 1141(d)(3), that the Plan does not discharge Debtor. Plan, Art. 12.3. Section 1141(c) of the Bankruptcy Code nevertheless provides that Assets dealt with by the Plan are free and clear of all Claims and Equity Interests

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

43

against Debtor, and all parties are precluded from asserting against any Assets to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or other interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date. *In re Station Casinos, Inc.*, No. 09-52477-GWZ, 2010 WL 11492265, at *17 n.12 (Bankr. D. Nev. Apr. 9, 2010); *see also In re Reg'l Bldg. Sys.*, 251 B.R. 274, 282 n.12 (Bankr. D. Md. 2000) ("Section 1141(c) does not vary in operation depending upon whether the plan . . . was a liquidation plan. So it is irrelevant that the Plan here was a liquidation plan. . .");  *In re Shenandoah Realty Partners, L.P.*, 248 B.R. 505, 513 (W.D. Va. 2000). The injunction in Article 12.4. gives effect to this statutory protection - it does not expand it. The injunction is expressly limited to protecting Debtor, the Estate, the Liquidating Trustee, and Purchaser from the assertion of Claims that are addressed by the Plan, and which would necessarily concern property dealt with by the Plan, and it expressly carves out claims by non-Debtor parties against other non-Debtor parties, claims arising under insurance policies, and any pursuit of claims against insurers. Plan, Art. 12.4.

The Fifth Circuit has similarly approved injunctions, narrowly drawn, that bar actions interfering with the Plan and notice requirements. Federal Rule of Bankruptcy Procedure 2002(c)(3) requires that when a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the confirmation notice must include in conspicuous language a statement that the plan proposes an injunction, a brief description of its nature, and identify the entities subject to the injunction. *In re City of San Bernardino*, 566 B.R. 46, 59 (Bankr. C.D. Cal. 2017). Here, the Solicitation Package served on all creditors and parties in interest pursuant to the Solicitation Order included conspicuous disclosure of the injunction provisions contained in Article 12.4. of the Plan, affording all parties adequate notice and a full and fair opportunity to object at the Confirmation Hearing. Accordingly, the injunction provisions of the Plan are consistent with applicable law and should be approved as part of the Confirmation Order.

## VII.   CONCLUSION

The Plan complies with and satisfies the requirements of Section 1129 of the Bankruptcy Code. Accordingly, Debtor requests that the Court enter an order confirming the Plan and granting such other and further relief as is just and appropriate under the circumstances.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1    Dated:  March 10, 2026                 Respectfully submitted,

2                                  Bryan Cave Leighton Paisner LLP

3                                  By: *Sharon Z. Weiss*

4                                       Sharon Z. Weiss
                                 Attorneys for Debtor and Debtor-in-Possession

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF
LIQUIDATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 120 Broadway, Suite 300, Santa Monica, California 90401-2386.

A true and correct copy of the foregoing document(s) entitled: **MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026); MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 10, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **PLEASE SEE ATTACHED LIST**

⊠    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*), I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 10, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

    **SERVED BY EMAIL:**

- Nowell A. Lantz on behalf of Petitioning Creditor Standard Drywall, Inc.
  nlantz@ftblaw.com

- William Hawkins on behalf of Creditor Chicago Title Insurance Company
  whawkins@loeb.com

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 10, 2026 | Raul Morales | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Adam S Affleck on behalf of Creditor Fetzers' Inc.
adam-affleck@rbmn.com, jennifer-franklin@rbmn.com

- Melody G Anderson on behalf of Creditor Creditors Adjustment Bureau, Inc.
meanderson@zwickerpc.com

- James W Bates on behalf of Creditor Kovach Enclosure Systems, LLC
jbates@jbateslaw.com

- Ori S Blumenfeld on behalf of Interested Party Courtesy NEF
ori.blumenfeld@offitkurman.com, liyah.lewis@offitkurman.com; ik-maurice.ibe@offitkurman.com

- Paul Brent on behalf of Creditor BRAGG INVESTMENT CO.
snb300@aol.com

- Sara Chenetz on behalf of Creditor DTLA Lending LLC
schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com;
jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Sara Chenetz on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com;
jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com; rleibowitz@perkinscoie.com

- Jacquelyn H Choi on behalf of Creditor LOS ANGELES COUNTY TREASURER AND TAX COLLECTOR
jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com

- Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; camille@lesliecohenlaw.com

- Gloria D Cordova on behalf of Creditor Carrara, Inc.
NEF@gcordovalaw.com, NEF@gcordovalaw.com; ssg@gcordovalaw.com

- Sean C Coughlin on behalf of Creditor Commercial Scaffolding of California, Inc.
scc@coughlin-law.com, lb@coughlin-law.com; bcrena@noonanlance.com; ssuper@noonanlance.com

- Matthew Dill on behalf of Interested Party Courtesy NEF
mdill@counsel.lacounty.gov

- Luke N Eaton on behalf of Creditor CMF, Inc.
lukeeaton@cozen.com, jacqueline.sims@troutman.com

- Amir Gamliel on behalf of Creditor DTLA Lending LLC
agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com

- Amir Gamliel on behalf of Petitioning Creditor Lendlease (US) Construction Inc.
agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com

- Jon F Gauthier on behalf of Petitioning Creditor Standard Drywall, Inc.
jgauthier@ftblaw.com, jrobinson@ftblaw.com

- Richard Girgado on behalf of Interested Party Courtesy NEF
rgirgado@counsel.lacounty.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

- Richard H Golubow on behalf of Petitioning Creditor Woodbridge Glass Inc.
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com

- Ani Grigoryan on behalf of Interested Party Chicago Title Insurance Company
  ani.grigoryan@aalrr.com, jenifer.gootkin@aalrr.com

- Lance N Jurich on behalf of Creditor Chicago Title Company
  ljurich@loeb.com, pmatsuda@loeb.com; ladocket@loeb.com; ljurich@ecf.courtdrive.com;
  fmckeown@loeb.com

- Lance N Jurich on behalf of Creditor Chicago Title Insurance Company
  ljurich@loeb.com, pmatsuda@loeb.com; ladocket@loeb.com; ljurich@ecf.courtdrive.com;
  fmckeown@loeb.com

- Gary E Klausner on behalf of Interested Party Courtesy NEF
  gek@lnbyg.com

- Noreen A Madoyan on behalf of U.S. Trustee United States Trustee (LA)
  Noreen.Madoyan@usdoj.gov

- Allison C. Murray on behalf of Creditor Schuff Steel Company, Inc.
  acmurray@swlaw.com, kcollins@swlaw.com

- Douglas M Neistat on behalf of Creditor ACCO Engineered Systems, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Creditor Bapko Metal, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Creditor Martin Bros./Marcowall, Inc.
  dneistat@gblawllp.com, mramos@gblawllp.com

- Douglas M Neistat on behalf of Interested Party Douglas Neistat
  dneistat@gblawllp.com, mramos@gblawllp.com

- Rosemary Nunn on behalf of Petitioning Creditor Mitsubishi Electric US, Inc.
  rosemary.nunn@procopio.com, nicholas.fortino@procopio.com; gaylene.oyama@procopio.com

- Matthew D Pham on behalf of Attorney Matthew D. Pham
  mpham@allenmatkins.com, mdiaz@allenmatkins.com

- Michael B Reynolds on behalf of Creditor Schuff Steel Company, Inc.
  mreynolds@swlaw.com, kcollins@swlaw.com

- Robert L. Rosvall on behalf of Creditor CallisonRTKL, Inc.
  rrosvall@ccllp.law, kvargas@ccllp.law

- Jeremy H Rothstein on behalf of Creditor ACCO Engineered Systems, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Bapko Metal, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

- Jeremy H Rothstein on behalf of Creditor Martin Bros./Marcowall, Inc.
  jrothstein@gblawllp.com, msingleman@gblawllp.com; mbowes@gblawllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

- Leonard M. Shulman on behalf of Interested Party Kpc Global Care Inc A Cal Corp
  lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com; yrivera@shulmanbastian.com

- Howard Steinberg on behalf of Creditor L.A. Downtown Investment, LP
  steinbergh@gtlaw.com, pearsallt@gtlaw.com; NEF-BK@gtlaw.com;
  howard-steinberg-6096@ecf.pacerpro.com

- United States Trustee (LA)
  ustpregion16.la.ecf@usdoj.gov

- J Scott Williams on behalf of Interested Party Courtesy NEF
  jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com

- Donna Wong on behalf of Interested Party City of Los Angeles
  donna.wong@lacity.org

- Richard Lee Wynne on behalf of Interested Party City of Los Angeles
  richard.wynne@hoganlovells.com, tracy.southwell@hoganlovells.com; cindy.mitchell@hoganlovells.com;
  rick-wynne-7245@ecf.pacerpro.com

- Chelsea Zwart on behalf of Petitioning Creditor Star Hardware, Inc.
  czwart@smsm.com, service@cgdrlaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**