RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100

Attorneys for Woodbridge Glass, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>OCEANWIDE PLAZA LLC,<br><br><br>Debtor. | Case No. 2:24-bk-11057-DS<br><br>Chapter 11 Proceeding<br><br>**WOODBRIDGE GLASS INC.'S LIMITED OPPOSITION TO DEBTOR'S MOTION FOR ORDER CONDITIONALLY APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026)**<br><br>Date:    May 19, 2026<br>Time:    10:00 a.m.<br>Place:    Courtroom 1639<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

Woodbridge Glass, Inc., a secured creditor in the above referenced Chapter 11 case ("Woodbridge"), hereby submits this "Limited Opposition" to the *Debtor's Motion for Order Conditionally Approving the Combined Disclosure Statement and Plan of Liquidation (Dated February 23, 2026)* [ECF No. 841] filed by Oceanwide Plaza LLC, the Chapter 11 debtor and debtor in possession (the "Debtor").

## I.

## **INTRODUCTION**

Woodbridge timely filed a *secured* proof of claim.  The Debtor has proposed a chapter 11 plan; however, Woodbridge's claim does not appear to fall within any of the secured classes set forth in the plan.  Thus, the Debtor's proposed plan inexplicably fails to clearly identify any class, secured or otherwise, or treatment of Woodbridge's claim.  Woodbridge assumes that the omission of any classification of its claim was inadvertent, and thus this limited opposition is merely filed as a precautionary measure to preserve its rights.

No objection has been filed with respect to Woodbridge's secured claim, and therefore it remains *prima facie* valid.  As set forth hereinbelow, a proposed chapter 11 plan cannot simply ignore a secured proof of claim, and treat such claim as unsecured.  Accordingly, Woodbridge submits this limited opposition to the Motion, on the grounds that the Debtor fails to identify a secured class for Woodbridge's claim, and an appropriate treatment thereof.  Woodbridge does not ask the Court, through this Limited Opposition, to determine the ultimate validity, extent, or priority of competing asserted liens. Rather, Woodbridge submits that, unless and until Claim 31 is objected to and adjudicated otherwise, the Plan must account for Claim 31 as a secured claim, and cannot simply omit it. As reflected in Woodbridge's prior filed Limited Response [Docket No. 939], Woodbridge previously raised this issue in a more limited manner while the parties explored a consensual resolution, through the anticipated filing of a modified version of the Plan.  Thus, the operative version of the Plan does not clearly classify or provide treatment for Claim 31.[1]

---

[1] As set forth in the Limited Response: " . . . Woodbridge has raised concerns regarding the proposed treatment of its Claim No. 31 and is continuing discussions with the Debtor and the Buyer in an effort to resolve those issues, including through anticipated revisions to the plan documents.  Woodbridge further understands that, if those efforts are unsuccessful, the Debtor, the Buyer, and the Lendlease secured creditors will not contend that an objection filed by

**II.**

**SUMMARY OF RELEVANT FACTS**

On February 13, 2024 (the "Petition Date"), Lendlease (US) Construction Inc., Standard Drywall, Inc., Star Hardware, Inc., Woodbridge Glass Inc., and Mitsubishi Electric US, Inc. (collectively, the "Petitioning Creditors") commenced this case by filing an involuntary petition for relief [ECF No. 1] (the "Involuntary Petition") against the Debtor commencing the above-entitled Chapter 11 proceeding. An order for relief was entered on March 11, 2024 [ECF No. 29].

**A. Woodbridge's *Secured* Proof of Claim 31**

On June 25, 2024, Woodbridge filed a timely *secured* proof of claim, designated as Claim 31, in the amount of $677,367, as of the Petition Date, plus $674.74 per day thereafter ("Claim 31"). Woodbridge requests that the Court take judicial notice of Claim 31, which is attached hereto as Exhibit 1.

Woodbridge is a subcontractor in connection with the Debtor's real estate project located at 1101 South Flower Street, Los Angeles, California 90015 known as Oceanwide Plaza ("Project"). As set forth in more detail to the addendum and attachments to Claim 31, Woodbridge continues to store materials procured in connection with the Project at the request and insistence of the Debtor, including aluminum and glass panels and related materials ("Stored Materials").

The Debtor and Woodbridge entered into a *Stipulation Agreement for Post-Termination Costs* ("Stipulation Agreement"), which is attached to Claim 31. The Stipulation Agreement *inter alia* agrees and acknowledges that the Debtor had incurred storage costs of $670,619.60, as of February 3, 2024, plus $674.74 per day thereafter. Claim 31 asserts a secured claim by virtue of a warehouse lien *inter alia* pursuant to California Commercial Code § 7209, *et. seq*. Accordingly, Woodbridge filed Claim 31, as a secured claim, asserting $677,367, as of the Petition Date, plus $674.74 per day thereafter.

---

Woodbridge to plan confirmation on or before May 5, 2026 is untimely. Accordingly, Woodbridge reserves all rights, including the right to object to confirmation and related relief on any available grounds."

**B.      Debtor's Combined Disclosure Statement and Plan of Liquidation**

On February 23, 2026, the Debtor filed its *Combined Disclosure Statement and Plan of Liquidation (Dated February 23, 2026)* [ECF No. 842] (the "Plan").  Article 4 of the Plan describes the various classes of secured claims, identified as Classes one through four, as follows:

| Class | Claims | Status |
|---|---|---|
| Class 1 | Secured Tax Claims | Unimpaired |
| Class 2 | LADI Secured Claim | Impaired |
| Class 3 | LL Secured Claims | Impaired |
| Class 4 | Junior Secured Claims | Impaired |

Facially, Woodbridge's Claim 31 does not appear to fall within any of the above referenced secured classes in the Plan.  Accordingly, it is unclear how or where Claim 31 is classified under the Plan, and what treatment the Debtor proposes.  Woodbridge generally understands that the Plan provides for a private sale of certain assets of the Debtor pursuant to a Purchase and Sale Agreement dated as of February 16, 2026 (the "PSA"), by and between Debtor, and KPC Square, LLC, or its designee.  The property to be sold is defined as the "PSA Property" which is described as "collectively, all of Debtor's right, title and interest in and to (a) the Real Property, (b) the appurtenances thereto, (c) the improvements thereon, (d) the personal property related thereto, and (e) the intangible property related thereto, all as more particularly described in the PSA."  *See* Plan, Section 1.1.98.

In the PSA, exhibit B-2 (List of Off-Site Personal Property), the Debtor does appear to list certain personal property held by Woodbridge as being part of the proposed sale.  Accordingly, it appears that the Stored Materials are included within the definition of the PSA Property; however, it is unclear how the Debtor proposes to treat Woodbridge's claim under the Plan (for example, are the Stored Materials being sold subject to Woodbridge's lien and the claim assumed by the buyer? Or will Woodbridge be paid under the Plan from the sale proceeds?).

As a matter of bankruptcy law, each secured claim is generally entitled to separate classification on the basis that the collateral and priority of each secured claim is different.  Accordingly, Woodbridge files this limited opposition to the Plan, on the grounds that the Debtor fails

to identify a secured class for Claim 31, and an appropriate treatment thereof. Woodbridge further reserves all rights with respect to the validity, extent, and priority of its asserted lien in the Stored Materials, and any right to adequate protection to the extent the Plan contemplates a sale of such materials free and clear of liens.

### C.    Prior Limited Response and Reservation of Rights

On April 17, 2026, Woodbridge filed a Limited Response to the Debtor's Motion for Order Conditionally Approving the Combined Disclosure Statement and Plan of Liquidation (the "Prior Limited Response") [Docket No. 939]. In that filing, Woodbridge stated that it had raised concerns regarding the proposed treatment of Claim 31, that it was continuing discussions with the Debtor and the Buyer in an effort to resolve those issues, and that it reserved all rights, including the right to object to confirmation and related relief on any available grounds. Thus, Woodbridge previously attempted to address the treatment of Claim 31 without burdening the Court with a broader merits dispute, but the operative Plan does not clearly classify or provide treatment for Claim 31.

### III.

### THE PLAN MUST CLASSIFY CLAIM 31.

It is well established that filed proofs of claim are *prima facie* valid.  In re King Street Investments, 219 B.R. 848, 858 (9th Cir. BAP 1998) ("A proof of claim filed in bankruptcy is prima facie valid under Bankruptcy Code § 502.").

"The prima facie effect articulated in 3001(f) also applies to the *secured* status of the claim which the Court determines under § 506(a)."  In re Britt, 199 B.R. 1000, 1012 (Bankr. N.D. Ala. 1996) (emphasis added).  "[A] proof of claim is prima facie evidence of the secured status of a claim and …the objecting party had the burden of going forward and producing sufficient evidence to rebut the secured party's claim."  In re Wessel, 161 B.R. 155, 158 (Bankr. D.S.C. 1993) citing In re South Atlantic Packers Association, Inc., 30 B.R. 836 (Bankr. D.S.C. 1983).

Notwithstanding Woodbridge's filing of a *secured* proof of claim, the Debtor's Plan inexplicably fails to clearly identify any class, secured or otherwise, for Claim 31.

It is generally accepted that each secured claim is entitled to separate classification in a Chapter 11 plan, on the basis that the collateral and priority of each secured claim is different.  See

e.g., In re Commercial Western Finance Corp., 761 F.2d 1329, 1338 (9th Cir. 1985) ("Each of the investors' claims is secured by a different note and deed of trust. Both *Collier* and case law establish that creditors with claims against different properties generally are entitled to separate classification." "Because the borrower notes … are secured by different pieces of property, the bankruptcy court's implicit finding that the claims were 'substantially similar' was clearly erroneous."); In re Root, 2012 WL 5193840, at *4 fn 11 (Bankr. D. Idaho 2012) ("[A]s a general rule each holder of an allowed claim secured by a security interest in specific property of the debtor should be placed in a separate class.") quoting 7 Collier on Bankruptcy ¶ 1122.03[3][c], at p. 1122–15; In re Rhead, 179 B.R. 169, 177 fn 16 (Bankr.D.Ariz. 1995) ("It is well settled that each holder of a secured claim should be placed in a separate class since no other creditor has rights that are 'substantially similar' to those held by that secured creditor.").

Since Woodbridge's Claim 31 does not appear to fall within any of the above referenced secured classes under the Plan, as drafted, it is unclear if the Debtor's intention is to treat Claim 31 as an unsecured claim. Where a creditor files a *secured* proof of claim, the Debtor cannot simply ignore the claim's secured status, and treat such claim as unsecured in the proposed plan.   For example, in In re Anderson, 305 B.R. 861 (8th Cir. BAP 2004), the BAP reversed the bankruptcy court, holding that the debtors could not classify a secured proof of claim as an unsecured claim in the plan, and thereby use the plan confirmation process to avoid or defeat a lien:

> The [debtors] listed [creditor] as an unsecured creditor, but [debtor] freely admitted at the confirmation hearing that [creditor] had obtained a judgment in Carlton County, Minnesota. The [debtors] never properly contested the validity of [creditor's] lien. Instead, the [debtors] filed a Chapter 12 plan that classified any judgment as a Class 12 unsecured claim, "liens of all which are avoided under 11 U.S.C. § 506."[9] [Creditor] had already filed a proof of claim and designated its claim as secured. The [debtors] never objected to that claim, therefore, the claim is deemed allowed as filed. *** Under the facts established above, [creditor's] claim is allowed as secured, and the court erred in shifting the burden to [creditor's] to so prove.

> *** If a creditor has a secured claim then the plan must provide that the creditor retains its lien, and that it is entitled to the present value of its secured claim. The [debtors'] Chapter 12 plan did not classify [creditor's] claim as a secured claim. It provided no payment for [creditor's] claim, and it arbitrarily provided that all judgment liens are avoided.  *** Thus, the court erred as a matter of law when it confirmed a Chapter 12 plan that failed to provide for the claim of a secured creditor…

In re Anderson, 305 B.R. 861, 865, 867 (8th Cir. BAP 2004).

As a result, to the extent the Plan proposes to classify and treat Claim 31 as unsecured, such

classification and treatment is impermissible. Claim 31 is prima facie valid as a *secured* claim, and is entitled to classification and treatment as a *secured* claim. At minimum, the Plan must expressly identify how Claim 31 is classified and treated, and may not simply omit Claim 31 or assume away Woodbridge's asserted lien rights.

**IV.**

**THE PLAN MUST ACCOUNT FOR WOODBRIDGE'S CLAIM 31**

**REGARDLESS OF ANY FUTURE DISPUTE AS TO PRIORITY OR TREATMENT**

Woodbridge does not ask the Court, through this Limited Opposition, to finally determine the validity, extent, or priority of its asserted lien against the Stored Materials, or the relative priority of any competing asserted liens. Those issues, to the extent disputed, remain subject to further claim objection, lien litigation, sale proceedings, and/or proceedings as appropriate. The present point is narrower: the Plan must account for Claim 31 unless and until it is successfully challenged and adjudicated otherwise. Indeed, Woodbridge previously filed the Prior Limited Response advising that it had raised concerns regarding the proposed treatment of Claim 31, was attempting to resolve those concerns consensually, and was reserving all rights if those efforts were unsuccessful. The present Limited Opposition is therefore a continuation of that same issue, not a new dispute.

Woodbridge includes the following background solely to make clear why Claim 31 cannot simply be ignored under the Plan. L.A. Downtown Investment L.P. ("LADI") has asserted a lien against certain personal property of the Debtor; however, the present record does not establish, for purposes of confirmation of the Plan, that LADI holds a perfected, senior lien against the Stored Materials such that Claim 31 may be treated as valueless or omitted altogether.

LADI's proof of claim, designated as Claim 27, attaches a Loan Agreement, Promissory Note, and Deed of Trust. Claim 27 does not attach any separate security agreement or UCC-1 financing statement as against the Debtor's personal property. Woodbridge acknowledges that Article 7 of the Deed of Trust contains language purporting to grant a security interest in personal property; however, it remains unclear on the present record whether such language is sufficient to cover the Stored Materials, which are not personal property "now or hereafter located on the Property."

In addition, assuming arguendo that LADI has a perfected security interest against the Stored

Materials, California Commercial Code § 7209(c) provides that a pre-existing security interest may be subject to a warehouse lien where the secured party "deliver[s] or entrust[s] the goods or any document of title covering the goods to the bailor" or "acquiesce[s] in the procurement by the bailor . . . ." Woodbridge does not ask the Court to resolve that issue now, but notes that any such priority dispute remains separate from, and does not excuse, the Plan's present failure to classify and state treatment for Claim 31.

Woodbridge further notes that the Court's Order approving the Settlement Agreement between the Debtor and LADI, Docket No. 807 (the "9019 Order"), does not expressly adjudicate the validity, extent, or priority of LADI's lien, if any, or Woodbridge's warehouse lien, against the Stored Materials. To the contrary, the 9019 Order states that "The LADI Secured Claim is senior in priority to all Mechanic's Lien Claims." Woodbridge's asserted warehouse lien is not a mechanic's lien claim. Likewise, the Settlement Agreement attached to Docket No. 789 primarily addresses LADI's lien against the real property, improvements, and proceeds therefrom, not the Stored Materials. Woodbridge does not ask the Court to finally construe those documents here, but submits that they do not, on their face, eliminate the need for the Plan to account for Claim 31.

Further, absent proper classification and treatment of Claim 31, the Plan leaves unclear whether the Debtor intends to sell the Stored Materials subject to Woodbridge's asserted lien, pay Claim 31 from sale proceeds, object to Claim 31, or otherwise seek a determination of Woodbridge's rights through a separate process. That uncertainty is itself the present defect. To the extent the Plan proposes to sell the Stored Materials free and clear of Woodbridge's asserted lien, Woodbridge reserves all rights to adequate protection under section 363(e) of the Bankruptcy Code, including having any valid lien attach to sale proceeds to the same extent, validity, and priority as existed prior to any sale.

Accordingly, regardless of any future dispute as to the validity, extent, priority, or value of Claim 31, the Plan must account for Claim 31 by identifying a class and stating the Debtor's proposed treatment of that claim. Thus, at a minimum, the Debtor should be required to amend the Plan.

/ / /

/ / /

## V.

## CONCLUSION

Based upon the foregoing, Woodbridge requests that the Motion be denied on the grounds set forth herein, or alternatively, approved subject to the modification of the Plan to provide for the classification and treatment of Claim 31 as a secured claim, without prejudice to Woodbridge's rights with respect to the validity, extent, and priority of its asserted lien, and any right to adequate protection in connection with any proposed sale of the Stored Materials.

DATED: May 5, 2026                    **WINTHROP GOLUBOW HOLLANDER, LLP**

By: */s/ Richard H. Golubow*
     Richard H. Golubow
Attorneys for Woodbridge Glass, Inc.

# EXHIBIT 1

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | Oceanwide Plaza LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 2:24-11057-DS |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:    Identify the Claim

**1. Who is the current creditor?**

Woodbridge Glass, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Richard Golubow/Winthrop Golubow Hollander
Name

1301 Dove Street, Suite 500
Number    Street

Newport Beach        CA        92660
City            State        ZIP Code

Contact phone (949) 720-4135

Contact email rgolubow@wghlawyers.com

**Where should payments to the creditor be sent? (if different)**

Woodbridge Glass, Inc., Attn: Jeff Siciliani
Name

3441 W  MacArthur Blvd
Number    Street

Santa Ana        CA        92704
City            State        ZIP Code

Contact phone 714.838.4444 x209

Contact email jeff@woodbridgeglass.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____  Filed on ___/___/___
                                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

---

Official Form 410                    Proof of Claim                    page 1

EXHIBIT 1 - PAGE 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?**

$_____ 677,367.00 . **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Services performed. See attached addendum and exhibit.

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:   Aluminum and glass panels stored by claimant.

**Basis for perfection:**   Warehouse lien

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $_____

**Amount of the claim that is secured:**    $___ 677,367.00

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

EXHIBIT 1 - PAGE 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   06/25/2024
                   MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Jeff Siciliani |
| | First name          Middle name          Last name |
| Title | Vice President |
| Company | Woodbridge Glass, Inc. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 3441 W  MacArthur Blvd |
| | Number        Street |
| | Santa Ana                              CA          92704 |
| | City                      State      ZIP Code |
| Contact phone | 714.838.4444 x209          Email  jeff@woodbridgeglass.com |

**In re: Oceanwide Plaza, LLC**
**United States Bankruptcy Court**
**Central District of California**
**Case No. 2:24-11057-DS**

## Addendum to Storage Proof of Claim Filed by Woodbridge Glass, Inc.

Woodbridge Glass, Inc., a California corporation ("Woodbridge"), hereby provides a summary in support of its proof of claim against Oceanwide Plaza, LLC ("Debtor"), as of the petition date (February 13, 2024), and does not include post-petition interest, fees and costs, to the extent allowed by law. See, 11 U.S.C. § 506(b).

Woodbridge's Proof of Claim is premised upon the following:

The Debtor is the owner and developer of a large mixed-use real estate project located at 1101 South Flower Street, Los Angeles, California 90015 known as Oceanwide Plaza ("Project").

The Debtor and Lendlease (US) Construction, Inc. ("Lendlease") entered into agreements dated November 11, 2014 and July 19, 2016 for Lendlease to serve as general contractor and construct the Project (collectively, the "Prime Contract").

On or about April 19, 2017, Woodbridge entered into two (2) subcontracts with Lendlease ("Woodbridge Subcontracts") to perform work on the Project, including providing and installing aluminum and glass panels and related services and materials ("Work").

On or about January 21, 2019, Lendlease demobilized most of its Project subcontractors for lack of payment from the Debtor.

On or about June 27, 2019, Woodbridge recorded two (2) mechanic's liens in the Los Angeles County Recorder's Office against the Project for nonpayment for Work, which mechanic's liens were assigned document numbers 20190618245 and 20190618246 ("Woodbridge Mechanics Liens").

On September 15, 2020, Lendlease terminated the Prime Contract for cause, and on or about this date, terminated the Woodbridge Subcontracts for convenience ("Subcontract Termination").

On or about December 2, 2020, Woodbridge sued to foreclose on the Woodbridge Mechanics Liens in Los Angeles Superior Court, assigned case number 20STCV46046 ("Woodbridge Liens Action"), which was consolidated into Webcor Construction LP v. Lendlease (US) Construction, Inc., assigned case number 19STCV03357 ("Consolidated Action").  The Debtor, Lendlease and Woodbridge are parties to the Woodbridge Liens Action and the Consolidated Action.  In the Woodbridge Liens Action and the Consolidated Action, the Debtor, Lendlease and Woodbridge have stipulated that the unpaid balance owed to Woodbridge for the Work is $7,200,003.00 ("Woodbridge Secured Claim").

1

EXHIBIT 1 - PAGE 4

In addition to the Woodbridge Secured Claim for the unpaid Work performed prior to the Subcontract Termination, Woodbridge continued storing materials procured in connection with the Project at the request and insistence of the Debtor, incurring additional costs post-Subcontract Termination.

Woodbridge is owed $424,340.00, for incurred costs between October 1, 2020 through February 2, 2023, for storing and boat wrapping aluminum and glass panels, and another $246,279.60 for additional storage costs between February 2, 2023 and February 3, 2024 (a total of $670,619.60) plus $674.74 per day on and after February 4, 2024, all of which is acknowledged and agreed to be due and owing from the Debtor (and not from Lendlease) in a document entitled Stipulation Agreement for Post-Termination Costs ("Stipulation Agreement"), signed by the Debtor's representative, Thomas Feng on September 4, 2023, which claim is not secured by any lien that Woodbridge has against the Debtor or the Debtor's property.  A true and correct copy of the Stipulation Agreement is attached hereto as Exhibit A.  The claim of Woodbridge under the Stipulation Agreement is $677,367.00, which is calculated at $670,619.60 as of February 3, 2024, plus $674.74 per day from February 4 to the petition date of February 13, 2024 (ten (10) days total).

### Reservation of Rights

In executing and filing this Proof of Claim, Woodbridge reserves the right to amend, modify, or supplement this Proof of Claim in any respect.  Further, Woodbridge intends to provide notice to the Debtor: (a) that Woodbridge asserts any and all of its rights and remedies it has at law or under any operative documents, including, without limitation, rights of setoff; (b) that Woodbridge reserves its right to file an administrative claim; and (c) that nothing in this Proof of Claim is intended to limit Woodbridge's rights against any third party or any rights it has at law or in equity.

This Proof of Claim is not intended to be, and shall not be construed as: (a) an election of remedies; (b) a waiver of any right to the determination of any issue or matter by a jury; (c) a waiver of any past, present, or future defaults; (d) a waiver of any right to any security or any other right or rights with respect to any claim it has or may have against the Debtor or any other person or persons; or (e) a waiver or limitation of any rights at law or equity, remedies, claims or interests of Woodbridge.

2

EXHIBIT 1 - PAGE 5

# Exhibit A

EXHIBIT 1 - PAGE 6

## STIPULATION AGREEMENT FOR POST-TERMINATION COSTS

This Stipulation Agreement for Post-Termination Costs ("**Agreement**"), dated August 31, 2023 for reference purposes only, is between Oceanwide Plaza LLC, a Delaware limited liability company, ("**Oceanwide**") and Woodbridge Glass Inc., a California corporation, ("**Subcontractor**"). Oceanwide and Subcontractor are sometimes hereinafter individually referred to as a "**Party**" and collectively as the "**Parties.**"

## I.    RECITALS

A.    Oceanwide is the owner and developer of a large mixed-use project located at 1101 South Flower Street, Los Angeles, California (the "**Property**") known as Oceanwide Plaza (the "**Project**").

B.    Oceanwide and Lendlease (US) Construction, Inc. ("**Lendlease**") entered into agreements dated November 11, 2014 and July 19, 2016 for Lendlease to serve as general contractor and construct the Project (collectively the "**Prime Contract**").

C.    On or about April 19, 2017, Lendlease entered into two subcontracts with Subcontractor to perform work on the Project, including providing and installing aluminum and glass panels and related materials, (collectively, the "**Subcontract**").

D.    On or about January 21, 2019, Lendlease demobilized most of its Project subcontractors for lack of payment from Oceanwide.

E.    On or about June 27, 2019, Subcontractor recorded two mechanic's liens, with document numbers 20190618246 and 20190618245, for payment allegedly owed for performing work on the Project (the "**Subcontractor Lien**").

F.    On September 15, 2020, Lendlease terminated the Prime Contract for cause, and on or about this date, terminated the Subcontract for convenience (the "**Subcontract Termination**").

G.    On or about December 2, 2020, Subcontractor sued to foreclose on the Subcontractor Lien in Los Angeles Superior Court case number 20STCV46046 (the "**Subcontractor Lien Action**"), which was consolidated into *Webcor Construction, LP v. Lendlease (US) Construction, Inc.*, case number 19STCV03357 (the "**Consolidated Action**"). Oceanwide, Lendlease, and Subcontractor are parties to the Subcontractor Lien Action and the Consolidated Action.

H.    After the Subcontract Termination, Subcontractor incurred costs for the benefit of the Project from October 1, 2020 through February 2, 2023, by storing aluminum and glass panels and related materials and "boat wrapping" them, for which

Page 1 of 4

EXHIBIT 1 - PAGE 7

Subcontractor seeks payment from Oceanwide of $424,340.00 (four hundred twenty-four thousand three hundred forty dollars and no cents) (the "**First Post-Termination Costs**").

I.      After the Subcontract Termination, Oceanwide and Subcontractor executed a Forbearance Agreement dated January 13, 2023, by which Oceanwide agreed to pay $246,279.60 (two hundred forty-six thousand two hundred seventy-nine dollars and sixty cents) for Subcontractor to store aluminum and glass panels and related materials and "boat wrapping" them from February 3, 2023 through February 3, 2024, which amount is not yet due and has not been paid under this Forbearance Agreement (the "**Forbearance Post-Termination Costs**").

J.      On and after February 4, 2024, Subcontractor will incur costs for the benefit of the Project for storing aluminum and glass panels and related materials and "boat wrapping" them, for which Subcontractor seeks payment from Oceanwide of $674.74 per day (six hundred seventy-four dollars and seventy-four cents per day) (the "**Ongoing Post-Termination Costs**").

K.      The First Post-Termination Costs and Forbearance Post-Termination Costs total $670,619.60 (six hundred seventy thousand six hundred nineteen dollars and nineteen cents).  The First Post-Termination Costs, Forbearance Post-Termination Costs, and Ongoing Post-Termination Costs are collectively referred to hereinafter as the "**Post-Termination Costs**."

L.      Around the time of executing this Agreement: (1) Lendlease and Subcontractor are executing a change order indicating the final Subcontract balance is $7,200,000.00 (seven million two hundred thousand dollars and no cents) (the "**Final Subcontract Balance**"); and (2) Lendlease and Oceanwide are executing a Work Authorization confirming the Final Subcontract Balance is included in the Cost of Work under the Prime Contract (the "**Work Authorization**").

M.      In the Consolidated Action, three trials are currently set: (1) Phase One for Lendlease subcontractors other than Webcor Construction, LP ("**Webcor**"), (2) Phase Two for certain disputes between Lendlease and Oceanwide's lender, and (3) Phase Three for disputes between Webcor, on the one hand, and Lendlease and Oceanwide, on the other hand.  A final judgment will be entered in the Consolidated Action after the third trial (the "**Final Judgment**").

## II.   STIPULATION

Oceanwide and Subcontractor after consulting with their legal counsel, and by and through their authorized representatives, hereby stipulate and agree as follows:

EXHIBIT 1 - PAGE 8

1.    **Amount Owed**.  Oceanwide agrees (a) the Final Subcontract Balance and the Post-Termination Costs are for labor, materials, or equipment provided to and for constructing the Project and (b) it owes Subcontractor the Final Subcontract Balance plus the Post-Termination Costs less any payments by Lendlease to Subcontractor after Lendlease and Oceanwide had signed the Work Authorization.

2.    **Payment by Final Judgment**.  The Parties agree to include the Final Subcontract Balance and the Post-Termination Costs in the Final Judgment.

  a.    **Release on Payment in Full**.  The Parties agree that Subcontractor need not release to Oceanwide the aluminum and glass panels and related materials stored as indicated in Recitals I.H through I.J unless and until the Post-Termination Costs are paid in full.

3.    **Total Compensation**.  Subcontractor agrees the Final Subcontract Balance and the Post-Termination Costs represent the total compensation due and owing to Subcontractor for all work performed on the Project under the Subcontract, including but not limited to any claims or damages for costs, scope of work, change orders, delays, acceleration, lost productivity, extra work, attorneys' fees or costs, interest, prompt payment penalties, or any other claims that were or could have been brought in the Subcontractor Lien Action, Consolidated Action, or otherwise, whether as additional compensation, legal damages, or otherwise (collectively, the "**Claims**").

4.    **No Lendlease Liability**.  Subcontractor agrees Lendlease has no liability for the Post-Termination Costs and expressly waives any claims against Lendlease related thereto.

5.    **Setoffs and Defenses Resolved**.  This Agreement fully resolves any and all counterclaims, backcharges, setoffs, or defenses by Oceanwide against Subcontractor arising out of the Project except for latent defect claims.

6.    **No Provisional Relief**.  Subcontractor agrees not to seek provisional relief based on the Final Subcontract Balance, the Post-Termination Costs, or this Agreement, including but not limited to a writ of attachment, an injunction, or a restraining order. For clarity, however, this Paragraph does not prevent Subcontractor from perfecting or foreclosing on the Subcontractor Lien.

7.    **Entire Agreement**.  Except for those agreements expressly referenced herein, this Agreement constitutes the entire agreement between Oceanwide and Subcontractor with regard to the Subcontractor's claim for Post-Termination Costs. This Agreement is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein.  It may not be modified except in a writing signed by a duly authorized officer of each of the Parties.

Page 3 of 4

EXHIBIT 1 - PAGE 9

8.     **Successors and Assigns**.  This Agreement shall bind the heirs, personal representatives, successors, assigns, executors, and administrators of each Party and inure to the benefit of each Party and its heirs, successors, and assigns.

9.     **Lower-Tier Subcontractor Indemnity**.  To the fullest extent permitted by law, Subcontractor agrees to defend, indemnify, and hold harmless Oceanwide from and against any Claims regarding, related to, based on, or arising from underlying facts giving rise to payment or compensation brought by any person or entity that contracted directly or indirectly with Subcontractor to supply labor, equipment, or materials under the Subcontract.

10.     **Severable**.  If any provision in this Agreement is determined invalid, void, or unenforceable in whole or part, this determination will not affect any other provision of the Agreement, and the provision in question shall be modified so it is enforceable, and if this cannot be done, this Agreement shall be construed as though the provision in question had never been contained herein, unless a court determines the primary purpose of this Agreement would be frustrated.

11.     **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of California.

12.     **Signatures**.  IN WITNESS WHEREOF, the Parties have duly authorized and caused this Agreement to be executed as follows:

**SUBCONTRACTOR**                           **OWNER**
**Woodbridge Glass Inc.**                    **Oceanwide Plaza LLC**

Sign: _Jeff Siciliani_                       Sign: _____

Name: _Jeff Siciliani_                       Name: _Song Feng aka Thomas Feng_

Title: _Vice President_                      Title: _CEO_

Date: _9/3/2023_ , 2023                      Date: _9/4_ , 2023

Page 4 of 4

EXHIBIT 1 - PAGE 10

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **WOODBRIDGE GLASS INC.'S LIMITED OPPOSITION TO DEBTOR'S MOTION FOR ORDER CONDITIONALLY APPROVING THE COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 5, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 5, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

- **David S. Pearon** dpearson@brotherssmithlaw.com
- **Mark V. Isola** misola@brotherssmithlaw.com
- **William J Easley** William.easley@bclplaw.com
- **Jarret P Hitchings** jarret.hitchings@bclplaw.com
- **Robbin Itkin** ritkin@sklarkirsh.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 5, 2026 | Jeannie Martinez | /s/ Jeannie Martinez |
| Date | Printed Name | Signature |

-10-

**NEF SERVICE LIST**

- **Ori S Blumenfeld** oblumenfeld@lakklawyers.com, ncondren@lakklawyers.com;smcfadden@lakklawyers.com
- **Sara Chenetz** schenetz@perkinscoie.com, docketLA@perkinscoie.com; cmallahi@perkinscoie.com; jkulow@perkinscoie.com; chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
- **Leslie A Cohen** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **Matthew Dill** mdill@counsel.lacounty.gov
- **Sonia Plesset Edwards** sedwards@garrett-tully.com
- **Jon F Gauthier** jgauthier@ftblaw.com, jrobinson@ftblaw.com; storres@ftblaw.com
- **Richard Girgado** rgirgado@counsel.lacounty.gov
- **Richard H Golubow** rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **Mark Isola** misola@brotherssmithlaw.com
- **Noreen A Madoyan** Noreen.Madoyan@usdoj.gov
- **James Millane** jhmillane@lanak-hanna.com
- **Michael K Murray** mkmurray@lanak-hanna.com, lrarriaga@lanakhanna.com
- **Douglas M Neistat** dneistat@gblawllp.com, mramos@gblawllp.com
- **Rosemary Nunn** rosemary.nunn@procopio.com, nicholas.fortino@procopio.com; gaylene.oyama@procopio.com
- **Matthew D Pham** mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Robert L. Rosvall** rrosvall@ccllp.law
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Sharon Z. Weiss** sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- **J Scott Williams** jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com
- **Chelsea Zwart** czwart@cgdrlaw.com, service@cgdrlaw.com