**HOGAN LOVELLS US LLP**
Richard L. Wynne (Bar No. 120349)
richard.wynne@hoganlovells.com
Erin N. Brady (Bar No. 215038)
erin.brady@hoganlovells.com
Uchechi Egeonuigwe (Bar No. 297275)
uchechi.egeonuigwe@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

*Attorneys for the City of Los Angeles*

**OFFICE OF THE LOS ANGELES
CITY ATTORNEY**
Hydee Feldstein Soto, City Attorney (Bar
No. 106866)
Michael J. Dundas, Chief Assistant City
Attorney (Bar No. 226930)
mike.dundas@lacity.org
200 North Main Street, Suite 700
Los Angeles, CA 90012-4130
Telephone: (213) 978-8064
Facsimile: (213) 978-8090

*Attorneys for the City of Los Angeles*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

In re:

OCEANWIDE PLAZA LLC,

      Debtor.

Case No.: 2:24-bk-11057-DS

Chapter 11

**THE CITY OF LOS ANGELES'
OBJECTION TO MOTION FOR ORDER
CONFIRMING DEBTOR'S COMBINED
DISCLOSURE STATEMENT AND PLAN
OF LIQUIDATION (DATED FEBRUARY
23, 2026); DECLARATION OF RACHEL
FREEMAN**

**<u>Hearing</u>**
**Date:** May 19, 2026
**Time:** 10:00 a.m.
**Place:** U.S. Bankruptcy Court
     Central District of California
     255 East Temple Street
     Courtroom 1639
     Los Angeles, California 90012
     Hon. Deborah J. Saltzman

\\4146-9690-9928  v5

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE:**

The City of Los Angeles (the "City"), in its capacity as an administrative, priority, and unsecured creditor in the above-captioned chapter 11 case (the "Chapter 11 Case") of Oceanwide Plaza LLC (the "Debtor"), as well as an interested party due to its regulatory, civil, and criminal enforcement duties, hereby submits this objection (the "Objection") to the *Motion for Order Confirming Debtor's Combined Disclosure Statement and Plan of Liquidation (Dated February 23, 2026)* [Docket No. 859] and the *Debtor's Combined Disclosure Statement and Plan of Liquidation* [Docket No. 842] (the "Combined Plan"). This Objection is based upon the City's review of the Combined Plan, the Purchase and Sale Agreement, dated February 16, 2026, between the Debtor, as seller, and KPC Square, LLC, as proposed purchaser (the "Proposed Purchaser"), which is attached as Exhibit 4 to the Combined Plan (the "PSA"), and the City's extensive diligence process, as described below. This Objection is supported by the Declaration of Rachel Freeman, attached hereto and incorporated herein as **Exhibit A** (the "Freeman Decl.").

## I.    PRELIMINARY STATEMENT

The City supports a sale that will result in near-term remediation of the project known as Oceanwide Plaza (the "Project"), and a realistic path to completion of the Project. The City appears in this Chapter 11 Case not only as a creditor, but as the governmental entity responsible for public safety, land use, building and safety, fire, transportation, utility, and related regulatory matters affecting the Project, the surrounding downtown Los Angeles community, and the broader economic interest of the surrounding community. In that role, the City has jurisdiction over the approval of existing and future permits and entitlements necessary or desirable to undertake the Project's development. The City's objective in this regard has been straightforward throughout this Chapter 11 Case: the Project should be sold to a purchaser that can close promptly, fund both the acquisition *and* development of the Project, remediate the existing blight, and complete the Project on a reliable timeline.

Consistent with that objective, the City has made senior personnel available for regular engagement with the Proposed Purchaser and its consultants. Since the Proposed Purchaser entered

-2-

into the PSA, the City has consistently identified the same core priorities: an approvable development plan, consistent with the City's policy objectives, a phasing plan, a credible permitting path, meaningful near-term blight abatement, and adequate support for closing and post-confirmation performance. The City expected the Proposed Purchaser to substantiate its proposed path with concrete materials showing how it would satisfy those priorities. The City has not changed its requirements. To date, however, the Proposed Purchaser has not provided materials sufficient to close the gap between the City's stated requirements and the Proposed Purchaser's current development plan. Accordingly, the sale contemplated in the Combined Plan is premised on a development plan that—as presently proposed—is not approvable by the City.

The Combined Plan's feasibility turns on whether the sale can close, and the sale cannot close unless the Proposed Purchaser obtains the required Entitlements (used herein as defined in the PSA), other discretionary approvals and legislative approvals, and the reinstatement or renewal of necessary construction permits and approvals. *See* Combined Plan § 11.2; PSA § 1.33, Ex. E (filed under seal). Those approvals are not collateral matters. They are central closing conditions under the PSA and require the Proposed Purchaser to present a development plan the City can approve.

The City's position is grounded in a detailed diligence process that began in February 2026 and focused on whether the Proposed Purchaser's development plan provides a realistic path through the City's approval process. The City evaluated the Proposed Purchaser's development plan against the required Entitlements, other discretionary approvals, related permits, and the practical requirements for restarting and completing construction at the Project. To do so, the City pursued diligence through written requests, six (6) recent in-person meetings with the Proposed Purchaser and its key representatives, and informal discussions led by the senior leadership from various departments including from the Office of Mayor Karen Bass (the "Mayor's Office"), Los Angeles City Council District 14 (the "Council District 14"), Los Angeles Department of Water and Power ("LADWP"), Los Angeles Department of City Planning ("LADCP"), Los Angeles Department of Building and Safety ("LADBS"), and Los Angeles Fire Department ("LAFD" and together with the Mayor's Office, Council District 14, LADWP, LADCP, LADBS, and LAFD, the

-3-

\\4146-9690-9928  v5

"City's Senior Leadership Team"). The City has also engaged in meaningful and ongoing discussions with the Debtor, Lendlease (US) Construction Inc. ("Lendlease"), and other stakeholders. Freeman Decl. ¶¶ 2-5.

On April 15, 2026, the City conducted a comprehensive site visit to the Project with more than twenty (20) City representatives from the City's Senior Leadership Team. Freeman Decl. ¶ 5. Through the entire dilligence process, the City sought concrete information necessary to evaluate the Proposed Purchaser's development plan, closing certainty, and post-confirmation performance, including committed or negotiated financing from a bona fide financial institution, a detailed phasing plan, a development and construction schedule, the Entitlements and permitting path, near-term blight-removal commitments, and measurable progress before the 2028 Olympic and Paralympic Games.

Based on the diligence provided, the City has determined that the Proposed Purchaser's development plan cannot be approved as currently proposed. As verbally presented, the development plan is limited to concrete information on certain discrete improvements—such as completing the parking garage, pursuing full operational capacity of the previously entitled 700-foot LED signage, pursuing tower signage (which is a new entitlement requiring a lengthy legislative process and discretionary approval), as well as making landscaping, façade, and streetscape improvements—and does not include a broader, integrated development program for the rest of the Project supported by a detailed phasing plan, a construction schedule, or other supporting materials. Further, despite repeated requests for specificity, the Proposed Purchaser's contingency list, attached to the PSA as Exhibit E, is overly broad, open-ended, and has not been prioritized or phased. *See* Combined Plan, Ex. E (filed under seal). The City has made clear to the Proposed Purchaser that it cannot and will not approve such a plan. Moreover, the Proposed

-4-

\\4146-9690-9928  v5

Purchaser's open-ended six-month closing timeline does not align with the City's stated priority of a fixed closing date and expedited closing timeline. *See* PSA §§ 1.22, 1.23, 4.1, 4.1.7–4.1.9.[1]

Apart from the City's concerns with the Proposed Purchaser's development plan, the current record continues to reflect other barriers to consummation of the Combined Plan and Project completion. On the afternoon of May 5, 2026—the City's deadline to object to the Combined Plan—the Proposed Purchaser provided a partial response to the City's April 16, 2026, diligence request and sent, *for the first time*, written materials that appear to include limited financing information and a proposed construction schedule and development plan only for Phase 1. The City cannot determine, based on the materials received today, whether the Proposed Purchaser has demonstrated a credible path to satisfy the PSA closing conditions to move the Project forward on a reliable timeline.[2]

Closing under the PSA is premised on a development plan that is not, at this point, approvable by the City, and consummation of the Combined Plan depends on consummation of the PSA. The Combined Plan is therefore not feasible under 11 U.S.C. § 1129(a)(11). Confirmation, therefore, should be denied at this time.

## II.      RELEVANT BACKGROUND

### A.      The Debtor and the Project

The Debtor owns the Project, an approximately 60-percent complete mixed-use development in downtown Los Angeles across from Crypto.com Arena and bounded by Figueroa Street, Flower Street, Eleventh Street, and Twelfth Street (the "Property"). The Project consists of three unfinished high-rise towers and related podium improvements, with exterior construction largely complete and substantial interior work remaining. The Property has required significant

---

[1] In addition to its diligence process, the City also requested targeted amendments to the PSA and Combined Plan, including a firm closing date, preservation of appropriate fiduciary flexibility, backup-bidder protections, and controlled diligence access during the post-confirmation, pre-closing period. The Proposed Purchaser engaged constructively on these issues, but ultimately the City determined that its current development plan is not approvable. As such, the discussed plan modifications cannot render the Combined Plan feasible and confirmable.

[2] Because the materials were received on the City's deadline to object to the Combined Plan, the City files this Objection to preserve its rights while the City evaluates the materials and continues discussions with the Proposed Purchaser, the Debtor, Lendlease, and other stakeholders.

-5-

public safety attention due to graffiti, trespassing, base jumping, security breaches, and related conditions. *See Declaration of Michael A. Oreb in Support of the City of Los Angeles' (I) Statement in Support of Entry of a Final Order Authorizing Post-Petition Financing and (II) Reservation of Rights*, Docket No. 194, ¶¶ 1–12.

### B.      The Combined Plan and Relevant Procedural History

On February 23, 2026, the Debtor filed the Combined Plan, which contemplates a sale of the Property pursuant to the PSA. *See* Combined Plan § 11.2. The Combined Plan does not operate independently of the sale; the Effective Date is conditioned on the Closing Date under the PSA. *See* Combined Plan § 11.2. The PSA, in turn, conditions the Proposed Purchaser's obligation to close on approval of the Entitlements, reinstatement or renewal of necessary permits and approvals, construction financing, and execution and delivery of a construction contract. *See* PSA §§ 1.33, 4.1, 4.1.7–4.1.9, Ex. E (filed under seal).

The City and the Debtor agreed to extend the City's deadline to object to confirmation of the Combined Plan, first from March 20, 2026 to March 24, 2026, and then from March 24, 2026 to April 3, 2026. *See* Docket Nos. 874, 896.

On March 27, 2026, the City filed the Motion to Continue Plan Confirmation Hearing to allow additional time to evaluate the feasibility of the Combined Plan. *See* Docket No. 908. On March 30, 2026, the Court entered an order continuing the confirmation hearing to May 19, 2026 (the "Continued Confirmation Hearing"). *See* Docket No. 921.

On April 30, 2026, the Court entered an order approving a stipulation between the Debtor, DTLA Lending LLC, Lendlease, DTLA Funding LLC, L.A. Downtown Investment, LP, the City, and the Proposed Purchaser allowing the Debtor and the parties thereto to share certain confidential information in connection with the sale contemplated by the PSA (the "Confidentiality Agreement"). *See* Docket No. 941, 944. The Confidentiality Agreement amends and clarifies the parties' prior confidentiality stipulation, originally approved on June 25, 2024. *See* Docket Nos. 290, 292.

\\4146-9690-9928  v5

**C.      The City's Diligence Efforts with the Proposed Purchaser**

On March 19, 2026, through counsel, the City provided the Proposed Purchaser with an explanation of the City's priorities and diligence requests concerning the Proposed Purchaser's ability to close under the PSA and complete the Project on a credible timeline (the "First Confidential PSA Diligence Request"). The First Confidential PSA Diligence Request identified the City's principal concerns with the PSA and the Combined Plan, including the Proposed Purchaser's open-ended closing timing, the Debtor's fiduciary-out rights, backup-bidder protections, and continued diligence access. The First Confidential PSA Diligence Request also requested financing information, development and construction timing, Entitlements and permitting information, and near-term blight-removal commitments. Between March 19, 2026 and March 27, 2026, the City, including representatives from Council District 14, continued discussions with representatives of the Proposed Purchaser, the Debtor, Lendlease, and other stakeholders.

On March 31, 2026, after the Court set the Continued Confirmation Hearing, the Proposed Purchaser responded to the City's First Confidential PSA Diligence Request and addressed certain City concerns at a high level. It also proposed initial graffiti abatement and site cleanup after the Combined Plan approval. But it did not provide the development plan or financial information requested by the City.

On April 15, 2026, the City arranged with the Debtors to complete a comprehensive Project site visit at the Property with City's Senior Leadership Team. Freeman Decl. ¶ 5. The City understands that LADWP separately toured the Project with the Proposed Purchaser and that the Proposed Purchaser or its consultants have had additional direct communications with City departments. On April 16, 2026, through counsel, the City sent the Proposed Purchaser a further refined list of its principal priorities with respect to the First Confidential PSA Diligence Request and the Proposed Purchaser's ability to close under the PSA (the "Second Confidential PSA Diligence Request"). Freeman Decl. ¶ 5.

In total, the City met with the Proposed Purchaser six times with respect to this development proposal—on February 26, 2026, March 25, 2026, April 17, 2026, twice on May 1, 2026, and on May 5, 2026—and continued communications regarding the Proposed Purchaser's development

-7-

\\4146-9690-9928  v5

plan, Entitlements, permitting, financing, construction, near-term blight abatement, and preparations for the 2028 Olympic and Paralympic Games. Freeman Decl. ¶ 2-4.

On the afternoon of May 5, 2026, the Proposed Purchaser responded to the City's Second Confidential PSA Diligence Request with a partial response, which included limited financing information and a proposed construction schedule and development plan for only Phase 1 of the Project.

## III.    LEGAL STANDARD

Section 1129(a)(11) of the Bankruptcy Code requires the plan proponent to prove, by a preponderance of the evidence, that confirmation is not likely to be followed by liquidation or further reorganization unless proposed in the plan. 11 U.S.C. § 1129(a)(11). The feasibility inquiry "prevent[s] confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985) (internal quotation marks omitted).

The Ninth Circuit requires ample evidence that a plan has a reasonable probability of success, and speculative or contingent sources of funding will not suffice. *See In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986) (requiring "ample evidence" supporting feasibility of plan). Courts routinely deny confirmation where the proponent fails to provide adequate evidence to support feasibility. *See In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003) (affirming feasibility requirement and evidentiary burden); *In re Trans Max Techs., Inc.*, 349 B.R. 80, 92 (Bankr. D. Nev. 2006) (denying confirmation where the debtor offered only speculation about plan funding).

Plans dependent upon sales that are unspecified as to terms or time frame are not feasible. *See In re Walker*, 165 B.R. 994, 1005 (E.D. Va. 1994) (reversing confirmation where plan failed to specify terms or timeframe for proposed sales); *see also In re Sagewood Manor Assocs. Ltd. P'ship*, 223 B.R. 756, 762–63 (Bankr. D. Nev. 1998) (identifying capital structure, earning power, economic conditions, and management ability as relevant feasibility factors).

Likewise, where a plan relies on uncommitted funding, uncertain sale proceeds, unsupported development assumptions, or a timetable lacking a concrete evidentiary foundation, feasibility is lacking. *See In re Smitty Inv. Grp., LLC*, 2008 WL 2095523, at *11–12 (Bankr. D.

-8-

Idaho May 16, 2008) (denying confirmation where plan depended on unidentified funding sources); *In re Ridge Villas Mgmt., LLC*, 2010 WL 11890100, at \*6–7 (Bankr. D. Ariz. Dec. 7, 2010) (denying confirmation where the debtor lacked committed financing and relied on unsupported projections); *In re Made in Detroit, Inc.*, 299 B.R. 170, 176–77 (Bankr. E.D. Mich. 2003) (denying confirmation where financing was conditional and discretionary).

The Court must therefore determine whether the plan proponent has shown, by a preponderance of the evidence, a concrete and achievable path to consummation. If the record leaves the plan dependent on unresolved contingencies, discretionary future financing, or speculative post confirmation performance, § 1129(a)(11) is not satisfied.

## IV.    ARGUMENT

### A. The Combined Plan Is Not Feasible Because the Proposed Purchaser Has Not Demonstrated the Ability to Satisfy the PSA Closing Conditions.

The Combined Plan depends on the PSA closing. *See* Combined Plan § 11.2. The PSA, in turn, makes closing contingent on approval of the Entitlements, reinstatement or renewal of necessary permits and approvals, execution and delivery of a construction contract, and closing of a construction loan on terms acceptable to the Proposed Purchaser. *See* PSA §§ 1.22, 1.23, 1.33, 4.1, 4.1.7–4.1.9, Ex. E (filed under seal). Those are not administrative conditions; they are core sale conditions that determine whether the transaction can close and whether the Project can move forward after confirmation.

The Debtor therefore must show more than a possible post-confirmation path to closing. It must show a concrete and reasonably probable path to satisfying the PSA closing conditions, including the Entitlements and financing. The Proposed Purchaser has not yet made that showing. The materials provided by the Proposed Purchaser today appear to include, for the first time, a partial response with limited financing information and a proposed construction schedule and plan, but those materials remain under review by the relevant City personnel and do not provide a basis, at this time, for the City to withdraw or materially narrow this Objection.

Accordingly, the Combined Plan is not feasible because the Proposed Purchaser has not demonstrated the ability to satisfy the PSA closing conditions.

\\4146-9690-9928  v5

**B.    The City's Requested Amendments Are Necessary to Cure the Feasibility Defects.**

The City does not seek to prevent a viable sale; it seeks one that can be successful. To advance this objective, in addition to the efforts discussed above, the City has sought targeted amendments to the Combined Plan, necessary to make the sale structure confirmable. Indeed, even if the Proposed Purchaser revises its development plan and later demonstrates a credible path through the City's permitting and approval process, the Combined Plan as written would still leave the Property tied to a transaction dependent on unresolved Entitlements, financing, and construction-contract conditions without adequate protection if the Proposed Purchaser cannot close. *See* PSA §§ 4.1, 4.1.7–4.1.9.

The City therefore requested amendments to the Combined Plan to establish a firm outside closing date, preserve appropriate fiduciary flexibility for the Debtor, permit designation of a backup bidder, and allow controlled diligence access during the post-confirmation, pre-closing period. Those amendments are necessary regardless of whether the Proposed Purchaser later revises its development plan, because they preserve estate optionality and protect the public interest if the PSA transaction does not close. Accordingly, the Combined Plan cannot be confirmed in its current form unless it is modified to provide closing certainty and preserve a practical path to an alternative transaction. Suggested amendments have been provided by the City and those modifications are under discussion between the Debtor, Proposed Purchaser and Lendlease.

**V.    RESERVATION OF RIGHTS**

The City reserves all rights with respect to the Combined Plan and any related documents. Nothing in this Objection, or in the City's continued diligence and discussions with the Debtor, the Proposed Purchaser, or any other party, waives or limits the City's rights to seek further relief from the Court.

///

///

///

///

-10-

\\4146-9690-9928  v5

## VI.    CONCLUSION

The current record does not demonstrate that the Combined Plan is feasible under 11 U.S.C. § 1129(a)(11). For the reasons stated herein, the Court should deny confirmation without prejudice, or condition confirmation on the targeted modifications necessary to cure the current feasibility defects.

Dated: May 5, 2026

Respectfully submitted,

By: *Richard L. Wynne*

**HOGAN LOVELLS US LLP**
Richard L. Wynne (Bar No. 120349)
richard.wynne@hoganlovells.com
Erin N. Brady (Bar No. 215038)
erin.brady@hoganlovells.com
Uchechi Egeonuigwe (Bar No. 297275)
uchechi.egeonuigwe@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

*Attorneys for the City of Los Angeles*

**OFFICE OF THE LOS ANGELES
CITY ATTORNEY**
Hydee Feldstein Soto, City Attorney (Bar No. 106866)
Michael J. Dundas, Chief Assistant City Attorney (Bar No. 226930)
mike.dundas@lacity.org
200 North Main Street, Suite 700
Los Angeles, CA 90012-4130
Telephone: (213) 978-8064
Facsimile: (213) 978-8090

*Attorneys for the City of Los Angeles*

-11-

\\4146-9690-9928  v5

## Exhibit A

**Declaration of Rachel Freeman**

## DECLARATION OF RACHEL FREEMAN

I, Rachel Freeman, declare as follows:

1.     I am the Deputy Mayor of the Office of the Mayor of the City of Los Angeles. I submit this declaration in support of the Objection. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them.[1]

2.     In my role, along with the City's Senior Leadership Team, I have participated in the City's engagement regarding the Project. After the Debtor executed the PSA with the Proposed Purchaser, the City staff engaged with the Proposed Purchaser, the Debtor, and Lendlease regarding the City's Priorities with respect to the Project.

3.     City staff engagement with the Proposed Purchaser has included (i) written diligence requests sent to the Proposed Purchaser through counsel; (ii) meetings on February 26, 2026; March 25, 2026; April 17, 2026; twice on May 1, 2026; and May 5, 2026; and (iii) ongoing and continued discussions regarding the information needed to evaluate the Proposed Purchaser's development plan.

4.     During diligence, up until May 5, 2025, the Proposed Purchaser presented only a verbal development plan focused on completing the parking garage, pursuing full operational capacity of the previously entitled 700-foot LED signage, pursuing new LED signage entitlement on top of tower 1 of the Project, and making landscaping, façade, and streetscape improvements.

///

///

///

///

///

///

///

///

///

---

[1]     Capitalized terms used but not defined herein have the meaning set forth in the Objection.

\\4125-7328-3944  v1

5.    On April 15, 2026, the City's Senior Leadership Team arranged a comprehensive site visit at the Property with representatives from the City's Senior Leadership Team. On April 16, 2026, though counsel, the City sent the Proposed Purchaser the Second Confidential PSA Diligence Request. On the afternoon of May 5, 2026, through counsel, the Proposed Purchaser responded to the City's Second Confidential PSA Diligence Request with a partial response.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 5th day of May 2026, at Los Angeles, California.

_____

Rachel E. Freeman
Deputy Mayor
Office of the Mayor - City of Los Angeles

\\4125-7328-3944  v1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**HOGAN LOVELLS US LLP**
**855 Main St., Suite 200**
**Redwood City, CA 94063**

A true and correct copy of the foregoing document entitled (*specify*):

**THE CITY OF LOS ANGELES' OBJECTION TO MOTION FOR ORDER CONFIRMING DEBTOR'S COMBINED DISCLOSURE STATEMENT AND PLAN OF LIQUIDATION (DATED FEBRUARY 23, 2026); DECLARATION OF RACHEL FREEMAN**

will be served or was served ~~**(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and~~ **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 5, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **May 5, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 5, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 5, 2026 | Kristel Gelera | */s/ Kristel Gelera* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## *In re: Oceanwide*
## Case No: 2:24-bk-11057-DS

## *SERVED VIA NEF*

- **Adam S Affleck**   adam-affleck@rbmn.com, jennifer-franklin@rbmn.com
- **Melody G Anderson**   mganderson@buchalter.com
- **James W Bates**   jbates@jbateslaw.com
- **Ori S Blumenfeld**   ori.blumenfeld@offitkurman.com, liyah.lewis@offitkurman.com;ik-maurice.ibe@offitkurman.com
- **Paul Brent**   snb300@aol.com
- **Sara Chenetz**   schenetz@perkinscoie.com, docketLA@perkinscoie.com;cmallahi@perkinscoie.com;jkulow@perkinscoie.com;chenetz-sara-perkins-coie-8670@ecf.pacerpro.com;rleibowitz@perkinscoie.com
- **Jacquelyn H Choi**   jacquelyn.Choi@rimonlaw.com, docketingsupport@rimonlaw.com
- **Leslie A Cohen**   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;camille@lesliecohenlaw.com
- **Gloria D Cordova**   NEF@gcordovalaw.com, NEF@gcordovalaw.com;ssg@gcordovalaw.com
- **Sean C Coughlin**   scc@coughlin-law.com, lb@coughlin-law.com;bcrena@noonanlance.com;ssuper@noonanlance.com
- **Matthew Dill**   mdill@counsel.lacounty.gov
- **Luke N Eaton**   lukeeaton@cozen.com, jacqueline.sims@troutman.com
- **Amir Gamliel**   agamliel@perkinscoie.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Jon F Gauthier**   jgauthier@ftblaw.com, jrobinson@ftblaw.com
- **Richard Girgado**   rgirgado@counsel.lacounty.gov
- **Richard H Golubow**   rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Ani Grigoryan**   ani.grigoryan@aalrr.com, jenifer.gootkin@aalrr.com
- **Lance N Jurich**   ljurich@loeb.com, pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com;fmckeown@loeb.com
- **Gary E Klausner**   gek@lnbyg.com
- **Bernard J Kornberg**   bernie.kornberg@millernash.com, edgar.rosales@millernash.com
- **Noreen A Madoyan**   Noreen.Madoyan@usdoj.gov, David.S.Shevitz@usdoj.gov
- **Allison C. Murray**   acmurray@swlaw.com, kcollins@swlaw.com
- **Douglas M Neistat**   dneistat@gblawllp.com, mramos@gblawllp.com
- **Rosemary Nunn**   rosemary.nunn@procopio.com, nicholas.fortino@procopio.com;gaylene.oyama@procopio.com
- **Matthew D Pham**   mpham@allenmatkins.com, mdiaz@allenmatkins.com
- **Michael B Reynolds**   mreynolds@swlaw.com, kcollins@swlaw.com
- **Robert L. Rosvall**   rrosvall@ccllp.law, kvargas@ccllp.law
- **Jeremy H Rothstein**   jrothstein@gblawllp.com, msingleman@gblawllp.com;acontreras@gblawllp.com
- **Leonard M. Shulman**   lshulman@shulmanbastian.com, bcabrera@shulmanbastian.com;yrivera@shulmanbastian.com
- **Howard Steinberg**   steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,sharon-weiss-7104@ecf.pacerpro.com
- **J Scott Williams**   jwilliams@williamsbkfirm.com, g24493@notify.cincompass.com
- **Donna Wong**   donna.wong@lacity.org

- **Richard Lee Wynne**    richard.wynne@hoganlovells.com;cindy.mitchell@hoganlovells.com;rick-wynne-7245@ecf.pacerpro.com
- **Chelsea Zwart**    czwart@smsm.com, service@cgdrlaw.com